**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,

    Debtor in a Foreign Proceeding.

_____/

AJ RUIZ CONSULTORIA EMPRESARIAL S.A., solely as Judicial Administrator and foreign representative of TINTO HOLDING LTDA.,

    Plaintiff,

v.

COLORADO INVESTMENT HOLDINGS LLC, J&F INVESTIMENTOS S.A., JJMB PARTICIPAÇÕES LTDA., WWMB PARTICIPAÇÕES LTDA., JOESLEY MENDONÇA BATISTA, WESLEY MENDONÇA BATISTA, and JBS S.A.,

    Defendants.

_____/

Chapter 15
Case No.: 23-11719-MAM

Adv. Case No. 23-01118

**Oral Argument Requested**

**DEFENDANT JBS S.A.'S MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE FOR LACK OF PERSONAL JURISDICTION (RULE 12(b)(2)), FORUM NON CONVENIENS, INTERNATIONAL COMITY, FAILURE TO STATE A CLAIM (RULE 12(b)(6)), AND FAILURE TO JOIN A PARTY (RULE 12(b)(7)); OR IN THE ALTERNATIVE TO ABSTAIN FROM EXERCISING JURISDICTION**

Defendant JBS, S.A. ("JBS") moves to dismiss with prejudice the single cause of action alleged against JBS in the Amended Complaint (DE 56)—for piercing the corporate veil—on the following grounds: (a) lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure;[1] (b) *forum non conveniens* and international comity; (c) failure to state a claim under Rule 12(b)(6); and (d) failure to join a party under Rule 12(b)(7).[2] In the alternative, JBS respectfully moves the Court to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c). JBS also joins in and incorporates the Motion to Dismiss of Colorado Investment Holdings LLC's ("Colorado") (DE 67) and the concurrently filed Motion to Dismiss of Defendants J&F Investimentos, S.A. ("J&F"), JJMB Participações Ltda. ("JJMB"), WWMB Participações Ltda. ("WWMB"), Joesley Mendonça Batista ("Joesley"), and Wesley Mendonça Batista ("Wesley") (collectively, the "Brazilian Defendants").

## INTRODUCTION

Plaintiff haled JBS—a Brazilian company headquartered and operating in Brazil—into federal court in the United States, on a single claim that is objectively frivolous, and without any factual basis to support the Court's exercise of personal jurisdiction over JBS.[3] In fact, all signs in this case point to Brazil. The Amended Complaint consists of claims under Brazilian law against six Brazilian defendants and one U.S. entity. The merger and the three share transfers that form the gravamen of the Amended Complaint took place in Brazil, and all three share-transfer agreements contain forum selection clauses designating Brazil as the sole forum for adjudicating any disputes arising from the agreements. Moreover, Brazilian courts have already adjudicated the

---

[1] JBS also joins in the Brazilian Defendants' argument regarding subject matter jurisdiction under Rule 12(b)(1). *See* Brazilian Defs.' Mot. to Dismiss ¶ 5, filed concurrently.
[2] The Federal Rules of Civil Procedure are made applicable to these proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.
[3] "Plaintiff" refers to the Foreign Representative A.J. Ruiz Consultoria Empresarial S.A. and its predecessor Deloitte Touche Tohmatsu Consultores Ltda.

1

time-barred claims that Plaintiff is seeking to revive. In short, this case does not belong in the United States.

The single cause of action against JBS for piercing the corporate veil also fails under Rule 12(b)(6). Disregarding black-letter law, Plaintiff crafted a claim against JBS that no reasonable lawyer could endorse. As a threshold matter, piercing the corporate veil is not a stand-alone claim under Brazilian law. It is instead a procedural mechanism, or a remedy, to extend liability for an underlying cause of action. There is no underlying cause of action against JBS, or against Tinto—the entity whose veil Plaintiff seeks to pierce. Moreover, even when properly asserted in connection with another cognizable claim, the claim for piercing Tinto's corporate veil can only be adjudicated by the Brazilian Bankruptcy Court, and only against Tinto's shareholders, directors, or an individual or entity with a direct corporate link to Tinto—a link altogether missing here. Inexplicably, Plaintiff seeks to pierce Tinto's corporate veil and thereby reach the assets of JBS—an unaffiliated, unrelated, and separate company. By Plaintiff's own allegations, Tinto's only shareholders at the relevant times were Silmar and Natalino Bertin and their families (the "Bertins"). (Am. Compl. ¶ 13, DE 56). Yet Plaintiff chose not to sue the Bertins in this action.

