**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,                                        Chapter 15
                                                            Case No.: 23-11719-MAM
    Debtor in a Foreign Proceeding.
_____/


AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

    Plaintiff,
                                                            Adv. Case No. 23-01118
v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., WWMB
PARTICIPAÇÕES LTDA., JOESLEY
MENDONÇA BATISTA, WESLEY
MENDONÇA BATISTA and JBS S.A.,

    Defendants.
_____/


**DECLARATION OF**
**FLÁVIO LUIZ YARSHELL**

## I. INTRODUCTION

1. I, Flávio Luiz Yarshell, pursuant to Art. 28, §1746, hereby declare under penalty of perjury and under the laws of the United States as follows.

2. All facts presented herein are based on my personal knowledge and review of the documents in question and the written observations.

## II. QUALIFICATION AND EXPERIENCE

3. I graduated from the University of São Paulo School of Law in 1986. I hold, from the same university, a Master's Degree (1992) as well as a Ph.D. degree (1997), both in Civil Procedure. The University of São Paulo is the country's most prestigious educational institution. Since 1998, I have been a Professor of Civil Procedural Law at the University of São Paulo Law School, having become a full-time professor in 2009.

4. I am a founding partner of Yarshell Advogados, a law firm established in the city of São Paulo, Brazil. I practice law in the areas of litigation and arbitration, both national and transnational, in matters of private, procedural, evidence, insolvency and corporate law, among others.

5. In 2006, after being recommended by the São Paulo Court of Appeals, I was appointed as an Electoral Judge, a highly prestigious position in Brazil occupied only by a limited number of state and federal judges and lawyers. In 2011, I was granted the Electoral Merit Award of the State of São Paulo, an award given to individuals who have provided services relevant to democracy and the electoral process in the State of São Paulo. I held this position until 2012.

6. In 2017, following the publication of a complete work, totaling 17 books (I am the lead author of 16 of them and co-author of the remaining one), my co-authors and I won the first place at the 59th *"Jabuti Award"* (the most widely recognized award for Brazilian literature). I am also a member of the editorial boards of two publishers specialized in legal texts.

7. I am regularly a member of the examining board of the judicature examination for the São Paulo Court of Appeals, for the public entrance examination for admission into judgeship.

8. I am a member of the American Law Institute, the Iberian-American Institute of Procedural Law, the Brazilian Institute of Procedural Law, the Lawyers' Institute of São Paulo, and the Brazilian Arbitration Committee, among others. I am also a member of the list of arbitrators of the Center for Arbitration and Mediation of the Brazil-Canada Chamber of Commerce [*Centro de Arbitragem e Mediação da Câmara de Comércio Brasil-Canadá*, CAM-CCBC], the Chamber of Conciliation, Mediation and Arbitration [*Câmara de Conciliação, Mediação e Arbitragem*, CMA] of CIESP/FIESP (*Centro das Indústrias do Estado de São Paulo/Federação das Indústrias do Estado de São Paulo*

[Center for Industries of the State of São Paulo/Federation of Industries of the State of São Paulo]), the Chambers of Mediation and Arbitration of the Italian-Brazilian Chamber of Commerce, Industry and Agriculture [*Câmaras de Mediação e Arbitragem da Câmara Ítalo-Brasileira de Comércio, Indústria e Agricultura*, CAMITAL-ITALCAM]. Since July 25, 2019, I have also been a member of the special committee sponsored by the São Paulo Chapter of the Brazilian Bar Association, for the analysis of corporate reorganizations and bankruptcies.

9. A copy of my *curriculum vitae* is included as **Appendix 1**.

### III.  SUMMARY OF MY LEGAL OPINION

10. Based on my review of the Amended Complaint, as well as my knowledge and experience in the field of Brazilian law, I have reached the following conclusions:

    (i) The Second Court of Bankruptcy and Court-Ordered Restructuring of São Paulo, State of São Paulo, is the only court with jurisdiction to review the motion for piercing of the corporate veil formulated against JBS S.A. ("JBS") (*see* item IV, "a", below);

    (ii) Personal liability and debt, although related, are different entities and piercing of the corporate veil is not grounds for recognition of debt, but rather, as stated, for exceptionally extending personal liability (*see* item IV, "b", below);

