# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,                                    Chapter 15
                                                        Case No.: 23-11719-MAM
      Debtor in a Foreign Proceeding.

———————————————————————/

AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

      Plaintiff,
                                                        Adv. Case No. 23-01118
v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., WWMB
PARTICIPAÇÕES LTDA., JOESLEY
MENDONÇA BATISTA, WESLEY
MENDONÇA BATISTA, and JBS S.A.,

      Defendants.                              **ORAL ARGUMENT REQUESTED**

———————————————————————/

**DEFENDANTS J&F INVESTIMENTOS S.A., JJMB PARTICIPAÇÕES LTDA., WWMB
PARTICIPAÇÕES LTDA., JOESLEY MENDONÇA BATISTA, AND WESLEY
MENDONÇA BATISTA'S MOTION TO DISMISS THE AMENDED COMPLAINT OR
IN THE ALTERNATIVE TO ABSTAIN FROM EXERCISING JURISDICTION**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT............................................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................................... 3

ARGUMENT .......................................................................................................................... 9

I.     THE COURT LACKS PERSONAL JURISDICTION OVER EACH BRAZILIAN DEFENDANT ............................................................................................................. 9

    A.     The Foreign Representative Cannot Establish General Jurisdiction Over Any of the Brazilian Defendants ............................................................................................ 10

    B.     The Foreign Representative Cannot Establish Specific Jurisdiction Over Any of the Brazilian Defendants ............................................................................................ 12

        1.     The Foreign Representative's Group-Pled Allegations Fail ........................... 13

        2.     The Court Lacks Specific Jurisdiction Over J&F.......................................... 14

        3.     The Court Lacks Specific Jurisdiction Over Joesley and Wesley Batista ...................... 17

        4.     The Court Lacks Specific Jurisdiction Over JJMB and WWMB................................... 20

II.    THESE PROCEEDINGS SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS ................................................................................... 21

III.   PRINCIPLES OF INTERNATIONAL COMITY AND INTERNATIONAL AND STATUTORY ABSTENTION ALSO WARRANT DISMISSAL ........................ 25

IV.   THIS ACTION WAS NOT BROUGHT IN GOOD FAITH................................ 26

V.    PLAINTIFF CANNOT TAKE JURISDICTIONAL DISCOVERY ................... 27

CONCLUSION.................................................................................................................... 29

i

# TABLE OF AUTHORITIES

## CASES

*Andres v. Raytheon Techs. Corp.*,
2022 U.S. Dist. LEXIS 62842 (S.D. Fla Apr. 4, 2022) ........................................................28

*Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*,
722 F. App'x 870 (11th Cir. 2018) ....................................................................................28

*Brazil v. Janssen Rsch. & Dev. LLC*,
249 F. Supp. 3d 1321 (N.D. Ga. 2016)..............................................................................14

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
582 U.S. 255 (2017) ...................................................................................................11, 12

*Carmouche v. Tamborlee Mgmt.*,
789 F.3d 1201 (11th Cir. 2015)......................................................................................10, 11

*Casa Blanca de Punta Mita v. Rayment*,
2019 U.S. Dist. LEXIS 47335 (S.D. Cal. Mar. 20, 2019) ...................................................20

*Castillo v. Allegro Resort Mktg.*,
603 F. App'x. 913 (11th Cir. 2015)...............................................................................20, 21

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .......................................................................................15, 16

*Charly Holdings, Inc. v. Curtom Classics, LLC*,
2018 U.S. Dist. LEXIS 204166 (N.D. Ga. Nov. 14, 2018) .................................................23

*Chirag v. MT Marida Marguerite Schiffahrts*,
983 F. Supp. 2d 188 (D. Conn. 2013) ...............................................................................23

*Coffin v. TGM Assocs. LP*,
2021 U.S. Dist. LEXIS 64920 (D. Md. Apr. 2, 2021) ........................................................18

*Daewoo Motor Am., Inc. v. Gen Motors Corp.*,
459 F. 3d 1249 (11th Cir. 2006).......................................................................................25

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .........................................................................................................10

*Diss v. Talas Qais Abdulmunem Al Zawawi*,
644 B.R. 907 (Bankr. M.D. Fla 2022)...........................................................................14, 15

*Elson v. Black*,
2019 U.S. Dist. LEXIS 165821 (C.D. Cal. Sep. 25, 2019) ................................................13

*GDG Acquisitions, LLC v. Gov't of Belize*,
    749 F.3d 1024 (11th Cir. 2014)......................................................................22

*Han v. Yangrai Cho*,
    2019 U.S. Dist. LEXIS 47349 (D. Haw. Mar. 21, 2019) .....................................12

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
    43 F.4th 1303 (11th Cir. 2022) ................................................................. 14, 16

*Home Design Servs. v. Banyan Constr. & Dev., Inc.*,
    2007 U.S. Dist. LEXIS 43634 (M.D. Fla. June 15, 2007) ..................................18

*Iervolino v. Miller*,
    2009 U.S. Dist. LEXIS 151857 (S.D. Fla. June 15, 2009).............................. 18, 20

*In re Bal Harbour Quarzo*,
    LLC, 634 B.R. 827 (Bankr. S.D. Fla. 2021) .................................................. 9, 10

*In re Banco Santander Securities-Optimal Litig.*,
    732 F. Supp. 2d 1305 (S.D. Fla. 2010)......................................................... 22, 23

*In re Jimenez*,
    627 B.R. 536 (Bankr. S.D. Fla. 2021) ..................................................................10

*In re Takata Airbag Prods. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019)................................................................20

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    2020 U.S. Dist. LEXIS 220610 (S.D. Fla Nov. 24, 2020) ......................... 9, 15, 28

*J.P. Morgan Trust Co., N.A. v. Potash Corp. of Sask., Inc. (In re Farmland Indus.)*,
    2007 U.S. Dist. LEXIS 23872 (M.D. Fla Mar. 30, 2007) ................................ 16, 17

*Juniper Networks, Inc. v. Andrade*,
    2020 U.S. Dist. LEXIS 172835 (N.D. Cal. Sep. 21, 2020) ..................................23

*Knepfle v. J-Tech Corp.*,
    48 F.4th 1282 (11th Cir. 2022) ..........................................................................14

*Knieper v. Forest Grp. USA, Inc.*,
    2016 U.S. Dist. LEXIS 193961 (N.D. Ga. Mar. 3. 2016) ............................... 13, 14

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013)...................................................................... 9, 12

*McCoy v. Sandals Resorts, Ltd.*,
    2019 U.S. Dist. LEXIS 199922 (S.D. Fla. Nov. 18, 2019) ..................................28

*Melgarejo v. Pycsa Panama, S.A.*,
   537 F. App'x. 852 (11th Cir. 2013)..................................................................21

*Meraki Invs. v. Unit 1805*,
   319 So.3d 718 (Fla. Dist. Ct. App. 2021) ..........................................................11

*Miller v. Tri Marine Fish Co., LLC*,
   2019 U.S. Dist. LEXIS 71541 (C.D. Cal. Jan. 22, 2019) ....................................23

*MSP Recovery Claims, Series LLC v. Wesco Ins. Co.*,
   2021 U.S. Dist. LEXIS 54162 (S.D. Fla. Feb. 4, 2021) ......................................24

*Nutramax Labs. Inc. v. Lintbells Inc.*,
   2023 U.S. Dist. LEXIS 48838 (M.D. Fla. Mar. 22, 2023) ...................................18

*O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*,
   2016 Bankr. LEXIS 3791 (Bankr. S.D.N.Y. Oct. 21, 2016) ................................15

*Oueiss v. Saud*,
   2022 U.S. Dist. LEXIS 80547 (S.D. Fla. Mar. 29, 2022) ....................................18

*Peeples v. Caroline Container, LLC*,
   2019 U.S. Dist. LEXIS 238314 (N.D. Ga. Apr. 3, 2019).....................................13

*Phx. Corp. Recovery Servs., LLC v. Astrachan (In re Beaulieu Grp., LLC)*,
   2021 Bankr. LEXIS 2662 (Bankr. N.D. Ga. Sep. 29, 2021) ................................19

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,
   362 F. Supp. 3d 1226 (M.D. Fla. 2019) .............................................................21

*Rockwell Automation, Inc. v. Eu Automation, Inc.*,
   2022 U.S. Dist. LEXIS 100307 (D. Del. June 7, 2022) .......................................18

