# EXHIBIT 1

fls. 5533

**EXCELENTÍSSIMO SENHOR DOUTOR JUIZ DE DIREITO DA 2ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS DO FORO CENTRAL DO ESTADO DE SÃO PAULO**

**Processo nº 1088030-29.2016.8.26.0100**

**BRASIL SPECIAL SITUATIONS I FUNDO DE INVESTIMENTO EM DIREITOS CREDITÓRIOS** "BRASIL SPECIAL SITUATIONS", pessoa jurídica de direito privado, com sede no município de São Paulo/SP, à Av. Brigadeiro Faria Lima, nº3900, 10º andar, Itaim Bibi, CEP: 04538-132, inscrito no CNPJ/MF. sob nº 48.979.218/0001-66, por intermédio dos seus procuradores (docs. 01/02) nos autos da Falência processada em face de **TINTO HOLDING LTDA.**, vem, respeitosamente perante V. Exª, na qualidade de Cessionária de crédito habilitado no quadro geral de credores de fls. 5.008/5.014, expor e requerer o quanto segue.

## I.    CESSÃO DE CRÉDITO

**1.**    O BRASIL SPECIAL SITUATIONS é credor da falida em crédito advindo de Instrumento de Confissão de Dívida firmado entre a credora originária IPIRANGA PRODUTOS DE PETRÓLEO S/A e a devedora principal INFINITY AGRÍCOLA S/A, tendo figurado como fiadora da dívida a empresa TINTO HOLDING LTDA, ora falida (doc. 03).

**2.**    A totalidade do referido crédito foi inicialmente cedido para a MONTBLANC PARTICIPAÇÕES S/A (doc. 04 – cessão não informada nestes autos) e, recentemente, houve a cessão da totalidade do crédito para o BRASIL SPECIAL SITUATIONS, ora requerente (doc. 05).

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5534



**3.** Em razão da referida cessão, o BRASIL SPECIAL SITUATIONS se tornou o exclusivo titular do Crédito Cedido a partir da formalização do Termo de Cessão. Assim, o BRASIL SPECIAL SITUATIONS tem o legítimo direito e interesse econômico e jurídico de exercer todos os direitos relativos ao Crédito Cedido.

**4.** Desta forma, requer a Vossa Excelência que seja deferida a substituição processual da IPIRANGA PRODUTOS DE PETRÓLEO S/A pelo BRASIL SPECIAL SITUATIONS nestes autos, dando-se ciência ao Administrador Judicial para as devidas anotações e regularizações necessárias, sobretudo a retificação no Quadro Geral de Credores.

## II.    DADOS DA FALÊNCIA

**5.** Compulsando os autos da falência, percebe-se que:

(i)    recentemente, o administrador judicial Deloitte ("Deloitte") pediu para ser substituído *"em função das recentes medidas adotadas para a busca de ativos no exterior"* e que acarretaram conflito de interesses para a permanência no cargo de auxiliar do Juízo (cf. petição de fls. 5.271/5.272);

(ii)    a nova administradora judicial ("AJ Ruiz"), às fls. 5.428/5.437, noticiou a existência de centenas de ações judiciais e administrativas de natureza cível, trabalhista e tributária – nas quais a administração judicial antecessora não vinha representando a Massa Falida;

(iii)    a Fazenda Nacional é a maior credora desta falência, sendo certo que o maior crédito decorre do processo administrativo fiscal nº 16561.720170/2014-01 ("Processo Administrativo"), que sozinho corresponde a quase 90% da dívida total da falida;

(iv)    em procedimento sigiloso – Habilitação de Crédito nº 1095595-34.2022.8.26.0100 – o antigo administrador judicial obteve autorização[1] judicial para a contratação de

---

[1] "Portanto, autorizo a contratação dos escritórios Kellog, Hansen Todd, Figel Frederick PLLC; SEQUOR LAW e GOWLING WLG (UK) LLP, devendo a Administradora, em nome da massa falida, providenciar a formalização dos contratos (fls. 338/342; 342/344 e 352/358) e juntá-los nesse incidente. Defiro ainda: (i) a nomeação, na pessoa de Luis Vasco Elias, da Administradora Judicial, como representante da Massa Falida no exterior, mediante o DFA, os escritórios norte-americanos e britânico acima e outros que a

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5535



escritórios nos Estados Unidos e no Reino Unido, para a nomeação de representante da massa falida no exterior, e para a formulação de requerimento de falência auxiliar nos Estados Unidos e na Inglaterra.

**6.** Considerando tais fatos e o evidente interesse do credor peticionante em receber o que lhe é devido, BRASIL SPECIAL SITUATIONS vem expor e requerer o que segue.

