UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,                                Chapter 15
                                                    Case No.: 23-11719-MAM
          Debtor in a Foreign Proceeding.

_____/


AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

          Plaintiff,
                                                    Adv. Case No. 23-01118
v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., WWMB
PARTICIPAÇÕES LTDA., JOESLEY
MENDONÇA BATISTA, WESLEY
MENDONÇA BATISTA, and JBS S.A.,

          Defendants.

_____/


**CONDITIONAL MOTION FOR LEAVE TO FILE A
SECOND AMENDED COMPLAINT**

## INTRODUCTION

As Plaintiff explains in its contemporaneously filed oppositions, Defendants' motions to dismiss the Amended Complaint should be denied.  But if the Court were to conclude that additional factual allegations are required to avoid dismissal, it should grant Plaintiff leave to amend to address any deficiencies the Court might identify in the Amended Complaint.  Leave to amend would be appropriate in that circumstance because Plaintiff would not have had the opportunity to amend to address any concerns the Court may have.  As a matter of formality, Eleventh Circuit cases in the non-bankruptcy context have interpreted Federal Rule of Civil Procedure 7 to require the plaintiff to file a motion to amend its complaint, rather than request leave in its opposition to a motion to dismiss.  Plaintiff thus does so here—but solely in the alternative, in case the Court should determine further allegations are necessary.

Because the motions to dismiss have not been fully briefed, much less resolved, Plaintiff cannot know whether the Court will find the Amended Complaint deficient (which it should not), or if it does, what allegations it finds lacking.  Plaintiff thus reserves the right to supplement this motion, to the extent necessary, to set forth the substance of the proposed amendment in greater detail.  At the very least, any further amendment would include the facts detailed in the exhibits set forth in the Declaration of Nyana Miller in support of Plaintiff's opposition to Defendants' *forum non conveniens* arguments, which asserted Defendants' would be inconvenienced by litigating here.  As shown in the exhibits appended to that declaration, there are myriad additional facts supporting the Batista Defendants' and JBS's extensive and continuous contacts with the United States, both generally and in connection with the transactions at issue.  Given the *factual* nature of Defendants' *forum non conveniens* arguments, it is highly artificial for them to attempt simultaneously to raise a *facial* personal jurisdiction challenge to try to limit Plaintiff to the allegations in the Amended Complaint.  Nonetheless, if the Court believes itself bound to limit its

analysis to those allegations and determines that they are insufficient on a *prima facie* basis (which it should not), Plaintiff should be granted leave to amend to add allegations such as those in the declaration.

In short, as to personal jurisdictional as well as the other grounds for dismissal, amendment is appropriate to give a plaintiff at least one opportunity to address any pleading deficiencies the Court may perceive.  Plaintiff believes there are no such deficiencies, but conditionally files this motion to preserve Plaintiff's later right to amend to cure any that may be identified.

## LEGAL STANDARD

"The [C]ourt should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see* Fed. R. Bankr. P. 7015 (applying Rule 15 in adversary proceedings). As the Supreme Court explained in *Foman v. Davis*:  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  371 U.S. 178, 182 (1962); *see Bellefleur v. United States*, 489 F. App'x 323, 324 (11th Cir. 2012) (per curiam) (applying *Foman* factors).  Indeed, Rule 15 "circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).

In this case, Defendants' motions to dismiss present the first opportunity for the Court to test the adequacy of Plaintiff's allegations.  If the Court were to determine that the Amended Complaint is deficient—which it should not—the proper course is for the Court to dismiss with leave to amend.  *See*, *e.g.*, *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001) (per curiam) (leave to amend is appropriate, even after the plaintiff has amended as a matter of course, because

the plaintiff has not yet sought leave from the court to amend); *In re Bal Harbour Quarzo, LLC*, 634 B.R. 827, 838 (Bankr. S.D. Fla. 2021) (granting motion to dismiss and explaining "the Motion for Leave to Amend must be denied as moot, but without prejudice to the Plaintiff filing another amended complaint to cure the[] deficiencies [identified in the opinion]").  Eleventh Circuit cases require a formal motion to preserve a request in the alternative for leave to amend.  *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361-62 (11th Cir. 2006).  To avoid any risk of waiver, plaintiffs in this Circuit thus often file motions for leave to amend in the alternative when opposing a motion to dismiss.  *See*, *e.g.*, *Bal Harbour*, 634 B.R. at 838.

## ARGUMENT

I.    **IF THE COURT GRANTS A MOTION TO DISMISS, IT SHOULD GRANT PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT**

As detailed in Plaintiff's Oppositions to Defendants' motions to dismiss, Plaintiff has sufficiently pleaded facts allowing the case to move forward to discovery.  Should the Court disagree, however, it should grant Plaintiff leave to file a Second Amended Complaint addressing the shortcomings the Court identifies.  Plaintiff filed its current Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1) and has not yet had a chance to address any such shortcomings.  And Plaintiff filed its Amended Complaint before six of the seven Defendants had even waived service, let alone moved to dismiss.  Because certain Eleventh Circuit cases require filing a formal motion for leave to amend before the court decides the motion to dismiss to preserve the right to amend, filing a conditional motion for leave to amend in response to a motion to dismiss is common and proper.  *See*, *e.g.*, *Bal Harbour*, 634 B.R. at 838.

