## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:

TINTO HOLDING LTDA.,

     Debtor in a Foreign Proceeding.

_____/

AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

     Plaintiff,

v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., WWMB
PARTICIPAÇÕES LTDA., JOESLEY
MENDONÇA BATISTA, WESLEY
MENDONÇA BATISTA, and JBS S.A.,

     Defendants.

_____/

Chapter 15
Case No.: 23-11719-MAM

Adv. Case No. 23-01118

## OBJECTION OF DEFENDANT COLORADO INVESTMENT HOLDINGS LLC TO FOREIGN REPRESENTATIVE'S MOTION TO WITHDRAW IN PART THE REFERENCE OF ADVERSARY PROCEEDING

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ....................................................................................................................5

    A.    FOREIGN REPRESENTATIVE HAS NO RIGHT TO JURY TRIAL FOR BRAZILIAN CIVIL-LAW CLAIMS ................................................................................6

        1.    NOT A "SUIT AT COMMON LAW" .................................................6

        2.    CLAIMS ARE EQUITABLE, NOT LEGAL ..........................................8

    B.    ALTERNATIVELY, REFERENCE DECISION SHOULD BE DEFERRED ...........................11

    C.    RESERVATION OF RIGHTS .......................................................................12

    D.    ADDITIONAL MATTERS FOR DESIGNATION IN RECORD RELEVANT TO DECISION .........................................................................................13

CONCLUSION....................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

In re Armenta,
2013 WL 4786584 (S.D. Fla. Sept. 6, 2013) ..........................................................7

Aviation One of Florida, Inc. v. Airborne Ins. Consultants (Pty) Ltd.,
722 Fed. App'x 870 (11th Cir. 2018) ...................................................................5

In re Big V Holding Corp.,
2002 U.S. Dist. LEXIS 12609, 2002 WL 1482392 (D. Del. July 11, 2002) ..........11

Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,
494 U.S. 558 (1990)........................................................................................10

Control Center, LLC v. Lauer,
288 B.R. 269 (M.D. Fla. 2002) ......................................................................6, 13

Dionne v. Simmons (In re Simmons),
200 F.3d 738 (11th Cir. 2000) ......................................................................5, 13

Dunn, Tr. of Ests. of Pacifico Sur Grp, LLC v. Ricci,
2022 WL 3154187 (S.D. Fla. Aug. 8, 2022).........................................................7

In re Enron Corp.,
317 B.R. 232 (S.D.N.Y. 2004).............................................................................12

Equal Emp. Opportunity Comm'n v. Univ. of Miami,
2021 WL 2349490 (S.D. Fla. June 9, 2021) .......................................................12

In re Evangelist,
760 F.2d 27 (1st Cir. 1985).................................................................................10

Ford v. Brown,
319 F.3d 1302 (11th Cir. 2003) ............................................................................5

Granfinanceria, S.A. v. Nordberg,
492 U.S. 33 (1989)..................................................................................7, 8, 10

Harrell v. DCS Equipment Leasing Corporation,
951 F.2d 1453 (5th Cir. 1992) .............................................................................9

Kulawole v. Sellers,
    863 F.3d 1361 (11th Cir. 2017) ........................................................5

Lisa A. v. Gutierrez Mayorga,
    240 Fed. App'x 822 (11th Cir. 2007) ...............................................5

Lohmeirer v. Jacobs (In re Lohmeirer),
    303 B.R. 335 (Bankr. E.D. Mich. 2004) ........................................10

Magnin v. Teledyne Cont'l Motors,
    91 F.3d 1424 (11th Cir. 1996) ..........................................................5

Minpeco, S.A. v. Naji Robert Nahas,
    673 F. Supp. 684 (S.D.N.Y. 1987) ...................................................7

Mission Bay Campland, Inc. v. Sumner Financial Corp.,
    72 F.R.D. 464 (M.D. Fla. 1976)......................................................11

Nichols v. Heslep,
    273 F.3d 1098 (5th Cir. 2001) ..........................................................9

Nygård v. Dipaolo,
    753 Fed. App'x 716 (11th Cir. 2018) ................................................5

In re Orion Pictures Corp.,
    4 F.3d 1095 (2d Cir. 1993)...............................................................13

Pappas v. Kerzner Int'l Bah. Ltd.,
    585 Fed. App'x 962 (11th Cir. 2014) ................................................5

In re Parklane/Atlanta Joint Venture,
    927 F.2d 532 (11th Cir. 1991) ........................................................13

Pierre-Louis v. Newvac Corp.,
    584 F.3d 1052 (11th Cir. 2009) ........................................................5

In re Pilopovic,
    2015 WL 7273325 (E.D. Mo. Nov. 18, 2015).................................3

Piper Aircraft Co. v. Reyno,
    454 U.S. 233 (1981)......................................................................5, 7

Polanco v. H.B. Fuller Co.,
    941 F. Supp. 1512 (D. Minn. 1996).................................................7

