## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,

      Debtor in a Foreign Proceeding.

_____/

AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

      Plaintiff,

v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., and WWMB
PARTICIPAÇÕES LTDA.,

      Defendant.

_____/

Chapter 15
Case No.: 23-11719-MAM

Adv. Case No. 23-01118

**MOTION OF COLORADO INVESTMENT HOLDINGS LLC (F/K/A BLESSED
HOLDINGS LLC) (A) TO DISMISS SECOND AMENDED COMPLAINT [ECF NO. 190]
PURSUANT TO FED. R. CIV. P. 12(b)(2), (b)(3), (b)(6) AND (b)(7), APPLICABLE
PURSUANT TO FED. R. BANKR. P. 7012, OR <u>FORUM</u> <u>NON</u> <u>CONVENIENS</u> OR
(B) ALTERNATIVELY, TO ABSTAIN FROM EXERCISING JURISDICTION,
INCLUDING UNDER 28 U.S.C. § 1334(c)**

# I        PRELIMINARY STATEMENT[1]

1.      The Second Amended Complaint does not respond to the Court's request for a simple explanation of why the Foreign Representative filed this lawsuit in Florida.[2]  As amended, the Complaint still identifies no property or acts in the U.S. that are relevant to the proceeding. More precisely, the Foreign Representative does not allege that property was transferred into the U.S. (or Florida) under the Share Transfer Agreements or that the shares it wants returned are located in the U.S.  Nor does the Foreign Representative explain why the Bertins—Tinto's controllers and fiduciaries whose conduct dominates the Complaint—have not been named. Regardless of whether the applicable principle is "forum non conveniens" (which is routinely applied in the chapter-15 context), "in rem jurisdiction," "venue," "comity," or "abstention,"—the conclusion stays the same.  This dispute belongs in Brazil.  It involves Brazilian parties, Brazilian law (including statutes no U.S. court has interpreted), and Brazilian contracts with forum-selection clauses mandating that disagreements be submitted to a Brazilian court.  At this point, the Complaint should be dismissed without leave to replead because the Foreign Representative has failed to connect the suit to the U.S. or Florida in any way that justifies it being litigated here.

## II.        RELEVANT FACTUAL BACKGROUND

2.      The focus of the Foreign Representative's request for relief continues to be a return of shares transferred more than a decade ago.  In the September Decision, the Court asked for clarity on "which legal theory the plaintiff believes this Court can roll back the hands of time and

---

[1]    Capitalized terms have the meanings given in Colorado's original motion to dismiss [ECF No. 67] and the Second Amended Complaint [ECF No. 190] (the "**Compl.**").  Colorado joins in the motions to dismiss of the other Defendants and files herewith the declaration of Manoel De Queiroz Pereira Calças ("**Calças Decl.**") and James Tecce in support of the motion ("**Tecce Decl.**").

[2]    See Tecce Decl. **Exhibit 1** Order Granting Conditional Motion For Leave To File A Second Amended Complaint [ECF No. 178] (the "**Leave Order**") p. 11 and **Exhibit 2** (Tr., Hr'g, Sept. 13, 2024 (the "**September Decision**") pp. 27:23-28:15)).

undo that which was done many years ago."[3]  The Foreign Representative responded by requesting "an order for rescission of the Share Transfer Agreements, thereby returning all parties to the status quo prior to the transactions" and a "constructive trust."[4]  Thus, the Complaint continues to revolve around those agreements.  Each is incorporated by reference and states that (a) "any and all disputes or litigation that may arise with regard to" the agreement must be adjudicated in São Paulo "with the express waiver of any other" jurisdiction; (b) their provisions are binding on Tinto's successors; (c) the Brazilian-denominated shares had to be transferred to a custodian in Brazil— Citibank Distribuidora de Títulos e Valores Mobiliários S.A. in São Paulo ("**Citibank Brazil**") or J&F, a Brazilian Defendant; and (d) the agreements were executed in São Paulo.[5]

3.     With the Complaint's legal theory unchanged, the facts mooring it to Brazil dominate.  The parties (other than Colorado) are Brazilian and contest personal jurisdiction; the documents are in Portuguese; and the witnesses are in Brazil.  The newly-manufactured allegations do nothing to plant the dispute in the U.S. or Florida.  They are a hodge-podge of irrelevant and opaque statements about alleged bribes paid "through U.S. bank accounts" to Brazilian officials unrelated to the Share Transfer Agreements; a private jet owned by J&F that landed in Miami six times this year; JBS's affiliation with U.S. companies whose presence grew in the 15 years following the merger of Bertin S.A. and JBS S.A; Joesley Batista's alleged ownership of real property in New York; Wesley Batista's alleged ownership of real property in Colorado; and

---

[3]     Tecce Decl. **Ex. 2** (Sept. Decision p. 27:5-14); **Ex. 1** (Leave Order Ex. A, p. 8).

[4]     Compl. p. 72 (WHEREFORE Clause ¶¶ A, B) and ¶¶ 1, 113 & n. 10, 120 & n. 11, 128 & n. 12.

[5]     See Tecce Decl. **Exhibit 3** (First) § 4.6; **Exhibit 4** (Second) § 4.6; **Exhibit 5** (so-called "Revised" Third) § 2.14. For the custodial provisions, see **Ex. 3** (§ 2.1); **Ex. 4** (§§ 2.1, 2.2); **Ex. 5** (§ 1.3), and the successor provisions, see **Ex. 3** (§ 4.1); **Ex. 4** (§ 4.1); **Ex. 5** (§ 2.12).  The Complaint refers to a separate "Original Third Share Transfer," but it has the same provisions.  See Tecce Decl. **Exhibit 6** (so-called "Original" Third) § 5.9 (forum); § 1.2.3 (custodial, transfer); § 5.6 (successors).  See also Compl. ¶¶ 40, 49-72 (incorporating agreements by reference into Complaint).

Joesley's Batista's alleged ownership of a "super yacht" located in Miami.[6]  The weakness of this effort is also apparent with respect to the Colorado-specific allegations.  Substantively, they are unchanged in positing that certain Brazilian Defendants created Colorado to further the "share-transfer scheme."[7]  But, the allegations do not establish any legally-relevant U.S. connection.

- The Foreign Representative asserts that the shares under the First and Second Share Transfer agreements "were transferred to a U.S. company (Colorado)" to "loot" Tinto's assets.  However, under those agreements the shares had to be transferred **to Citibank Brazil in Brazil** because they are Brazilian-denominated assets.[8]  Indeed, the Complaint does not allege that the shares it wants back—which Tinto transferred as much as 15 years ago—are or have ever been located in the U.S.[9]  Alone, that omission justifies dismissal.