Plaintiff has already amended its pleading once in an attempt to cure deficiencies previously identified by Colorado in its first motion to dismiss. The Amended Complaint fails to cure those deficiencies, instead introducing new flawed allegations that no further amendment could save. For these reasons, the Court should dismiss the single cause of action against JBS with prejudice.

## STATEMENT OF RELEVANT FACTS AND BACKGROUND

Bertin S.A. ("Bertin") and JBS, both large Brazilian meat-processing companies, merged in December 2009. Plaintiff alleges that Tinto should have obtained a large share of JBS by

merging Tinto's majority equity stake in Bertin with JBS, but that Defendants "siphoned" significant value out of Tinto through three subsequent share-transfer agreements. (Am. Compl. ¶ 2, DE 56).

JBS is not a party to any of the share-transfer agreements.

Seven years after the merger, one of Tinto's creditors filed a petition to place Tinto into bankruptcy proceedings in Brazil because Tinto failed to pay a debt that it assumed for another entity also affiliated with the Bertins (the "foreign main proceeding").[4] The Brazilian Bankruptcy Court placed Tinto into liquidation on November 29, 2018.[5]

In the more than five years that the foreign main proceeding has been pending, Plaintiff has failed to take obvious steps to fulfill its fiduciary duties in Brazil, instead choosing to forum shop and assert time-barred claims under Brazilian law against Brazilian parties in the United States. Pursuant to Article 82-A of the Brazilian Bankruptcy Act, for example, Plaintiff (as Tinto's Judicial Administrator in Brazil) may seek an order piercing Tinto's corporate veil to reach the assets of Tinto's former administrators and shareholders.[6] Plaintiff has not sought to do so or to otherwise assert claims against the Bertins in Brazil.

Instead of pursuing obvious strategies to benefit the estate in Brazil, Plaintiff filed the Complaint in this adversary proceeding in the United States, first naming JBS as a nonparty. (Compl., DE 1). Without adding material factual allegations, Plaintiff converted JBS from a nonparty to a defendant in the Amended Complaint. (Am. Compl., DE 56). The sequence of these amendments, and the fact that Plaintiff asserts an objectively frivolous claim against JBS, calls into question whether Plaintiff is proceeding in good faith.[7]

---

[4] *See* Declaration of Laura J. Garr in Support of Brazilian Defendants' Mot. to Dismiss at Exhibit 2 ¶ 4.
[5] *See* Declaration of Dr. Flavio Yarshell, attached as **Exhibit 1** ("Yarshell Decl.") at ¶ 13.
[6] *See* Yarshell Decl. ¶ 14 n.3 (quoting Art. 82-A).
[7] *See also* Brazilian Defs.' Mot. to Dismiss ¶¶ 58-61, filed concurrently.

3

**ARGUMENT**

**A. The Court does not have general personal jurisdiction over JBS.**

General personal jurisdiction, which affords the court jurisdiction over any claim against a defendant, requires contacts with the United States that are "so continuous and systematic as to render [it] essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). Normally, a corporation is "at home" in only two places: (1) its place of incorporation; and (2) its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014); *Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*, 43 F.4th 1303, 1311 (11th Cir. 2022).

The Amended Complaint acknowledges that JBS is a Brazilian company. (Am. Compl., DE 56 ¶ 9). As such, JBS is neither incorporated in the United States nor maintains a principal place of business here.[8] And the Amended Complaint contains no other allegations that could render JBS "at home" in the United States, such that the exercise of general jurisdiction would be appropriate.