    (iii) Piercing of the corporate veil is a measure that allows personal liability to be extended, under exceptional circumstances, to those who are not debtors. Hence, piercing of the corporate veil is not an autonomous measure that is capable of recognizing debt (obligation), but rather an auxiliary remedy to overcome the autonomy of corporate veils, under which a shareholder or administrator is hidden. In any case, even if it was possible to invoke specific grounds for piercing of the corporate veil as a kind of replacement for reversal of corporate transactions and the resulting transfer of shares, a claim of such a nature – which Brazilian law determines must conveyed by a so-called revocation action – would already be undermined by the statute of limitations and consummation of peremption. (*see* item IV, "c", below);

    (iv) Piercing of the corporate veil presupposes the existence of some corporate affiliation between the person to whom a given obligation is attributed, on one hand, and the person to whom it is intended to extend the personal liability, on the other. JBS does not have, nor has it been demonstrated to have, any corporate relationship with Tinto Holding Ltda. ("Tinto") (cf. item IV, "d", below);

    (v) The facts and legal grounds claimed by the Plaintiff do not correspond to the legal rules that authorize the piercing of the corporate veil of Tinto (*see* item "e", below);

    (vi) The party interested in piercing the corporate veil has the burden of alleging and proving the deviation of purpose and/or commingling of assets. However, the

Plaintiff has not succeeded in shifting either burden of alleging or proving in this regard (*see* item "f", below).

## IV. ANALYSIS

### a. Exclusive jurisdiction of the universal bankruptcy court to decide on the piercing of the corporate veil of Tinto.

11. The Plaintiff alleges that JBS, a company incorporated and with its principal place of business in Brazil, should cover the bankruptcy debts and damages caused to the creditors of Tinto, via the piercing of the corporate veil of the latter.

12. To hear and rule on any motions related to bankruptcy proceedings involving Tinto is the exclusive jurisdiction of the Brazilian Courts and, in particular, the Second Court of Bankruptcy and Court-Ordered Restructuring of the City of São Paulo, State of São Paulo, and, therefore, also the claim brought by the Plaintiff.

13. The aforementioned Court declared Tinto bankrupt on November 29, 2018, and thus, at this time, it became the court with exclusive jurisdiction over all claims and issues related to the bankruptcy, pursuant to the provisions of Art. 76 of Federal Law 11,101/05[1]; that is, it had the exclusive jurisdiction to decide on all motions related to the bankruptcy proceedings, including those seeking the annulment of any possible fraudulent acts prior to the declaration of bankruptcy, pursuant to Art. 134 of the aforementioned law[2].

14. The jurisdiction of the court covers all claims and issues related to the bankruptcy, including that of appraising a motion for the piercing of the corporate veil of the bankrupt company. This is expressly stated in the sole paragraph of Art. 82-A of Law 11,101/05: "The piercing of the corporate veil of the bankrupt corporation, for the purposes of holding third parties, groups, shareholders or administrators liable for their obligations, **may only be decreed by the bankruptcy court** (…)."[3] (my emphasis)

---

[1] *Verbatim:* "Art. 76. The bankruptcy court is indivisible and has jurisdiction to conduct all proceedings regarding assets, interests and business of the bankrupt entity, except for labor and fiscal aspects, as well as proceedings not regulated under this Law in which the bankrupt entity is the plaintiff or co-plaintiff." All mentions made to legal provisions in this Statement pertain exclusively to Brazilian law.

[2] *Verbatim:* "Art. 134. The avoidance action will be heard by the bankruptcy court and will comply with the ordinary procedure set forth under Law No. 5,869, dated January 11, 1973 – Code of Civil Procedure." A new Brazilian Code of Civil Procedure ("CPC") was enacted in 2015, but the text of the law was not updated from the previous Code. This, however, does not interfere with the definition of which court has jurisdiction to decide on the avoidance action.