*Rudersdal v. Harris*,
   2020 U.S. Dist. LEXIS 255673 (S.D.N.Y. Aug. 18, 2020)..................................19

*Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*,
   2021 U.S. Dist. LEXIS 108318 (N.D. Ga. June 9, 2021)................................... 13, 14, 15, 17

*Searcy v. Knight (In re Am. Int'l Refinery)*,
   2009 Bankr. LEXIS 5586 (Bankr. W.D. La. Dec. 22, 2009) ......................... 16, 17

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ................................................................................ 15, 17

*St. Martinus Univ., NV v. Caribbean Health Holding, LLC*,
   2020 U.S. Dist. LEXIS 33457 (S.D. Fla. Feb. 27, 2020) ....................................11

*Storms v. Haugland Energy Grp., LLC*,
   2018 U.S. Dist. LEXIS 141122 (S.D. Fla. Aug. 17, 2018) ....................................................9

*Tarasewicz v. Royal Caribbean Cruises Ltd.*,
   2015 WL 11197801 (S.D. Fla. Apr. 1, 2015) .......................................................................29

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................................................... 12, 19

*Wolf v. Celebrity Cruises, Inc.*,
   683 F. App'x 786 (11th Cir. 2017) ..............................................................................27-28

## STATUTES AND OTHER AUTHORITY

11 U.S.C. § 1501 ...............................................................................................................9, 26

11 U.S.C. § 1517 ......................................................................................................................9

28 U.S.C. § 1334 .......................................................................................................... 1, 3, 9, 25

Defendants J&F Investimentos, S.A. ("**J&F**"), JJMB Participações Ltda. ("**JJMB**"), WWMB Participações Ltda. ("**WWMB**"), Joesley Mendonça Batista ("**Joesley**"), and Wesley Mendonça Batista ("**Wesley**") (collectively, the "**Brazilian Defendants**") move to dismiss the Amended Complaint under Rules 12(b)(2), 12(b)(1), (b)(6), and (b)(7) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, or alternatively for the Court to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1).  In support of their motion to dismiss, the Brazilian Defendants rely upon and incorporate by reference Defendant Colorado Investment Holdings LLC's previously filed Motion to Dismiss the Amended Complaint (ECF No. 67), as well as Defendant JBS S.A.'s concurrently filed Motion to Dismiss and expert opinion of Flávio Luiz Yarshell, and state as follows:

## PRELIMINARY STATEMENT

1.     Due process requires that this Court dismiss each of the Brazilian Defendants from this action.  The Foreign Representative has not alleged sufficient contacts between any Brazilian Defendant and the United States and has failed to allege *any* facts establishing a nexus between the sparse contacts that are alleged and the underlying Brazilian law claims.  No nexus was alleged because no nexus exists.  The Foreign Representative admits that all actions that gave rise to its claims took place in Brazil and that the alleged harm was suffered in Brazil.  Because none of the purported conduct or alleged harm has any connection to the United States, there is no jurisdiction over the Brazilian Defendants.

2.     Nor is there any legitimate basis to keep any part of this case in the United States. There is no dispute that six out of seven defendants are Brazilian, all evidence and witnesses are located in Brazil, Brazilian law governs all claims, and Brazil, the designated forum under the

relevant agreements, provides an available forum as evidenced by the fact that these claims have been brought there before.  Indeed, Brazil is the only forum: (i) with jurisdiction over all defendants;[1] (ii) with an interest in this dispute; and (iii) which can enter an enforceable judgment.  By contrast, there is no U.S. interest in or restructuring purpose to these proceedings. There is no cross-border insolvency at issue, no U.S. financial interest at stake, no U.S. creditor, no U.S. assets, and no foreign judgment to enforce.  This action does not belong in the United States and should be dismissed in its entirety.

3.    Dismissal is particularly appropriate here where the action was not brought in good faith.  When obtaining authority to file this chapter 15 case, the Foreign Representative represented to the Brazilian Bankruptcy Court that it intended to pursue the Debtors' former controlling shareholders.  Instead, the Foreign Representative—in concert with counsel accused of gross misconduct highly relevant to this action—initiated the chapter 15 proceeding to bring this action against the Defendants without even naming those shareholders.  Even more egregious, Plaintiff (itself a Brazilian entity, with no connection to the United States) seeks by this action to relitigate time-barred Brazilian law claims against Brazilian Defendants that arise out of decade-old transactions that occurred exclusively in Brazil—claims which all have been litigated or are currently pending in Brazil.  Chapter 15 exists to support and assist foreign proceedings, not to displace them.  It is not intended to serve as a vehicle for disappointed foreign litigants to end run foreign courts and recycle failed litigation in the United States.

4.    The Court should dismiss the action against each of J&F, JJMB, WWMB, Joesley, and Wesley, for lack of personal jurisdiction.  The Brazilian Defendants also join

---

[1] As noted in Colorado Investment Holding LLC's ("**Colorado**") October 9, 2023 Motion to Dismiss, "Colorado already has been subject to the Brazilian court's jurisdiction in a lawsuit brought by Tinto."  Colorado Investment Holdings LLC Mot. to Dismiss Am. Compl. ¶ 24, ECF No. 67 ("Colorado Renewed Mot.").

Colorado in seeking dismissal of the entire action on grounds of *forum non conveniens*, principles of international comity, and under Rule 12(b)(6). Alternatively, the Court should abstain from exercising jurisdiction under 28 U.S.C. §§ 1334(c)(1), (2).

## STATEMENT OF RELEVANT FACTS

5.        On or around November 30, 2022, the Brazilian Bankruptcy Court issued an order permitting the Foreign Representative to file a chapter 15 proceeding to pursue the assets of the Bertins—*i.e.*, "controllers" of Tinto who had overseas companies. *See* Decl. of James C. Tecce Supp. Colorado Investment Holdings LLC Mot. to Dismiss ("Tecce Decl."), Ex. 14 (Brazilian Bankr. Ct. Order, dated Nov. 30, 2022), ECF No. 67-2.

6.        Instead, on March 3, 2023, the Foreign Representative initiated a chapter 15 proceeding, under seal, and brought the present adversary action—not against the Bertins—but rather against four defendants: J&F, JJMB, WWMB, and Colorado (the "Original Complaint").

7.        The original Foreign Representative and Judicial Administrator that initiated the chapter 15 proceeding was Deloitte Touche Tohmatsu Consultores Ltda. ("Deloitte"). *See* Complaint, ECF No. 1. Deloitte was represented by Mr. Octaviano Bazilio Duarte Filho, counsel at the Brazilian law firm Duarte Forssell ("Duarte Forsell"). *See* Corporate Ownership Statement, ECF No. 2. AJ Ruiz Consultoria Empresarial S.A. ("AJ Ruiz") replaced Deloitte as Foreign Representative and Judicial Administrator on June 23, 2023.

8.        On July 31, 2023, Colorado filed a motion to dismiss the Adversary Proceeding.

9.        On September 8, 2023, Plaintiff filed the Amended Complaint.

10.        Although Colorado had asserted in its July 2023 motion to dismiss that the action must be dismissed on the ground that the Bertins[2] are indispensable parties that were not named

---

[2] The "Bertins" means (a) "the Bertins" as defined in the Amended Complaint as well as (b) the Bertins' affiliated companies, *e.g.*, Heber Participações S.A. (a holding company above Tinto in

defendants (*see* Colorado Investment Holdings LLC Mot. to Dismiss Compl. ("Colorado First Mot.") ¶¶ 96-98, ECF No. 18; Colorado Renewed Mot. ¶ 51), the Foreign Representative failed to join the Bertins as defendants in its Amended Complaint.[3]  Instead, the Foreign Representative added three additional Brazilian Defendants: JBS, Joesley Batista, and Wesley Batista.

11.    In its Amended Complaint, the Foreign Representative asserts seven causes of action on behalf of Tinto Holding Ltda., "a Brazilian agribusiness company": unjust enrichment (Count I); aiding and abetting breach of fiduciary duty (Count II); under Article 166 of the Brazilian Civil Code, "action to declare absolute nullity of a transaction" (Count III); under Article 167 of the Brazilian Civil Code, "action to declare void transaction" (Count IV); under Article 129, VI, of the Brazilian Bankruptcy Law, "transfer of establishment" (Count V); under Article 50 of the Brazilian Civil Code, "piercing of the corporate veil"[4] (Count VI); and under Article 186 of the Brazilian Civil Code, "compensation for the damages caused by the illicit acts" (Count VII).  Amended Complaint ("Compl.") ¶¶ 1, 75-123, ECF No. 56.