### III. A AÇÃO JUDICIAL QUE DISCUTE O MAIOR CRÉDITO DA FALÊNCIA

**7.** Como dito, a AJ Ruiz, às fls. 5.428/5.437, noticiou a existência de centenas de ações judiciais que não vinham sendo acompanhadas pelo anterior AJ, solicitando autorização para contratação de escritórios de advocacia para a representação da Massa Falida, o que foi deferido por esse MM. Juízo às fls. 5.453/5.455.

**8.** Ocorre que, lendo a manifestação da AJ Ruiz, bem como analisando a lista de processos tributários ali relacionados, o peticionante não viu qualquer referência à Ação Judicial nº 1044546-79.2019.4.01.3400 que, vale dizer, discute o maior crédito desta falência, e nem menção a recente Lei 14.689/2023 que poderá ter o efeito de reduzir drasticamente o crédito tributário da falida.

**9.** Como se extrai do quadro geral de credores de fls. 5.008/5.014, **a Fazenda Nacional é a maior credora desta falência, sendo certo que o maior crédito decorre do processo administrativo fiscal nº 16561.720170/2014-01** ("Processo Administrativo")**, que sozinho corresponde a quase 90% da dívida total da falida.**

---

Administradora Judicial venha a nomear; (ii) o requerimento de falência auxiliar nos Estado Unidos da América sob o Chapter 15 (Ancillary and Other Cross - Border Cases), Title 11(Bankruptcy) do United States Code; (iii) a assinatura do Drawbridge Agreement pela Massa Falida, a qual, ao amparo de tal contrato, fica autorizada a realizar a transferência da importância de US$1.500,00 (mil e quinhentos dólares), para crédito na conta de cliente a ser mantida junto ao SEQUOR LAW, conforme as exigências legais locais. Determino ao cartório que expeça ofício ao Banco do Brasil, com urgência, para que o mesmo realize a transferência à seguinte conta, cujo código de natureza, para fins do câmbio, é o seguinte: Código de Natureza 47128-00-N-05-90 (Serviços Jurídicos) Dados da conta de onde o valor deverá ser debitado: Processo nº 0151873-29.2009.8.26.0100 - Conta Judicial: 3300104659568 - Banco do Brasil S/A Código/Número 001 -Agência Pagadora: 6815 Clovis Bevilacqua (iv) o requerimento de falência brasileira na Inglaterra, para que realize o pedido de restauração, perante o registro corporativo local, das sociedades METROPOLITAN ASSETS LLP, CONCORD GLOBAL LLP e GALLATAS LLP; (v) Por fim, defiro a expedição de certidão neste incidente nos seguintes termos: MASSA FALIDA DE TINTO HOLDING LTDA., por sua administradora judicial DELOITTE TOUCHE TOHMATSU CONSULTORES LTDA, representada por seu sócio administrador, Sr. Luis Vasco Elias, está autorizada ajuizar pedido de falência auxiliar nos Estados Unidos da América, bem como na Inglaterra, nos termos e limites das Leis das respectivas jurisdições. Providencie a serventia com urgência. Int. - ADV: ANTONIO MANUEL FRANCA AIRES (OAB 63191/SP)"

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5536



**10.**     Nos autos da Ação Judicial nº 1044546-79.2019.4.01.3400 ("Ação Judicial"), a falida busca **cancelar integralmente o débito tributário proveniente do referido Processo Administrativo,** cujo desfecho se deu de forma desfavorável à falida única e exclusivamente através do cômputo do Voto de Qualidade em favor da Fazenda Nacional perante o Conselho Administrativo de Recursos Fiscais ("CARF"). O valor em discussão no Processo Administrativo e na correlata Ação Judicial supera a cifra de R$ 6 bilhões.

**11.**     A existência dessa Ação Judicial, entretanto, não foi sequer notificada pela administradora judicial (antiga ou atual), mas é de extrema relevância: uma ação judicial discutindo o débito constituído no Processo Administrativo tem o condão de retirar a liquidez e certeza do maior crédito habilitado, que representa quase 90% da dívida total da massa falida!

**12.**     A referida Ação Judicial ganha ainda mais relevância e destaque quando se sabe que há diversos precedentes judiciais[2] favoráveis ao cancelamento de cobranças administrativas decorrentes de julgamento em que foi proferido o Voto de Qualidade em favor da União Federal durante a fase contenciosa na esfera administrativa.

**13.**     Como destacado nas aludidas decisões judiciais, julgamentos com o voto de qualidade ofendem os princípios da isonomia, proporcionalidade e razoabilidade previstos na Constituição, além do disposto no Art. 112 do Código Tributário Nacional, segundo o qual a lei deve ser interpretada de forma mais favorável ao acusado.