If the Court were to find the Amended Complaint deficient, there would be no justification for denying leave to amend at this early stage.  None of the canonical reasons provided by the Supreme Court in *Foman v. Davis* would apply in that circumstance.  371 U.S. at 182.  There

would have been no undue delay. *See id.* This case is still in the early stages of litigation. It is a far cry from the situations in which courts have denied motions for leave to amend based on undue delay. *See, e.g., Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming denial of "amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided"); *Shipner*, 868 F.2d at 407 (affirming denial of leave to amend because the court "had granted summary judgment").

Nor has there been any bad faith or dilatory motive by Plaintiff. *See Foman*, 371 U.S. at 182. Consistent with common practice in this Circuit, Plaintiff has brought this motion in tandem with its Oppositions to the motions to dismiss—two of which, representing six Defendants, were just filed for the first time, and raise arguments not previously advanced by Defendant Colorado Investment Holdings, LLC ("Colorado").

Similarly, there have not been "repeated failure[s] to cure deficiencies by amendments previously allowed." *Id.* While Plaintiff amended once as a matter of course, this was before six of the seven Defendants had made any appearance, let alone filed any motions to dismiss. And the Court has not yet provided any guidance on whether it believes, as Plaintiff does, that the allegations set forth in the operative complaint are sufficient. When, as here, the first "Amended Complaint was filed as a matter of course" and the plaintiff has "not asked for leave to amend" before, "it cannot be said that the plaintiff[] . . . repeatedly ha[s] failed to cure deficiencies through previously allowed amendments." *Bryant*, 252 F.3d at 1163-64.

There is also no "undue prejudice to the opposing party" by virtue of allowing the amendment. *Id.* at 1163. Indeed, were it not for six of the seven Defendants at first refusing to waive service, Plaintiff could have used its amendment as of right after seeing Defendants' personal jurisdiction arguments.

II.    **IF GRANTED LEAVE TO AMEND, PLAINTIFF WOULD INCLUDE ALLEGATIONS REINFORCING HOW PERSONAL JURISDICTION OVER EACH DEFENDANT IS APPROPRIATE**

Because the Court has not identified any deficiencies in the Amended Complaint, Plaintiff cannot know what additional factual allegations it may need to include in any amendment. Plaintiff thus reserves the right to supplement this motion if the Court identifies any deficiencies in the Amended Complaint.

Plaintiff's amendment would certainly include the additional facts that it has put before the Court in opposition to Defendants' *forum non conveniens* arguments. *See generally* Declaration of Nyana Miller ("Miller Decl."), ECF 83-1. As set forth below, those facts, along with others that Plaintiff can allege, also support the exercise of personal jurisdiction over each Brazilian Defendant.

*JBS S.A.***:** To start, Plaintiff would add facts demonstrating how JBS is at home within the United States. JBS does not view itself as separate from its subsidiaries. Many of the supporting facts are already before the Court with respect to personal jurisdiction because they are subject to judicial notice. But Plaintiff would include them in any amended complaint. For example, Plaintiff would add specific factual allegations on JBS's comparative sources of revenue across various markets, showing how the United States (at 50 percent) is by far the greatest. *See* JBS Opp. at 9, ECF 84. Plaintiff would also lay out how JBS holds itself out as having 71,000 employees in the United States, as well as how the United States is the company's primary (or only) focus across key sectors. *Id.* And Plaintiff would elaborate on how, by acquiring Bertin S.A., JBS also acquired Bertin S.A.'s substantial U.S. holdings. *Id.* at 6.

Plaintiff would also, for example, allege that at least one JBS S.A. executive operates out of the company's U.S. headquarters in Greeley, Colorado—further indicating that JBS USA is

intertwined with JBS S.A. And Plaintiff would go into more detail about JBS's relationship with the holders of its American Depositary Receipts on the New York Stock Exchange.

Plaintiff would also build out the allegations relating to JBS's relationship with J.P. Morgan in New York. In particular, Plaintiff would explain how JBS worked extensively with Particia Pratini de Moraes of J.P. Morgan—Ms. de Moraes being the daughter of, during the relevant period, a JBS board member, who also served as Brazil's Minister of Agriculture. Miller Decl. Ex. Q. Plaintiff would explain how J.P. Morgan not only created Colorado for the sole benefit of JBS's majority shareholders, but also helped handle nearly all of JBS's successful and attempted mergers with U.S. companies. *Id.* Exs. J, Q. And Plaintiff would explain how the scheme to rob Tinto of its value sought to further JBS's U.S. holdings, while preserving the control held by Defendants Joesley and Wesley Batista.