In re Report of Grand Jury,
    152 Fla. 154 (Fla. 1943).................................................................7

Satz v. McDonnell Douglas Corp.,
    244 F.3d 1279 (11th Cir. 2001) ........................................................................5

Schneider v. Riddick (In re Formica Corp.),
    305 B.R. 147 (S.D.N.Y. 2004)......................................................................11

In re Sevko, Inc.,
    143 B.R. 114 (N.D. Ill. 1992) ........................................................................3

Sigalas v. Lido Maritime, Inc.,
    776 F.2d 1512 (11th Cir. 1985) ......................................................................5

Simler v. Conner,
    372 U.S. 221 (1963) ........................................................................................6

Slott v. Anan Enter., Inc.,
    2020 WL 8834712 (S.D. Fla. June 24, 2020) ................................................7

In re Stocks,
    137 B.R. 516 (N.D. Fla. Bankr. 1991) ........................................................10

Tazoe v. Airbus S.A.S.,
    631 F.3d 1321 (11th Cir. 2011) ......................................................................5

In re The Bible Speaks,
    65 B.R. 415 (Bankr. D. Mass. 1986) ...........................................................10

Whitlock v. Hause,
    694 F.2d 861 (1st Cir. 1982) ........................................................................11

Zowayyed v. Lowen Co.,
    735 F. Supp. 1497 (D. Kan. 1990) ...............................................................10

**Statutes**

28 U.S.C. § 157(d) ..............................................................................................1, 5

28 U.S.C. § 1334(b) ...............................................................................................12

L.R. Bankr. P. 5001-1 .........................................................................................2, 13

**Other Authorities**

Arthur Nussbaum, <u>The Problem of Proving Foreign Law</u>, 50 The Yale Law
    Journal 1018, 1019 (1941) ............................................................................................8

J. Merryman, <u>The Civil Law Tradition</u> 121 (1969) .........................................................7

John Morley, <u>The Common Law Corporation: The Power Of The Trust In Anglo-</u>
    <u>American Business History</u>, 116 Colum. L. Rev. 2145, 2177 (2016) ......................................8

Maria Angela Jardim de Santa Cruz Oliveira, <u>Recognition and Enforcement of</u>
    <u>U.S. Money Judgments in Brazil</u> ..................................................................................7

Limited Liability Act 1855, UK Public General Acts, 18 & 19 Vict. c. 133.................................7

<u>Transnational Lit.</u> § 5:40 (Mar. 2024) ............................................................................7

United States Constitution, Seventh Amendment....................................................................6, 11

Defendant Colorado Investment Holdings LLC (f/k/a Blessed Holdings LLC, and hereafter "**Colorado**"),[1] by and through its undersigned counsel, files this objection (the "**Objection**") to the Motion to Withdraw in Part the Reference of Adversary Proceeding [ECF No. 107] (the "**Reference Motion**") of the Foreign Representative for Tinto Holding Ltda. ("**Tinto**") and respectfully states as follows:

## PRELIMINARY STATEMENT

Tinto's Foreign Representative asks that all pre-trial matters in its adversary proceeding continue before the Bankruptcy Court, but moves to withdraw the reference at the time of trial.[2] The Reference Motion raises a single argument: that the Foreign Representative is entitled to a jury trial with respect to its purely Brazilian, civil-law claims. Given that is the only substantive issue before the Court, the Reference Motion should be denied because the Foreign Representative is wrong. It is not entitled to a jury trial for any of its claims. Alternatively, consideration of the Reference Motion should be deferred in light of Defendants' pending motions to dismiss the Foreign Representative's Amended Complaint until the Bankruptcy Court decides them.[3]

*First,* to the extent the Court engages now on the merits of the singular argument raised in the Reference Motion, it should be denied because the Foreign Representative does not have a jury-trial right. Brazil is a civil-law country and only affords jury trials in discrete circumstances not present here, e.g., criminal trials involving grave bodily harm. The Foreign Representative

---

[1]   The other defendants in this action are J&F Investimentos S.A., JJMB Participações Ltda., WWMB Participações Ltda., Joesley Mendonça Batista, Wesley Mendonça Batista, and JBS S.A. (collectively, with Colorado, "**Defendants**").

[2]   See 28 U.S.C. § 157(e) ("If a right to a trial by jury applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court with the express consent of all the parties").

[3]   Each Defendant has moved to dismiss the Amended Complaint [Bankr. ECF Nos. 67, 74, and 79] and the replies [Bankr. ECF Nos. 97, 98, 100] (collectively, the "**Motions to Dismiss**"). Capitalized terms not defined herein have the meanings ascribed to them in the Motions to Dismiss. References to "[Bankr. ECF No.]" refer to the Bankruptcy Court's docket in the adversary proceeding.

cannot carry its burden to show the reference should be withdrawn permissively[4] by grafting a U.S. jury-trial right for qualifying civil claims onto foreign-law claims that do not have a jury-trial right.  And, even if this scheme had any basis under U.S. law, there would nevertheless be no right to a jury trial because the Foreign Representative's claims seek equitable, not legal relief.