- Per the Complaint, the agreements were witnessed in Brazil and signed in Brazil through Colorado's Brazilian signatory.[10]  It is dubiously pled on "information and belief" that the Batistas traveled to the U.S. "as the ultimate beneficial owners of Colorado"[11]—but not to consummate the Share Transfer Agreements.  That happened in Brazil.

- The Complaint tries to allege Colorado was formed for the so-called "scheme," but concedes Colorado was formed to hold insurance policies, i.e., it was owned by the Graal Trust, which "engaged Lighthouse Capital Insurance Company and U.S. Commonwealth Life, AI ... based out of the Cayman Islands and Puerto Rico, respectively—to issue 12 life-insurance policies for the secret benefit of the Batista family members."[12]

- The Complaint never alleges the Batistas actually own Colorado.  It cannot and instead says Colorado's "on-paper ownership [changed] several times;" ambiguously describes the Batistas as "beneficial" owners with at best an indirect interest through an intermediate holding company that is not a defendant—Blessed Holdings Cayman Ltd. ("**Blessed**

---

[6]    See Compl. ¶¶ 17-23, 95, 106, 115, 122.

[7]    See Compl. ¶¶ 51, 74-80, 93, 95, 106.

[8]    See Compl. ¶¶ 95(c), 106(c), 115(c); Tecce Decl. Ex. 3 (§ 2.1); Ex. 4 (§§ 2.1, 2.2); Ex. 5 (§ 1.3); Ex. 6 (§ 1.2.3).

[9]    Compl. ¶ 81.  The Foreign Representative admitted in the prior version of the Complaint that Banco do Brasil had a security interest in the shares—further confirming they are in Brazil.  Those admission are binding.  See ECF No. 191 (Redline Compl.) ¶ 65 (striking sentence); Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989) ("[A]mendment of a pleading does not make it any the less an admission of the party."); Poindexter v. EMI Rec. Grp., Inc., 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) ("Even though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint [in deciding a motion to dismiss]."); Feldman v. Targe Corp., 2021 WL 1172794, at *2 (M.D. Fla. Mar. 29, 2021) (citing Andrews on other grounds).

[10]    See Compl. ¶¶ 95(c), 106(c), 115(c); Tecce Decl. Ex. 3 (p. 4); Ex. 4 (p. 4); Ex. 5 (p. 7); Ex. 6 (p. 16).

[11]    Compl. ¶ 95(e), 106(e), 122(e).

[12]    Compl. ¶¶ 73, 76-77.

3

**Cayman**"); and states the Batistas did not hold that interest "until October 31, 2016," two years after the Third Share Transfer Agreement.[13]

- The Complaint overstates J.P. Morgan's role. None of the Share Transfer Agreements references J.P. Morgan. It was not the custodian. The parties used Citibank Brazil.[14]

- While the Complaint alleges Colorado's existence was "concealed," that supposed "concealment" happened in Brazil by Brazilian Defendants and is not actionable.[15]

- The Foreign Representative references alleged bribes in an attempt to smear the Defendants. But, they purportedly took place in Brazil among Brazilians and had nothing to do with either Colorado or the Share Transfer Agreements.[16]

4. Finally, without explanation, the Foreign Representative did not name the Bertins as defendants even though their control of Tinto and consummation of the "share-transfer scheme" is a cornerstone of the Complaint.[17] Their absence justifies dismissal.

## III. ARGUMENT

### A. Court Lacks In-Rem Jurisdiction: 12(b)(2)

5. The Foreign Representative asks the Court to exercise "related-to" jurisdiction over the Complaint's entirely non-core claims.[18] But, the property the Foreign Representative wants to claw back is not located in Florida or anywhere in the U.S. In point of fact, there are no assets in the U.S. the Foreign Representative is trying to recover. The lawsuit seeks to retrieve Brazilian

---

13 See Compl. ¶¶ 3, 74-78.

14 Compl. ¶¶ 51, 104.

15 See Compl. ¶¶ 51, 73; [ECF No. 191] (Redline Compl.) ¶¶ 112, 119 (deletions); Calças Decl. ¶¶ 45-46.

16 Compl. ¶¶ 26, 74.

17 Tecce Decl. **Ex. 2** (Sept. Decision p. 23:13-20); **Ex. 1** (Leave Order p. 9); Compl. ¶¶ 13 (Bertins "managed Tinto"); 27 ("Bertins directed Tinto … to transfer all its operating assets"); 40 ("merger structure conceived by the Batistas and Bertins; Tinto entered into share transfers "under the direction and control of the Bertins"); 41 (Bertins "entered into … Initial Merger Agreement"); 49 ("Under the direction and control of the Bertins and the Batistas, Tinto entered into [the First Share Transfer Agreement]"); 56 (same for second agreement); 59 ("Bertins had moved Tinto out of their core holding company, Heber"); 63 (third agreement "under direction and control" of Bertins); 64 (FIP "under the direction and control of the Bertins;" "Bertins transferred the rest of Tinto's ownership interest in Bertin FIP"); 67 ("Bertins purported to transfer to J&F the same ownership interest in Bertin FIP"); 71 (Bertins held cash).

18 Compl. ¶ 17.

assets.  The shares were transferred in Brazil and involve a Brazilian company (Tinto).[19]  That

means the Court lacks <u>in rem</u> jurisdiction and the authority to enter binding orders relating to the

transferred shares.  <u>See</u> <u>In re British Am. Ins. Co. Ltd.</u>, 488 B.R. 205, 226 (Bankr. S.D. Fla. 2013)

("Court must have either personal jurisdiction over the parties, assuming the plaintiff seeks to bind

the parties personally, or <u>in rem</u> jurisdiction over property that is the subject of the action, or both").

6.     The Complaint references a boat and a condominium in Florida but does not bring

claims with respect to those assets.  And, efforts to seize them would violate chapter 15.  <u>See</u>, <u>e.g.</u>,

<u>In re Nexgensis Holdings Ltda.</u>, 662 B.R. 406, 413 (Bankr. S.D. Fla. 2024) ("Chapter 15 is

properly used as a vehicle for identifying, pursuing claims of the foreign debtor, and administering

assets of the foreign debtor in the U.S. …. [not to] enforce a pre-judgment attachment against *non-*

*debtor's assets* in furtherance of unadjudicated claims for damages against those non-debtors").

That means the only relevant asset in the U.S. and Florida is a $1,500 bank account in Miami,[20]

which is not sufficient to establish <u>in rem</u> jurisdiction over the transferred shares.  <u>See</u> <u>In re British</u>

<u>Am.</u>, 488 B.R. at 225 ("To the extent a foreign representative comes to the United States to seek

assistance in gathering assets and making distributions, this Court's powers are limited to assets

within the territorial jurisdiction of the United States").