In fact, only a few allegations scattered throughout the thirty-three page Amended Complaint purport to connect JBS to the United States in some way. Plaintiff broadly alleges that JBS operates "globally," (Am. Compl. ¶ 19, DE 56), "directly or indirectly" holds stakes in U.S. companies, (*id*. ¶¶ 12, 20), and has its American Depositary Shares listed on the New York Stock Exchange while presently seeking to list its shares directly on the Exchange, (*id*. ¶ 9). Plaintiff further alleges that JBS obtained a $2.5 billion private subscription in an unnamed "U.S.

---

[8] Plaintiff purported to serve JBS through a U.S. subsidiary. JBS was not even aware of this attempted service until Plaintiff's counsel referenced it in discussions with counsel for Defendants. While the attempted service is moot because JBS waived service of process, the attempt demonstrates Plaintiff's disregard for the well-settled principle that the presence of a subsidiary in a forum cannot be attributed to the foreign parent company when the two are separate and distinct corporate entities (as they are here). *See Consol. Dev. Corp. v. Sheritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000).

subsidiary" for purposes of buying another U.S. company. (*Id*. ¶ 27). These alleged contacts do not come close to establishing a *prima facie* case of general personal jurisdiction.

To begin with, taking the necessary steps to maintain a stock-exchange listing is insufficient to confer general personal jurisdiction. *See Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 375–76 (S.D.N.Y. 2009) (granting motion to dismiss because listing on the New York-based stock exchange and ancillary contacts were insufficient to confer personal jurisdiction)[9]; *see also In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382–83 (S.D.N.Y. 2019) (maintaining an office in New York and selling ADRs on New York Stock Exchange were "far from sufficient" to give rise to general personal jurisdiction). Nor are allegations about global operations, "including in the U.S.," adequate for the exercise of general personal jurisdiction. *See, e.g.*, *Daimler*, 571 U.S. at 131–32 (surveying cases and noting foreign company distributing foreign tires in the forum was not subject to general personal jurisdiction, nor was one that had bank account, purchased equipment, and sent personnel to train in the jurisdiction).

The vague references to JBS's investments in the United States and the business of an unnamed "U.S. subsidiary," (Am. Compl. ¶¶ 19, 27), are also insufficient to establish a *prima facie* case of general personal jurisdiction. It is well settled that jurisdiction over a foreign parent corporation does not derive from a subsidiary's business in the forum in question when the parent and the subsidiary are separate and distinct corporate entities (as they are here). *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("[A]s long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."); *see also Herederos*, 43 F.4th at 1311–12 (Canadian company was not "at home" in the United States, even where subsidiaries were incorporated in the United States and

---

[9] New York law also requires "continuous and systematic" contacts for the exercise of personal jurisdiction.

5

had their principal places of business here); *Daimler*, 571 U.S. at 135–36 (subsidiary's substantial contacts with forum state were not sufficient to subject parent company to general jurisdiction). The Amended Complaint does not even name the U.S. subsidiary to which it refers, much less explain how the conduct of that subsidiary could give rise to jurisdiction over JBS. Such thin allegations do not support the exercise of general jurisdiction over JBS.

**B.  The Court does not have specific personal jurisdiction over JBS.**

Plaintiff also fails to carry its burden of establishing a *prima facie* case of specific personal jurisdiction over JBS. Specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (citation omitted). Consequently, a plaintiff must show that: (1) the plaintiff's claim "arise[s] of or relate to" the defendant's contacts with the forum; and (2) by such contacts, the defendant "purposefully availed itself of the privilege of conducting activities within the forum." *See Herederos* 43 F.4th at 1311 (11th Cir. 2022). Finally, "jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *Id*.