[3] *Verbatim:* "Art. 82-A. The extension of bankruptcy or its effects, in whole or in part, to the shareholders, controllers and administrators of the bankrupt limited liability company is prohibited; however, piercing of the corporate veil is permitted. Sole paragraph. Piercing of the corporate veil of the bankrupt company, for the purposes of holding third parties, groups, shareholders or administrators liable for their obligations **can only be decreed by the bankruptcy court** pursuant to Art. 50 of Law No. 10,406, dated January 10, 2002 (Civil Code) and Articles 133, 134, 135, 136 and 137 of Law No. 13,105, dated March 16, 2015 (Code of Civil Procedure), and the suspension

15. Therefore, there can be no doubt that, for the motion to pierce the corporate veil "the jurisdiction was attributed **exclusively to the bankruptcy Court**"[4] (my emphasis), which "must observe the incident of piercing of the corporate veil **as set forth under arts. 133-137 of the 2015 CPC**"[5] (my emphasis). Thus, "**Whatever the grounds,** and even within the scope of bankruptcy proceedings, piercing of the corporate veil is considered by the **bankruptcy court** in the form of the provisions of Arts. 133 to 137 of the Code of Civil Procedure, but without any interruption to the bankruptcy proceedings themselves"[6] (my emphasis). This is also the solution under case law, both pursuant to current and previous law[7].

   **b. Debit and liability: different provisions, subject to different requirements.**

16. Although related concepts, *debt* (*schuld*) and *personal liability* (*haftung*) are different and should be addressed as such. Thus, *debt* (obligation) is "the duty of the obliged person to comply with the provision, to which the right to demand its performance corresponds"; *liability* means "the allocation of the debtor's assets to guarantee the coactive satisfaction of that right, to which the right to achieve the satisfaction at the expense of these assets corresponds; that is, **the right to claim against the debtor's assets**"[8] (my emphasis). Accordingly, "**although obligation and liability usually coincide** in the sense that debtors themselves are the ones who use their assets to coactively satisfy their creditors, there are cases in which, by the existing relationships between the debtors and other parties, the assets of the latter can be forfeited for this purpose. It turns out that **liability is separate from obligation** and it will affect a non-debtor third party." The personal liability of individuals who are not the holders of obligations is called "secondary enforceable liability" – as opposed to primary liability, which the debtor of the obligation has[9]. The rule is that "**enforcement cannot involve the assets and rights of third parties.** It could not be any different and the statement does not require any special justifications."[10] Hence the provisions of Art. 789 of the CPC, according to which "Debtor will use all their present and future assets for the performance of their obligations, except for the restrictions established under law"; which, as already stated in the legal framework of the preceding law, has two different propositions: "a) all the

---

referred to in §3 of Art. 134 of Law No. 13,105, dated March 16, 2015 (Code of Civil Procedure) is not applicable." (my emphasis)

[4] *See* SACRAMONE, Marcelo Barbosa. *Comentários à lei de recuperação de empresas e falência*, 3rd ed., São Paulo, Saraiva, 2022, p. 431.

[5] *See* NEGRÃO, Ricardo. *Curso de direito comercial e de empresa: recuperação de empresas, falência e procedimentos concursais administrativos,* v. 3, 14th ed., São Paulo, Saraiva, 2020, p. 183.

[6] *See* BARROS NETO, Geraldo Fonseca de. *Reforma da lei de recuperação judicial e falência – comentada e comparada,* Rio de Janeiro, Forense, 2021, p. 146.

[7] Accordingly, *See*: Court of Appeals the State of São Paulo, 20th Chamber of Private Law, Interlocutory Appeal No. 2033286-76.2016.8.26.0000, Rapporteur Appellate Judge Alvaro Torres Júnior, ruled on 07/04/2016, unanimous vote; Court of Appeals of the State of São Paulo, 14th Chamber of Private Law, Interlocutory Appeal No. 2076300-37.2021.8.26.0000, Rapporteur Appellate Judge Lavínio Donizetti Paschoalão, ruled on 11/11/2021, unanimous vote).

[8] *See* LIEBMAN, Enrico Tullio. *Processo de execução,* 5th ed., São Paulo, Saraiva, 1986, pp. 33-36.

[9] *See* Id Ibid., p. 100.