12.    All claims arise under and are governed by Brazilian law.  Compl. ¶¶ 75-123; *see also* Colorado Renewed Mot. ¶ 21.

13.    All of the Foreign Representative's claims arise from "a series of transactions between 2009 and 2014 connected to [a] merger" between JBS and Bertin S.A, which took place

---

the corporate structure controlled by the Bertins), Comapi Agropecuária S.A., and Mafrip Matadouro Figorífico Rio Pardo S.A.  *See* Amended Complaint ¶¶ 13-15, ECF No. 56.

[3] For this reason, the Court should dismiss this action under Rule 12(b)(7).

[4] As detailed in the concurrently filed motion to dismiss by Defendant JBS, and the accompanying declaration of Flávio Luiz Yarshell, both of which the Brazilian Defendants incorporate by reference, there is no independent cause of action for veil-piercing under Brazilian law.  *See* JBS Mot. to Dismiss § A.  Moreover, like JBS, the Brazilian Defendants—as third parties—lack the necessary shareholder relationship with the debtor Tinto to create a corporate veil that might be pierced in the first place.  *Id.* § A.3; Yarshell Decl. § d.

in Brazil and among Brazilian parties under three share transfer agreements (collectively, the "Share Transfer Agreements").  Compl. ¶¶ 1-5, 35-64.

14.    Defendants Joesley, Wesley, JJMB, and WWMB are not parties to the First and Second Share Transfer Agreements at the heart of this action.  *See* Tecce Decl., Ex. 1; ECF No. 67-1; Tecce Decl., Ex. 2, ECF No. 67-1.

15.    Each of the Share Transfer Agreements contains a forum selection clause designating Brazil as the sole forum for adjudicating any disputes arising out of those agreements.  *See* Tecce Decl. Ex. 1 § 4.6, ECF No. 67-1 (Private Instrument for Assignment and Transfer of Shares and other Covenants among Tinto and Blessed Holdings, dated December 24, 2009); Tecce Decl. Ex. 2 § 4.6, ECF No. 67-1 (Private Instrument Regarding the Assignment and Transfer of Shares and Other Covenants, dated November 11, 2010); Tecce Decl. Ex. 3 § 2.14, ECF No. 67-1 (Transfer Agreement for Shares in the Bertin Equity Investment Fund and Other Covenants, dated June 25, 2014).

16.    Other than Colorado, Plaintiff admits that all defendants are Brazilian.

17.    J&F is a private investment holding company based in São Paulo, Brazil.  By Plaintiff's own admission, it is a "Brazilian entity."  Compl. ¶ 10.  The Amended Complaint contains only one alleged fact specific to J&F's connection to the United States: that J&F "directly or indirectly" held "significant stakes in major U.S. companies, including Smithfield Beef Group, Inc., Swift & Company, and Pilgrim's Pride Corporation."  Compl. ¶ 12.

18.    Plaintiff admits that JJMB and WWMB are "Brazilian entities" wholly owned by Brazilian nationals, Joesley and Wesley, respectively.  Compl. ¶¶ 11, 8.  The Amended Complaint contains only one allegation specific to JJMB's and WWMB's connection to the United States: that JJMB and WWMB "directly or indirectly" held "significant stakes in major

U.S. companies, including Smithfield Beef Group, Inc., Swift & Company, and Pilgrim's Pride Corporation." Compl. ¶ 12.

19.     Plaintiff admits that Joesley and Wesley are "Brazilian nationals." Compl. ¶ 8. Plaintiff alleges that until 2011, Joesley and Wesley were majority shareholders of JBS, "a Brazilian agribusiness company." Compl. ¶¶ 8, 9. Plaintiff alleges Joesley was the Chief Executive Officer and Chairman of JBS (a Brazilian company) from 2007 to 2011. The only facts that Plaintiff has alleged in the Amended Complaint specific to Joesley's connection to the United States is that he (i) "maintains a residence in New York"; (ii) "directly or indirectly" held "significant stakes in major U.S. companies, including Smithfield Beef Group, Inc., Swift & Company, and Pilgrim's Pride Corporation"; (iii) "[o]n information and belief" he "traveled to the United States numerous times to conduct business, including with JP Morgan in New York, in [his] capacit[y] as [a] director[] and officer[] of J&F, JJMB"; and (iv) "is the ultimate beneficial owner[] of Colorado." Compl. ¶¶ 8, 12. The only facts that Plaintiff has alleged in the Amended Complaint specific to Wesley's connection to the United States is that he (i) "until recently . . . maintained a residence in Colorado, which he periodically lived in and frequently visited for business and personal reasons"; (ii) "directly or indirectly" held "significant stakes in major U.S. companies, including Smithfield Beef Group, Inc., Swift & Company, and Pilgrim's Pride Corporation"; (iii) "[o]n information and belief" he "traveled to the United States numerous times to conduct business, including with JP Morgan in New York, in [his] capacit[y] as [a] director[] and officer[] of J&F, JJMB"; and (iv) is the ultimate beneficial owner[] of Colorado." Compl. ¶¶ 8, 12. Plaintiff does not (and cannot) allege that any trips to the United States by Wesley or Joesley related to the transactions at issue in this action, all of which occurred exclusively in Brazil. *See* Compl. ¶¶ 35-64.

20.    JBS is a Brazilian agribusiness company and has filed a separate Motion to Dismiss (ECF No. 74), which the Brazilian Defendants incorporate herein by reference, along with JBS's concurrently filed expert opinion of Flávio Luiz Yarshell.

21.    On October 19, 2023, a creditor participating in Tinto's ongoing bankruptcy proceeding in Brazil (the "Brazil Bankruptcy Proceeding"), Brasil Special Situations I Fundo de Investimento em Direitos Creditórios ("BSS"), filed a submission in the Brazil Bankruptcy Proceeding expressing its concern that AJ Ruiz, the Judicial Administrator and Foreign Representative in this U.S. action, was failing to take necessary measures to safeguard the interests of Tinto's creditors. *See* Declaration of Laura J. Garr ("Garr Decl."), Exhibit 1, at 5533-37.  In particular, BSS asserted that the Foreign Administrator has failed to pursue available steps to reduce or eliminate Tinto's tax liability to Brazilian authorities, which alone accounts for "almost 90%" of Tinto's total debt. *Id.* at 5535.  BSS further requested the court to order AJ Ruiz to clarify what particular measures have been taken in the United States to recover assets from Tinto's "former controllers and partners," (*i.e.*, the Bertins) in light of AJ Ruiz's representation to the Brazilian Bankruptcy Court that this U.S. action would seek to recover assets from those parties. *Id.* at 5539.

22.    On January 19, 2024, JBS filed a submission in the Brazilian Bankruptcy Proceeding echoing BSS's concerns regarding AJ Ruiz's performance as the judicial administrator, including its choice to use this U.S. action to assert claims against JBS and other third parties as opposed to the Bertins. *See* Garr Decl., Ex. 2, at ¶ 20.  JBS further highlighted to the Brazilian Bankruptcy Court that the claims asserted by the Judicial Administrator in this U.S. proceeding are time-barred Brazilian law claims that should have been brought in Brazil. *See id.* at ¶ 17.

23.     On January 29, 2024, the Judicial Administrator filed a response to BSS's October 19, 2023 submission in the Brazilian Bankruptcy Proceeding.  *See* Garr Decl., Ex. 3, at 6123.  In the response, the Judicial Administrator stated that the U.S. proceeding "would have the potential to ensure that creditors are paid," "given the *size and profile* of the third parties sued" in this Court.  *Id.* at 6130 (emphasis added).  Notably, when describing this U.S. action, the Judicial Administrator alluded only to "third parties" and "defendants," omitting the fact that none of Tinto's former controlling shareholders, the Bertins, are named as defendants in this case.  *Id.* at 6135.  AJ Ruiz also indicated in the response that Deloitte (as prior Judicial Administrator) did not seek to reduce the tax debt, in part, because it would be "incongruous" with "the legal measures in the United States."  *Id.* at 6128 n.7.