**14.**     Além disso, após a edição da Lei nº 13.988/20 (que inseriu o Art. 19-E na Lei nº 10.522/02) consignando que, em caso de empate no julgamento de processo administrativo que objetiva a cobrança de crédito tributário, o caso será decidido a favor do contribuinte, a matéria foi submetida à análise do STF através das ADIN's nº 6.399, 6.403 e 6.415.

---

[2] (i) TRF 3ª Região, 3ª Turma, Apelação Cível nº 5007182-06.2018.4.03.6109, Rel. Desembargador Federal Nery Da Costa Junior, julgado em 09/05/2023, DJe 12/05/2023; (ii) TRF 4ª Região, Apelação Cível nº 5076790-69.2016.4.04.7100, Primeira Turma, Relator Leandro Paulsen, juntado aos autos em 28/11/2022; (iii) TRF 1ª Região, Pleno, Processo nº 1021882-06.2018.4.01.0000, julgado em 17.11.2018; (iv) TRF-5ª Região.

4

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5537



**15.**    Iniciado o julgamento, a maioria dos Ministros julgou improcedentes as Ações Diretas de Inconstitucionalidade[3]. Neste contexto, vale destacar o voto do Ministro Alexandre de Morais, que consignou que *"O que existe na Constituição são garantias aos contribuintes em relação a eventuais abusos e distorções do Estado. Com isso, me parece mais razoável que o empate seja a favor do contribuinte do que do Fisco, porque a Constituição prevê todo um arcabouço normativo de proteção do contribuinte"[4] (g.n.)*. Corroborando o acima exposto, o Ministro Roberto Barroso consignou que "*o exercício de tal soberania pelo Estado não pode suplantar os direitos fundamentais dos indivíduos, em especial, para o que interessa aqui, a preservação da igualdade entre o sujeito passivo e o Fisco no curso do processo administrativo tributário"*.

**16.**    Embora o julgamento das Ações Diretas de Inconstitucionalidade nº 6.399, 6.403 e 6.415 tenham por objeto o Voto de Qualidade a favor dos contribuintes, os votos acima sinalizam pela <u>inconstitucionalidade do Voto de Qualidade a favor das Autoridades Fiscais</u>, o que ficou evidente a partir dos votos dos Ministros Alexandre de Moraes e Roberto Barroso, transcritos acima.

**17.**    É certo, portanto, que **<u>a Ação Judicial deve ter acompanhamento estratégico e urgente</u>**, na medida em que, com a procedência da demanda e o cancelamento do vultuoso crédito habilitado pela Fazenda Nacional, os demais credores, a exemplo do Requerente, **terão aumentadas significativamente as chances de recebimento dos seus respectivos créditos**.

## IV. LEI FEDERAL Nº 14.689/2023 QUE REDUZ DRASTICAMENTE O CRÉDITO TRIBUTÁRIO

**18.**    Além da ação tributária acima, outro relevante fato tributário parece estar sendo igualmente ignorado pela AJ Ruiz e merece ser prontamente analisado, qual seja, a publicação da Lei Federal nº 14.689/2023 (decorrente do Projeto de Lei nº 2.384/23), a qual **prevê reduções significativas de multa, juros e encargos para débitos tributários**

---

[3] Ministros que votaram: Marco Aurélio, Roberto Barroso, Alexandre de Moraes, Edson Fachin, Cármen Lúcia e Ricardo Lewandowski.
[4] Trecho do Voto do Ministro Alexandre de Moraes.

5

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5538



**constituídos e mantidos na esfera administrativa pelo Voto de Qualidade exercido favoravelmente à Fazenda Nacional**.

**19.** Ou seja, independentemente do julgamento da Ação Judicial acima mencionada, é fundamental que seja solicitada a aplicação dos descontos e as reduções de multa, juros e encargos ao débito relacionado ao Processo Administrativo, pois certamente **a redução do valor envolvido será colossal**, com benefícios a todos os credores da massa falida, dentre eles o peticionante.

## V. CONTRATAÇÃO DE ESCRITÓRIO ESPECIALIZADO

**20.** O acompanhamento e a defesa da Ação Judicial mencionada acima, bem como a atuação e defesa dos interesses da massa falida para redução do débito fiscal em razão da nova lei federal são questões relevantes e complexas que devem ser cuidadas por um escritório de advocacia especializado em matérias tributárias complexas, de renome nacional.