More generally, Plaintiff would build out its allegations explaining how, at the time of the share-transfer agreements, JBS was effectively the alter ego of the Batista family, such that their contacts can be imputed onto JBS. At this time, Joesley and Wesley treated JBS as their personal piggy bank. They abused its corporate form by using company assets for personal use, including pleading guilty to improperly using one of JBS's private jets for their personal use. *Id.* Ex. M. And JBS often served as a personal public relations firm for the brothers, making official announcements about their actions that benefited solely the Batistas, not JBS writ large. *See id.* Ex. F (explaining Joesley's reason for moving one of his yachts to the United States). Indeed, the Batistas viewed JBS as such a natural outgrowth of their own wealth that Joesley's main private jet used the registration code "PR-JBS." *Id.* Exs. N-O. Plaintiff would explore these and other abuses of the corporate form in more detail.

***Joesley and Wesley Batista***:  Similarly, Plaintiff would add several more facts outlining the Batistas' U.S. contacts.  Some expand on facts already alleged.  For instance, since filing the Amended Complaint Plaintiff has come to learn that Wesley has a Colorado residence held for his benefit in the name of a JBS executive.  And Joesley travelled to New York to live and work when news of the Batistas' bribery scandal broke in Brazil.  *Id.* Ex. F, M, P.  Indeed, Joesley was so comfortable in the United States that he sent his private yacht to the United States then, as well. *Id.* Ex. F.

Plaintiff would also allege further facts about the brothers' close relationship in running their companies.  For example, when Joesley served as CEO of JBS S.A., Wesley lived in Colorado, serving as CEO of JBS USA.  *Id.* Ex. K.  The two remained in frequent contact about the business—as one JBS executive described it, they were "always talking, always debating." *Id.* From his many years in the United States, Wesley learned English.  *See id.*  And when Wesley took over for Joesley as CEO of JBS S.A., Joesley became Chairman.  *Id.*  Furthermore, as of last month, both brothers now serve on the Board of Pilgrim's Pride Corporation in the United States, which JBS acquired as part of the scheme.  *Id.* Ex. L.

***J&F Investimentos S.A.***:  Regarding the Batistas' main holding company, J&F, Plaintiff would allege more facts detailing the brothers' role in the company.  Plaintiff would also add several more facts about J&F's private jet, a Bombardier Global 7500, which the Batistas use to travel around the world—including to Fort Lauderdale, Florida.  *Id.* Exs. A-E, I.  Indeed, this extensive private jet use for personal purposes illustrates how J&F is used solely for the benefit of the Batistas.  And Plaintiff would expand on how and why the brothers were acting on behalf of J&F when conducting all aspects of the share-transfer scheme.

***JJMB Participações Ltda. and WWMB Participações Ltda.*:**  So too with the brothers' personal holding companies, JJMB and WWMB.  Plaintiff would expand on the ownership structure of these companies, demonstrating how they exist solely as alter egos of the Batistas and sit above J&F for the Batistas to insulate assets.  For example, Plaintiff would explain how the Batistas are the key officials at both entities, and show how transfers between the two purportedly separate entities—like in the third share-transfer agreement—illustrate that one is merely an extension of the other.

* * * * *

Rule 8 requires a short and plain statement on why Plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a); *see also* Fed. R. Bankr. P. 7008 (applying Rule 8 to adversary proceedings).  Plaintiff has satisfied that requirement, and the Court should deny Defendants' motions to dismiss.  Plaintiff files this motion in the alternative to demonstrate some of the many additional facts it can allege, and to preserve its rights consistent with Eleventh Circuit precedent.  If the Court believes the Amended Complaint is deficient, Plaintiff requests that the Court grant Plaintiff leave to amend to allege these facts and to address any other issues the Court identifies.


Dated:  March 11, 2024                      Respectfully submitted,
                                            SEQUOR LAW, P.A.
                                            1111 Brickell Avenue, Suite 1250
                                            Miami, Florida 33131
                                            Telephone: (305) 372-8282
                                            Facsimile: (305) 372-8202
                                            Email: ggrossman@sequorlaw.com
                                            nmiller@sequorlaw.com
                                            jmosquera@sequorlaw.com


                                     By:    */s/ Nyana Abreu Miller*
                                            Jennifer Mosquera
                                            Florida Bar No.: 1018656

9

Gregory S. Grossman
Florida Bar No.: 896667
Nyana Abreu Miller
Florida Bar No. 92903

Derek T. Ho (*pro hac vice*)
Andrew E. Goldsmith (*pro hac vice*)
Grace W. Knofczynski (*pro hac vice*)
Eden M. Bernstein (*pro hac vice*)
Chase H. Robinett (*pro hac vice*)
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
agoldsmith@kellogghansen.com
gknofczynski@kellogghansen.com
ebernstein@kellogghansen.com
crobinett@kellogghansen.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 11, 2024 a true and correct copy of the foregoing was conventionally filed and served on all interested parties.

*/s/ Nyana Abreu Miller*
Nyana Abreu Miller