**Second**, the Court need not decide the Reference Motion now.  While it is procedurally proper as a technical matter, the Reference Motion is premature.  The Foreign Representative filed the Reference Motion under compulsion of the Bankruptcy Court's Scheduling Order.[5]  But, the Bankruptcy Court has not yet decided Defendants' pending Motions to Dismiss which raise, among other things, compelling forum-non-conveniens and personal-jurisdiction challenges. Indeed, the other Defendants—all of whom are Brazilian—have not joined in this Objection out of an abundance of caution given their position that the Bankruptcy Court cannot exercise personal jurisdiction over them. What is more, the Foreign Representative's filing of the Reference Motion does not halt the Bankruptcy Court's consideration of the Motions to Dismiss or the adversary proceeding in any way.[6]

It bears emphasis that the Bankruptcy Court's forthcoming decision may moot the reference issue entirely.  The strength of the arguments in the Motions to Dismiss, and particularly

---

[4]    The Foreign Representative does not maintain withdrawal is mandatory.

[5]    The Bankruptcy Court's mostly standardized Scheduling Order requires any party demanding a jury trial to file a motion to withdraw the reference two-business days before the Bankruptcy Court's first scheduling conference. The Bankruptcy Court previously scheduled that conference for April 17, 2024 but since adjourned it until May 15, 2024 without extending the deadline to file a motion to withdraw the reference to assert a jury-trial right.  Briefing closed on the Motions to Dismiss on April 1, 2024. See Reference Mot. p. 1 & n. 1; Bankr. ECF No. 4 (Scheduling Order) p. 1 ("not later than 4:00 p.m. two business days before the scheduling conference, each party requesting a jury trial on any issue in this proceeding must file with this Court a motion to withdraw the reference pursuant to Local Rule 5011-1"); Bankr. ECF No. 71 (Order Granting In Part And Denying In Part Agreed Motion To Modify Scheduling Order) ¶ 9 ("**The deadlines set forth in this Court's scheduling order (ECF No. 4) remain in full force and effect**, including but not limited to the deadlines to request a jury trial"); Bankr. ECF No. 101 (Order) p. 2 (same).

[6]    See Fed. R. Bankr. P. 5011 ("The filing of a motion for withdraw of a case or proceeding … shall not stay the administration of the case or any proceeding therein before the bankruptcy judge").

the glaring inconvenience of the Bankruptcy Court as a forum and its inability to exercise personal jurisdiction over Brazilian Defendants (except Colorado), counsel decidedly in favor of either dismissal of the Reference Motion without prejudice or deferral until the Bankruptcy Court renders its decision.  It is not surprising that cases considering the question have found applications to withdraw the reference submitted after decisions on Rule-12 motions to be not only timely, but also "prudent."[7]

More specifically, after the Brazilian bankruptcy court in São Paulo appointed the Foreign Representative as Tinto's judicial administrator, it commenced an ancillary proceeding before the Bankruptcy Court under chapter 15 of the Bankruptcy Code based on $1,500 in a retainer account. On the same day, the Foreign Representative initiated the adversary proceeding in the Bankruptcy Court against Defendants relating to certain share-transfer agreements and a merger between two Brazilian companies, Bertin S.A. (in which Tinto held indirect equity interests) and JBS S.A. (one of the Defendants), consummated exclusively in Brazil fifteen years ago (in 2009).  Its Amended Complaint alleges that Tinto's indirect equity interest in Bertin S.A. (which merged into JBS S.A.) was unknowingly transferred away from Tinto for no real value through three share-transfer agreements into which Tinto's controlling shareholders (the Bertins) entered in 2009, 2010, and 2014.  It seeks to have those shares returned to Tinto, asserting claims exclusively under Brazilian law to "nullify" the share-transfer agreements and to compel Defendants to physically return the shares so the parties can be placed back in the position they were before the agreements.[8]

---

[7]    See In re Pilopovic, 2015 WL 7273325, at *2 (E.D. Mo. Nov. 18, 2015) (withdraw motion filed after counterclaim denied was timely); In re Sevko, Inc., 143 B.R. 114, 116 (N.D. Ill. 1992) (would have been "imprudent" to file withdrawal motion before motion to dismiss was denied).