**B.     U.S. COURT IN FLORIDA IS NOT PROPER VENUE:  12(B)(3), FORUM-SELECTION
CLAUSE, ELEVENTH-CIRCUIT PRECEDENT, AND <u>FORUM NON CONVENIENS</u>**

7.     Instead of providing a cogent explanation why the suit belongs in the U.S., let alone

in Florida, the Complaint strings together facts that are unrelated to the requested relief.  Whether

framed as assessing proper venue, abstention, comity, or convenience of forum, the analysis leads

---

[19]  <u>See</u> Compl. ¶ 81; Tecce Decl. **<u>Ex. 3</u>** (§ 2.1); **<u>Ex. 4</u>** (§§ 2.1, 2.2); **<u>Ex. 5</u>** (§ 1.3); **<u>Ex. 6</u>** (§ 1.2.3); [ECF No. 191]
      ¶ 65 (stricken language).
[20]  <u>See</u> Chapter 15 Case [ECF No. 2 (¶ 11)]; Compl. ¶ 19.

to the same inescapable result:  this proceeding does not belong anywhere in the U.S.

8. The Eleventh Circuit has long-required trial courts to "separat[e] out for hearing only those cases where the contacts with the American forum predominate." Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 & n. 10 (11th Cir. 1985).  And, it has repeated this instruction for at least 40 years in the context of affirming dismissals on forum-non-conveniens grounds.[21]

9. Equally fundamental is the Eleventh-Circuit's policy toward the application of mandatory forum-selection clauses, which follows Supreme-Court precedent and instructs that (1) they must be enforced and essentially are case-dispositive and (2) a foreign plaintiff's choice of forum has no weight, and instead it bears the burden of showing dismissal is improper. Both policies are implicated here.  The Brazilian Foreign Representative seeks to rescind agreements clearly requiring that any disputes be brought in Brazil.[22] See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 63-64 (2013) (clause reflects intent to "waive the right to challenge the preselected forum as inconvenient;" when "contract contains a valid forum selection clause," "plaintiff's choice of forum merits no weight"); Pappas v. Kerzner Int'l Bah. Ltd., 585 F. App'x 962, 964 (11th Cir. 2014) (clause puts burden on plaintiff to show dismissal is unwarranted); GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1028–29 (11th Cir. 2014) (clause "carries near-determinative weight."); Turner v. Costa Crociere S.P.A., 488 F. Supp. 3d 1240, 1243-45 (S.D. Fla. 2020) (clause "is essentially case dispositive").

---

[21]    See Piper Aircraft Co. v. Reyno, 454 U.S. 233, 258-59 (1981); Nygård v. Dipaolo, 753 Fed. App'x 716, 721-22 (11th Cir. 2018); Aviation One of Florida, Inc. v. Airborne Ins. Consultants (Pty) Ltd., 722 Fed. App'x 870, 883-86 (11th Cir. 2018); Kulawole v. Sellers, 863 F.3d 1361, 1369-1374 (11th Cir. 2017); Pappas v. Kerzner Int'l Bah. Ltd., 585 Fed. App'x 962, 964 (11th Cir. 2014); Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1328-34 (11th Cir. 2011); Pierre-Louis v. Newvac Corp., 584 F.3d 1052, 1055-56 (11th Cir. 2009); Lisa A. v. Gutierrez Mayorga, 240 Fed. App'x 822, 824 (11th Cir. 2007); Ford v. Brown, 319 F.3d 1302, 1304-10 (11th Cir. 2003); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282-83 (11th Cir. 2001); Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1426-30 (11th Cir. 1996); Sibaja v. Dow Chem. Co., 757 F.2d 1215, 1217 n.5 (11th Cir. 1985).

[22]    See Tecce Decl. **Ex. 3** (§ 4.6); **Ex. 4** (§ 4.6); **Ex. 5** (§ 2.14); **Ex. 6** (§ 5.9).

10.     Federal law, which governs the clauses' applicability,[23] dictates that they are "presumptively valid and enforceable" and binding on the Foreign Representative.  Rucker v. Oasis Legal Finance, L.L.C., 632 F.3d 1231, 1236 (11th Cir. 2011).  See also In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999) ("[Trustee] subject to all claims and defenses which might have been asserted against the bankrupt").  The Complaint does not plead any of the few instances when the validity can be questioned and at best insufficiently alleges the agreements—not the clauses themselves—were procured by fraud.[24]  Moreover, textually the Complaint's claims fall within the clauses' broad language, which encompasses the parties' business relationship, rescission requests, and supposed "tort" claims.  See Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987), aff'd, 487 U.S. 2 (1988) ("any dispute" covers "all causes of action arising directly or indirectly from the business relationship evidenced by the contract"); Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001) (suit "arises out of" contract when it occurs as a result of "performance of contractual duties"); Oribe Hair Care, LLC v. Canales, 2017 WL 2059582, at *3 (S.D. Fla. May 15, 2017) (Stewart "applies to tort claims"); Jiangsu Hongyuan Pharma. Co. v. DI Glob. Logistics Inc., 159 F. Supp. 3d 1316, 1327 (S.D. Fla. 2016) ("any dispute" includes "non-contractual claims"); Pinnacle Interior Elements, Ltd. v. Panalpina, Inc., 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (clause covering "any action relating to services performed by" party covered claims for "breach of fiduciary duty; fraudulent inducement; negligent misrepresentation; and negligence").

---

[23]    See Vernon v. Stabach, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("[F]ederal common law governs the construction of a forum selection clause"); Martinez v. Bloomberg LP, 740 F.3d 211, 222 (2d Cir. 2014) ("Every circuit court decision [applies federal law]").

[24]    See Rucker, 632 F.3d at 1236 ("[P]laintiff must specifically allege that the clause was included in the contract at issue because of fraud"); Carrigg v. General R.V. Center, Inc., 2018 WL 5904447, at *7 (M.D. Fla. Nov. 9, 2018) ("Allegations that the underlying contract was fraudulently induced do not render the forum selection clause unenforceable").

11.     In the September Decision, the Court questioned the applicability of <u>forum</u> <u>non</u> <u>conveniens</u> given chapter 15 is premised on comity principles.  But, the Foreign Representative cannot hide behind comity to forum shop recycled Brazilian claims.  <u>See</u> <u>In re Hellas Telecommc'ns (Lux.) II SCA,</u> 555 B.R. 323, 343-44 (Bankr. S.D.N.Y. 2016) ("[Foreign] court is in a better position to interpret and apply [foreign] law to … complex facts."); <u>In re Bancredit Cayman Ltd.,</u> 2008 WL 5396618, at *9 (Bankr. S.D.N.Y. Nov. 25, 2008) ("[C]hapter 15 was not designed to encourage forum shopping or hear disputes with no connection to the forum.").