Plaintiff makes no attempt to link JBS's alleged activity in the United States to the single claim asserted against it for piercing the corporate veil. (*See* Am. Compl. ¶¶ 110–17, DE 56). Plaintiff alleges that "Defendants" "misused Tinto's purpose by diverting Tinto's greatest asset," that "Defendants abused Tinto's legal personality by unlawfully causing the transfer of Tinto's assets, and that JBS "legitimized" Tinto's transfer of its stake in Bertin FIP by "misleading the public about the merger's true structure." (*Id*. ¶¶ 113–14.)

These allegations say nothing about what acts JBS took by which it purposefully availed itself of "the privilege of conducting activities within the forum," or how Plaintiff's claim against JBS for piercing the corporate veil arises out of or relates to JBS's contacts with the United States.

6

The only other allegation that relates to alleged U.S. contacts is paragraph 27, which states that the JBS–Bertin merger depended on JBS successfully obtaining a USD $2.5 billion private subscription in its U.S. subsidiary from Brazil's National Bank for Economic and Social Development (BNDES), and that JBS used the funds to acquire Pilgrim's Pride Corporation in the United States. (Am. Compl. ¶ 27, DE 56). But the Amended Complaint offers no explanation—because one does not exist—of how JBS's purported securement of funding in an unnamed U.S. subsidiary for the purpose of acquiring an interest in another U.S. company resulted in Tinto's insolvency.

In any event, by Plaintiff's own allegations, it was not the merger that allegedly diluted Tinto's ownership interests in JBS. According to the Amended Complaint, the three share-transfer agreements that followed the merger—not the merger itself—diluted Tinto's ownership position in JBS. There is not a single allegation, anywhere, that ties any of the share transfers to JBS's (scant) alleged U.S. contacts. Consequently, the critical link between JBS's alleged U.S. contacts and the claim asserted against it is altogether missing, and specific jurisdiction does not exist.

Judge Moreno's decision in *In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019), is instructive here. In *Takata*, plaintiffs asserted a host of tort claims regarding allegedly defective Takata airbags that had been installed in plaintiffs' vehicles. *Id.* at 1117. Plaintiffs sued several defendants, including several foreign-based car manufacturers (the "Foreign Defendants"). *Id.* at 1132. In assessing plaintiffs' allegations of specific jurisdiction over the Foreign Defendants, Judge Moreno noted that he must be "[m]indful of the Supreme Court's concerns for international comity, and the practical issues of subjecting foreign entities to the coercive power of federal courts." *Id.* at 1147. In *Takata*, as here, the plaintiffs "generally allege[d]" that the Foreign Defendants conducted business—and had domestic subsidiaries—in

7

the United States. *Id.* at 1148. But such "generalized allegations" could not establish that the Foreign Defendants had "sufficient contacts with the United States," such that they "purposefully availed themselves of the privileges and laws of the United States." *Id.* at 1151 (internal quotation marks omitted). And that is all that the Amended Complaint contains here—generalized allegations against JBS that do nothing to show that JBS has intentionally injected itself into the business of the United States, in any way that is sufficiently related to the claim against JBS, such that it could expect to be haled into court here.

Finally, even if the Amended Complaint satisfied the two-pronged test for specific jurisdiction, and somehow could be read to allege both JBS's purposeful availment of the privilege of conducting business in the United States and a sufficient connection between JBS's alleged U.S. contacts and the claim asserted against it, the exercise of specific jurisdiction over JBS would not comport with due process. There is no connection between JBS's alleged U.S. contacts and the share transfers that Plaintiff claims resulted in Tinto's insolvency. Under these circumstances, the exercise of jurisdiction over JBS would offend the "traditional notions of fair play and substantial justice" that lie at the heart of due process. *See Herederos*, 43 F.4th at 1310. Thus, even if Plaintiff technically alleged a *prima facie* case of jurisdiction over JBS—which it has not done—the Court should decline to exercise it.

### C. The Court should dismiss this action on the grounds of *forum non conveniens*, international comity, and abstention.