[10] *See* Id Ibid., pp. 104-105.

debtors' assets may be used to cover their obligations; and b) **only the debtors' assets may used to cover their obligations**"[11] (my emphasis).

17. There are exceptions to the rule: there are debtors' assets that cannot be used to cover their obligations, such as in the case of family assets; and there are assets belonging to subjects that are not the original liable parties that can be used to perform the obligation; such as in the case of the admissibility of expropriation of assets offered as mortgage or lien by a third, non-obligated party[12]. But the exceptional nature of the rupture between debt and liability remains: "The nexus that exists between liability and obligation is instrumental in nature, as much as the process is an instrument of substantial law. Personal liability is instituted by the legal framework with the scope of providing for the performance of rights and obligations through enforcement. Hence, **there are exceptional cases of obligation without liability or liability without obligation.**"[13] (my emphasis)

18. Personal liability cases of non-debtors also arise from the law. Among other potential situations, this occurs in the case of fraud in the enforcement proceedings (CPC, Art. 792) – which is not considered in the case examined herein – and in the event of piercing of the corporate veil. Accordingly, the general rule is Art. 50 of the Civil Code, according to which "In the event of abuse of legal personality, characterized by **deviation of purpose** or by **commingling of assets**, the judge may decide, at the request of a party or of the Public Prosecution Office, when the latter has standing to intervene in the process, that the effects of certain and established obligations are extended to the private assets of the administrators or shareholders of the corporate entity" (my emphasis).

c. **Facts and legal grounds that lead to the piercing of the corporate veil are different from those that lead to recognition of a debt (obligation). Piercing of the corporate veil is not a stand-alone measure. Under argument: extinction of any claim for reversal or an adverse award.**

19. The inclusion of JBS in the proceedings in question is based on the argument that it has participated in, or contributed to, allegedly fraudulent corporate transactions that were harmful to its creditors.

20. However, the incident of piercing of the corporate veil is not a stand-alone measure and, therefore, is not adequate for recognizing an obligation.[14] What is sought in the incident

---

[11] *See* DINAMARCO, Cândido Rangel. *Civil enforcement,* 5th ed., São Paulo, Malheiros, 1997, p. 246.
[12] *See* Id Ibid., pp. 246-248.
[13] *See* Id Ibid., pp. 249-250.
[14] The piercing of the corporate veil is not a stand-alone measure and, therefore, it cannot settle any doubt about the existence or inexistence of an obligation, which would be the purpose of different proceedings. And, as far as a case can, in theory, be brought to recognize personal liability (and not the existence of an obligation), it has already been decided that "Under the terms of the new regulations (art. 134), a **motion to pierce the veil does not constitute a stand-alone measure, but rather an incidental remedy**, which may begin in the discovery or award phases, which, in fact, is an option that has long been accepted by the legal framework, having been regulated by the new legislation, with the merit of providing legal security for this issue." (*See* Brazilian Superior Court of Justice, Fourth

6

is to overcome the autonomy enjoyed by the corporate entity, with regard to its shareholders and administrators, whose legal personalities, in principle, are distinct. Thus, it is one thing to extend personal liability; it is completely another to recognize that the party is a primary (original) co-debtor or co-liable party, in the face of an alleged obligation.

21. It is worth stating: piercing of the corporate veil is a remedy whose purpose is to extend personal liability. If a debt is recognized, piercing of the corporate veil allows it to overcome the legal personality of the original debtor and to hold its shareholders or directors accountable.

22. To grant the piercing of the corporate veil under Brazilian law, there would have to be deviation of purpose or commingling of assets, neither of which has been proven in the facts put forward by the Plaintiff.

23. In any case, even if it was possible to invoke specific grounds for piercing of the corporate veil as a kind of replacement for reversal of corporate transactions and the resulting transfer of shares, a claim of such a nature – which Brazilian law determines must be conveyed by a so-called revocation action – would already be undermined by the statute of limitations and consummation of peremption, in such a way that, under the terms of the CPC, it should be dismissed with prejudice (Art. 487, II[15]). In this case, the request should have been filed by the trustee within 3 (three) years of the declaration of bankruptcy (Federal Law 11,101/05, Art. 132[16]), which did not occur. In the case in question, the statute of limitations ended on November 29, 2021, but the Complaint was only filed on May 24, 2023.