24.     Separately, on December 30, 2023, the Brazilian National Council of Justice initiated a disciplinary investigation into certain magistrates for decisions they made in bankruptcy cases in Brazil involving Duarte Forsell, among other firms.  *See* Garr Decl., Ex. 4, at 5370164- 1.   Duarte Forsell, which acted as counsel for Deloitte in initiating these U.S. proceedings, has been accused of secretly colluding with magistrates to conduct groundless investigations into the purported dissipation of a debtor's assets, thereby allowing Duarte Forsell to obtain exorbitant success fees paid out from that debtor's assets.  *See id.* at 5370164-2, ¶¶ 13- 14.  In particular, the Brazilian National Council of Justice is investigating allegations that:

> [J]udicial administrators, in a clandestine manner, procure the services of law firms that receive 30% of the assets [of the debtor] as legal fees, in order to investigate alleged [asset] deviations and undertake several unlawful acts in under seal motions, to which the creditors are not parties and do not have access . . . .  Under the pretext of recovering resources for the bankruptcy estate, the services of these professionals are procured in a clandestine manner . . . using a contingency fee structure.  That is, they receive a huge share of the pay-out by way of legal fees . . . .  This method of procurement, rather than fostering a robust search for assets, encourages investigators to invent stories. Service providers do not investigate any [asset] deviations: they seek others who have some kind of relationship with the debtor and who have assets that can be expropriated. Once these

people are identified, they "put an X on their backs" and come up with a plot in order to hold them accountable. This is the *modus operandi*.

*Id*. at 5370164-2, ¶¶ 13-15 (emphasis omitted). The investigation into the collusion between magistrates and Duarte Forsell is ongoing.

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER EACH BRAZILIAN DEFENDANT

25.    The Foreign Representative "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (internal citations and quotations omitted). To do so, the Complaint must "plead sufficient non-conclusory facts" with "specificity" and "tailored" to each of the defendants and the claims asserted. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 220610, at *23, *27 (S.D. Fla Nov. 24, 2020) (internal citations and quotations omitted). "[C]onclusory and speculative allegations are not entitled to the assumption of truth." *Storms v. Haugland Energy Grp., LLC*, 2018 U.S. Dist. LEXIS 141122, at *6-8 (S.D. Fla. Aug. 17, 2018).

26.    In a bankruptcy proceeding like this one, where subject-matter jurisdiction purportedly exists under 28 U.S.C. § 1334(b),[5] personal jurisdiction is assessed based on a defendant's "[m]inimum contacts with the United States as a whole," which must "satisfy the

_____

[5] The Brazilian Defendants dispute that this Court properly has subject matter jurisdiction. First, there is no legitimate purpose to the chapter 15 case. The Foreign Representative initiated the proceeding for the sole purpose of forum shopping and to purportedly establish U.S. jurisdiction to bring these Brazilian law claims in violation of 11 U.S.C. § 1501. Second, because this proceeding, including the Original Complaint, was filed under seal and the Foreign Representative failed to disclose its true intentions in its papers, parties in interest did not have a sufficient opportunity to challenge the appropriateness of the request for recognition. Nor were the Brazilian Defendants ever properly served notice of the Foreign Representative's initial filings, including the chapter 15 petition and recognition request. The Brazilian Defendants reserve the right to seek reversal of the order granting recognition of the Brazilian liquidation proceeding and dismissal of this chapter 15 case under 11 U.S.C. § 1517(d).

Fifth Amendment's due process requirements." *In re Bal Harbour Quarzo*, LLC, 634 B.R. 827, 832 n.13 (Bankr. S.D. Fla. 2021). "For a court to exercise personal jurisdiction" consistent with due process, "a person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *In re Jimenez*, 627 B.R. 536, 544-45 (Bankr. S.D. Fla. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The nature of those required minimum contacts depends on whether the Foreign Representative asserts that this Court has "general" or "specific" personal jurisdiction over the Brazilian Defendants.

27.     The Foreign Representative has failed to articulate its theory of personal jurisdiction as to any of the Brazilian Defendants. *See, e.g.*, Compl. ¶¶ 17-18. This Court has neither general nor specific personal jurisdiction over the Brazilian Defendants, and the Foreign Representative's claims should therefore be dismissed under Federal Rule of Civil Procedure 12(b)(2).

### A. The Foreign Representative Cannot Establish General Jurisdiction Over Any of the Brazilian Defendants

28.     To exercise general jurisdiction consistent with due process, a defendant's forum contacts must be "so 'continuous and systematic' as to render [a party] essentially at home" in the forum. *See Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

29.     Foreign companies, like J&F, JJMB, and WWMB, are ordinarily considered "at home" only in their place of incorporation or principal place of business. *See Daimler*, 571 U.S. at 137; *see also Carmouche*, 789 F.3d at 1204 ("A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'"). Neither J&F nor JJMB or

10

WWMB are "at home" in the United States. Plaintiff admits that J&F is incorporated under the laws of Brazil and has its principal place of business in Brazil. Compl. ¶ 10 ("Defendant J&F Investimentos S.A. is a Brazilian entity."). The same is undisputed for each of JJMB and WWMB. Compl. ¶ 11 (describing both as "Brazilian entities"). And the Foreign Representative does not allege contacts by J&F, JJMB, or WWMB that are "so substantial" as to make this one of those "exceptional" cases in which a foreign corporation is "at home" in "a forum other than its place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1204. Indeed, as set forth in detail below, the Foreign Representative does not allege any contacts between J&F, JJMB, WWMB, and the United States, save an indirect stake in certain U.S. companies. *See infra* § I.B.

30.    For natural persons, the standard for general jurisdiction is "an individual's domicile"—*i.e.*, their current residence and where they intend to remain permanently. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924). There is no dispute that Joesley and Wesley Batista are Brazilian nationals who are domiciled in Brazil. *See* Compl. ¶ 8. That they are alleged to currently or sometime in the past have "maintained" a second "residence" in New York and Colorado, respectively, is of no consequence. *See id*. Ownership of property in the United States, without more, is insufficient to meet the standard for general jurisdiction over foreign defendants. *See, e.g.*, *St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, 2020 U.S. Dist. LEXIS 33457, at *25 (S.D. Fla. Feb. 27, 2020) (Curaçao defendant's "[m]ere ownership of rental property in Florida does not meet the relatively high bar to establish general personal jurisdiction here"); *Meraki Invs. v. Unit 1805*, 319 So.3d 718, 721 (Fla. Dist. Ct. App. 2021) ("The mere ownership of two condominium units is, without more, insufficient to confer general

personal jurisdiction" over Panamanian defendant); *see also Han v. Yangrai Cho*, 2019 U.S. Dist. LEXIS 47349, at *7 (D. Haw. Mar. 21, 2019) ("The mere presence of property in a forum state does not establish sufficient relationship between the owner of the property and the forum state to support the exercise of general jurisdiction over an unrelated cause of action.") (citing *Rush v. Savchuk*, 444 U.S. 320, 328 (1980)).  The Court therefore lacks general jurisdiction over Joesley or Wesley Batista.

### B.  The Foreign Representative Cannot Establish Specific Jurisdiction Over Any of the Brazilian Defendants

31.    "Specific" jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*, 582 U.S. at 262.  Plaintiff does not (and cannot) demonstrate specific jurisdiction over any Brazilian Defendant.

32.    For specific jurisdiction, the Foreign Representative must show that (1) the Defendants "'purposefully availed'" themselves "of the privilege of conducting activities within the United States, thus invoking the benefit of the forum['s]" laws, or otherwise purposefully directed conduct at the United States, and (2) that the Foreign Representative's claims "arise out of or relate to" the Defendants' U.S. contacts.  *Louis Vuitton*, 736 F.3d at 1355-57.  Accordingly, "the defendant's suit-related conduct must create a substantial connection with the forum," and a plaintiff's claims "must arise out of contacts that the 'defendant himself' creates with the forum"—the "activities of plaintiffs or third parties alone will not confer jurisdiction, and the court's analysis is directed to the defendant's contacts with the forum itself and 'not the defendant's contacts with persons who reside there.'"  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985)).  Here, the Complaint is devoid of any factual allegation that establishes any connection between the

Foreign Representative's claims and the Brazilian Defendants' limited contacts with the United States.  Indeed, Plaintiff admits that all alleged acts underlying the claims occurred exclusively in Brazil.