**21.** Assim, sem exercer qualquer juízo de valor com relação à capacidade técnica ou à reputação dos profissionais que integram o escritório sugerido pela administradora judicial para cuidar das ações tributárias, é de se destacar que:

> **(i)** a referida sociedade está sediada no Estado do Rio Grande do Sul, conforme esclarece a sua página oficial[5], o que fatalmente limitaria a adoção das providências urgentes e relevantes nos processos, considerando a posição geográfica em que se encontra em relação aos respectivos tribunais judiciais envolvidos, inclusive no que diz respeito à interação com este Juízo da Vara de Falências de São Paulo;

> **(ii)** ainda na página oficial da referida banca de advogados, não há sinalização de atuação com destaque em contencioso tributário,

---

[5] https://www.scalzilli.com.br/contato

6

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5539



mas tão somente em consultoria e negociação perante autoridades fazendárias;

**(iii)** as publicações noticiadas pelo escritório em sua página se encontram desatualizadas há mais de dois anos, sem qualquer menção a temas recentes e relevantes, tampouco tributários; e

**(iv)** não há notícias de que a referida banca de advogados possua sólida e relevante atuação na área tributária, a exemplo de outros escritórios de renome e com atuação exclusiva no setor, o que poderia contribuir para a atuação e desfecho dos casos na defesa dos interesses da Massa Falida

**22.** Assim, parece razoável requerer a contratação de escritório com mais expertise e atuação focada em demandas e assuntos tributários complexos para cuidar dos temas trazidos nesta manifestação.

## VI. ESCLARECIMENTOS SOBRE MEDIDAS ADOTADAS EM RELAÇÃO AOS EX-ADMINISTRADORES E CONTROLADORES DA FALIDA

**23.** Além disso, como se extrai dos autos, a Deloitte requereu a sua substituição "*em função das recentes medidas adotadas para a busca de ativos no exterior*" e que acarretaram conflito de interesses para a permanência no cargo de auxiliar do Juízo (cf. petição de fls. 5.271/5.272).

**24.** A partir do Agravo de Instrumento nº 2194823-37.2023.8.26.0000, interposto pela falida, vê-se que o antigo Administrador Judicial, em procedimento sigiloso – Habilitação de Crédito nº 1095595-34.2022.8.26.0100 – requereu e obteve autorização judicial para a contratação de escritórios estrangeiros para a formulação de requerimento de falência auxiliar nos Estados Unidos e na Inglaterra.

**25.** Ainda no referido agravo de instrumento, a AJ Ruiz defende que a falida não pode participar do incidente, pois o que se busca com ele é iniciar procedimentos investigativos

7

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justiça do Estado de São Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5540



transnacionais e medidas para recuperar ativos, com a possível responsabilização dos antigos controladores e sócios da Tinto, como se vê do seguinte trecho de sua manifestação no agravo:

> "o incidente originário foi instaurado para viabilizar a apuração dos indícios de desvios de patrimônio, possivelmente orquestrados inclusive pela antiga administração da Falida, seus sócios, ex-controladores e/ou demais envolvidos."

**26.** Assim sendo, requer a intimação do i. Administrador Judicial para prestar esclarecimentos sobre quais medidas já foram adotadas com relação aos ex-administradores e controladores da Tinto, no Brasil ou no exterior.

## VI. PEDIDO

**27.** Ante todo o exposto, o **BRASIL SPECIAL SITUATIONS** requer seja deferida a substituição processual da IPIRANGA PRODUTOS DE PETRÓLEO S/A pelo BRASIL SPECIAL SITUATIONS nestes autos, dando-se ciência ao Administrador Judicial para as devidas anotações e regularizações necessárias, sobretudo no Quadro Geral de Credores.

**28.** Ademais, requer seja determinada a intimação do Administrador Judicial para:

**(i)** adotar todas as providências cabíveis para obter a redução do passivo tributário decorrente do Processo Administrativo, diante da relevante alteração legislativa decorrente da aprovação da Lei Federal nº 14.689/2023;

**(ii)** incluir a Ação Judicial nº 1044546-79.2019.4.01.3400 na lista de processos a ser acompanhada para a defesa dos interesses da Massa Falida;

**(iii)** contratar para a defesa dos interesses da massa falida, nos dois assuntos acima relacionados, um escritório de advocacia, com maior *expertise* e renome nacional em direito tributário; e

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

fls. 5541



**(iv)** informar quais medidas foram adotadas com relação aos ex-administradores e controladores da Tinto, no Brasil ou no exterior.