[8]    See Am. Compl. ¶ 84 (First Cause of Action (Unjust Enrichment)) ("It is against equity and good conscience to permit these Defendants to retain the Bertin FIP Shares"); ¶ 98 (Third Cause of Action (To Declare Absolute Nullity A Transaction)) ("Because the First and Second Share-Transfer Agreements are null and void under Article 166 of the Brazilian Civil Code, this Court should revert the parties to their status prior to these Share-Transfer Agreements"); ¶ 103 (Fourth Cause Of Action (To Declare Void Transaction)) ("Because the First and Second Share-Transfer Agreements are null and void under Article 167 of the Brazilian Civil Code, this Court

Defendants dispute any wrongdoing and challenge the claims on various grounds, including <u>forum</u> <u>non</u> <u>conveniens</u>, lack of personal jurisdiction, statute of limitations, comity, abstention, <u>res</u> <u>judicata</u> and collateral estoppel, and failure to state a claim.  Importantly, Defendants maintain the suit belongs before a Brazilian court because it has no relevant connection to the United States:  the Foreign Representative and all other defendants (apart from Colorado) are Brazilian; the transactions were consummated in Brazil; the claims seek to avoid share-transfer agreements that have binding, enforceable forum-selection clauses conferring exclusive jurisdiction in Brazil; the Foreign Representative does not claim property was transferred into the United States in connection with the challenged transactions or that the creditors it purports to represent in Brazil are located and were harmed here; the Amended Complaint's seven causes of action involve claims under Brazilian statutes that no U.S. court has ever interpreted;[9] the documents are in Portuguese; and the witnesses are in Brazil, and their dominant language is Portuguese.  The Motions to Dismiss argue forcefully that this controversy is one the Eleventh Circuit instructs should be adjudicated in a foreign forum.[10]  And, considering that nearly all the

---

should revert the parties to their status prior to these Share-Transfer Agreements"); ¶109 (Fifth Cause Of Action (Transfer Of Establishment)) ("To remedy this violation of Article 129, VI, of the Brazilian Bankruptcy Law, Plaintiff respectfully requests that this Court order these Defendants to immediately revert the parties to their status prior to the Share-Transfer Agreements"); WHEREFORE Clause (requesting an order requiring the imposition of a constructive trust in favor of Plaintiff over all shares derived by Defendants under the unlawful transactions")).  There is no independent cause of action under Brazilian law for Aiding and Abetting Breach of Fiduciary Duty (Second Cause of Action) or Piercing the Corporate Veil (Sixth Cause Of Action).  <u>See</u> Bankr. ECF No. 67-2 (Calças Decl. ¶¶ 45, 65).  The Seventh Cause Of Action requires an equitable showing Defendants controlled Tinto.  <u>See</u> <u>id.</u> (Calças Decl. ¶ 72).

[9]   The First and Second Causes of Action (Unjust Enrichment and Aiding And Abetting Breach of Fiduciary Duty, respectively) are governed by Brazilian law under Florida's choice-of-law analysis.  <u>See</u> Bankr. ECF No. 67 (Colorado Motion to Dismiss ¶¶ 35-37); Bankr. ECF No. 98 (Colorado Reply ¶ 18).  The other counts arise under the Brazilian Civil Code and the Brazilian Bankruptcy Law, <u>i.e.</u>, the Third Cause of Action (Declaration of a Nullity under Article 166 of Brazilian Civil Code); Fourth Cause of Action (Declaration of a Nullity under Article 167 of the Brazilian Civil Code); Fifth Cause of Action (Transfer of Establishment based on Article 129, item VI of the Brazilian Bankruptcy Act); Sixth Cause of Action (Piercing the Corporate Veil under Article 82-A of the Brazilian Bankruptcy Law and Article 50 of the Brazilian Civil Code); and Seventh Cause of Action (Damages pursuant to Article 186, 187, and 927 of the Brazilian Civil Code).  <u>See</u>, <u>e.g.</u>, Am. Compl. ¶ 5.

[10]   Extensive Eleventh-Circuit precedent supports granting motions to dismiss on <u>forum</u>-<u>non</u>-<u>conveniens</u> grounds like those filed by Defendants.  <u>See</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 233, 258-59 (1981); <u>Nygård v.</u>

Defendants are Brazilian (except for Colorado—which in any event has submitted to the Brazilian courts' jurisdiction), they challenge the Bankruptcy Court's ability to exercise personal jurisdiction in addition to arguing the forum is glaringly inconvenient.

Accordingly, Defendants request that the Court either (a) dismiss the Reference Motion with prejudice to the extent it is inclined to rule on the Foreign Representative's entitlement to a jury trial now or (b) either (i) dismiss it without prejudice or (ii) adjourn any ruling, subject to revisiting the reference issue after the Bankruptcy Court decides the Motions to Dismiss.  The Foreign Representative will not be prejudiced by any such deferral because it does not request a decision on the Reference Motion until the proceeding reaches the trial stage.[11]

## ARGUMENT

Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown."  "Cause" considerations include a jury demand.  See Dionne v. Simmons (In re