12.     Moreover, courts apply <u>forum</u> <u>non</u> <u>conveniens</u> in adversary proceedings commenced under the umbrella of a chapter-15 case, especially when (as here) a foreign plaintiff misuses chapter 15 as a vehicle to litigate foreign claims in a U.S. forum.  <u>See</u> <u>In re Schonfeld, Inc.,</u> 806 F. App'x 743, 747 (11th Cir. 2020) (affirming <u>forum</u> <u>non</u> <u>conveniens</u> dismissal of adversary proceeding related to chapter-15 case:  "because the underlying proceedings occurred in Canada, Canada had a stronger interest in hearing this matter before its courts"); <u>In re Hellas,</u> 555 B.R. at 355 (dismissing adversary proceeding brought in chapter 15 case on <u>forum</u>-<u>non</u>-<u>conveniens</u> grounds); <u>In re Hellas Telecommc'ns (Lux.) II SCA</u>, 535 B.R. 543, 591 (Bankr. S.D.N.Y. 2015) (foreign plaintiff's choice of U.S. "is entitled to less deference because it is much less reasonable to presume that the choice was made for convenience"); <u>Windt v. Quest Commc'ns Int'l, Inc.,</u> 544 F. Supp. 2d 409, 434 (D.N.J. 2008) (dismissing adversary proceeding in chapter 15 case on <u>forum</u>-<u>non</u>-<u>conveniens</u> grounds even through Dutch court overseeing bankruptcy "*expressly* authorized Plaintiff to bring their claims in the U.S.;" ***rejecting*** argument that "chapter 15 … and specifically § 1509 … facilitates the efforts of foreign bankruptcy trustees to pursue claims in U.S. courts and encourages comity between U.S. and foreign court[s]"), <u>aff'd</u>, 529 F.3d 183 (3d Cir. 2008); <u>Bancredit</u>, 2008 WL 5396618, at *3 (dismissing adversary proceeding in

chapter 15 case brought by Cayman liquidators against Dominican-Republic defendants: "except for the thin reed of the recognition order, neither the parties nor the events have any connection to this forum.  This is not the plaintiffs' 'home court,' and their choice of this forum is not entitled to any special deference.").

13.    In this proceeding, the factors relevant to the <u>forum</u>-<u>non-conveniens</u> analysis all point to Brazil.  The claims arise under Brazilian law; the other Defendants are not subject to personal jurisdiction;[25] the Court has no <u>in rem</u> jurisdiction over the shares as they were transferred in Brazil and are not in the U.S.;[26] Colorado—which has a Brazilian taxpayer I.D. number[27] — commits to accept service of process, make witnesses available in Brazil, and honor any judgment issued by a Brazilian court; Brazilian courts have greater access to evidence given that the disputed agreements were negotiated and executed in Brazil; nearly all parties and the Bertins as well as their respective agents and employees are Brazilians for whom Portuguese is their first language; the Court has no power to subpoena these witnesses, while a Brazilian court does;[28] nearly all the Brazilian Defendants' assets are located in Brazil—which the Foreign Representative admits because it only alleges a boat and a condominium in Florida and two properties in New York and Colorado; it is burdensome to force Brazilian witnesses to travel to Florida; and the documents

---

[25]    <u>In re Banco Santander Sec.-Optimal Lit.</u>, 732 F. Supp. 2d 1305, 1314 (S.D. Fla. 2010) ("Court's ability to exercise personal jurisdiction over all Defendants is an important private convenience factor"); <u>Avia Support Int'l, Inc. v. Acts Tech. Support & Servs., Inc.</u>, 2010 WL 11505692, at *13 (S.D. Fla. Aug. 31, 2010) (concession "that personal jurisdiction … is proper in [Canada]" favored dismissal).

[26]    <u>See</u>, <u>e.g.</u>, <u>In re British Am. Ins. Co. Ltd.</u>, 488 B.R. 205, 225 (Bankr. S.D. Fla. 2013) ("The chosen venue must have both subject matter jurisdiction and personal and/or <u>in rem</u> jurisdiction").

[27]    <u>See</u> Tecce Decl. **Exhibit 7.**

[28]    <u>See</u> <u>Tazoe</u>, 631 F.3d at 1331 (S.D. Fla. "lacks the authority to compel certain witnesses to attend proceedings in that jurisdiction;" "dozens of possible witnesses ... are citizens of Brazil and outside the subpoena power of the district court"); <u>Da Rocha</u>, 451 F. Supp. 2d at 1324 ("availability of witnesses is greater ... in Brazil;" "this Court cannot compel [Brazilian] third party witnesses to give testimony or produce documents in this jurisdiction;" "the Brazilian trial courts have subpoena power to compel the attendance of such witnesses and the production of documents."); <u>Kyla Shipping Co. v. Shanghai Zhenhua Heavy Indus. Co., Ltd.</u>, 2012 WL 1565634, at *7 (S.D. Ala. Apr. 30, 2014) (noting "amenability [of Brazilian witnesses] to compulsory process in Brazil").

must be translated from Portuguese to English.  See, e.g., Pierre-Louis, 584 F.3d at 1060 (11th Cir.

2009) (Martinique to U.S.); Nygård, 753 F. App'x at 725 ("common sense" to find Bahamas to

U.S. costly); Da Rocha v. Bell Helicopter Textron, Inc., 451 F. Supp. 2d 1318, 1325 (S.D. Fla.

2006) (Brazilian witnesses are "beyond the subpoena power of this court"); Del Istmo Assur. Corp.

v. Platon, 2011 WL 5508641, at *6 (S.D. Fla. Nov. 9, 2011) (Panama to Florida too expensive).

14.    The prevalence of foreign law also strongly supports dismissal.  While the Court is

competent to decide Brazilian-law issues, it need not expend its limited judicial resources on such

a difficult and time-consuming enterprise for a case with no connection to this forum.  This

consideration also is strong because the Foreign Representative asserts statutory Brazilian-law

claims that no U.S. court has ever decided.  See, e.g., Magnin, 91 F.3d at 1430 ("[I]f the case were

tried in Mobile, a federal judge in Alabama would have to attempt to divine and correctly apply

French substantive law .... Far better that the case be tried in France by … jurists as familiar with

French law as we are unfamiliar with it."); Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics

Inc., 159 F. Supp. 3d 1316, 1328 (S.D. Fla. 2016) ("[T]his dispute is governed by Chinese law,

with which Chinese courts are infinitely more familiar than this Court"); Da Rocha, 451 F. Supp.

2d at 1325–26 (dismissal:  it "seems likely that ... Brazilian law will apply to the issue of liability").