JBS incorporates and adopts Colorado's argument that this proceeding should be dismissed on the grounds of *forum non conveniens*, comity, and abstention. (*See* Colorado's Mot. to Dismiss at 6–19, DE 67). Additionally, as set out in the Brazilian Defendants' Motion to Dismiss ¶¶ 47-55, the lack of personal jurisdiction over JBS and over the Brazilian Defendants further supports dismissal of the entire action on the grounds of *forum non conveniens*.

D. **The Court should dismiss the single cause of action against JBS for failure to state a claim upon which relief may be granted.**

1. **Legal Standard**

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). And for claims that sound in fraud, Rule 9(b) requires parties to state the circumstances constituting fraud or mistake with particularity. *See* Fed. R. Civ. P. 9(b).

2. **The purported cause of action against JBS is time barred.**

Defendants may raise a statute-of-limitations defense under Rule 12(b)(6) where it appears on the face of the complaint that the statute of limitations has run. *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

JBS incorporates, joins, and adopts Colorado's argument that all seven causes of action in the Amended Complaint became time barred on November 29, 2021. (*See* Colorado's Mot. to Dismiss at 20–21, DE 67).[10]

---

[10] *See also* Yarshell Decl. ¶ 23 (statute of limitations for revocatory action ran on November 29, 2021, and would require dismissal with prejudice of the purported claim against JBS). JBS also incorporates, joins, and adopts Colorado's argument that *res judicata* and collateral estoppel bars Plaintiff's claims. (*See* Colorado's Mot. to Dismiss at 21–22, DE 67).

9

### 3. Plaintiff's purported cause of action for piercing the corporate veil fails to state a claim under Rule 12(b)(6).

#### i. There is no independent cause of action for piercing the corporate veil under Brazilian law.

Plaintiff asserts its purported cause of action for piercing Tinto's corporate veil under Article 50 of the Brazilian Civil Code and Article 82-A of the Brazilian Bankruptcy Act. As a threshold matter, and as set out in the declarations of two experts on Brazilian law,[11] veil-piercing is not an autonomous cause of action under Brazilian law.[12] Indisputably, piercing the corporate veil is a remedy to extend liability on an underlying cause of action.[13] There is no underlying cause of action against JBS, or against Tinto—the entity whose veil Plaintiff seeks to pierce.

The Fourth Panel of the Superior Court of Justice in Brazil explained this exact point in 2018, stating that a request for piercing the corporate veil—known in Brazil as a request for disregarding a corporation's juridical personality—"does not constitute a stand-alone measure, but rather an incidental remedy[.]"[14] As Dr. Calças has explained, piercing the corporate veil is a "procedural method to reach the assets of individuals deemed liable due to some other cause of action."[15] A plain reading of Article 50 also compels the same conclusion, as it provides that the purpose of piercing the corporate veil is to extend the effects of "certain and established" obligations to administrators and shareholders.[16]

---

[11] Dr. Flávio Luiz Yarshell has been a Professor of Civil Procedure at the University of São Paulo Law School since 1998. (Yarshell Decl. ¶ 3.) Dr. Manoel de Pereira Calças, a former President of the São Paulo Court of Appeal, previously submitted declarations in support of Colorado's motions to dismiss. (*See* DE 18-1, 67-2).

[12] Yarshell Decl. ¶ 20 (explaining that "the incident of piercing of the corporate veil is not a stand-alone measure"); *see also* Calças Decl. ¶ 65 ("Brazilian law does not provide for piercing of the corporate veil as an independent cause of action."), DE 67-2. Federal courts in the United States have reached the same conclusion under U.S. law. *See, e.g.*, *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (finding that under ERISA piercing the corporate veil is not an independent cause of action); *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 69 n.5 (10th Cir. 2005) (adopting reasoning in *Peacock* and concluding that veil piercing is not an independent federal cause of action, "but rather [] a means of imposing liability on an underlying cause of action") (citation omitted).

[13] *See* Yarshell Decl. ¶¶ 21.

[14] Yarshell Decl. ¶ 20 n. 14 (emphasis omitted).

[15] Calças Decl. ¶ 104, DE 18-1.