### d. Piercing the corporate veil assumes a corporate affiliation between people.

24. The text of Articles 50 of the Civil Code[17] and Art. 82-A of Law 11,101/05[18] refers to the piercing of the corporate veil that affects only persons (private individuals or corporate entities) who maintain some form of formal legal affiliation with the debtor, especially shareholders and administrators, which is not the case of JBS.

---

Panel, Special Appeal 1.729.554/SP, Rapporteur Justice Luis Felipe Salomão, handed down on 05/08/2018, decision published on 06/06/2018, unanimous voting; my emphasis).

[15] *Verbatim*: "Judgment shall be rendered on the merits when the judge: . . . II – decides, *ex officio* or upon request, that the claim is time barred;"

[16] *Verbatim:* "Art. 132. Any revocation action, pursuant to Art. 130 of this Law, may be filed by the receiver, by any creditor or by the Public Prosecution Office within 3 (three) years of the declaration of bankruptcy."

[17] *Verbatim:* "Art. 50. In the event of abuse of legal personality, characterized by deviation of purpose or by commingling of assets, the judge, at the request of a party or of the Public Prosecution Office, when the latter has standing to intervene in the process, may disregard legal personality so that the effects of certain and established obligations are extended to the private assets of the administrators or shareholders of the corporate entity who benefit directly or indirectly from the abuse."

[18] *Verbatim:* "Art. 82-A. The extension of bankruptcy or its effects, in whole or in part, to the shareholders, controllers and administrators of the bankrupt limited liability company is prohibited; however, piercing of the corporate veil is permitted."

25. Even when mentioning third parties, the sole paragraph of the aforementioned Art. 82-A[19] opens up the possibility of involving the assets of any persons who have a direct corporate relationship with the original debtor; but not any third party, as is the case of JBS or any other person in an equal condition with regard to this aspect of the law, especially when none of the legal requirements mentioned in the foregoing articles can be demonstrated.

### e. The facts and legal grounds claimed by the Plaintiff do not correspond to the legal rules that authorize the piercing of the corporate veil of Tinto.

26. In the case in question, the motion for piercing of the corporate veil against JBS is based on three grounds:

    a) "Defendants misused Tinto's purpose by diverting Tinto's greatest asset to the detriment of the estate and its creditors as part of an unlawful scheme"[20];

    b) "Defendants abused Tinto's legal personality by unlawfully causing the transfer of Tinto's assets—its shares of Bertin FIP—without effective compensation, at the expense of Tinto's creditors"[21];

    c) "JBS legitimized the planned transfer to the public by misleading the public about the merger's true structure, treating the acquisition of Bertin S.A. as a run-of-the mill merger rather than a scheme to enrich JBS's principals at the expense of Tinto's creditors"[22].

27. However, none of these facts and grounds are sufficiently sustained in the provisions provided for in Art. 50 of the Civil Code.

28. Firstly, any "deviation" of assets of a corporate entity, which subsequently is declared bankrupt, cannot be classified, even with substantial effort, as situations in which Brazilian law authorizes the piercing of the corporate veil. The alleged deviation of assets does not correspond to the "deviation of purpose" referred to under Art. 50 of the Civil Code; which means the use of the corporate entity for a purpose other than that which is stated in its by-laws or the law in general, with the purpose of injuring third parties. These are totally different concepts and situations.

29. Furthermore, any deviation of assets should not be confused with "commingling of assets," characterized by a lack of separation or individualization of the assets of the corporate entity, on one hand, and those of its shareholders, administrators or other

---

[19] *Verbatim*: "Sole paragraph. Piercing of the corporate veil of the bankrupt company, for the purposes of holding third parties, groups, shareholders or administrators liable for their obligations can only be decreed by the bankruptcy court pursuant to Art. 50 of Law No. 10,406, of January 10, 2002 (Civil Code) and Articles 133, 134, 135, 136 and 137 of Law No. 13,105, dated March 16, 2015 (Code of Civil Procedure), and the suspension referred to in § 3 of Art. 134 of Law No. 13,105, dated March 16, 2015 (Code of Civil Procedure) is not applicable."
[20] See DE 56 at ¶ 113.
[21] See Id.
[22] See DE 56 at ¶ 114.