**1.    The Foreign Representative's Group-Pled Allegations Fail**

33.    Plaintiff's group-pled allegations are insufficient to establish a prima facie case of specific jurisdiction.  A plaintiff must establish specific jurisdiction for each defendant and may not attribute jurisdictional contacts from one defendant to another.  *See, e.g.*, *Peeples v. Caroline Container, LLC*, 2019 U.S. Dist. LEXIS 238314, at *15 n.3 (N.D. Ga. Apr. 3, 2019) (dismissing defendant for lack of personal jurisdiction because "Plaintiff's 'group pleading' methods [were] not an acceptable way to establish personal jurisdiction over multiple defendants at once") (internal citations and quotations omitted); *Knieper v. Forest Grp. USA, Inc.*, 2016 U.S. Dist. LEXIS 193961, at *15 (N.D. Ga. Mar. 3. 2016) (rejecting allegations "refer[ring] to 'Defendants' as taking some action without specifying the role or acts of any individual Defendant[,]" and "list[ing] several Defendants without explaining the particular role of each[]"); *see also Elson v. Black*, 2019 U.S. Dist. LEXIS 165821, at *21 (C.D. Cal. Sep. 25, 2019) ("Plaintiffs fail to discriminate with any specificity as to which of the named corporate Defendants have purposefully directed its activities at the forum state . . . leaving the Court to speculate as to which Defendant availed itself.  This is insufficient. . . . a plaintiff must establish specific jurisdiction for each defendant and may not attribute specific jurisdiction from one defendant to another.").

34.    Here, the Foreign Representative "repeatedly lumps" several, or even all seven, defendants together "without alleging specific acts taken by each."  *Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*, 2021 U.S. Dist. LEXIS 108318, at *13 (N.D. Ga. June 9, 2021); *see e.g.*, Compl.

¶¶ 12, 39-40, 71, 77-81, 83, 90, 96-97, 102, 108, 113-16, 121, 123.  This does not satisfy the Foreign Representative's "initial burden of showing [the defendants'] minimum contacts with" the forum, and fails to establish a prima facie case of specific jurisdiction.  *See Knieper*, 2016 U.S. Dist. LEXIS 193961, at *15-16; *Sanho*, 2021 U.S. Dist. LEXIS 108318, at *13 (finding plaintiff's "largely conclusory allegations" against the "amalgamated" defendant group "lack the requisite specificity to sustain [the plaintiff's] burden").

35.     To the extent that the Foreign Representative seeks to impute Colorado's U.S. contacts to any of the Brazilian Defendants, or attribute any of the meager U.S. contacts alleged (*see infra* §§ I.B.2-4) from one Brazilian Defendant to another, that attempt also fails.  The Foreign Representative never states that he is attempting to establish an agency or alter ego theory of jurisdiction.  But if he did, the few vague references to "ultimate beneficial owners[hip]" in Colorado or alleged ownership interests in other U.S. entities (*e.g.*, Compl. ¶¶ 3, 8, 12) would fall far short of the "high and very significant" factual showing needed to sustain such a theory of personal jurisdiction.  *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022); *see also Brazil v. Janssen Rsch. & Dev. LLC*, 249 F. Supp. 3d 1321, 1332, 1335 (N.D. Ga. 2016) (granting motion to dismiss where "Plaintiff has not even undertaken to make [the] showing" necessary to impute in-forum subsidiaries' contacts to the defendant).  The Amended Complaint should be dismissed for this reason alone.

### 2.  The Court Lacks Specific Jurisdiction Over J&F

36.     The Complaint fails to make a prima facie case of specific personal jurisdiction as to J&F because no alleged contacts with the United States relate to the controversy before the court.  *See Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1309 (11th Cir. 2022); *see also Diss v. Talas Qais Abdulmunem Al Zawawi,* 644 B.R. 907, 914-15

14

(Bankr. M.D. Fla 2022). Indeed, all of J&F's alleged activities occurred in Brazil. *See* Compl. ¶¶ 10, 24, 26, 32, 36-37, 39-40, 58-59, 61, 71, 79, 90, 114, 116, 123; *see also O'Toole v. MyPlace Dev. SP. Z O.O. (In re Sledziejowski)*, 2016 Bankr. LEXIS 3791, at *15-16 (Bankr. S.D.N.Y. Oct. 21, 2016) (noting "the overwhelmingly foreign nature of the transactions at issue here," involving foreign defendants and investments made "with Polish entities under Polish law," and finding that "the Amended Complaint currently fails to make a prima facie showing of specific personal jurisdiction over the Movants"). Plaintiff's *only* allegation of a possible contact between J&F and the United States is that "[t]he Batistas, JBS, J&F, JJBM and WWBM all directly or indirectly hold (or held during the events described below) significant stakes in major U.S. companies, including Smithfield Beef Group Inc., Swift & Company, and Pilgrim's Pride Corporation." Compl. ¶ 12. This is insufficient.

37.     First, Plaintiff does not plead with specificity what interest defendant J&F *itself* purportedly has or had in the U.S. companies, instead alleging generally that all of the Brazilian Defendants either "directly or indirectly" at some point held some interest in those companies. *See In re Zantac*, 2020 U.S. Dist. LEXIS 220610, at *23, 27 (explaining that prima facie jurisdiction requires facts pled with "specificity" and "tailored" to each defendant); *see also Sanho*, 2021 U.S. Dist. LEXIS 108318, at *13 (finding plaintiff's "jurisdictional allegations are plagued by their cumulative nature" and "repeatedly lump[] all four Defendants together under the collective umbrella [] without alleging specific acts taken by each"). But even if Plaintiff had pled with specificity as to J&F, holding an unspecified "significant stake" in a U.S. corporation does not constitute a sufficient minimum contact with the United States. *See Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (owning shares of a corporation located in a particular forum does not subject the shareholder to personal jurisdiction in that forum); *Cent. States, Se. & Sw. Areas*

*Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (collecting cases) ("We join other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact."); *see also J.P. Morgan Trust Co., N.A. v. Potash Corp. of Sask., Inc. (In re Farmland Indus.)*, 2007 U.S. Dist. LEXIS 23872, at *23 (M.D. Fla Mar. 30, 2007) (finding a lack of jurisdiction even where a foreign entity wholly-owned a U.S. company because "the 'mere presence of a wholly owned subsidiary'" in the forum "'is insufficient to form a basis for the assertion of personal jurisdiction.'" (quoting *Abramson v. Walt Disney Co.*, 132 F. App'x. 273, 276 (11th Cir. 2005))).  Because the Foreign Representative offers no other contacts between J&F and the United States, he cannot establish specific jurisdiction.

38.     Second, though the Foreign Representative's failure to allege sufficient U.S. contacts by J&F itself necessitates dismissal, the Foreign Representative also has not satisfied the "relatedness" prong of the specific jurisdiction standard, which requires that defendant's minimum contacts with the forum give rise or relate to the controversy at issue.  *See Herederos*, 43 F.4th at 1309.  The action arises from "a series of transactions between 2009 and 2014 connected to [a] merger" between JBS and Bertin S.A, all of which took place in Brazil and among Brazilian parties.  Compl. ¶¶ 1-5, 35-64.  The Foreign Representative's claims do not relate to any purported "direct[] or indirect[]" shareholding by J&F in a U.S. company (Compl. ¶ 12), and certainly do not arise from any such ownership interest.  *See J.P. Morgan Trust Co., N.A.*, 2007 U.S. Dist. LEXIS 23872, at *23; *see also Searcy v. Knight (In re Am. Int'l Refinery)*, 2009 Bankr. LEXIS 5586, at *25 (Bankr. W.D. La. Dec. 22, 2009) (explaining that a "defendant's investment in a company that is based in the forum is generally not a sufficient basis for personal jurisdiction," and granting dismissal for lack of personal jurisdiction).

Case 23-01118-MAM    Doc 79    Filed 02/05/24    Page 23 of 37

**3. The Court Lacks Specific Jurisdiction Over Joesley and Wesley Batista**

39.     This Court similarly cannot exercise specific jurisdiction over Joesley or Wesley Batista because the Complaint fails to allege sufficient facts that either purposefully availed himself of or directed conduct at the United States, nor does it allege that any of the Foreign Representative's claims arise out of the extremely sparse contacts between either of Joesley or Wesley and the United States.