**29.** Por fim, requer-se sejam todas as intimações e publicações realizadas em nome dos advogados VINÍCIUS SECCATO ALVES, OAB/SP nº 365.844 e REBECCA AMORIM PEREIRA, OAB/SP nº 436.549, ambos com endereço profissional na Av. Brigadeiro Faria Lima, nº 3900, 10º andar, Itaim Bibi, São Paulo, endereço eletrônico vinicius@brssinvestimentos.com.br, sob pena de nulidade, a teor dos §§ 2º e 5º do artigo 272 do CPC.

Termos em que, pede deferimento.

São Paulo, 19 de outubro de 2023

**VINÍCIUS SECCATO ALVES**
**OAB/SP nº 365.844**

**REBECCA AMORIM PEREIRA**
**OAB/SP nº 436.549**

Este documento é cópia do original, assinado digitalmente por REBECCA AMORIM PEREIRA e Tribunal de Justica do Estado de Sao Paulo, protocolado em 19/10/2023 às 15:12 , sob o número WJMJ23421620334 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1088030-29.2016.8.26.0100 e código iPifWrij.

Page 5533

# [logo] BR.

**DEAR MR. JUDGE OF LAW OF THE 2\* BANKRUPTCY AND JUDICIAL RECOVERIES COURT OF THE CENTRAL COURT OF THE STATE OF SÃO PAULO**

**Process no. 1088030-29.2026.8.26.0100**

**BRASIL SPECIAL SITUATIONS I FUNDO DE INVESTIMENTO EMRIGHTS CREDITÓRIOS** "BRASIL SPECIAL SITUATIONS", a private legal entity, with headquarters in the municipality of São Paulo/SP, at Av. Brigadeiro Faria Lima, No. 3900, 10th floor, Itaim Bibi, CEP: 04538-132, registered with the CNPJ/MF. under No. 48.979.218/0001-66, through its attorneys (Docs. 01/02) in the Bankruptcy case files processed against **TINTO HOLDING LTDA.**, respectfully comes before you, as a credit Assignee qualified in the general framework of creditors on pages 5,008/5,014, to expose and request the following.

## I.     ASSIGNMENT OF RECEIVABLES

1.  BRASIL SPECIAL SITUATIONS is the creditor of the bankrupt company in credit arising from a Debt Confession Instrument signed between the original creditor IPIRANGA PRODUTOS DE PETRÓLEO S/A and the principal debtor INFINITY AGRÍCOLA S/A, and the company TINTO HOLDING LTDA, now bankrupt, was the debt guarantor (doc. 03).

2.  The totality of the aforementioned credit was initially assigned to MONTBLANC PARTICIPAÇÕES S/A (doc. 04 - assignment not informed in these records) and, recently, there was the assignment of the totality of the credit to BRASIL SPECIAL SITUATIONS, now applicant (doc. 05).

1

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJM23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPifWrij.

# [logo] BR.

**3.** Due to the aforementioned assignment, BRAZIL SPECIAL SITUATIONS became the exclusive holder of the Assigned Credit from the formalization of the Assignment Term. Thus, BRASIL SPECIAL SITUATIONS has the legitimate right and economic and legal interest to exercise all rights relating to the Assigned Credit.

**4.** Accordingly, you request that the procedural replacement of IPIRANGA PRODUTOS DE PETRÓLEO S/A by BRASIL SPECIAL SITUATIONS be granted in these records, informing the Judicial Administrator of the necessary annotations and regularizations, especially the rectification in the General Creditor Framework.

## II.    FAILURE DATA

**5.** Compulsing the bankruptcy records, it is noted that:

(i)    recently, the judicial administrator Deloitte ("Deloitte") requested to be replaced *"due to the recent measures adopted for the search for assets abroad"* and which led to a conflict of interest for the stay in the position of assistant of the Court (see petition on pages 5,271/5,272);

(ii)    the new judicial administrator ("AJ Ruiz"), on pages 5,428/5,437, reported the existence of hundreds of civil, labor and tax lawsuits - in which the predecessor judicial administration had not been representing the Bankruptcy Mass;

(iii)    the National Treasury is the largest creditor of this bankruptcy, being certain that the largest credit stems from the administrative tax process No. 16561.720170/2014-01 ("Administrative Process"), which alone corresponds to almost 90% of the total debt of the bankrupt company;

(iv)    in confidential proceedings - Credit Qualification No. 1095595-34.2022.8.26.0100 -the former judicial administrator obtained judicial authorization[1] for the hiring of offices in

---

[1] "Therefore, I authorize the contracting of the offices Kellog, Hansen Todd, Figel Frederick PLLC; SEQUOR LAW and GOWLING WLG (UK) LLP, and the Administrator, on behalf of the bankrupt company, must arrange for the formalization of the contracts (pgs. 338/342; 342/344 and 352/358) and join them in this incident. I would also like to: (i) the appointment, in the person of Luis Vasco Elias, of the Judicial Administrator, as a representative of the Bankruptcy Mass abroad, through the DFA, the above U.S. and British

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJMJ23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfrWrij.