---

Dipaolo, 753 Fed. App'x 716, 721-22 (11th Cir. 2018); Aviation One of Florida, Inc. v. Airborne Ins. Consultants (Pty) Ltd., 722 Fed. App'x 870, 883-86 (11th Cir. 2018); Kulawole v. Sellers, 863 F.3d 1361, 1369-1374 (11th Cir. 2017); Pappas v. Kerzner Int'l Bah. Ltd., 585 Fed. App'x 962, 964 (11th Cir. 2014); Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1328-34 (11th Cir. 2011); Pierre-Louis v. Newvac Corp., 584 F.3d 1052, 1055-56 (11th Cir. 2009); Lisa A. v. Gutierrez Mayorga, 240 Fed. App'x 822, 824 (11th Cir. 2007); Ford v. Brown, 319 F.3d 1302, 1304-10 (11th Cir. 2003); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282-83 (11th Cir. 2001); Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1426-30 (11th Cir. 1996); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cir. 1985).

[11]  See Reference Mot. p. 3 ("Plaintiff thus respectfully requests that the reference for this adversary proceeding be withdrawn when the time for trial comes, if all parties have not consented to conducting a jury trial before this [Bankruptcy] Court").

Simmons), 200 F.3d 738, 742 (11th Cir. 2000); Control Center, LLC v. Lauer, 288 B.R. 269, 274 (M.D. Fla. 2002).

A.    **FOREIGN REPRESENTATIVE HAS NO RIGHT TO JURY TRIAL FOR BRAZILIAN CIVIL-LAW CLAIMS**

The Foreign Representative points only to its supposed jury-trial right to support the Reference Motion.  If the Court considers that sole issue, the Reference Motion should be denied because the Foreign Representative has no right to a jury trial with respect to the Brazilian-law claims in the Amended Complaint.

1.    **NOT A "SUIT AT COMMON LAW"**

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law," Simler v. Conner, 372 U.S. 221, 222, (1963), and the relevant federal law is the Seventh Amendment of the United States Constitution.  It only preserves the right of trial by jury "[i]n Suits at common law."  U.S. CONST. amend. VII.

The Court looks to the underlying substantive law in Brazil when applying the Constitution to determine whether the Foreign Representative's claims can be construed as "Suits at common law."  All the Foreign Representative's claims arise under Brazilian law, specifically the Brazilian Civil Code and Brazilian Bankruptcy Law.  See Am. Compl. (Third Cause of Action (Article 166 of Brazilian Civil Code)); Fourth Cause of Action (Article 167 of the Brazilian Civil Code); Fifth Cause of Action (Article 129, item VI of the Brazilian Bankruptcy Law); Sixth Cause of Action (Article 82-A of the Brazilian Bankruptcy Law and Article 50 of the Brazilian Civil Code (which is not a standalone claim)); and Seventh Cause of Action (Article 186, 187, and 927 of the Brazilian Civil Code).  The First (Unjust Enrichment) and the Second (Aiding and Abetting Breach of Fiduciary Duty (which does not exist)) Causes of Action are governed by Brazilian law.  See Bankr. ECF No. 67 (Colorado Motion To Dismiss) ¶¶ 35-37; Bankr ECF No. 98 (Reply) ¶ 18.

Brazil indisputably is a civil-law country that provides no jury-trial right.  While "[j]ury trials are almost always available in the United States," they are "never provided in civil law jurisdictions."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 252 n.18 (1981) (citing G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969)).  Like most South American countries, Brazil does not give civil litigants a right to a jury trial.  See, e.g., Polanco v. H.B. Fuller Co., 941 F. Supp. 1512, 1527 (D. Minn. 1996) ("South American countries besides Guatemala are firmly grounded in the Civil Law tradition which … does not provide a jury trial"); In re Report of Grand Jury, 152 Fla. 154, 156 (Fla. 1943) ("Trial by jury is by general consent a common-law creation and does not prevail in countries which adopted the civil law … The jury system was developed in England to aid the court in arriving at the factual truth of the controversy through which our law of evidence was derived"); Transnational Lit. § 5:40 (Mar. 2024) ("[I]n Brazil, there is no civil jury").  Instead in Brazil, jury trials are reserved solely for intentional crimes against human life, e.g., homicide, infanticide, and inducing suicide.  Some have gone so far as to argue that "the institution of the civil jury is incompatible with the Brazilian system."  Maria Angela Jardim de Santa Cruz Oliveira, Recognition and Enforcement of U.S. Money Judgments in Brazil, 19 New York Intl. Law Review 1, 21 (Winter 2006) (referencing Minpeco, S.A. v. Naji Robert Nahas, 673 F. Supp. 684 (S.D.N.Y. 1987)).