15.    Finally, Brazilian courts have a greater interest in this dispute than a U.S. court.

The challenged transactions took place in Brazil among Brazilians; the shares were transferred in

Brazil; the lawsuit is premised on Brazilian-law claims and supposedly was brought on behalf of

Brazilian creditors;[29] and, there is no property in the U.S. the Foreign Representative is trying to

recover.  See Piper Aircraft, 454 U.S. at 260 (noting "local interest in having localized

controversies decided at home"); Fresh Res., LLC v. ASF Holland B.V., 921 F.3d 1043, 1049

---

[29]    The Complaint identifies Tinto's largest creditors:  the Brazilian Taxing Authority and a Brazilian bank.
See Compl. ¶¶ 47, 61, 65, 68, 82, 144-145.  The Complaint does not identify a single creditor in the U.S.

(11th Cir. 2009) (same); Pierre-Louis, 584 F.3d at 1061 (U.S.'s interest "is outweighed by Martinique's interest in adjudicating actions that aim to redress injuries to its citizens"); Da Rocha, 451 F. Supp. 2d at 1325 ("Brazil has a stronger local interest in deciding these controversies" where events giving rise to litigation occurred in Brazil).

### C.    PRINCIPLES OF COMITY AND RES JUDICATA COMPEL DISMISSAL

16.    The Brazilian Bankruptcy Court is administering Tinto's assets for distribution to its creditors (none of whom is located in the U.S.) and has exclusive jurisdiction over the Foreign Representative's claims.[30]   And, the assets relevant to the dispute are located in Brazil.  Comity therefore should be shown to the Brazilian Bankruptcy Court.  See Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006) ("A foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference"); In re Neves, 783 F. App'x 995, 996 (11th Cir. 2019) ("For bankruptcy matters, the extension of comity enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner"); Daewoo Motor Am., Inc. v. Gen. Motors Corp., 459 F. 3d 1249, 1258-59 (11th Cir. 2006) (affirming dismissal of adversary proceeding on comity grounds in favor of Korean insolvency proceeding); Finanze AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999) (equitable and orderly distribution of debtor's property requires adjudicating all claims against limited assets in a single proceeding).

17.    The Foreign Representative may argue the Court should show comity to the Brazilian Bankruptcy Court's order dated October 17, 2024 authorizing the Foreign Representative to file the amended Complaint.  But, the order supplies more reasons to dismiss the proceeding and send the Foreign Representative back to Brazil.  The Brazilian Bankruptcy Court authorized

---

[30]    Calças Decl. ¶¶ 13-23.

the Complaint because it accepted the Foreign Representative's point that it needed to satisfy the Court's deadline in the Leave Order.  Notably, it said nothing about the merits of the claims.  And, it actually recommended that the proceeding be suspended to conserve expenses because measures are underway in Brazil to bring the Tinto's bankruptcy to a close by addressing its "tax liability, as well as the assumption by a third party to pay the unsecured liabilities."[31]  Separately, various other proceedings have been brought in Brazil, some of which predate Tinto's bankruptcy, that involve the claims, shares, and allegedly aggrieved parties.  The Court can take judicial notice of the orders issued by these Brazilian courts.

18.     ***2013 Lawsuits.***  Tinto sued Colorado in a preliminary action on June 10, 2013 and a primary action on July 11, 2023 (the "**2013 Tinto Lawsuits**"), in the Court of Justice in São Paulo asserting the same claims it brings in this lawsuit, <u>e.g.</u>, the price under the share transfer agreement was insufficient and represented a "non-price."[32]  Tinto and Colorado settled the 2013 Tinto Lawsuits on November 18, 2013 and released the claims.  The Brazilian court also ratified the First and Second Transfer Agreements and dismissed the claims with prejudice.[33]

19.     ***2015 Tax Suit***.  On March 25, 2015, the Brazilian government filed suit against Tinto and Blessed Holdings, with Bertin FIP later joining as a co-defendant (the "**2015 Tax Suit**"), requesting an annulment of the First and Second Transfer Agreements and a return of the

---

[31]    <u>See</u> Compl. ¶ 4; Tecce Decl. **Exhibit 8** ("I accept the reasons presented … to authorize the amendment to the initial petition to be filed by this date in the USA …. On the other hand, considering that measures are underway in Brazil to address the tax liability, as well as the assumption by a third party of the obligation to pay the unsecured liabilities …. the most prudent solution is to authorize the amendment, without prejudice to the Judicial Administrator verifying … the possibility of suspending the action or initiating mediation …. [a]voiding additional expenses and conserving resources that may benefit creditors"); Calças Decl. ¶ 24.

[32]    <u>See</u> Action No. 1036979-81.2013.8.26.00100/TJSP, Law Firm Sérgio Bermudes filing a "precautionary action", p. 1 (Tecce Decl. **Exhibit 9**).  At the time, Colorado was known as Blessed Holdings LLC.

[33]    <u>See</u> Civil Action No. 1046806-19.2013.8.26.0010/TJSP complaint (Tecce Decl. **Exhibit 10**); Re-Ratification Of Private Instrument Of Settlement And Other Pacts Signed Between Blessed And Tinto (the "**2013 Settlement Agreement**") (Tecce Decl. **Exhibit 11**); Notice of Dismissal (the "**2013 Dismissal Notice**") (Tecce Decl. **Exhibit 12**); Order Dismissing Case (the "**2013 Dismissal Order**") (Tecce Decl. **Exhibit 13**).

respective shares to Tinto. On October 9, 2018, the trial court declared the two agreements void, but that decision's findings that the First and Second Transfer Agreements are void was annulled by an appellate court on November 11, 2022 and further confirmed on July 19, 2023.[34] The case was then remanded to the lower court. Since then the parties, with the support of the Foreign Representative—who, either directly or through its predecessor (Deloitte), has been participating in the case since 2019—have started negotiations to settle the tax liability.

20.     ***Berf Suit***. On May 31, 2022, a minority shareholder in the Bertin group, Berf Participações S.A, filed suit in São Paulo against Blessed Holdings, J&F, Heber, Bertin FIP, and members of the Bertin and Batista families (the "**Berf Suit**") alleging Bertin FIP's shares were fraudulently transferred to JBS's former controlling shareholders and requesting a freeze of JBS shares held by J&F. On April 5, 2023, the Brazilian court dismissed the claims with prejudice, finding they had been barred by the four-year statute of limitations in the Brazilian Civil Code.[35]

21.     Deference should be shown to the orders entered in the 2013 Tinto Lawsuits and the Berf Suit and to litigation covering the same subject matter, e.g., 2015 Tax Suit. See Ungaro-Benages v. Desdner Bank AG, 379 F.3d 1227, 1238 (11th Cir. 2004) (applying comity, "domestic courts consider whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings"); Turner Entm't Co. v. Degeto Film GmbH, 25 F.3d 1512, 1523 (11th Cir. 1994) (staying domestic legal proceedings to defer to concurrent German proceedings).