[16] Article 50 provides:

In short, Plaintiff's legal theory that it can bring an autonomous cause of action against JBS for piercing the corporate veil is foreclosed by Brazilian law. As there are no other causes of action against JBS in the Amended Complaint, the Court should dismiss the action against JBS.

### ii. Only the Brazilian Bankruptcy Court can pierce Tinto's veil.

The plain language of Article 82-A also precludes Plaintiff's contention that this Court can pierce Tinto's corporate veil. Article 82-A states that "piercing of the corporate veil of [a] bankrupt company . . . ***can only be decreed by the bankruptcy court***."[17] "The bankruptcy court" refers to Brazil's universal bankruptcy court—in this case, the Second Court of Bankruptcy and Court-Ordered Restructuring of the City of São Paulo, State of São Paulo, where the foreign main proceeding is underway.[18]

### iii. JBS does not lie beyond Tinto's corporate veil.

Inexplicably, Plaintiff seeks to pierce Tinto's corporate veil and thereby reach the assets of JBS—an unaffiliated, unrelated, and separate company that is not a shareholder or director of Tinto. By Plaintiff's own allegations, Tinto's only shareholders at the relevant times were the Bertins. As the diagram below shows,[19] piercing Tinto's corporate veil leads to the Bertins and not, under any reasonable legal theory, to JBS.

---

In the event of abuse of legal personality, characterized by **deviation of purpose** or by **commingling of assets**, the judge may decide, at the request of a party or of the Public Prosecution Office, when the latter has standing to intervene in the process, that the effects of certain and established obligations are extended to the private assets of the administrators or shareholders of the corporate entity.

*See* Yarshell Decl. ¶ 24 n.17 (quoting Article 50).

[17] *See* Yarshell Decl. ¶ 14 n.3 (emphasis added); Calças Decl. ¶ 66, DE 67-2.
[18] Yarshell Decl. ¶¶ 15 (explaining that "there can be no doubt" that the court overseeing Tinto's bankruptcy has exclusive jurisdiction over whether to pierce Tinto's corporate veil).
[19] This diagram reflects the relevant corporate structures immediately post-merger, according to Plaintiff's allegations. *See* Am. Compl. ¶ 49, DE 56.



Despite the patent unreasonableness of seeking to reach JBS by piercing Tinto's corporate veil, Plaintiff submits that this Court may do so under Article 50 of the Brazilian Civil Code and Article 82-A of the Brazilian Bankruptcy Law. Article 50 explicitly provides for piercing of the corporate veil to reach the private assets of the disregarded entity's ***administrators or shareholders*** (here again, the Bertins). Plaintiff does not allege, nor could it, that JBS has ever been Tinto's administrator or shareholder. Instead, Plaintiff's counsel simply ignored the plain meaning of Article 50 to force JBS into this case.

Plaintiff also distorts Article 82-A, which provides that the Brazilian Bankruptcy Court can pierce a debtor's corporate veil to hold certain "third parties, groups, shareholders or administrators liable" for the debtor's obligations.[20] In its efforts to name JBS as a Defendant, Plaintiff apparently reads the reference to "third parties" to mean any third party, no matter the relationship with the

---

[20] *See* Yarshell Decl. ¶ 14 n.3 (quoting Article 82-A).

12

debtor. That reading is illogical. Under Article 82-A, any "third party" must have some form of formal legal affiliation with Tinto.[21] JBS does not have this required link with Tinto.[22] Ironically, Plaintiff's counsel rejected the obvious choice of suing the Bertins,[23] instead forcing JBS into this case under an unreasonable legal theory.

### iv. Plaintiff fails to plead the necessary elements for piercing the corporate veil under Brazilian law.

Finally, Plaintiff makes virtually no attempt to plead the necessary veil piercing elements against JBS. Under Article 50, at a minimum, Plaintiff must allege and prove that there has been "abuse of legal personality, characterized by a deviation of purpose or comingling of assets" between the administrators and/or shareholders and the company.[24] Instead, Plaintiff makes only these conclusory allegations that it attributes to all "Defendants":

- "Defendants misused Tinto's purpose by diverting Tinto's greatest asset to the detriment of the estate and its creditors as part of an unlawful scheme." (Am. Compl. ¶ 113, DE 56).