8

companies, on the other. In the case of piercing of the corporate veil, it is sought to overcome separation of assets (patrimonial separation) of a given corporate entity for the accountability of the shareholders or directors. There can be no reversal of acts of assignment of assets (e.g., transfer of shares).

30. Secondly, the Plaintiff's allegation that assets were transferred "without effective compensation" can also not be classified, even in theory, within the concept of abuse of the corporate veil, which could constitute grounds for its piercing. In its previous allegation, it spoke of deviation of assets; while in this one, assets were allegedly illegally transferred without adequate consideration. However, neither of these two situations can be confused with the extent of personal liability, which, as I have already sought to demonstrate, is not to be confused with the concept of debt.

31. Thirdly, the allegation that JBS had legitimized the transfer of assets by treating the transaction as if it were a merger, when, in fact, it was a fraudulent scheme to enrich JBS directors, also does not have any grounds under Art. 50 of the Civil Code.

### f. Abuse of the corporate veil: burden of allegation and proof. Not proven. Piercing the corporate veil assumes a corporate affiliation between people.

32. As already stated, piercing of the corporate veil is an exceptional measure, since the rule is that debt and personal liability go together. Thus, an extension of personal liability can only be authorized for those who are not debtors in the case of adequate allegation and proof of the facts that provide grounds for the measure, according to the rules of Art. 50 of the Civil Code. Therefore, abuse, fraud and joint liability are not presumed; on the contrary, they must be alleged and proven by those who will benefit from its recognition (Federal Law 11,101/05, art. 130[23] and CPC, articles 133[24], 319, III, IV and VI[25], and 373, I[26]).

33. By examining the Amended Complaint, it can be concluded that the Plaintiff has not succeeded in overcoming the burden of allegation and proof. The motion for piercing of the corporate veil brought against JBS is based on three allegations. But, in addition to the fact that these grounds do not constitute, even in theory, any of the grounds for piercing of the corporate veil, the way they were deduced is not sufficient to satisfy the standards imposed by Brazilian law.

---

[23] *Verbatim*: "Art. 130. Acts carried out with the intention of harming creditors are revocable, proving fraudulent collusion between the debtor and the third party contracting with him and the actual loss suffered by the bankrupt estate." (emphasis added).

[24] *Verbatim*: "Art. 133. The incident of disregarding the legal personality will be initiated at the request of the party or the Public Prosecutor's Office, when it is appropriate to intervene in the process." (emphasis added).

[25] *Verbatim*: *"Art. 319. The initial petition will indicate: . . . III – the fact and legal basis of the request; IV – the request with its specifications; . . . VI – the evidence with which the author intends to demonstrate the truth of the alleged facts. . ."*

[26] *Verbatim*: "Art. 373. The burden of proof lies with: . . . I – to the author, regarding the fact constituting his right. . ."

9

34. In fact, there is no individualization of the acts that were allegedly perpetrated by JBS and that could be qualified as deviation of purpose or commingling of assets, which prevents JBS from properly presenting its case to the court.

35. The allegation that JBS had allegedly legitimized fraudulent corporate transactions, as already considered, does not change the basis of the facts and grounds brought by the Plaintiff, which are indicative of the alleged disposal of assets to the detriment of creditors. In fact, the allegation that JBS had "legitimized" the transaction shows that it did not contribute, even in theory, to the outcome that the Plaintiff complains about. JBS was not even a shareholder of Tinto and, of course, it is not possible to confuse the corporate entities whose shares are the object of the corporate transaction, on one hand, and the shareholders, on the other. So much so that the Plaintiff's claim is that the transaction was allegedly intended to enrich shareholders and/or administrators of the corporate entity.

Under penalty of perjury and in accordance with the laws of the United States of America, I hereby declare that the foregoing is true and correct.

Signed on February 4, 2024

São Paulo, SP, Brazil

By:

_____
Flávio Luiz Yarshell

**List of appendices**

| Appendix No. | Description |
|:---:|:---:|
| 1 | *Curriculum vitae.* |