40.     Most of the allegations are group-pled and consist of vague assertions about "the Batistas" collectively, regarding their purported status as "the ultimate beneficial owners" in a U.S.-based entity (Colorado) or the Batistas and other Defendants' status as "direct[] or indirect[]" shareholders—during some period of time—"in major U.S. companies."  Compl. ¶¶ 3, 8, 12, 79, 96.  Such allegations are insufficient to sustain specific jurisdiction.  *See supra* § I.B.1.  Even if the Complaint had not "repeatedly lump[ed] . . . Defendants together under the collective umbrella," *Sanho*, 2021 U.S. Dist. LEXIS 108318, at *13, the Foreign Representative's allegations about Joesley and Wesley Batista's indirect, "ultimate beneficial" ownership in Colorado and unspecified shareholdings (direct or indirect) "in major U.S. companies" are still "insufficient to form a basis for the assertion of personal jurisdiction" over Messrs. Batista.  *J.P. Morgan Trust Co., N.A.*, 2007 U.S. Dist. LEXIS 23872, at *23; *see also Shaffer*, 433 U.S. at 216; *Searcy*, 2009 Bankr. LEXIS 5586, at *25.

41.     Plaintiff's conclusory allegations made "[o]n information and belief" that "both Joesley Batista and Wesley Batista traveled to the United States numerous times to conduct business" are likewise insufficient to make a prima facie showing.  *See* Compl. ¶ 12.  Allegations made "'upon information and belief'" are "'speculative assertion[s]" which "[t]he Court need not credit . . . for purposes of determining whether it has personal jurisdiction over" a foreign

defendant.  *Oueiss v. Saud*, 2022 U.S. Dist. LEXIS 80547, at *74 (S.D. Fla. Mar. 29, 2022); *see also Coffin v. TGM Assocs. LP*, 2021 U.S. Dist. LEXIS 64920, at *11 (D. Md. Apr. 2, 2021) (finding "'upon information and belief' is often used inappropriately to couch conclusory allegations," and such allegations are "insufficient" for specific jurisdiction); *Nutramax Labs. Inc. v. Lintbells Inc.,* 2023 U.S. Dist. LEXIS 48838, at *6 (M.D. Fla. Mar. 22, 2023) (declining "to accept as true allegations upon information and belief" regarding defendant's forum contacts); *Rockwell Automation, Inc. v. Eu Automation, Inc.*, 2022 U.S. Dist. LEXIS 100307, at *23 (D. Del. June 7, 2022) (finding allegations "plead on 'information and belief'" regarding contacts with U.S.-based company were "insufficient to support a prima facie showing of specific jurisdiction").  Furthermore, vague references to unspecified business trips to the United States similarly cannot show that Joesley or Wesley purposefully availed themselves of or directed any conduct at the United States.  *See, e.g.*, *Iervolino v. Miller*, 2009 U.S. Dist. LEXIS 151857, at *10 (S.D. Fla. June 15, 2009) ("[T]he occasional trip to the forum [] is not enough contact to subject an individual to personal jurisdiction."); *Home Design Servs. v. Banyan Constr. & Dev., Inc.*, 2007 U.S. Dist. LEXIS 43634, at *7-9 (M.D. Fla. June 15, 2007) (declining to exercise either general or specific jurisdiction based on allegations that defendants were "officers and directors of a [] corporation [located in the forum state], and [that they] have traveled into [the forum state] on behalf of [the foreign parent]").

42.    But even if any of these scant allegations amounted to purposeful availment or direction at the forum, the Court lacks specific jurisdiction over both Joesley and Wesley because the Complaint does not and cannot allege that the underlying claims relate to or arise from their status as indirect shareholders or that the unspecific "business" trips relate in any way to the disputed Share Transfer Agreements.  To start, Plaintiff omits that neither Joesley nor

Wesley was even a party to the First and Second Share Transfer Agreements that form the basis of the Foreign Representative's claims.  *See supra* Statement of Relevant Facts.  In any event, none of the share transfers has any relation to Joesley or Wesley's alleged U.S. contacts because the transfers did not occur in the United States.  In fact, Plaintiff admits (Compl. ¶¶ 35-64) that all of the entities and individuals—including Joesley and Wesley—alleged to have been "participating in those transactions were located in [Brazil]."  *See Phx. Corp. Recovery Servs., LLC v. Astrachan (In re Beaulieu Grp., LLC)*, 2021 Bankr. LEXIS 2662, at *13-15 (Bankr. N.D. Ga. Sep. 29, 2021) (no specific jurisdiction where plaintiff's fraudulent transfer and unjust enrichment claims against a Belgian defendant were "based on it benefitting from transfers initially made to" other foreign defendants outside the United States).  Because the Foreign Representative has failed "to connect the alleged [U.S.] contacts" of Joesley or Wesley "with [its] claims," the Court is "preclude[d] . . . from exercising specific jurisdiction" over either of them.  *See Rudersdal v. Harris*, 2020 U.S. Dist. LEXIS 255673, *63-64 (S.D.N.Y. Aug. 18, 2020) (dismissing claims for fraud and breach of fiduciary duties against Bulgarian defendants whose alleged U.S. contacts were transactions "that purportedly 'benefitted U.S. owners'").

43.     Moreover, the single conclusory allegation that "Joesley Batista directed his J.P. Morgan bankers in New York to structure Colorado as a hidden Delaware vehicle for the Batista family" and that "[t]he Batistas purposefully concealed their control of Colorado, which J.P. Morgan and the Batistas designed solely to receive Tinto's interest in Bertin FIP for the Batistas' benefit" (Compl. ¶ 46) is likewise insufficient.  A plaintiff's claims "must arise out of contacts that the 'defendant *himself*' creates with the forum," and "'not the defendant's contacts with persons who reside there,'" such as Joesley Batista's "J.P. Morgan bankers in New York." *Walden*, 571 U.S. at 284 (emphasis added).

44.    Finally, Joesley's and Wesley's property in New York and Colorado are entirely unrelated to the three alleged share transfers—all of which occurred in Brazil—and Plaintiff does not allege otherwise.  Compl. ¶¶ 8, 35-64.  Courts in this Circuit and elsewhere have consistently held that allegations of property owned in the forum that is "not the subject of" the plaintiff's complaint are "insufficient to constitutionally assert personal jurisdiction."  *See, e.g.*, *Iervolino*, 2009 U.S. Dist. LEXIS 151857, at *8-9 (allegations that defendant "owns a condominium in Florida" were "insufficient to constitutionally assert personal jurisdiction" because "the condominium is not the subject of Plaintiff's Complaint"); *Casa Blanca de Punta Mita v. Rayment*, 2019 U.S. Dist. LEXIS 47335, at *10 (S.D. Cal. Mar. 20, 2019) (finding defendant's second "home in [California] do[es] not form a sufficient basis for specific jurisdiction" for claims arising in Mexico).

### 4.    The Court Lacks Specific Jurisdiction Over JJMB and WWMB

45.    The Complaint makes no individualized, non-conclusory allegations of U.S. contacts by JJMB or WWMB.  *See* Compl. ¶ 12; *see generally* Compl.  In fact, the Complaint is devoid of any individualized allegations as to conduct by JJMB and WWMB at all, save for one isolated allegation regarding the "Third Share-Transfer Agreement," which again occurred entirely in Brazil and has no U.S. nexus at all.  *See* Compl. ¶ 61.  There are no facts alleged to show that JJMB and WWMB "purposefully availed" themselves of the privilege of conducting activities within the United States.  *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1148-49 (S.D. Fla. 2019) (concluding plaintiffs failed to establish a prima facie case of personal jurisdiction over foreign defendants where the "generalized allegations [were] devoid of specificity, and thereby fail[ed] to establish that the Foreign Defendants 'purposefully availed' themselves of the privileges of conducting activity" in the forum); *see also Castillo v. Allegro*

*Resort Mktg.*, 603 F. App'x. 913, 916 (11th Cir. 2015) (affirming dismissal for lack of personal jurisdiction where plaintiff "made no specific factual allegations of [defendant's] contacts" with the forum). As for the single, non-individualized allegation regarding the Brazilian Defendants' unspecified "direct or indirect" ownership stakes in U.S. companies (Compl. ¶ 12), the gravamen of the Foreign Representative's claims remain the share transfers that occurred in Brazil, none of which arose from JJMB or WWMB's (or any other Brazilian Defendant's) alleged holdings in any U.S. companies. *See supra* §§ I.B.2, I.B.3.