2

# [logo] BR.

the United States and the United Kingdom, for the appointment of representative of the bankrupt company abroad, and for the formulation of auxiliary bankruptcy applications in the United States and England.

**6.** Considering these facts and the evident interest of the petitioning creditor in receiving what is owed to him, BRASIL SPECIAL SITUATIONS hereby exposes and requests the following.

### III.    THE LAWSUIT THAT DISCUSSES THE LARGEST BANKRUPTCY CREDIT

**7.** As stated, AJ Ruiz, on pages 5.428/5.437, reported the existence of hundreds of lawsuits that had not been accompanied by the previous AJ, requesting authorization to hire law firms for the representation of the Bankruptcy Mass, which was granted by this MM. Court on pages 5.453/5.455.

**8.** It just so happens that, reading the statement from AJ Ruiz, as well as analyzing the list of tax proceedings related thereto, the petitioner did not see any reference to Judicial Action No. 1044546-2019.4.01.3400 which, it is worth mentioning, discusses the biggest credit in this bankruptcy, and does not even mention recent Law 14.689/2023 which could have the effect of drastically reducing the tax credit of bankrupt.

**9.** As is drawn from the general framework of creditors on pages 5,008/5,014, **the National Treasury is the largest creditor of this bankruptcy, and it is certain that the largest credit results from the tax administrative proceeding No. 16561.720170/2014-01** ("Administrative Proceeding"), **which alone corresponds to almost 90% of the total debt of the bankrupt company.**

---

offices and such other offices as the Judicial Trustee may appoint; (ii) the application for auxiliary bankruptcy in the United States of America under Chapter 15 (Ancillary and Other Cross - Border Cases), Title 11(Bankruptcy) of the United States Code; (iii) the signing of the Drawbridge Agreement by the Bankruptcy, which, to the support of such a contract, is authorized to transfer the amount of $1.500,00 (one thousand five hundred dollars), for credit to the customer account to be held with SEQUOR LAW, as per local legal requirements. I order the notary office to issue a letter to Banco do Brasil, urgently, so that it may transfer the same to the following account, whose nature code, for exchange purposes, is as follows: Nature Code 47128-00-N-05-90 (Legal Services) Account data from which the amount should be debited: Case No. 0151873-29.2009.8.26.0100 - Judicial Account: 3300104659568 - Banco do Brasil S/A Code/Number 001 - Paying Agency: 6815 Clovis Bevilacqua (iv) the application for Brazilian bankruptcy in England, in order to make the request for restoration, before the local corporate registry, of the companies METROPOLITAN ASSETS LLP, CONCORD GLOBAL LLP and GALLATAS LLP; (v) Finally, I grant the issuance of a certificate in this incident in the following terms: MASSA FALIDA DE TINTO HOLDING LTDA., by its judicial administrator DELOITTE TOUCHE TOHMATSU CONSULTORES LTDA, represented by its managing partner, Mr. Luis Vasco Elias, is authorized to file an application for auxiliary bankruptcy in the United States of America, as well as in England, under the terms and limits of the Laws of the respective jurisdictions. Arrange for urgent service. Int. - ADV: ANTONIO MANUEL FRANCA AIRES (OAB 63191/SP)"

3

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJMJ23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfWrij.

# [logo] BR.

**10.** In the case files of Judicial Action No. 1044546-79.2019.4.01.3400 ("Judicial Action"), the bankrupt company seeks **to cancel the tax debt originating from the aforementioned Administrative Process in full,** the outcome of which was unfavorably caused to the bankrupt company solely and exclusively through the calculation of the Quality Vote in favor of the National Treasury before the Administrative Council of Tax Resources ("CARF"). The amount under discussion in the Administrative Proceedings and the related Judicial Action exceeds the amount of BRL 6 billion.

**11.** The existence of this Judicial Action, however, was not even notified by the judicial administrator (old or current), but it is of extreme relevance: a judicial action discussing the debt constituted in the Administrative Proceedings has the power to withdraw the liquidity and certainty of the largest credit qualified, which represents almost 90% of the total debt of the bankruptcy mass!

**12.** The aforementioned Judicial Action gains even more relevance and prominence when it is known that there are several judicial[2] precedents favorable to the cancellation of administrative charges arising from a judgment in which the Quality Vote was issued in favor of the Federal Union during the litigation phase in the administrative sphere.