The Foreign Representative's cases supposedly supporting its entitlement to a jury trial are easily distinguished.  They all involved claims arising under U.S. law.  None involved Brazilian law or any other civil-law jurisdiction, or more specifically, claims under the Brazilian Civil Code or the Brazilian Bankruptcy Law brought here.[12]

---

[12]    See Dunn, Tr. of Ests. of Pacifico Sur Grp. LLC v. Ricci, 2022 WL 3154187, at *3 (S.D. Fla. Aug. 8, 2022) (seeking avoidance of fraudulent transfers); Slott v. Anan Enter., Inc., 2020 WL 8834712, at *1, n.1 (S.D. Fla. June 24, 2020) (same); In re Armenta, 2013 WL 4786584, at *2 (S.D. Fla. Sept. 6, 2013) (same).  Plaintiff also misses the point of Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 40-41 (1989).  In that case, the respondent

## 2.    CLAIMS ARE EQUITABLE, NOT LEGAL

Whether by analyzing the underlying Brazilian law, the actions brought in 18th-century courts of England, or the remedy sought, each of the individual Causes of Action in the Amended Complaint is equitable in nature and not tried to a jury like legal claims.  See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989) ("First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.").

As a preliminary matter, the Foreign Representative's claims were unknown to 18th-century England.  At that time, English courts declined jurisdiction over foreign law claims, Arthur Nussbaum, The Problem of Proving Foreign Law, 50 The Yale Law Journal 1018, 1019 (1941) (citing Alexander N. Sack, Conflict of Laws in the History of English Law in 3 Law: A Century of Progress (1937) 342, 387, 388 for discussions of early English cases).  And, the Limited Liability Act 1855, UK Public General Acts, 18 & 19 Vict. c. 133, which first instituted limited liability for corporations, was not passed until the 19th century.  See John Morley, The Common Law Corporation: The Power Of The Trust In Anglo-American Business History, 116 Colum. L. Rev. 2145, 2177 (2016) (noting limited liability prior to 1855 was "only by special act or charter" and the "1855 Act offered limited liability to all businesses registered as corporations.").  Concepts of "corporate separateness" underlying the Foreign Representative's challenges in the Amended Complaint could not have been brought in 18th-century English courts.

---

argued that in similar cases, courts of equity had concurrent jurisdiction with courts of law over preference actions.  The Supreme Court responded that although courts of equity sometimes provided relief in preference actions, "an action for monetary relief would not have sounded in equity two hundred years ago in England." The Supreme Court made clear actions to recover money are legal, but recognized that fraudulent conveyance claims could be brought in equity and—indeed—were equitable when the remedies sought were distinctively equitable remedies.  That is the case here before the Foreign Representative seeks the return of shares transferred under the share-transfer agreements.

The Amended Complaint styles the suit as one seeking equitable relief. The "Nature Of Action" preamble begins by claiming "Plaintiff seeks to recover an ownership interest in JBS S.A. ('JBS') that Defendants unlawfully obtained from Tinto, a Brazilian agribusiness company." (Am. Compl. ¶ 1). It continues attacking "transactions, which [allegedly] stripped away Tinto's most critical asset." (Am. Compl. ¶ 4). And the overview of the Causes of Action makes clear the Foreign Representative seeks an order compelling Defendants to return the shares subject to the relevant agreements. See Am. Compl. ¶ 5 ("Plaintiff now brings claims for unjust enrichment, claims for aiding and abetting breach of fiduciary duty, and claims under the Brazilian Bankruptcy Law and the Brazilian Civil Code, including claims under Articles 166 and 167 of the Brazilian Civil Code (null and void transaction); Article 129 VI of the Brazilian Bankruptcy Law (transfer of establishment); and Articles 186, 187, and 927 of the Brazilian Civil Code (illicit acts) **to recover from Defendants the shares they wrongfully obtained** and the tax liability Tinto incurred as a result) (emphasis added).

More specifically, unjust enrichment claims (First Cause of Action) and alter-ego theories (Sixth Cause of Action under Brazilian Civil Code and Brazilian Bankruptcy Law) are clearly Brazilian and equitable. See Bankr. ECF No. 56 (Am. Compl.) ¶¶ 75-83, 84 (Unjust Enrichment) ("[i]t is against equity and good conscience to permit these Defendants to retain the Bertin FIP shares"); ¶¶ 112-113 (Piercing Corporate Veil) ("Defendants misused Tinto's purpose by diverting Tinto's greatest asset to the detriment of the estate and its creditors"); Bankr. ECF No. 67 (Colorado Mot. To Dismiss ¶¶ 35-37, 43 (Brazilian law governs)); Bankr. ECF No. 67-2 (Calças Decl. ¶¶ 38-44, 68-72); Bankr. ECF No. 98 (Colorado Reply ¶ 18); Nichols v. Heslep, 273 F.3d 1098, at *2 (5th Cir. 2001) ("[U]njust enrichment [i]s an equitable [claim] and not triable of

right by a jury."); <u>Harrell v. DCS Equipment Leasing Corporation</u>, 951 F.2d 1453, 1458 (5th Cir. 1992) ("[T]he alter ego doctrine is an equitable method of piercing the corporate veil.").