22.     Separately, the Foreign Representative is bound by the admissions Tinto made in in those suits concerning issues relevant to this litigation, e.g., its ratifications and releases in the 2013 Tinto Lawsuits and admission of jurisdiction and its arguments in the Berf Suit and the 2015

---

[34]    See Appellate Court Decision, 2015 Tax Suit (Tecce Decl. **Exhibit 14**); Case File No. 0006234-84-2015.403.6100 (Tinto Submission) (Tecce Decl. **Exhibit 15**); July 19, 2023 Order (Tecce Decl. **Exhibit 16**).

[35]    Decision of Court of Justice of São Paulo Trial No. 1055320-43.2022.8.26.0010 (Tecce Decl. **Exhibit 17**).

Tax Suit that the claims are time-barred.[36]  See, e.g., In re Harloff, 247 B.R. 523, 528 (Bankr. M.D.

Fla. 2000) (res judicata bars claims that "could have been advanced[,] not merely those advanced;"

applies in foreign proceedings); Winn-Dixie Stores, Inc. v. Dolgencorp LLC, 746 F. 3d 1008,

1036-37 (11th Cir. 2014) (issues are "identical" even if not entirely indistinguishable); Manning

v. City of Auburn, 953 F. 2d 1355, 1360 (11th Cir. 1992) (reaches "claims in existence"); Ragsdale

v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999) (precludes claims based on "same

factual predicate"); Belize Telecom Ltd. v. Gov't of Belize, 2005 WL 4868966, at *12 (S.D. Fla.

June 6, 2005); In re Massa Falida Do Banco Cruizero Do Sul S.A., 2021 Bankr. 2021 WL 734865,

at *9; In re Goldbronn, 263 B.R. 347, 359 (Bankr. M.D. Fla. 2001); Calças Decl. ¶¶ 25-33.

## D.    ABSTENTION FROM EXERCISE OF JURISDICTION IS APPROPRIATE

23.    "International abstention" favors letting the a Brazilian court decide the Foreign

Representative's claims.  See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1222 (11th Cir. 1999)

(affirming district-court decision dismissing suit subject to concurrent international jurisdiction

"on grounds of international abstention"); Belize Telecom, Ltd. v. Gov't of Belize, 528 F.3d 1298,

1305 (11th Cir. 2008) (deferring to Belize-court decision in lawsuit first-filed in Florida).  Cf., In

re TPG Comm'n, LLC, 662 B.R. 795, 801-802 (Bankr. S.D. Fla. 2024) ("Abstention or dismissal

makes sense where a debtor attempts … [to file] bankruptcy purely as a litigation strategy").

Alternatively, sections 1334(c)(1) and (c)(2) of title 28 provide statutory support for abstention

even though the Foreign Representative's claims arise under Brazilian law.[37]  With respect to

---

[36]    See Tecce Decl. **Ex. 9** ¶ 2 (Precautionary Action); Tecce Decl. **Ex. 10** ¶ 2 (Primary Action)**;** Tecce Decl. **Ex. 11** (2013 Settlement Agreement) ("ratify" First and Second Transfer Agreements); Tecce Decl. **Ex. 12** (2013 Dismissal Notice) (waiving "right on which the lawsuit is based"); Tecce Decl. **Ex. 13** (2013 Dismissal Order) ("ratify[ing]" settlement; dismissing "with prejudice"); Tecce Decl. **Ex 15** (Tinto Submission) ¶¶ 15, 80, 83-84.

[37]    See, e.g., Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 833-34 (5th Cir. 1993) (courts can "abstain when the interest of justice would be served by a case heard in a foreign tribunal where the action arose"); In re MatlinPatterson Global Opp. Partners II L.P., 2022 WL 17744002, at *3 (Bankr. S.D.N.Y. Dec. 16, 2022) ("While the statute refers to 'state law,' courts have extended the law to include foreign proceedings").

mandatory abstention, the Complaint does not assert core bankruptcy claims and instead advances Brazilian-law claims over which the Brazilian Bankruptcy Court has exclusive jurisdiction and can decide quickly.  See, e.g., Berf Suit (commenced May 31, 2022, dismissed April 5, 2023).  See also Principal Growth Strategies, LLC. v. AGH Parent LLC, 615 B.R. 529, 535-536 (D. Del. 2020) (applying mandatory abstention in proceeding "based on foreign [Cayman Islands] law" as well as Delaware law).  Permissive abstention is also warranted given, among other things, comity considerations, Brazil's compelling interest in the litigation, and the Foreign Representative's having manufactured related-to jurisdiction by filing the chapter 15 case to bring claims a Brazilian court already dismissed with prejudice in the 2013 Tinto Lawsuits.[38]

### E.    FAILURE TO JOIN INDISPENSABLE PARTY (BERTINS):  RULE 12(B)(7)

24.    The Complaint places the Bertins at the center of the allegedly wrongful conduct.[39] They are alleged to have been Tinto's fiduciaries who caused it to enter into the Share Transfer Agreements, and claims relating to those agreements cannot be adjudicated without the Bertins as parties.   Yet, the Foreign Representative refuses to name them, even after (a) the Brazilian Bankruptcy Court tasked the Foreign Representative with going "Tinto's former controller," i.e., the Bertins[40] and (b) the Court questioned their absence.[41]  Because the Bertins are an indispensable party, under U.S. law the Complaint should be dismissed as they have not been joined.  And, under Brazilian law, any judgment would be deemed null and void.  See Crouse–Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 701 (2d Cir. 1980) (in suit to set aside contract, "all parties who may be affected

---

[38]    A Fifth-Circuit decision suggests § 1334(c)(1) applies even in chapter-15 context.  See Electric Reliability Council of Texas, Inc. v. Just Energy Texas L.P, et al. (In re Just Energy Group, Inc.), 57 F. 4th 241, 247-48 (5th Cir. 2023) (bankruptcy court should have abstained permissively from exercising jurisdiction over adversary proceeding commenced in chapter 15 cases asserting turnover and Canadian preference claims).

[39]    See Compl. ¶¶ 13, 27, 40, 41, 49, 56, 63, 64, 67, 71.

[40]    See Tecce Decl. **Exhibit 18** (ordering Foreign Representative to go after "controllers" of Tinto).