- "Defendants abused Tinto's legal personality by unlawfully causing the transfer of Tinto's assets—its shares of Bertin FIP—without effective compensation, at the expense of Tinto's creditors." (*Id*.).

The only allegation specific to JBS is that "JBS legitimized the planned transfer to the public by misleading the public about the merger's true structure, treating the acquisition of Bertin S.A. as a run-of-the mill merger rather than a scheme to enrich JBS's principals at the expense of

---

[21] Yarshell Decl. ¶ 24 (Article 50 and Article 82-A allow courts to reach the assets of individuals or entities "who maintain some form of formal legal affiliation with the debtor, especially shareholders and administrators, which is not the case of JBS."); Calças Decl. ¶ 109, DE 18-1 ("[T]he possibility of holding a third party liable only occurs when this third party has some past corporate link with the company whose veil one intend to pierce.").
[22] *Id*.
[23] Calças Decl. ¶ 67, DE 67-2 ("[A]ccording to Brazilian law, the Plaintiff should have pleaded that the effects of the obligations assumed by Tinto were extended to the private assets of Silmar Bertin and Natalino Bertin, the controlling shareholders and directors of Tinto.").
[24] *Id*.

13

Tinto's creditors." (*Id.* ¶ 114). As set out in the Yarshell declaration, these allegations do not satisfy the elements for piercing the corporate veil under Brazilian law.[25]

First, the concept of deviation of assets is a completely different concept than "deviation of purpose," which means the use of the corporate entity for a purpose other than that which is stated in its bylaws, with the purpose of injuring third parties.[26] There is no allegation in the Amended Complaint that could meet the elements for "deviation of purpose" under Brazilian law.[27] Second, the concept of deviation of assets is also a completely different concept than "commingling of assets," which means a lack of separation between the assets of the corporate entity, on one hand, and those of its shareholders, administrators or other related companies, on the other.[28] Finally, Plaintiff's allegations that the assets were transferred "without effective compensation" and that JBS legitimized the transfer of assets, as if it were a true merger, have nothing to do with the elements for piercing the corporate veil under Brazilian law.[29] In sum, the "cause of action" against JBS for piercing the corporate veil fails as a matter of law.

**E. Pursuant to Rule 12(b)(7), the Court should dismiss the Amended Complaint with prejudice for failure to join an indispensable party.**

JBS incorporates and adopts Colorado's argument that the Amended Complaint should be dismissed with prejudice for failure to join an indispensable party. (*See* Colorado's Mot. to Dismiss at 29, DE 67).

## CONCLUSION

For the reasons set forth above, JBS respectfully requests that the Court grant this motion to dismiss with prejudice.

---

[25] Yarshell Decl. ¶ 27 ("None of these facts and grounds are sufficiently sustained" under Article 50 of the Civil Code.")
[26] *Id*. ¶ 28.
[27] *Id*.
[28] *Id*. ¶ 29.
[29] *Id*. ¶¶ 30-31.

14

Dated: February 5, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By: */s/ Gabriela M. Ruiz*
Gabriela M. Ruiz (Florida Bar No. 46844)
gruiz@fordobrien.com
Ford O'Brien Landy LLP
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3200
Miami, Florida 33131
Tel.: (786) 310-1135 (main)

Amy C. Brown (*pro hac vice* pending)
abrown@fordobrien.com
Stephen R. Halpin III (*pro hac vice* pending)
shalpin@fordobrien.com
275 Madison Avenue, 24th Floor
New York, New York 10016
Tel.: (212) 858-0040 (main)

*Attorneys for Defendant JBS S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on all counsel of record via the Court's CM/ECF system.

Dated: February 5, 2024

                                                */s/ Gabriela M. Ruiz*
                                                Gabriela M. Ruiz