46.     The exclusive foreign nature of the underlying claims, combined with the insufficient and inadequately pled allegations of each Brazilian Defendant's U.S. contacts, preclude this Court's exercise of personal jurisdiction over any of them. *See Castillo*, 603 F. App'x at 916 (affirming dismissal for lack of personal jurisdiction where plaintiff "failed to meet her initial burden to show that [Spanish defendant] had minimum contacts with [the forum] sufficient to satisfy due process"); *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1241 (M.D. Fla. 2019) ("Plaintiff has failed to satisfy the 'minimum contacts' inquiry and [] exercising jurisdiction over Defendant would therefore violate due process.").

## II.     THESE PROCEEDINGS SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS

47.     Because the Court lacks personal jurisdiction over all the Brazilian Defendants, no further analysis is required for dismissal. *See Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x. 852, 862-863 (11th Cir. 2013) ("[I]t is settled that "the doctrine of *forum non conveniens* can never apply if there is absence of [personal] jurisdiction."). But the fact that the Court lacks personal jurisdiction over all but one defendant also solidifies Colorado's argument that the action should be dismissed for *forum non conveniens*. *See* Colorado Renewed Mot. ¶¶ 8-25.

48.    Defendant Colorado's Motion to Dismiss firmly establishes why all the requirements for dismissal under *forum non conveniens* are present here.  *See* Colorado Renewed Mot. ¶¶ 8-25.

49.    As explained in Colorado's Motion:

- The forum-selection clause in the Share Transfer Agreements designating Brazil as the sole forum for adjudicating "any" disputes arising out of those agreements is essentially case dispositive.  *See* Colorado Renewed Mot. ¶¶ 9-11; *see also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis);

- Where, as here, a forum-selection clause exists, a judgment issued by this Court will be unenforceable in Brazil.  S*ee* Colorado Renewed Mot. ¶ 18;

- All private interest factors weigh in favor of dismissal—*e.g.*, Brazil has better access to the evidence, this Court lacks subpoena power over key witnesses, and the cost of necessary evidence will be much greater in this forum.  *Id.* ¶¶ 13-19;

- The public interest factors all support dismissal—*e.g.*, all claims arise under Brazilian law and Brazil has a greater interest in this dispute, while Florida lacks any ties to this matter.  *Id.* ¶¶ 20-23;

- The Foreign Representative can reinstate its suit in Brazil without undue prejudice or inconvenience.  *Id.* ¶ 24; and

- Brazil is also an adequate and available forum such that it would be proper for the Court to dismiss the Complaint based on *forum non conveniens*.  *See id.* ¶ 12.

50.    Brazil not only provides a forum with jurisdiction over the whole action and all of the parties, it is also the *only* forum with jurisdiction over all defendants.  Indeed, this Court's lack of personal jurisdiction over the Brazilian Defendants further warrants dismissal on the ground of *forum non conveniens*.

51.    This Circuit has long recognized that the "Court's ability to exercise personal jurisdiction over all Defendants is an important private convenience factor in the *forum non conveniens* analysis."  *In re Banco Santander Securities-Optimal Litig.*, 732 F. Supp. 2d 1305,

1314 (S.D. Fla. 2010). In *In re Banco Santander*, the court dismissed on *forum non conveniens*

because it "lack[ed] jurisdiction over half (and apparently some of the most important) of the

Defendants in this action," and found that consequently it made "little sense to try an expensive

and time-consuming case in Florida while another court, in a virtually duplicative proceeding

over four thousand miles away, potentially adjudicates the same legal and factual issues." 732 F.

Supp. 2d at 1312-14 (describing a "textbook example of a private convenience factor favoring

*forum non conveniens* dismissal"); *see also Juniper Networks, Inc. v. Andrade*, 2020 U.S. Dist.

LEXIS 172835, at *29 (N.D. Cal. Sep. 21, 2020) (explaining that balancing of public and private

interests "will be significantly impacted by the Court's ultimate determination whether it

has personal jurisdiction over the Foreign Defendants. For example, the weight given to private

interest factors relevant to a *forum non conveniens* analysis may be substantially different if the

Court is considering only the claims against [one defendant] or the claims against all [five]

Defendants"); *Miller v. Tri Marine Fish Co., LLC*, 2019 U.S. Dist. LEXIS 71541, at *19 (C.D.

Cal. Jan. 22, 2019) (private interest factors favor dismissal where "it appears that several of the

Defendants may not be subject to personal jurisdiction in this Court").

52. Dismissing under these circumstances—where this Court lacks jurisdiction over

six out of seven defendants—eliminates the risk of parallel proceedings and divergent outcomes.

*See Charly Holdings, Inc. v. Curtom Classics, LLC*, 2018 U.S. Dist. LEXIS 204166, at *14 (N.D.

Ga. Nov. 14, 2018) (finding continued litigation of a case involving "foreign parties, over whom

this Court [does] not have personal jurisdiction . . . only increase[s] the likelihood of piecemeal

litigation" and counsels in favor of dismissal); *see also Chirag v. MT Marida Marguerite

Schiffahrts*, 983 F. Supp. 2d 188, 196 (D. Conn. 2013) (dismissing for *forum non conveniens*

where the court already had dismissed foreign defendant with the "strongest connections to

the litigation," and thus the dangers of "piecemeal litigation" were "much more pronounced" if the action proceeded in a U.S. court without the dismissed foreign defendant), *aff'd*, 604 F. App'x 16 (2d Cir. 2015); *MSP Recovery Claims, Series LLC v. Wesco Ins. Co.*, 2021 U.S. Dist. LEXIS 54162, at *11, 15 (S.D. Fla. Feb. 4, 2021) (agreeing that "retaining the case in this district could, in fact, lead to piecemeal litigation because the Court lacks personal jurisdiction over at least one [d]efendant," and granting motion to transfer venue).

53.    Here, the risk of piecemeal litigation and conflicting outcomes is not hypothetical. As Defendant Colorado has already explained,[6] several other actions already have been brought in Brazil—some still pending—which "involve the claims, assets, and allegedly aggrieved parties in this proceeding."  *See* Colorado Renewed Mot. ¶¶ 27-33.  Plaintiff nonetheless brings the same time-barred[7] claims here, not to assist Brazilian courts but to end run them because, to date, each prior attempt at invalidating the Share Transfer Agreements in Brazil has failed.[8]

54.    Specifically, the 2013 Tinto Lawsuits resulted in a settlement whereby Tinto ratified the First and Second Transfer Agreements that are the subject of this action and the Brazilian Court dismissed the claims related to those agreements *with prejudice*.  Colorado

---

[6] Defendant Colorado's Motion to Dismiss establishes multiple additional bases for dismissal under Rule 12(b)(6), which the Brazilian Defendants incorporate by reference herein.  *See* Colorado Renewed Mot. ¶¶ 38-50 (demonstrating why Plaintiff's claims are time-barred, precluded as a matter of res judicata and collateral estoppel, and otherwise fail to state a claim for relief).

[7] As detailed in Colorado's Motion to Dismiss, all seven causes of action should have been brought as Revocatory Actions governed by the Brazilian Bankruptcy Act.  Colorado Renewed Mot. ¶ 38.  Under Article 132 of the Brazilian Bankruptcy Act, all seven Causes of Action are subject to a three-year statute of limitations that expired on November 29, 2021—more than two years ago.  *Id.*  Accordingly, this Court has additional grounds to dismiss the entire action under Rule 12(b)(6).

[8] Tinto's positions and admissions in the 2013 Tinto Lawsuits and 2015 Tax Suit, wherein it ratified the First and Second Transfer Agreements and opposed efforts to annul the First and Second Transfer Agreements, respectively, bar the present action and further warrant dismissal under Rule 12(b)(6).  *See* Colorado Renewed Mot. ¶ 39.

Renewed Mot. ¶ 28.[9]  A 2015 Tax Suit finding the same agreements were void was vacated by

the appellate court on July 19, 2023 and is pending on remand.  Colorado Renewed Mot. ¶ 29.[10]

The Berf Suit filed on May 31, 2022, alleging fraudulent transfer, was deemed time-barred and

dismissed with prejudice.  Colorado Renewed Mot. ¶ 30.[11]

55.    Forum shopping to try and achieve a different outcome should not be

countenanced by this Court.