**13.** As highlighted in the alluded court decisions, trials with the vote of quality offend the principles of isonomy, proportionality and reasonableness provided for in the Constitution, in addition to the provisions of Art. 112 of the National Tax Code, according to which the law should be interpreted in a more favorable manner to the accused.

**14.** In addition, after the edition of Law No. 13.988/20 (which inserted Art. 19-E in Law No. 10.522/02) stating that, in the event of a tie in the judgment of an administrative process that aims to collect tax credit, the case will be decided in favor of the taxpayer, the matter was submitted for STF analysis through ADINs No. 6.399, 6.403 and 6.415.

---

[2] (i) TRF 3§ Region, 3§ Class, Civil Appeal No. 5007182-06.2018.4.03.6109, Rel. Federal Appellate Judge Nery Da Costa Junior, judged on 09/05/2023, DJe 12/05/2023; (ii) TRF 4§ Region, Civil Appeal No. 5076790-69.2016.4.04.7100, First Panel, Rapporteur Leandro Paulsen, filed in the case files on 28/11/2022; (iii) TRF 1§ Region, Full, Process No. 1021882-06.2018.4.01.0000, judged on 17.11.2018; (iv) TRF-5§ Region.

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJM23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfWrij.

# [logo] BR.

**15.** Once the trial was started, most Ministers dismissed the Direct Actions of Unconstitutionality [3] . In this context, it is worth highlighting the vote of Minister Alexandre de Morais, who stated that _"What exists in the Constitution are guarantees to taxpayers in relation to possible abuses and distortions of the State. With this, it seems more reasonable to me that the tie is in favor of the taxpayer than of the Tax Authority, because the Constitution provides for an entire normative framework for taxpayer protection"[4] (g.n.)._ Corroborating the above, Minister Roberto Barroso stated that "the _exercise of such sovereignty by the State cannot outweigh the fundamental rights of individuals, in particular, for what matters here, the preservation of equality between the taxpayer and the Tax Authority in the course of the administrative tax process."_

**16.** Although the purpose of the trial of Direct Unconstitutionality Actions No. 6,399, 6,403 and 6,415 is the Quality Vote in favor of taxpayers, the above votes signal the unconstitutionality of the Quality Vote in favor of the Tax Authorities, which was evident from the votes of Ministers Alexandre de Moraes and Roberto Barroso, transcribed above.

**17.** It is certain, therefore, that **the Judicial Action must have strategic and urgent monitoring,** insofar as, with the origin of the demand and the cancellation of the large credit authorized by the National Treasury, the other creditors, as the Claimant, **will have significantly increased the chances of receiving their respective credits.**

## IV. FEDERAL LAW NO. 14.689/2023 THAT DRAMATICALLY REDUCES TAX CREDIT

**18.** In addition to the tax action above, another relevant tax fact seems to be also ignored by AJ Ruiz and deserves to be promptly analyzed, that is, the publication of Federal Law No. 14.689/2023 (due to the Bill of Law No. 2.384/23), which **provides for significant reductions in fines, interest and charges for tax debts constituted and maintained in the administrative sphere by the Quality Vote exercised favorably to the National Treasury.**

---

[3] Ministers who voted: Marco Aurélio, Roberto Barroso, Alexandre de Moraes, Edson Fachin, Cármen Lúcia and Ricardo Lewandowski.

[4] Excerpt from the Vote of Minister Alexandre de Moraes.

5

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJMJ23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfWrij.

# [logo] BR.

**19.** That is, regardless of the judgment of the above-mentioned Judicial Action, it is essential that the application of discounts and reductions of fines, interest and charges to the debt related to the Administrative Process be requested, since certainly **the reduction of the amount involved will be colossal,** with benefits to all creditors of the bankrupt company, among them the petitioner.

## V.   SPECIALTY OFFICE HIRING

**20.** The monitoring and defense of the above-mentioned Judicial Action, as well as the action and defense of the interests of the bankrupt company to reduce tax debt due to the new federal law are relevant and complex issues that must be handled by a law firm specializing in complex tax matters, of national renown.

**21.** Thus, without exercising any judgment of value in relation to the technical capacity or reputation of the professionals who are part of the office suggested by the judicial administrator to take care of tax actions, it is worth noting that:

> **(i)** said company is headquartered in the State of Rio Grande do Sul, as clarifies its official page[5], which would fatally limit the adoption of urgent and relevant measures in the proceedings, considering the geographical position in which it is in relation to the respective courts involved, including with regard to interaction with this Court of the São Paulo Bankruptcy Court;

> **(ii)** still on the official page of the aforementioned law firm, there is no signaling of performance with emphasis on tax litigation, but only in consulting and negotiating before treasury authorities;

> **(iii)** the publications reported by the office on its page have been outdated for more than two years, without any mention of recent and relevant topics, nor tax; and

> **(iv)** there is no news that said law firm has a solid and relevant performance in the tax area, such as other reputable offices with

---

[5] https://www.scalzilli.com.br/contato

6

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJM123421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPIfWrij.