The same can be said for breaches of fiduciary duty (and by extension aiding and abetting claims (the Second Cause of Action (which regardless is not recognizable under Brazilian law)). <u>See</u> <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 567 (1990) (such claims are "within the exclusive jurisdiction of courts of equity") (citing 2 J. Story, Commentaries on Equity Jurisprudence § 960, p. 266 (13th ed. 1886)); <u>In re Evangelist</u>, 760 F.2d 27, 29 (1st Cir. 1985) (such claims "are almost uniformly actions 'in equity'… [that] historically carry with them no right to trial by jury"); Bankr. ECF No. 56 (Am. Compl. ¶¶ 85-91); Bankr. ECF No. 67-2 (Calças Decl. ¶¶ 45-46); Bankr. ECF No. 98 (Colorado Reply ¶ 21).

The Brazilian law claims for declaring the transaction a nullity (Third Cause of Action), declaring the transactions void (Fourth Cause of Action), and transfer of establishment (Fifth Cause of Action) arise under the Brazilian Civil Code and also are equitable.  On their face, they ask the Bankruptcy Court to compel Defendants to return of the physical shares that are subject to the share-transfer agreements and hence a return to <u>status</u>-<u>quo</u>-<u>ante</u>.  The Seventh Cause of Action arises under the Brazilian Civil Code and seeks predominantly equitable relief disregarding the corporate separateness among Defendants and Tinto and obligating them for Tinto's tax debts. And, for all Causes of Action, the Complaint seeks a constructive trust.  <u>See</u> Bankr. ECF No. 56 (Am. Compl.) ¶¶ 84, 98, 103, 120, WHEREFORE clause; <u>Lohmeirer v. Jacobs (In re Lohmeirer)</u>, 303 B.R. 335, 338 (Bankr. E.D. Mich. 2004) (question turns on "whether or not the claimed breach of fiduciary duty is so predominantly equitable in nature as to preclude a right to its disposition by a jury in the bankruptcy setting"); <u>In re Stocks</u>, 137 B.R. 516, 522 (N.D. Fla. Bankr. 1991) (after <u>Granfinanceria</u>, remedy sought in fraudulent conveyance claim is indicative of whether claim is

legal or equitable; when plaintiff seeks a determination that shares belong to plaintiff, there is no entitlement to a jury trial); <u>Zowayyed v. Lowen Co.</u>, 735 F. Supp. 1497, 1500 (D. Kan. 1990) ("If the claim is essentially equitable rather than legal, there is no constitutional right to a trial by jury") (citing <u>Granfinanciera</u>, 492 U.S. 33); <u>In re The Bible Speaks</u>, 65 B.R. 415, 432 (Bankr. D. Mass. 1986) ("In seeking recission, she asks the state court to 'repay' amounts transferred to the Debtor. It is difficult to see how she should obtain anything more by way of damages.  Where a legal claim is merely an alternative to an equitable claim, and where the underlying cause of action is essentially equitable in nature, there is no right to trial by jury under the Seventh Amendment (citing <u>Whitlock v. Hause</u>, 694 F.2d 861, 865-66 (1st Cir. 1982)); <u>Mission Bay Campland, Inc. v. Sumner Financial Corp.</u>, 72 F.R.D. 464, 468 (M.D. Fla. 1976) ("Because the equitable remedy of annulment for a fraudulent transfer of assets was sought, there was no federal right to a jury trial.").

### B.    ALTERNATIVELY, REFERENCE DECISION SHOULD BE DEFERRED

The Foreign Representative's request need not be considered (if at all) until after the Bankruptcy Court decides the Motions to Dismiss.  Indeed, the Foreign Representative does not ask for the Reference Motion to be granted until trial.  <u>See</u> Reference Mot. p. 3; <u>see also</u> <u>Schneider v. Riddick (In re Formica Corp.)</u>, 305 B.R. 147, 150 (S.D.N.Y. 2004) ("The decision of whether to withdraw the reference still depends on case-sensitive factors, including whether the case is likely to reach trial," but "such a [jury trial] right does not compel withdrawing the reference until the case is ready to proceed to trial."); <u>In re Big V Holding Corp.</u>, 2002 U.S. Dist. LEXIS 12609, 2002 WL 1482392, at *5 (D. Del. July 11, 2002) (concluding it would be "premature to withdraw the reference to the bankruptcy  court based upon the unfixed proposition that a jury trial may occur in the future.").  Moreover, deferring consideration of the Reference Motion is in the best interest of judicial economy.  All Defendants (except Colorado) are Brazilian and contest the Bankruptcy Court's ability to exercise of personal jurisdiction over them.  For that reason, they

have not joined this Objection.  Should the Bankruptcy Court somehow find they are subject to personal jurisdiction in West Palm Beach, Florida—a finding they strongly dispute—then at that point those Defendants can weigh in on whether the reference should be withdrawn.

Stated differently, meritorious Motions to Dismiss have been fully briefed.  Their disposition may moot the issue entirely.  So long as they are pending before the Bankruptcy Court, "one can only speculate when it will proceed to trial, if at all."  In re Enron Corp., 317 B.R. 232, 235 (S.D.N.Y. 2004).

## C.    RESERVATION OF RIGHTS

Colorado reserves any and all rights to supplement this pleading and submit additional arguments concerning withdrawing the reference, including with respect to the only question presented in the Reference Motion of whether the Foreign Representative is entitled to a jury trial. Its authorities do not provide otherwise, and additional arguments cannot be raised in its reply.[13] Separately, Colorado respectfully reserves the right to move to withdraw the reference at a later date on any grounds other than a perceived right to a jury trial (which is the only basis covered by the Scheduling Order and the Reference Motion), e.g., given the claims are non-core; on the issue of whether the Bankruptcy Court can enter a final order when the Foreign Representative's proceeding rests on "related-to" subject-matter jurisdiction;[14] whether there is any economy in the Bankruptcy Court entering proposed findings of fact; familiarity with Brazilian law (if any);

---

[13]    See S.D. Fla. L.R. 7.1(c) (reply memorandum "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition"); Equal Emp. Opportunity Comm'n v. Univ. of Miami, 2021 WL 2349490, at *1 (S.D. Fla. June 9, 2021) ("A reply memorandum may not raise new arguments or evidence").

[14]    The Foreign Representative concedes its Brazilian-law claims are not "core."  See Am. Compl. ¶ 17 ("This Court has subject matter jurisdiction under 28 U.S.C. § 1334(b), as this is a civil proceeding related to a case under title 11, Case No. 23-11719-MAM (Chapter 15), and the outcome of this proceeding substantially effects Tinto's estate.").  Under section 157(c)(1) of title 28, "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court judge after considering the bankruptcy judge's propose findings and conclusions and after reviewing de novo those matters to which any party ahs timely and specifically objected."

promoting the economical use of the parties' resources; and the implications (if any) for bankruptcy process.[15]  Nothing herein should be construed as a waiver or admission with respect to the same.

**D.    ADDITIONAL MATTERS FOR DESIGNATION IN RECORD RELEVANT TO DECISION**

Local Rule 5001-1(B)(2) entitles the opposing party to the Reference Motion to provide a "supplemental designation of record."  The Foreign Representative has designated only the Amended Complaint.  In addition, Colorado designates the following:  (a) the Motions to Dismiss [Bankr. ECF Nos. 67, 74, 79]; (b) Defendants' Replies in support of the Motions to Dismiss [Bankr. ECF Nos. 97, 98, 100]; (c) the accompanying declarations (and their exhibits) [Bankr. ECF Nos. 67-1, 67-2, 74-1, 74-2, 74-3, 98-1, 80, 100-1]; and the Bankruptcy Court's scheduling Orders [Bankr. ECF Nos. 4, 52, 55, 101].

## CONCLUSION

For the foregoing reasons, Colorado requests the entry of an Order either (a) denying the Reference Motion to the extent the Court rules on the Foreign Representative's entitlement to a jury trial or (b) either (i) dismissing the Reference Motion without prejudice or (ii) deferring consideration of the Reference Motion until after the Bankruptcy Court decides the Motions To Dismiss; and (c) awarding such other, further relief as the Court considers proper.

---

[15]   See, e.g., Dionne v. Simmons (In re Simmons), 200 F.3d 738, 742 (11th Cir. 2000); Control Ctr. L.L.C. v. Lauer, 288 B.R. 269, 274 (M.D. Fla. 2002); but see also In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 538 (11th Cir. 1991) ("[T]he cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts."); In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993) ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to de novo review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").

Respectfully submitted,

| | |
|---|---|
| **PACK LAW** | **QUINN EMANUEL URQUHART & SULLIVAN LLP** |

**PACK LAW**

Joseph Pack (FBN 117882)
Jessey J. Krehl (FBN 1025848)
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: 305-916-4500
Email: joe@packlaw.com
Email: jessey@packlaw.com

*Co-Counsel to Colorado Investment Holdings LLC*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
By: /s/ Olga M. Vieira
Olga Vieira

James C. Tecce (admitted pro hac vice)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email: jamestecce@quinnemanuel.com
Email: lucasbento@quinnemanuel.com
Email: kenhershey@quinnemanuel.com

Eric Winston (pro hac vice pending)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com

Olga Vieira (FBN 29873)
Daniel Humphrey (FBN 1024695)
2601 South Bayshore Dr, Suite 1550
Miami, Florida 33133
Telephone: 305-402-4880
Facsimile: 305-901-2975
Email: olgavieira@quinnemanuel.com
Email: danielhumphrey@quinnemanuel.com

*Counsel to Colorado Investment Holdings LLC*

14

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served upon all interested parties and the Court on April 29, 2024.


/s/ Olga M. Vieira