[41]    See Tecce Decl. **Ex. 2** (Sept. Decision p. 23:13-20); **Ex. 1** (Leave Order p. 9).

by the determination of the action are indispensable."); Am. Health Underwriters, Inc. v. Golden Rule Ins. Co., 2012 WL 3779993, at *2 (E.D. Tex. July 9, 2012) (party necessary that "actively participated in the underlying actions" giving rise to claims); Carl Schroeter GmbH & KO., KG. v. Crawford & Co., 2009 WL 1408100, at *4 (E.D. Pa. May 19, 2009) (subsidiary is indispensable when party is sued in connection with its conduct); Jurimex Kommerz Transit GmbH v. Case Corp., 201 F.R.D. 337, 340–41 (D. Del. 2001) (subsequent suit will ensue in better jurisdiction); Fed. R. Civ. P. 19(a)(1)(B)(ii), (b); Calças Decl. ¶¶ 85-87. The Bertins are not only indispensable, but they also have billions in assets in Brazil, including as the Complaint admits the multi-billion-dollar Heber conglomerate.[42]  That pulls the suit even further into Brazil from the U.S.

### F.    I<small>N</small> P<small>ARI</small> D<small>ELICTO</small> D<small>OCTRINE</small> B<small>ARS</small> F<small>OREIGN</small> R<small>EPRESENTATIVE'S</small> C<small>LAIMS</small>

25.    Because the Complaint makes clear Tinto and its controllers (the Bertins) were central participants in any alleged wrongdoing, under U.S. or Brazilian law, the Foreign Representative cannot assert claims on Tinto's behalf against the Defendants.  See, e.g., Receiver Of Lancer Mgmt. Group LLC v. Lauer, 2008 WL 906274, at *3 & n.5 (S.D. Fla. Mar. 31, 2008) (under in pari delicto "a plaintiff who has participated in the wrongdoing may not recover damages resulting from the wrongdoing;" "[doctrine] is based on the policy that courts should not lend their good offices to mediating disputes among wrongdoers"); Calças Decl. ¶ 49.

### G.    C<small>OMPLAINT</small> D<small>OES</small> N<small>OT</small> S<small>TATE</small> V<small>IABLE</small> C<small>AUSES</small> O<small>F</small> A<small>CTION</small>

26.    Even with conflicting foreign-law declarations, case law confirms the Court can dismiss the Complaint because the disagreements relate only to legal issues.[43]

---

[42]    See Compl. ¶¶ 14, 15, 42, 59, 64, 67, 71.

[43]    See Kolawole v. Sellers, 863 F.3d 1361, 1371 (11th Cir. 2017) ("[C]ourts routinely find against plaintiffs without holding an evidentiary hearing, despite conflicting expert opinion testimony"); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282 (11th Cir. 2001) (affirming dismissal with conflicting foreign-law reports); Lisa, S.A. v. Gutierrez Mayoraga, 240 F. Appx. 822, 824 (11th Cir. 2007) (same).

### 1.    BRAZILIAN LAW GOVERNS ALL ASPECTS OF PROCEEDING

27.    Brazilian law governs a lawsuit challenging share-transfer agreements negotiated, signed, and consummated exclusively in Brazil by Brazilians and alleging breaches of fiduciary duties owed to a Brazilian company (Tinto).  Florida's choice of law rules apply to the claims in the Complaint, including statutes of limitation.  Florida courts apply the doctrines of lex loci contactus and internal affairs which substantively overlap with the "most significant relationship" test.  See In re NationsRent Rental Fee Litig., 2009 WL 636188, at *10 (S.D. Fla. Feb. 24, 2009) (lex loci governs unjust enrichment); Mukamal v. Bakes, 2008 WL 11391157, at *2, *8-9 (S.D. Fla. May 20, 2008) ("internal affairs doctrine" governs aiding-and-abetting but "does not contravene" most significant relationship test).  Note, the result would be the same if the Court applied federal choice-of-law rules or Brazilian law.[44]

28.    New York law does not apply.  The supposed New-York facts do not relate to the Share Transfer Agreements, e.g., that J.P. Morgan acted as a U.S. custodian for Colorado, a **Delaware** company—and **not** in connection with the challenged transactions that involved Brazilian-denominated assets; that "upon information and belief" certain Defendants traveled to New York to do business with J.P. Morgan generally—and **not** in connection with the challenged transactions; and that one Defendant is alleged to own real estate in New York that is **not** related to the challenged transactions.  See, e.g., In re Massa Falida Do Banco Cruzeiro Do Sul S.A., 2021 WL 734865, at *15-16 (Bankr. S.D. Fla. Jan. 15, 2021) (applying Brazilian law to aiding-and-abetting claims given Brazil's "interest in regulating the conduct of Brazilian banks and members of the board of directors of Brazilian banks, as well as seeking funds allegedly diverted form a

---

[44]    See Laspro Consultores LTDA v. Alinia Corp. (In re Massa Falida Do Banco Cruzeiro Do Sul S.A.), 567 B.R. 212, 226 (Bankr. S.D. Fla. 2017) ("[T]he test to determine which law applies is as provided by the Restatement (Second) Conflict of Laws, which is the same conflicts test under Florida law and Federal law"); Calças Decl. ¶¶ 40-41 (contracts signed in Brazil are interpreted under Brazilian law).

Brazilian bank via a scheme perpetrated in Brazil, returned to the Brazilian bankruptcy estate to repay Brazilian creditors").

### 2.    CLAIMS ARE TIME-BARRED

29.    All substantive Causes of Action should have been brought as Revocatory Actions governed by the Brazilian Bankruptcy Act and became time-barred on November 29, 2021. Separately, the First Cause of Action is barred under the Brazilian Civil Code pursuant to a three-year statute of limitations that began to run from the date of the Share Transfer Agreements (2009, 2010, 2014) and expired before the issuance of Tinto's bankruptcy order in 2018.  The Second Cause of Action does not exist under Brazilian law, and if it did, it still would be time-barred under a three-year statute of limitations.  While neither New York nor Florida law governs these two Causes of Action, the result would be the same.[45]  The Third and Fourth Causes of Action (Articles 166 and 167 of the Brazilian Civil Code) are subject to a four-year statute of limitations under Article 178(2) of the Brazilian Civil Code, which lapsed in 2013, 2014 and 2018 (respectively). The Fifth Cause of Action is subject to a three-year statute that expired in November 2021.[46]

### 3.    PARTICULARITY IS LACKING

30.    Federal Rule 9(b) and its particularity requirements apply to the Causes of Action because they sound in fraud.[47]  They have not been satisfied when the "who, what, where, when, why, and how" for each of the Causes of Action is lacking.  See In re Hellas Telecomms. (Lux. II) SCA, 535 B.R. at 561-62 (9(b) applied to U.K. fraudulent transfer claim); Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277-78 (11th Cir. 2006); N. Am. Cath. Educ. Programming Found.,

---

[45]    See Grice v. McMurdy, 498 F. Supp. 3d 400, 413-414 (W.D.N.Y. 2020) (three-year statute for unjust enrichment claims); Homapour v. Harounian, 182 A.D.3d 426, 426 (App. Div. 1st Dep't 2020) (three-year statute for aiding and abetting claim); Fla. Stat. § 95.11(3)(k) (unjust enrichment statute is four years);

[46]    See Calças Decl. ¶¶ 34-39.  The Sixth Cause of Action is not a claim, and the Seventh should have been brought as a Revocatory Action before November 2021.

[47]    See Compl. ¶ 111 (agreements "*constitute a fraud on the law*") (emphasis added).

Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (9(b) applies "where the core allegations effectively charge fraud"); Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (9(b) "is not limited to allegations styled or denominated as fraud").

### 4. BRAZILIAN BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION

31.     As the former President of the Appellate Court explains, for the same reason all seven Causes of Action (to the extent they exist as claims) are time-barred, i.e., they should have been brought as Revocatory Actions, the Brazilian Bankruptcy Court has exclusive jurisdiction.[48]

### 5. NO CLAIMS STATED AS A MATTER OF LAW: RULE 12(B)(6)[49]

32.     The *First Cause Of Action* fails because it just gripes about consideration received under a contract negotiated between sophisticated parties.  And, concealing Colorado's identify, even if true, is not improper as there is no requirement to identify shareholders.  Blame for Tinto's insolvency cannot be placed on the Share Transfer Agreements when the Complaint admits that after the Second Share Transfer Agreement (1) the Bertins stripped Heber, a billion-dollar company with at least $409.3 million in cash, away from Tinto in 2012 and (2) a Third Share Transfer Agreement, under which Tinto received either $149.5 million or $277.5 million that it used to pay down its debt to Banco do Brasil, was executed in 2014, four years before Tinto's bankruptcy (November 2018).[50]  While neither applies, the same result exists under New York or Florida law.[51]  The *Second Cause Of Action* does not exist under Brazilian law.  Third parties like

---

[48]    See Calcas Decl. ¶¶ 13-23.

[49]    *First Cause of Action* Calças Decl. ¶¶ 40-49; *Second Cause of Action* Calças Decl. ¶¶ 50-52; *Third Cause of Action* Calças Decl. ¶¶ 53-61; *Fourth Cause of Action* Calças Decl. ¶¶ 62-67; *Fifth Cause of Action*, Calças Decl. ¶¶ 68-72; *Sixth Cause of Action*, Calças Decl. ¶¶ 73-78; *Seventh Cause of Action*, Calças Decl. ¶¶ 79-84.

[50]    See Compl. ¶¶ 61, 65, 68.  The argument stands regardless of which of the alleged Third Share Transfer Agreements is considered because significant funds were transferred to Tinto under both.

[51]    See Catlyn & Derzee, Inc. v. Amedore Land Devs., LLC, 166 A.D.3d 661, 664 (N.Y. App. Div. 3d Dep't 2018) (rejecting claim: "[t]he existence of a valid, enforceable contract governing the subject matter at issue [ ] precludes any recovery based upon a theory of unjust enrichment."); Diamond "S" Dev. Corp. v. Mercantile

Colorado cannot be held liable for a controlling shareholder's or director's breach of their fiduciary duty—here, the Bertins—under an aiding-and-abetting theory of liability.  U.S. law does not apply, but the result would be the same if it did.[52]  The **Third** and **Fourth Causes Of Action** (Brazilian Civil Code §§ 166, 167) are not properly pled to fall within the applicable statutes' "hypotheses" when, among other things, they invoke only Tinto's articles of incorporation—a company the Bertins controlled; acknowledge the Share Transfer Agreements effectuated a legitimate share transfer; and fail to identify the "other persons" to whom rights were conferred at the time the agreements were executed.  The **Fifth Cause Of Action** does not speak to dismantling the assets a company uses in its daily commercial activity, that is, an actual "establishment," and speaks only to a transfer of shares.  The **Sixth Cause Of Action** fails because piercing the corporate veil is not a substantive claim but rather a remedy that has no bearing on Colorado, and the Complaint does not explain why the corporate separateness of the Defendants (as opposed to Tinto) must be disregarded.  The **Seventh Cause Of Action** alleges insufficient facts to show Colorado was responsible for, or could control Tinto's tax planning.  Only the Bertins were in that position.

## CONCLUSION

33.    For the foregoing reasons, the Motions to Dismiss should be granted.

---

Bank, 989 So.2d 696, 697 (Fla. 1st DCA 2008) (per curiam) ("[A] plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

[52]    See In re Radnor Holdings Corp., 353 B.R. 820, 844 n.3 (Bankr. D. Del. 2006) ("primary wrongdoers [must be named]"); Renco Grp., Inc. v. MacAndrews AMG Hldgs. LLC, 2015 WL 394011, at *8 (Del. Ch. Jan. 29, 2015) (claim dismissed "for lack of an underlying fiduciary breach"); Kaufman v. Cohen, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (2003) (dismissing fiduciary duty claim when plaintiff failed to plead actual knowledge of the breach and instead relied on constructive knowledge); Perlman v. Wells Fargo Bank, N.A., 559 Fed. Appx. 988, 991 (11th Cir. 2014) (same; elements under Florida law include "underlying violation on the part of the primary wrongdoer"); Compl. ¶ 101.

Dated: November 18, 2024

<table>
<tr>
<td>

PACK LAW

Joseph Pack (FBN 117882)
Jessey J. Krehl (FBN 1025848)
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: 305-916-4500
Email: joe@packlaw.com
Email: jessey@packlaw.com

*Co-Counsel to Colorado Investment
Holdings LLC*

</td>
<td>

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
By: *Daniel L. Humphrey*
James C. Tecce (admitted pro hac vice)
Lucas Bento (admitted pro hac vice)
Kenneth B. Hershey (admitted pro hac vice)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile:  212-849-7100
Email: jamestecce@quinnemanuel.com
Email: lucasbento@quinnemanuel.com
Email: kenhershey@quinnemanuel.com

Eric Winston (admitted pro hac vice)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com

Olga Vieira (FBN 29873)
Daniel Humphrey (FBN 1024695)
2601 South Bayshore Dr, Suite 1550
Miami, Florida 33133
Telephone: 305-402-4880
Facsimile:  305-901-2975
Email: olgavieira@quinnemanuel.com
Email: danielhumphrey@quinnemanuel.com

*Counsel to Colorado Investment Holdings LLC*

</td>
</tr>
</table>

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served upon all interested parties and the Court on November 18, 2024.

/s/ *Daniel L. Humphrey*