### III.  PRINCIPLES OF INTERNATIONAL COMITY AND INTERNATIONAL AND STATUTORY ABSTENTION ALSO WARRANT DISMISSAL

56.    Principles of comity further warrant dismissal.  The Brazilian Bankruptcy Court

has exclusive jurisdiction over the Foreign Representative's claims, is actively administering

Tinto's assets for distribution to its creditors, and it is entitled to deference.  If the Foreign

Representative contends that Tinto's creditors have been harmed by Defendants actions, that

must be decided by the Brazilian Court.  Indeed, the Comissão de Valores Mobiliários—the

Brazilian Securities Exchange Commission—is currently examining the JBS-Bertin S.A. merger.

Colorado Renewed Mot. ¶ 32.  These parallel proceedings in Brazil are deserving of respect and

deference.  *See Daewoo Motor Am., Inc. v. Gen Motors Corp.*, 459 F. 3d 1249, 1257-1259 (11th

Cir. 2006) (holding that "[t]he district court did not abuse its discretion when it granted comity to

the order of the Korean court").

57.    Similarly, abstention in favor of the Brazilian Court supervising Tinto's

bankruptcy is appropriate both under the judicial doctrine of international abstention and sections

1334(c)(1) and (c)(2) of Title 28.  Here, the Amended Complaint (like the Original Complaint) is

devoid of any core bankruptcy claims.  All claims asserted (Compl. ¶¶ 75-123) are Brazilian law

---

[9] *See* Tecce Decl., Exs. 4-8, ECF No. 67-1.

[10] *See* Tecce Decl., Exs. 9-11, ECF No. 67-1.

[11] *See* Tecce Decl., Ex. 12.

claims over which the Bankruptcy Court has exclusive jurisdiction and which have been or are in the process of being decided by Brazilian courts. Brazil has a compelling interest in this matter and its courts are the only ones that can enforce a judgment. Indeed, the *only* basis for this Court's involvement in this exclusively foreign controversy is a $1,500 retainer paid to a Florida law firm for the sole purpose of evading prior determinations. Under these circumstances, abstention in favor of Brazilian courts is proper.

### IV.   THIS ACTION WAS NOT BROUGHT IN GOOD FAITH

58.    Dismissal is further warranted where, as here, the action was brought in bad faith.

59.    The Brazilian court authorized the Foreign Representative to take action in the United States based on the purported purpose of initiating this chapter 15 proceeding to pursue the assets of the Bertins. *See* Tecce Decl., Ex. 14 (Brazilian Bankr. Ct. Order dated Nov. 30, 2022), ECF No. 67-2. Instead, the Foreign Representative has used these proceedings to (i) pursue the Brazilian Defendants and JBS, knowing that this Court lacks jurisdiction over all of them (or at a minimum, failing to conduct any meaningful investigation before haling them into Court) (*see* supra §§ I.B.2, I.B.3, I.B.4), and (ii) assert claims that are barred in Brazil and which could never have otherwise been brought in Florida or the United States (*see* supra § II n.7). Plaintiff has not even bothered to join the Bertins as Defendants. Such obvious deception and attempts at forum shopping and harassment not only run counter to the purpose of chapter 15, but also violate 11 U.S.C. § 1501.

60.    And while the Foreign Representative depletes estate assets by pursuing this baseless action in the U.S., it does so instead of taking steps in Brazil to substantially reduce the tax liability that accounts for 90% of Tinto's debt—an election that favors the Judicial Administrator to the detriment of all creditors and which has recently come under scrutiny in the Brazilian Bankruptcy Proceeding. *See* supra ¶¶ 21-23. Notably, in response to the creditors'

request for more information about the U.S action, given that the action was taken under seal, the Judicial Administrator conspicuously chose to omit the fact that the Bertins are not the defendants in this case, and that the Judicial Administrator had instead chosen to pursue claims against JBS and the Brazilian Defendants. *See Garr Decl.*, Ex. 3, at 6135.

61.    The bad faith filing of these proceedings is a textbook example of the conduct currently subject to the Brazilian National Council of Justice's investigation into proceedings involving the original Foreign Representative's counsel, Duarte Forssell—a law firm whose alleged "*modus operandi*" is to fabricate unfounded asset-recovery claims against third-parties as a "pretext" to extract recoveries not for bankruptcy creditors, but for its own gains. *See supra* ¶ 24. That the Judicial Administrator stated in his January 29, 2024 statement that the "size and profile" of the particular Defendants in this action increases the potential that "creditors are paid" (*see supra* ¶ 23) only confirms that Defendants were specifically targeted without any legitimate basis for the allegations made against them. This Court should not be used as another venue for such bad faith tactics.

### V.    PLAINTIFF CANNOT TAKE JURISDICTIONAL DISCOVERY

62.    Finally, because this case should be dismissed on multiple grounds, any demand for jurisdictional discovery is improper.

63.    Even after exercising its right to amend its Original Complaint, Plaintiff still cannot establish a prima facie case of personal jurisdiction as to any of the Brazilian Defendants. That is because it is undisputed that all acts giving rise to the claim occurred exclusively in Brazil. Therefore, any Brazilian Defendant's alleged contacts with this forum—contacts that are extremely minimal—do not and cannot relate in any way to these claims.

64.    The lack of jurisdictional facts or any genuine dispute as to those facts forecloses Plaintiff's ability to take jurisdictional discovery. *See Wolf v. Celebrity Cruises, Inc.*, 683 F.

App'x 786, 792 (11th Cir. 2017) (explaining that the "right to jurisdictional discovery is a qualified one, available when a court's jurisdiction is genuinely in dispute. . . . Such discovery requests should not serve as fishing expeditions, and, as such, are appropriate only when a party demonstrates that it can supplement its jurisdictional allegations through discovery," and affirming district court's denial of jurisdictional discovery) (internal citations and quotations omitted); *In re Zantac*, 2020 U.S. Dist. LEXIS 220610, at *20 (finding "[a] plaintiff 'is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he should have had — but did not — before coming through the courthouse doors.'" (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007))); *Andres v. Raytheon Techs. Corp*., 2022 U.S. Dist. LEXIS 62842, at *12-13 (S.D. Fla Apr. 4, 2022) (finding "jurisdictional discovery is not warranted 'solely to remedy a lack of jurisdictional facts or an insufficient pre-filing investigation" (quoting *In re Zantac,* 2020 U.S. Dist. LEXIS 220610, at *23)).

65.    Jurisdictional discovery is particularly inappropriate here because the Foreign Representative never should have brought this action in the United States and the case should be dismissed. *See Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 886-887 (11th Cir. 2018) (finding that "because dismissal was appropriate on *forum non conveniens* grounds, the court properly denied [the plaintiff's] request for jurisdictional discovery on the issue of personal jurisdiction," and affirming the district court's decision to dismiss and deny jurisdictional discovery); *McCoy v. Sandals Resorts , Ltd.*, 2019 U.S. Dist. LEXIS 199922, at *10 (S.D. Fla. Nov. 18, 2019) (denying Plaintiff's request to conduct jurisdictional discovery pending the court's ruling on dismissal because "the less burdensome course is for the Court to first resolve Defendants' *forum non conveniens* arguments asserted in [the] Motion to Dismiss . . . before permitting Plaintiff to conduct jurisdictional discovery");

*Tarasewicz v. Royal Caribbean Cruises Ltd.,* 2015 WL 11197801, at *2 (S.D. Fla. Apr. 1, 2015) (finding "a court should consider dismissal on *forum non conveniens* grounds [before] . . . requiring the parties to engage in related jurisdictional discovery").

## **CONCLUSION**

66.    Each of J&F, JJMB, WWMB, Joesley Batista, and Wesley Batista respectfully submits that the Motion should be granted, the case should be dismissed with prejudice, and the Brazilian Defendants should be awarded such other relief as the Court deems appropriate.

29

Dated: February 5, 2024

Respectfully submitted,

/s/ *Jason Zakia*

## WHITE & CASE

Jason Zakia
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606-4302
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: jzakia@whitecase.com
Florida Bar No. 698121

Laura Garr (*pro hac vice pending*)
1221 Avenue of the Americas
New York, New York 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: laura.garr@whitecase.com

*Attorneys for Defendants J&F Investimentos S.A., JJMB Participações Ltda., WWMB Participações Ltda., Joesley Mendonça Batista, and Wesley Mendonça Batista*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served upon all interested parties and the Court on February 5, 2024.

Dated: February 5, 2024                                    /s/ *Jason Zakia*_____