# [logo] BR.

exclusive performance in the sector, which could contribute to the performance and outcome of cases in the defense of the interests of the Bankruptcy Mass

22.  Thus, it seems reasonable to request the hiring of an office with more expertise and performance focused on demands and complex tax matters to address the issues brought about in this statement.

## VI.    CLARIFICATIONS ON MEASURES TAKEN IN RELATION TO THE FORMER BANKRUPTCY DIRECTORS AND CONTROLLERS

23.  In addition, as can be extracted from the case files, Deloitte requested its replacement *"due to the recent measures adopted for the search for assets abroad"* and which caused a conflict of interest for the stay in the position of assistant of the Court (see petition on pages 5,271/5,272).

24.  From Bill of Review No. 2194823-37.2023.8.26.0000, filed by the bankrupt company, it can be seen that the former Judicial Administrator, in a confidential procedure - Credit Qualification No. 1095595-34.2022.8.26.0100 - requested and obtained judicial authorization for the hiring of foreign offices for the formulation of auxiliary bankruptcy applications in the United States and England.

25.  Also in the aforementioned instrument appeal, AJ Ruiz defends that the bankrupt company cannot participate in the incident, because what is sought from it is to initiate transnational investigative procedures and measures to recover assets, with the possible liability of the former controllers and partners of Tinto, as can be seen from the following excerpt from its response in the appeal:

> "the original incident was initiated to enable the investigation of evidence of diversions of assets, possibly orchestrated even by the former administration of the Bankrupt Company, its partners, former controllers and/or others involved."

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJMJ23421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfWrij.

7

# [logo] BR.

**26.** Therefore, it requires the summons of the i. Judicial Administrator to provide clarification on what measures have already been taken with regard to the former directors and controllers of Tinto, in Brazil or abroad.

### VII.    REQUESTS

**27.** In light of the foregoing, **BRASIL SPECIAL SITUATIONS** requires that the procedural replacement of IPIRANGA PRODUTOS DE PETRÓLEO S/A be granted by BRASIL SPECIAL SITUATIONS in these case files, informing the Judicial Administrator of the necessary annotations and regularizations, especially in the General Creditor Framework.

**28.** Furthermore, it requires that the summons of the Judicial Administrator be determined to:

> **(i)** adopt all appropriate measures to obtain the reduction of the tax liability arising from the Administrative Process, in view of the relevant legislative change arising from the approval of Federal Law No. 14.689/2023;

> **(ii)** include Judicial Action No. 1044546-79.2019.4.01.3400 in the list of proceedings to be monitored for the defense of the interests of the Bankruptcy Mass;

> **(iii)** contract for the defense of the interests of the bankrupt company, in the two matters listed above, a law firm, with greater *expertise* and national renown in tax law; and

8

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJM123421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPIfWrij.

# [logo] BR.

**(iv)** inform what measures have been taken with regard to the former directors and controllers of Tinto, in Brazil or abroad.

**29.** Finally, it is requested that all subpoenas and publications be carried out on behalf of the lawyers VINÍCIUS SECCATO ALVES, OAB/SP No. 365.844 and REBECCA AMORIM PEREIRA, OAB/SP No. 436.549, both with professional address at Av. Brigadeiro Faria Lima, No. 3900, 10th floor, Itaim Bibi, São Paulo, e-mail address vinicius@brssinvestimentos.com.br, under penalty of nullity, pursuant to §§ 2 and 5 of Article 272 of the CPC.

Under these terms, we hereby request acceptance.

Sao Paulo, October 19, 2023

**VINÍCIUS SECCATO ALVES**          **REBECCA AMORIM PEREIRA**

**OAB/SP No. 365.844**                **OAB/SP No. 436.549**

This document is a copy of the original, digitally signed by REBECCA AMORIM PEREIRA and the Court of Justice of the State of São Paulo, filed on 19/10/2023 at 3:12 p.m., under the number WJM123421620334 To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case 1088030-29.2016.8.26.0100 and code iPfWrij.

9



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Anexo 1 - BSS - Ação tributária e alteração legislativa - 19.10.2023**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_____
Jacqueline Yorke=

Sworn to before me this
February 5, 2024

_____
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE