**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

www.flsb.uscourts.gov

In re:

TINTO HOLDING LTDA.,

      Debtor in a Foreign Proceeding.

_____/

Chapter 15
Case No.: 23-11719-MAM

AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of TINTO HOLDING
LTDA.,

     Plaintiff,

v.

COLORADO INVESTMENT HOLDINGS
LLC, J&F INVESTIMENTOS S.A., JJMB
PARTICIPAÇÕES LTDA., and WWMB
PARTICIPAÇÕES LTDA.,

     Defendant.

_____/

Adv. Case No. 23-01118

**DECLARATION OF JAMES C. TECCE IN SUPPORT OF MOTION OF
COLORADO INVESTMENT HOLDINGS LLC (F/K/A BLESSED HOLDINGS LLC)
(A) TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.
12(b)(2), (b)(3), (b)(6) AND (b)(7), APPLICABLE PURSUANT TO FED. R. BANKR. P.
7012, OR <u>FORUM</u> <u>NON</u> <u>CONVENIENS</u> OR (B) ALTERNATIVELY, TO ABSTAIN
FROM EXERCISING JURISDICTION, INCLUDING UNDER 28 U.S.C. § 1334(c)**

     I, James C. Tecce, hereby declare that:

     1.     I am an attorney at Quinn Emanuel Urquhart & Sullivan, LLP, counsel to Colorado

Investment Holdings LLC ("**<u>Colorado</u>**") (F/K/A Blessed Holdings LLC).  Capitalized terms used

and not defined herein have the meanings ascribed to such terms in the Motion (as defined below).

     2.     I submit this declaration in support of Colorado's Motion (a) To Dismiss Second

Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(2), (b)(3), b(6) And (b)(7), Applicable

Pursuant to Fed. R. Bankr. P. 7012, Or <u>Forum</u> <u>Non</u> <u>Conveniens</u> Or (B) Alternatively, To Abstain From Exercising Jurisdiction, Including Under 28 U.S.C. § 1334(c) (the "**Motion**"), filed contemporaneously herewith.

3.    Attached hereto as Exhibits 1 – 18 are true and correct copies of the following documents.  Each Exhibit contains, if necessary, (a) the Portuguese version of the document; (b) an English translation and (c) a certification relating to the translation:

<u>Exhibit 1</u>    Order Granting Conditional Motion For Leave To File A Second Amended Complaint [ECF No. 178]

<u>Exhibit 2</u>    Transcript of Hearing Held Sept. 13, 2024

<u>Exhibit 3</u>    Private Instrument For Assignment And Transfer Of Shares And Other Covenants among Tinto and Blessed Holdings dated December 24, 2009

<u>Exhibit 4</u>    Private Instrument Regarding The Assignment And Transfer Of Shares And Other Covenants dated November 11, 2010

<u>Exhibit 5</u>    Transfer Agreement For Shares In The Bertin Equity Investment Fund And Other Covenants dated June 25, 2014 (version as filed on docket of 2015 Tax Lawsuit (as defined in the Motion))

<u>Exhibit 6</u>    Share Transfer Agreement of Bertin Fundo de Investimento Em Participações and Other Covenants dated November 18, 2013 (*i.e.*, the "Original" Third Share Transfer Agreement)

<u>Exhibit 7</u>    Colorado Brazilian Taxpayer ID No.

<u>Exhibit 8</u>    Order of the Court of Justice of the State of São Paulo dated October 17, 2024

<u>Exhibit 9</u>    Action No. 1036979-81.2013.8.26.00100/TJSP, correspondence from Law Firm Sérgio Bermudes dated June 10, 2013

<u>Exhibit 10</u>    Civil Action No. 1046806-19.2013.8.26.0010/TJSP complaint dated July 11, 2013

<u>Exhibit 11</u>    Re-Ratification Of Private Instrument Of Settlement And Other Pacts Signed Between Blessed And Tinto On November 18, 2013

| **Exhibit 12** | Notice of Dismissal dated November 18, 2013 (of 2013 Tinto Lawsuits (as defined in the Motion)) |
| **Exhibit 13** | Order Dismissing Case dated December 13, 2013 (of 2013 Tinto Lawsuits (as defined in the Motion)) |
| **Exhibit 14** | Appellate Court Decision (relating to 2015 Tax Lawsuit (as defined in the Motion)) |
| **Exhibit 15** | Case File No. 0006234-84-2015.403.6100 (Tinto Submission in 2015 Tax Suit (as defined in the Motion)) |
| **Exhibit 16** | July 19, 2023 Appellate Order (entered in connection with 2015 Tax Lawsuit (as defined in the Motion)) |
| **Exhibit 17** | Decision of Court of Justice of São Paulo Trial No. 1055320-43.2022.8.26.0010 dated April 5, 2023 |
| **Exhibit 18** | Brazilian Bankruptcy Court Order dated November 30, 2022 |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  November 18, 2024

By:  _____

James C. Tecce

# Exhibit 1



**ORDERED in the Southern District of Florida on September 25, 2024.**

_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 23-11719-MAM |
| Tinto Holding Ltda.,<br>     Debtor(s).<br>_____/ | Chapter 15 |
| Deloitte Touche Tohmatsu Consultores<br>Ltda. and AJ Ruiz Consultoria<br>Empresarial S.A.,<br>     Plaintiff(s),<br>v. | Adv. Proc. No.: 23-01118-MAM |
| Colorado Investment Holdings, LLC, J&F<br>Investimentos S.A., JJMB Participacoes<br>LTDA, and WWMB Participacoes LTDA,<br>     Defendant(s).<br>_____/ | |

### ORDER GRANTING CONDITIONAL MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

THIS CAUSE came before the Court upon the *Plaintiff's Conditional Motion*

*for Leave to File a Second Amended Complaint* [ECF No. 85] ("Motion"). The Court

considered this Motion and hereby ORDERS, for the reasons stated on the record on

September 13, 2024,[1] that the Motion is GRANTED as follows:

1.    Plaintiff may file a Second Amended Complaint in this action on or

before October 17, 2024.

### ###

Submitted by:
Nyana A. Miller, Esq.
SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
Nmiller@sequorlaw.com
jmosquera@sequorlaw.com
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

*(Attorney Miller must serve a conformed copy of the foregoing order upon all interested parties and file a Certificate of Service with this Court.)*

---

[1] *See* Exhibit A to this Order.

2

**Exhibit A**

At the hearing on the Motion (ECF No. 85) and the related motions to dismiss

filed as ECF Nos. 67, 74, and 79, the Court stated as follows:

This hearing covers the motions to dismiss filed as ECF Nos. 67, 74, and 79, which I will call the "Motions to Dismiss" for ease of reference. Along with the Motions to Dismiss, the Court carefully reviewed all associated briefing and related filings. The briefing alone comprises 250 pages, not including exhibits, affidavits, or other supporting documents. As you can imagine, consideration of the Motions to Dismiss required more than a few days of focused attention, free from the distraction of motion calendar and other pending matters. We are happy to supply that time and effort, of course, but I hope that you will appreciate that the delay in ruling arose from not just the Court's normal caseload, but also a desire to give this matter the level of time and attention that it deserves.

With that in mind, please understand that I have scheduled today's hearing so that I can rule on the motions to dismiss as quickly as possible. They have been pending for some time and I do not want to delay this process further by drafting a lengthy opinion for what I believe is a straightforward result. My goal today is to keep the case moving in the most expeditious manner possible without compromising the integrity of the analysis and review needed for a case of this complexity.

I'm going to take an unusual approach today and tell you the ruling up front. I will explain the basis for my ruling in detail, but I don't want to keep you in unnecessary suspense.

**Here is what is going to happen:** I am going to dismiss the Amended Complaint found at ECF No. 56 with leave to amend. I am aware that this will result in yet another amendment, one that requires the Court's leave. That leave is granted. That means that today's ruling also addresses the relief requested in ECF No. 85, the Motion for Leave to Amend. Plaintiff's counsel should submit an order to the Court granting that motion, for the reasons stated on the record in today's hearing.

I want to clarify that one reason this decision took some time is because the parties raised very detailed arguments on both sides. I applaud the thoroughness and attention to detail, but I am going to impose strict page

limitations in the future so that we do not repeat arguments that have already been raised in this case in more detail than is required. The Court has read and processed everything and, while the Court's memory may not be perfect, we have made sure on our end that the same work does not need to occur a second time. We paid attention and took good notes. I am going to ask that you please pay attention and take good notes during today's hearing so that we focus the trajectory of this case on the issues that require meaningful attention, and not on every possible argument or claim that might exist.

With that being said, I'm going to provide some of the reasons for dismissal with leave to amend. I'll start with the legal standards for the arguments that the parties raised, but will keep each description brief because I'm confident that everyone at this hearing is familiar with the applicable rules and law.

Please note also that I am going to cover all of the arguments collectively in the interest of expedience. The Court separately evaluated each set of briefs, responses, and replies. Since there is only one (amended) complaint asserting claims against all parties, it makes sense to cover in one discussion all potential modifications to what I'm sure will be filed as the second amended complaint.

## LEGAL STANDARDS

Bankruptcy Rule 7012 incorporates and makes relevant Rule 12 of the Federal Rules of Civil Procedure. Rule 12(b) outlines seven potential defenses to a claim that must be raised by way of a motion. The parties have raised three defenses under Rule 12(b), specifically Rules 12(b)(2), (6), and (7). They have also raised a few non-rule-based defenses that are better suited for summary judgment. The Court makes this observation because, as you all are aware, Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

None of the parties argued for application of a summary judgment standard, nor did the parties provide the Court with a stipulated set of facts that are not in dispute. Those circumstances narrow the Court's focus to matters that fall strictly within the pleadings, without the need to consult documentary or testimonial evidence.

Because this adversary proceeding arises in connection with a chapter 15 case, the parties raised additional defenses, like comity. I understand why it would

Exhibit A (Page 2 of 12)

be difficult to link those defenses to the parameters of Rule 12(b) or (c), but that does not change the applicability of Rule 12(d) to this Court's analysis. Please think through what I have just said, because many litigants forget about Rule 12(d), just as they often overlook the facial/factual analysis that Eleventh Circuit precedent dictates this Court must consider when applying Rule 12(b)(1). Also, please be reminded that this Court is constrained by two other sources of law, one statutory and the other explained in United States Supreme Court case law.

First, this Court may refuse to "take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

Second, *Law v. Siegel*, 571 U.S. 415 (2014) clarifies that § 105(a) does not permit a bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. *Siegel*, 571 U.S. at 421. Neither of these principles are debatable nor are they novel. I point them out to clarify that asking this Court to reach beyond the Bankruptcy Code in the name of promoting "equity" is not possible, even in the context of chapter 15.

To streamline today's ruling, I will list each of the dismissal bases argued and then supply a one or two sentence summary of the standard. Please recognize that I am doing so purely for expedience. Rest assured that the Court has spent many hours reviewing the applicable case law.

I will describe each standard, then provide analysis that reflects application of all standards.

### 12(b)(2) -- Personal Jurisdiction (general and specific)

Dismissal for lack of personal jurisdiction falls under Rule 12(b)(2). This Court's ability to exercise personal jurisdiction over a defendant must comply with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)

There are two types of personal jurisdiction: general and specific. The standard for each is different, as is the scope regarding which claims may be asserted.

To establish **general personal jurisdiction**, a plaintiff must show that the defendant had "continuous and systematic" contacts with the forum that render the defendant essentially "at home" in the forum. *Waite v. All*

*Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (internal citations omitted). If a plaintiff establishes a clear basis for general personal jurisdiction over a defendant, then the court may determine claims that could be completely unrelated to a defendant's contacts with the forum. *Diss v. Zawawi (In re Zawawi)*, 644 B.R. 907, 914 (Bankr. M.D. Fla. Aug. 18, 2022).

**Specific personal jurisdiction** is more focused. To establish specific personal jurisdiction, a plaintiff must show that the controversy relates to or arises out of "purposeful contacts" with the United States. Those contacts must be (1) related to the cause of action; (2) involve some act by which the defendant purposefully availed himself of the privilege of doing business within the United States; and (3) be of such caliber that the defendant should reasonably anticipate being hauled into court in the U.S. *In re Nexgenesis Holdings Ltda.*, 2024 WL 3616732 at *7 (Bankr. S.D. Fla. July 31, 2024).

I will briefly note that *In re Zawawi*, the case I cited just a few moments ago, breaks down the test for specific jurisdiction within the Eleventh Circuit in a slightly different manner. *See* 644 B.R. at 915. For the purpose of today's analysis, the difference is immaterial.

## 12(b)(6) -- Failure to state a claim
To survive a motion to dismiss under Rule 12(b)(6), factual allegations of a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## 12(b)(7) Failure to Join a Party Under Rule 19
Rule 12(b)(7) and Rule 19 collectively permit dismissal if the plaintiff has failed to join a party whose presence is necessary for the court to afford complete relief among existing parties. Alternatively, the Court may require joinder of the party to ensure that adjudication of the interests alleged in the proceeding comply with the provisions of Rule 19(a)(1)(B).

## Forum Non Conveniens
Forum non conveniens is a common law legal doctrine and, as such, falls outside the statutory language of the Bankruptcy Code. In simple terms, the

Exhibit A (Page 4 of 12)

doctrine of forum non conveniens permits a court with jurisdiction and venue to decline to hear a matter because another court is better situated to do so. Application of forum non conveniens is appropriate "when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009).

Application of forum non conveniens requires that:
(i) an adequate alternative forum is available,
(ii) relevant public and private interests weigh in favor of dismissal, and
(iii) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Id.* (internal citations omitted).

Private interests include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. *Id.*

Public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally. *Id.*

This Court may consider forum non conveniens principles in an adversary proceeding but chapter 15 limits applicability of the doctrine because Congress enacted chapter 15 to promote comity and cooperation between nations. That enactment necessarily requires bankruptcy courts to accept jurisdiction over most chapter 15 adversary proceedings, provided the bankruptcy court is able to grant recognition of the main chapter 15 bankruptcy case. *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 239-40 (Bankr. S.D. Fla. 2013). For a thorough discussion of forum non conveniens in the chapter 15 context, I would direct you to *In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323 (Bankr. S.D.N.Y. 2016).

### Comity/Abstention
The United States Supreme Court defined comity many years ago as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 143 (1895).

Principles of comity permeate chapter 15 recognition of foreign bankruptcy proceedings because the equitable and orderly distribution of assets often requires assembly of all claims in a single proceeding. *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (internal citation omitted). That being said, bankruptcy courts afford comity to foreign bankruptcies only if those proceedings do not violate the laws or public policy of the United States. *Id.*; *see also* 11 U.S.C. § 1506.

Bankruptcy courts have held that abstention, in the chapter 15 context, is limited to mandatory abstention. *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 239-40 (Bankr. S.D. Fla. 2013). It is exceedingly difficult for a bankruptcy court to both adhere to the public policy principles of chapter 15 and yet choose to abstain from hearing proceedings associated with a foreign matter purely because it would be inconvenient to do so. *Id.* That being said, there are limits to what is fair and just in a chapter 15 context, just as there are in other chapters of the Bankruptcy Code. *C.f. In re Nexgenesis Holdings Ltda*, 2024 WL 3616732, at *11 (Bankr. S.D. Fla. July 31, 2024).

### Res Judicata/Collateral Estoppel

Res judicata bars relitigation of matters decided in a prior proceeding if (i) the prior decision was rendered by a court of competent jurisdiction, (ii) there was a final judgment on the merits, (iii) the parties were identical in both suits, and (iv) the prior and present causes of action are the same. *Followell v. Gurley (In re Gurley)*, 357 B.R. 868, 878 (Bankr. M.D. Fla. 2006) (internal citation omitted).

Collateral estoppel, which is also known in this Circuit as issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). It protects litigants from relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation. *U.S. v. Lewis*, 40 F.4th 1229, 1237 (11th Cir. 2022) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also CSX Transp., Inc. v. General Mills, Inc.,* 846 F.3d 1333, 1340 (11th Cir. 2017*)* (describing federal court application of state law collateral estoppel elements).

A bankruptcy court may recommend dismissal or entry of judgment based upon a prior judgment in a foreign forum if the necessary elements of res judicata are met. *Laspro Consultores Ltda. v. Alinia Corp. (In re Massa Falida do Banco Cruziero do Sul, S.A.),* 637 B.R. 675, 695 (Bankr. S.D. Fla. 2022).

**Bad Faith**

Although the parties argue lack of good faith, they neither cite to nor provide the legal standard for bad faith dismissal in the chapter 15 context. In general, courts apply a totality of the circumstances approach to evaluating questions of dismissal for bad faith under other chapters of the Bankruptcy Code. *See generally In re TGP Communications, LLC*, 2024 WL 3548248 (Bankr. S.D. Fla. July 25, 2024); *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983); *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013). The Court presumes, without explicitly so holding today, that the same standard applies in the chapter 15 context.

## ANALYSIS

The Court will now explain the deficiencies that should be addressed, should the foreign representative choose to file a second amended complaint.

**Failure to Clarify Governing Law**

As to Counts 1 & 2, it is unclear what law applies. Paragraph 5 of the Amended Complaint indicates that Counts 1 & 2 are under U.S. law, but fails to identify which state law applies and why that state law applies. Unjust enrichment and aiding/abetting breach of fiduciary duty are state law claims. For complete clarity, I am going to explain that the Court means "state" as in the state of Florida or Colorado or one of the other 50 states, and not "State" as in the United States itself.

The Court needs to know which state's law is alleged to provide a basis for claims asserted in Counts 1 & 2 so that the Court can research and apply the correct state law that the foreign representative alleges governs the acts. And, with respect to all counts, because property interests in the United States are created and defined by state law, to the extent that the Court is called upon to apply contract law principles to interpret the Share Transfer Agreements (as they are defined in the Amended Complaint), we need to know which state's law to apply. *Butner v. U.S.*, 440 U.S. 48, 54–55 (1979). If the plaintiff is asking the Court to adjudicate a property interest that exists within the territorial United States, then the Court needs to understand the creation and definition of that interest, which includes identifying the state law that controls. This concept applies to tangible and intangible property interests, including interests in business entities.

If United States property law does not control, then the plaintiff needs to allege in explicit detail how an asserted property interest falls within the subject

Exhibit A (Page 7 of 12)

matter jurisdiction of this Court. In making that comment, please note that I am already familiar with the parameters of *in rem* jurisdiction in the chapter 15 context, and how those parameters differ in chapter 15 from other chapters of the Bankruptcy Code. *See generally In re British Am. Ins. Co. Ltd.*, 488 B.R. 205 (Bankr. S.D. Fla. 2013).

We also need to be clear about the basis for application of any U.S.-based statutory or case law, as defendants assert that forum selection clauses in each of the transfer agreements specify that Brazilian (and not U.S.) law governs. Plaintiff needs to allege what acts or relationships make a particular state's law applicable to counts within this Adversary Proceeding, and why.

### Failure to Clarify Type of Personal Jurisdiction Alleged

A second amended complaint will need to clarify whether Plaintiff is asserting general personal jurisdiction or specific personal jurisdiction as to each of the defendants and for each of the claims. There is an easy way to do this. When you are drafting, state the standard within the allegation, then state the facts that satisfy the standard in a way that is straightforward and unambiguous. Alternatively, frame the allegations in such a way that it is abundantly clear which form of personal jurisdiction is being asserted. If both general personal jurisdiction and specific personal jurisdiction are asserted as to the same defendant, make that clear as well.

Please be aware that if specific personal jurisdiction is asserted, then it is entirely possible that this type of jurisdiction may exist for one claim, but not another. The second amended complaint may need to include specific jurisdictional allegations for each of the claims.

I leave that level of drafting detail up to you to determine. My point is that the Court should not have to engage in a guessing game to determine whether personal jurisdiction exists for any given claim with respect to any of the defendants who are listed as being subject to that claim or cause of action. If we get into that realm, then there's a strong chance that personal jurisdiction does not exist. You will want to avoid that.

Again, I will repeat myself to ensure that this point is clear: the plaintiff may have to include a separate section under each count asserting the factual allegations supporting personal jurisdiction for each named defendant as to that particular count. That exercise may prove repetitive but, in this instance, clarity is paramount. I am specifically asking the plaintiff to provide a very

Exhibit A (Page 8 of 12)

clear roadmap for the defendants and the Court regarding the basis for and type of personal jurisdiction asserted for each and every claim.

### Principles of Comity/ Abstention

Although abstention may be limited to mandatory (not permissive) abstention in the chapter 15 context, comity is a compelling argument. The Court cannot enter any ruling that would offend the U.S. justice system because it is manifestly unfair. This Court is competent to apply Brazilian law and willing to do so, but it is entirely unclear that all necessary parties are present. The Court strains to understand how the Bertins could be integral to the transactions, complicit in any illegal or unethical dealings with respect to the share transactions, ostensibly have fiduciary duties arising by statute or agreement with respect to the transactions, and yet not be called upon or otherwise able to provide a defense for actions they are alleged to have undertaken.

The Amended Complaint also does not clarify why a U.S. court is better situated than Brazil to apply Brazilian law to Brazilian nationals for acts that impact only Brazilian creditors. Chapter 15 provides for application of foreign law, of course, but in this instance the connection between the counts of the Amended Complaint and the U.S. is entirely unclear. What acts in the U.S. gave rise to the counts or property interests resulting from those acts? How do those acts relate to the basis for personal jurisdiction? What property is located in the territorial United States, and only accessible from within the borders of the territorial United States? You will note some overlap here between jurisdictional concerns and comity concerns.

If the foreign representative elects to file a second amended complaint, it will need to better describe time, location, duration, and execution of specific acts that indicate the U.S. is the proper place for adjudication. Again, I am aware that there is no bankruptcy estate to consider in the traditional sense, so the analysis is a bit different from typical *in rem* jurisdiction analysis. Still, we need to know with crystal clarity what assets the personal representative is seeking to recover, and how those assets are alleged to be located within the territorial jurisdiction of the US.

For example, the Court observed that the Amended Complaint alleges that two of the defendants own or once owned real estate in the United States. What does owning real property as an individual have to do with the claims and assets that are the subject of the Amended Complaint? Is there a connection

beyond the assertion of residence as a possible basis for general personal jurisdiction?

For another business entity, the Court was left to wonder why a potential listing on the stock exchange was relevant, if that listing has not yet been accomplished? This area overlaps heavily with the general and personal jurisdiction analysis.

Let me make this very simple: for each defendant, and each claim, the Court needs to understand the basis for subject matter and personal jurisdiction. Please make those allegations so straightforward and clear that there is no need to scratch our heads here. You know what the legal standards are; I have just recited them. The plaintiff must clarify whether general or specific personal jurisdiction exists through targeted factual allegations.

## Forum Non Conveniens

As you may have guessed, it is highly unlikely that the court will dismiss this adversary proceeding solely for forum non conveniens reasons. Research indicates that this relief in the chapter 15 context is rare because of the international policy ideals that supported adoption of chapter 15. That being said, it seems likely that many if not most witnesses will be beyond the subpoena power of the Court. I would encourage the foreign representative to consider the wisdom of pursuing claims or counts that may not be provable in this Court due to a failure of evidence. That would be a very expensive undertaking with a negative return on investment.

## Remaining Arguments (Res Judicata, Collateral Estoppel, Bad Faith)

As to the remaining arguments of res judicata, collateral estoppel, and bad faith, the Court's analysis is generally the same as for comity and forum non conveniens. I would remind you that this Court is not capable of acting as a functional court of appeals.

With respect to arguments regarding bad faith, please remember that the provisions of chapter 15 provide for expansive relief after recognition. This case tests those limits, but the limits are broad. If you are going to make a bad faith argument in the future, I recommend doing so using the appropriate test for the chapter 15 context, citing to applicable chapter 15 cases.

## Clarify Claims and Basis for Relief Requested

I must make another important point: the Amended Complaint seeks to unwind transactions that date back 15 years. From the Court's review of the

Amended Complaint, it seems like what is actually intended to be plead is rescission. That is not explicitly plead under the law of any state or country, and the Court cannot discern upon which legal theory the plaintiff believes this Court can roll back the hands of time and undo that which was done many years ago. A bankruptcy court cannot employ § 105 or equitable powers beyond the parameters of the Bankruptcy Code. What I need to know is exactly what legal theory is the plaintiff relying upon, citing to a specific statute, that would permit the Court to accomplish the "unwinding" that the foreign representative seeks? The plaintiff needs to include that statutory provision in a second amended complaint.

## Closing Remarks

I must make one last comment before wrapping this up. It is not lost upon the Court that there are no acts alleged in the Amended Complaint that tie the defendants to this geographic area of the United States. Not one.

I'm aware that Sequor Law is holding $1500 of Tinto's funds. I'm also aware of case law regarding use of retainer funds as a basis for jurisdiction. I'm not making a legal point here; I'm making a common sense one that happens to include notions of justice and fair play. Why did you file this case here, in the Southern District of Florida, as opposed to another location in the United States? Plaintiff must make explicitly clear in the Second Amended Complaint the basis for this Court's venue over the defendants (as opposed to a court situated in a district in which the defendants own real property).

With that, I'm going to ask that counsel for each of the defendants supply the Court with an order granting their respective motions to dismiss with leave to amend. As I said previously, I will also need counsel for the foreign representative to provide an order granting the motion for leave to amend.

Given the complexity of this adversary proceeding and the scope of the revisions I have just indicated need to be made, I will set the deadline for any amendment of the amended complaint as October 17, 2024. I am exercising judicial discretion in selecting this deadline so as to avoid any potential prejudice to the parties. This date provides ample time for amendment or, if the parties are so inclined, negotiation of a consensual resolution.

## Bookmarking

Before I conclude, I have an administrative request. For any new documents filed on the Court's docket, please make sure that you use pdf bookmarks. They are easy to insert when you are compiling the document and doing so will save

chambers a great deal of time, which ultimately means you may get a faster ruling. For complaints, please bookmark major sections and each count. For motions and responses, please bookmark major argument sections. Bookmarking is far more useful to the Court than a traditional table of contents, which quite frankly we scroll right past. Bookmarks allow the Court to go back and forth between sections without losing a train of thought or scrolling endlessly. That level of concentration ultimately benefits your clients.

## **Page Limitations**

As I indicated previously, the Court is going to impose page limitations on any further motion practice in this adversary proceeding.  If plaintiff files a second amended complaint, and one or more defendants again wish to file a motion to dismiss, the Court is imposing a page limitation of 20 pages on any such motion, a 10-page limitation on any response, and a 5-page limitation on any reply. Defendants' counsel, please include this requirement in the orders you are submitting granting your motions to dismiss without prejudice.

Exhibit A (Page 12 of 12)

# Exhibit 2

Page 1

1                UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
2
                              Case No.:   23-11719-MAM
3       In re:                Chapter 15
        TINTO HOLDING LTDA.,
4
             Debtor.
5       _____/
        AJ RUIZ CONSULTORIA EMPRESARIAL
6       S.A., solely as Judicial Administrator
        and foreign representative of TINTO
7       HOLDING LTDS.,
8            Plaintiff,
9       v.                    Adv. Case No.:   23-1118-MAM
10      COLORADO INVESTMENT HOLDINGS LLC,
        J&F INVESTIMENTOS S.A., JJMB
11      PARTICIPACOES LTDA., JOESLEY
        MENDONCA BATISTA, WESLEY MENDONCA
12      BATISTA, and JBS S.A.,
13           Defendants.
        _____/
14
15                   ECF # 67, 74, 79, 85
16                   September 13, 2024
17            The above-entitled cause came on for a
18      Zoom hearing before the HONORABLE MINDY A. MORA, one
19      of the Judges of the UNITED STATES BANKRUPTCY COURT,
20      in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515
21      North Flagler Drive, West Palm Beach, Florida, on
22      Friday, September 13, 2024, commencing at or about
23      10:07 a.m., and the following proceedings were had:
24
                 Transcribed from a digital recording by:
25                  Helayne Wills, Court Reporter

Page 2

```
 1    APPEARANCES VIA ZOOM:
 2
          KELLOG HANSEN, by,
 3        ANDREW E. GOLDSMITH, ESQ.,
          GRACE W. KNOFCZYSKI, ESQ.,
 4        ANDREW HETHERINGTON, ESQ.,
          ALEJANDRA AVILA, ESQ.,
 5        and
          SEQUOR LAW P.A., by
 6        NYANA A. MILLER, ESQ.,
          on behalf of the Plaintiff
 7
 8        QUINN EMANUEL URQUHART & SULLIVAN, LLP,  by
          JAMES C. TECCE, ESQ.,
 9        DAN HUMPHREY, ESQ.,
          KENNETH B. HERSHEY, ESQ.,
10        and
          PACK LAW, by,
11        JOSEPH PACK, ESQ.,
          JESSEY KREHL, ESQ
12        on behalf of Colorado Investment Holdings
13
          FORD O'BRIEN LANDY LLP, by
14        GABRIELA M. RUIZ, ESQ.
          MALLORIE A. THOMAS, ESQ.,
15        STEPHEN HALPIN, III, ESQ.,
          on behalf of JSB S.A.
16
17        WHITE & CASE, by
          LAURA GARR, ESQ.,
18        HANNELORE SKYLAR, ESQ.,
          RICHARD ROSEN, ESQ.,
19        RENATA ROGERS de CASTILHO, ESQ.,
          on behalf of J&F Investimentos Participacoes,
20        WWMB Participacoes, Joesley and Wesley Batista
21
          ALSO PRESENT VIA ZOOM:
22        ECRO - Electronic Court Reporting Operator
          JOYCE RUIZ
23
24
25
```

1        ECRO:  Good morning, everyone.  The United

2   States Bankruptcy Court in and for the Southern

3   District of Florida is now in session, the Honorable

4   Mindy A. Mora presiding.

5        THE COURT:  Good morning.  We are here on

6   a specially set matter on September 13, 2024,

7   10:00 a.m., in the adversary proceeding of 23-1118.

8        I'm going to take a brief roll call to

9   ensure that all parties are represented.  I would

10  ask that when I call the name of a party, that you

11  merely identify yourself and any of your colleagues

12  that are in attendance, and then I will proceed to

13  issue the Court's oral ruling today.

14        All right.  For the plaintiff.

15        MR. GOLDSMITH:  Good morning, Your Honor.

16  Andrew Goldsmith from Kellogg Hansen Todd Figel &

17  Frederick for the plaintiff.  With me today from our

18  firm are Grace Knofczyski and Alejandra Avila, as

19  well as Nyana Miller from Sequor Law.

20        And finally, Your Honor, in the audience,

21  as it were, today we have Joyce Ruiz from the

22  plaintiff, AJ Ruiz Consultoria.

23        THE COURT:  Thank you.

24        All right.  For defendant Colorado

25  Investment Holdings, LLC.

1           MT. TECCE:  Good morning, Judge Mora.  For

2    the record, James Tecce of Quinn Emanuel Urquhart &

3    Sullivan Sullivan.  I'm joined by Daniel Humphrey

4    and Ken Hershey from my firm.

5           THE COURT:  All right.  Thank you.

6           MT. TECCE:  Thank you.

7           THE COURT:  And for defendant JBS S.A.

8           MS. RUIZ:  Gabriela Ruiz, along with

9    Mallorie Thomas and Steve Halpin with Ford O'Brien

10   Landy, for JBS, S.A.

11          THE COURT:  Thank you.

12          For J&F Investimentos.

13          MS. GARR:  Your Honor, it's Laura Garr

14   from White & Case.  Attending as well is colleague

15   Hannelore Skylar, Richard Rosen and Renata Rogers de

16   Castilho.  We also represent defendants Wesley and

17   Joesley Batista, and WWMB Ltd. and JJMB Ltd., as

18   well.

19          THE COURT:  Thank you.

20          All right.  Are there any parties whose

21   names I have not mentioned?

22          MR. PACK:  Yes, Your Honor.  Joseph Pack,

23   P-A-C-K, with my colleague, Jessey Krehl, Pack Law,

24   on behalf of Colorado Investments Holdings, LLC,

25   co-counsel to Quinn Emanuel.

1            THE COURT:  All right.  Thank you.

2            All right.  This hearing covers the

3  motions to dismiss filed as ECF #67, 74 and 79,

4  which I will refer to as the motions to dismiss, for

5  ease of reference.

6            Along with the motions to dismiss, the

7  Court carefully reviewed all associated briefing and

8  related filings.  The briefing alone compromises 250

9  pages, exclusive of exhibits, affidavits and other

10  supporting documents.  As you can imagine,

11  consideration of the motions to dismiss required

12  more than a few days of focused attention, free from

13  the distraction of motion calendar and other pending

14  matters.

15            We are happy to supply that time and

16  effort, of course, but I hope you'll appreciate that

17  the delay in ruling arose from not just the Court's

18  normal case load, but also desire to give this

19  matter the level of time and attention that it

20  deserves.

21            With that in mind, please understand I

22  scheduled today's hearing so I can rule on the

23  motions to dismiss as quickly as possible.  They've

24  been pending for some time, and I do not want to

25  delay the process of this adversary proceeding

1   further by drafting a lengthy written opinion for

2   what I believe is a straightforward result.  My goal

3   today is to keep the case moving in the most

4   expeditious manner possible, without compromising

5   the integrity of the analysis and review needed for

6   a case of this complexity.

7           I'm going to take an unusual approach

8   today and tell you the ruling up front.  I'll

9   explain the basis of my ruling in detail, but I

10  don't want to keep the parties in unnecessary

11  suspense.

12          Here is what is going to happen.  I'm

13  going to dismiss the amended complaint, found at ECF

14  #56, but grant leave to amend.  I'm aware that this

15  will result in yet another amendment, one that

16  requires the Court's leave.  That leave is granted.

17  That means that today's ruling also addresses the

18  relief requested in Docket Entry 85, the motion for

19  leave to amend.  Plaintiff's counsel should submit

20  an order to the Court granting that motion, for the

21  reasons stated on the record in today's hearing.

22          I want to clarify that one reason this

23  decision took some time is because the parties

24  raised very detailed arguments on both sides.  I

25  applaud the thoroughness and attention to detail,

1   but I'm going to impose strict page limitations in

2   the future, so that we do not repeat arguments that

3   have already been raised in the case in more detail

4   than is required.

5           The Court has read and processed

6   everything, and while the Court's memory may not be

7   perfect, we've made sure on our end that the same

8   work does not need to occur a second time.  We paid

9   attention.  We took good notes.  So I'm going to ask

10  that you please pay attention and also take good

11  notes during today's hearing, so that we focus on

12  the trajectory of this case, on the issues that

13  require meaningful attention, and not on every

14  possible argument or claim that might exist.

15          With that being said, I'm going to provide

16  some of the reasons for dismissal with leave to

17  amend.  I'll start with the legal standard for the

18  arguments that the parties raised, but I will keep

19  each description brief, because I'm confident that

20  everyone at this hearing is familiar with the

21  applicable rules and law.

22          Please note also that I'm going to cover

23  all of the arguments collectively in the interest of

24  expedience.  The Court separately evaluated each set

25  of briefs, responses and replies.  Since there is

1   only one amended complaint asserting claims against

2   all parties, it makes sense to cover in one

3   discussion all potential modifications to what I

4   expect will be filed as the second amended

5   complaint.

6              Let's first turn to legal standards.

7   Bankruptcy Rule 7012 incorporates and makes relevant

8   Rule 12 of the Federal Rules of Civil Procedure.

9   Rule 12(b) outlines seven potential defenses to a

10  claim that must be raised by way of a motion.  The

11  parties have raised three defenses under Rule 12(b),

12  specifically, Rule 12(b)(2), (6) and (7).  They've

13  also raised a few non-rule based defenses that are

14  better suited for summary judgment.

15             The Court makes this observation because

16  as you are all aware, Rule 12(d) provides that if

17  matters outside the pleadings are presented to and

18  not excluded by the Court, the motion must be

19  treated as one for summary judgment under Rule 56.

20  That's a verbatim quote of the first sentence of

21  Rule 12(d).

22             None of the parties argued for application

23  of a summary judgment standard, nor did the parties

24  provide the Court with a stipulated set of facts

25  that are not in dispute.  Those circumstances narrow

1  the Court's focus to matters that fall strictly

2  within the pleadings, without the need to consult

3  documentary or testimonial evidence.

4         Because this adversary proceeding arises

5  in connection with a Chapter 15 case, the parties

6  raised additional defenses, like comity.  I

7  understand why it would be difficult to link those

8  defenses to the parameters of Rule 12(b) or (c), but

9  that does not change the applicability of Rule 12(d)

10  to this Court's analysis.

11        Please think through what I've just said,

12  because many litigants forget about Rule 12(d), just

13  as they often overlook the factual facial analysis

14  that the 11th Circuit precedent dictates this Court

15  must consider when applying Rule 12(b)(1).

16        Also, please be reminded that this Court

17  is constrained by two other sources of law, one

18  statutory and the other explained in the United

19  States Supreme Court case law.  First, this court

20  May refuse to, "take an action governed by Chapter

21  15 if the action would be manifestly contrary to the

22  public policy of the United States."  Citing from

23  Section 1506 of the Bankruptcy Code.  Second, Law v

24  Siegel, 571 U.S. 415, a 2014 decision, clarifies

25  that Section 105(a) does not permit a Bankruptcy

1    Court to override explicit mandates of other

2    sections of the Bankruptcy Code.  Siegel, 571 U.S.

3    at 421.

4              Neither of those principles are debatable,

5    nor are they novel.  I point them out to clarify

6    that asking this Court to reach beyond the

7    Bankruptcy Code in the name of promoting equity is

8    not possible, even in the context of Chapter 15.

9              To streamline today's ruling, I will list

10   each of the dismissal bases argued, and then supply

11   a one or two sentence summary of the standard.

12   Please recognize that I'm doing this purely for

13   expedience.  Rest assured that the Court has spent

14   many hours reviewing the applicable case law.  I

15   will then describe each standard, and provide

16   analysis that reflects application of all standards.

17             Let's start with 12(b)(2), personal

18   jurisdiction.  Dismissal for lack of personal

19   jurisdiction falls under Rule 12(b)(2).  This

20   Court's ability to exercise personal jurisdiction

21   over a defendant must comply with the requirements

22   of traditional notions of fair play and substantial

23   justice under the due process clause of the United

24   States Constitution.  Burger King Corp. versus

25   Rudzewicz, 471 U.S. 462, at 477 to 478, from 1985.

1          There are two types of personal

2    jurisdiction, general and specific.  The standard

3    for each is different, as is the scope regarding

4    which claims may be asserted.  To establish personal

5    jurisdiction a plaintiff must show that the

6    defendant had systematic and continuous contact with

7    the forum that rendered the defendant essentially at

8    home in the forum.  Citing to Waite versus All

9    Acquisition Corp., 901 F.3d 1307 at 1317, an 11th

10   Circuit decision from 2018.

11          If a plaintiff establishes a clear basis

12   for general personal jurisdiction over a defendant

13   then the Court may determine claims that could be

14   completely unrelated to the defendant's contact with

15   the forum.  Citing to In re: Zawawi, 644 B.R. 907 at

16   914, a decision from the Bankruptcy Court in the

17   Middle District of Florida, August 18, 2022.

18          Specific personal jurisdiction is more

19   focused.  To establish specific personal

20   jurisdiction a plaintiff must show that the

21   controversy relates to or arises out of purposeful

22   contact with the United States.  Those contacts must

23   be, first, related to the cause of action, second,

24   involve some act by which the defendant purposely

25   availed himself of the privilege of doing business

1    within the United States, and third, be of such

2    caliber that the defendant should reasonably

3    anticipate being hauled into court in the United

4    States.  Citing to In re:  Next Genesis Holdings

5    Ltda., 2024 Westlaw 3616732, at Page 7, a decision

6    of the Bankruptcy Court in the Southern District of

7    Florida, July 31, 2024.

8              I will briefly note that In re:  Zawawi,

9    the case I cited, breaks down the test for specific

10   jurisdiction within the 11th Circuit in a slightly

11   different manner.  See 644 B.R. 915.  However, for

12   the purpose of today's analysis, the difference is

13   immaterial.

14             Let's turn now to 12(b)(6), failure to

15   state a claim.  To survive a motion under Rule

16   12(b)(6), factual allegations of the complaint must,

17   "state a claim for relief that is plausible on its

18   face."  Bell Atlantic Corp. versus Twombly, 550 U.S.

19   544 at 555, from 2007.

20             "A claim has facial plausibility when the

21   plaintiff pleads factual content that allows the

22   Court to draw the reasonable inference that the

23   defendant is liable for the misconduct alleged."

24   Ashcroft versus Iqbal, 556 U.S. 662 at Page 678,

25   from 2009.

1          When, "there are well-pleaded factual

2    allegations a court should assume their veracity and

3    then determine whether they plausibly give rise to

4    an entitlement for relief."  Ashcroft at 679.

5          Now, let's turn to Rule 12(b)(7), failure

6    to join a party under Rule 19.  Rule 12(b)(7) and

7    Rule 19 collectively permit dismissal if the

8    plaintiff has failed to join a party whose presence

9    is necessary for the Court to afford complete relief

10   among the distinct parties.  Alternatively, the

11   Court may require joinder of the party to ensure

12   that adjudication of the interest alleged in the

13   proceeding comply with the provisions of Rule

14   19(a)(1)(B).

15          Looking now at forum non-conveniens.

16   Forum non-conveniens is a common-law legal doctrine,

17   and as such falls outside the statutory language of

18   the Bankruptcy Code.  In simple terms, the doctrine

19   of forum non-conveniens permits a court with

20   jurisdiction and venue to nonetheless decline to

21   hear a matter because another court is better

22   situated to do so.

23          Application of forum non-conveniens is

24   appropriate when the parties and the court's own

25   convenience, as well as the relevant public and

1   private interest, indicate that the action should be

2   tried in another forum.  Quoting from Pierre-Lewis

3   versus Newvac Corp., 584 F.3d, 1052 at 1056, 11th

4   Circuit, 2009.

5           Application of forum non-conveniens

6   requires that first an adequate alternative forum is

7   available, second, relevant public and private

8   interests weigh in favor of dismissal, and third,

9   the plaintiff can reinstate his suit in the

10   alternative forum without undue inconvenience or

11   prejudice.

12           Private interest include relative ease of

13   access to evidence in the competing fora,

14   availability of witnesses, and compulsory process

15   over them, the cost of obtaining evidence, and the

16   enforceability of a judgment.  Public interest

17   include the familiarity of the court with the

18   governing law, the interest of any foreign nation in

19   having the dispute litigated in its own court, and

20   the value of having local controversies litigated

21   locally.  All of those concepts are discussed in

22   Pierre-Lewis versus Newvac Corp.

23           This Court may consider forum

24   non-conveniens principles in adversary proceeding,

25   but Chapter 15 limits applicability of the doctrine,

1    because Congress enacted Chapter 15 to promote

2    comity and cooperation between nations.  That

3    necessarily requires Bankruptcy Courts to accept

4    jurisdiction over most Chapter 15 adversary

5    proceedings, provided the Bankruptcy Court is able

6    to grant recognition of the main Chapter 15

7    bankruptcy case.  Citing to In re:  British American

8    Insurance Company, Ltd., 488 B.R. 205 at 239 to 240,

9    case from the Bankruptcy Court in the Southern

10   District of Florida, 2013.

11            For a thorough discussion of forum

12   non-conveniens in the Chapter 15 context, I would

13   direct counsel to In re:  (inaudible)

14   Telecommunications, Luxembourg 2 SCA, 555 F.R. 323,

15   decision of the Bankruptcy Court in the Southern

16   District of New York in 2016.

17            Turning now to comity and abstention, the

18   United States Supreme Court defined comity many

19   years ago as the recognition which one nation allows

20   within its territory to the legislative, executive

21   or judicial acts of another nation, having due

22   regard both to international duty and convenience,

23   and to the rights of its own citizen, or of other

24   persons who are under the protection of its own

25   laws.  Quoting from Hilton versus Guyot, 159 U.S.

1   113 at 143, from 1895.

2             Principals of comity permeate Chapter 15

3   recognition of foreign bankruptcy proceedings,

4   because the equitable and orderly distribution of

5   assets often requires assembly of all claims in a

6   single proceeding.  Citing to Finanz Ag Zurich

7   versus Banco Economico, S.A., 192 F.3d 240 at 246,

8   Second Circuit, 1999.

9             That being said, Bankruptcy Courts afford

10  comity to foreign bankruptcies only if those

11  proceedings do not violate the laws or public policy

12  of the United States.  Citing to Finanz Ag Zurich.

13  Also review Section 1506 in the Bankruptcy Code.

14            Bankruptcy Courts have held that

15  abstention in the Chapter 15 context is limited to

16  mandatory abstention.  Citing to In re:  British

17  American Insurance Company, 48 B.R. at 239 to 240.

18  It is exceedingly difficult for a Bankruptcy Court

19  to both adhere to the public policy principles of

20  Chapter 15, and yet choose to abstain from hearing

21  proceedings associated with a foreign matter purely

22  because it would be inconvenient to do so.

23            That being said, there are limits to what

24  is fair and just in a Chapter 15 context, just as

25  there are in other chapters of the Bankruptcy Code.

1  Compare In re:  Next Genesis Holdings Ltda., 2024
2  Westlaw 3616732 at Page 11.
3           Finally wrapping up with res judicata,
4  collateral estoppel and bad faith.  Res judicata
5  bars relitigation of matters decided in prior
6  proceedings if, first, the prior decision was
7  rendered by a court of competent jurisdiction, two,
8  there was a final judgment on the merits, third, the
9  parties were identical in both suits, and fourth,
10  the prior and present causes of action are the same.
11  Citing to In re:  Gurley, 357 B.R. 868 at 878,
12  Bankruptcy Court Middle District of Florida, 2006.
13           Collateral estoppel, which is also known
14  in this circuit as issue preclusion, "being simply
15  that when an issue of ultimate fact has once been
16  determined by a valid and final judgment, that issue
17  cannot again be litigated between the same parties
18  in any future lawsuit."  Citing to Ashe v. Swenson,
19  397 U.S. 436 at 443, from 1970.
20           It protects litigants from relitigating an
21  identical issue with the same party or his privy,
22  and promotes judicial economy by preventing needless
23  litigation.  United States v Lewis, 40 F.4th 1229,
24  at 1237, 11th Circuit, 2022, quoting Parklane
25  Hosiery Company versus Shore, 439 U.S. 322 at 326,

1   from 1979.

2            A Bankruptcy Court may recommend dismissal

3   or entry of judgment based upon a prior judgment in

4   a foreign forum if the necessary elements of res

5   judicata are met.  Laspro Consultores Ltda. versus

6   Alinia Corp., In re:  Massa Falida Do Banco Cruzeiro

7   Do Sul S.A., 637 B.R. 675 at 695, Bankruptcy Court

8   Southern District of Florida in 2022.

9            Although the parties argue lack of good

10  faith, they neither cited to nor provided the legal

11  standard for bad faith dismissal in the Chapter 15

12  context.  In general, courts apply a totality of the

13  circumstances approach to evaluating questions of

14  dismissal for bad faith under other chapters of the

15  Bankruptcy Code.  See generally this Court's

16  decision In re:  TGP Communications, LLC, 2024

17  Westlaw 3548248, Bankruptcy Southern District of

18  Florida, July 25, 2024; In re:  Kitchen, 702 F.2d

19  885, 11th Circuit, 1883; In re:  Piazza, 719 F.3d

20  1253, 11th Circuit, 2013.  The Court presumes

21  without explicitly so holding today, that the same

22  standard applies in the Chapter 15 context.

23            I will now turn to an analysis of this law

24  with the facts that have been presented to the

25  Court.  In particular, the Court will now explain

1  the deficiencies that should be addressed, should

2  the foreign representative choose to file a second

3  amended complaint.

4           Failure to clarify governing law.  On

5  Counts I and II, it's unclear what law applies.

6  Paragraph 5 of the amended complaint indicates that

7  Counts I and II are under U.S. law, but fail to

8  identify what state law applies, and why that state

9  law applies.  Unjust enrichment and aiding and

10 abetting, breaches of fiduciary duty, are state law

11 claims.

12          For complete clarity, although I'm sure

13 counsel here on Zoom know this, I'm going to explain

14 that the Court means state as in the State of

15 Florida or New York or Colorado or one of the other

16 50 states, and not state as in the United States

17 itself.

18          The Court needs to know which state's law

19 is alleged in the second amended complaint to

20 provide a basis for claims asserted in Counts I and

21 II, so that the Court can research and apply the

22 correct state law that the plaintiff alleges governs

23 the acts.  And with respect to all counts, because

24 property interest in the United States are created

25 and defined by state law, to the extent that the

Page 20

1   Court is called upon to apply contract law

2   principles to interpret the share transfer

3   agreement, as defined in the amended complaint, we

4   need to know which state's law to apply.  Butner

5   versus United States, 440 U.S. 48 at 54 to 55, from

6   1979.

7            If the plaintiff is asking the Court to

8   adjudicate a property interest that exists within

9   the territorial United States, then the Court needs

10  to understand the creation of that interest, which

11  includes identifying the state law that controls.

12  This concept applies to both tangible and intangible

13  property interests, which include interests in

14  business entities.

15            If United States property law does not

16  control, then the plaintiff needs to allege in

17  explicit detail how an asserted property interest

18  falls within the subject matter jurisdiction of this

19  Court.  In making that comment, please note that I

20  am exceedingly familiar with the parameters of in

21  rem jurisdiction in the Chapter 15 context, and how

22  those parameters differ in Chapter 15 from other

23  chapters of the Bankruptcy Code.  See generally In

24  re:  British American Insurance Company Ltd., 488

25  B.R. 205, Bankruptcy Court Southern District of

1    Florida, 2013.

2           We also need to be clear about the basis

3    for application of any U.S. based statutory or case

4    law, as defendants assert best forum selection

5    clauses in each of the transfer agreements specify

6    that Brazilian and not U.S. law governs.  Plaintiff

7    needs to allege what acts or relationship make a

8    particular state's law applicable to counts within

9    this adversary proceeding, and why.

10          Let's now turn to failure to clarify the

11   types of personal jurisdiction alleged.  A second

12   amended complaint will need to clarify whether the

13   plaintiff is asserting general personal jurisdiction

14   or specific personal jurisdiction as to each of the

15   defendants, and for each of the claims.  There's an

16   easy way to do this.

17          When you're drafting, state the standard

18   within the allegation, then state the facts that

19   satisfy the standard in a way, straightforward and

20   unambiguous.  Alternatively, frame the allegation in

21   such a way that it is abundantly clear which form of

22   personal jurisdiction is being asserted.  If both

23   general personal jurisdiction and specific personal

24   jurisdiction are asserted as to the same defendant,

25   make that clear, as well.  Please be aware that if

1   specific personal jurisdiction is asserted, then it

2   is entirely possible that this type of jurisdiction

3   may exist for one claim, but not for another.

4           The second amended complaint may need to

5   include specific jurisdictional allegations for each

6   of the claims.  I leave that level of drafting up to

7   the plaintiff to determine.  My point is that the

8   Court should not have to engage in a guessing game

9   to determine whether personal jurisdiction exists

10  for any given claim with respect to any of the

11  defendants who are listed as being subject to that

12  claim or cause of action.

13          If we get into that realm, then there's a

14  strong chance that personal jurisdiction does not

15  exist.  You'll want to avoid that.

16          Again, I will repeat myself to ensure that

17  this point is clear.  The plaintiff may have to

18  include a separate section under each count,

19  asserting the factual allegation supporting personal

20  jurisdiction for each named defendant subject to

21  that particular count.  That exercise may prove

22  repetitive, but in this instance, clarity is

23  paramount.

24          I am specifically asking the plaintiff to

25  provide a very clear roadmap to the defendants and

Page 23

1    the Court, reporting the basis for and type of

2    personal jurisdiction asserted for each and every

3    claim.

4              Turning now to principles of comity and

5    abstention.  Although abstention is limited to

6    mandatory, not permissive abstention, in the Chapter

7    15 context, comity is the compelling argument.  The

8    Court cannot enter any ruling that would offend the

9    U.S. justice system, because it is manifestly

10   unfair.  This Court is competent to apply Brazilian

11   law, and willing to do so, but it is entirely

12   unclear that all necessary parties are present.

13             The Court strains to understand how the

14   Burtons could be integral to the transaction,

15   complicit in any illegal or unethical dealings with

16   respect to the share transaction, ostensibly have

17   fiduciary duties arising by statute or agreement

18   with respect to the transactions, and yet not be

19   called upon or otherwise able to provide a defense

20   for actions they are alleged to have undertaken.

21             The amended complaint also does not

22   clarify why a U.S. Court is better situated than a

23   Brazilian Court to apply Brazilian law to Brazilian

24   nationals, for acts that impact only Brazilian

25   creditors.

1           Factor 15 provides for application of

2   foreign law, of course, but in this instance the

3   connection between the counts of the amended

4   complaint and the United States is entirely unclear.

5   What acts in the United States gave rise to the

6   counts of property interest resulting from those

7   acts?  How did those acts relate to the basis for

8   personal jurisdiction?  What property is located in

9   the territorial United States, and only accessible

10  within the borders of the territorial United States?

11  You will note some overlap here between

12  jurisdictional concerns and comity concerns.

13          If a foreign representative elects to file

14  a second amended complaint, it will need to better

15  describe time, location, duration, and execution of

16  specific acts that indicate the United States is the

17  proper place for adjudication.

18          Again, I'm aware that there is no

19  bankruptcy estate to consider, so the analysis is a

20  bit different from typical in rem jurisdiction

21  analysis.  Still, the Court needs to know with

22  crystal clarity what assets the personal

23  representative is seeking to recover, and how those

24  assets are alleged to be located within the

25  territorial jurisdiction of the United States.

1           For example, the Court observed that the

2    amended complaint alleges that two of the defendants

3    own or once owned real estate in the United States.

4    What does owning real property as an individual have

5    to do with the claims of assets that are subject of

6    the amended complaint?  Is there a connection beyond

7    the assertion of residence as a possible basis for

8    general personal jurisdiction?

9           For another business entity, the Court was

10   left to wonder why a potential listing on the stock

11   exchange was relevant if that listing has not yet

12   been accomplished.  This area overlaps heavily with

13   the general and personal jurisdictional analysis.

14          Let me make this very simple and be

15   somewhere repetitive.  For each defendant and each

16   claim, the Court needs to understand the basis for

17   subject matter and personal jurisdiction.  Please

18   make those allegations so straightforward and

19   crystal clear that there's no need to scratch our

20   heads here.  You know what the legal standards are.

21   I've just recited them in excruciating detail.

22          The plaintiff must clarify whether general

23   or specific jurisdiction exists through targeted

24   factual allegations.

25          Forum non-conveniens.  As you may have

1   guessed, it's highly unlikely that the Court will

2   dismiss this adversary proceeding solely for forum

3   non-conveniens reasons.  Research indicates that

4   this relief in the Chapter 15 context is rare,

5   because the international policy ideals that

6   supported adoption of Chapter 15.

7            That being said, it seems likely that

8   many, if not most witnesses will be beyond the

9   subpoena power of this Court.  I would encourage the

10  foreign representative to consider the wisdom of

11  pursuing claims or counts that may be not be

12  provable in this Court, due to a failure of

13  evidence.  That would be a very expensive

14  undertaking, with a negative return on investment.

15           Let me turn to the remaining arguments

16  raised with respect to res judicata, collateral

17  estoppel and bad faith.  The Court's analysis on

18  those remaining arguments is generally the same as

19  for comity and forum non-conveniens.  I would remind

20  you that this Court is not capable of acting as a

21  functional Court of Appeals.

22           With respect to arguments regarding bad

23  faith, please remember that the provisions of

24  Chapter 15 provide for expansive relief after

25  recognition.  This case tests those limits, but the

1   limits are broad.  If you're going to make a bad

2   faith argument in the future, I'd recommend doing so

3   using the appropriate test for the Chapter 15

4   context, citing to applicable Chapter 15 cases.

5             I must make another important point.  The

6   amended complaint seeks to undo and unwind

7   transactions that date back 15 years.  From the

8   Court's review of the amended complaint, it seems

9   like what is actually intended to be pled is

10  recession.  That is not explicitly pled under the

11  law of any state or country, and the Court cannot

12  discern upon which legal theory the plaintiff

13  believes this Court can roll back the hands of time

14  and undo that which was done many years ago.

15            A Bankruptcy Court cannot employ Section

16  105 or equitable powers beyond the parameters of the

17  Bankruptcy Code.  What I need to know is exactly

18  what legal theory the plaintiff is relying upon,

19  citing to a specific statute, that would permit this

20  Court to accomplish the unwinding that the plaintiff

21  seeks.  The plaintiff needs to include that

22  statutory provision in a second amended complaint.

23            I must make one last comment before

24  wrapping this up.  It's not lost upon the Court that

25  there are no acts alleged in the amended complaint

1    that specifically tie the defendants to this

2    geographic area of the United States, not one.  I'm

3    aware that Sequor Law is holding $1,500 of Tinto's

4    funds.  I'm also aware of case law regarding use of

5    retainer funds as a basis for jurisdiction.

6            I'm not making a legal point here.  I'm

7    making a common sense point that happens to include

8    notions of justice and fair play.

9            Why did the plaintiff file this case here

10   in the Southern District of Florida, as opposed to

11   another location in the United States?  Plaintiff

12   must make explicitly clear in the second amended

13   complaint the basis for this Court's venue over the

14   defendants, as opposed to a Court situated in a

15   district in which defendants own real property.

16           With that I'm going to ask that counsel

17   for each of the defendants supply this Court with an

18   order granting their respective motions to dismiss

19   with leave to amend.  As I've said previously, I

20   will need counsel for the foreign representative to

21   provide an order granting the motion for leave to

22   amend.  For those counsel who are not situated here

23   in the Southern District of Florida, just as a

24   reminder, on the Court's website, on my judge's

25   page, there is a checklist for the format of orders

1    that I would direct your attention to, so that we

2    don't have to deal with any resubmit requests.

3              Given the complexity of this adversary

4    proceeding, and the scope of revisions I've just

5    indicated need to be made, I am going to set a

6    deadline for any amendments of the amended

7    complaint, and I'm going to set that deadline for

8    October 17, 2024.  I am exercising judicial

9    discretion in selecting this deadline, so as to

10    avoid any potential prejudice to the parties.

11              This date provides ample time for

12    amendment, or if the parties are so inclined,

13    negotiation of a consensual resolution.  Hope

14    springs eternal.

15              Before I conclude, I have an

16    administrative request to make of counsel.  For any

17    new documents filed on the Court's docket, please

18    make sure that you use electronic PDF bookmarks.

19    They're easy to insert when you are compiling the

20    document, and doing so will save chambers a great

21    deal of time, which ultimately means you will get a

22    faster ruling.

23              For complaints, please electronically

24    bookmark major sections and each count.  For motions

25    and responses, please electronically bookmark major

1    argument sections.  Electronic bookmarking is far

2    more useful to the Court than a traditional table of

3    contents, which quite frankly we scroll right past.

4    Electronic bookmarks also allow the Court to go back

5    and forth between sections without losing a train of

6    thought or scrolling endlessly.  That level of

7    concentration ultimately benefits your clients.

8            Now, as I've indicated previously, this

9    Court is once again going to impose page limitations

10   on any further motion practice in this adversary

11   proceeding.  If the plaintiff chooses to file a

12   second amended complaint by the deadline, and one or

13   more defendants again wish to file a motion to

14   dismiss, the Court is imposing a page limitation of

15   20 pages of argument on any such motion, a ten-page

16   limit on each response to each such motion, and a

17   five-page limitation on any reply.

18           Defendants' counsel, please include this

19   requirement in the order you are submitting granting

20   your motion to dismiss without prejudice.  Again, 20

21   pages on any motion to dismiss, ten-page limitation

22   on any response, and five-page limitation on any

23   reply.

24           That concludes the Court's ruling.  At

25   this point I will open the floor by calling on each

1   party to ask if you have any questions at this point

2   that the Court's, what I believe to be comprehensive

3   ruling, did not previously address.

4          Counsel for the plaintiff.

5          MR. GOLDSMITH:  Thank you, Your Honor.

6   Andrew Goldsmith.

7          Just a question with respect to the page

8   limits that the Court just described.  Was that --

9   does the Court intend 20 pages for all motions to

10  dismiss combined, and ten pages per opposition, or

11  is it --

12         THE COURT:  Just as we did last time,

13  where the defendants took responsibility for their

14  legal arguments, I'm going to allow 20 pages for

15  each motion to dismiss, 20 pages for each response

16  by the plaintiff -- sorry -- ten pages for each

17  response by the plaintiff, five pages for each

18  reply.

19         MR. GOLDSMITH:  Thank you, Your Honor.

20         THE COURT:  Counsel to JBS, any questions?

21         MS. RUIZ:  No questions, Your Honor.

22  Thank you.

23         THE COURT:  Thank you.

24         Counsel to Colorado Investment Holdings.

25         MT. TECCE:  No, Your Honor.  Just to thank

Page 32

1   you for your time.  Actually, I do have a scheduling

2   question.  We have a conference scheduled on the

3   17th.  Will that date hold?

4                THE COURT:  It will not.  It will not.

5   Assuming that the filing of a second amended

6   complaint occurs, the Court will -- and a motion to

7   dismiss is subsequently timely filed -- the Court

8   will issue an appropriate briefing order, as it has

9   in the past, setting forth the deadlines for

10  response and reply.  I think that we can re-notice

11  the hearing on the 17th once that motion practice

12  has concluded.

13                I would ask plaintiff's counsel to please

14  make a note to remind me of that in any future

15  hearing on -- affecting amended complaints.

16                Counsel for J&F Investimentos.

17                MS. GARR:  No, Your Honor.  I also want to

18  thank you very much for your time.

19                Although I do just -- would you like a

20  single order on behalf of all plaintiffs, or would

21  you like separate orders with respect to each of the

22  defendants?

23                THE COURT:  It helps our docket if we have

24  a separate order on each motion to dismiss.

25                MS. GARR:  Great.  Thank you, Your Honor.

Page 33

1          THE COURT:  Okay.  I don't think that I

2   left out any party.  Thank you all for your time

3   today.

4          This hearing is concluded.

5          (Thereupon, the hearing was concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1                          CERTIFICATION

2

3    STATE OF FLORIDA:

4    COUNTY  OF  DADE:

5

6                I, HELAYNE F. WILLS, Shorthand

7    Reporter and Notary Public in and for the State of

8    Florida at Large, do hereby certify that the

9    foregoing proceedings were taken by electronic Zoom

10   recording at the date and place as stated in the

11   caption hereto on Page 1; that the foregoing

12   computer-aided transcription is a true record of my

13   stenographic notes taken from said electronic

14   recording.

15                WITNESS my hand this 16th day of

16   September, 2024.

17

18

19   _____

                     HELAYNE F. WILLS
20             Court Reporter and Notary Public
             In and For the State of Florida at Large
21            Commission No:  HH157788 Expires 8/2/2025

22

23

24

25

# Exhibit 3

## PRIVATE INSTRUMENT FOR ASSIGNMENT AND TRANSFER OF SHARES AND OTHER COVENANTS

By this private instrument, the parties,

**BRACOL HOLDING LTDA.,** a limited-liability company registered with the CNPJ (*Cadastro Nacional da Pessoa Jurídica* [National Corporate Taxpayer Register])/MF (*Ministério da Fazenda* [Ministry of the Treasury]) under No. 01.597.168/0001-99, with its principal place of business at Avenida Brigadeiro Faria Lima, No. 2012, 5° andar, conj. No. 53, sala 01, CEP [ZIP Code] 01469-900, represented herein in accordance with its articles of incorporation ("<u>Assignor</u>");

**BLESSED HOLDINGS LLC,** a company with its principal place of business in the United States of America, located at 3,500 South Dupont Highway, Dover, State of Delaware - USA, through its undersigned authorized officer, Mr. Gilberto Biojone, whose power of attorney was drafted in accordance with the company's articles of association ("<u>Assignee</u>");

**WHEREAS:**

(i)     The Assignor is the legitimate owner of 1,785,000 (one million, seven hundred and eighty-five thousand) shares in the Bertin Equity Investment Fund, an investment fund regulated by Brazilian Securities and Exchange Commission Instruction No. 391, dated July 16, 2003, registered on the CNPJ under No. 11.369.979/0001-96 ("<u>Fund</u>"); and

(ii)    The Assignor wishes to transfer 1,174,351.62425 shares in the Fund to the Assignee.

The Parties hereby agree to enter into this Private Instrument for Assignment and Transfer of Shares and Other Covenants ("<u>Agreement</u>"), pursuant to the following clauses and conditions:

### Clause One - Assignment of Shares

1.1.    The Assignor hereby assigns and transfers 1,174,351,62425 shares in the Fund to the Assignee, for the duly negotiated price of $10,000.00 (ten thousand United States dollars).

#256006

[stamp:] 39th SUBD. VILA MADALENA-PINHEIROS Av. Brig. Faria Lima, 1675-Tel.: (11) 3816-7700 AUTHENTICATION: This copy issued by the party matches the original. I certify to the truth of the foregoing. São Paulo, [stamp:] JAN. 14, 2010 ANDREIA RUZZANTE GAGLIARDI / JAQUELINE LIRA MURANAKA / ELAINE CRISTINA LEITE DOS SANTOS / RAIMUNDO BARRETO FONTES CARLOS ALEXANDRE DE MIRANDA VITORIO / ALEX SEVA CARDOSO JOÃO CARLOS DOS [illegible] / ALEX SEVA CARDOSO [illegible] LIMA SOUZA JUNIOR (Stamp tax paid)-Value of BRL 2.10 "VALID ONLY WITH THE SEAL OF AUTHENTICITY"

[stamp:] Notary College of Brazil - SP [São Paulo] Authentication State of São Paulo 1072AL155906 ARPEN-SP (*Associação dos Registradores de Pessoas Naturais do Estado de São Paulo* [Association of Natural Person Registrars of the State of São Paulo])
[signature] [signature] [signature] [signature]

This document is a copy of the original, digitally signed by MARIANA TAVARES ANTUNES and the Court of Justice of the State of São Paulo, registered on 07/15/2013 at 2:22 p.m., under number WJM.I1340O892041.
To verify the original, visit https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter the process 1036979-81.2013.8.26.0100 and code 4AD62E.

1.2.      The Assignor hereby declares that the shares assigned hereunder are fully paid in and free and clear of any judicial or extrajudicial onus, pledges, liens, encumbrances, third-party rights, judicial disputes, guarantees, leases, rights of first refusal, in summary, any restrictive or conditioning clauses of any kind, including, but not limited to, the forms exemplified in this clause.

1.3.      The Assignee hereby declares that it agrees with all the terms of the regulation of the Fund, including its first amendment, and it also declares that it agrees with all the rulings approved by the Assignor at the Fund meeting held in December 2009.

### Clause Two - Formalization of the Share Assignment

2.1.      The assignment and transfer of the shares is hereby irrevocable and irreversible, and Citibank Distribuidora de Títulos e Valores Mobiliários S.A., with its principal place of business at Avenida Paulista, No. 1111, 2° andar, parte, in the city of São Paulo, state of São Paulo, Brazil, registered on the CNPJ/MF under No. 33.868.597/0001-40, as administrator of the Fund, is to be notified, so that the assignment can be formalized in the respective shareholder registration and share assignment ledgers of the Fund.

### Clause Three - Confidentiality of the Agreement

3.1.      The Parties hereby classify the performance and/or existence of this Agreement as confidential information, and the Parties shall exercise the same care and discretion as they do with their own confidential or proprietary information that they do not wish to reveal or disclose, to limit disclosure of the performance and/or existence of this Agreement, and they shall, without limitation, take steps to: (i) restrict disclosure of the performance and/or existence of this Agreement only to their employees, agents and/or subcontractors, subject to written permission from the other Party, who have a need to be aware of the existence and/or performance of this assignment of shares by virtue of the purposes expressly set forth herein, and not disclose the existence and/or performance of this Agreement to any other parties; (ii) notify all employees, agents and subcontractors who become aware of the performance and/or existence of this assignment of shares of the obligation not to disclose the existence and/or performance of this Agreement and to obtain the agreement of the agents and/or subcontractors to be bound to this obligation (in the case of subcontractors, this non-disclosure agreement must be obtained in writing). Any Party will be held liable for any breach of this Agreement by any of their employees, agents and/or subcontractors to whom it has disclosed the existence and/or performance of this assignment of shares.

[stamp:] Notary College of Brazil - SP Authentication State of São Paulo 1072AL155905 ARPEN-SP [signature] [signature] [signature] [signature]

d#305305 – v2 – c# - a#

[stamp:] 39ᵗʰ SUBD. VILA MADALENA-PINHEIROS Av. Brig. Faria Lima, 1675-Tel.: (11) 3816-7700 AUTHENTICATION: This copy issued by the party matches the original. I certify to the truth of the foregoing. São Paulo, [stamp:] JAN. 14, 2010 ANDREIA RUZZANTE GAGLIARDI / JAQUELINE LIRA MURANAKA / ELAINE CRISTINA LEITE DOS SANTOS / RAIMUNDO BARRETO FONTES CARLOS ALEXANDRE DE MIRANDA VITORIO / ALEX SEVA CARDOSO JOÃO CARLOS DOS [illegible] / ALEX SEVA CARDOSO [illegible] LIMA SOUZA JUNIOR (Stamp tax paid)-Value of BRL 2.10 "VALID ONLY WITH THE SEAL OF AUTHENTICITY"

This document is a copy of the original, digitally signed by MARIANA TAVARES ANTUNES and the Court of Justice of the State of São Paulo, registered on 07/15/2013 at 2:22 p.m., under number
To verify the authenticity, visit https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter the process 10369179-81.2013.8.26.0100 and code 4AD62E.
WJMJ13400892041.

3.2.      In the event that any Party receives a court order obliging disclosure and/or revelation of this Agreement, the aforementioned Party shall (i) immediately notify the other Party of this legal obligation; (ii) take all appropriate legal measures for the purpose of preventing disclosure and/or revelation of this Agreement; (iii) if it is not possible to prevent the disclosure and/or revelation of this Agreement, limit the disclosure and/or revelation of this Agreement strictly to the terms set forth in the aforementioned court order.

3.3.      In the event of a breach of the obligation not to disclose the existence and/or performance of this instrument, the breaching Party of this Agreement shall pay, to the other Party, a non-compensatory fine equivalent to twice the equity value of all assets that make up the Fund portfolio, and to indemnify it for any losses and damages arising from any such breach.

## Clause Four - General Provisions

4.1.      This Agreement is irrevocable and irreversible, binding on the Parties, their successors and heirs of any kind, and may only be amended by a written instrument, duly signed by all Parties.

4.2.      This Agreement or any rights and/or obligations arising from it may not be assigned without the prior and express consent of the Parties.

4.3.      The commitments and obligations assumed hereunder are subject to specific performance, pursuant to Articles 461 and 466-B and subsequent articles of the Code of Civil Procedure, and this instrument serves as an extrajudicial executive title, pursuant to Article 585, II, of the Code of Civil Procedure, and the Parties hereby acknowledge that the payment for losses and damages alone will not constitute adequate compensation for any default of the obligation assumed hereunder.

4.4.      Taxes and/or payroll contributions due as a result of this Agreement, its performance and/or fulfillment, will be borne by the respective taxpayer, as defined under the applicable fiscal norms, without any right to reimbursement and/or refunds for any reason whatsoever.

4.5.      In the event that any provision contained in this Agreement is found to be null and void, invalid or ineffective, this will not impair the validity and effectiveness of the others, which are to be performed in full, and the Parties shall endeavor to obtain the same outcomes as the clause that has been declared null and void, invalid or ineffective.

4.6.      The Central Court of the District of São Paulo, state of São Paulo, is hereby appointed to

[stamp:] Notary College of Brazil - SP Authentication State of São Paulo 1072AL155904 ARPEN-SP [signature] [signature] [signature] [signature]

d#305305 – v2 – c# - a#

[stamp:] 39th SUBD. VILA MADALENA-PINHEIROS Av. Brig. Faria Lima, 1675-Tel.: (11) 3816-7700 AUTHENTICATION: This copy issued by the party matches the original. I certify to the truth of the foregoing. São Paulo, [stamp:] JAN. 14, 2010 ANDREIA RUZZANTE GAGLIARDI / JAQUELINE LIRA MURANAKA / ELAINE CRISTINA LEITE DOS SANTOS / RAIMUNDO BARRETO FONTES CARLOS ALEXANDRE DE MIRANDA VITORIO / ALEX SEVA CARDOSO JOÃO CARLOS DOS [illegible] / ALEX SEVA CARDOSO [illegible] LIMA SOUZA JUNIOR (Stamp tax paid)-Value of BRL 2.10 "VALID ONLY WITH THE SEAL OF AUTHENTICITY"

This document is a copy of the original, digitally signed by MARIANA TAVARES ANTUNES and the Court of Justice of the State of São Paulo, registered on 07/15/2013 at 2:22 p.m., under number 1072AL155904 and the Court of Justice of the State of São Paulo, registered on 07/15/2013 at 2:22 p.m., under number WJMJ13400892041. To verify the document, visit https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter the process 10369979-81.2013.8.26.0100 and code 4AD62E.

hear and resolve any and all disputes or litigation that may arise with regard to this instrument, with the express waiver of any other, no matter how privileged it may be.

Thus, in witness whereof, parties hereby sign 3 (three) identical copies of this Agreement, before the undersigned witnesses.

São Paulo, December 24, 2009.


[signature] [signature]
**BRACOL HOLDINGS LTDA.**


[signature] [signature]
**BLESSED HOLDINGS LLC**

**Witnesses:**

| [signature] | [signature] |
|---|---|
| Name: [hw:] *ALEXANDRE TADEU SEGUM* | Name: [hw:] *MARCELA FERNANDES M. DE MELO* |
| CPF (*Cadastro de Pessoas Físicas* [Individual Taxpayer Register]): [hw:] *195.530.718-05* | CPF: [hw:] *009.616.791-23* |

[stamp:] Notary College of Brazil - SP Authentication State of São Paulo 1072AL155907 ARPEN-SP [signature]

[stamp:] 39ᵗʰ SUBD. VILA MADALENA-PINHEIROS Av. Brig. Faria Lima, 1675-Tel.: (11) 3816-7700 AUTHENTICATION: This copy issued by the party matches the original. I certify to the truth of the foregoing. São Paulo, [stamp:] JAN. 14, 2010 ANDREIA RUZZANTE GAGLIARDI / JAQUELINE LIRA MURANAKA / ELAINE CRISTINA LEITE DOS SANTOS / RAIMUNDO BARRETO FONTES CARLOS ALEXANDRE DE MIRANDA VITORIO / ALEX SEVA CARDOSO JOÃO CARLOS DOS [illegible] / ALEX SEVA CARDOSO [illegible] LIMA SOUZA JUNIOR (Stamp tax paid)-Value of BRL 2.10 "VALID ONLY WITH THE SEAL OF AUTHENTICITY"

d#305305 – v2 – c# - a#

This document is a copy of the original, digitally signed by MARIANA TAVARES ANTUNES and the Court of Justice of the State of São Paulo, registered on 07/15/2013 at 2:22 p.m., under number WJMJ1340892041. To verify the document, visit https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter the process 10369979-81.2013.8.26.0100 and code 4AD62E.



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**2009.12.24 - First Share-Transfer Agreement (Portuguese)**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.



Jacqueline Yorke

Sworn to before me this
July 6, 2023

Signature, Notary Public

Stamp, Notary Public

fls. 159

## INSTRUMENTO PARTICULAR DE CESSÃO E TRANSFERÊNCIA DE QUOTAS
## E OUTRAS AVENÇAS

Por este instrumento particular, de um lado,

**BRACOL HOLDING LTDA.**, sociedade limitada inscrita no CNPJ/MF sob o n.º 01.597.168/0001-99, com sede na Avenida Brigadeiro Faria Lima, n.º 2.012, 5º andar, conj. n.º 53, sala 01, Cep 01469-900, Cidade de São Paulo, Estado de São Paulo, neste ato representado na forma de seus atos constitutivos ("<u>Cedente</u>");

**BLESSED HOLDINGS LLC,** sociedade com sede nos Estados Unidos da América, localizada no número 3.500 South Dupont Highway, Dover, Estado de Delaware – USA, por seu representante legal abaixo assinado, Sr. Gilberto Biojone, cujos termos da procuração estão de acordo com seus atos constitutivos ("<u>Cessionário</u>");

**CONSIDERANDO QUE:**

(i)　　　A Cedente é legítima proprietária de 1.785.000 (um milhão setecentas e oitenta e cinco mil) quotas do Bertin Fundo de Investimentos em Participações, fundo de investimento regulado pela Instrução da Comissão de Valores Mobiliários nº 391, de 16 de julho de 2003, inscrito no CNPJ sob o nº 11.369.979/0001-96 ("<u>Fundo</u>"); e

(ii)　　　A Cedente deseja ceder 1.174.351,62425 quotas do Fundo para o Cessionário.

resolvem as Partes celebrar o presente Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças ("<u>Contrato</u>"), consoante as seguintes cláusulas e condições:

### <u>Cláusula Primeira – Cessão de Quotas</u>.

1.1　　Por este instrumento, a Cedente cede e transfere ao Cessionário 1.174.351,62425 quotas do Fundo, pelo valor certo e ajustado de US$ 10.000,00 (dez mil dólares norte-americanos).

1.2.　　A Cedente declara que as quotas ora cedidas encontram-se totalmente integralizadas e livres e desembaraçadas de quaisquer ônus, judiciais ou extrajudiciais, cauções, penhores, gravames,

3ª SUBD. ... A INAPNALEZ...
Av. Pa.. Pa...., 1175 - ...... 3816-7700
AUT...TP.O...ÇÃO: Esta ... cópia apresentada pelo
... coniuce couN a aniginal. Dou fé.
... ... 1 4 JAN 2010
Coleg. Notarial
do Brasil 35.2
VALIDO SOMENTE C... SELO DE SEGURANÇA
Autenticação
...
1072AL155906
#256006

Este documento é cópia do original, assinado digitalmente por MARIANA TAVARES ANTUNES e Tribunal de Justiça Sao Paulo, protocolado em 15/07/2013 às 14:22 , sob o número WJMJ13400892041.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 4AD62E.

direitos de terceiros, disputas judiciais, garantias, arrendamentos, direitos de preferência, enfim, quaisquer cláusulas restritivas ou condicionantes de qualquer natureza, incluindo, sem limitação, as formas exemplificadas nessa cláusula.

1.3.     O Cessionário desde já declara que está de acordo com todos os termos do regulamento do Fundo, incluindo a sua primeira alteração, bem como declara que está de acordo com todas as deliberações aprovadas pelo Cedente na assembleia do Fundo realizada em dezembro de 2009.

### Cláusula Segunda - Da Formalização da Cessão das Quotas

2.1.     A cessão e transferência das quotas é, desde logo, efetuada em caráter irrevogável e irretratável, devendo ser notificado imediatamente o Citibank Distribuidora de Títulos e Valores Mobiliários S.A., com sede na Avenida Paulista, n.º 1111, 2º andar, parte, na Cidade de São Paulo, Estado de São Paulo, Brasil, inscrita no CNPJ/MF sob n.º 33.868.597/0001-40, na qualidade de administrador do Fundo, para que seja formalizada a cessão nos respectivos livros de registro de quotistas e de cessão de quotas do Fundo.

### Cláusula Terceira – Da Confidencialidade do Contrato

3.1.     A celebração e/ou a existência do presente Contrato é desde já classificada pelas Partes como informação confidencial, devendo as Partes ter o mesmo cuidado e discrição que tem com suas próprias informações confidenciais ou exclusivas, as quais não deseja revelar ou divulgar, para limitar a revelação da celebração e/ou da existência desse Contrato, devendo inclusive, mas sem limitação, tomar medidas para: (i) restringir a revelação da celebração e/ou da existência desse Contrato somente a seus empregados, agentes e/ou subcontratados mediante permissão escrita da outra Parte, os quais tenham necessidade de conhecer a existência e/ou a celebração da presente cessão de quotas em virtude das finalidades expressamente previstas neste instrumento, e não revelar a existência e/ou a celebração desse Contrato a quaisquer outras partes; (ii) comunicar a todos os empregados, agentes e subcontratados que venham a ter ciência da celebração e/ou da existência da presente cessão de quotas, da obrigação de proteger a revelação da existência e/ou a celebração desse Contrato nos termos deste instrumento e obter a concordância dos agentes e/ou subcontratados em estarem assim obrigados (no caso de subcontratados tal concordância será obtida por escrito). Qualquer Parte será responsável pela violação deste Contrato por quaisquer de seus empregados, agentes e/ou subcontratados aos quais tenha revelado a existência e/ou a celebração da presente cessão de quotas.

39ª SUBD: VILA MADALENA - PINHEIROS

A presente cópia confere com o original. Dou fé.

São Paulo, 1 4 JAN 2010

ANDRÉIA INIZZANTE CARVALHO
VALE CONSTANTINO DA

TABELIÃO Notarial
do Brasil - SP

AUTO SOMENTE COM
Autenticação

1072AL155905

Este documento é cópia do original, assinado digitalmente por MARIANA TAVARES ANTUNES e Tribunal de Justiça Sao Paulo, protocolado em 15/07/2013 às 14:22 , sob o número WJMJ13400892041
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 4AD62E.

3.2.    No caso de recebimento de ordem judicial que obrigue a divulgação e/ou revelação desse Contrato, a Parte que recebeu a referida ordem judicial deverá (i) comunicar imediatamente a outra Parte acerca da obrigação judicial ora recebida; (ii) tomar todas as medidas legais cabíveis com o objetivo de impedir a divulgação e/ou revelação desse Contrato; e (iii) caso não seja possível impedir a divulgação e/ou revelação do presente Contrato, limitar a divulgação e/ou revelação do presente Contrato nos estritos termos solicitados na referida ordem judicial.

3.3.    Na hipótese de violação da obrigação de não divulgação da existência e/ou da celebração do presente instrumento, a Parte que violar o presente Contrato deverá pagar, para a outra Parte, uma multa não compensatória em montante equivalente ao dobro do valor patrimonial de todos os ativos que compõe a carteira do Fundo, bem como deverá indenizar a mesma pelas perdas e danos decorrentes de tal violação.

### Cláusula Quarta - Disposições Gerais

4.1.    O presente Contrato é firmado em caráter irrevogável e irretratável, obrigando e aproveitando às Partes, seus sucessores e herdeiros a qualquer título, e somente poderá ser alterado por instrumento escrito devidamente assinado por todas as Partes.

4.2.    O presente Contrato ou quaisquer direitos e/ou obrigações dele oriundos não poderão ser cedidos sem o prévio e expresso consentimento das Partes.

4.3.    Os compromissos e obrigações aqui assumidos são passíveis de execução específica, nos termos dos artigos 461 e 466-B e seguintes do Código de Processo Civil, servindo este instrumento como título executivo extrajudicial, nos termos do artigo 585, II, do Código de Processo Civil, reconhecendo as Partes, desde logo, que o simples pagamento de perdas e danos não constituirá compensação adequada para o inadimplemento de obrigação assumida neste instrumento.

4.4.    Os tributos e/ou contribuições devidos em razão da assinatura deste Contrato, de sua execução e/ou cumprimento, correrão por conta do respectivo contribuinte como tal definido na norma tributária aplicável, sem qualquer direito a ressarcimento e/ou reembolso, seja a que título for.

Av. Eng. Pelia Lima, 1675 - Fone: (11) 38__-__00
AUTENTICAÇÃO: Esta cópia apresentada pela parte confere com o original. Dou fé.

São Paulo,    1 4 JAN. 2010

ANDREIA RUZZANTE GAGUARDI    JACQUELINE LIRA __
ELAINE CRISTINA LEITE __    __
CARLOS ALEXANDRE DE __    VITÓRIA __
__
Colégio Notarial
do Brasil - SP
Autenticação
__
1072AL155904

d#305305 - v2 - c# - a#

Este documento é cópia do original, assinado digitalmente por MARIANA TAVARES ANTUNES e Tribunal de Justiça Sao Paulo, protocolado em 15/07/2013 às 14:22 , sob o número WJMJ13400892041
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 4AD62E.

4.5.    A nulidade, invalidade ou ineficácia de qualquer disposição contida neste Contrato não prejudicará a validade e eficácia das demais, que serão integralmente cumpridas, obrigando-se as Partes a envidar os seus melhores esforços para, validamente, obter os mesmos efeitos da avença que tiver sido nulificada, anulada, invalidada ou declarada ineficaz.

4.6.    Fica eleito o Foro Central da Comarca de São Paulo, Estado de São Paulo, para conhecer e dirimir toda e qualquer dúvida ou litígio que eventualmente venha a ocorrer acerca deste instrumento, renunciando expressamente as Partes a qualquer outro, por mais privilegiado que possa ser.

E, por estarem assim justas e contratadas, as Partes assinam o presente Contrato em 03 (três) vias, de igual teor e forma, para um só efeito, juntamente com as testemunhas abaixo.

São Paulo, 24 de dezembro de 2009.

**BRACOL HOLDING LTDA.**

**BLESSED HOLDINGS LLC**

**Testemunhas:**

Nome: ALEXANDRE TADEU SEGUM
CPF: 195.530.718-05

Nome: MARCELA FERNANDES M. DE MELO
CPF: 009.616.791-23



Este documento é cópia do original, assinado digitalmente por MARIANA TAVARES ANTUNES e Tribunal de Justiça Sao Paulo, protocolado em 15/07/2013 às 14:22 , sob o número WJMJ13400892041
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 4AD62E.

# Exhibit 4

**PRIVATE INSTRUMENT REGARDING THE ASSIGNMENT AND TRANSFER OF SHARES AND OTHER COVENANTS**

By way of this private instrument, of the first part,

**BRACOL HOLDING LTDA**., a limited liability company registered with the CNPJ/MF (*Cadastro Nacional de Pessoas Jurídicas/Ministério da Fazenda* [National Corporate Taxpayers Register/Ministry of Finance]) under no. 01.597.168/0001-99, headquartered at Avenida Brigadeiro Faria Lima, no. 2012, 5º andar, conj. no. 53, sala 01, Postal Code (CEP) 01469-900, City of São Paulo, State of São Paulo, represented herein in accordance with its articles of incorporation ("Assignor"); and

**BLESSED HOLDINGS LLC**, a company based in the United States of America, located at 3500 South Dupont Highway, Dover, State of Delaware — USA, represented by its undersigned legal representative Mr. Gilberto Biojone, whose power of attorney is in accordance with its articles of incorporation ("Assignee").

**WHEREAS**:

(i)     The Assignor is the legitimate owner of 610,648.37575 subscribed shares (with 601,274.50461 shares fully paid up) in Bertin Fundo de Investimentos em Participações, an investment fund governed by the Securities and Exchange Commission Order no. 391, dated July 16, 2003, registered with the CNPJ under no. 11.369.979/0001-96 ("Fund"); and

(ii)    The Assignor wishes to assign 348,317 (three hundred forty-eight thousand three hundred seventeen) shares in the Fund to the Assignee.

The Parties agree to enter into this Private Instrument regarding the Assignment and Transfer of Shares and Other Covenants ("Agreement"), according to the following clauses and conditions:

**Clause One - Assignment of Shares**

1.1 By way of this instrument, the Assignor assigns and transfers to the Assignee 348,317 (three hundred forty-eight thousand three hundred seventeen) shares in the Fund, for the agreed value of R$ 17,000.00 (seventeen thousand reais).

[initials]

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of Sao Paulo, filed on 06/10/2013 at 6:51 p.m., under the number 1036979812013826 0100. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do and enter case 1036979-81.2013.8.26.0100 and code 46888D.

p. 70

2

1.2. The Assignor states that the shares being assigned are fully paid up and free from any judicial or extrajudicial burdens, bonds, pledges, liens, third party rights, legal disputes, guarantees, leases, preferential rights, in short, any restrictive or conditional clauses of any nature, including, without limitation, the forms exemplified in this clause.

1.3. The Assignee hereby states that it agrees with all the terms of the Fund's regulations, including its first amendment, and also states that it agrees with all resolutions approved by the Assignor at the Fund's meeting held in December 2009.

### Clause Two - Formalization of the Assignment of Shares

2.1. The assignment and transfer of shares is hereby executed on an irrevocable and irreversible basis, and Citibank Distribuidora de Títulos e Valores Mobiliários S.A., headquartered at Paulista Avenue, no. 1111, 2º andar, parte, in the City of São Paulo, State of São Paulo, Brazil, registered with the CNPJ/MF under no. 33.868.597/0001-40 ("Citibank"), in its capacity as Fund administrator, must be immediately notified so that the assignment can be formalized in the respective books of the shareholders registry and the assignment of shares of the Fund.

2.2. In accordance with what is set forth above, the Parties hereby appoint Citibank as their court representative to carry out all necessary acts to formalize the transfer of the Fund's shares, including all applicable procedures with CETIP S.A. - Organized Over-the-Counter Market for Assets and Derivatives ("CETIP").

### Clause Three – Agreement Confidentiality

3.1. The entering into and/or the existence of this Agreement is hereby classified by the Parties as confidential information, and the Parties must take the same care and discretion they have with their own confidential or exclusive information that they do not wish to reveal or disclose, in order to limit the disclosure of the entering into and/or the existence of this Agreement, including, but not limited to, taking measures to: (i) restrict the disclosure of the entering into and/or the existence of this Agreement only to their employees, agents and/or subcontractors, with written permission from the other Party, who need to know of the existence and/or the entering into of this assignment of shares for the purposes expressly set forth in this instrument, and not

[initials]

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of Sao Paulo, filed on 06/10/2013 at 6:51 p.m., under the number 10369798120138260100. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do and enter case 1036979-81.2013.8.26.0100 and code 46888D.

disclose the existence and/or the entering into of this Agreement to any other parties: (ii) communicate to all employees, agents and subcontractors who come to know about the entering into and/or the existence of this assignment of shares, of the obligation to protect the disclosure of the existence and/or the entering into of this Agreement under the terms of this instrument and obtain the agreement of the agents and/or subcontractors to be thus bound (in the case of subcontractors, such agreement will be obtained in writing). Any Party will be responsible for the violation of this Agreement by any of its employees, agents and/or subcontractors to whom it has disclosed the existence and/or the entering into of this assignment of shares.

3.2. In the event of receiving a court order requiring the disclosure and/or revelation of this Agreement, the Party that received said court order must (i) immediately communicate to the other Party the judicial obligation received; (ii) take all possible legal measures with the objective of preventing the disclosure and/or revelation of this Agreement, and (iii) if it is not possible to prevent the disclosure and/or revelation of this Agreement, limit the disclosure and/or revelation of this Agreement under the strict terms requested in said court order.

3.3. In the event of a breach of the obligation not to disclose the existence and/or the entering into of this instrument, the Party that breaches this Agreement must pay, to the other Party, a non-compensatory fine in an amount equivalent to twice the net asset value of all the assets that make up the Fund's portfolio, and also must indemnify the same for losses and damages resulting from such violation.

**Clause Four - General Provisions**

4.1. This Agreement is entered into on an irrevocable and irreversible basis, binding and benefiting the Parties, their successors and heirs with any title, and can only be changed by a written instrument duly signed by all Parties.

4.2. This Agreement or any rights and/or obligations arising herefrom cannot be assigned without the prior and express consent of the Parties.

4.3. The commitments and obligations undertaken herein are subject to specific performance, under the terms of articles 461 and 466-B et seq. of the Code of Civil Procedure, and this instrument acts as an extrajudicial enforcement document, under the terms of article 585, II, of the Code of Civil Procedure,

[initials]

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of Sao Paulo, filed on 06/10/2013 at 6:51 p.m., under the number 1036979812013826010. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do and enter case 1036979-81.2013.8.26.0100 and code 46888D.

p. 72

4

with the Parties hereby acknowledging that the simple payment of damages will not constitute adequate compensation for noncompliance with an obligation undertaken in this instrument.

4.4. Taxes and/or contributions due as a result of the signing of this Agreement, its enforcement and/or fulfillment, will be borne by the respective taxpayer as defined in the applicable tax law, without any right to compensation and/or reimbursement for any reason.

4.5. The nullity, invalidity or ineffectiveness of any provision contained in this Agreement will not affect the validity and effectiveness of the other provisions, which will be fully complied with, and the Parties agree to make their best efforts to validly obtain the same effects of the covenant that has been nullified, annulled, invalidated or declared ineffective.

4.6. The Central Court of the District of São Paulo, State of São Paulo, is chosen to hear and resolve any and all conflicts or disputes that may arise regarding this instrument, with the Parties expressly waiving any other jurisdiction, regardless of the privileges that it may have.

In witness whereof, the Parties sign 2 (two) identical copies of this Agreement for a single purpose, along with the witnesses below.

São Paulo, November 11, 2010.
[signature]
BRACOL HOLDING LTDA.


[signature]
BLESSED HOLDINGS LLC

Witnesses:

[signature]                                          _____
Name: [hw:] *Bruno* [illegible]                       Name:
CPF (*Cadastro de Pessoas Físicas* [Individual Taxpayer ID]:    CPF:
[hw:] *0* [illegible] *47 227-42*



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**2010.11.10 - Second Share-Transfer Agreement (Portuguese)**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_Jacqueline Yorke_

Sworn to before me this
July 6, 2023

_Signature, Notary Public_



Stamp, Notary Public

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de Sao Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 103697981201382601000.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46B88D.

INSTRUMENTO PARTICULAR DE CESSÃO E TRANSFERÊNCIA DE QUOTAS
E OUTRAS AVENÇAS

Por este instrumento particular, de um lado,

BRACOL HOLDING LTDA., sociedade limitada inscrita no CNPJ/MF sob o n.º 01.597.168/0001-99, com sede na Avenida Brigadeiro Faria Lima, n.º 2.012, 5º andar, conj. n.º 53, sala 01, Cep 01469-900, Cidade de São Paulo, Estado de São Paulo, neste ato representado na forma de seus atos constitutivos ("Cedente"); e

BLESSED HOLDINGS LLC, sociedade com sede nos Estados Unidos da América, localizada no número 3.500 South Dupont Highway, Dover, Estado de Delaware – USA, por seu representante legal abaixo assinado, Sr. Gilberto Biojone, cujos termos da procuração estão de acordo com seus atos constitutivos ("Cessionário").

CONSIDERANDO QUE:

    (i)    A Cedente é legítima proprietária de 610.648,37575 quotas subscritas (sendo 601.274,50461 quotas integralizadas), do Bertin Fundo de Investimentos em Participações, fundo de investimento regulado pela Instrução da Comissão de Valores Mobiliários nº 391, de 16 de julho de 2003, inscrito no CNPJ sob o nº 11.369.979/0001-96 ("Fundo"); e

    (ii)    A Cedente deseja ceder 348.317 (trezentas e quarenta e oito mil trezentas e dezessete) quotas do Fundo para o Cessionário.

resolvem as Partes celebrar o presente Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças ("Contrato"), consoante as seguintes cláusulas e condições:

Cláusula Primeira – Cessão de Quotas

1.1    Por este instrumento, a Cedente cede e transfere ao Cessionário 348.317 (trezentas e quarenta e oito mil trezentas e dezessete) quotas do Fundo, pelo valor certo e ajustado de R$ 17.000,00 (dezessete mil reais).

2

1.2.    A Cedente declara que as quotas ora cedidas encontram-se totalmente integralizadas e livres e desembaraçadas de quaisquer ônus, judiciais ou extrajudiciais, cauções, penhoras, gravames, direitos de terceiros, disputas judiciais, garantias, arrendamentos, direitos de preferência, enfim, quaisquer cláusulas restritivas ou condicionantes de qualquer natureza, incluindo, sem limitação, as formas exemplificadas nessa cláusula.

1.3.    O Cessionário desde já declara que está de acordo com todos os termos do regulamento do Fundo, incluindo a sua primeira alteração, bem como declara que está de acordo com todas as deliberações aprovadas pelo Cedente na assembleia do Fundo realizada em dezembro de 2009.

### Cláusula Segunda - Da Formalização da Cessão das Quotas

2.1.    A cessão e transferência das quotas é, desde logo, efetuada em caráter irrevogável e irretratável, devendo ser notificado imediatamente o Citibank Distribuidora de Títulos e Valores Mobiliários S.A., com sede na Avenida Paulista, n.º 1111, 2º andar, parte, na Cidade de São Paulo, Estado de São Paulo, Brasil, inscrita no CNPJ/MF sob n.º 33.868.597/0001-40 ("Citibank"), na qualidade de administrador do Fundo, para que seja formalizada a cessão nos respectivos livros de registro de quotistas e de cessão de quotas do Fundo.

2.2.    Em virtude do disposto acima as Partes desde já nomeiam o Citibank como o seu procurador para que pratique todos os atos necessários para formalizar a transferência das quotas do Fundo, incluindo todos os procedimentos aplicáveis junto à CETIP S.A. - Balcão Organizado de Ativos e Derivativos ("CETIP").

### Cláusula Terceira - Da Confidencialidade do Contrato

3.1.    A celebração e/ou a existência do presente Contrato é desde já classificada pelas Partes como informação confidencial, devendo as Partes ter o mesmo cuidado e discrição que tem com suas próprias informações confidenciais ou exclusivas, as quais não deseja revelar ou divulgar, para limitar a revelação da celebração e/ou da existência desse Contrato, devendo inclusive, mas sem limitação, tomar medidas para: (i) restringir a revelação da celebração e/ou da existência desse Contrato somente a seus empregados, agentes e/ou subcontratados mediante permissão escrita da outra Parte, os quais tenham necessidade de conhecer a existência e/ou a celebração do presente cessão de quotas em virtude das finalidades expressamente previstas neste instrumento, e não

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46888D.

3

revelar a existência e/ou a celebração desse Contrato a quaisquer outras partes; (ii) comunicar a todos os empregados, agentes e subcontratados que venham a ter ciência da celebração e/ou da existência da presente cessão de quotas, da obrigação de proteger a revelação da existência e/ou da celebração desse Contrato nos termos deste instrumento e obter a concordância dos agentes e/ou subcontratados em estarem assim obrigados (no caso de subcontratados tal concordância será obtida por escrito). Qualquer Parte será responsável pela violação deste Contrato por quaisquer de seus empregados, agentes e/ou subcontratados aos quais tenha revelado a existência e/ou a celebração da presente cessão de quotas.

3.2.    No caso de recebimento de ordem judicial que obrigue a divulgação e/ou revelação desse Contrato, a Parte que recebeu a referida ordem judicial deverá (i) comunicar imediatamente a outra Parte acerca da obrigação judicial ora recebida; (ii) tomar todas as medidas legais cabíveis com o objetivo de impedir a divulgação e/ou revelação desse Contrato; e (iii) caso não seja possível impedir a divulgação e/ou revelação do presente Contrato, limitar a divulgação e/ou revelação do presente Contrato nos estritos termos solicitados na referida ordem judicial.

3.3.    Na hipótese de violação da obrigação de não divulgação da existência e/ou da celebração do presente instrumento, a Parte que violar o presente Contrato deverá pagar, para a outra Parte, uma multa não compensatória em montante equivalente ao dobro do valor patrimonial de todos os ativos que compõe a carteira do Fundo, bem como deverá indenizar a mesma pelas perdas e danos decorrentes de tal violação.

<u>Cláusula Quarta - Disposições Gerais</u>

4.1.    O presente Contrato é firmado em caráter irrevogável e irretratável, obrigando e aproveitando às Partes, seus sucessores e herdeiros a qualquer título, e somente poderá ser alterado por instrumento escrito devidamente assinado por todas as Partes.

4.2.    O presente Contrato ou quaisquer direitos e/ou obrigações dele oriundos não poderão ser cedidos sem o prévio e expresso consentimento das Partes.

4.3.    Os compromissos e obrigações aqui assumidos são passíveis de execução específica, nos termos dos artigos 461 e 466-B e seguintes do Código de Processo Civil, servindo este instrumento como título executivo extrajudicial, nos termos do artigo 585, II, do Código de Processo Civil,

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justica do Estado de Sao Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46B88D.

4

reconhecendo as Partes, desde logo, que o simples pagamento de perdas e danos não constituirá compensação adequada para o inadimplemento de obrigação assumida neste instrumento.

4.4.    Os tributos e/ou contribuições devidos em razão da assinatura deste Contrato, de sua execução e/ou cumprimento, correrão por conta do respectivo contribuinte como tal definido na norma tributária aplicável, sem qualquer direito a ressarcimento e/ou reembolso, seja a que título for.

4.5.    A nulidade, invalidade ou ineficácia de qualquer disposição contida neste Contrato não prejudicará a validade e eficácia das demais, que serão integralmente cumpridas, obrigando-se as Partes a envidar os seus melhores esforços para, validamente, obter os mesmos efeitos da avença que tiver sido nulificada, anulada, invalidada ou declarada ineficaz.

4.6.    Fica eleito o Foro Central da Comarca de São Paulo, Estado de São Paulo, para conhecer e dirimir toda e qualquer dúvida ou litígio que eventualmente venha a ocorrer acerca deste instrumento, renunciando expressamente as Partes a qualquer outro, por mais privilegiado que possa ser.

E, por estarem assim justas e contratadas, as Partes assinam o presente Contrato em 02 (duas) vias, de igual teor e forma, para um só efeito, juntamente com as testemunhas abaixo.

São Paulo, 11 de novembro de 2010.

BRACOL HOLDING LTDA.

BLESSED HOLDINGS LLC

Testemunhas:

Nome:
CPF:

Nome:
CPF:

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justica do Estado de Sao Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 1036979812013826010. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46888D.

# Exhibit 5

**TRANSFER AGREEMENT FOR SHARES IN THE BERTIN EQUITY INVESTMENT FUND
AND OTHER COVENANTS**

[hw:] *140*

A.      **TINTO HOLDING LTDA.** (current name of BRACOL HOLDING LTDA.), a limited
         liability company, with its principal place of business at Rua 15 de Novembro, 200, 15º
         Andar, Centro, CEP (*Código de Endereçamento Postal* [Zip Code]) 01013-[905], in the
         city of São Paulo, state of São Paulo, registered on the CNPJ (*Cadastro Nacional da
         Pessoa Jurídica* [National Corporate Taxpayer Register])/MF (*Ministério da Fazenda*
         [Ministry of the Treasury]) under the number 01.59[7-168]/0001-99, represented in this act
         in accordance with its Articles of Association ("**TINTO**");

[stamp:] COPY

B.      **COMAPI AGROPECUÁRIA S.A.**, a private equity company, with its principal place of
         business at Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53, sala, 3, in the city
         of São Paulo, state of São Paulo, registered on the CNPJ/MF under the number
         53.907.168/0001-01, represented in this act in accordance with its By-Laws ("**COMAPI**");

C.      **J&F INVESTIMENTOS S.A.**, with its principal place of business at Rua General Furtado
         do Nascimento, 66, Alto de Pinheiros, CEP 05465-070, registered on the CNPJ/MF under
         the number 00.350.763/0001-62, represented in this act in accordance with its Articles of
         Association ("**J&F**");

**As Consenting Intervening Party,**

D.       **FERNANDO ANTONIO BERTIN,** Brazilian citizen, married, entrepreneur, bearer of
         identity card RG (*Registro Geral* [General Registry]) number 7.774.333 SSSP [*sic*: SSP]
         (*Secretaria da Segurança Pública* [Department of Public Security]) SP [São Paulo] and
         registered on the CPF (*Cadastro de Pessoas Físicas* [Individual Taxpayer Register])/MF
         under the number 001.854.238-76, domiciled at Avenida Brigadeiro Faria Lima, 2012, 5º
         andar, conjunto 53, sala, 3, in the city of São Paulo, state of São Paulo.

E.       **REINALDO BERTIN,** Brazilian citizen, married, entrepreneur, bearer of identity card RG
         number 4.406.782 SSSP [*sic*] SP and registered on the CPF/MF under the number
         269.958.678-15, domiciled at Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53,
         sala, 3, in the city of São Paulo, state of São Paulo.

F.       **SILMAR ROBERTO BERTIN,** Brazilian citizen, married, entrepreneur, bearer of identity
         card RG number 7.774.321 SSP SP and registered on the CPF/MF under the number
         15.751.668-79, domiciled at Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53,
         sala, 3, in the city of São Paulo, state of São Paulo (jointly "**Consenting Intervening
         Parties**");

**And, as Intervening Guarantors:**

G.       **JOESLEY MENDONÇA BATISTA,** Brazilian citizen, married under the total separation
         of property regime, bearer of identity card RG number 967.397 SSP/DF (*Distrito Federal*
         [Federal District]), registered on the CPF/MF under the number 376.842.211-91, with a
         commercial address in the city of São Paulo, state of São Paulo at Rua General Furtado do
         Nascimento, 66, Alto de Pinheiros, CEP 05465-070; and

Document digitally signed pursuant to MP (*Medida Provisória* [Provisional Measure]) No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182

H.        **WESLEY MENDONÇA BATISTA,** Brazilian citizen, married under the partial community property regime, bearer of identity card RG number 989.892-SSP/DF, registered on the CPF/MF under the number 364.873.921-20, with a commercial address in the city of São Paulo, state of São Paulo at Avenida Marginal Direita do Tietê, nº 500, Bloco I, 3º andar, Vila Jaguara, CEP 05118-100 (jointly "**Intervening Guarantors**").

Wherein **TINTO, COMAPI** and **J&F**, separately referred to as "**Party**" and jointly as "**Parties**", hereby enter into this Transfer Agreement for Shares in the Bertin Equity Investment Fund and Other Covenants ("**AGREEMENT**"), under the following terms:

**1. PURPOSE AND PRICE**

**1.1.**      **TINTO** is the direct holder (i) of 253,249.93482000 (two hundred and fifty-three thousand, two hundred and forty-nine point nine-three-four-eight-two-zero-zero-zero) shares of **FIB BERTIN,** which constitute the totality of the share of the **BERTIN EQUITY INVESTMENT FUND** ("**FIP BERTIN**"), and which, except for the pledge of 252,957.50461000 (two hundred and fifty-two thousand, nine hundred and fifty-seven point five-zero-four-six-one-zero-zero-zero) shares to **BANCO DO BRASIL S.A.**, are entirely free and clear of all encumbrances, onus, debt, disputes, litigation and taxes in arrears of any kind ("**FIP BERTIN SHARES**"); and (ii) the totality of the shares issued by **MAFRIP – MATADOURO FRIGORÍFICO RIO PARDO S.A.,** located on Rodovia BA 263, km 3, Zona Rural, city of Itapetinga, state of Bahia, registered on the CNPJ/MF under the number 13.818.919/0001-39, free and clear of all onus, encumbrances, charges, disputes or obligations ("**MAFRIP**"), which is the owner of the real estate property registered under number 2,200 ("**MAFRIP Shares**").

1.2.      **COMAPI** is the legitimate owner and holder of the following real estate properties:

         (i)      Part of the real estate properties located in Diamantino, state of Mato Grosso and registered with the Real Estate Property Registry Office of Diamantino, state of Mato Grosso, under the numbers 425 and 25.316;

         (ii)      Real estate property located in Pimenta Bueno, state of Rondônia, which is registered in the name of Cooperativa Rodoniense de Carne Ltda., CNPJ 06.042.792/0001-42, registration number 5.329; and

         (iii)      Real estate property located in Santana do Araguaia, registration numbers 3.653 and 1.021.

1.2.1.      **COMAPI** hereby declares that the Real Estate Properties (as defined below) are free and clear of all onus, encumbrances, mortgage bonds, outstanding debts, restrictions, litigation or tax liens, and there are no constrictions, pledges, levies, onus, encumbrances, outstanding debts, orders or judicial and/or administrative injunctions, including, but not limited to, easements or rights-of-way that could affect the purpose of this transaction, or that could interfere or prevent access to the property or its use.

1.3.      For the grand total of BRL 346,000,000.00 (three hundred and forty-six million Brazilian reals), hereinafter "**Total Price**". On April 28, 2014, **J&F** paid, and **TINTO** received the amount of BRL 12,000,000.00 of the "Total Price", for which the latter grants full discharge of the obligation. The remaining balance will be paid by **J&F** in the manner described below:

(A) In this act, **TINTO** disposes of and transfers the entirety of its **FIP BERTIN SHARES** to **J&F**;

[initials] [initials] [initials] [initials] [initials]

Document digitally signed pursuant to MP No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182

(B) In this act, **TINTO** disposes of and transfers the entirety of its **MAFRIP Shares** to **J&F**; and

(C) In this act, **COMAPI** disposes of and transfers the real estate properties identified in Clause 1.2 above to **J&F** or any party indicated by the latter, wherein, with regard to the real estate property identified in item (i) above, **COMAPI** disposes of and transfers (i) 308.6900 ha of the property registered under number 425, and the following area, with the specifications detailed below, shall be separated by **COMAPI** and transferred to **JBS** or any party indicated by the latter: starting at the landmark called M1, central meridian 57º, bordering Hariberto [illegible] (successor of Renato de Tal), in the direction 17º00' SE for 1,246.26 m to landmark M2, which borders José de Alencar (successor of Wanderley Gomes [illegible]) in the direction 39º00 SW for 2,270.28 m to landmark M3, set on the banks of the Cajú Stream, which borders the Cajú Stream in several directions [totaling] a distance of 1,355.28 m, until it meets landmark M4, set on the bank of the Cajú Stream, bordering Hélio Liber de Oliveira (registration number 13.370) in the direction [illegible]º00'SW at a distance of 3,061.67 m until it reencounters landmark M1, the starting point of this description, thus completing the registration in question, with a total perimeter of 7,933.49 m; and (ii) of the Real Estate Property registered under number 25.316, **COMAPI** will hand over an area of [*sic*: number missing] square meters, duly separated, around the area of the Treatment Pond, to **J&F** or any party indicated by the latter ("**Real Estate Properties**")

[hw:] *141*

1.3.1.   BRL 130,000,000.00 (one hundred and thirty million Brazilian reals) in cash, paid over 6 (six) installments, as detailed below:

   (a)  BRL 20,000,000.00 (twenty million Brazilian reals), to be paid by 09/15/2014;
   (b)  BRL 20,000,000.00 (twenty million Brazilian reals), to be paid by 12/15/2014;
   (c)  BRL 30,000,000.00 (thirty million Brazilian reals), to be paid by 04/15/2015;
   (d)  BRL 20,000,000.00 (twenty million Brazilian reals), to be paid by 06/15/2015;
   (e)  BRL 20,000,000.00 (twenty million Brazilian reals), to be paid by 09/15/2015; and
   (f)  BRL 20,000,000.00 (twenty million Brazilian reals), to be paid by 12/15/2015.

1.3.2.   As guarantee of the amount set forth in Clause 1.3.1. above, **J&F** will issue the following endorsed *pro salvando* promissory notes to **TINTO,** pursuant to the terms of article 897 and following articles of Civil Code, through the **Intervening Guarantors ("Promissory Notes")**:

   (a)  PN BB 1, due on 09/15/2014, for the amount of BRL 20,000,000.00 (twenty million Brazilian reals);
   (b)  PN BB 2, due on 12/15/2014, for the amount of BRL 20,000,000.00 (twenty million Brazilian reals);
   (c)  PN BB 3, due on 04/15/2015, for the amount of BRL 30,000,000.00 (thirty million Brazilian reals);
   (d)  PN BB 4, due on 06/15/2015, for the amount of BRL 20,000,000.00 (twenty million Brazilian reals);
   (e)  PN BB 5, due on 09/15/2015, for the amount of BRL 20,000,000.00 (twenty million Brazilian reals); and
   (f)  PN BB 6, due on 12/15/2015, for the amount of BRL 20,000,000.00 (twenty million Brazilian reals).

[initials] [initials] [initials] [initials] [initials]

Document digitally signed pursuant to MP No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182

1.3.2.1.        **TINTO** shall redeem the aforementioned Promissory Notes at a Financial Institution of its choosing and, with the proceeds from the aforementioned redemption, it shall (i) directly settle the amount of the debt with Banco do Brasil pertaining to case number 1073886-55.2013.8.26.0100, currently before the 40th Civil Court of the Judiciary District of the State Capital; case number 1077048-58.2013.8.26.0100, currently before the 7th Civil Court of the Judiciary District of the State Capital; case number 1076097-64.2013.8.26.0100, current before the 38th Civil Court of the Judiciary District of the State Capital; and case number 10768286020-13.8.26.0100, current before the 23rd Civil Court of the Judiciary District of the State Capital ("**Debt with Banco do Brasil**"); and (ii) release the pledge on the 252,957.50461000 (two hundred and fifty-two thousand, nine hundred and fifty-seven point five-zero-four-six-one-zero-zero-zero) shares issued by **FIP BERTIN**, offered as collateral for the aforementioned Debt with Banco do Brasil. **TINTO** shall not use the proceeds of the redemption detailed in Clause 1.3.2 above for any purpose other than settlement of the **Debt with Banco do Brasil**, under penalty of the **Promissory Notes** being declared null and void.

1.3.2.1.1.      In the event that **TINTO** uses the proceeds of the redemption detailed in Clause 1.3.2 above for any purpose other than settlement of the **Debt with Banco do Brasil**, as stated in the aforementioned clause, in addition to the provisions set forth in Clause 1.3.2.1. above, **TINTO** shall return to **J&F** an amounts paid by the latter, plus a penalty of 30% (thirty percent) of the **Total Price**, duly corrected for inflation by the TR (*Taxa Referencial* [Reference Rate]), plus 1% per month.

1.3.2.2.        Payment of the 17 remaining installments of the balance, amounting to BRL 12,000,000.00, as stipulated in Clause 1.3 of the **AGREEMENT**, is conditioned on proof, provided by **TINTO** to **J&F**, of (i) settlement of the Debt with Banco do Brasil; and (ii) release of the pledge of 252,957.50461000 (two hundred and fifty-two thousand, nine hundred and fifty-seven point five-zero-four-six-one-zero-zero-zero) shares issued by **FIP BERTIN**, offered as collateral for the aforementioned Debt with Banco do Brasil under the terms of Clause 1.3.2.1 above

1.3.2.2.1.      Under the terms of article 897 and subsequent articles of the Civil Code and within 5 (five) business days of the date of implementation of the injunctive conditions set forth in items (i) and (ii) of Clause 1.3.2.2. above, **J&F** will issue, through the intervening guarantors, endorsed *pro salvando* promissory notes to **TINTO** as collateral for the payment set forth in Clause 1.3.2.2. above.

1.4. The balance of the price will be settled in 17 (seventeen) fixed and consecutive monthly installments amounting to BRL 12,000,000.00 (twelve million Brazilian reals) to be paid in cash, as long as the obligations set forth in Clauses 1.21. and 1.2.2 (including the respective sub-clauses) of this instrument are performed, with the first installment due by 12/28/2014 and the rest to be paid within 30 (thirty) days from the due-by date of the previous installment, in line with the injunctive conditions set forth in Clause 1.3.2.2. above.

1.5. **TINTO** and **COMAPI** shall provide **J&F** with copies of the updated Real Estate Property deeds within 5 (five) business days of the date of this Agreement.

**2. GENERAL PROVISIONS**

[initials] [initials] [initials] [initials] [initials]

Document digitally signed pursuant to MP No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182

**2.1.** Once the **Total Price** is paid by J&F to **TINTO**, **COMAPI** and the **Consenting Intervening Parties** will grant **J&F** full, public, general, unchangeable and irrevocable release with regard to the acquisition of the **FIP BERTIN SHARES**, the **MAFRIP Shares** and the **Real Estate Properties** by **J&F**, with no further claims of any kind at any time.

[hw:] *142*

**2.2. COMAPI** shall provide **J&F**, or any party indicated by the latter, with documentary proof of its powers of attorney, or any other document necessary to ensure and execute the transfer of ownership of the Real Estate Properties to **J&F** in a manner that is acceptable to any relevant authority.

**2.3. COMAPI** shall provide **J&F**, or any party indicated by the latter, with all documents necessary for registering the respective definitive purchase and sale deeds for the Real Estate Properties, including all and any current and valid certificates required by relevant authorities.

[stamp:]

**2.4.** By July 30, 2014, **COMAPI** shall grant **J&F**, or any party indicated by the latter, the respective definitive purchase and sale deeds for the Real Estate Properties, with all documents necessary to execute the transfer of the real estate properties to **J&F**, or any party indicated by the latter, free and clear of any encumbrances, onus, pledges, disputes, debts, litigation, legal and/or conventional mortgages, taxes and fees in arrears.

**2.5.** In order to fulfill the provisions of Clause 2.4 above, **COMAPI** hereby irrevocably and irreversibly constitutes **J&F** as its agent, under the terms of articles 653 to 691 of the Civil Code, with all powers, including subagency, to perform and execute the definitive transfer of the Real Estate Properties, including, but not limited to, any actions before trade boards, real estate registry offices, including powers to request certificates from tax authorities, including, but not limited to, the Federal Inland Revenue Service and the Federal Ministry for Public Affairs.

**2.6.** This Agreement is irrevocable and irreversible and is not subject to any regret clause.

**2.7.** Any omission, silence or tolerance by either Party with regard to the strict performance of the obligations hereunder, or in exercising any of the rights resulting from this Agreement, will not constitute novation or waiver, nor will it affect the rights acquired under this agreement, and the Parties may exercise their rights at any time.

**2.8.** The Parties hereby request and authorize the Notary Public of the relevant Real Estate Registry Office to proceed with all notations, cancelations, registrations and other acts necessary in order to duly register this Agreement.

**2.9.** The Parties, their respective officers, employees or contractors are hereby bound to ensure that any information pertaining to any activities undertaken by each Party that any other Party hereunder may become aware of or have access to in the performance of this Agreement is kept in full and absolute confidentiality, including this Agreement itself, and they may not, under any circumstances, use this information, disclose, reveal, reproduce or provide it to third parties, without prior and express written authorization from the other Party, and in the case of breach of this obligation, the violating Party will be held liable for any loss, damage or legal consequences. For the purposes of this Clause, it is hereby agreed that the Parties' confidential information will not necessarily contain or be accompanied by any confidentiality warnings, which should always be presumed by the receiving Party of the information.

[initials] [initials] [initials] [initials] [initials]

Document digitally signed pursuant to MP No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182

**2.10.** The Parties may modify any of the terms and/or conditions set forth in this Agreement with an amendment to this Agreement signed by all Parties hereto.

**2.11. TINTO** and/or **COMAPI** shall not assign or transfer full or partial execution of the obligations and/or rights under this Agreement to third parties, without prior written authorization from **J&F**, under penalty of termination, by **J&F** of this Agreement, without requiring prior notification to **TINTO** and/or **COMAPI**. Notwithstanding the foregoing, **J&F** may sell, assign, transfer participation or any other firm of transfer all or any part of this Agreement or any interest resulting from it, without the prior knowledge or consent of **TINTO** and/or **COMAPI.**

[stamp:] **2.12.** This Agreement and all the obligations and rights hereunder will bind the Parties, their respective heirs, successors and assignees of any kind, from the date of its signature.

**2.13.** This Agreement is binding on the Parties with regard to the obligations established hereunder, and this Agreement constitutes an extrajudicial executive instrument, under the terms of art. 585, paragraph II of the Code of Civil Procedure. Accordingly, the Parties may require specific performance of the obligations assumed hereunder by the other Party, under the terms of articles 461, 461-A to 466-C and 632 of the Brazilian Code of Civil Procedure or national legislation on the matter.

**2.14.** The Judiciary District of São Paulo-SP is hereby appointed to hear and settle any disputes that may arise from this commitment, with the express waiver of any other venue, however privileged it may be.

In witness whereof, the Parties hereby sign 4 (four) identical copies of the 7 (seven) pages herein, before two witnesses.

São Paulo, June 25, 2014

[initials] [initials] [initials] [initials] [initials]

Document digitally signed pursuant to MP No. 2.200-2, of 08/24/2001
Digitally notarized on 12/16/2014 by CLAUDIO WASSERMAN, included by CLAUDIO WASSERMAN on 12/16/2014
Printed on 02/11/2015 by LEONARDO DE MENEZES CURTY – BACK SIDE BLANK

[QR Code] Electronically signed by: JULIANA ROCCO NUNES – 02/12/2019 7:42:14 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Document number: 19021219433800000000045905182



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**2014.06.25 - Third Share-Transfer Agreement (Portuguese)**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

Dan McCourt

Sworn to before me this
June 29, 2023



Signature, Notary Public

Stamp, Notary Public

DOCUMENTO 25

SÃO PAULO DEMAC

Fl. 77

140

### CONTRATO DE TRANSFERÊNCIA DE COTAS DO BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES E OUTRAS AVENÇAS

A.    **TINTO HOLDING LTDA.,** (atual denominação de BRACOL HOLDING LTDA.), sociedade empresária limitada com sede na Rua 15 de novembro, 200, 15º Andar, Centro, CEP 01013-909, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 01.597.168/0001-99, neste ato representada na forma do seu Contrato Social ("**TINTO**");

B.    **COMAPI AGROPECUÁRIA S.A.,** sociedade por ações com sede na Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53, sala 3, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 53.907.168/0001-01, neste ato representada na forma do seu Estatuto Social ("**COMAPI**");

C.    **J&F INVESTIMENTOS S.A.,** com sede na Cidade de São Paulo, Estado de São Paulo, na Rua General Furtado do Nascimento, 66, Alto de Pinheiros, CEP 05465-070, inscrita no CNPJ/MF sob o nº 00.350.763/0001-62, neste ato representada na forma do seu estatuto social ("**J&F**");

na qualidade de **Interveniente Anuente,**

D.    **FERNANDO ANTONIO BERTIN,** brasileiro, casado, empresário, portador da cédula de identidade RG nº 7.774.333 SSSP SP e inscrito no CPF/MF sob o nº 001.854.238-76, domiciliado na Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53, sala 3, na Cidade de São Paulo, Estado de São Paulo;

E.    **REINALDO BERTIN,** brasileiro, casado, empresário, portador da cédula de identidade RG nº 4.406.782 SSSP SP e inscrito no CPF/MF sob o nº 269.958.678-15, domiciliado na Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53, sala 3, na Cidade de São Paulo, Estado de São Paulo;

F.    **SILMAR ROBERTO BERTIN,** brasileiro, casado, empresário, portador da cédula de identidade RG nº 7.774.321 SSP SP e inscrito no CPF/MF sob o nº 15.751.668-79, domiciliado na Avenida Brigadeiro Faria Lima, 2012, 5º andar, conjunto 53, sala 3, na Cidade de São Paulo, Estado de São Paulo (conjuntamente "**Intervenientes Anuentes**");

e, na qualidade de **Intervenientes Garantidores:**

G.    **JOESLEY MENDONÇA BATISTA,** brasileiro, casado pelo regime da separação total de bens, empresário, portador da carteira de identidade RG nº 967.397 SSP/DF, inscrito no CPF/MF sob o nº 376.842.211-91, com endereço comercial na Cidade de São Paulo, Estado de São Paulo, na Rua General Furtado do Nascimento, 66, Alto de Pinheiros, CEP 05465-070; e

H.    **WESLEY MENDONÇA BATISTA,** brasileiro, casado pelo regime de comunhão parcial de bens, empresário, portador da carteira de identidade RG nº 985.892-SSP/DF e inscrito no

Documento assinado digitalmente conforme MP nº 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, inscrito por CLAUDIO WASSERMAN em 16/12/2014
Impresso em 11/02/2015 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO

SP SAO PAULO DEMAC                                                    FL. 78

CPF/MF sob o n° 364.873.921-20, com endereço comercial na Cidade de São Paulo, Estado de São Paulo, na Avenida Marginal Direita do Tietê, n° 500, Bloco I, 3° andar, Vila Jaguara, CEP 05118-100 (conjuntamente "**Intervenientes Garantidores**").

Sendo "**TINTO**, **COMAPI** e **J&F** denominadas isoladamente "**Parte**" e em conjunto "**Partes**", firmam o presente Contrato de Transferência de Cotas do Bertin Fundo de Investimento em Participações e Outras Avenças ("**CONTRATO**"), nos seguintes termos:

**1. OBJETO E PREÇO**

1.1      A **TINTO** é diretamente titular (i) de 253.249,93482000 (duzentas e cinquenta e três mil e duzentas e quarenta e nove vírgula nove três quatro oito dois zero zero zero) cotas do FIB BERTIN, que representam a totalidade das cotas do **BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES** ("**FIP BERTIN**") de sua titularidade e que, à exceção do penhor de 252.957,50461000 (duzentas e cinquenta e duas mil e novecentas e cinquenta e sete vírgula cinco zero quatro seis hum zero zero zero) cotas em favor do BANCO DO BRASIL S.A., encontram-se totalmente livres e desembaraçadas de ônus, dívidas, dúvidas, litígios e tributos em atraso de qualquer natureza ("**COTAS FIP BERTIN**"); e (ii) da totalidade das ações de emissão da MAFRIP – MATADOURO FRIGORÍFICO RIO PARDO S.A., estabelecida na Rodovia BA 263, km 3, Zona Rural, na Cidade de Itapetinga, Estado da Bahia, inscrita no CNPJ/MF sob o n° 13.818.919/0001-39, livres e desembaraçadas de quaisquer ônus, gravames, encargos, dívidas ou obrigações ("**MAFRIP**"), que é proprietária do imóvel matriculado sob o n° 2.200 ("**Ações MAFRIP**").

1.2.     **COMAPI** é legítima proprietária e possuidora dos seguintes imóveis:

(i)   Parte dos imóveis localizados em Diamantino, Estado do Mato Grosso e registrados perante o Cartório de Registro de Imóveis de Diamantino, no Estado do Mato Grosso, sob os n°s 425 e 25.316;

(ii)  Imóvel localizado em Pimenta Bueno, Estado de Rondônia: o imóvel está em nome da Cooperativa Rodoniense de Carne Ltda., CNPJ 06.042.792/0001-42, matrícula 5.329; e

(iii) Imóvel localizado em Santana do Araguaia, matrículas 3.653 e 1.021.

1.2.1 A **COMAPI** declara que os Imóveis (conforme abaixo definido) se encontram livres e desembaraçados de ônus, gravames, garantias reais, pendências, restrições, litígios, impostos, bem assim que inexistem quaisquer constrições, penhoras, penhores, ônus, gravames, pendências, ordens ou medidas judiciais e/ou administrativas incluindo, mas não se limitando a servidões ou passagem forçadas que possam afetar o objeto desta transação, ou que interfira ou impossibilite o acesso ao mesmo ou o seu uso.

1.3      Pelo valor total de R$ 346.000.000,00 (trezentos e quarenta e seis milhões de reais), doravante o "**Preço Total**". Do "Preço Total" a **J&F** já pagou e a **TINTO** já recebeu o valor de R$12.000.000,00 em 28 de abril de 2014, dando plena geral irrevogável quitação. O saldo remanescente será pago pela **J&F** da forma descrita abaixo:

(A) a **TINTO** neste ato aliena e transfere a **J&F** a totalidade das **COTAS FIP BERTIN**;

Documento assinado digitalmente conforme MP n° 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, incluído por CLAUDIO WASSERMAN em 18/12/2014
Impresso em 11/02/2016 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO



SP. S.\G PAULO  DEMAC                                                        Fl. 79

(B) a **TINTO** neste ato aliena e transfere a totalidade das **Ações MAFRIP** para a **J&F**; e

(C) a **COMAPI** neste ato aliena e transfere à **J&F** ou a quem esta indicar os imóveis identificados na Cláusula 1.2 acima, sendo certo que em relação ao imóvel identificado no item (i) acima, a **COMAPI** aliena e transfere (i) 308,6900 ha do imóvel sob a matrícula nº 425, que deverá ser desmembrado pela **COMAPI** e transferido à **JBS** ou a quem este indicar a seguinte área com confrontações que seguem: tem início no marco denominado M1, meridiano central 57", segue confrontando com Hariberto Keller (sucessor de Renato de Tal), no rumo 17°00' SE e distância de 1.246,26 m até o marco M2, deste segue confrontando com José de Alencar (sucessor de Wanderley Gomes Colhado) no rumo 39°00' SW e distancia de 2.270,28 m até encontrar o marco M3, cravado na margem do Córrego Cajú, deste, segue confrontando com o Córrego Cajú, por vários rumos, tomando a distancia de 1.355,28 m até encontrar o marco M4, cravado na margem do Córrego Caju, deste segue confrontando com Hélio Liber de Oliveira (matrícula 13.370), pelo rumo de 39°00' SW e distancia de 3.061,67 m até encontrar com o marco M1, ponto inicial desta descrição, encerrando-se assim a matrícula em questão, com um perímetro de 7.933,49 m.; e (ii) do imóvel registrado na matrícula nº 25.316, será entregue, pela **COMAPI** à **J&F** ou a quem esta indicar, uma área de metros quadrados, devidamente desmembrada entorno da área da Lagoa de Tratamento ("**Imóveis**")

    1.3.1 R$ 130.000.000,00 (cento e trinta milhões de reais) em dinheiro, em 6 (seis) parcelas, conforme abaixo estabelecido:

(a)    R$ 20.000.000,00 (vinte milhões de reais), com vencimento em 15.09.2014;
(b)    R$ 20.000.000,00 (vinte milhões de reais), com vencimento em 15.12.2014
(c)    R$ 30.000.000,00 (trinta milhões de reais), com vencimento em 15.04.2015;
(d)    R$ 20.000.000,00 (vinte milhões de reais), com vencimento em 15.06.2015;
(e)    R$ 20.000.000,00 (vinte milhões de reais), com vencimento em 15.09.2015; e
(f)    R$ 20.000.000,00 (vinte milhões de reais), com vencimento de 15.12.2015.

    1.3.2 Em garantia do valor estabelecido na Cláusula 1.3.1 acima, a **J&F** emitirá em favor da **TINTO** as seguintes notas promissórias *pro solvendo* avalizadas, nos termos do artigo 897 e seguintes do Código Civil, pelos **Intervenientes Garantidores**: ("**Notas Promissórias**"):

(a)    NP BB 1, com vencimento em 15.09.2014, no valor de R$ 20.000.000,00 (vinte milhões de reais);
(b)    NP BB 2, com vencimento em 15.12.2014, no valor de R$ 20.000.000,00 (vinte milhões de reais);
(c)    NP BB 3, com vencimento em 15.04.2015, no valor de R$ 30.000.000,00 (trinta milhões de reais);
(d)    NP BB 4, com vencimento em 15.06.2015, no valor de R$ 20.000.000,00 (vinte milhões de reais);
(e)    NP BB 5, com vencimento em 15.09.2015, no valor de R$ 20.000.000,00 (vinte milhões de reais); e
(f)    NP BB 6, com vencimento em 15.12.2015, no valor de R$ 20.000.000,00 (vinte milhões de reais)

Documento assinado digitalmente conforme MP nº 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, incluído por CLAUDIO WASSERMAN em 16/12/2014
Impresso em 11/02/2015 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:14
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Número do documento: 19021219433800000000045905182

SP  SAO PAULO  DEMAC

FL 80

1.3.2.1 A **TINTO** deverá descontar referidas Notas Promissórias junto a Instituição Financeira de sua escolha, devendo, com o produto do referido desconto, (i) quitar diretamente o valor da dívida junto ao Banco do Brasil oriunda dos processos nº 1073886-55.2013.8.26.0100 em curso na 40ª Vara Cível do Fórum Central da Comarca da Capital; nº 1077048-58.2013.8.26.0100, em curso na 07ª Vara Cível do Fórum Central da Comarca da Capital; nº 1076097-64.2013.8.26.0100, em curso na 38ª Vara Cível do Fórum Central da Comarca da Capital; e nº 10768286020-13.8.26.0100, em curso na 23ª Vara Cível do Fórum Central da Comarca da Capital ("**Dívida Banco do Brasil**"); e (ii) liberar o penhor que recai sobre as 252.957,50461000 (duzentas e cinquenta e duas mil e novecentos e cinquenta e sete vírgula cinco zero quatro seis hum zero zero zero) quotas de emissão do FIP BERTIN, oferecidas em garantia à referida dívida junto ao Banco do Brasil. É vedado à **TINTO** utilizar o produto do referido desconto referido na Cláusula 1.3.2 acima em finalidade diversa de quitar diretamente a **Dívida Banco do Brasil**, sob pena de nulidade das **Notas Promissórias**.

1.3.2.1.1 Na hipótese da **TINTO** utilizar o produto do referido desconto referido na Cláusula 1.3.2.1 acima em finalidade diversa de quitar diretamente o valor da **Dívida Banco do Brasil**, conforme mencionado na referida cláusula, além do disposto na Cláusula 1.3.2.1 acima, deverá a **TINTO** restituir à **J&F** os valores eventualmente pagos, acrescidos do valor correspondente a 30% (trinta por cento) do **Preço Total**, devidamente corrigido monetariamente pela TR, mais 1% ao mês.

1.3.2.2 O pagamento das 17 parcelas restantes do saldo devedor, no valor de R$ 12.000.000,00, prevista na Cláusula 1.3 do **CONTRATO** está condicionado à comprovação, pela **TINTO** à **J&F**, (i) da quitação da dívida perante o Banco do Brasil; e (ii) da liberação do penhor das 252.957,50461000 (duzentas e cinquenta e duas mil e novecentos e cinquenta e sete vírgula cinco zero quatro seis hum zero zero zero) quotas de emissão do **FIP BERTIN**, oferecidas em garantia à referida dívida junto ao Banco do Brasil, nos termos da Cláusula 1.3.2.1 acima.

1.3.2.2.1 Em garantia do pagamento estabelecido na Cláusula 1.3.2.2 acima, a **J&F** emitirá em favor da **TINTO**, em até 5 (cinco) dias úteis da data do aperfeiçoamento das condições suspensivas estabelecidas nos itens (i) e (ii) da Cláusula 1.3.2.2 acima, notas promissórias *pro solvendo* avalizadas, nos termos do artigo 897 e seguintes do Código Civil, pelos **Intervenientes Garantidores**.

1.4 O saldo do preço será quitado mediante 17 (dezessete) parcelas em espécie, mensais, fixas e consecutivas no valor de R$ 12.000.000,00 (doze milhões de reais), desde que cumpridas às obrigações previstas nas Cláusulas 1.2.1 e 1.2.2 (incluindo suas subcláusulas) deste instrumento, sendo a primeira parcela com vencimento em 28.12.2014 e as demais terão vencimento sempre a cada 30 (trinta) dias, contados do vencimento da parcela imediatamente anterior, observada a condição suspensiva prevista na Cláusula 1.3.2.2 acima.

1.5 A TINTO e a COMAPI comprometem-se a disponibilizar à **J&F** cópia das matrículas atualizadas dos Imóveis em até 5 (cinco) dias úteis da data deste Contrato.

2.  **DISPOSIÇÕES GERAIS**

Documento assinado digitalmente conforme MP nº 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, incluído por CLAUDIO WASSERMAN em 16/12/2014
Impresso em 11/02/2015 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO

Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:14
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Número do documento: 19021219433800000000045905182

SP SÃO PAULO DEMAC                                                                    Fl. 81

2.1 Uma vez pago, pela **J&F** o **Preço Total**, a **TINTO**, a **COMAPI** e os **Intervenientes Anuentes** outorgam em favor da **J&F** a mais ampla, geral, rasa e irrevogável quitação em relação à aquisição, pela **J&F**, das **COTAS FIP BERTIN**, das **Ações MAFRIP** e dos **Imóveis**, para nada mais reclamar a qualquer título e/ou tempo.

2.2 A **COMAPI** obriga-se a entregar para a **J&F**, ou a quem esta indicar, documentação comprobatória dos poderes de representação, ou qualquer documento necessário a viabilizar e efetivar a transferência da propriedade dos Imóveis para a **J&F** em forma que seja aceitável por qualquer autoridade competente.

2.3 A **COMAPI** obriga-se a entregar para **J&F**, ou a quem esta indicar, todos os documentos que forem necessários para a lavratura das respectivas escrituras definitivas de compra e venda dos Imóveis, compreendendo toda e qualquer certidão exigida pelas autoridades competentes, devidamente válidas e em vigor.

2.4 Até o dia 30 de julho de 2014 a **COMAPI** deverá outorgar à **J&F** ou a quem esta indicar as respectivas escrituras definitivas de compra e venda dos Imóveis, com todos os documentos necessários para a regular transferência dos Imóveis para **J&F** ou a quem esta indicar, livre e desembaraçados de quaisquer ônus, penhoras, dúvidas, dívidas, litígios, hipotecas legal e/ou convencional, impostos e taxas em atraso.

2.5 Para fins do cumprimento do disposto na Cláusula 2.4 acima, a **COMAPI** constitui a **J&F** em mandatária, nos termos dos artigos 653 a 691 do Código Civil, em caráter irrevogável e irretratável, com todos os poderes, inclusive de substabelecimento, para realizar e concretizar a transferência definitiva dos Imóveis, incluindo, mas não limitado, perante juntas comerciais, cartórios de registro de imóveis, incluindo poderes para requerer a expedição de certidões perante autoridades fiscais, incluindo, mas não limitado, a Receita Federal do Brasil e a Procuradoria Geral da União.

2.6 O Contrato é firmado em caráter irrevogável e irretratável, não comportando cláusula de arrependimento.

2.7 Qualquer omissão, silêncio ou tolerância de qualquer das Partes em exigir o estrito cumprimento das obrigações ora contratadas, ou em exercer quaisquer direitos decorrentes deste Contrato, não constituirá novação ou renúncia, nem afetará o direito adquirido por força deste contrato, podendo exercê-lo a qualquer tempo.

2.8 As Partes, desde já, requerem e autorizam o Sr. Oficial do Registro de Imóveis competente, proceder a todas as averbações, cancelamentos, registros e demais atos necessários para o perfeito registro do presente Contrato.

2.9 As Partes, desde já, obrigam-se, por prazo indeterminado, por si, por seus diretores, funcionários ou pessoal contratado, a guardar o mais completo e absoluto sigilo em relação a toda e quaisquer informações relacionada às atividades das Partes, das quais uma venha a ter conhecimento ou acesso em razão do cumprimento do presente Contrato, incluindo o próprio Contrato, não podendo, sob qualquer pretexto, utilizá-las para si, divulgar, revelar, reproduzir ou delas dar conhecimento a terceiros, sem a prévia e expressa autorização por escrito da outra Parte, responsabilizando-se, em caso de descumprimento dessa obrigação assumida, por eventuais

Documento assinado digitalmente conforme MP nº 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, incluído por CLAUDIO WASSERMAN em 16/1
2/2014
Impresso em 11/02/2015 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO



Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:14
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905182
Número do documento: 19021219433800000000045905182

SP SAO PAULO DEMAC                                                                    FL 82

perdas e danos e demais cominações legais. Fica desde já convencionado que, para efeitos do disposto nesta Cláusula, as informações confidenciais das Partes não conterão ou virão acompanhadas necessariamente de qualquer tipo de advertência de confidencialidade, devendo tal característica ser sempre presumida pela Parte receptora da informação.

2.10 As Partes somente poderão modificar quaisquer termos e/ou condições previstas neste Contrato mediante aditivo a este Contrato assinado por todas as Partes.

2.11 É vedado à **TINTO** e/ou à **COMAPI** ceder ou transferir a terceiros a execução total ou parcial das obrigações e/ou direitos decorrentes do presente Contrato, sem a prévia autorização por escrito da J&F, sob pena de rescisão, pela J&F, deste Contrato, sem que haja necessidade de prévia notificação à **TINTO** e/ou à **COMAPI**. Não obstante, a **J&F** poderá vender, ceder, conceder participação ou de qualquer outro modo transferir toda ou qualquer parte do presente Contrato ou qualquer interesse daí decorrente, sem o prévio conhecimento ou consentimento da **TINTO** e/ou à **COMAPI**.

2.12 Este Contrato e todas as obrigações e direitos por ele conferidos obriga suas Partes, bem como seus respectivos herdeiros, sucessores e cessionários a qualquer título, a partir da data de sua assinatura.

2.13 O Contrato é vinculante às Partes com relação às obrigações aqui estabelecidas, constituindo este Contrato um título executivo extrajudicial, nos termos do art. 585, inciso II do Código de Processo Civil. Neste sentido, as Partes poderão requerer a execução específica das obrigações aqui assumidas pela outra Parte, nos termos dos artigos 461, 461-A ao 466-C e 632 do Código de Processo Civil Brasileiro, ou da legislação de regência sobre o tema.

2.14. Fica eleito o Foro da Comarca de São Paulo-SP, para conhecer e dirimir quaisquer dúvidas decorrentes deste compromisso, com expressa renúncia de qualquer outro por mais privilegiado que seja ou venha a ser.

E, assim, por estarem justas e contratadas, as Partes firmam o presente Contrato, que contém 07 (sete) laudas, em 04 (quatro) vias de igual teor, juntamente com duas testemunhas.

São Paulo, 25 de junho de 2014.

Documento assinado digitalmente conforme MP nº 2.200-2 de 24/08/2001
Autenticado digitalmente em 15/12/2014 por CLAUDIO WASSERMAN, Incluído por CLAUDIO WASSERMAN em 15/12/2014
Impresso em 11/02/2015 por LEONARDO DE MENEZES CURTY - VERSO EM BRANCO



# Exhibit 6

## SHARE TRANSFER AGREEMENT OF
## BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES AND OTHER COVENANTS

A. **TINTO HOLDING LTDA.** (current name BRACOL HOLDING LTDA.), a limited company with registered office at Rua 15 de novembro, 200, 15th floor, Centro, Postal Code 01013-905, in the city of Sao Paulo, State of Sao Paulo, registered in the CNPJ/MF [Corporate Taxpayer Registry/Ministry of Finance] under no. 01.597.168/0001-99, hereby represented in the form of its articles of incorporation, hereinafter referred to as "**TINTO**";

B. **J&F INVESTIMENTOS S.A.**, with registered office in the city of Sao Paulo, State of Sao Paulo, at Rua General Furtado do Nascimento, 66, Alto de Pinheiros, Postal Code 05465-070, registered in the CNPJ/MF under no. 00.350.763/0001-62, hereby represented in the form of its articles of association ("**J&F**"); and

C. **JBS S.A.**, open company with registered office in the city of Sao Paulo, State of Sao Paulo, at Avenida Marginal Direita do Tiete, no. 500, Block I, 3rd floor, Vila Jaguara, Postal Code 05118-100, registered in the CNPJ/MF under no. 02.916.265/0001-60, hereby represented in the form of its articles of association ("**JBS**");

and, as Consenting Participant,

D. **BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES**, investment fund for holdings in the form of a closed-end fund, registered in the CNPJ/MF under no. 11.369.979/0001-06, hereby represented in the form of its regulations by the administrator **SOCOPA - SOCIEDADE CORRETORA PAULISTA S.A.**, joint stock company authorized by the Brazilian Securities Commission ("**CVM**"), for the professional exercise of securities management, with registered office at Avenida Brigadeiro Faria Lima, no. 1,355, 3rd floor, in the city of Sao Paulo, State of Sao Paulo, registered in the CNPJ/MF under no. 62.285.390/0001-40 and by the manager **RIVIERA GESTORA DE RECURSOS LTDA.**, limited company authorized by the CVM for the professional exercise of securities portfolio management, with registered office at Avenida Brigadeiro Faria Lima, no. 1,355, 2nd floor, in the city of Sao Paulo, State of Sao Paulo, registered in the CNPJ/MF under no. 07.611.259/0001-18, hereinafter "**FIP BERTIN**"; and

Whereby **TINTO, J&F** and **JBS**, hereby referred to individually as "**Party**" and jointly as "**Parties**", sign this Share Transfer Agreement of Bertin Fundo de Investimento em Participações and Other Covenants, hereinafter the "**Agreement**", under the following terms:

[initials]

## 1. <u>PURPOSE AND PRICE</u>

1.1. **TINTO** is the holder of 253,249.93482000 (two hundred fifty-three thousand, two hundred forty-nine point nine three four eight two zero zero zero) shares of **FIB BERTIN**, which represent the totality of the shares of **FIB BERTIN** that it holds and that, with the exception of the pledge of 252,957.50461000 (two hundred fifty-two thousand, nine hundred fifty-seven point five zero four six one zero zero zero) shares in favor of **BANCO DO BRASIL S.A.** in the transaction described in Clause 2.1.1 of the Agreement, are fully free and disencumbered of burdens, debts, doubts, disputes and taxes in arrears of any nature (hereinafter the "**<u>FIP BERTIN SHARES</u>**").

1.2. **TINTO** hereby alienates and transfers all **FIP BERTIN SHARES** to **J&F** for the total value of R$ 620,000,000.00 [handwritten:] circled, initials, *Total value* (six hundred twenty million reais), hereinafter the "**<u>Total Price</u>**", which shall be paid by **J&F** to **TINTO**, in accordance with the conditions precedent defined in Clause 2 of the Agreement, as follows:

1.2.1. R$ 130,000,000.00 (one hundred thirty million reais) through the Partial Debt Assumption with Banco do Brasil S.A., whereby this assumption must occur within 90 (ninety) days after the date of the Agreement, releasing **TINTO** from any and all obligation related to the cited debt. [hw:] *130m BB*

1.2.2. Said portion of debt is negotiated by **TINTO**, with Banco do Brasil, in the following parameters: start of payments in March 2014, with 7 (seven) years for payment, with maturity of 1 (one) year, updated by TR, plus 1% (one percent) per month or 12% (twelve percent) per year. [hw:] *7x* [ILLEGIBLE] *14 TR + 1%/m 12%*; *MONTHLY OR ANNUALLY*]

1.2.2.1. In the event of an outstanding balance of debts indicated in Clause 1.2.1. being, at the time of assumption, different from the amount of R$ 130,000,000.00 (one hundred thirty million reais), the Parties agree that: (i) if the difference is less, **J&F** shall pay this difference directly to **TINTO** in 5 business days and, if it is more, **TINTO** shall be responsible for the payment of this difference, with Banco do Brasil.

1.2.2.2. In the event that Banco do Brasil, for reasons attributable to the latter, within the period established for the start of payments (March 2014), does not accept this debt assignment, **J&F** is obligated to transfer to **TINTO**, on a monthly basis, the value agreed to above so that it complies with the agreement, on its own behalf, with Banco do Brasil, until the acceptance has effectively taken place.

[initials]

[ILLEGIBLE] Bertin SA\Notifications Bertin\Share purchase and sale FIP Bertinvest\Bertin transfer [ILLEGIBLE], version of Nov 9, 201[ILLEGIBLE] clean version.docx

1.2.2.3. The values and obligations defined in this item 1.2.1 have a base date of September 1, 2013.

1.2.3. R$ 60,000,000.00 (sixty million reais), to be paid directly to **BANCO PINE S.A.**, a financial institution with registered office and forum in the city of Sao Paulo, State of Sao Paulo, at Avenida das Nações Unidas no. 8501, 29th and 30th floors, Business Tower Building, Pinheiros, Postal Code 05.425-070, registered in the CNPJ/MF under no. 62.144.175/0001-20, specifically for (i) the acquisition of **FAZENDA ARUANA**, described in Clause 1.2.9 below, whose ownership shall be transferred to JBS S.A., identified above; and (ii) the delivery through Payment in Kind of **FAZENDA SANTA TEREZINHA**, located in the municipality of Santa Terezinha, District of Vila Rica, State of Mato Grosso, to **TINTO** or the party indicated by the latter, all within the period of 90 (ninety) days after the signing of this Agreement.
[hw:] *PINE*

1.2.3.1. The indication of the above value is merely an estimate, since the obligation of **J&F** is to acquire the rural property identified above from **BANCO PINE S.A.** and transfer it to JBS S.A., in addition to the delivery in Payment in Kind of **FAZENDA SANTA TEREZINHA**, whereby any change in the purchase price of said properties with **BANCO PINE S.A.**, upward or downward, shall be borne exclusively by **J&F**, which cannot claim or assert anything based on any change in price.

1.2.3.2. If the period of 90 (ninety) days established in item 1.2.3 has elapsed and **J&F** has not purchased the property for which it is obligated to deliver to **TINTO** through payment in kind (Fazenda Santa Terezinha), **J&F** must make the payment in cash in the amount of R$ 30,000,000.00 (thirty million reais) to **TINTO**, within the maximum period of 90 (ninety) days from the start of the expiration of the first period of 90 (ninety) days indicated in item 1.2.3.

1.2.4. 30 (thirty) installments in cash, monthly, fixed and consecutive, each installment in the amount of R$ 12,000,000.00 (twelve million reais), whereby the first installment is due in 5 (five) business days from when the last of the following events occurs, which must occur cumulatively: (i) the delivery of the petition for withdrawal from litigation, duly authenticated, referred to in Clause 2.2 of the Agreement; and (ii) the record of order for registration of transfer of the **FIP BERTIN SHARES** to **J&F**; and all others shall always mature every 30 (thirty) days, from the maturity of the immediately previous installment.
[hw:] ~~30~~ *25 x 12m START? 2014*

[initials]

1.2.5. 2 (two) installments, in the individual amount of R$ 35,000,000.00 (thirty-five million reais) each, fixed, one to be paid by **April 5, 2014** and the other to be paid by **July 5, 2014**, for a total of R$ 70,000,000.00 (seventy million reais).
[hw:] *2 x 35 1ˢᵗ 4/5/14 2ⁿᵈ 7/5/14*

1.2.6. In the event of a delay in the payment of any installment of the amounts indicated in Clause 1.2.4 and following, greater than 30 (thirty) days, or non-compliance with the defined obligations, **within the established timeframes**, the early maturity of all remaining installments and all cited amounts shall be declared, whereby **TINTO** may enforce in court, without the need for any notification, the total amount owed by **J&F.**

1.2.7. **J&F** shall make the payments referred to in Clause 1.2.4 and following, when in cash, in the bank account that TINTO indicates in writing, via notification or email. The bank transfer receipts shall serve as proof of payment and general, full and unrestricted discharge given by TINTO to **J&F.**

> 1.2.7.1. In the event of non-payment or non-compliance with the obligation, on the designated dates of any installment of the obligation referred to in Clause 1.2.4, default interest of 1% (one percent) per month, as well as the default fine of 2% (two percent) shall apply to the amounts owed, or the outstanding balance.

1.2.8. **TINTO** hereby authorizes **FIP BERTIN** to record and update all cadastral data, in order to record **J&F** as the holder of the **FIP BERTIN SHARES**. To this end, **TINTO** hereby names and appoints **J&F** as agent, under the terms of Articles 653 to 691 of Law no. 10,406 of January 10, 2002 (hereinafter the "**Civil Code**"), irrevocably and irretractably, with all powers, including that of sub-establishment, to execute and consummate the transfer of the **FIP BERTIN SHARES** on behalf of **J&F.**

> 1.2.8.1. The ability of **J&F** to proceed with the alteration of the cadastral data of **FIP BERTIN**, transferring the **FIP BERTIN SHARES** to its name, may only be executed after the express and written agreement of **BANCO DO BRASIL**, with the transfer of the holding of 252,957.50461000 (two hundred fifty-two thousand, nine hundred fifty-seven point five zero four six one zero zero zero) shares of **FIP BERTIN** (hereinafter "**FIP BERTIN ENCUMBERED SHARES**"), once the **ENCUMBERED FIP BERTIN**

[initials]

**SHARES** are encumbered by pledge in favor of that financial institution, to guarantee the debt described in Clause 1.2.1.

1.2.8.2. The transfer of ownership of the **ENCUMBERED FIP BERTIN SHARES** shall not affect the pledge that is made on them, for the benefit of **BANCO DO BRASIL**, such that **J&F** shall receive the **ENCUMBERED FIP BERTIN SHARES** with the pledge that guarantees the debt of **TINTO** with **BANCO DO BRASIL**, duly described in Clause 1.2.1.

1.2.9. For the purposes of Clause 1.2.3, **FAZENDA ARUANA** is composed of the following real estate assets:

i.    Lot IV: Fazenda Rainha do Sudoeste, registered in register no. 5,275, Book 2-AC, Folio 017 (with continuation recorded in Book 2-AG, folio 004), in the Property Registry Office of the District of Aruana/GO, with a total area of 247.86 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

ii.    Lot VII: Fazenda Bouganville, registered in register no. 5,277, Book 2-AC, folio 19 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of Aruana/GO, with a total area of 242.00 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

iii.    Lot I: Fazenda Bimbique – I, registered in register no. 5,278, Book 2-AC, folio 020 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 343.64 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

iv.    Lot Part IV: Fazenda Bimbique, registered in register no. 5,285, Book 2-AC, folio 027 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 38.72 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

[initials]

v.      Fazenda Recreio: registered in register no. 4,128, Book 2-U, folio 166 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of Aruana, with a total area of 435.600 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

vi.     Fazenda Lambari and Lagoa Bonita: registered in register no. 4,141, Book 2-U, folio 179 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 339.6134 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

vii.    Fazenda 2 Netas: registered in register no. 5,274, Book 2-AC, folio 16 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of Aruana/GO, with a total area of 222.6400 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

viii.   Fazenda Planicie: registered in register no. 5,276, Book 2-AC, folio 18 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 242.0000 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

ix.     Fazenda Planura: registered in register no. 5,279, Book 2-AC, folio 021 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 280.7200 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

x.      Fazenda 3 Irmaoes: registered in register no. 5,280, Book 2-AC, folio 022 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 261.3600 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

xi.     Fazenda Madalena Menezes: registered in register no. 5,281, Book 2-AC, folio 23 (with continuation registered in Book 2-AL, file 001), with the Property Registry Office of the

[initials]

District of Aruana/GO, with a total area of 215.3800 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

xii.   Fazenda Primavera: registered in register no. 1,537, Book 2-8, folio 159, with the Property Registry Office of the District of Aruana/GO, with a total area of 145.2000 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

xiii.   Fazenda Primavera: registered in register no. 1,538, Book 2-8, folio 160, with the Property Registry Office of the District of Aruana/GO, with a total area of 48.40 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

1.2.9.1. The areas of the properties indicated above are presented merely for indicative purposes, whereby **TINTO** declares that until the signature date of the Agreement, no alteration or modification has occurred in the respective registers of these properties with respect to their areas.

## 2. CONDITIONS PRECEDENT

2.1. A condition precedent for the payment of the Total Price by **J&F** shall be the delivery by **TINTO** to **J&F** or to the party indicated by **J&F**, of a declaration or declarations signed and with recognized signatures, certifying and acknowledging the exclusive and full liability of **TINTO** with respect to federal and state taxes owed by **TINTO** in relation to the generating events that occurred up until January 1, 2008, regardless of whether such taxes are subject to audits or infraction proceedings, hereinafter the "**Bertin Tax Liability**", exempting **J&F** and any company connected to or controlled by **J&F** from any type of liability for the Bertin Tax Liability and undertaking to indemnify **J&F** or any company connected to or controlled by **J&F** for the Bertin Tax Liability. These declarations must be signed with recognized signatures, including by the controlling shareholders of **TINTO,** and shall be irrevocable, irretractable, shall not expire and may be used by **J&F** before any relevant authority, at the administrative or judicial level, including through the delivery and filing in pending administrative or judicial tax proceedings in relation to the Bertin Tax Liability.

2.2. Only for purposes of the installment of the Total Price referred to in Clause 1.2.3, a condition precedent of payment is the presentation by **TINTO** to **J&F** of the authenticated petition for withdrawal

[initials]

from litigation involving the **FIP BERTIN SHARES**, without prejudice to the obligation of **J&F** to comply with the provisions of Clauses 1.2.1 and 1.2.3.

## 3. <u>TRANSFER OF OWNERSHIP OF PROPERTIES TO JBS</u>.

3.1. Within the term of 180 (one hundred eighty) days from the signing of the Agreement, **TINTO** undertakes to deed to **JBS** definitive ownership of the following properties and corporate interests, acquired by **BERTIN S.A.** (company whose shares were incorporated by **JBS S.A.** on December 29, 2009), and, in addition, hereby grants power of attorney through a public instrument to **JBS**, or to the party indicated by **JBS**, granting it broad powers with third parties and relevant authorities, including but not limited to property registry offices, boards of trade and ministries of finance, for the purpose of transferring on behalf of **JBS** definitive ownership of the following properties, completely free and disencumbered of any type of burden or lien, of any nature, including but not limited to fiduciary alienation, mortgage, pledge, inventory, seizure or unavailability, hereinafter the "**<u>Properties</u>**" and of the corporate interest indicated in Clause 3.1.3:

> **I – Property in the Municipality of Aruana, State of Goias:**
> I.      Fazenda Terra Rocha: registered in register no. 4,642, Book 2-Y, folio 176 (with continuation registered in Book 2-AJ, folio 040), with the Property Registry Office of the District of Aruana/GO, with a total area of 196.0200 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;
>
> II.      Fazenda Terra Rocha: registered in register no. 6,580, Book 2-AJ, folio 041 (with continuation registered in Book 2-AL, folio 001), with the Property Registry Office of the District of Aruana/GO, with a total area of 4.8400 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;
>
> III.      Plot of land, part of lot no. 22, of the judicial division of the Lambari or Lagoa Bonita property, registered in register no. 8,856, Book 2-AL, file 001, with the Property Registry Office of Aruana/GO, with a total area of 193.6000 hectares, belonging to the company COMAPI AGROPECUARIA LTDA, registered in the CNPJ under 53.907.341/0001-01;

[initials]

IV.   Property located in Estancia Velha, State of Rio Grande do Sul: the property is registered with the Property Registry Office of the District of Estancia Velha, State of Rio Grande do Sul, in register no. 16,551, Book 2 of the General Registry, folio 1, whereby the area belongs to Buffalo Beneficiamento de Couros Ltda., registered in the CNPJ under 88.250.3110001-50.

V.    Part of the properties located in Diamantino, State of Mato Gross: part of the properties registered with the Property Registry Office of Diamantino, in the State of Mato Grosso, under nos. 425 and 25,316, whereby: (i) 308.6900 hectares of the property under Register 425 shall be dismembered, by Comapi, for delivery to XLK or to the party indicated by the latter of the following area with the following borders: it starts at the marker called M1, south central 57º, it continues bordering with Hariberto Keller (successor of Renato de Tal), in course 39º00' SW and a distance of 2,270.28 m until meeting marker M3, set in the margin of Borrego Caju, continuing to border with Corrego Caju, through various courses, totaling the distance of 1,355.28 m until meeting marker M4, set in the margin of Corrego Caju, continuing to border with Helio Liber de Oliveira (register 13,370), by the course of 39º00' SW and a distance of 3,061.67 m until meeting with marker M1, the initial point of this description, thus closing the register in question, with a perimeter of 7,933.49 m; (ii) of Register 25,316, an area of square meters, duly dismembered around the area of the Treatment Pool, shall be delivered by COMAPI.

VI.   Properties located in Guaicara, State of Sao Paulo: the properties are recorded with the Property Registry Office of the District of Lins, State of Sao Paulo, under registration no. 28,468, Book 2-EY and under registration no. 22,610, Book 2-DS, both belonging to the company Bracol Holding Ltda, registered in the CNPJ under 01.597.168/0001-99 and register 28,157, with the following description: comprising an area of 17,281.00 m2 or 1.7281 hectares or 0.7141 Sao Paulo bushels of land, located in Agua Branca borough, in the municipality of Guaicara, District of Lins, State of Sao Paulo, with the following

[initials]

measurements and borders: it starts at picket 01 with course N23º08'W, at a distance of 178.30 meters until picket C, bordering the Municipal Road that connects the city of Guaicara to Agua Branca borough (currently Avenida Paulo Xavier Ribeiro), then continues with course S68º17'W at a distance of 183.00 meters until picket E, bordering with Register 22,610, owned by Tinto Holding Ltda, then continues with course S23º08'E at a distance of 9.83 meters until picket 23A, bordering with Glebe A of this register, then continues with course S69º33'E at a distance of 249.89 meters until the initial point, that is, picket 01, bordering with Register 21,814, owned by Tinto Holding Ltda.

VII.     **Properties located in Lins, State of Sao Paulo**: the **Properties** are registered in the Property Registry Office of Lins, State of Sao Paulo, under register nos. 5,554, 14,651, 24,577, 33,795, 33,796, 33,797, 33,798 and 33,799, respectively, whereby register nos. 5,554, 14,651 and 24,547 (part) were absorbed by register 33,797, by virtue of the rememberment, and also, that part of the property of register 24,547 was dismembered and remembered to the property of register 33,796; and that other portions of the property of register 24,577 were dismembered and remembered to the properties of registers no. 33,798 and 33,799.

VIII.    Properties located in Mozarlandia, State of Goias: the properties are in the name of Comapi e Reivo Participações Ltda., a company with registered office in the city of Sao Paulo, State of Sao Paulo, at Avenida Brigadeiro Faria Lima, no. 2012, 82nd floor, block 81, Jardim Paulistano, registered in the CNPJ under nos. 53.907.341/0001-01 ("Comapi") and 03.370.190/0001-2 ("Reivo"), are registered in the Property Registry Office of the District of Mozarlandia, State of Goias, under register nos. 394, Book 2B, folio 98 (with continuation registered in Book 2RG, file 01), with an area of 10 bushels and 2,909, Book 2RG, file 01, with an area of 134.78 hectares.

IX.      Properties located in Sao Luis de Montes Belos, State of Goias: the properties are in the name of BERTIN LTDA, registered in the CNPJ under 01.597.168/0001-99 and are registered with the Property Registry Office of the District of Sao Luis de Montes Belos, State of Goias, under register nos. 7,392, Book 3-D, folio 105/106, with a total area of

[initials]

30.11.20 (thirty hectares, eleven ares and twenty centiares) and 8,363, Book 2-V, folio 254, with a total area of 3,645.25 m2.

X.      Property located in Pimenta Bueno, State of Rondonia, register 5,329, property in the name of Cooperativa Rodoniense de Carne Ltda, CNPJ 06.042.792/0001-42.

3.1.1. **TINTO** declares that if there is a finding of any moveable or fixed asset that appears in the incorporation and that is not mentioned among the items above, it shall be obligated to transfer said asset, insofar as this fact is required and proven.

3.1.2. **TINTO** certifies the delivery of the properties in the exact descriptions referred to above, being obligated for them insofar as necessary.

3.1.3. In addition to the properties listed above, **TINTO** undertakes to deliver to **J&F**, or to the party indicated by the latter, within the same term granted for the transfer of the Properties, the shares of **MAFRIP – MATADOURO FRIGORIFICO RIO PARDO S.A.**, established at Rodovia BA 263, km 3, Rural Zone, in the city of Itapetinga, State of Bahia, registered in the CNPJ/MF under no. 13.818.919/0001-39 ("**MAFRIP**"), which is the owner of the property registered under no. 2,200, Book 2-G, whereby it shall assign all rights, moveable and fixed assets according to the signature in the Share Transfer Book and Share Register Book of **MAFRIP.**

3.1.4. **TINTO** also undertakes to dismember 20% of the area intended for the Legal Reserve of the Aruana Confinement, cited in item 1.2.9, which is recorded in Register 1089, also of that District, in the name of Comapi Agropecuaria S.A., and delivery to **JBS** or to the party indicated by the latter.

3.2. **TINTO** undertakes to deliver to **J&F**, to **JBS**, or to the party indicated by **J&F** in writing, as decided by **J&F**, powers of attorney for public or private instruments, with documentation proving the powers of representation, of all legal and natural persons who appear as owners of any of the **Properties** or of the corporate interest indicated in Clause 3.1.3, in a form that is acceptable to any relevant authority, including but not limited to property registry offices, title and document offices, tax and treasury authorities, including those tied to prosecutor's offices or district attorney's offices, in order to enable and execute the definitive transfer of ownership of the **Properties** to **JBS.**

[initials]

3.3. The obligation of **TINTO** ends with the delivery of the documentation suitable for the recording of the agreements for the transfer of full ownership of the **Properties** and corporate interest referred to in Clause 3.1.3, provided that there is no requirement, contingency or encumbrance under the responsibility of **TINTO** or a company, legal or natural person directly or indirectly connected to **TINTO**, which prevents the transfer of full ownership of the **Properties** and of the corporate interest indicated in Clause 3.1.3 on behalf of **JBS** or the party indicated by **J&F** or **JBS**. The execution of the registrations in the relevant offices and the payment of all expenses, including tax-related, is the exclusive responsibility of **J&F** and **JBS**. Any delay in the execution of the registrations of said contracts, even if resulting from an event not attributable to **J&F** or **JBS**, cannot be attributed to **TINTO**, provided that said delay does not result from an act or event attributable to **TINTO** or to a legal or natural person directly or indirectly connected to **TINTO.**

3.4. For purposes of compliance with the provisions of Chapter 3, **TINTO** appoints **J&F** and **JBS** as agents, under the terms of Articles 653 to 691 of the Civil Code, irrevocably and irretractably, with all powers, including that of sub-establishment, to execute and consummate the definitive transfer of ownership of the **Properties** and of the corporate interest indicated in Clause 3.1.3 to **JBS**, including but not limited to with property registry offices, including powers to request the issuance of certificates with tax authorities, including but not limited to the Federal Revenue Office of Brazil and the Federal Prosecutor's Office.

3.5. **TINTO** undertakes to deliver to **JBS** or to the party indicated by **JBS**, any and all certificate, whereby those issued by tax authorities necessarily negative or positive with the effect of rejection, if required by the relevant authorities, duly valid and in force, to enable and consummate the definitive transfer of ownership of the **Properties** and of the corporate interest indicated in Clause 3.1.3 on behalf of **JBS** or the party indicated by **J&F** or **JBS.**

> 3.4.1. In the event that **TINTO** or a legal or natural person directly or indirectly connected to **TINTO** is unable to issue certificates due to contingencies of any nature, **TINTO** undertakes to take all measures suitable for the issuance of these certificates in order to comply with the provisions of this agreement.

## 4. GUARANTEES – SURETY AND PROMISSORY NOTES.

4.1. All obligations of **J&F** resulting from Clause 1.2.4 of the Agreement shall be guaranteed as joint and several debtors and primary payors, Joesley Mendonca Batista, Brazilian, businessman, holder of identity card no. 967.397 SSP/DF, registered in the CPF/MF [Individual Taxpayer Registry/Ministry of Finance] under no. 376.842.211-91, married under the total separate of assets regime, and Wesley Mendonca

[initials]

Batista, Brazilian, businessman, holder of identity card no. 989.892-SSP/DF and registered in the CPF/MF under no. 364.873.921-20, married under the mandatory separation of assets regime ("Guarantors"). The Guarantors expressly waive the benefits of Arts. 827, 834, 835 and 838 of the Civil Code.

4.2. The Guarantors also present, as a guarantee, 30 (thirty) promissory notes, with an equivalent value indicated in Clause 1.2.4 of the Agreement, which are attached to the Agreement in the form of **Annex I – Promissory Notes.**

## 5. <u>GENERAL PROVISIONS</u>

5.1. The Agreement is signed on an irrevocable and irretractable basis, not containing any waiver clause.

5.2. Any omission, silence or tolerance of any of the Parties in demanding strict compliance with the obligations contracted herein, or in exercising any rights resulting from this Agreement, shall not constitute a novation or waiver, nor shall it affect the right acquired under this agreement, whereby it may be exercised at any time.

5.3. The Parties hereby undertake for themselves, for their executives, officers or contracted personnel, to maintain the most complete and absolute confidentiality in relation to any and all information related to the activities of the Parties, of which they come into contact or access based on the execution of this Agreement, including the Agreement itself, whereby they may not under any pretext utilize such information for themselves, divulge, reveal, reproduce or provide such information to third parties, without the prior and express written authorization of the other Parties, being liable, in the event of non-compliance with this obligation assumed herein, for losses and damages and all other legal consequences.

> 5.3.1. Confidential information may be disclosed by the Parties: (a) if there is express and written authorization of the other Parties; or (b) to any governmental authority, provided that it is required and mandatory by applicable law through the express written notification or notice in this sense, a situation in which the party who received such notification or notice must immediately inform the other Party, so that the other Party can take any judicial measures to prevent the disclosure of the information before the expiration of the deadline for compliance with said notification or notice.

> 5.3.2. It is hereby agreed that, for the purposes of the provisions of this Clause 5.3, the confidential information of the Parties shall not contain or be accompanied necessarily by any

[initials]

type of confidentiality warning, whereby this characteristic must always be presumed by the Party receiving the information.

5.3.3. In any event, the Parties may utilize the provisions of the Agreement, or the non-compliance with any obligation defined in the Agreement, or also the termination, end or rescission of the Agreement for any reason, to justify or support any type of action involving the ownership or value of the **FIP BERTIN SHARES** in transactions or operations executed prior to the signing of the Agreement. In case of non-compliance with the provisions of this Clause 5.3.3, the violating Party hereby acknowledges that said use of the provisions of the Agreement constitutes bad faith litigation and hereby waives any and all right related to the complaint filed, especially related to the ownership and/or value of the **FIP BERTIN SHARES** in transactions or operations executed prior to the signing of the Agreement.

5.4. The Parties may only amend any terms and/or conditions defined in this Agreement through an amendment to this Agreement signed by all Parties.

5.5. The Parties are prohibited from assigning or transferring this Agreement, in all or in part, to third parties, without the prior and express written consent of the other Party.

5.6. This Agreement and all obligations and rights conferred by it obligate its Parties, as well as their respective heirs, successors and assignees for any reason, starting from its signature date.

5.7. This Agreement is binding on the Parties in relation to the obligations established herein, whereby this Agreement constitutes an extrajudicial enforceable title, under the terms of Art. 585, subsection 11 of the Code of Civil Procedure. In this sense, the Parties may request the specific execution of the obligations assumed herein by the other Party, under the terms of Articles 461, 461-A to 466-C and 632 of the Brazilian Code of Civil Procedure, or the legislation governing this matter.

5.8. Exclusively for the purposes of recording and transfer of the **FIP BERTIN SHARES** or of other shares of **FIP BERTIN** potentially received by **J&F**, the value of [·] per share of **FIP BERTIN** is established, whereby the bookkeeping agent of **FIP BERTIN** is authorized to take the suitable measures defined in the governing legislation mandatory to this end.

5.8.1. The Parties declare and acknowledge as valid and concrete the recording of the **FIP BERTIN SHARES** in the form of Clause 1.2.7, waiving any right or action against the

[initials]

bookkeeping agent or administrator of **FIP BERTIN** as it concerns the recording of the transfer of the **FIP BERTIN SHARES** or of shares of **FIP BERTIN** in accordance with the governing legislation.

5.8.2. The Parties declare and acknowledge that they are aware and duly informed by the bookkeeping agent and administrator of **FIP BERTIN** of all implications resulting from the Agreement, having nothing to claim or demand from the bookkeeping agent or administrator of **FIP BERTIN** with respect to the duties of information and fiduciary duties of the bookkeeping agent and administrator of **FIP BERTIN** resulting from the Agreement.

5.9. The Forum of the District of Sao Paulo, State of Sao Paulo, is elected to hear and resolve any disputes resulting from this commitment, with the express waiver of any other forum, however privileged it is or comes to be.

6. J&F and JBS declare that they are aware of the history of all registrations listed in items 1.2.8 and 3.1, their characteristics and current status of their registrations, through the reading of the updated certificates that accompany this agreement.

And, as such, as they are in agreement, the Parties sign the Agreement on 3 (three) copies of equal content, along with two witnesses.

Sao Paulo, November 18, 2013.

[signature page follows]

[initials]

[ILLEGIBLE] Bertin SA\Notifications Bertin\Share purchase and sale FIP Bertinvest\Bertin transfer [ILLEGIBLE], version of Nov 9, 201[ILLEGIBLE] clean version.docx

[stamp:] [ILLEGIBLE]

*(this signature page is an integral part and continuation of the Agreement)*

Menezes Office [signature]
Pirapora do Bom Jesus (SP)
[signature]
**J&F INVESTIMENTOS S.A.**

Menezes Office [signature]
Pirapora do Bom Jesus (SP)
[signature]
**JBS S.A.**

39th Civil Registry Office
[signature]
**TINTO HOLDING LTDA.**

_____
**BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES**

As Guarantors:

Menezes Office [signature]
Pirapora do Bom Jesus (SP)
[signature]
**WESLEY MENDONCA BATISTA**

Menezes Office [signature]
Pirapora do Bom Jesus (SP)
[signature]
**JOESLEY MENDONCA BATISTA**

Witnesses:

| | |
|---|---|
| 1. [signature] | 1. [signature] |
| Name: [ILLEGIBLE] | Name: |
| General Registry: [hw:] *44.447.534.9* | General Registry: |
| CPF: [hw:] *365.746.628.96* | CPF: |



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**2013.11.18 - Cessao Quotas FIP Bertin - Tinto para JF**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.



_____
Dan McCourt

Sworn to before me this
July 18, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

## CONTRATO DE TRANSFERÊNCIA DE COTAS DO
### BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES E OUTRAS AVENÇAS

A.   **TINTO HOLDING LTDA.** (atual denominação de BRACOL HOLDING LTDA.), sociedade empresária limitada com sede na Rua 15 de novembro, 200, 15º Andar, Centro, CEP 01013-905, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 01.597.168/0001-99, neste ato representada na forma do seu Contrato Social, doravante denominada **"TINTO"**;

B.   **J&F INVESTIMENTOS S.A.**, com sede na Cidade de São Paulo, Estado de São Paulo, na Rua General Furtado do Nascimento, 66, Alto de Pinheiros, CEP 05465-070, inscrita no CNPJ/MF sob o nº 00.350.763/0001-62, neste ato representada na forma do seu estatuto social (**"J&F"**); e

C.   **JBS S.A.**, companhia aberta com sede na Cidade de São Paulo, Estado de São Paulo, na Avenida Marginal Direita do Tietê, nº 500, Bloco I, 3º andar, Vila Jaguara, CEP 05118-100, inscrita no CNPJ/MF sob o nº 02.916.265/0001-60, neste ato representada na forma do estatuto social (**"JBS"**);

e, na qualidade de Interveniente Anuente,

D.   **BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES**, fundo de investimento em participações sob a forma de condomínio fechado, inscrito no CNPJ/MF sob o nº 11.369.979/0001-96, neste ato representado na forma do seu regulamento pelo administrador **SOCOPA - SOCIEDADE CORRETORA PAULISTA S.A.**, sociedade por ações autorizada pela Comissão de Valores Mobiliários (**"CVM"**) para o exercício profissional de administração de valores mobiliários, com sede na Avenida Brigadeiro Faria Lima, nº 1.355, 3º andar, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 62.285.390/0001- 40, e pelo gestor **RIVIERA GESTORA DE RECURSOS LTDA.**, sociedade empresária limitada autorizada pela CVM para o exercício profissional de gestão de carteira de valores mobiliários, com sede na Avenida Brigadeiro Faria Lima, nº 1.355, 2º andar, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 07.611.259/0001-18, doravante **"FIP BERTIN"**; e,

Sendo **TINTO**, **J&F** e **JBS** denominadas isoladamente **"Parte"** e em conjunto **"Partes"**, firmam o presente Contrato de Transferência de Cotas do Bertin Fundo de Investimento em Participações e Outras Avenças, doravante o **"Contrato"**, nos seguintes termos:

## 1. OBJETO E PREÇO

1.1.    **TINTO** é titular de 253.249,93482000 (duzentas e cinquenta e três mil e duzentas e quarenta e nove vírgula nove três quatro oito dois zero zero zero) cotas do **FIB BERTIN**, que representam a totalidade das cotas do **FIB BERTIN** de sua titularidade e que, à exceção do penhor de 252.957,50461000 (duzentas e cinquenta e duas mil e novecentos e cinquenta e sete vírgula cinco zero quatro seis hum zero zero zero) cotas em favor do **BANCO DO BRASIL S.A.** na operação descrita na Cláusula 2.1.1 do Contrato, encontram-se totalmente livres e desembaraçadas de ônus, dívidas, dúvidas, litígios e tributos em atraso de qualquer natureza (doravante as "**COTAS FIP BERTIN**").

1.2.    **TINTO** neste ato aliena e transfere a totalidade das **COTAS FIP BERTIN** para a **J&F** pelo valor total de R$620.000.000,00 (seiscentos e vinte milhões de reais), doravante o "**Preço Total**", que será pago pela **J&F** para a **TINTO**, observadas as condições suspensivas previstas na Cláusula 2 do Contrato, da seguinte forma:

1.2.1.    R$ 130.000.000,00 (cento e trinta milhões de reais) pela Assunção Parcial de Dívida junto ao Banco do Brasil S.A., sendo certo que essa assunção deverá ocorrer em até 90 (noventa) dias após a data do Contrato, liberando a **TINTO** de toda e qualquer obrigação referente a citada dívida.

1.2.2.    Referida parcela da dívida está negociada pela **TINTO**, junto ao Banco do Brasil, nos seguintes parâmetros: início dos pagamentos em março de 2014, com 07 (sete) anos para pagamento, com carência de 01 (um ano), atualizado pela TR, mais 1% (um por cento) ao mês ou 12% (doze por cento) ao ano.

1.2.2.1.    Na hipótese do saldo devedor em aberto das dívidas indicadas na Cláusula 1.2.1 ser, no momento da assunção, diferente do montante de R$ 130.000.000,00 (cento trinta milhões de reais), as Partes acordam que: (i) se a diferença se der para menos a **J&F** pagará esta diferença diretamente a **TINTO** em 05 dias uteis e, se para cima, a **TINTO** se responsabilizará pelo pagamento desta diferença, junto ao Banco do Brasil.

1.2.2.2.    Na hipótese de o Banco do Brasil, por razões dele, dentro do prazo pactuado para inicio dos pagamentos (março 2014), não aceitado a presente cessão de divida, a **J&F** obriga-se a repassar mês a mês à **TINTO** o valor acima pactuado para que ela cumpra o acordo, em seu próprio nome, junto ao Banco do Brasil, até que efetivamente haja o aceite.



1.2.2.3.    Os valores e obrigações previstos neste item 1.2.1. têm como data base o dia 1º de setembro de 2013.

1.2.3.  R$ 60.000.000,00 (sessenta milhões de reais), a serem pagos diretamente ao **BANCO PINE S.A.**, Instituição Financeira com sede e foro na cidade de São Paulo, Estado de São Paulo, na Avenida das Nações Unidas nº 8501, 29º e 30º andar, Eld. Business Tower, Pinheiros, CEP 05.425-070, inscrito no CNPJ/MF sob nº 62.144.175/0001-20, especificamente para (i) a aquisição da **FAZENDA ARUANÃ**, descrita na Cláusula 1.2.9 abaixo, cuja propriedade será transferida para a JBS S.A., acima qualificada e (ii) a entrega por Dação em Pagamento da **FAZENDA SANTA TEREZINHA**, situado no município de Santa Terezinha, Comarca de Vila Rica, Estado de Mato Grosso, para a **TINTO** ou quem esta indicar, tudo no prazo de ate 90 (noventa) dias após a assinatura deste Contrato.

1.2.3.1.    A indicação do valor acima é meramente estimativa, pois a obrigação da **J&F** é a de adquirir o imóvel rural acima referido junto ao **BANCO PINE S.A.** e transferi-lo para JBS S.A., além da entrega em Dação em Pagamento da **FAZENDA SANTA TEREZINHA**, sendo certo que qualquer variação no preço de aquisição das referidas fazendas junto ao **BANCO PINE S.A.**, para maior ou para menor, será arcada exclusivamente pela **J&F,** que nada poderá reclamar ou pretender em razão de eventual variação do preço.

1.2.3.2.    Decorrido o prazo de 90 (noventa) dias avençado no item 1.2.3, e não havendo a compra pela **J&F** do imóvel pela qual se obriga em entregar a **TINTO** por dação em pagamento (Fazenda Santa Terezinha), deverá a **J&F** realizar o pagamento em espécie do valor de R$ 30.000.000,00 (trinta milhões de reais) para a **TINTO**, no prazo máximo de 90 (noventa) dias iniciados do vencimento do primeiro prazo de 90 (noventa) dias indicados no item 1.2.3.

1.2.4.  30 (trinta) parcelas em espécie, mensais, fixas e consecutivas, cada parcela no valor de R$12.000.000,00 (doze milhões de reais), sendo que a primeira parcela é devida em 05 (cinco) dias úteis contados do que ocorrer por último dos seguintes fatos, que devem ocorrer cumulativamente: (i) a entrega de petição de desistência do litígio, devidamente protocolada, a que se refere à Cláusula 2.2 do Contrato, e (ii) o protocolo de ordem para registro da transferência das **COTAS FIP BERTIN** para o nome da **J&F;** e as demais terão vencimento sempre a cada 30 (trinta) dias, contados do vencimento da parcela imediatamente anterior.

1.2.5. 02 (duas) parcelas, no valor individual de R$ 35.000.000,00 (trinta e cinco milhões) cada uma, fixas, uma a ser paga ate o dia **05 de abril de 2014** e outra a ser paga ate o dia **05 de julho de 2014**, perfazendo o total de R$ 70.000.000,00 (setenta milhões de reais).

1.2.6. Em caso de atraso no pagamento de qualquer parcela dos valores indicados na Cláusula 1.2.4 e seguintes, superior a 30 (trinta) dias, ou não cumprimento das obrigações previstas, **nos prazos avençados**, será declarado o vencimento antecipado de todas as parcelas remanescentes e de todos os valores referidos, podendo a **TINTO** executar judicialmente, sem necessidade de qualquer notificação, a totalidade do valor devido pela **J&F**.

1.2.7. A J&F realizará os pagamentos a que se referem a Cláusula 1.2.4 e seguintes, quando em espécie, na conta corrente que a TINTO indicar de forma escrita, via notificação ou email. Os comprovantes da transferência bancária servirão como prova de pagamento e quitação geral, plena e irrestrita dada pela TINTO para a **J&F**.

1.2.7.1. Na hipótese de não pagamento ou não cumprimento da obrigação, nas datas designadas de qualquer parcela das obrigações referidas na Cláusula 1.2.4, incidirá sobre os valores devidos, ou saldo devedor, juros de mora de 1% (um por cento) ao mês, bem como multa moratória de 2% (dois por cento).

1.2.8. A **TINTO**, desde já, autoriza que o **FIP BERTIN** registre e atualize todos os dados cadastrais, de modo a constar a **J&F** como a titular das **COTAS FIP BERTIN**. Para este fim, **TINTO** neste ato nomeia e constitui a **J&F** como mandatária, nos termos dos artigos 653 a 691 da Lei nº 10.406, de 10 de janeiro de 2002 (doravante o "**Código Civil**"), em caráter irrevogável e irretratável, com todos os poderes, inclusive de substabelecimento, para realizar e concretizar a transferência das **COTAS FIP BERTIN** em nome da **J&F**.

1.2.8.1. A possibilidade da J&F de proceder à alteração dos dados cadastrais do **FIP BERTIN**, transferindo as **COTAS FIP BERTIN** para a sua titularidade, somente poderá ser realizada após a expressa e escrita concordância do **BANCO DO BRASIL** com a transferência da titularidade de 252.957,50461000 (duzentas e cinquenta e duas mil e novecentas e cinquenta e sete virgula cinco zero quatro seis hum zero zero zero) cotas do **FIP BERTIN** (doravante "**COTAS FIP BERTIN ONERADAS**"), uma vez que as **COTAS FIP BERTIN ONERADAS** estão oneradas por penhor em favor

daquela instituição financeira, para garantir a dívida descrita na Cláusula 1.2.1.

1.2.8.2.    A transferência da propriedade das **COTAS FIP BERTIN ONERADAS** não afetará o penhor que sobre elas recai, em benefício do **BANCO DO BRASIL,** de modo que a **J&F** receberá as **COTAS FIP BERTIN ONERADAS** com o penhor que garante dívida da **TINTO** junto ao **BANCO DO BRASIL,** devidamente descrita na Cláusula 1.2.1.

1.2.9. Para os fins da Cláusula 1.2.3, a **FAZENDA ARUANÃ** é composta pelos seguintes bens imóveis:

i.    Quinhão IV: Fazenda Rainha do Sudoeste, inscrita na matrícula nº 5.275, Livro 2-AC, Fls. 017 (com continuação registrada no Livro 2-AG, fls. 004), no Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 247,86 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

ii.    Quinhão VII: Fazenda Bouganville, inscrita na matrícula nº 5.277, Livro 2-AC, fls. 19 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis de Aruanã/GO, com área total de 242,00 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

iii.    Quinhão I: Fazenda Bimbique - I, inscrita na matrícula nº 5.278, Livro 2-AC, fls. 020 (com continuação registrada no Livro 2-AL, ficha 001, perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 343,64 há, pertencente à empresa COMPAI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

iv.    Quinhão Parte IV: Fazenda Bimbique, inscrita na matrícula nº 5.285, Livro 2-AC, fls. 027 (com continuação registrada no Livro 2-AL, ficha 001), perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO com área total de 38,72 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

v.     Fazenda Recreio: inscrita na matrícula nº 4.128, Livro 2-U, fls. 166 (com continuação registrada no Livro 2-AL, ficha 001), perante Cartório de Registro de Imóveis de Aruanã, com área total de 435,600 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

vi.     Fazenda Lambari e Lagoa Bonita: inscrita na matrícula nº 4.141, Livro 2-U, fls. 179 (com continuação registrada no Livro 2-AL, ficha 001), perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO com área total de 339,6134 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

vii.     Fazenda 2 Netas: inscrita na matrícula nº 5.274, Livro 2-AC, fls. 16 (com continuação registrada no Livro 2-AL, Ficha 001), no Cartório de Registro de Imóveis de Aruanã/GO, com área total de 222,6400 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

viii.     Fazenda Planície: inscrita na matrícula nº 5.276, Livro 2-AC, fls. 18 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 242,0000 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

ix.     Fazenda Planura: inscrita na matrícula nº 5.279, do Livro 2-AC, fls. 021 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 280,7200 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

x.     Fazenda 3 Irmãos: inscrita na matrícula nº 5.280, do Livro 2-AC, fls. 022 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 261,3600 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

xi.     Fazenda Madalena Menezes: inscrita na matrícula nº 5.281, do Livro 2-AC, fls. 23 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis da Comarca de

Aruanã/GO, com área total de 215,3800 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

xii.     Fazenda Primavera: inscrita na matrícula nº 1.537, do Livro 2-8, fls. 159, perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 145,2000 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

xiii.    Fazenda Primavera: inscrita na matrícula nº 1.538, Livro 2-8, fls. 160, perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 48,40 há, pertencente à empresa COMAPI     AGROPECUÁRIA     LTDA,     registrada     no     CNPJ 53.907.341/0001-01;

1.2.9.1.    As áreas dos imóveis acima indicados são apresentadas de forma meramente enunciativa, sendo que **TINTO** declara não ter ocorrido até a data de assinatura do Contrato qualquer alteração ou modificação nas respectiva matrículas desses imóveis relativamente às suas áreas.

## 2. DAS CONDIÇÕES SUSPENSIVAS

2.1.    Será considerada como condição suspensiva para o pagamento do Preço Total pela **J&F**, a entrega pela **TINTO** para a **J&F** ou para quem a **J&F** indicar, de declaração ou declarações assinadas e com firmas reconhecidas, atestando e reconhecendo a responsabilidade exclusiva e integral da **TINTO** relativamente a tributos federais e estaduais devidos pela **TINTO** relativamente a fatos geradores ocorridos até 01 de janeiro de 2008, independentemente de tais tributos serem objeto de fiscalização ou de autos de infração, doravante o **"Passivo Tributário Bertin"**, isentando a **J&F** e qualquer empresa ligada ou controlada pela **J&F** de qualquer tipo de responsabilidade pelo Passivo Tributário Bertin e obrigando-se a indenizar a **J&F** ou qualquer empresa ligada ou controlada pela **J&F** pelo Passivo Tributário Bertin. Essas declarações deverão ser assinadas com firmas reconhecidas, inclusive, pelos sócios controladores da **TINTO**, e serão irrevogáveis, irretratáveis, não terão prazo de validade e poderão ser usadas pela **J&F** perante qualquer autoridade competente, em nível administrativo ou judicial, inclusive mediante entrega e juntada em processos fiscais administrativos ou judiciais em andamento relativamente ao **Passivo Tributário Bertin**.

2.2.    Somente para fins da parcela do Preço Total a que se refere a Cláusula 1.2.4, é condição suspensiva de pagamento a apresentação pela **TINTO** para a **J&F** de petição

protocolada da desistência do litígio envolvendo as **COTAS FIP BERTIN**, sem prejuízo da obrigação da **J&F** em cumprir o disposto nas Cláusulas 1.2.1 e 1.2.3.

3. **TRANSFERÊNCIA DA PROPRIEDADE DE IMÓVEIS PARA A JBS.**

3.1. No prazo de 180 (cento e oitenta) dias contados da assinatura do Contrato, a **TINTO** obriga-se a escriturar para a **JBS**, a propriedade definitiva dos seguintes imóveis e participações societárias, adquiridos pela **BERTIN S.A.** (empresa cujas ações foram incorporadas pela **JBS S.A.** em 29 de dezembro de 2009), e, além disso, neste ato outorga procuração ato outorga procuração por instrumento público para a **JBS**, ou a quem a **JBS** indicar, conferindo-lhe amplos poderes perante terceiros e autoridades competentes, inclusive, mas não limitado, a cartórios de registros de imóveis, juntas comerciais e secretarias da fazenda, com a finalidade para transferir em nome da **JBS**, a propriedade definitiva dos seguintes imóveis, totalmente livres e desembaraçados de qualquer tipo de ônus ou gravame, de qualquer natureza, inclusive, mas não limitado, de alienação fiduciária, hipoteca, penhora, arrolamento, arresto ou indisponibilidade, doravante os **"Imóveis"** e da participação societária indicada na Cláusula 3.1.3:

### I – Imóvel no Município de Aruanã, Estado Goiás:

I.  Fazenda Terra Rocha: inscrita na matrícula nº 4.642, do Livro 2-Y, fls. 176 (com continuação registrada no Livro 2-AJ, fls. 040), perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 196,0200 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

II.  Fazenda Terra Rocha: inscrita na matrícula nº 6.580, do Livro 2-AJ, fls. 041 (com continuação registrada no Livro 2-AL, ficha 001) perante o Cartório de Registro de Imóveis da Comarca de Aruanã/GO, com área total de 4,8400 há, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

III.  Área de terras, parte do quinhão nº 22, da divisão judicial do imóvel Lambari ou Lagoa Bonita, inscrita na matrícula nº 8.856, Livro 2-AL, ficha 001, perante o Cartório de Registro de Imóveis de Aruanã/GO, com área total de 193,6000 ha, pertencente à empresa COMAPI AGROPECUÁRIA LTDA, registrada no CNPJ 53.907.341/0001-01;

IV.  Imóvel localizado em Estância Velha, Estado do Rio Grande do Sul: o Imóvel está registrado perante o Ofício de Registro de Imóveis da Comarca de Estância Velha, Estado do Rio Grande do Sul, sob a matrícula nº 16.551, Livro 2 de Registro Geral, fls. 1, sendo que a área é pertencente à Buffalo Beneficiamento de Couros Ltda, inscrita no CNPJ 88.250.311/0001-50.

V.  Parte dos imóveis localizados em Diamantino. Estado do Mato Grosso: parte dos Imóveis registrados perante o Cartório de Registro de Imóveis de Diamantino, no Estado do Mato Grosso, sob os nºs 425 e, 25 316. sendo que: (i) 308,6900 há do imóvel Matricula 425 será desmembrado, pela Comapi, para entrega à XLK ou a quem este indicar a seguinte área com confrontações que seguem: tem início no marco denominado M1, meridiano central 57°, segue confrontando com Hariberto Keller (sucessor de Renato de Tal), no rumo 17°00' SE e distância de 1.246,26 m até o marco M2, deste segue confrontando com José de Alencar (sucessor de Wanderley Gomes Colhado), no rumo 39°00' SW e distancia de 2.270,28 m até encontrar o marco M3, cravado na margem do Córrego Cajú, deste, segue confrontando com o Córrego Cajú, por vários rumos, somando a distancia de 1.355,28 m até encontrar o marco M4, cravado na margem do Córrego Cajú, deste segue confrontando com Hélio Liber de Oliveira (matrícula 13.370), pelo rumo de 39°00' SW e distancia de 3.061,67 m até encontrar com o marco M1, ponto inicial desta descrição, encerrando-se assim a matrícula em questão, com um perímetro de 7.933,49 m.; (ii) da Matrícula 25.316, será entregue uma área de metros quadrados, devidamente desmembrados entorno da área da Lagoa de Tratamento, pela COMAPI.

VI.  Imóveis localizados em Guaiçara, Estado de São Paulo: os Imóveis estão registrados perante o Cartório de Registro de Imóveis da Comarca de Lins, Estado de São Paulo, sob a matrícula nº 28.468, Livro 2-EY e sob a matrícula nº 22.610, Livro 2-DS, ambas pertencente à empresa Bracol Holding Ltda, inscrita no CNPJ 01.597.168/0001-99 e matrícula 28.157 com a seguinte descrição: compreendendo uma área de 17.281,00m² ou 1,7281 hectares ou 0,7141 alqueires paulista de terras, situado no bairro Água Branca, no município de Guaiçara, Comarca de Lins, Estado de São Paulo, com as seguintes medidas e confrontações: tem início no piquete

01 com rumo N23°08'W, na distância de 178,30 metros até o piquete C, confrontando com a Estrada de Rodagem Municipal que liga a cidade de Guaiçara ao bairro Água Branca (atualmente Avenida Paulo Xavier Ribeiro), daí segue com rumo S68°17'W na distância de 183,00 metros até o piquete E, confrontando com a Matrícula 22.610, propriedade de Tinto Holding Ltda, daí segue rumo S23°08'E na distância de 9,83 metros até o piquete 23A, confrontando com a Gleba A dessa matricula, daí segue rumo S69°33'E na distância de 249,89 metros até o ponto inicial, ou seja, piquete 01, confrontando com a Matrícula 21.814, propriedade de Tinto Holding Ltda.

VII.  **Imóveis localizados em Lins, Estado de São Paulo:** os **Imóveis** estão registrados no Cartório de Registro de Imóveis de Lins, Estado de São Paulo, sob as matrículas nºs 5.554, 14.651, 24.577, 33.795, 33.796, 33.797, 33.798 e 33.799, , respectivamente, sendo que as matrículas nºs 5.554, 14.651 e 24.547 (parte) foram absorvidas pela matrícula 33.797, em virtude de remembramento, e, ainda, que parte do imóvel da matrícula 24.547, foi desmembrado e remembrado ao imóvel da matrícula 33.796; e que outras porções do imóvel da matrícula 24.577 foi desmembrada e remembrada aos imóveis das matrículas nºs 33.798 e 33.799.

VIII.  Imóveis localizados em Mozarlândia, Estado de Goiás: os Imóveis estão em nome da Comapi e Reivo Participações Ltda., empresa com sede na Cidade de São Paulo, Estado de São Paulo, na Avenida Brigadeiro Faria Lima, nº 2012, 82 andar, cj. 81, Jardim Paulistano, inscritas nos CNPJs sob o nº 53.907.341/0001-01 ("Comapi") e 03.370.190/0001-2 ("Reivo") estão registrados no Cartório de Registro de Imóveis da Comarca de Mozarlândia, Estado de Goiás, sob as matrículas nºs 394, Livro 2B, fls. 98 (com continuação registrada no Livro 2RG, ficha 01) com área de 10 alqueires e 2.909, Livro 2 RG, ficha 01, com área de 134,78 há.

IX.  Imóveis localizados em São Luis de Montes Belos, Estado de Goiás: os Imóveis estão em nome de BERTIN LTDA, inscrita no CNPJ 01.597.168/0001-99, e estão registrados perante o Cartório de Registro de Imóveis da Comarca de São Luis de Montes Belos, Estado de Goiás, sob as matrículas nº s 7.392, Livro 3-D, fls.

105/106, com área total de 30.11.20 (trinta hectares, onze ares e vinte centiares) e 8.363, Livro 2-V, fls. 254, com área total de 3.645,25 m².

X. Imóvel localizado em Pimenta Bueno, Estado de Rondonia, matricula 5.329, imóvel que esta em nome da Cooperativa Rodoniense de Carne Ltda, CNPJ 06.042.792/0001-42.

3.1.1. A **TINTO** declara que havendo constatação de qualquer bem móvel ou imóvel que conste da incorporação havida e que não esteja mencionado entre os itens acima, se obrigará na transferência deles, assim que requerida e comprovado tal fato.

3.1.2. A **TINTO** atesta a entrega dos imóveis nas extadas descrições acima referidas, obrigando-se por elas no que for necessário.

3.1.3. Além dos imóveis relacionados acima, a **TINTO** obriga-se a entregar à **J&F**, ou a quem esta indicar, no mesmo prazo concedido à transferência dos **Imóveis**, as ações da **MAFRIP – MATADOURO FRIGORÍFICO RIO PARDO S.A.**, estabelecida na Rodovia BA 263, km 3, Zona Rural, na Cidade de Itapetinga, Estado da Bahia, inscrita no CNPJ/MF sob o nº 13.818.919/0001-39 ("**MAFRIP**"), que é proprietária do imóvel matriculado sob o nº 2.200, Livro 2-G, devendo ceder todos os direitos, ativos móveis e imóveis conforma assinatura no Livro de Transferência de Ações e Livro de Registro de Ações da **MAFRIP**.

3.1.4. Obriga-se, ainda, a **TINTO**, no desmembramento de 20% de área destinada à Reserva Legal do Confinamento de Aruanã, citado no item 1.2.9, que esta averbada na Matricula 1089, também daquela Comarca, em nome de Comapi Agropecuária S.A., e entrega à **JBS** ou a quem ela indicar.

3.2. A **TINTO** obriga-se a entregar para a **J&F**, para a **JBS**, ou a quem a **J&F** indicar por escrito, conforme decidido pela **J&F**, procurações por instrumentos públicos ou privados, com documentação comprobatória dos poderes de representação, de todas as pessoas jurídicas e físicas que constem como proprietária de qualquer um dos **Imóveis** ou das participação societária indicada na Cláusula 3.1.3, em forma que seja aceitável por qualquer autoridade competente, inclusive, mas não limitado, a cartórios de registro de imóveis, cartórios de títulos e documentos, autoridades fiscais e fazendárias, inclusive ligadas à procuradorias ou promotorias, de modo a viabilizar e efetivar a transferência definitiva da propriedade dos **Imóveis** para a **JBS**.

3.3.   A obrigação da **TINTO** encerra-se com a entrega da documentação hábil à averbação dos contratos de transferência da propriedade plena dos **Imóveis** e da participação societária a que se refere a Cláusula 3.1.3, desde que não exista qualquer exigência, pendência ou gravame de responsabilidade da **TINTO** ou de empresa, pessoa jurídica ou pessoa física ligada direta ou indiretamente à **TINTO**, que impeça a transferência da propriedade plena dos **Imóveis** e da participação societária indicada na Cláusula 3.1.3 em nome da **JBS** ou de quem a **J&F** ou a **JBS** indicar. A realização dos registros nos cartórios competentes e o pagamento de todas as despesas, inclusive tributárias, cabem exclusivamente à **J&F** e à **JBS**. Eventual demora na realização dos registros dos referidos contratos, ainda que decorrente de fato não imputável à **J&F** ou à **JBS** não poderá ser imputada à **TINTO**, desde que tal demora não decorra de ato ou fato imputável à **TINTO** ou à pessoa jurídica ou física ligada direta ou indiretamente à **TINTO**.

3.4.   Para fins de cumprimento do disposto no Capítulo 3, a **TINTO** constitui a **J&F** e a **JBS** em mandatárias, nos termos dos artigos 653 a 691 do Código Civil, em caráter irrevogável e irretratável, com todos os poderes, inclusive o de substabelecimento, para realizar e concretizar a transferência definitiva da propriedade dos **Imóveis** e da participação societária indicada na Cláusula 3.1.3 para a **JBS**, inclusive, mas não limitado, perante cartórios de registro de imóveis, incluindo poderes para requerer a expedição de certidões perante autoridades fiscais, incluindo, mas não limitado, a Receita Federal do Brasil e a Procuradoria Geral da União.

3.5.   A **TINTO** obriga-se a entregar para a **JBS** ou para quem a **JBS** indicar, toda e qualquer certidão, sendo aquelas emitidas por autoridades fiscais necessariamente negativas ou positivas com efeito de negativa, se exigidas pelas autoridades competentes, devidamente válidas e em vigor, para viabilizar e concretizar a transferência definitiva da propriedade dos **Imóveis** e da participação societária indicada na Cláusula 3.1.3 em nome da **JBS** ou de quem a **J&F** ou a **JBS** indicar.

   3.4.1.   Caso a **TINTO** ou pessoa jurídica ou física ligada direta ou indiretamente à **TINTO**, não puder emitir certidões por conta de pendências de qualquer natureza, a **TINTO** obriga-se a tomar todas as providências cabíveis para a expedição de tais certidões de modo a cumprir o disposto neste contrato.

## 4.   GARANTIAS – FIANÇA E NOTAS PROMISSÓRIAS.

4.1.   Todas as obrigações da **J&F** decorrentes da Cláusula 1.2.4 do Contrato serão garantidas como devedores solidários e principais pagadores, Joesley Mendonça Batista, brasileiro, empresário, portador da carteira de identidade nº 967.397 SSP/DF, inscrito no CPF/MF sob o nº 376.842.211-91 casado pelo regime da separação total de bens e Wesley Mendonça Batista, brasileiro, empresário, portador da carteira de identidade nº 989.892-

SSP/DF e inscrito no CPF/MF sob o n° 364.873.921-20, casado pelo regime da separação obrigatória de bens ("Fiadores"). Os Fiadores expressamente renunciam aos benefícios dos arts. 827, 834, 835 e 838 do Código Civil.

4.2.    Os Fiadores apresentam, ainda, como garantia, 30 (trinta) notas promissórias, equivalente valor indicado na Cláusula 1.2.4. do Contrato, que seguem anexas ao Contrato na forma do **Anexo I – Notas Promissórias**.

## 5.    DISPOSIÇÕES GERAIS

5.1.    O Contrato é firmado em caráter irrevogável e irretratável, não comportando cláusula de arrependimento.

5.2.    Qualquer omissão, silêncio ou tolerância de qualquer das Partes em exigir o estrito cumprimento das obrigações ora contratadas, ou em exercer quaisquer direitos decorrentes deste Contrato, não constituirá novação ou renúncia, nem afetará o direito adquirido por força deste contrato, podendo exercê-lo a qualquer tempo.

5.3.    As Partes, desde já, obrigam-se por si, por seus diretores, funcionários ou pessoal contratado, a guardar o mais completo e absoluto sigilo em relação a toda e quaisquer informações relacionada às atividades das Partes, das quais uma venha a ter conhecimento ou acesso em razão do cumprimento do presente Contrato, incluindo o próprio Contrato, não podendo, sob qualquer pretexto, utilizá-las para si, divulgar, revelar, reproduzir ou delas dar conhecimento a terceiros, sem a prévia e expressa autorização por escrito das outras Partes, responsabilizando-se, em caso de descumprimento dessa obrigação assumida, por perdas e danos e demais cominações legais.

> 5.3.1. As informações confidenciais poderão ser divulgadas pelas Partes: (a) caso exista autorização expressa e escrita das outras Partes; ou (b) a qualquer autoridade governamental, desde que exigido e obrigatório pela lei aplicável mediante notificação ou intimação expressa por escrito nesse sentido, situação na qual a parte que recebeu tal notificação ou intimação deve informar imediatamente a outra Parte, para que esta possa tomar eventuais medidas judiciais para impedir a divulgação da informação antes do decurso do prazo para o cumprimento da referida notificação ou intimação.

> 5.3.2. Fica desde já convencionado que, para efeitos do disposto nesta Cláusula 5.3, as informações confidenciais das Partes não conterão ou virão acompanhadas necessariamente de qualquer tipo de advertência de confidencialidade,

devendo tal característica ser sempre presumida pela Parte receptora da informação.

5.3.3. Em hipótese alguma as Partes poderão utilizar o disposto no Contrato, ou o descumprimento de qualquer obrigação prevista no Contrato, ou ainda a resolução, término ou rescisão do Contrato por qualquer motivo, para fundamentar ou suportar qualquer tipo de ação envolvendo a titularidade ou o valor das **COTAS FIP BERTIN** em transações ou operações realizadas antes da assinatura do Contrato. Em caso de descumprimento do disposto nesta Cláusula 5.3.3, a Parte infratora desde já reconhece que tal utilização do disposto no Contrato configura litigância de má-fé, e desde já renuncia a todo e qualquer direito relativo ao pleito efetuado, especialmente quanto à titularidade e/ou o valor das **COTAS FIP BERTIN** em transações ou operações realizadas antes da assinatura do Contrato.

5.4.    As Partes somente poderão modificar quaisquer termos e/ou condições previstas neste Contrato mediante aditivo a este Contrato assinado por todas as Partes.

5.5.    É vedado às Partes ceder ou transferir este Contrato, no todo ou em parte, a terceiros, sem a prévia e expressa anuência por escrito da outra Parte.

5.6.    Este Contrato e todas as obrigações e direitos por ele conferidos obriga suas Partes, bem como seus respectivos herdeiros, sucessores e cessionários a qualquer título, a partir da data de sua assinatura.

5.7.    O presente Contrato é vinculante às Partes com relação às obrigações aqui estabelecidas, constituindo este Contrato um título executivo extrajudicial, nos termos do art. 585, inciso 11 do Código de Processo Civil. Neste sentido, as Partes poderão requerer a execução específica das obrigações aqui assumidas pela outra Parte, nos termos dos artigos 461, 461-A a 466-C e 632 do Código de Processo Civil Brasileiro, ou da legislação de regência sobre o tema.

5.8.    Exclusivamente para os fins de escrituração e transferência das **COTAS FIP BERTIN** ou de outras cotas do **FIP BERTIN** eventualmente recebidas pela **J&F**, fica estabelecido o valor de [•] por cota do **FIP BERTIN**, ficando o escriturador do **FIP BERTIN** autorizado a tomar as providências cabíveis e previstas na legislação de regência para tal mister.

5.8.1.    As Partes declaram e reconhecem como válida e correta a escrituração das **COTAS FIP BERTIN** na forma da Cláusula 1.2.7, renunciando a qualquer direito ou ação contra o escriturador e o administrador do **FIP BERTIN** no que

diz respeito à escrituração e transferência das **COTAS FIP BERTIN** ou de cotas do **FIP BERTIN** em observância à legislação de regência.

5.8.2. As Partes declaram e reconhecem que estão cientes e devidamente informadas pelo escriturador e administrador do **FIP BERTIN** de todas as implicações decorrentes do Contrato, nada tendo a reclamar ou exigir do escriturador e administrador do **FIP BERTIN** quanto aos deveres de informação e deveres fiduciários do escriturador e administrador do **FIP BERTIN** decorrentes do Contrato.

5.9.    Fica eleito o Foro da Comarca de São Paulo, Estado de São Paulo, para conhecer e dirimir quaisquer dúvidas decorrentes deste compromisso, com expressa renúncia de qualquer outro por mais privilegiado que seja ou venha a ser.

6.  A J&F e JBS declaram que tem conhecimento do histórico de todas as matrículas enunciadas nos itens 1.2.8. e 3.1., suas características e atual status de seus registros, por leitura das certidões atualizadas que acompanham este acordo.

E, assim, por estarem justas e contratadas, as Partes firmam o Contrato, em 3 (três) vias de igual teor, juntamente com duas testemunhas.

São Paulo, 18 de novembro de 2013.



{segue página de assinaturas}



*{esta página de assinaturas é parte integrante e continuação do Contrato}*



**J&F INVESTIMENTOS S.A.**

**JBS S.A.**

**TINTO HOLDING LTDA.**

**BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES**

Na qualidade de Fiadores:



**WESLEY MENDONÇA BATISTA**

**JOESLEY MENDONÇA BATISTA**

Testemunhas:

1. _____
Nome: Werner Stuner
RG: 44.847 034 9
CPF: 365 746.628.26

2. _____
Nome:
RG:
CPF:

# Exhibit 7

Firefox                                                                                                                                      about:srcdoc

 **Redesim - Rede Nacional para a Simplificação do Registro e da Legalização de Empresas e Negócios**

**Corporate Entity Data**

CORPORATE NAME                                                                                        SIZE
**COLORADO INVESTMENT HOLDINGS LLC**                                                **OTHERS**

REGISTRATION NUMBER              ESTABLISHMENT                         INCORPORATION DATE
**33.335.236/0001-38**                     **Main Office**                            **04/11/2019**

CODE AND DESCRIPTION OF CORPORATE ACTIVITY                TITLE OF ESTABLISHMENT (TRADE NAME)
**221-6 – Company Domiciled Abroad**                                   **COLORADO INVESTMENT HOLDINGS LLC**

REGISTRATION STATUS         DATE OF REGISTRATION STATUS     SPECIAL STATUS      DATE OF SPECIAL STATUS
**Active - COMPANY**                                                                           *****                      *******
**DOMICILED ABROAD**       **04/11/2019**

REASON FOR REGISTRATION STATUS


ADDRESS
**3500 SOUTH DUPONT HIGHWAY DELAWARE DE 19901, DOVER, 9707 – EX**

ELECTRONIC ADDRESS                                             TELEPHONE
**GBIOJONE@GMAIL.COM**

CODE AND DESCRIPTION OF THE MAIN ECONOMIC ACTIVITY
**6463-8/00 – Joint venture companies, except holdings**

CODE AND DESCRIPTION OF THE SECONDARY ECONOMIC ACTIVITIES
**None**

Issued by **ANDRE LUIS QUINTAS MONTEIRO (08461815769) on 11/06/2024 at 1:20:42 p.m. (Brasília standard time).**

Source: National Corporate Taxpayer Register [*Cadastro Nacional da Pessoa Jurídica*, CNPJ]



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**CNPJ 33.335.236**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

Jacqueline Yorke

Sworn to before me this
November 13, 2024

Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

Stamp, Notary Public



**Redesim - Rede Nacional para a Simplificação do Registro e da Legalização de Empresas e Negócios**

**Dados da Pessoa Jurídica**

NOME EMPRESARIAL

COLORADO INVESTMENT HOLDINGS LLC

PORTE

DEMAIS

NÚMERO DE INSCRIÇÃO

33.335.236/0001-38

ESTABELECIMENTO

Matriz

DATA DE ABERTURA

11/04/2019

CÓDIGO E DESCRIÇÃO DA NATUREZA JURÍDICA

221-6 - Empresa Domiciliada no Exterior

TÍTULO DO ESTABELECIMENTO (NOME DE FANTASIA)

COLORADO INVESTMENT HOLDINGS LLC

SITUAÇÃO CADASTRAL

Ativa - EMPRESA DOMICILIADA NO EXTERIOR

DATA SITUAÇÃO CADASTRAL

11/04/2019

SITUAÇÃO ESPECIAL

*****

DATA SITUAÇÃO ESPECIAL

********

MOTIVO DE SITUAÇÃO CADASTRAL

ENDEREÇO

3500 SOUTH DUPONT HIGHWAY DELAWARE DE 19901, DOVER, 9707 - EX

ENDEREÇO ELETRÔNICO

GBIOJONE@GMAIL.COM

TELEFONE

CÓDIGO E DESCRIÇÃO DA ATIVIDADE ECONÔMICA PRINCIPAL

6463-8/00 - Outras sociedades de participação, exceto holdings

CÓDIGO E DESCRIÇÃO DAS ATIVIDADES ECONÔMICAS SECUNDÁRIAS

Não consta

Emitido por **ANDRE LUIS QUINTAS MONTEIRO (08461815769)** no dia **06/11/2024** às **13:20:42** (data e hora de Brasília).

**Fonte:** Cadastro Nacional da Pessoa Jurídica (CNPJ).

# Exhibit 8



*MANOEL ANTONIO SCHIMIDT*
**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo - SP - Tel.: (011) 3291-4420**

**LIVRO Nº** 902          **FOLHA** 1          **TRADUÇÃO Nº** **I-213.721/24**

---

I, the undersigned Sworn Translator and Commercial Interpreter, hereby CERTIFY this is the description and faithful translation of a DOCUMENT written in Portuguese, which I translate as follows:

---

*[The following two pages bear the following content as a header]:*

page 8141 *[up to page 8142]*

*[Coat of arms of the COURT OF JUSTICE OF THE STATE OF SÃO PAULO]*

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
JUDICIAL DISTRICT OF SÃO PAULO
CIVIL CENTRAL FORUM
2nd COURT OF BANKRUPTCY AND JUDICIAL REORGANIZATION
Praça João Mendes s/nº, Salas 1813/1815 – 18º andar, Centro – CEP 01501-900,
Phone: (11) 3538-9313, São Paulo-SP - Email: sp2falencias@tjsp.jus.br

*[End of header]* ------------------------------------------------------------------------------

*[Seal]:* DIGITAL SIGNATURE – **TJSP – SAJ**

---

**CONCLUSION**

On October 17. 2024, I make these final records to the Hon. Judge of the 2nd Court of Bankruptcy and Judicial Reorganization, Dr. PAULO FURTADO DE OLIVEIRA FILHO. I, LUCAS MUNIZ BATISTA, Judicial Assistant, *subscribed.*

---

**DECISION**

Case No.:          **1088030-29.2016.8.26.0100**

Class - Subject          **Bankruptcy of Entrepreneurs, Business Companies, Micro and Small Businesses - Judicial Reorganization and Bankruptcy**

Applicant:          **Sl 15 Empreendimentos e Participações S.a.**

Bankrupt (Taxpayer):  **Tinto Holding Ltda**

Judge: Dr. **PAULO FURTADO DE OLIVEIRA FILHO**

Seen.

**Pages 7.870/7.872 (last decision)**

**Pages 7920/7928 (Judicial Administrator), Pages 8017/9024 (Natalino Bertin) and Pages 8140 (JBS):** I accept the reasons set forth by the Judicial

This document has been digitally signed by the signatory(ies) listed in the signature protocol. To validate the signatures, go to: https://sdocs.safeweb.com.br/portal/Validador?publicId=6f1d58e1-5474-4f02-a422-1f099fa1f21a



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

**LIVRO Nº**  902          **FOLHA**  2          **TRADUÇÃO Nº**  I-213.721/24

Administrator, to authorize the amendment of the complaint to be filed by this date in the USA, in order to avoid irreparable damage to the Bankruptcy Estate, since the absence of amendment would result in the extinction of the lawsuit which, if judged to be valid, could provide the Bankruptcy Estate with sufficient resources to satisfy all liabilities.

Considering, on the other hand, that measures are underway in Brazil to equate the tax liability, as well as the assumption, by a third party of the obligation to pay the unsecured liability, this court considers it appropriate that the action filed abroad be suspended or a mediation instituted.

For the time being, without a definitive statement from the Treasury on the modalities of satisfaction of the tax credit and without a careful analysis of the financial and equity situation of the Fund that is willing to pay the bankruptcy liabilities (remembering that documents were presented today without time to conclude with certainty about the Fund's ability to pay),  the most prudent solution is the authorization for the amendment, without prejudice to the Judicial Administrator verifying with the Bankruptcy Estate's lawyers the possibility of suspending the action or initiating a mediation.

Within the period of suspension or mediation, it is confident that the measures aimed at closing this bankruptcy will be finalized with the satisfaction of the creditors, avoiding new expenses, with savings of resources that may revert to the benefit of the creditors.

To the Judicial Administrator, for examination of the clarifications and documents attached by Natalino Bertin.

Be it summoned.

São Paulo, October 17, 2024.

**DOCUMENT DIGITALLY SIGNED UNDER THE TERMS OF LAW
11,419/2006, AS PRINTED ON THE RIGHT MARGIN**

*[The document bears the following content, in its two pages, as footnote]:*
**Case No. 1088030-29.2016.8.26.0100 – p. 1** *[until p. 2]*

This document has been digitally signed by the signatory(ies) listed in the signature protocol. To validate the signatures, go to: https://sdocs.safeweb.com.br/portal/Validador?publicId=6f1d58e1-5474-4f02-a422-1f099fa1f21a

INSCRIÇÃO: RG  3.441.239  -  CPF  346.307.328-53  -  PMSP (ISS)  8.545.237-8  -  IAPAS  110.591.000-74



# *MANOEL ANTONIO SCHIMIDT*

## Tradutor Público e Intérprete Comercial
## Matrícula Nº 490 da Junta Comercial do Estado de São Paulo

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

**LIVRO Nº**   902              **FOLHA**   3              **TRADUÇÃO Nº**   **I-213.721/24**

*[The document bears at the right-side margin the following content]:*
This document is a copy of the original, digitally signed by PAULO FURTADO DE OLIVEIRA FILHO, released in the records on 10/17/2024 at 03:52 p.m.
To check the original, access the website:
https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do,        enter        case 1088030-29.2016.8.26.0100 and code gqd1cQRX.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
NOTHING ELSE was contained in said original, which I return with this faithful translation. IN WITNESS WHEREOF, I have hereunto set my hand and seal of office, this October 21st, 2024.                    Satu/3527



*[Digital Signature]*
*MANOEL ANTONIO SCHIMIDT*
*Sworn Translator*

This document has been digitally signed by the signatory(ies) listed in the signature(s) protocol. To validate the signatures, go to: https://isdocs.safeweb.com.br/portal/Validador?publicID=8f1d58e1-5474-4f02-a422-1f099fa1121a



INSCRIÇÃO: RG  3.441.239  -  CPF  346.307.328-53   -   PMSP (ISS)  8.545.237-8   -  IAPAS  110.591.000-74



# SIGNATURES REPORT

**This document has been digitally or electronically signed on the sDoc Signature Portal platform.**

**Digital certification of the authenticity of the documents maintained on the respective page, issued by a certified authority within the scope of the Brazilian Public Key Infrastructure (ICP-Brasil).**

**Check the signatures at:**

https://sdocs.safeweb.com.br/portal/Validador?publicID=6f1d58e1-5474-4f02-a422-1f099fa1f21a

Access Key: 6f1d58e1-5474-4f02-a422-1f099fa1f21a



**Document Hash**

0c46b210b0419b9d4915fcb7c5d7fa3c4e90699c39f2db1c38cecc29115e80fc

Document available at



**Document(s) generated on 10-21-2024, with the following participant(s):**

MANOEL ANTONIO SCHIMIDT - 346.307.328-53 in 10/21/2024 3:15:12 PM UTC-03:00

**Signature Type:**  Digital

**Identification:**  by e-mail: clenilson.cobra@uts.com.br

**Geolocation:** Latitude: -23.5488395 Longitude: -46.633524

**IP:**  187.34.2.151

**Signature**



Digitally signed electronic document.
Legal validity guaranteed according to
Provisional Measure 2,200-2/2001, which
established ICP-Brasil.

# Exhibit 9

<u>LAW FIRM</u>
SÉRGIO BERMUDES

| | | | |
|---|---|---|---|
| SÉRGIO BERMUDES | ANDRÉ TAVARES | LOUIS DE CASTEJA | GUILHERME REGUEIRA PITTA |
| MÁRCIO VIEIRA SOUTO COSTA FERREIRA | CAROLINA CARDOSO FRANCISCO | HENRIQUE ÁVILA | BRUNO COSTA DE ALMEIDA |
| MARCELO FONTES | MARIANNA FUX | RENATO RESENDE BENEDUZI | JULIANA VEGA KLIEN |
| ALEXANDRE SICMARINGA SEIXAS | ANDRÉ CHATEAUBRIAND MARTINS | DIEGO BARBOSA CAMPOS | LUIZA PERRELLI BARTOLO |
| GUILHERME VALDETARO MATHIAS | ROBERTO CASTRO DE FIGUEIREDO | ALESSANDRA MARTINI | JOÃO ZACHARIAS DE SA |
| ROBERTO SARDINHA JÚNIOR | PHILIP FLETCHER CHAGAS | MARIANA ARRUDA DE SOUZA | SÉRGIO SANTOS DO NASCIMENTO |
| JOAO ALBERTO ROMEIRO | LUÍS FELIPE FREIRE LISBOA | DANIEL CHACUR DE MIRANDA | GLOVANNA MARSSARI |
| GUSTAVO FERNANDES DE ANDRADE | PEDRO PAULO DE BARROS BARRETO | PEDRO HENRIQUE NUNES | ALESSANDRA GUALBERTO |
| MARCELO LAMEGO CARPENTER | LEONARDO DE CAMPOS MELO | GABRIEL DE ORLEANS E BRAGANÇA | |
| MÁRCIO XAVIER FERREIRA MUSA | WILSON PIMENTEL | LUIZA LOURENÇO BIANCHINI | |
| ANTÔNIO CARLOS VELLOSO FILHO | RICARDO LORETTI HENRICI | GABRIEL PRISCO PARAÍSO | |
| FABIANO ROBAUNHO CAVALCANTI | JAIME HENRIQUE PORCHAT SECCO | FABIANA FROES OLIVEIRA | |
| MARIA AZEVEDO SALGADO | GRISSIA RIBEIRO VENÂNCIO | GUIOMAR FEITOSA LIMA MENDES | |
| BRUNO CALEAT | RAPHAEL MONTENEGRO | FLAVIO JARDIM | |
| MARCO AURÉLIO DE ALMEIDA A LVES | DIEGO CABRERA | GUILHERME COELHO | |
| ERIC CERANTE PESTRE | MARCELO BORJA VEIGA | JORGE LUIZ SILVA ROCHA | |
| VITOR FERREIRA ALVES DE BRITO | ADILSON VIEIRA MACABU FILHO | ANA LUIZA COMPARATO | |
| ANDRÉ SILVEIRA | CAETANO BERENGUER | LIVIA IKEDA | CONSULTANTS |
| RODRIGO TANNURI | RAFAEL DIREITO SOARES | LÍVIA SAAD | AMARO MARTINS DE ALMEIDA (1914-1998) |
| FREDERICO FERREIRA | ANA PAULA DE PAULA | JULLIANA CUNHA | HÉLIO CAMPISTA GOMES (1925-2004) |
| ANTONELLA MARQUES CONSENTINO | ALEXANDRE FONSECA | ALLAN BARCELLOS L. DE OLIVEIRA | SALVADOR OCERO VELLOSO PINTO |
| MARCELO GONCALVES | PEDRO HENRIQUE CARVALHO | PAULO BONATO | JORGE FERNANDO LORETTI |
| RICARDO SILVA MACHADO | RAFAEL A FUCCI | RENATO CALDEIRA GRAVA BRAZIL | ELENA LANDAU |
| RICARDO JUNQUEIRA DE ANDRADE | GABRIEL LOS | VICTOR NADER BUJAN LAMAS | CAIO LUIZ DE ALMEIDA VIEIRA DE MELLO |

RIGHT HON. JUDGE OF THE _ CIVIL COURT OF THE CENTRAL JURISDICTION OF THE DISTRICT OF SÃO PAULO - SP

  <u>TINTO HOLDING LTDA.</u> (current name of BRACOL HOLDING LTDA. - doc. 1), established in this city at Rua 15 de Novembro, n° 200 - 15° andar, conj . C, sala 2, registered with the CNPJ/MF (*Cadastro Nacional da Pessoa Jurídica/Ministério da Fazenda* (National Corporate Taxpayer Registry/Treasury Ministry]) under No. 01.597.168/0001-99, through its undersigned attorneys, duly constituted (doc. 2), hereby files a <u>precautionary action,</u> <u>with request for injunctive relief,</u> against <u>BLESSED HOLDINGS LLC.,</u> a company established in 3500 South Dupont Highway, in the city of Dover, state of Delaware, United States of America, represented, in this State capital, by its agent, <u>GILBERTO BIOJONE</u>, domiciled in Barueri, with address at Avenida Sagitário, 743 - 5° andar, Alphaville Conde II, for the reasons stated below:

<u>JURISDICTION AND SUMMONS</u>

1.    As the illicit act against which the plaintiff appeals was perpetrated in Brazil, the national judicial authority has jurisdiction, pursuant to item III, of Art. 88, of the Code of Civil Procedure                                                     (CPC).

www.sbadv.com.br
RUA Frei Caneca, 1380 - 5° e 6° andares - 0307-002 - São Paulo - SP [São Paulo State] - Tel. (11) 3549 6900 - Fax. (11) 3288 1843 – email: spbermudes@sbadv.com.br
Praça XV de Novembro, 20 - 7° e 8° andares – 20010-010 - Rio de Janeiro - RJ [Rio de Janeiro State] -Tel. (21) 3221 9000 - Fax. (21) 3221 9001 - email: rjbermudes@sbadv.com.br
SH15 QL 14 - Conjunto 05 - Casa 01-71640-055 - Brasília - DF [DISTRITO FEDERAL (DISTRICT)]-Tel. (61) 3212 1200 - Fax. (61) 3248 0449 - email:
dfbermudes@sbadv.com.br

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 10369798120138260100. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 4688D.

As the defendant, a legal entity, is not domiciled in Brazil, this action is filed in this State capital, where the plaintiff is domiciled, in compliance with § 3 of Art. 94 of the CPC.

2.    Moreover, as this is the preliminary action of the main action, which will request reimbursement for losses and damages arising from the unlawful act perpetrated, the jurisdiction of this Hon. Court is also outlined in paragraph a of item V of Art. 100 and its sole paragraph of the civil procedural law.

3.    Furthermore, we request the summons of the defendant in the person of its representative, who perpetrated the act that gave rise to this action and the main action that will follow it, as determined by Art. 215 and its paragraph first, both of the aforementioned law.

<u>SHOCKING MISREPRESENTATION</u>

4.    It cannot be conceived that a share assignment instrument of an investment fund can be effective when it was executed with two confirmed false signatures, a criminal forgery of the signatures of the plaintiff's representatives, who never entered them in the document that was used to perpetrate the illicit act.

<u>FRAMEWORK OF THE SCHEME</u>

5.    The framework of the scheme in question (<u>*rectius*</u>, the embarrassing fraud) is precisely as follows:

 a)  The plaintiff TINTO (BRACOL, in its previous name) holds 601,274.50461 shares of BERTIN FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES (hereinafter referred to merely as BERTIN FIP);

 b)  The plaintiff herein pledged all these shares to Banco do Brasil S.A., to secure a loan greater than BRL 100,000,000, as shown by the attached copies of the bank credit note and its amendments (docs. 3 and 4);

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 10369798120138260100. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 46888D.

c)   Since CITIBANK DTVM S.A. was the administrator of the BERTIN FIP fund, which included the shares pledged to Banco do Brasil S.A., the plaintiff informed CITIBANK DTVM of that pledge (doc. 5). It should be added that, subsequently, CITIBANK DTVM was replaced by SOCOPA - SOCIEDADE CORRETORA PAULISTA S.A., which was also informed of the existence of that pledge;

d)   As a secured creditor, Banco do Brasil S.A. became a creditor of the proceeds from the pledged shares, in the precise terms of the bank credit note and its amendments (docs. 3 and 4).

<u>SURPRISE AND ASTONISHMENT</u>

6.   When TINTO, claimant herein, notified SOCOPA to deliver to Banco do Brasil the proceeds of the 601,274.50461 shares pledged to it, it was struck by the news that it only held 253,249.93483000 shares, because the other shares had been transferred to BLESSED HOLDINGS LLC, the defendant herein (see the SOCOPA communication, a copy of which is herein presented as doc. 6).

7.   In addition, according to current market information, BLESSED is the parent company of the giant JBS S.A. group, owner of the largest animal protein processing conglomerate in the world, which trades in Brazil and numerous countries, such as Argentina, Italy, Australia, the United States, China, Russia, Paraguay and Uruguay, where it exports or processes meat and derivatives.

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 10369778012013826010 0.
To check the original, go to the website https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 46888D.

8.    For now, this may be a small mater, but it should be noted that the JBS group incorporated BERTIN S.A., member of the Bertin family, owner of TINTO, plaintiff herein, as will be explained in the main action.

<u>SINISTER COMMUNICATION</u>

9.    The transfer to BLESSED HOLDINGS LLC, the defendant herein, of more than half of the shares pledged to Banco do Brasil by the plaintiff TINTO was communicated to the latter by SOCOPA, in the aforementioned letter dated January 22, 2013 (doc. 6).

10.    One has to read it to believe it: in the above-mentioned letter, SOCOPA categorically states that it was unable to block - that is, the annotation of the existence of the pledge - the shares provided as security to Banco do Brasil, because [of the 601,274.50461] "only 253,249.93483000" were left (doc. 6).

<u>BLATANT FRAUD</u>

11.    The document of the alleged transfer to BLESSED of more than half of the shares pledged by TINTO to Banco do Brasil outraged the claimant, because its executives immediately saw that the signatures in the "*private instrument of assignment and transfer of shares and other covenants*" were not of their apparent signatories (doc. 7 - page 4).

12.    The criminal transfer became unequivocal due to the difference between the actual value of the shares (approximately BRL 970,000,000.00), and the tiny value stated in the fraudulent instrument: BRL 17,000.00. As evidence shows, 348,317 shares of the BERTIN FIP fund, belonging to TINTO, are not worth the pittance of BRL 17,000.00, an amount next to nothing, given the capital these securities express.

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 10369778012013826010000. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and Code 46888D.

13.   As if disparity was not enough, which is noticed *ictu occuli*, and is demonstrative of the plot, now exposed by the plaintiff, and which will inevitably reach the noble Public Prosecutor's Office, the financial statements, audited by the reputable KPMG, reveal the large value of each share, calculated at BRL 2,787.6719 by that auditor (doc. 8).

<u>SUPPORTING EXPERT INVESTIGATION</u>

14.   The forensic community of the state of São Paulo and Brazil learned to respect the reports of the DEL PICCHIA INSTITUTE for the high technical qualification and integrity of the work of this institution, without a doubt the most distinguished in its field.

15. After examining the instrument of the forged transfer of shares of the BERTIM FUND, belonging to the plaintiff TINTO, the renowned expert CELSO MAURO RIBEIRO DEL PICCHIA presented, on 4/17/3, a report with the following conclusion:

> "**<u>Despite the poor images of the copies presented</u>**, morphokinetic anomalies and discrepancies are evident, indicating, **<u>with very high probability, the forgery of the illegible signatures</u>** attributed to NATALINO BERTIN and SILMAR BERTIN, at the end of the defective INSTRUMENT." (doc. 9, p. 38 - emphasis added).

16.   No matter which hand orchestrated and perpetrated the scheme. The "very high probability", highlighted in the report, is an indication of certainty, to be achieved with the expert investigation performed in the proceedings of this precautionary action or the main action, on the alleged misrepresentation.

<u>UNQUESTIONABLE *FUMUS*</u>

17.   The report that it is hereby subject to your Honor's astute conduct, together with the misrepresentation that it documents given the staggering difference between the actual value of the shares and the value stated in the instrument of the alleged transfer, is more

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 1036979812013826D100. To check the original, go to the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 46888D.

than enough to convince that there is appearance of good law, a fundamental presumption of the injunctive relief.

<u>DAUNTING HAZARD</u>

18.   Rivers of ink will not be necessary to show this truth that is visible to everyone: a) the apparent holder of the shares that were criminally transferred to it, BLESSED HOLDINGS LLC, a foreign legal entity, domiciled abroad, may, very easily, transfer those shares to third parties, in collusion with it, or in good faith, who will become, formally, owners of the shares and may pass them from hand to hand, in an endless chain, impossible to undo; b) holder, due to the disgraceful transfer, of the shares pledged by TINTO to Banco do Brasil, the defendant BLESSED, or its successors of the shares whose pledge to Banco do Brasil was not registered with SOCOPA, may receive their proceeds, the recovery of which will not only be impractical, given that the defendant is outside Brazil, but will also entail formidable costs with potential lawsuits to recover the amounts and their due accruals; c) as the pledge was not registered, the plaintiff is in arrears with Banco do Brasil, which may enforce the credit, as it has no guarantee, prematurely stripping the debtor of a gigantic amount, part of their equity, indispensable to running its business.

19.   Therefore, this inevitably constitutes *periculum in mora*, the other basis for granting the injunction herein postulated, including on a temporary basis.

ESSENTIAL INJUNCTION

20.   There can be no doubt that, if the constrictive measure is not granted immediately, the defendant may take advantage of several proceedings, intended to water down the final decision of this case, making it, in effect, absolutely ineffective.

21.   The reason why the claimant herein is requesting an injunction, is not to have the shares shamelessly transferred to the defendant

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 1036979812013826010 0. To check the original, go to the website https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 46888D.

return to it, but to: a) Once their transit is prevented, they are to remain in possession of the claimant herein, which shall be prohibited from transferring them in any way to individuals, legal entities, or in any formal way to which it is or may be bound, notifying SOCOPA, at Avenida Brigadeiro Faria Lima, 1355, 1° andar, in this State capital, to observe the prohibition; b) have the defendant barred from receiving any and all proceeds from the shares that were criminally transferred to it, notifying SOCOPA, at the address above, to refrain from making that payment.

## MAIN ACTION

22.   This precautionary measure is clearly in preparation of the main action, in which the claimant herein shall request that the above-mentioned transfer be declared null and void (or be declared non-existent, on option in case law), adding to this the request for compensation for all losses, including future ones, resulting from the criminal practice.

## REQUEST

23.   In light of the foregoing, the plaintiff is confident that the request for a precautionary measure hereby formulated shall be granted, so as to make the postulated injunctions final, sentencing the defendant to bear the legal costs and attorney fees, set at the maximum amount.

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number 1036979812013826010 0. To check the original, go to the website https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 46B8BD.

8

24.  We request the summons of the defendant, in the person of its representative, to be made part of this action until it is dismissed by merit.

25.  We intend to product additional documentary evidence and expert evidence, aimed at confirming misrepresentation.

26.  The value of the matter is BRL 10,000.00.

27.  We declare that the signatories are to receive subpoenas, in this city, at the address indicated on the letterhead.

Respectfully submitted

São Paulo, June 10, 2013

[signature]
Sergio Bermudes
OAB (*Ordem dos Advogados do Brasil* [Bar Association of Brazil])/SP 33,031-A

[signature]
Guilherme Valdetaro Mathias
OAB/RJ 75,643

[signature]
Antonio Carlos Velloso Filho
OAB/RJ 94,303

[signature]
Renato Resende Beneduzi
OAB/RJ 149,028

[signature]
Luiza Perrelli Bartolo
OAB/SP 309,970-A

This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO and the Court of Justice of the State of São Paulo, filed on 06/10/2013 at 6:51 p.m., under number !0369798!2013826!0100. To check the original, go to the website https:\esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, enter case number 1036979-81.2013.8.26.0100 and code 468B8D.



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**Tinto complaint – preliminary action**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_____
Dan McCourt

Sworn to before me this
July 21, 2023



_____
Signature, Notary Public

_____
Stamp, Notary Public

**LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS**
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

fls. 1

ESCRITÓRIO DE ADVOCACIA

S E R G I O   B E R M U D E S

SERGIO BERMUDES
MARCIO VIEIRA SOUTO COSTA FERREIRA
MARCELO FONTES
ALEXANDRE SIGMARINGA SEIXAS
GUILHERME VALDETARO MATHIAS
ROBERTO SARDINHA JUNIOR
JOÃO ALBERTO ROMEIRO
GUSTAVO FERNANDES DE ANDRADE
MARCELO LAMEGO CARPENTER
MARCIO XAVIER FERREIRA MUSA
ANTONIO CARLOS VELLOSO FILHO
FABIANO ROBALINHO CAVALCANTI
MARIA AZEVEDO SALGADO
BRUNO CALFAT
MARCO AURÉLIO DE ALMEIDA ALVES
ERIC CERANTE PESTRE
VITOR FERREIRA ALVES DE BRITO
ANDRÉ SILVEIRA
RODRIGO TANNURI
FREDERICO FERREIRA
ANTONELLA MARQUES CONSENTINO
MARCELO GONÇALVES
RICARDO SILVA MACHADO
RICARDO JUNQUEIRA DE ANDRADE

ANDRÉ TAVARES
CAROLINA CARDOSO FRANCISCO
MARIANNA FUX
ANDRÉ CHATEAUBRIAND MARTINS
ROBERTO CASTRO DE FIGUEIREDO
PHILIP FLETCHER CHAGAS
LUÍS FELIPE FREIRE LISBÔA
PEDRO PAULO DE BARROS BARRETO
LEONARDO DE CAMPOS MELO
WILSON PIMENTEL
RICARDO LORETTI HENRICI
JAIME HENRIQUE PORCHAT SECCO
GRÉSSIA RIBEIRO VENÂNCIO
RAPHAEL MONTENEGRO
DIEGO CABRERA
MARCELO BORJA VEIGA
ADILSON VIEIRA MACABU FILHO
CAETANO BERLINGUER
RAFAEL DIREITO SOARES
ANA PAULA DE PAULA
ALEXANDRE FONSECA
PEDRO HENRIQUE CARVALHO
RAFAELA FUCCI
GABRIEL LÓS

LOUIS DE CASTEJA
HENRIQUE ÁVILA
RENATO RESENDE BENEDUZI
DIEGO BARBOSA CAMPOS
ALESSANDRA MARTINI
MARIANA ARRUDA DE SOUZA
DANIEL CHACUR DE MIRANDA
PEDRO HENRIQUE NUNES
GABRIEL DE ORLEANS E BRAGANÇA
LUIZA LOURENÇO BIANCHINI
GABRIEL PRISCO PARAÍSO
FABIANA FROES OLIVEIRA
GUIOMAR FEITOSA LIMA MENDES
FLÁVIO JARDIM
GUILHERME COELHO
JORGE LUIZ SILVA ROCHA
ANA LUIZA COMPARATO
LÍVIA IKEDA
LÍVIA SAAD
JULLIANA CUNHA
ALLAN BARCELLOS L. DE OLIVEIRA
PAULO BONATO
RENATO CALDEIRA GRAVA BRAZIL
VICTOR NADER BUJAN LAMAS

GUILHERME REGUEIRA PITTA
BRUNO COSTA DE ALMEIDA
JULIANA VEGA KLIEN
LUIZA PERRELLI BARTOLO
JOÃO ZACHARIAS DE SÁ
SÉRGIO SANTOS DO NASCIMENTO
GIOVANNA MARSSARI
ALESSANDRA GUALBERTO

CONSULTORES
AMARO MARTINS DE ALMEIDA (1914-1998)
HELIO CAMPISTA GOMES (1925-2004)
SALVADOR CÍCERO VELLOSO PINTO
JORGE FERNANDO LORETTI
ELENA LANDAU
CAIO LUIZ DE ALMEIDA VIEIRA DE MELLO

EXMO. SR. DR. JUIZ DE DIREITO DA ___ VARA CÍVEL DO FORO CENTRAL
DA COMARCA DE SÃO PAULO - SP

 

 

 

 

 

 

        TINTO HOLDING LTDA. (atual denominação da BRACOL
HOLDING LTDA. - doc. 1), estabelecida, nesta cidade, na Rua 15
de Novembro, n° 200 - 15° andar, conj. C, sala 2, inscrita no
CNPJ/MF sob o n° 01.597.168/0001-99, vem, por seus advogados
abaixo assinados, regularmente constituídos (doc. 2), propor
ação cautelar, com pedido de tutela cautelar, contra a BLESSED
HOLDINGS LLC., sociedade estabelecida na 3.500 South Dupont
Highway, na cidade de Dover, estado de Delaware, nos Estados
Unidos da América, representada, nesta capital, por seu
mandatário, GILBERTO BIOJONE, domiciliado em Barueri, com
endereço na Avenida Sagitário, 743 - 5° andar, Alphaville Conde
II, pelos motivos, que passa a expor:

COMPETÊNCIA E CITAÇÃO

1.      Praticado, no Brasil, o ato ilícito contra o qual se
insurge a autora, é competente a autoridade judiciária nacional,
nos termos do inciso III, do art. 88, do Código de Processo
Civil. Não tendo a ré, pessoa jurídica, domicílio no Brasil,

www.sbadv.com.br

Rua Frei Caneca, 1380 - 5° e 6° andares - 01307-002 - São Paulo - SP - Tel. (11) 3549 6000 - Fax. (11) 3288 1843 - e-mail:spbermudes@sbadv.com.br
Praça XV de Novembro, 20 - 7° e 8° andares - 20010-010 - Rio de Janeiro - RJ - Tel. (21) 3221 9000 - Fax. (21) 3221 9001 - e-mail:rjbermudes@sbadv.com.br
SHIS QL 14 - Conjunto 05 - Casa 01 - 71640-055 - Brasília - DF - Tel. (61) 3212 1200 - Fax. (61) 3248 0449 - e-mail:dfbermudes@sbadv.com.br

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46B88D.

2

esta ação é proposta, nesta capital, onde está domiciliada a autora, na conformidade do § 3° do art. 94 do CPC.

2.         Ademais, preparatória esta ação da ação principal em que se pedirá também o ressarcimento de perdas e danos pelo ilícito praticado, a competência deste MM. Juízo se encontra também delineada pela alínea a, do inciso V, do art. 100 e seu parágrafo único, do diploma processual civil.

3.         Pede-se, outrossim, a citação da ré na pessoa do seu mandatário, praticante do ato que deu origem a esta ação e à principal que se lhe seguirá, como determinam o art. 215 e seu parágrafo primeiro, ambos da mencionada lei.

<u>CHOCANTE FALSIDADE</u>

4.         Não se concebe que possa produzir efeito um ato de transferência de cotas de um fundo de investimentos, praticado por meio de duas assinaturas documentadamente falsas, criminosa imitação das firmas dos representantes da autora, que jamais as lançaram no documento que serviu para prática do ilícito.

<u>QUADRO ESQUEMÁTICO</u>

5.         O quadro esquemático da questão (<u>rectius</u>, da vergonhosa fraude) é, fielmente, o seguinte:

        a)    A autora TINTO (BRACOL, na sua anterior denominação) é titular de 601.274,50461 quotas do BERTIN FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES (abreviadamente, BERTIN FIP);

        b)    A ora autora deu todas essas quotas ao Banco do Brasil S.A., em penhor para garantir um mútuo superior a R$100.000.000,00, como demonstram as inclusas cópias

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46688D.

3

da cédula de crédito bancário e seus aditivos (docs. 3 e 4);

c)    Como a CITIBANK DTVM S.A. era a administradora do fundo BERTIN FIP, onde estavam as quotas empenhadas ao Banco do Brasil S.A., a autora notificou aquela DTVM para ciência do penhor efetivado (doc. 5). Acrescente-se que, posteriormente, a CITIBANK DTVM foi substituída pela SOCOPA – SOCIEDADE CORRETORA PAULISTA S.A., a quem se fez outra notificação da existência do penhor;

d)    Como credor pignoratício, o Banco do Brasil S.A. tornou-se credor dos rendimentos das quotas empenhadas, nos precisos termos da cédula de crédito bancário seus aditivos (docs. 3 e 4).

<u>SURPRESA E ESTARRECIMENTO</u>

6.    Quando a TINTO, aqui e agora requerente, notificou a SOCOPA para entregar ao Banco do Brasil os rendimentos das 601.274,50461 quotas dadas em penhor a ele, foi golpeada pela notícia de que só era titular de 253.249,93483000 quotas, porque as demais haviam sido transferidas à ora ré BLESSED HOLDINGS LLC (veja-se a comunicação da SOCOPA, cuja cópia agora se exibe, como doc. 6).

7.    Acrescente-se que, segundo informações correntes no mercado, a BLESSED é controladora do gigantesco grupo JBS S.A., dono do maior conglomerado de processamento de proteína animal do mundo, que comercia, no Brasil e em numerosos países, como a Argentina, a Itália, a Austrália, os Estados Unidos, a China, a Rússia, o Paraguai e o Uruguai, para onde exporta ou processa carne e derivados.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46888D.

4

8.        Conquanto despicienda, no momento, fique aqui a observação de que o grupo JBS incorporou a BERTIN S.A., pertencente à família Bertin, dona da ora autora TINTO, como tudo se explicará na ação principal.

## SINISTRA COMUNICAÇÃO

9.        A transferência à ora ré BLESSED HOLDINGS LLC de mais da metade das quotas dadas em penhor ao Banco do Brasil pela autora TINTO foi comunicada a esta última pela SOCOPA, na já mencionada carta de 22.1.13 (doc. 6).

10.       É ler para crer: na carta aludida, a SOCOPA afirma, categoricamente, que não pôde realizar o bloqueio – isto é, a anotação da existência do penhor - das quotas dadas em garantia ao Banco do Brasil, pois restavam [das 601.274,50461] "apenas 253.249.93483000" (doc. 6).

## ESCANCARADA FALCATRUA

11.       O documento da suposta transferência à BLESSED de mais da metade das quotas empenhadas pela TINTO ao Banco do Brasil indignou a requerente, pois executivos dela logo viram que não eram dos aparentes signatários as assinaturas lançadas no "*instrumento particular de cessão e transferência de quotas e outras avenças*" (doc. 7 – pag. 4).

12.       A transferência criminosa tornou-se inequívoca pela diferença entre o valor real das quotas (aproximadamente R$ 970.000.000,00), e o minúsculo valor indicado no vicioso instrumento: R$ 17.000,00. A toda evidência, 348.317 quotas do fundo BERTIN FIP, pertencentes à TINTO, não valem a ninharia de R$ 17.000,00, um nonada, diante do capital que estes títulos exprimem.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46688D.

5

13.      Não bastasse a disparidade, que se nota _ictu occuli_, demonstrativa da tramoia, agora denunciada pela autora, e que chegará, inevitavelmente, ao nobre Ministério Público, as demonstrações financeiras, auditadas pela respeitável KPMG, revelam o grande valor de cada quota, calculado em R$ 2.787,6719 por aquela auditora (doc. 8).

## PERÍCIA COMPROBATÓRIA

14.      A comunidade forense do estado de São Paulo e do Brasil aprenderam a respeitar os laudos do INSTITUTO DEL PICCHIA pela alta qualificação técnica e pela seriedade do trabalho dessa instituição, sem dúvida a mais conspícua da sua especialidade.

15.      Depois de examinar o instrumento da forjada transferência das quotas do FUNDO BERTIM, pertencentes à autora TINTO, o renomado especialista CELSO MAURO RIBEIRO DEL PICCHIA apresentou, em 17.4.13, um laudo cuja conclusão foi esta:

> "Transparecem, **mesmo através de precárias imagens da reprográfica exibida**, anomalias e discrepâncias morfocinéticas que indicam, **em níveis de amplíssima probabilidade, a forjadura das firmas** ilegíveis atribuídas a NATALINO BERTIN e SILMAR BERTIN, no fecho do INSTRUMENTO inquinado." (doc. 9, p. 38 – grifou-se).

16.      Não importa qual a mão que urdiu e perpetrou o sortilégio. A "amplíssima probabilidade", acentuada no laudo é prenúncio da certeza, a ser alcançada na perícia produzida no processo desta ação cautelar ou da principal, da rematada falsidade.

## FUMUS INQUESTIONÁVEL

17.      O laudo que agora se submete à argúcia de V.Exa., aliada a falsidade que ele documenta à tonitruante diferença entre o real valor das quotas e o valor indicado no instrumento da

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de Sao Paulo, protocolado em 10/06/2013 as 18:51 , sob o número 103697981201382601100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46888D.

6

suposta transferência, é mais que suficiente para convencer da aparência do bom direito, pressuposto fundamental da tutela cautelar.

## PERIGO ASSUSTADOR

18.      Dispensam-se rios de tinta para demonstrar esta verdade que entra pelos olhos: a) a titular aparente das quotas que lhe foram criminosamente transferidas, a BLESSED HOLDINGS LLC, pessoa jurídica estrangeira, domiciliada no exterior, poderá, muito facilmente, transferir esses títulos a terceiros, em conluio com ela, ou de boa-fé, que se tornarão, formalmente, donos das quotas e poderão transferi-las de mão em mão, numa cadeia interminável, de impossível desfazimento; b) titular, pela escabrosa transferência, das quotas empenhadas pela TINTO ao Banco do Brasil, a ré BLESSED, ou seus sucessores das quotas cujo penhor ao Banco do Brasil não chegou a ser registrado na SOCOPA, poderão receber os respectivos rendimentos, cuja recuperação tanto mais inviável será, quanto se considerar que a ré se encontra fora do Brasil, sem falar nos formidáveis custos de um eventual processo de recuperação dos valores com os devidos acréscimos; c) não efetivado o registro do penhor, fica a autora em mora junto ao Banco do Brasil, o que poderá executar o crédito, afinal sem garantia, despojando prematuramente a devedora de um valor gigantesco, de parte do seu patrimônio, indispensável ao giro dos seus negócios.

19.      Inelutável, por conseguinte, a configuração do periculum in mora, o outro fundamento da outorga da providência cautelar agora postulada, inclusive liminarmente.

## LIMINAR IMPRESCINDÍVEL

20.      Não pode haver dúvida de que, sem a imediata concessão da medida constritiva, a ré poderá valer-se de muitos

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46B88D.

expedientes, destinados a estilar a sentença final deste processo, tornando-a, em termos práticos, absolutamente ineficaz.

21.    Eis a razão pela qual a ora requerente pede a liminar, não para que lhe sejam devolvidas as quotas escandalosamente transferidas à ré, mas a fim que: a) Impedida a sua ambulatoriedade, elas permaneçam em poder da ora suplicada, que deverá ser proibida de aliená-las a qualquer título, ainda que a pessoas físicas, jurídicas, ou mesmo formais, a que esteja ou possa a vir estar vinculada, intimada a SOCOPA, na Avenida Brigadeiro Faria Lima, 1355, 1° andar, nessa Capital, a observar a proibição; b) seja a ré impedida de receber todo e qualquer rendimento das quotas que lhe foram delituosamente transferidas, intimada a SOCOPA, no endereço acima indicado, para que se abstenha de efetuar esse pagamento.

## AÇÃO PRINCIPAL

22.    Essa medida cautelar é visivelmente preparatória da ação principal, na qual a ora requerente pedirá a decretação da nulidade da apontada transferência (que poderá, em opção doutrinária, ser dada como inexistente), cumulado o pedido com o de indenização de todos os prejuízos, inclusive futuros, resultantes da prática criminosa.

## PEDIDO

23.    Diante do exposto, a autora confia na procedência do pedido, que ora formula, de concessão da medida cautelar, a fim de que se tornem definitivas as liminares postuladas, condenada a ré nas custas e honorários de advogado, fixados no valor máximo.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de São Paulo, protocolado em 10/06/2013 às 18:51 , sob o número 10369798120138260100. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1036979-81.2013.8.26.0100 e código 46888D.

8

24.     Requer a citação da ré, na pessoa do seu mandatário, para que fique integrada no processo desta ação até a respectiva extinção por sentença de mérito.

25.     Protesta pela produção de prova documental suplementar e de pericia, destinada à confirmação da falsidade.

26.     Da à causa o valor de R$ 10.000,00.

27.     Declara que os signatários recebem intimações, nesta cidade, no endereço indicado no timbre.

Nestes Termos,
P. Deferimento,
São Paulo, 10 de junho de 2013

Sérgio Bermudes
OAB/SP 33.031-A

Guilherme Valdetaro Mathias
OAB/RJ 75.643

Antonio Carlos Velloso Filho
OAB/RJ 94.303

Renato Resende Beneduzi
OAB/RJ 149.028

Luiza Perrelli Bartolo
OAB/SP 309.970-A

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO e Tribunal de Justiça do Estado de Sao Paulo, protocolado em 10/06/2013 as 18:51 , sob o número 103697981201382601 00.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 10369 79-81.2013.8.26.0100 e código 46888D.

# Exhibit 10



## *MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833                    FOLHA   1                    TRADUÇÃO Nº   I-204.374/23

---

I, the undersigned Sworn Translator and Commercial Interpreter, hereby CERTIFY this is the description and faithful translation of a DOCUMENT written in Portuguese, which I translate as follows:

---

*[The document bears the following content as a header in both pages]:*
06/22/2022 2:21 pm                    e-SAJ Services Portal                    page 2110

| **e-SAJ** \| 1st Degree Process Consultation | | |
|---|---|---|
| ← | View process records | To file |

*[End of header]* --------------------------------------------------------------------------------

1046806-19.2013.8.26.0100 Ended
Class
Common Civil Procedure

Subject matter
Flaw, nullity, or annulment

Venue
Central Civil Venue

Court
5th Civil Court

Judge
GUSTAVO COUBE DE CARVALHO

^ Collapse

Assignment to the same judge presiding over
07/12/2013 at 12:31 pm – Dependence (1036979-81.2013.8.26.0100)

Control
2013/001230

Area
Civil

Amount in dispute
BRL 17,000.00

Other subject matters
Transfer of quotas



**MANOEL ANTONIO SCHIMIDT**

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833            FOLHA   2            TRADUÇÃO Nº  I-204.374/23

---

PARTIES

| Plaintiff | Tinto Holding Ltda. |
| | Attorney-at-law: Luiza Perrelli Bartolo |
| Defendant | Blessed Holdings LLC |

HISTORY

| Date | History |
|------|---------|
| 01/30/2019 | Permanently archived |
| 03/09/2015 | Issuance of the Abstract of Record |
| | *Certificate – Abstract of Record – Civil* |
| 03/14/2014 | Definitive Remit |
| | *Ended in the provisional procedure attached hereto* |
| 03/12/2014 | Concluded for the Judgement |
| 03/12/2014 | Document entered into the record |

∨ <u>More</u>

MISCELLANEOUS PETITIONS

| Date | Type |
|------|------|
| 07/24/2013 | Miscellaneous Petitions |
| 07/24/2013 | Interim Petition |
| 08/08/2013 | Interim Petition |
| 09/04/2013 | Miscellaneous Petitions |
| 09/23/2013 | Answer |
| 10/16/2013 | Reply |

-------------------------------------------------------------------------------------------------------
There are no incidents, incidental proceedings, appeals or enforcement of judgments related to this proceeding.

APPENDICES, UNSUPPRESSED AND UNIFIEDS

| Number | Class | Attachment | Reason |
|--------|-------|------------|--------|
| 1036979-81.2013.8.26.0100 | Action for an Innominate Provisional Remedy | 08/01/2013 | by judicial order page 142 |

HEARINGS

There are no future hearings related to this lawsuit.



*MANOEL ANTONIO SCHIMDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833**          **FOLHA**   3          **TRADUÇÃO Nº**  **I-204.374/23**

---

*[The document bears at the right-margin of the two preceding pages the following content]:*
This document is a copy of the original, digitally signed by HEITOR VITOR MENDONCA FRALINO SICA and the Court of Justice of the State of Sao Paulo, filed on 06/20/2022 at 9:56 pm, under number WJMJ22410254896.
To check the original, access the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, and enter process number 1055320-43.2022.8.26.0100 and code D3BDC84.

*[The document bears the following content as a footnote in both pages]:*

| *[Logo]* | SOFTPLAN |
|---|---|
| https://esaj.tjsp.jus.br/cpopg/show.do?processo.codigo=2S00099X10000&processo.foro=100&processo.numero=1046806-19.2013.8.26.0100&uuidCaptcha=sajcaptcha_4920b09148e04d92800d68b996202b15 | 1/2 2/2 |

*[End of footnote] --------------------------------------------------------------------------------*
-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.
*[Issuer's letterhead:* **ESCRITÓRIO DE ADVOCACIA – SERGIO BERMUDES**]*.

*[The following thirteen pages are sequentially numbered at the header, as follows]:*
pages 2112 *[up to pages 2124]*.
page 1 *[up to page 13]*
*[From second page and on]:* 2 *[up to 13]*.

---

HONORABLE JUDGE FOR THE 5th CIVIL COURT IN THE CENTRAL VENUE OF THE JUDICIAL DISTRICT OF SÃO PAULO – SP

Assignment to the same judge presiding over:
Case No. 1036979-81.2013.26.0100

TINTO HOLDING LTDA. (formerly BRACOL HOLDING LTDA., doc. 1), headquartered in this city at Rua 15 de Novembro, 200 – 15º Andar, Conj. C, Sala 2, bearer of the Corporate Taxpayer ID (CNPJ/MF) # 01.597.168/0001-99, herein represented by its undersigned lawyers, as duly appointed (doc. 2), does hereby file this lawsuit to be assigned to the same judge presiding over the abovementioned case, against BLESSED HOLDINGS LLC, a company headquartered at 3500 South Dupont Highway, in the city of Dover, State of Delaware, USA, herein represented by its legal representative, GILBERTO BIOJONE, domiciled in Barueri, at Avenida Sagitário, 743 – 5º Andar, Alphaville Conde II, on the following grounds:

ASSIGNMENT TO THE SAME JUDGE

1.      Preparatory action for provisional remedy 1036979-81.2013.26.0100 is being handled by this Court, wherein such preliminary injunction as requested by TINTO HOLDING LTDA., herein the plaintiff, was granted *"to make the units of interest*



### *MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -   SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833          FOLHA   4          TRADUÇÃO Nº  I-204.374/23**

*listed in the case records unavailable"* (p. 27). Now, therefore, this main lawsuit is being filed to be assigned to the same judge, within such 30-day period as stipulated in the Code of Civil Procedure.

### JURISDICTION AND SERVICE OF PROCESS

2.      Seeing as the illicit act which the plaintiff is fighting against was perpetrated in Brazil, therefore, the Brazilian courts have jurisdiction, under item III, article 88 of the Code of Civil Procedure. Whereas the defendant – a legal entity – does not have a registered office in Brazil, therefore, this lawsuit is filed in this capital city, where the plaintiff is headquartered, under paragraph 3, article 94 of the Code of Civil Procedure.

3.      Likewise, service of process to defendant is requested to be served to its legal representative, the perpetrator of the act giving cause for this lawsuit, under article 215 and its paragraph 1, both of that same Code.

### THE UNITS OF INTEREST IN BERTIN FIP

4.      TINTO HOLDING LTDA. (formerly BRACOL HOLDING LTDA.), herein the plaintiff, is (or, at least, was, as will be seen) the holder of all the units of interest in BERTIN FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, organized on November 26, 2009 (*see* Fund Articles of  Organization, doc. 3), as a closed co-ownership, the assets of which comprise the *"set of bonds and securities issued by FB Participações S.A., represented by shares, debentures convertible or permutable to shares issued by the Company"* (*see* explanatory notes to the financial statements for fiscal year ended March 31, 2011; doc. 4).

5.      BERTIN FIP would hold precisely 2,334,370,128 shares in FB Participações S.A., valued, according to the explanatory notes to the financial statements for fiscal year ended March 31, 2011, at BRL 4,949,046,000.00 (four billion nine hundred forty-nine billion forty-six thousand Brazilian Reais). Those shares stand for 48.52% of on shares in FB Participações S.A. (doc. 4). See also the report on the fiscal year ended March 31, 2012 (doc. 5).

6.      FB Participações S.A. is the company directly or indirectly controlling the giant conglomerate JBS, who calls itself, in its website, the *"largest animal protein processing company in the world, operating in the areas of food, leather, biodiesel, collagen and cans"* (visit http://www.jbs.com.br/QuemSomos.aspx) – and that explains the highly priced value of the fund assets. We can also read there that JBS *"is present on all continents, with production platforms and offices in Brazil, Argentina,*



*Italy, Australia, USA, Uruguay, Paraguay, Mexico, China, Russia, among other countries"*. Recently, may we say, it was published with a fuss in the press that, after the acquisition of the meatpacking company MARFRIG, owner of the SEARA brand, JBS became a conglomerate the annual revenue of which will approach BRL 100 billion (please visit http://gl.globo.com/economia/noticia/2013/06/jbs-assumira-lideranca-global-em-aves-apos-compra-da-seara-1.html).

7.      This is why the equity of BERTIN FIP reached BRL 4,937,636,000.00 (four billion nine hundred thirty-seven million six hundred thirty-six Brazilian Reais) as indicated in the explanatory notes to the financial statements for the fiscal year ended March 31, 2011 (doc. 4). Such amount, on 03/31/12, then reached BRL 4,949,046,000.00 (four billion nine hundred forty-nine million forty-six thousand Brazilian Reais - doc. 5).

8.      Hence, the plaintiff holds interest in conglomerate JBS S/A by means of BERTIN FIP which, in turn, holds interest in FB Participações S.A.

<u>SURPRISE AND ASTONISHMENT</u>

9.      In guarantee of a number of loans before BANCO DO BRASIL, the plaintiff pledged 601,274.50461 units of interest in BERTIN FIP to the lender, on 08/11/10, and assigned to lender the credit rights on dividends and equity capital interest arising from such units of interest (*see* clauses 22 and 23 of the credit facility agreement and 1st Amendment thereto, doc. 6).

10.     Such pledge was duly notified to the then fund manager, CITIBANK DTVM S.A., in a letter dated 09/01/10, also containing a request for entering the pledge in the shareholders' register. Next, on 10/28/10, CITIBANK issued its 'agreed' to confirm the units of interest pledge registration (doc. 7).

11.     When the plaintiff notified SOCOPA to pay to Banco do Brasil the earnings on the 601,274.50461 units of interest pledged to it, it was taken aback with the news that it would be the holder of 253,249.93483000 units of interest only, because the other ones had been transferred to the herein defendant BLESSED HOLDINGS LLC (*see* letter from SOCOPA, a copy of which is attached hereto as doc. 8).

<u>INEFFECTIVE ASSIGNMENT</u>

12.     The vanishing of so many units of interest, the value of which, at the time, reached approximately BRL 970,000,000.00 (nine hundred seventy million Brazilian



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo - SP - Tel.: (011) 3291-4420

LIVRO Nº   833             FOLHA   6             TRADUÇÃO Nº   I-204.374/23

Reais), as later determined, is due to the existence of a bizarre "private agreement for transfer and assignment of units of interest and other covenants" (doc. 9), dated 11/11/10. Under such agreement, the plaintiff allegedly assigned to BLESSED HOLDINGS LLC, a foreign company headquartered in a US tax haven, *"348,317 (three hundred forty-eight thousand three hundred seventeen) units of interest in the fund, for the exact and agreed amount of BRL 17,000.00 (seventeen thousand Brazilian Reais)"* (*see* clause 1.1 thereof).

13.     All this with the caveat – which is a lie, considering that the pledge was given and registered before this purported assignment (given on 08/11/10 and the registration of which was confirmed by CITIBANK DTVM S.A. on 10/28/11) – that *"the units of interest now assigned are fully paid up, and free and clear of any liens, whether judicial or extrajudicial, guarantees, pledges, encumbrances, third-party rights, judicial disputes, warranties, leases, preemptive rights, in short, any restrictive or conditioning clauses of any nature, including, without limitation, the forms exemplified in this clause"* (clause 1.2).

14.     As absurd as such juridical transaction may seem — the sale of units of interest valued at almost one billion BRL for measly BRL 17,000.00 (seventeen thousand Brazilian Reais) —, this is exactly what is contained in the aforementioned "private agreement for transfer and assignment of units of interests and other covenants". Needless to say, of course, this fakery price was never paid.

15.     That juridical transaction, in point of fact, is clearly null and void, for a number of reasons, as described in the complaint brief of the action for provisional remedy.

16.     The shocking mismatch between the value of the assigned asset and the price of the assignment provided the assignee, herein the defendant, with a fabulous profit, which gives the transaction the smell of a real usury.

17.     Clearly, the illegitimate assignment lacks that which the Common Law calls "legitimate business reason", which deprives the act of one of its key elements, i.e., the price, since it is a derisory price, always despised by positive law (*see* CPC, article 692), is a very-low price; actually no price.

18.     The following sentences address the nullity of the transaction, as already argued in the complaint brief of the action for provisional remedy, containing the relief sought.

19.     Any of the grounds for the relief sought being sufficient in itself, it should be noted that the signatures on the transfer agreement are forged, never recognized by the alleged signatories, who deny their authenticity.



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -   SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833            FOLHA   7            TRADUÇÃO Nº  I-204.374/23**

<u>NO PRICE</u>

20.      Although the fabrication of the signature, which makes no *apparent* manifestation of the assignor's will, is sufficient to justify the transaction nullity order, another argument is added to that one, equally capable, by itself, of nullifying the assignment of the 348,317 units of interest: it lacks one of its key elements, i.e., the price.

21.      But the defendant will say, 'there was a price', because the 348,317 units of interest were purportedly sold for BRL 17,000.00 (seventeen thousand Brazilian Reais). No, because selling something worth almost BRL 1,000,000,000.00 (one billion Brazilian Reais) for measly BRL 17,000.00 (seventeen thousand Brazilian Reais) is nothing more than "selling" for no price at all (and even that derisory price of BRL 17,000.00 was never paid by the defendant).

22.      Pricing a juridical transaction as less than 0.002% of its real value (and, eventually, without actually paying at least that much) is, in other words, nothing more than giving the sale and purchase a derisory price, a price that is not serious or, more accurately, a price that is not a price, precisely because if the price *"is derisory, there is no sale either, because an agreement in which you witness the aberrant contrast between value and price denies itself"* (CAIO MÁRIO DA SILVA PEREIRA, <u>Instituições de Direito Civil</u>, Contratos, 13 ed., 2009, p. 154).

23.      Very opportune, in summary, the famous conclusion of De Page, whose words could have perfectly been written to describe the case addressed in these records: *"dans ce cas, en effet, il n'y a pas prix dérisoire; il n'y a, tout simplement, pas de prix"* (HENRI DE PAGE, <u>Traité Élémentaire de Droit Civil Belge</u>, vol. IV, part I, 1943, pp. 74/75). Jurists Orlando Gomes and Gustavo Tepedino are of the same mind:

> "The price must be serious, *verum*, as the Romans said. It is necessary that the seller has the intention of charging it and that it consists of a sum that can be deemed as consideration for the asset. Inadmissible, therefore, the fake price, the derisory price, the very-low price. If the price is fictitious, the sale is not valid. The equivalence of obligations does not need to be objective. It is only required that the price be so insignificant as to mean a liberality of the seller or its intention not to charge it" (ORLANDO GOMES, <u>Contratos</u>, 24 ed., 2001, p. 229).

> "Another predicate that must present in the price is seriousness. Very cheap or fictitious prices are rejected, as they suggest simulation, which may give



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833              FOLHA   8              TRADUÇÃO Nº  I-204.374/23

cause for rendering the transaction null and void. Nor is a derisory price that is anomalously below the asset value acceptable" (TEPEDINO, BAROZA and BODIN DE MORAES, Código civil interpretado, II, 2006, p. 140).

24.    Definitely, a price of 0.002% of the asset value sold is not serious. In fact, it cannot even be taken as a price, precisely because *"another predicate that must present in the price is seriousness. Very cheap or fictitious prices are rejected, as they suggest simulation, which may give cause for rendering the transaction null and void. Nor is a derisory price that is anomalously below the asset value acceptable"* (TEPEDINO, BAROZA and BODIN DE MORAES, Código civil interpretado, II, 2006, p. 140).

25.    Without a serious price, the transaction does not exist, which is why, for this reason too, the nullity of the sale and purchase of the 348,317 units of interest in BERTIN FIP must be ordered.

## NULLITY OF THE DISGUISED DONATION

26.    And let it not be said, yet, that the absence of a price makes the sale and purchase, under the terms of article 167 in the Civil Code, a disguised donation, valid in form and substance, to repeat the words of the aforementioned provision.

27.    Liberality, as is known, is an *"essential and specific factor of donation"* (CAIO MÁRIO DA SILVA PEREIRA, Instituições de direito civil, I, 23 ed., p. 554); without it, without *animus donandi*, in other words, the donation lacks one of its key elements, which makes it null and void.

28.    This is, briefly, the issue in these case records: What limited liability company, the existence of which serves to make profit to its members, would donate to a third party, in good conscience, a substantial portion of its assets, in order to make it insolvent?

## TERMINATION FOR DEFAULT

29.    The forgery of the signatures of the alleged seller's legal representatives, and the absence of a price are, as we tried to demonstrate, sufficient reasons to make the sale of the 348,317 units of interest in BERTIN FIP null and void.

30.    Your Honor is also asked, however, on a strictly opportune basis, if deemed existing and valid, to order the termination of the agreement for default; all in



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

LIVRO Nº   833              FOLHA   9              TRADUÇÃO Nº  I-204.374/23

accordance with article 475 of the Civil Code, whereby *"a party injured by non-performance may apply for termination of the agreement, if he does not prefer to demand performance of it, and in either case the injured party has the right to indemnification for loss and damage".*

31.      As known, pursuant to article 481 in the Civil Code, *"by a sale and purchase agreement, one of the contracting parties obligates himself to transfer ownership of a certain thing, and the other, to pay him a certain price in money".* This means that, in what matters, *"the buyer pays the price. No price, no sale and purchase"* (PONTES DE MIRANDA, Tratado de direito privado, 39, 2 ed., 1962, p. 31).

32.      Without payment of the price – which is a key element of the sale and purchase –, the buyer will be in default, giving the seller the right to choose, pursuant to article 475 in the Civil Code, between termination and fulfillment of the obligation to pay the price. As taught by RUY ROSADO DE AGUIAR JÚNIOR, *"in the event of default, the creditor is given the opportunity to choose between the various legal alternatives, depending on the nature of the default"* (Comentários ao novo Código Civil, vol. VI, part II, 2011, p. 542).

33.      Therefore, this lawsuit is to request the judicial termination of the sale, with the return, to the plaintiff, of the 348,317 units of interest in BERTIN FIP, and an award of damages against the defendant, to be calculated in liquidation of award and to comprise also the *"indemnification for positive damage, meaning an indemnification that suffices to put the creditor in the position the creditor would be, if the agreement had been fulfilled"* (REsp 403037/SP, Fourth Panel, judge-rapporteur RUY ROSADO DE AGUIAR, j. 5.28.2002, DJ 8.5.2002, p. 353).

<u>HUGE LOSSES</u>

34.      The illegal transfer of units of interest has generated, and continues to generate, serious damage for the plaintiff, which goes beyond the impossibility of perceiving the proceeds and earnings of said units of interest. It should be noted that, as stated above (*see* item 6), the aforementioned units of interest were pledged to Banco do Brasil, in guarantee of a loan agreement in excess of BRL 120 million (*see* Credit Facility Agreement 189.301.369 and amendments thereto; doc. 6). A quick read of clauses 22 to 24 in the first amendment to the Credit Facility Agreement at issue shows that the plaintiff pledged 601,274.50461 units of interest in BERTIN FIP to Banco do Brasil, and assigned to it all the earnings from such units of interest (doc. 6).

35.      The write-off of such pledge, as a result of the inconsequent "private agreement for transfer and assignment of units of interest and other covenants", the order of



### *MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833            FOLHA   10            TRADUÇÃO Nº  **I-204.374/23**

nullity of which is requested herein, constitutes, of course, a serious breach on the part of the debtor. In addition to exposing the plaintiff to the accelerated maturity of the debt (clause 11, "G" - doc. 6), the write-off of such guarantee also entails great losses to it, consisting of "Delinquency Charges" that it has been obliged to bear, in the terms of clause 5 (doc. 6).

36.     As it will be determined in the liquidation of award, firmly expected to be issued in these case records, as a result of the write-off of the pledge and the consequent fitting of the plaintiff in default, the plaintiff is required to pay permanence commission, delay interest and penalties (clauses 5, *caput*, and 5.1; doc. 6).

37.     But that is not all. Because of this scenario of default, caused by the "private agreement for transfer and assignment of units of interest and other covenants" forged by the defendant, the plaintiff was, furthermore, entered in the list of debtors of Banco do Brasil, which is causing the plaintiff losses, to be likewise evinced at the stage of liquidation.

<u>FUNDAMENTAL RESERVATION</u>

38.     The 348,317 units of interest in BERTIN FIP, transferred by means of the agreement dated 11/11/10, were not - believe me! - the only units of interest illicitly purchased by the defendant. There are, in fact, two other sales not recognized by the purported assignor, herein the plaintiff: the first one dated 12/24/09 (doc. 11) and the second one dated 01/02/10 (doc. 12), the order of nullity of which, nevertheless, will be the subject of a separate lawsuit.

39.     Besides the different dates, both agreements (dated 12/24/09 and 1.2.10) have as object the sale of the same 1,174,351.62425 units of interest in BERTIN FIP and share the same language and design as the agreement dated 11/11/10, object of this lawsuit. That is such a curious coincidence.

<u>RELIEF SOUGHT</u>

40.     Now, therefore, this is to respectfully ask Your Honor:

    a)     an order of nullity of the "private agreement for transfer and assignment of units of interest and other covenants", dated 11/11/10, whereby 348,317 units of interest in BERTIN FIP were purportedly sold;

    b)     adverse judgement on the defendant to return to the plaintiff the 348,317 units of interest in BERTIN FIP, with the consequent entry in the Fund's



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833            FOLHA  11            TRADUÇÃO Nº  I-204.374/23

---

Register of Shareholders, as well as all the units of interest that are issued as a result of the securities discussed herein, whether in view of changes, splits, or other transactions;

c) award of damages against the defendant, to be determined at the stage of liquidation of award;

d) opportunely, an order for voidance of the provisions of the "private agreement for transfer and assignment of units of interest and other covenants" dated 11/11/10, with adverse judgment on the defendant to return to the plaintiff the 348,317 units of interest in BERTIN FIP, and consequent entry in the Fund's Register of Shareholders, and award of damages, to be determined at the stage of liquidation of award;

e) service of process to the defendant, return receipt requested, to its legal representative in Brazil, Mr. GILBERTO BIOJONE, domiciled at Av. Sagitário, 743, 5º Andar, Alphaville Conde II, Barueri, CEP 06473-073, to be attached to the case records;

41.    The plaintiff requests production of forensic, testimonial, and documentary evidence.

42.    As a final point, the plaintiff sets the value in dispute at BRL 17,000.00 (seventeen thousand Brazilian Reais) and informs that its lawyers receive notices in this city, at the addresses contained in the letterhead of this brief.

Grant is requested
São Paulo, July 11, 2013.

*[Signature]*
Sergio Bermudes
OAB/SP 33.031-A
*[Brazilian Bar Association/São Paulo Chapter]*

*[Signature]*
Guilherme Valdetaro Mathias
OAB/RJ 75.643
*[Brazilian Bar Association/Rio de Janeiro Chapter]*

*[Signature]*
Antonio Carlos Velloso Filho
OAB/RJ 94.303
*[Brazilian Bar Association/Rio de Janeiro Chapter]*

*[Signature]*
Renato Resende Beneduzi
OAB/RJ 149.028
*[Brazilian Bar Association/Rio de Janeiro Chapter]*

*[Signature]*
Luiza Perrelli Bartolo
OAB/SP 309.970-A
*[Brazilian Bar Association/São Paulo Chapter]*



## *MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833**          **FOLHA**  12          **TRADUÇÃO Nº  I-204.374/23**

---

T:\ACV\BERTIN X BLESSED INI PRINCIPAL 110713.DOCX

-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-

*[The following four pages are sequentially numbered at the header, as follows]:*
page 2025 *[up to* page 2028, *over* 511 *up to* 514*].*

HONORABLE TRIAL JUDGE FOR THE 5th CIVIL COURT IN THE JUDICIAL DISTRICT OF SÃO PAULO, CENTRAL VENUE

Case No. 1046806-19.2013.8.26.0100

TINTO HOLDING LTDA. and BLESSED HOLDINGS LLC., in the case records of the lawsuit being handled by this Court, herein represented by their respective undersigned lawyers, do hereby respectfully tell, and ask Your Honor:

1.      The plaintiff waives the right on which the lawsuit is based, and issues its waiver of this lawsuit, with the express and irrevocable agreement of the defendant.

2.      The parties further agree that the pledge on the 601,274.50461 (six hundred one thousand, two hundred seventy-four point five zero four six one) units of interest in BERTIN FIP to **BANCO DO BRASIL S.A.,** in connection with Bank Credit Facility 189.301.369, executed by and between the plaintiff and the said financial institution, shall remain in force and effect.

3.      The parties expressly agree that each of them will stand responsible for the costs already disbursed, and the fees to their respective lawyers, and they will waive any claim to loss of suit fees. Hence, there will be no loss of suit fee, whether regarding the reimbursement of court costs and expenses, or loss of suit fees. The remaining costs will be borne by both parties, fifty-fifty.

4.      As a final point, the parties ask the court ratification of this settlement, by judgment, under article 269, III, of the Code of Civil Procedure, and hereby waive the right to appeal against the ratification judgment.

Grant is requested.
São Paulo, November 18, 2013

*[Signature]*
Luiza Perrelli Bartolo
OAB/SP 309.970-A
*[Brazilian Bar Association/São Paulo Chapter]*



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833**          **FOLHA**   13          **TRADUÇÃO Nº  I-204.374/23**

---

TINTO HOLDING LTDA.
            *[Signature]*          *[Insignia of the 39th Public Notary]*

            *[Signature]*
            Mariana Tavares Antunes
            OAB/SP 154.639
            *[Brazilian Bar Association/São Paulo Chapter]*


            *[Signature]*          *[Insignia of the 12nd Public Notary]*
BLESSED HOLDINGS LLC.

*[The document bears, by the 39th Public Notary, seal for signature certification of NATALINO BERTIN, in São Paulo, dated 11/19/2013, duly signed by ELAINE CRISTINA LEITE DOS SANTOS – DEPUTY, under stamp of said office and seal of the Notary College of Brazil – FIRMA 1 number 1072AA770719].*

*[The document also bears, by the 12nd Public Notary, seal for signature certification of GILBERTO DE SOUZA BIOJONE FILHO, in São Paulo, dated 11/19/2013, duly signed by Elaine Xavier Fialho – Authorized Clerk, under stamp of said office and seal of the Notary College of Brazil – FIRMA 1 number 1042AB343585].*

-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-

|  | **COURT OF JUSTICE OF THE STATE OF SÃO PAULO** |
|---|---|
| *[Insignia of the* COURT OF JUSTICE OF THE STATE OF SÃO PAULO*]* | JUDICIAL DISTRICT OF SÃO PAULO<br>CENTRAL CIVIL VENUE<br>5th CIVIL VENUE<br>Praça João Mendes s/nº, 6º andar – salas nº 623/625, Centro – CEP 01501-900,<br>Phone: 2171-6085, São Paulo-SP – Email: sp5cv@tjsp.jus.br |

CERTIFICATE

| Case No.: | **1046806-19.2013.8.26.0100** |
|---|---|
| Class – Matter: | **Ordinary Proceeding – Flaw, nullity, or annulment** |
| Plaintiff: | **Tinto Holding Ltda.** |
| Defendant: | **Blessed Holdings LLC** |

**CERTIFICATE**

I do hereby certify and attest that I reproduced a copy of the judgment issued on the case records of the action for provisional remedy (Case # 1036979-81.2013.8.26.0100). Nothing further. São Paulo, March 12, 2014. I, *[In blank]*, Thiago Kanji Yoshida, Court Clerk.

-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-



### *MANOEL ANTONIO SCHIMDT*
**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

LIVRO Nº   833              FOLHA   14           TRADUÇÃO Nº  **I-204.374/23**

---

page 491

**JUDICIARY BRANCH OF THE STATE OF SÃO PAULO**
**FIFTH CIVIL COURT FOR THE CENTRAL VENUE OF THE JUDICIAL**
**DISTRICT OF SÃO PAULO**
Praça João Mendes Júnior, s/n - 6º Andar - Salas 620/624
São Paulo/SP - Centro - CEP 01501-900
(11) 2171-6085 sp5cv@tjsp.ius.br

---

### JUDGMENT - OFFICIAL NOTICE

Case:          **1036979-81.2013.8.26.0100 (provisional remedy)**
               **1046806-19.2013.8.26.0100 (main lawsuit)**
Plaintiff:     **Tinto Holding Ltda.**
Defendant:     **Blessed Holdings LLC**

*Case records seen.*

I hereby ratify the settlement on pp. 489/490 and dismiss the main lawsuit and the action for provisional remedy, with prejudice, based on article 269, III and V, in the Code of Civil Procedure.

A copy of this judgment, electronically signed by me *(seal on the side of the document with a key to verify authenticity)* shall serve as an <u>official notice to Socopa - Sociedade Corretora Paulista S/A</u>, for **release of units of interest blocked based on the official notice issued by this court on 6.12.2013**, with the parties being in charge of printing and sending it, and subsequently evincing the delivery thereof.

A copy of this judgment shall be reproduced on the case records. Upon the judgment becoming final and unappealable, should there be no costs payable or refundable, please write off and shelve.

To be published, recorded, and notified.

São Paulo, **December 13, 2013**.

Gustavo Coube de Carvalho
Trial Judge
[electronic signature]

1036979-81.2013.8.26.0100 – 1



# *MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420

**LIVRO Nº   833**          **FOLHA**   15          **TRADUÇÃO Nº  I-204.374/23**

*[The document bears at the right-margin of the seventeen preceding pages the following content]:*
This document is a copy of the original, digitally signed by LUIZA PERRELLI BARTOLO, filed on 07/11/2013 at 10:27 pm, under number 10468061920138260100.

*[And the document also bears at the right-margin of the seventeen preceding pages the following content]:*
This document is a copy of the original, digitally signed by HEITOR VITOR MENDONCA FRALINO SICA and the Court of Justice of the State of Sao Paulo, filed on 06/20/2022 at 9:56 pm, under number WJMJ22410254896.
To check the original, access the website https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, and enter process number 1055320-43.2022.8.26.0100 and code D3BDC84.

*[And the document also bears at the right-margin of the last the following content]:*
This document is a copy of the original, digitally signed by GUSTAVO COUBE DE CARVALHO. To access de procedure records, access the website https://esaj.tjsp.jus.br/esej, and enter the case number 1036979-81.2013.8.26.0100 and code 66DF9A.*]*
**************************************************************************
NOTHING ELSE was contained in said original, which I return with this faithful translation. IN WITNESS WHEREOF, I have hereunto set my hand and seal of office, this June 16, 2023.

Satu/25391



*[Digital Signature]*
*MANOEL ANTONIO SCHIMIDT*
*Sworn Translator*





# RELATÓRIO DE ASSINATURAS

**Este documento foi assinado digitalmente na plataforma Portal de Assinaturas sDoc.**

**Verifique as assinaturas em:**

https://sdocs.safeweb.com.br/portal/Validador?publicID=4096AB03-59F6-40D8-AE1F-6FC10D25F8BC

Chave de acesso: 4096AB03-59F6-40D8-AE1F-6FC10D25F8BC



**Hash do documento**

a9aa7fb32bff94fddff1d425789721d94f130026a3244d7a06f5d7882a5c8373

Documento disponível em



**Documento(s) gerado(s) em 16-06-2023, com o(s) seguinte(s) participante(s):**

MANOEL ANTONIO SCHIMIDT - 346.307.328-53 em 16/06/2023 14:48 UTC-03:00
**Tipo de Assinatura:** Digital
**Identificação:** Por e-mail: clenilson.cobra@uts.com.br
**Geolocalização:** Latitude: -23.5488557 Longitude: -46.6335354
**IP:** 189.46.168.140

**Assinatura**



Documento eletrônico assinado digitalmente.
Validade jurídica assegurada conforme
MP 2.200-2/2001, que instituiu a ICP-Brasil

**ICP Brasil**

☰   **e-SAJ** | Consulta de Processos do 1ºGrau

INCIDENTES, AÇÕES INCIDENTAIS, RECURSOS E EXECUÇÕES DE SENTENÇA

Não há incidentes, ações incidentais, recursos ou execuções de sentenças vinculados a este processo.

APENSOS, ENTRANHADOS E UNIFICADOS

| Número | Classe | Apensamento | Motivo |
|---|---|---|---|
| 1036979-81.2013.8.26.0100 | Cautelar Inominada | 01/08/2013 | por determinação judicial fls. 142 |

AUDIÊNCIAS

Não há Audiências futuras vinculadas a este processo.

Este documento é cópia do original, assinado digitalmente por HEITOR VITOR MENDONCA FRALINO SICA e Tribunal de Justiça do Estado de Sao Paulo, protocolado em 20/06/2022 às 21:56 , sob o número WJMJ22410254896
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

ESCRITÓRIO DE ADVOCACIA
## SERGIO BERMUDES

SERGIO BERMUDES
MARCIO VIEIRA SOUTO COSTA FERREIRA
MARCELO FONTES
ALEXANDRE SIGMARINGA SEIXAS
GUILHERME VALDETARO MATHIAS
ROBERTO SARDINHA JUNIOR
JOÃO ALBERTO ROMEIRO
GUSTAVO FERNANDES DE ANDRADE
MARCELO LAMEGO CARPENTER
MARCOS XAVIER FERREIRA MUSA
ANTONIO CARLOS VELLOSO FILHO
FABIANO ROBALINHO CAVALCANTI
MARIA AZEVEDO SALGADO
BRUNO CALFAT
MARCO AURÉLIO DE ALMEIDA ALVES
ERIC CERANTE PESTRE
VITOR FERREIRA ALVES DE BRITO
ANDRÉ SILVEIRA
RODRIGO TANNURI
FREDERICO FERREIRA
ANTONELLA MARQUES CONSENTINO
MARCELO GONÇALVES
RICARDO SILVA MACHADO
RICARDO JUNQUEIRA DE ANDRADE

ANDRE TAVARES
CAROLINA CARDOSO FRANCISCO
MARIANNA FUX
ANDRÉ CHATEAUBRIAND MARTINS
ROBERTO CASTRO DE FIGUEIREDO
PHILIP FLETCHER CHAGAS
LUÍS FELIPE FREIRE LISBÔA
PEDRO PAULO DE BARROS BARRETO
LEONARDO DE CAMPOS MELO
WILSON PIMENTEL
RICARDO LORETTI HENRICI
JAIME HENRIQUE PORCHAT SECCO
GRISSIA RIBEIRO VENÂNCIO
RAPHAEL MONTENEGRO
DIEGO CABRERA
MARCELO BORJA VEIGA
ADILSON VIEIRA MACABU FILHO
CAETANO BERENGUER
RAFAEL DIREITO SOARES
ANA PAULA DE PAULA
ALEXANDRE FONSECA
PEDRO HENRIQUE CARVALHO
RAFAELA FUCCI
GABRIEL LÓS

LOUIS DE CASTEJA
HENRIQUE ÁVILA
RENATO RESENDE BENEDUZI
DIEGO BARBOSA CAMPOS
ALESSANDRA MARTINI
MARIANA ARRUDA DE SOUZA
DANIEL CHACUR DE MIRANDA
PEDRO HENRIQUE NUNES
GABRIEL DE ORLEANS E BRAGANÇA
LUIZA LOURENÇO BIANCHINI
GABRIEL PRISCO PARAÍSO
FABIANA FROES OLIVEIRA
GUIOMAR FEITOSA LIMA MENDES
FLÁVIO JARDIM
GUILHERME COELHO
JORGE LUIZ SILVA ROCHA
ANA LUIZA COMPARATO
LIVIA IKEDA
LIVIA SAAD
JULLIANA CUNHA
ALLAN BARCELLOS L. DE OLIVEIRA
PAULO BONATO
RENATO CALDEIRA GRAVA BRAZIL
VICTOR NADER BUJAN LAMAS

GUILHERME REGUEIRA PITTA
BRUNO COSTA DE ALMEIDA
JULIANA VEGA KLIEN
LUIZA PERRELLI BARTOLO
JOÃO ZACHARIAS DE SÁ
SERGIO SANTOS DO NASCIMENTO
GIOVANNA MARSSARI
ALESSANDRA GUALBERTO

CONSULTORES
AMARO MARTINS DE ALMEIDA (1914-1998)
HÉLIO CAMPISTA GOMES (1925-2004)
SALVADOR CÍCERO VELLOSO PINTO
JORGE FERNANDO LORETTI
ELENA LANDAU
CAIO LUIZ DE ALMEIDA VIEIRA DE MELLO

EXMO. SR. DR. JUIZ DE DIREITO DA 5ª VARA CÍVEL DO FORO CENTRAL DA
COMARCA DE SÃO PAULO – SP

Distribuição por dependência:
Processo nº 1036979-81.2013.26.0100

TINTO HOLDING LTDA. (atual denominação da BRACOL
HOLDING LTDA. - doc. 1), estabelecida, nesta cidade, na Rua 15 de
Novembro, nº 200 – 15º andar, conj. C, sala 2, inscrita no
CNPJ/MF sob o nº 01.597.168/0001-99, vem, por seus advogados
abaixo assinados, regularmente constituídos (doc. 2), propor esta
ação ordinária, por dependência àquela em epígrafe, contra a
BLESSED HOLDINGS LLC., sociedade estabelecida na 3.500 South
Dupont Highway, na cidade de Dover, estado de Delaware, nos
Estados Unidos da América, representada, nesta capital, por seu
mandatário, GILBERTO BIOJONE, domiciliado em Barueri, com
endereço na Avenida Sagitário, 743 – 5º andar, Alphaville Conde
II, pelos seguintes motivos:

www.sbadv.com.br

Rua Frei Caneca, 1380 - 5º e 6º andares - 01307-002 - São Paulo - SP - Tel. (11) 3549 6900 - Fax. (11) 3288 1843 - e-mail:spbermudes@sbadv.com.br
Praça XV de Novembro, 20 - 7º e 8º andares - 20010-010 - Rio de Janeiro - RJ - Tel. (21) 3221 9000 - Fax. (21) 3221 9001 - e-mail:rjbermudes@sbadv.com.br
SHIS QL 14 - Conjunto 05 - Casa 01 - 71640-055 - Brasília - DF - Tel. (61) 3212 1200 - Fax. (61) 3248 0449 - e-mail:dfbermudes@sbadv.com.br

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 104680619201382601100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

## DISTRIBUIÇÃO POR DEPENDÊNCIA

1.       Encontra-se em curso, perante esse MM. Juízo, a ação cautelar preparatória n. 1036979-81.2013.26.0100, em cujos autos se deferiu a medida liminar requerida pela TINTO HOLDING LTDA., aqui também autora, *"para tornar as quotas identificadas nos autos indisponíveis"* (fls. 27). Daí por que agora se ajuíza por dependência, no prazo de trinta dias aludido pelo art. 806 do Código de Processo Civil, a respectiva ação principal.

## COMPETÊNCIA E CITAÇÃO

2.       Praticado, no Brasil, o ato ilícito contra o qual se insurge a autora, é competente a autoridade judiciária nacional, nos termos do inciso III, do art. 88, do Código de Processo Civil. Não tendo a ré, pessoa jurídica, domicílio no Brasil, esta ação é proposta, nesta capital, onde está domiciliada a autora, na conformidade do § 3º do art. 94 do CPC.

3.       Pede-se, outrossim, a citação da ré na pessoa do seu mandatário, praticante do ato que deu origem a esta ação, como determinam o art. 215 e seu parágrafo primeiro, ambos da mencionada lei.

## AS QUOTAS DO BERTIN FIP

4.       A TINTO HOLDING LTDA. (atual denominação da BRACOL HOLDING LTDA.), autora desta ação, é (ou, ao menos, era, como se verá) titular de todas as quotas constitutivas do BERTIN FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, constituído em 26 de novembro de 2009 (cf. instrumento de constituição do fundo – doc. 3), sob a forma de condomínio fechado, e cujos ativos se resumem, essencialmente, ao *"conjunto dos títulos e valores mobiliários de emissão da FB Participações S.A., representado por ações,*

*debêntures conversíveis ou permutáveis em ações de emissão da Companhia"* (cf. notas explicativas às demonstrações de financeiras, relativas aos exercícios findos em 31 de março de 2011 – doc. 4).

5.        O BERTIN FIP detinha, mais precisamente, 2.334.370.128 ações da FB Participações S.A., avaliadas, conforme indicado nas notas explicativas às demonstrações financeiras relativas aos exercícios findos em 31 de março de 2011, em R$4.949.046.000,00 (quatro bilhões novecentos e quarenta e nove milhões e quarenta e seis mil reais). Estas ações perfazem 48,52% das ações ON da FB Participações S.A. (doc. 4). Confira-se também o relatório referente aos exercícios findos até 31 de março de 2012 (doc. 5).

6.        A FB Participações S.A., e isto explica o elevadíssimo valor dos ativos do fundo, é a sociedade controladora, direta ou indiretamente, do gigantesco conglomerado empresarial JBS, que se autoproclama, em seu sítio na internet, como *"a maior empresa em processamento de proteína animal do mundo, atuando nas áreas de alimentos, couro, biodiesel, colágeno e latas"* (cf. http://www.jbs.com.br/QuemSomos.aspx). Lá ainda se lê que a JBS *"está presente em todos os continentes, com plataformas de produção e escritórios no Brasil, Argentina, Itália, Austrália, EUA, Uruguai, Paraguai, México, China, Rússia, entre outros países"*. Recentemente, aliás, publicou-se com alarido na imprensa que após a aquisição do frigorífico MARFRIG, detentor da marca SEARA, a JBS se transformou num conglomerado cujo faturamento anualizado se aproximará de R$ 100 bilhões (cf. notícia disponível em http://g1.globo.com/economia/noticia/2013/06/jbs-assumira-lideranca-global-em-aves-apos-compra-da-seara-1.html).

7.        Por esse motivo, o patrimônio líquido médio do BERTIN FIP, conforme indicado nas notas explicativas às demonstrações financeiras relativas aos exercícios findos em 31 de março de

2011 (doc. 4), alcançava R$ 4.937.636.000,00 (quatro bilhões novecentos e trinta e sete milhões e seiscentos e trinta e seis reais). Este valor alcançou, em 31.03.12, R$ 4.949.046.000,00 (quatro bilhões novecentos e quarenta e nove milhões e quarenta e seis mil reais – doc. 5).

8.        Por meio do BERTIN FIP — que, por sua vez, detém parte da FB Participações S.A. —, a autora, deste modo, tem participação acionária no conglomerado JBS S/A.

SURPRESA E ESTARRECIMENTO

9.        Como garantia de diversos empréstimos ao BANCO DO BRASIL, a autora deu em penhor ao mutuante, em 11.08.10, 601.274,50461 quotas do BERTIN FIP, e cedeu a ele os direitos creditórios sobre os dividendos e juros sobre capital próprio decorrentes dessas mesmas quotas (cf. cláusulas 22 e 23 da respectiva cédula de crédito bancário e 1° Aditivo – doc. 6).

10.       Esse penhor foi devidamente informado a então administradora do fundo, CITIBANK DTVM S.A., por carta datada de 01°.9.10, na qual também se pediu a transcrição do penhor no livro de registro de quotistas (doc. 7). Logo em seguida, em 28.10.10, o CITIBANK manifestou seu "de acordo", confirmando também o registro do penhor das aludidas quotas (doc. 7).

11.       Quando a autora notificou a SOCOPA para entregar ao Banco do Brasil os rendimentos das 601.274,50461 quotas dadas em penhor a ele, foi golpeada pela notícia de que seria titular de apenas 253.249,93483000 quotas, porque as demais haviam sido transferidas à ora ré BLESSED HOLDINGS LLC (veja-se a comunicação da SOCOPA, cuja cópia agora se exibe, como doc. 8).

### CESSÃO INEFICAZ

12.        O sumiço de tantas quotas, cujo valor, à época, atingia aproximadamente R$ 970.000.000,00 (novecentos e setenta milhões), conforme se apurou posteriormente, deve-se à existência de um esdrúxulo "instrumento particular de cessão e transferência de quotas e outras avenças" (doc. 9), datado de 11.11.10. Por meio desse contrato, teria a autora, supostamente, cedido à BLESSED HOLDINGS LLC, empresa estrangeira, sediada num *paraíso fiscal* norte-americano, "*348.317 (trezentas e quarenta e oito mil trezentas e dezessete) quotas do fundo, pelo valor certo e ajustado de R$ 17.000,00 (dezessete mil reais*" (cf. cláusula 1.1 do aludido instrumento).

13.        Isto com a ressalva, mentirosa aliás, considerando-se ter sido o penhor dado e registrado antes desta suposta cessão (dado em 11.08.10 e cujo registro foi confirmado pelo CITIBANK DTVM. S.A. em 28.10.11), que "*as quotas ora cedidas encontram-se totalmente integralizadas e livres e desembaraçadas de quaisquer ônus, judiciais ou extrajudiciais, cauções, penhores, gravames, direitos de terceiros, disputas judiciais, garantias, arrendamentos, direitos de preferência, enfim, quaisquer cláusulas restritivas ou condicionantes de qualquer natureza, incluindo, sem limitação, as formas exemplificadas nessa cláusula*" (cláusula 1.2).

14.        Por mais absurdo que este negócio jurídico possa parecer — a venda de quotas avaliadas em quase um bilhão de reais por míseros R$ 17.000,00 (dezessete mil reais) —, é isto, exatamente, que consta do aludido "instrumento particular de cessão e transferência de quotas e outras avenças". Desnecessário dizer, obviamente, que este preço de fancaria nunca foi pago.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 1046806192013826010.
Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 30/06/2022 às 21:56 , sob o número WJMJ22410254896
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

15.        Este negócio jurídico, com efeito, é flagrantemente
nulo, por diferentes motivos, como se assinalou na inicial da
ação cautelar.

16.        O chocante descompasso entre o valor do bem cedido e o
preço da cessão propiciou à cessionária, ora ré, um lucro
fabuloso, o que faz o negócio recender usura real.

17.        Visivelmente, a viciosa cessão padece da falta do que o
Direito Comum chama de "Legitimate business reason", que despoja
o ato de um dos seus elementos essenciais, que é o preço,
porquanto preço ínfimo, sempre desprezado pelo direito positivo
(v.g. CPC, art. 692), é preço vil; na verdade, nenhum preço.

18.        Da nulidade do negócio, já afirmada na inicial da
cautelar, dão contas os parágrafos subsequentes, onde se mostram
os fundamentos dos pedidos afinal formulados.

19.        Suficiente por si só qualquer dos fundamentos do
pedido, deve se assinalar que as assinaturas no instrumento de
transferência são falsas, jamais reconhecidas pelos supostos
signatários, que lhes negam autenticidade.

### AUSÊNCIA DE PREÇO

20.        Embora a falsidade da assinatura, que faz nenhuma a
aparente manifestação de vontade do cedente, baste para
fundamentar a declaração de nulidade do negócio, a este argumento
se soma outro, igualmente hábil a, por si só, tornar também nula
a alienação das 348.317 quotas: falta-lhe um elemento negocial
essencial, o preço.

21.        Mas houve preço, dirá a ré, porque as 348.317 quotas
teriam sido vendidas por R$ 17.000,00 (dezessete mil reais). Não,

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 1046806192013826010.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

porque vender algo que vale quase R$ 1.000.000.000,00 (um bilhão de reais) por apenas R$ 17.000,00 (dezessete mil reais) não passa, pura e simplesmente, de "vender" por preço nenhum (e mesmo este preço irrisório, de R$ 17.000,00, nunca veio a ser pago pela ré).

22.    Atribuir a um negócio jurídico um preço que corresponde a menos de 0,002% de seu valor real (e, aliás, nem isto efetivamente pagar) nada mais é, em outras palavras, do que dar à compra e venda um preço irrisório, vil, um preço que não é sério ou, mais precisamente, um preço que não é preço, exatamente porque se o preço *"for irrisório, venda também não há, porque um contrato em que se presencia o contraste aberrante entre valor da coisa e preço nega-se a si mesmo"* (CAIO MÁRIO DA SILVA PEREIRA, Instituições de Direito Civil, Contratos, 13ª ed., 2009, p. 154).

23.    Oportuníssima, em síntese, a célebre conclusão de De Page, cujas palavras poderiam perfeitamente ter sido escritas para descrever o caso tratado nestes autos: *"dans ce cas, en effet, il n'y a pas prix dérisoire; il n'y, tout simplement, pas de prix"* (HENRI DE PAGE, Traité Élémentaire de Droit Civil Belge, Tomo IV, 1ª Parte, 1943, pp. 74/75). Neste sentido, também autores como Orlando Gomes e Gustavo Tepedino:

> "O preço deve ser sério; verum como diziam os romanos. Necessário que o vendedor tenha a intenção de exigi-lo e consista em soma que possa ser considerado como contrapartida da coisa. Inadmissíveis, portanto, o preço simulado, o preço irrisório, o preço vil. Se fictício não vale a venda. A equivalência das prestações não precisa ser objetiva. Exigindo-se apenas que o preço seja tão insignificante que signifique liberalidade do vendedor ou o seu propósito de não exigir" (ORLANDO GOMES, Contratos, 24ª ed., 2001, p. 229).

.-.-.-.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 1046806192013826010 0.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

> "Outro predicado que deve apresentar o preço é a
> seriedade. São repelidos preços vis ou fictícios, pois
> sugerem simulação, o que acaba por gerar a invalidade
> do negócio. Tampouco se admite preço irrisório que
> esteja, de modo anômalo, aquém do valor da coisa"
> (TEPEDINO, BAROZA e BODIN DE MORAES, Código civil
> interpretado, II, 2006, p. 140)

24.     Definitivamente, um preço de 0,002% do valor da coisa
vendida não é sério. Aliás, sequer pode ser tido como preço,
exatamente porque "*outro predicado que deve apresentar o preço é
a seriedade. São repelidos preços vis ou fictícios, pois sugerem
simulação, o que acaba por gerar a invalidade do negócio.
Tampouco se admite preço irrisório que esteja, de modo anômalo,
aquém do valor da coisa*" (TEPEDINO, BARBOZA e BODIN DE MORAES,
Código civil interpretado, II, 2006, p. 140).

25.     Sem que exista preço sério o negócio não existe, razão
pela qual, por mais esta razão, deve ser declarada a nulidade da
compra e venda das 348.317 quotas do BERTIN FIP.

A NULIDADE DA DOAÇÃO DISSIMULADA

26.     E não se diga, ainda, que a ausência de preço torna a
compra e venda, nos termos do disposto no art. 167 do Código
Civil, uma doação dissimulada, *válida na substância e na forma*
para se repetir os termos do aludido dispositivo.

27.     A liberalidade, como se sabe, "*é fator essencial e
específico*" (CAIO MÁRIO DA SILVA PEREIRA, Instituições de direito
civil, I, 23ª Ed., p. 554) da doação; sem ela, sem o *animus
donandi*, em outras palavras, falta à doação um de seus elementos
essenciais, o que a faz nula.

28.     Esta é, em síntese, a hipótese destes autos: que
sociedade limitada, cuja existência serve para dar lucro a seus

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 1046806192013826010O.
Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 20/06/2022 às 21:56 , sob o número WJMJ22410254896
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

sócios, doaria para um terceiro, em sã consciência, substancial parcela de seu patrimônio, de modo a torná-la insolvente?

### RESOLUÇÃO POR INADIMPLEMENTO

29.    A falsidade das assinaturas dos representantes legais da suposta vendedora e a ausência de preço são, como se tentou demonstrar, razões suficientes para a declaração de nulidade da alienação das 348.317 quotas do BERTIN FIP.

30.    Pede-se a V.Exa. ainda, todavia, em caráter estritamente eventual, caso o dê por existente e válido, a decretação da resolução deste contrato, com fundamento no seu inadimplemento; tudo nos termos do disposto no art. 475, do Código Civil, segundo o qual *"a parte lesada pelo inadimplemento pode pedir a resolução do contrato, se não preferir exigir-lhe o cumprimento, cabendo, em qualquer dos casos, indenização por perdas e danos"*.

31.    Pelo contrato de compra e venda, como se sabe, na dicção do art. 481 do Código Civil, *"um dos contratantes se obriga a transferir o domínio de certa coisa, e o outro, a pagar-lhe certo preço em dinheiro"*. Quer-se dizer com isto, no que presentemente interessa, que *"o comprador presta o preço. Sem preço, não há compra-e-venda"* (PONTES DE MIRANDA, Tratado de direito privado, 39, 2ª ed., 1962, p. 31).

32.    Sem o pagamento do preço, elemento essencial da compra e venda, será inadimplente o comprador, dando-se ao vendedor o direito de optar, na forma do art. 475 do Código Civil, entre a resolução e o cumprimento da obrigação de pagar o preço. Como ensina RUY ROSADO DE AGUIAR JÚNIOR, *"ocorrendo o incumprimento, abre-se ao credor a oportunidade para escolher entre as diversas alternativas legais, conforme a natureza do incumprimento"*

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 10468061920138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

(Comentários ao novo Código Civil, vol. VI, tomo II, 2011, p. 542).

33.       Pede-se nesta demanda, por consequência, a resolução judicial da alienação, com a devolução à autora das 348.317 quotas do BERTIN FIP, condenando-se a ré ainda ao pagamento de perdas e danos, a serem apuradas em liquidação de sentença, que deverão compreender também "*a indenização pelo dano positivo, isto é, aquela suficiente para colocar o credor na situação em que estaria caso o contrato tivesse sido cumprido*" (REsp 403037/SP, Quarta Turma, Rel. Min. RUY ROSADO DE AGUIAR, j. 28.05.2002, DJ 05.08.2002, p. 353).

## PREJUÍZOS ENORMES

34.       A transferência ilegal das quotas gerou e continua a gerar graves prejuízos para a autora, que vão além da impossibilidade de perceber os frutos e rendimentos das referidas quotas. Note-se que, consoante acima se afirmou (cf. item 6), as referidas quotas estavam empenhadas ao Banco do Brasil, garantindo um contrato de mútuo, superior a R$ 120 milhões (cf. Cédula de Crédito Bancário n° 189.301.369 e respectivos aditivos – doc. 6). Uma rápida leitura das cláusulas 22 a 24 do primeiro aditivo da Cédula de Crédito Bancário em referência permite ver que a autora empenhou 601.274,50461 quotas do BERTIN FIP em benefício do Banco do Brasil, e cedeu a ele todos os rendimentos decorrentes de tais quotas (doc. 6).

35.       A baixa desse penhor decorrente do irresponsável "instrumento particular de cessão e transferência de quotas e outras avenças", cuja declaração de nulidade se pleiteia nesta ação, naturalmente, configura grave inadimplemento por parte da devedora. Além de expor a autora ao vencimento antecipado da dívida (cláusula 11, "G" – doc. 6), a baixa dessa garantia

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 10468061920138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pro/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

acarreta também a ela grandes prejuízos, consistentes em "Encargos de inadimplemento" que ela vem sendo obrigada a arcar, nos termos da cláusula 5 (doc. 6).

36.     Como será apurado na liquidação da sentença de procedência que deverá ser, seguramente, proferida neste processo, em razão da baixa do penhor e do consequente enquadramento da autora como inadimplente, ela é obrigada a pagar verbas relativas à comissão de permanência, juros moratórios e multas (cláusulas 5, caput, e 5.1 – doc. 6).

37.     Mas não é só. Em decorrência desse quadro de inadimplemento, causado pelo "instrumento particular de cessão e transferência de quotas e outras avenças" forjado pela ré, a autora também foi incluída pelo Banco do Brasil nos cadastros de devedores, o que também lhe vem causando prejuízos e serão igualmente demonstrados em sede de liquidação.

## RESSALVA FUNDAMENTAL

38.     As 348.317 quotas do BERTIN FIP transferidas mediante o instrumento de 11.11.10 não foram, pasme-se, as únicas quotas do fundo ilicitamente adquiridas pela ré. Existem, com efeito, outras duas alienações não reconhecidas pela aparente cedente, agora autora, a primeira de 24.12.09 (doc. 11) e a segunda de 2.01.10 (doc. 12), cuja declaração de nulidade, todavia, será objeto de outra demanda.

39.     Embora com datas distintas, ambos os instrumentos (de 24.12.09 e de 02.01.10) têm também por objeto a alienação das mesmas 1.174.351,62425 quotas do BERTIN FIP, e compartilham idêntica redação e mesmo padrão gráfico que o instrumento de 11.11.10, objeto desta demanda. Curiosíssima coincidência.

Este documento é cópia do original, assinado digitalmente por LUIZA PERRELLI BARTOLO, protocolado em 11/07/2013 às 22:27 , sob o número 10468061920138260100.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código D3BDC84.

PEDIDOS

40.        Diante de tudo quanto exposto, pede-se a V.Exa. o
seguinte:

a) a declaração de nulidade do "Instrumento particular
de cessão e transferência de quotas e outras
avenças", de 11.11.10, de acordo com o qual teriam
sido alienadas as 348.317 quotas do BERTIN FIP;

b) a condenação da ré a devolver à autora as 348.317
quotas do BERTIN FIP, com a consequente averbação
no Livro de Registro de Cotistas do fundo, bem como
todas as quotas que forem emitidas em decorrência
dos títulos aqui debatidos, seja em razão de
mutações, desdobramentos ou outras operações;

c) a condenação da ré ao pagamento de indenização
pelas perdas e danos causadas, a serem apuradas em
liquidação de sentença;

d) em caráter eventual, a decretação da resolução do
pretenso negócio consubstanciado no "Instrumento
particular de cessão e transferência de quotas e
outras avenças", de 11.11.10, condenando-se a ré a
devolver à autora as 348.317 quotas do BERTIN FIP,
e a consequente averbação no Livro de Registro de
Cotistas do fundo, e, ainda ao pagamento de perdas
e danos, a serem apuradas em liquidação de
sentença;

e) a citação da ré, mediante Aviso de Recebimento
(A.R.), na pessoa de seu representante legal no
Brasil, Sr. GILBERTO BIOJONE, domiciliado na
Avenida Sagitário, nº 743, 5º andar, Alphaville
Conde II, Barueri, CEP 06473-073, para que fique
integrada no processo desta ação.

41.        Protesta pela produção de prova pericial, testemunhal e
documental suplementar.

42.     Por fim, a autora dá à causa o valor de R$ 17.000,00 (dezessete mil reais), e informa que seus advogados recebem intimações, nesta cidade, no endereço constante do timbre desta petição.

Nestes termos,
P.deferimento.
São Paulo, 11 de julho de 2013.

Sérgio Bermudes
OAB/SP 33.031-A

Guilherme Valdetaro Mathias
OAB/RJ 75.643

Antonio Carlos Velloso Filho
OAB/RJ 94.303

Renato Resende Beneduzi
OAB/RJ 149.028

Luiza Perrelli Bartolo
OAB/SP 309.970-A

7:\ACV\BENTIN X BLESSED INI PRINCIPAL 110713.DOCX

Este documento é cópia do original, assinado digitalmente por SERGIO BERMUDES, protocolado em 11/07/2013 às 17:08:55, sob o número WJM.J2241025 4896. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1066808-49.2013.8.26.0100 e código 006D0B34.

# Exhibit 11

COPY

**RE-RATIFICATION OF PRIVATE INSTRUMENT OF TRANSACTION AND OTHER PACTS
SIGNED BETWEEN BLESSED AND TINTO ON NOVEMBER 18, 2013**

By this instrument, on one hand,

**BLESSED HOLDINGS LLC**, a company established according to the laws of the United States of America, with head office at South Dupont Highway, 3500, Dover, Delaware, United States of America, enrolled in CNPJ (Cadastro Nacional de Pessoa Jurídica [National Registry of Legal Entities]) / MF (Ministério da Fazenda [Ministry of Finance]) under no. 11.441.489/0001-53, henceforth designated as "**BLESSED**";

And on the other hand,

**TINTO HOLDING LTDA.**, a limited company with head office at Rua 15 de novembro, 200, 15o. Andar, Centro, CEP 01013-905, in the city of São Paulo, State of São Paulo, enrolled in CNPJ/MF with no. 01.597.168/0001-99, herein represented pursuant to its Articles of Incorporation, henceforth designated as "**TINTO**";

Both individually designated as "Party" or collectively as "Parties", decide hereto to RECTIFY AND RATIFY the **PRIVATE INSTRUMENT OF TRANSACTION AND OTHER PACTS** signed on November 18, 2013, which comes into force with the following wording:

**PRIVATE INSTRUMENT OF TRANSACTION AND OTHER PACTS**

**BLESSED HOLDINGS LLC**, a company established according to the laws of the United States of America, with head office at South Dupont Highway, 3500, Dover, Delaware, United States of America, enrolled in CNPJ/MF under no. 11.441.489/0001-53, henceforth designated as "**BLESSED**";
And
**TINTO HOLDING LTDA.**, a limited company with head office at Rua 15 de novembro, 200, 15o. Andar, Centro, CEP 01013-905, in the city of São Paulo, State of São Paulo, enrolled in CNPJ/MF with no. 01.597.168/0001-99, herein represented pursuant to its Articles of Incorporation, henceforth designated as "**TINTO**";

Collectively named as "**TRANSACTORS**", sign this instrument, "**AGREEMENT**", as follows:

Whereas:

1. That **TINTO**, on this date, signs **AGREEMENT OF ASSIGNMENT AND TRANSFER OF SHARES IN INVESTMENT FUND ("TRANSFER AGREEMENT")**, whereby disposes to **J&F INVESTIMENTOS S.A. ("J&F")** all its shares in the **BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES ("FIP BERTIN")**;

[signatures]

2. That **FIP BERTIN** will participate in the **TRANSFER AGREEMENT** as Consenting Intervening Party;

And

3. The **TRANSACTORS** further enter into another two assignments of **BERTIN FIP** shares, dated 12/24/2009 and 11/11/2010;

Hereby mutually agree to the following transaction, pursuant to article 840 of the Civil Code:

FIRST CLAUSE:

The **TRANSACTORS** ratify: (i) the PRIVATE INSTRUMENT OF TRANSACTION AND OTHER AGREEMENTS signed on 12/24/2009, whereby 1,174,351.62425 (one million one hundred seventy-four thousand three hundred fifty-one units, sixty-two thousand four hundred twenty-five hundredths of thousandths) shares in **FIP BERTIN** were transferred from **TINTO** to **BLESSED**; and (ii) the PRIVATE INSTRUMENT OF TRANSACTION AND OTHER AGREEMENTS signed on 11/11/2010, whereby 348,317 (three hundred forty-eight thousand three hundred seventeen) shares in **FIP BERTIN** were transferred from **TINTO** to **BLESSED**.

SECOND CLAUSE:

**BLESSED** declares that is fully and unequivocally aware of all the terms of the **TRANSFER AGREEMENT** signed on this date between **TINTO** and **J&F**, and fully agrees with all its clauses and obligations therein undertaken by the parties.

THIRD CLAUSE:

**BLESSED** commits to sign all documents required for the fulfillment of the obligations undertaken by all parties to the **TRANSFER AGREEMENT**, including as a **BERTIN FIP** shareholder, in order to consent with the transfer of shares therein set forth, as well as to vote in such a way that **BERTIN FIP** also acts in order to comply with the agreed in the same **TRANSFER AGREEMENT**.

FOURTH CLAUSE:

**BLESSED** commits to not undertake any judicial or extrajudicial measure to void, invalidate or otherwise challenge the **TRANSFER AGREEMENT**.

FIFTH CLAUSE:

This transaction is entered into in an irrevocable and irreversible manner, pursuant to article 840 of the Civil Code.

[signatures]

SIXTH CLAUSE:

The TRANSACTORS choose the District Court of São Paulo, State of São Paulo, to file and settle any disputes arising from this instrument, with express waiver of any other, as much privileged it may be.

      Hence, having thus agreed, they sign this document in three copies of equal content and form.

São Paulo, November 19, 2013.

[signature]                                                                                          [signature]
_____                    _____
    BLESSED HOLDINGS LLC.                            TINTO HOLDING LTDA.

Witnesses:

[signature]                                                               [signature]
Name: [hw:] *SANDRA NAVES DA SILVA*        Name:
ID: [hw:] *24.775.112-1*                                   ID: [hw:] *3.960.784-1 PR*

[page with illegible watermark]



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**Re-ratificação - Tinto e Blessed**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_____
Dan McCourt

Sworn to before me this
July 18, 2023



_____
Signature, Notary Public

_____
Stamp, Notary Public


CÓPIA

**RE-RATIFICAÇÃO DO INSTRUMENTO PARTICULAR DE TRANSAÇÃO E OUTROS PACTOS FIRMADO ENTRE BLESSED E TINTO EM 18 DE NOVEMBRO DE 2013**

Pelo presente instrumento, de um lado,

**BLESSED HOLDINGS LLC.**, sociedade constituída de acordo com as leis dos Estados Unidos da América, com sede em South Dupont Highway, 3500, Dover, Delaware, Estados Unidos da América, inscrita no CNPJ/MF sob o nº 11.441.489/0001-53, doravante denominada "**BLESSED**";

e, de outro lado,

**TINTO HOLDING LTDA.**, sociedade empresária limitada com sede na Rua 15 de novembro, 200, 15º Andar, Centro, CEP 01013-905, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 01.597.168/0001-99, neste ato representada na forma do seu Contrato Social, doravante denominada "**TINTO**";

ambos, designados individualmente como "Parte" ou, em conjunto como "Partes", resolvem, neste ato, RETIFICAR E RATIFICAR o **INSTRUMENTO PARTICULAR DE TRANSAÇÃO E OUTROS PACTOS** firmado em 18 de novembro de 2013, que passa a vigorar com a seguinte redação:

## INSTRUMENTO PARTICULAR DE TRANSAÇÃO E OUTROS PACTOS

**BLESSED HOLDINGS LLC.**, sociedade constituída de acordo com as leis dos Estados Unidos da América, com sede em South Dupont Highway, 3500, Dover, Delaware, Estados Unidos da América, inscrita no CNPJ/MF sob o nº 11.441.489/0001-53, doravante denominada "**BLESSED**";
e
**TINTO HOLDING LTDA.**, sociedade empresária limitada com sede na Rua 15 de novembro, 200, 15º Andar, Centro, CEP 01013-905, na Cidade de São Paulo, Estado de São Paulo, inscrita no CNPJ/MF sob o nº 01.597.168/0001-99, neste ato representada na forma do seu Contrato Social, doravante denominada "**TINTO**";

Em conjunto denominadas "**TRANSATORAS**", firmam o presente instrumento, "**CONTRATO**", nos seguintes termos:

Considerando:

1. Que a **TINTO** firma, nesta data, **CONTRATO DE CESSÃO E TRANSFERÊNCIA DE COTAS DE FUNDO DE INVESTIMENTO** ("**CONTRATO DE TRANSFERÊNCIA**"), de acordo com o qual aliena à **J&F INVESTIMENTOS S.A.** ("**J&F**") a totalidade das suas quotas no **BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES** ("**FIP BERTIN**");

2. Que o **FIP BERTIN** participará do **CONTRATO DE TRANSFERÊNCIA** como Interveniente Anuente;

e

3. As **TRANSATORAS** celebraram, ainda, duas outras cessões de quotas do **BERTIN FIP**, datadas de 24.12.09 e 11.11.10;

Ajustam entre si a seguinte transação, nos termos do art. 840 do Código Civil:

**CLÁUSULA PRIMEIRA**

As **TRANSATORAS** ratificam: (i) o INSTRUMENTO PARTICULAR DE CESSÃO E TRANSFERÊNCIA DE QUOTAS E OUTRAS AVENÇAS firmado em 24.12.2009, pelo qual foram transferidas 1.174.351,62425 (um milhão, cento e setenta e quatro mil, trezentas e cinquenta e uma unidades, sessenta e dois mil quatrocentos e vinte e cinco centésimos de milésimos) quotas da **TINTO** no FIP **BERTIN** à **BLESSED**; e (ii) o INSTRUMENTO PARTICULAR DE CESSÃO E TRANSFERÊNCIA DE QUOTAS E OUTRAS AVENÇAS firmado em 11.11.2010, pelo qual foram transferidas 348.317 (trezentos e quarenta e oito mil, trezentos e dezessete) quotas da **TINTO** no **FIP BERTIN** à **BLESSED**.

**CLÁUSULA SEGUNDA**

A **BLESSED** declara ter plena e inequívoca ciência de todos os termos do **CONTRATO DE TRANSFERÊNCIA** firmado nesta data entre a **TINTO** e a **J&F**, e concorda integralmente com todas as suas cláusulas e as obrigações lá assumidas pelas partes.

**CLÁUSULA TERCEIRA**

A **BLESSED** se obriga a assinar todos os documentos necessários ao cumprimento das obrigações assumidas por todas as partes do **CONTRATO DE TRANSFERÊNCIA**, inclusive na qualidade de quotista do **BERTIN FIP**, de modo a anuir com a transferência de quotas lá prevista, bem como para votar no sentido de que o **BERTIN FIP** também atue para cumprir o pactuado no mesmo **CONTRATO DE TRANSFERÊNCIA**.

**CLÁUSULA QUARTA**

A **BLESSED** se obriga a não adotar qualquer medida, judicial ou extrajudicial, para anular, invalidar ou de qualquer forma impugnar o **CONTRATO DE TRANSFERÊNCIA**.

**CLÁUSULA QUINTA**

A presente transação é celebrada em caráter irrevogável e irretratável, nos termos do art. 840 do Código Civil.



## CLÁUSULA SEXTA

As **TRANSATORAS** elegem o Foro da Comarca de São Paulo, Estado de São Paulo, para conhecer e dirimir qualquer litígio decorrente do presente instrumento, com expressa renúncia de qualquer outro, por mais privilegiado que seja.

Desse modo, por estarem justos e acertados, assinam a presente em três vias de igual teor e forma.

São Paulo, 19 de novembro de 2013.

BLESSED HOLDINGS LLC.

TINTO HOLDING LTDA.

**Testemunhas:**

1.
Nome SANDRA NAVES DA SILVA

RG. 24.375 112-1

2.
Nome

RG. 3.960 789-1 R

# Exhibit 12



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo - SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833          FOLHA   12          TRADUÇÃO Nº   I-204.374/23**

---

T:\ACV\BERTIN X BLESSED INI PRINCIPAL 110713.DOCX
-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-.-
*[The following four pages are sequentially numbered at the header, as follows]:*
*page 2025 [up to* page 2028, *over* 511 *up to* 514].

HONORABLE TRIAL JUDGE FOR THE 5th CIVIL COURT IN THE JUDICIAL DISTRICT OF SÃO PAULO, CENTRAL VENUE

Case No. 1046806-19.2013.8.26.0100

TINTO HOLDING LTDA. and BLESSED HOLDINGS LLC., in the case records of the lawsuit being handled by this Court, herein represented by their respective undersigned lawyers, do hereby respectfully tell, and ask Your Honor:

1.     The plaintiff waives the right on which the lawsuit is based, and issues its waiver of this lawsuit, with the express and irrevocable agreement of the defendant.

2.     The parties further agree that the pledge on the 601,274.50461 (six hundred one thousand, two hundred seventy-four point five zero four six one) units of interest in BERTIN FIP to **BANCO DO BRASIL S.A.,** in connection with Bank Credit Facility 189.301.369, executed by and between the plaintiff and the said financial institution, shall remain in force and effect.

3.     The parties expressly agree that each of them will stand responsible for the costs already disbursed, and the fees to their respective lawyers, and they will waive any claim to loss of suit fees. Hence, there will be no loss of suit fee, whether regarding the reimbursement of court costs and expenses, or loss of suit fees. The remaining costs will be borne by both parties, fifty-fifty.

4.     As a final point, the parties ask the court ratification of this settlement, by judgment, under article 269, III, of the Code of Civil Procedure, and hereby waive the right to appeal against the ratification judgment.

Grant is requested.
São Paulo, November 18, 2013

*[Signature]*
Luiza Perrelli Bartolo
OAB/SP 309.970-A
*[Brazilian Bar Association/São Paulo Chapter]*



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo - SP - Tel.: (011) 3291-4420**

**LIVRO Nº   833**          **FOLHA**   13          **TRADUÇÃO Nº   I-204.374/23**

TINTO HOLDING LTDA.
         *[Signature]*          *[Insignia of the 39th Public Notary]*

         *[Signature]*
      Mariana Tavares Antunes
      OAB/SP 154.639
      *[Brazilian Bar Association/São Paulo Chapter]*

               *[Signature]*          *[Insignia of the 12nd Public Notary]*
      BLESSED HOLDINGS LLC.

*[The document bears, by the 39th Public Notary, seal for signature certification of* NATALINO BERTIN, *in São Paulo, dated 11/19/2013, duly signed by* ELAINE CRISTINA LEITE DOS SANTOS – DEPUTY, *under stamp of said office and seal of the* Notary College of Brazil – FIRMA 1 *number* 1072AA770719].

*[The document also bears, by the 12nd Public Notary, seal for signature certification of* GILBERTO DE SOUZA BIOJONE FILHO, *in São Paulo, dated 11/19/2013, duly signed by* Elaine Xavier Fialho – Authorized Clerk, *under stamp of said office and seal of the* Notary College of Brazil – FIRMA 1 *number* 1042AB343585].

-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-

*[Insignia of the* COURT OF JUSTICE OF THE STATE OF SÃO PAULO*]*

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
JUDICIAL DISTRICT OF SÃO PAULO
CENTRAL CIVIL VENUE
5th CIVIL VENUE
Praça João Mendes s/nº, 6º andar – salas nº 623/625, Centro – CEP 01501-900, Phone: 2171-6085, São Paulo-SP – Email: sp5cv@tjsp.jus.br

CERTIFICATE

Case No.:          **1046806-19.2013.8.26.0100**
Class – Matter:    **Ordinary Proceeding – Flaw, nullity, or annulment**
Plaintiff:         **Tinto Holding Ltda.**
Defendant:         **Blessed Holdings LLC**

**CERTIFICATE**

I do hereby certify and attest that I reproduced a copy of the judgment issued on the case records of the action for provisional remedy (Case # 1036979-81.2013.8.26.0100). Nothing further. São Paulo, March 12, 2014. I, *[In blank]*, Thiago Kanji Yoshida, Court Clerk.

-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-·-

fls. 3025

EXMO. SR. DR. JUIZ DE DIREITO DA 5ª VARA CÍVEL DA COMARCA DE SÃO PAULO - FORO CENTRAL

Processo n° 1046806-19.2013.8.26.0100

TINTO HOLDING LTDA. e BLESSED HOLDINGS LLC., nos autos da ação ordinária que, perante esse MM. Juízo a primeira move contra a segunda, vêm, por suas advogadas abaixo assinadas, expor e requerer a V.Exa. o seguinte:

1.      A autora renuncia ao direito em que se funda a ação, manifestando a sua desistência da presente demanda, com o que concorda a ré de forma expressa e irrevogável.

2.      As partes acordam, ainda, que permanecerá válido e vigente o penhor existente sobre as 601.274,50461 (seiscentos e uma mil, duzentos e setenta e quatro vírgula cinco zero quatro seis hum) cotas do BERTIN FIP em favor do BANCO DO BRASIL S.A., decorrentes da Cédula de Crédito Bancário - CCB n° 189.301.369, firmada entre a autora e a referida instituição financeira.

3.      As partes acordam expressamente que cada uma delas será responsável pelas custas já desembolsadas e com os honorários de seus respectivos advogados, e que renunciarão a qualquer pretensão a honorários de sucumbência. Assim, não haverá qualquer ônus de sucumbência, seja no que se refere ao

fls. 2026

2

reembolso de custas e despesas com o processo, seja decorrentes de honorários de sucumbência. As custas remanescentes serão divididas por ambas partes, em iguais porções.

4.       Por fim, requerem as litigantes a homologação por sentença da transação firmada, nos termos do art. 269, III, do Código de Processo Civil, e renunciam desde logo ao direito de interpor recurso contra a sentença homologatória.

Nestes Termos,
P. deferimento,
São Paulo, 18 de novembro de 2013

Luiza Perrelli Bartolo
OAB/SP 309.970

TINTO HOLDING LTDA.

Mariana Tavares Antunes
OAB/SP 154.639

BLESSED HOLDINGS LLC.

# Exhibit 13



*MANOEL ANTONIO SCHIMIDT*

**Tradutor Público e Intérprete Comercial**
**Matrícula Nº 490 da Junta Comercial do Estado de São Paulo**

**Praça da Sé, 21 - 14º Andar - Sala 1.409 – Centro - São Paulo -  SP - Tel.: (011) 3291-4420**

LIVRO Nº   833                    FOLHA   14                    TRADUÇÃO Nº   I-204.374/23

page 491

### JUDICIARY BRANCH OF THE STATE OF SÃO PAULO
### FIFTH CIVIL COURT FOR THE CENTRAL VENUE OF THE JUDICIAL
### DISTRICT OF SÃO PAULO
**Praça João Mendes Júnior, s/n - 6º Andar - Salas 620/624**
**São Paulo/SP - Centro - CEP 01501-900**
**(11) 2171-6085 sp5cv@tjsp.ius.br**

### JUDGMENT - OFFICIAL NOTICE

Case:              **1036979-81.2013.8.26.0100 (provisional remedy)**
                   **1046806-19.2013.8.26.0100 (main lawsuit)**
Plaintiff:       **Tinto Holding Ltda.**
Defendant:    **Blessed Holdings LLC**

*Case records seen.*

I hereby ratify the settlement on pp. 489/490 and dismiss the main lawsuit and the action for provisional remedy, with prejudice, based on article 269, III and V, in the Code of Civil Procedure.

A copy of this judgment, electronically signed by me *(seal on the side of the document with a key to verify authenticity)* shall serve as an <u>official notice to Socopa - Sociedade Corretora Paulista S/A</u>, for **release of units of interest blocked based on the official notice issued by this court on 6.12.2013**, with the parties being in charge of printing and sending it, and subsequently evincing the delivery thereof.

A copy of this judgment shall be reproduced on the case records. Upon the judgment becoming final and unappealable, should there be no costs payable or refundable, please write off and shelve.

To be published, recorded, and notified.

São Paulo, **December 13, 2013**.

Gustavo Coube de Carvalho
Trial Judge
[electronic signature]

1036979-81.2013.8.26.0100 – 1

**fls. 3048**

fls. 491

**PODER JUDICIÁRIO DO ESTADO DE SÃO PAULO**

**QUINTA VARA CÍVEL DO FORO CENTRAL DA COMARCA DA CAPITAL**

Praça João Mendes Júnior, s/n – 6º andar – Salas 620/624

São Paulo/SP – Centro – CEP 01501-900

(11) 2171-6085    sp5cv@tjsp.jus.br

| SENTENÇA - OFÍCIO |
| --- |

Processo:    **1036979-81.2013.8.26.0100 (cautelar)**
             **1046806-19.2013.8.26.0100 (principal)**

Autor(es):   **Tinto Holding Ltda.**

Réu(s):      **Blessed Holdings LLC.**

*Vistos.*

Homologo o acordo de fls.489/490 e julgo extintos os processos principal e cautelar, com resolução de mérito, com base no art. 269, III e V, do Código de Processo Civil.

Cópia da presente sentença, por mim assinada eletronicamente (*chancela na lateral do documento com chave para verificação de autenticidade*), servirá como ofício à *Socopa – Sociedade Corretora Paulista S/A*, para **liberação das quotas bloqueadas com base no ofício emitido por este juízo em 12/06/2013**, cabendo às partes a impressão e encaminhamento, comprovando posteriormente a entrega.

Traslade-se cópia desta sentença para os autos em apenso. Com o trânsito em julgado, não havendo custas em aberto nem sobejando, dê-se baixa e ao arquivo.

P.R.I.

São Paulo, **13 de dezembro de 2013**

Gustavo Coube de Carvalho
Juiz de Direito
[assinatura digital]

1036979-81.2013.8.26.0100 - 1

# Exhibit 14



JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Class**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): JULIANA ROCCO NUNES - SP378477-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
STAKEHOLDERS: TINTO HOLDING LTDA

ATTORNEY(s) INTERESTED PARTY: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

---

p{text-align: justify;}



JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Class**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A , ALEXANDRE DE MENDONCA WALD - SP107872-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , JULIANA ROCCO NUNES - SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
ASSISTANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
STAKEHOLDERS: TINTO HOLDING LTDA
ATTORNEY(s) ASSISTANT: BERNARDO CAVALCANTI FREIRE - SP291471
ATTORNEY(s) ASSISTANT: MARIANA TAVARES ANTUNES - SP154639-A
ATTORNEY(s) ASSISTANT: ALEXANDRE DE MENDONCA WALD - SP107872-A
ATTORNEY(s) INTERESTED PARTY: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A



**REPORT**

This is an ordinary action with a request for urgent relief, filed by the FEDERAL UNION against TINTO HOLDING LTDA., BLESSED HOLDINGS LLC and PINHEIROS FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, with the purpose of granting a court order declaring null the Private Instrument of Assignment and Transfer of Shares and Other Covenants signed between the co-defendants Tinto Holding Ltda. and Blessed Holdings LLC, on 1/2/2010 and 11/11/2010.

The request for urgent relief was partially granted, and the Legal Confidentiality was decreed in relation to the documents that instruct the action.

Urged to comment on the evidence, the Pinheiros Fundos de Investimentos em Participações assistant requested the extinction of the case, without judgment on merit, and requested that expert evidence be presented, having the co-defendants Blessed Holdings LLC and Tinto Holding Ltda. reiterate the preliminary matters raised in their disputes and requesting that documentary evidence be presented, and the plaintiff informed of an absence of interest in producing evidence.

Based upon the request to declare the Private Instrument of Assignment and Transfer of Shares and Other Covenants signed on 1/2/2010 null between Tinto Holding Ltda. (current name of Bracol Holding Ltda.) and Blessed Holdings LLC, that targeted the transfer of 1,174,351.62425 shares, corresponding to 66% of the total shares of Bertin FIP, for a price of USD 10,000.00 and the Private Instrument of Assignment and Transfer of Shares and Other Covenants, signed on 11/11/2010 between Tinto Holding Ltda. (current name of Bracol Holding Ltda.) and Blessed Holdings LLC, for the transfer of another 348,317 shares, corresponding to 20% of the total shares of Bertin FIP, for a price of BRL 17,000.00, with 1,522,668.62425 shares, corresponding to 86% of the shares of the Bertin Fundo de Investimento, currently Pinheiros Fundo de Investimentos e Participações, to return to the assets of the assignor Tinto Holding Ltda., such assets being liable for the burden of taxation. The defendants are ordered to pay attorney fees, set at 10% of the amount attributed to the case, pursuant to § 2 of Art. 85 of the CPC, divided *pro rata.*

Appeal filed by PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES - FIP PINHEIROS, alleging, preliminarily, the existence of a harmful question external to the administrative procedure that is being processed in the CARF, notably due to the admission of the special appeal filed by Tinto; lack of interest to act on the part of the Federal Union due to the use of this action as a substitute for tax relief, the absence of procedural interest of the Federal Union due to the location of Tinto's assets in the amount equivalent to 7.3 billion reais; existence of a necessary passive joinder with the corresponding taxes for the administrative procedure in progress at the CARF, in view of the coincidence of purpose between the present claim and the referred procedure; nullity of the judgment for lack of grounds and failure to assess the evidence in the file; restriction of defense due to the rejection of expert evidence. On the merits, it is alleged that the statute of limitation of the Union's claim to file this claim is lacking. among other allegations, defense restriction, in view of the rejection of the submission of technical expert evidence in order to resolve the controversial points of the claim: if, in fact, there was an alleged gain of taxable capital in the amount of approximately BRL 3.1 billion, originating from the merger of the shares of Bertin Group by JBS Group; and whether there was the alleged asset drain of Tinto assets, with the


Digitally signed by: MARCELO MESQUITA SARAIVA -11/17/2022 4:56:26 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=221117165625967000000264803746
Document number: 221117165625967000000264803746

disposal of the shares it held in FIP Pinheiros to Blessed.

The co-defendant Blessed Holdings LLC also filed an appeal, alleging: external harm due to the special appeal filed in the administrative proceedings that are being processed before CARF; incongruence of the judgment with the limits of the cause of action (Art. 1.013, § 3, II, of the CPC - change in the scope of the action; defense restriction, in view of the absence of the summons of the now appellant to provide documents that substantiated the judgment (Art. 437, § 1 of the CPC); contradictory to uncontroversial evidence and facts in the case files without any grounds (violation of Articles Nos. 373, I, 489, § 1, IV and 1,013, § 3, IV, of the CPC); effective proof of lack of procedural interest, due to the pending administrative process filed precisely to verify the existence or not of a definitive tax credit, in which Tinto listed assets (Arts. 149, VII, 151, III, 185 of the CTN and 330, III, of the CPC); lack of standing of the Attorney General's Office of the National Treasury (Art. 330, II, of the CPC and Art. 12, V, of Complementary Law No. 73/93); standing to sue, there is no indication of the assumptions in the administrative process for the configuration of Blessed's tax liability (Articles Nos. 121, 134 and 142 of the CTN); occurrence of the statute of limitation; legality of the Tinto-Blessed transaction, the juristic act is fully valid, fulfilling the requirements of Art. 104 of the Civil Code and legal pricing; no fraud of any kind, whether the law, creditors; no evidence; absence of the requirements for disregard legal personality (Art. 50 of the Civil Code); violation of the attachment order established in Art. 11 of the LEF; absence of any loss to the Tax Authority - effective taxation pursuant to Art. 2 of Law No. 11,312/2006. Subsidiarily, it requires compliance with the sole paragraph of Art. 116 of the CTN, which prohibits decreeing the nullity of the business, exclusively authorizing the removal of the effects of the transaction to collect tax, with unjust enrichment of the Tinto (Art. 167 of the Civil Code) being prohibited.

With counterarguments, the case files were submitted to this Court.

There are the facts.

p{text-align: justify;}





JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Class**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A , ALEXANDRE DE MENDONCA WALD - SP107872-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , JULIANA ROCCO NUNES - SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
ASSISTANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
STAKEHOLDERS: TINTO HOLDING LTDA
ATTORNEY(s) ASSISTANT: BERNARDO CAVALCANTI FREIRE - SP291471
ATTORNEY(s) ASSISTANT: MARIANA TAVARES ANTUNES - SP154639-A
ATTORNEY(s) ASSISTANT: ALEXANDRE DE MENDONCA WALD - SP107872-A
ATTORNEY(s) INTERESTED PARTY: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

## VOTING

## THE ALLEGED LACK OF STANDING OF THE ATTORNEY GENERAL'S OFFICE OF THE NATIONAL TREASURY.

The Federal Union requested the annulment of the business carried out between TINTO HOLDINGS LTDA. and BLESSED HOLDINGS LLC "with the *return of the assets subject to negotiation to the assignor's assets, TINTO HOLDINGS LTDA being responsible for such assets for the burden of taxation",* guaranteeing the *"useful result of the administrative collection."*

The judgment upheld the action, declaring the TINTO-BLESSED TRANSACTION null, so that, therefore, the FIP shares would return *"to the assets of the assignor Tinto Holding Ltda., being responsible for such assets for the burden of taxation",* so that the annulment of the legal transaction could lead to the restriction of this equity to the detriment of the appellant FIP-PINHEIROS. Thus, the claim which was finalized is of a financial nature, even though it seeks to annul two agreements between Tinto and Blessed.

Since it is a case of a tax nature, it remains justified that the Federal Union should be represented in Court by the treasury body: the Attorney General's Office of the National Treasury, which is why the preliminary ruling deserves to be rejected.

**THE NEED TO PRODUCE TECHNICAL EXPERT EVIDENCE**

Based on the reading of everything set forth herein by the parties, I believe that there is a need to produce technical expert evidence to clarify whether or not there was an impairment of Tinto Holding Ltda assets to the point of making it insolvent through the disposal of the shares it held in FIP Pinheiros to Blessed Holdings LLC, since I do not see enough evidence to unequivocally conclude that the irregularities pointed out in the complaint exist.

These are complex and well-structured corporate transactions, which require an accurate and detailed analysis by an expert in order to ascertain their validity and regularity or not.

The expert evidence was requested in the case files by the now appellant FIP Pinheiros. It is up to the magistrate to decide on the need or not to carry it out, depending on the provisions of Art. 370, *caput* sole paragraph of the CPC/2015. He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

In the case files, the required technical expert evidence was rejected by a decision handed down at a time prior to the judgment, with the following content:

> *"I reject the requirements for expert evidence, because I believe that the case files have sufficient factors to be judged."*

As can be seen, there was a generic rationale for rejecting the requested expert evidence.

In turn, in the judgment now appealed, the Honorable Judge understood that the case entails an early judgment, pursuant to item I of Art. 355 of the CPC, as it is a matter of law and the facts have already been demonstrated by the evidence in the file.

I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert examines, with the expertise peculiar to the case, all the operations carried out by the defendants and now under discussion in order to clarify that specific issue.

Thus, I believe that the judgment handed down should be annulled to decide on returning the case files to the first instance, in order for the required technical expert evidence to be developed, with the other allegations made by the appellant FIP Pinheiros remaining impaired.

**THE ALLEGED DEFENSE RESTRICTION**



Appellant Blessed Holdings LLC, in its appeal, pleads defense restriction as it was not summoned to state its opinions on the documents attached to pgs. 1,178 et seq. of the original case.

In the decision that assessed the declaratory attachments opposed by this appellant, the Court *a quo* thus stated:

> "It turns out that, upon examination of the case files, it is noted that the petition on pages 1143/1145 requested the attachment of the aforementioned documents, as well as the early judgment of the dispute; a request that was analyzed through the decision on page 1188, which was duly summoned, according to the certificate on page 1188v, and its opportunity for the appellant to state the procedural burdens provided for in Article 436 of the CPC. However, despite the fact that the Pinheiros FIP assistant exercised the procedural powers (pages 1190/1224), the appellant BLESSED HOLDINGS LLC chose to remain inert, and comes now, in the event of motions for clarification, to raise the nullity of the judgment based on a precluded matter, in clear violation to the provisions of Article 278 of the CPC:
>
> (...)
>
> Thus, there is no such thing as the aforementioned defense restriction pointed out by the appellant."

The appellant argues that the information contained in these documents contributed to the Court *a quo* ruled on the case against it, understanding that there was simulation.

The appellant BLESSED alleges that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even subpoena the appellant on any documents.

In this regard, it is necessary to transcribe the content of the decision on page 1188 (ID 46187246, p. 53), mentioned by the judgment at the time of assessment of the declaratory attachments:

> "I maintain the previous decision to reject the inclusion of the defendant of the parties indicated on pages 966/967, accepting the arguments of the Federal Union on page 1010, in the sense that the cause of requesting this action is fraud under the law, the object is not to guarantee the tax credit of PA No. 16561720170/2014-01, thus depriving the joinder of parties of said characteristics.
>
> I accept the request for early judgment of the dispute, since it is documentary evidence and all factors were brought to the proceedings.
>
> I change the secrecy of the records to the level of documents as required by the Federal Union."

In this regard, Arts. 436 and 437 of the CPC/15 provide:


Digitally signed by: MARCELO MESQUITA SARAIVA -11/17/2022 4:56:26 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562596700000264803746
Document number: 22111716562596700000264803746

> *"Art. 436. The party, summoned to talk about the document contained in the case files, may:*
>
> *I- challenge the admissibility of documentary evidence;*
>
> *II- challenge its authenticity;*
>
> *III - raise its falsehood, with or without triggering the incident of a falsehood claim;*
>
> *IV- comment on its content.*
>
> *Sole paragraph. In the hypotheses of items II and III, the challenge should be based on a specific argument, not admitting a generic allegation of falsehood.*
>
> *Art. 437. (...)*
>
> *§ 1 Whenever one of the parties requests the attachment of a document to the case files, the judge will hear from the other party, who will have a period of 15 (fifteen) days to adopt any of the positions indicated in Art. 436. "*
>
> *As verified in the case files, in the decision handed down by the floor judgment on pg. 1188 of this case, there is no mention nor any petition on pgs. 1143/1145, which requested the attachment of the documents on pgs. 1178 et seq., nor the fact that new documents were attached.*

However, the above rules were straightforwardly violated, since the Judge ruled on the case in advance, based on the fact that the nullity of the TINTO-BLESSED TRANSACTION was mistakenly concluded, in new documents to which Blessed was not given access. Such documents (pgs. 1,178 et seq.) were used in the judgment to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts ( .. .) are peremptorily proven" (pg. 1247-v).

The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment.

The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction of defense.

Thus, even though BLESSED was summoned on the aforementioned decision on page 1188 (ID 46187246, p. 53), this subpoena does not meet the need for specific subpoenas of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the CPC transcribed above, and the judgment for this basis must be annulled, so that the other parties are summoned about these new documents attached to the case files for manifestation, especially BLESSED.


Digitally signed by: MARCELO MESQUITA SARAIVA -11/17/2022 4:56:26 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562596700000264803746
Document number: 22111716562596700000264803746

In light of the foregoing, I partially grant the appeal of PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES - FIP PINHEIROS, voiding the judgment, and returning the files to the first instance to develop the required technical expert evidence, as well as rejecting the preliminary standing of PGFN argued by the company BLESSED HOLDINGS LLC, and I partially grant its appeal to annul the judgment so that the parties are summoned to comment on the new documents attached to pages 1178 and subsequent pages of the case files, under the above rationale. The examination of the other matters is impaired due to the recognition of the nullity of the appealed judgment.

It is decided.

p{text-align: justify;}

**CIVIL PROCEDURE. ORDINARY ACTION. STANDING OF PGFN. PRELIMINARY REJECTED. REJECTING THE DEVELOPMENT OF TECHNICAL EXPERT EVIDENCE. DEFENSE RESTRICTION. NEED FOR SUMMONS OF THE OTHER PARTIES REGARDING THE NEW DOCUMENTS ATTACHED BY THE FEDERAL UNION. ARTS. 436 AND 467 OF THE CPC. NULLITY OF THE JUDGMENT.**

I - Since the cause is of a tax nature, due to the annulment of the legal transaction between TINTO HOLDINGS LTDA. and BLESSED HOLDINGS LLC, returning the assets under negotiation to the former's assets to responds to the burden of taxation, the representation of the Federal Government, in court, by its treasury body, the Attorney General of the National Treasury, remains justified. Preliminary PGFN standing rejected.



II - The judge is responsible for deciding on the need or not to carry it out, according to the provisions of Art. 370, *caput* and sole paragraph of the CPC/2015. He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

III - In the case of the case files, the expert evidence, required by the now appellant FIP-PINHEIROS, was rejected by a decision handed down at a time prior to the judgment, with the Court a quo believing that the files bring sufficient factors to be judged. In turn, in the appealed judgment, it was understood that the case involves an early judgment, pursuant to the terms of item I of Art. 355 of the CPC, since it is a matter of law and the facts have already been demonstrated by the evidence in the case files.

IV - I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert may examine it, with the expertise specific to the case, all the transactions carried out by the defendants and now under discussion in order to clarify that specific issue.

V - .Thus, I understand that the judgment handed down should be annulled to return the case files to the first instance, in order for the required technical expert evidence to be developed, with the other allegations made by the appellant FIP Pinheiros remaining impaired.

VI - In its appeal, Blessed Holdings LLC pleads defense restriction, for not having been summoned to comment on the documents attached to pages 1,178 et seq. of the present case, alleging that the information contained in these documents contributed to the Court a quo ruling against it, understanding that there was simulation. It adds that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even send a subpoena to the appellant about any documents.

VII - According to the case file, in the decision handed down by the lower court on page 1188 of the present case, there is no mention of the petition on pages 1143/1145, which required the attachment of the documents on pages 1178 et seq., nor to the fact that new documents were attached.

VIII - The rule contained in Arts. 436, *caput* and subsections, and 437, §1, of the CPC was straightforwardly violated, since the court ruled on the case in advance, based, in order to mistakenly conclude that the TINTO-BLESSED TRANSACTION was null, on new documents to which Blessed was not given access. Such documents (pgs. 1,178 et seq.) were used by the court to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts (...) are peremptorily proven" (pg. 1247-v).

IX The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment. The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction



of defense.

X - Thus, even though BLESSED was summoned of the aforementioned decision on page 1188 (ID 46187246, p. 53), this subpoena does not meet the need for specific subpoenas of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the CPC transcribed above, and the judgment for this basis must be annulled, so that the other parties are summoned about these new documents attached to the case files for manifestation, especially BLESSED.

XI- Appeal of BLESSED HOLDINGS LLC partially granted. Appeal of FIP-Pinheiros partially granted to annul the judgment. Preliminary PGFN standing rejected. The examination of the other issues was impaired due to the recognition of the nullity of the appealed judgment.

---

### JUDGMENT

Having seen and reported these records to which the those indicated above are parties, the Fourth Panel, unanimously, decided to partially grant the appeal filed by PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES FIP PINHEIROS, to annul the judgment, return the records to the first instance to develop the required technical expert evidence, as well as to reject the preliminary of standing of the PGFN argued by the company BLESSED HOLDINGS LLC, and to partially grant its appeal to annul the judgment to summon the parties to comment on the new documents attached to pages 1178 et seq. of the file, pursuant to the above reasoning. The examination of the other issues by virtue of the recognition of the nullity of the appealed judgment, pursuant to the terms of the vote of the Judge MARCELO SARAIVA (Reporting Judge), with whom they voted for Dis. Judge MARLI FERREIRA and Dis. Judge MÔNICA NOBRE. Justifiably absent. Dis. Judge ANDRÉ NABARRETE, pursuant to the terms of the report and vote that are an integral part of this judgment.

**CIVIL PROCEDURE. ORDINARY ACTION. STANDING OF PGFN. PRELIMINARY REJECTED. REJECTING THE DEVELOPMENT OF TECHNICAL EXPERT EVIDENCE. DEFENSE RESTRICTION. NEED FOR SUMMONS OF THE OTHER PARTIES REGARDING THE NEW DOCUMENTS ATTACHED BY THE FEDERAL UNION. ARTS. 436 AND 467 OF THE CPC. NULLITY OF THE JUDGMENT.**

I   - Since the cause is of a tax nature, due to the annulment of the legal transaction between TINTO HOLDINGS LTDA. and BLESSED HOLDINGS LLC, returning the assets under negotiation to the former's assets to responds to the burden of taxation, the representation of the Federal Government, in court, by its treasury body, the Attorney General of the National Treasury, remains justified. Preliminary PGFN standing rejected.

II  - The judge is responsible for deciding on the need or not to carry it out, according to the provisions of Art. 370, *caput* and sole paragraph of the CPC/2015. He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

III - In the case of the case files, the expert evidence, required by the now appellant FIP-PINHEIROS, was rejected by a decision handed down at a time prior to the judgment, with the Court a quo believing that the files bring sufficient factors to be judged. In turn, in the appealed judgment, it was understood that the case involves an early judgment, pursuant to the terms of item I of Art. 355 of the CPC, since it is a matter of law and the facts have already been demonstrated by the evidence in the case files.

IV - I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert may examine it, with the expertise specific to the case, all the transactions carried out by the defendants and now under discussion in order to clarify that specific issue.

V  - Thus, I understand that the judgment handed down should be annulled, in order to determine the return of the case to the first instance, so that the required technical expert evidence may be developed, with the remaining allegations made by the appellant FIP Pinheiros being impaired.

VI- In its appeal, Blessed Holdings LLC pleads defense restriction, for not having been summoned to comment on the documents attached to pages 1,178 et seq. of the present case, alleging that the information contained in these documents contributed to the Court *a quo* ruling against it, understanding that there was simulation. It adds that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even send a subpoena to the appellant about any documents.

VII  - According to the case file, in the decision handed down by the lower court on page 1188 of the present case, there is no mention of the petition on pages 1143/1145, which required the attachment of the documents on pages 1178 et seq., nor to the fact that new documents were attached.

VIII - The rule contained in Arts. 436, *caput* and subsections, and 437, §1, of the CPC was straightforwardly violated, since the court ruled on the case in advance, based, in order to mistakenly conclude that the TINTO-BLESSED TRANSACTION was null, on new



documents to which Blessed was not given access. Such documents (pgs. 1,178 et seq.) were used by the court to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts (...) are peremptorily proven" (pg. 1247-v).

IX The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment. The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction of defense.

X  - Thus, even though BLESSED was summoned of the aforementioned decision on page 1188 (ID 46187246, p. 53), this subpoena does not meet the need for specific subpoenas of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the CPC transcribed above, and the judgment for this basis must be annulled, so that the other parties are summoned about these new documents attached to the case files for manifestation, especially BLESSED.

XI - Appeal of BLESSED HOLDINGS LLC partially granted. Appeal of FIP-Pinheiros partially granted to annul the judgment. Preliminary PGFN standing rejected. The examination of the other issues was impaired due to the recognition of the nullity of the appealed judgment.



JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Class**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A , ALEXANDRE DE MENDONCA WALD - SP107872-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , JULIANA ROCCO NUNES - SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
ASSISTANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
STAKEHOLDERS: TINTO HOLDING LTDA
ATTORNEY(s) ASSISTANT: BERNARDO CAVALCANTI FREIRE - SP291471
ATTORNEY(s) ASSISTANT: MARIANA TAVARES ANTUNES - SP154639-A
ATTORNEY(s) ASSISTANT: ALEXANDRE DE MENDONCA WALD - SP107872-A
ATTORNEY(s) INTERESTED PARTY: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

## REPORT

This is an ordinary action with a request for urgent relief, filed by the FEDERAL UNION against TINTO HOLDING LTDA., BLESSED HOLDINGS LLC and PINHEIROS FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, with the purpose of granting a court order declaring null the Private Instrument of Assignment and Transfer of Shares and Other Covenants signed between the co-defendants Tinto Holding Ltda. and Blessed Holdings LLC, on 1/2/2010 and 11/11/2010.

The request for urgent relief was partially granted, and the Legal Confidentiality was decreed in relation to the documents that instruct the action.

Urged to comment on the evidence, the Pinheiros Fundos de Investimentos em Participações assistant requested the extinction of the case, without judgment on merit, and requested that expert evidence be presented, having the co-defendants Blessed Holdings LLC and Tinto Holding Ltda. reiterate the preliminary matters raised in their disputes and requesting that documentary evidence be presented, and the plaintiff informed of an absence of interest in producing evidence.

Based upon the request to declare the Private Instrument of Assignment and Transfer of Shares and Other Covenants signed on 1/2/2010 null between Tinto Holding Ltda. (current name of Bracol Holding Ltda.) and Blessed Holdings LLC, that targeted the transfer of 1,174,351.62425 shares, corresponding to 66% of the total shares of Bertin FIP, for a price of USD 10,000.00 and the Private Instrument of Assignment and Transfer of Shares and Other Covenants, signed on 11/11/2010 between Tinto Holding Ltda. (current name of Bracol



Holding Ltda.) and Blessed Holdings LLC, for the transfer of another 348,317 shares, corresponding to 20% of the total shares of Bertin FIP, for a price of BRL 17,000.00, with 1,522,668.62425 shares, corresponding to 86% of the shares of the Bertin Fundo de Investimento, currently Pinheiros Fundo de Investimentos e Participações, to return to the assets of the assignor Tinto Holding Ltda., such assets being liable for the burden of taxation. The defendants are ordered to pay attorney fees, set at 10% of the amount attributed to the case, pursuant to § 2 of Art. 85 of the CPC, divided *pro rata.*

Appeal filed by PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES - FIP PINHEIROS, alleging, preliminarily, the existence of a harmful question external to the administrative procedure that is being processed in the CARF, notably due to the admission of the special appeal filed by Tinto; lack of interest to act on the part of the Federal Union due to the use of this action as a substitute for tax relief, the absence of procedural interest of the Federal Union due to the location of Tinto's assets in the amount equivalent to 7.3 billion reais; existence of a necessary passive joinder with the corresponding taxes for the administrative procedure in progress at the CARF, in view of the coincidence of purpose between the present claim and the referred procedure; nullity of the judgment for lack of grounds and failure to assess the evidence in the file; restriction of defense due to the rejection of expert evidence. On the merits, it is alleged that the statute of limitation of the Union's claim to file this claim is lacking. among other allegations, defense restriction, in view of the rejection of the submission of technical expert evidence in order to resolve the controversial points of the claim: if, in fact, there was an alleged gain of taxable capital in the amount of approximately BRL 3.1 billion, originating from the merger of the shares of Bertin Group by JBS Group; and whether there was the alleged asset drain of Tinto assets, with the disposal of the shares it held in FIP Pinheiros to Blessed.

The co-defendant Blessed Holdings LLC also filed an appeal, alleging: external harm due to the special appeal filed in the administrative proceedings that are being processed before CARF; incongruence of the judgment with the limits of the cause of action (Art. 1.013, § 3, II, of the CPC - change in the scope of the action; defense restriction, in view of the absence of the summons of the now appellant to provide documents that substantiated the judgment (Art. 437, § 1 of the CPC); contradictory to uncontroversial evidence and facts in the case files without any grounds (violation of Articles Nos. 373, I, 489, § 1, IV and 1,013, § 3, IV, of the CPC); effective proof of lack of procedural interest, due to the pending administrative process filed precisely to verify the existence or not of a definitive tax credit, in which Tinto listed assets (Arts. 149, VII, 151, III, 185 of the CTN and 330, III, of the CPC); lack of standing of the Attorney General's Office of the National Treasury (Art. 330, II, of the CPC and Art. 12, V, of Complementary Law No. 73/93); standing to sue, there is no indication of the assumptions in the administrative process for the configuration of Blessed's tax liability (Articles Nos. 121, 134 and 142 of the CTN); occurrence of the statute of limitation; legality of the Tinto-Blessed transaction, the juristic act is fully valid, fulfilling the requirements of Art. 104 of the Civil Code and legal pricing; no fraud of any kind, whether the law, creditors; no evidence; absence of the requirements for disregard legal personality (Art. 50 of the Civil Code); violation of the attachment order established in Art. 11 of the LEF; absence of any loss to the Tax Authority - effective taxation pursuant to Art. 2 of Law No. 11,312/2006. Subsidiarily, it requires compliance with the sole paragraph of Art. 116 of the CTN, which prohibits decreeing the nullity of the business, exclusively authorizing the removal of the effects of the transaction to collect tax, with unjust enrichment of the Tinto (Art. 167 of the


Digitally signed by: MARCELO MESQUITA SARAIVA -11/17/2022 4:56:25 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562574100000257584948
Document number: 22111716562574100000257584948

Civil Code) being prohibited.

With counterarguments, the case files were submitted to this Court.

There are the facts.





JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Class**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A , ALEXANDRE DE MENDONCA WALD - SP107872-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , JULIANA ROCCO NUNES - SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
ASSISTANT: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
STAKEHOLDERS: TINTO HOLDING LTDA
ATTORNEY(s) ASSISTANT: BERNARDO CAVALCANTI FREIRE - SP291471
ATTORNEY(s) ASSISTANT: MARIANA TAVARES ANTUNES - SP154639-A
ATTORNEY(s) ASSISTANT: ALEXANDRE DE MENDONCA WALD - SP107872-A
ATTORNEY(s) INTERESTED PARTY: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

**VOTING**

## THE ALLEGED LACK OF STANDING OF THE ATTORNEY GENERAL'S OFFICE OF THE NATIONAL TREASURY.

The Federal Union requested the annulment of the business carried out between TINTO HOLDINGS LTDA. and BLESSED HOLDINGS LLC "with the *return of the assets subject to negotiation to the assignor's assets, TINTO HOLDINGS LTDA being responsible for such assets for the burden of taxation",* guaranteeing the *"useful result of the administrative collection."*

The judgment upheld the action, declaring the TINTO-BLESSED TRANSACTION null, so that, therefore, the FIP shares would return *"to the assets of the assignor Tinto Holding Ltda., being responsible for such assets for the burden of taxation",* so that the annulment of the legal transaction could lead to the restriction of this equity to the detriment of the appellant FIP-PINHEIROS. Thus, the claim which was finalized is of a financial nature, even though it seeks to annul two agreements between Tinto and Blessed.

Since it is a case of a tax nature, it remains justified that the Federal Union should be represented in Court by the treasury body: the Attorney General's Office of the National Treasury, which is why the preliminary ruling deserves to be rejected.


Digitally signed by: MARCELO MESQUITA SARAIVA -11/17/2022 4:56:25 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562549800000257584953
Document number: 22111716562549800000257584953



**THE NEED TO PRODUCE TECHNICAL EXPERT EVIDENCE**

Based on the reading of everything set forth herein by the parties, I believe that there is a need to produce technical expert evidence to clarify whether or not there was an impairment of Tinto Holding Ltda assets to the point of making it insolvent through the disposal of the shares it held in FIP Pinheiros to Blessed Holdings LLC, since I do not see enough evidence to unequivocally conclude that the irregularities pointed out in the complaint exist.

These are complex and well-structured corporate transactions, which require an accurate and detailed analysis by an expert in order to ascertain their validity and regularity or not.

The expert evidence was requested in the case files by the now appellant FIP Pinheiros. It is up to the magistrate to decide on the need or not to carry it out, depending on the provisions of Art. 370, *caput* sole paragraph of the CPC/2015. He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

In the case files, the required technical expert evidence was rejected by a decision handed down at a time prior to the judgment, with the following content:

> "I reject the requirements for expert evidence, because I believe that the case files have sufficient factors to be judged."

As can be seen, there was a generic rationale for rejecting the requested expert evidence.

In turn, in the judgment now appealed, the Honorable Judge understood that the case entails an early judgment, pursuant to item I of Art. 355 of the CPC, as it is a matter of law and the facts have already been demonstrated by the evidence in the file.

I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert examines, with the expertise peculiar to the case, all the operations carried out by the defendants and now under discussion in order to clarify that specific issue.

Thus, I believe that the judgment handed down should be annulled to decide on returning the case files to the first instance, in order for the required technical expert evidence to be developed, with the other allegations made by the appellant FIP Pinheiros remaining impaired.

**THE ALLEGED DEFENSE RESTRICTION**



Appellant Blessed Holdings LLC, in its appeal, pleads defense restriction as it was not summoned to state its opinions on the documents attached to pgs. 1,178 et seq. of the original case.

In the decision that assessed the declaratory attachments opposed by this appellant, the Court *a quo* thus stated:

> "It turns out that, upon examination of the case files, it is noted that the petition on pages 1143/1145 requested the attachment of the aforementioned documents, as well as the early judgment of the dispute; a request that was analyzed through the decision on page 1188, which was duly summoned, according to the certificate on page 1188v, and its opportunity for the appellant to state the procedural burdens provided for in Article 436 of the CPC. However, despite the fact that the Pinheiros FIP assistant exercised the procedural powers (pages 1190/1224), the appellant BLESSED HOLDINGS LLC chose to remain inert, and comes now, in the event of motions for clarification, to raise the nullity of the judgment based on a precluded matter, in clear violation to the provisions of Article 278 of the CPC:
>
> (...)
>
> Thus, there is no such thing as the aforementioned defense restriction pointed out by the appellant."

The appellant argues that the information contained in these documents contributed to the Court *a quo* ruled on the case against it, understanding that there was simulation.

The appellant BLESSED alleges that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even subpoena the appellant on any documents.

In this regard, it is necessary to transcribe the content of the decision on page 1188 (ID 46187246, p. 53), mentioned by the judgment at the time of assessment of the declaratory attachments:

> "I maintain the previous decision to reject the inclusion of the defendant of the parties indicated on pages 966/967, accepting the arguments of the Federal Union on page 1010, in the sense that the cause of requesting this action is fraud under the law, the object is not to guarantee the tax credit of PA No. 16561720170/2014-01, thus depriving the joinder of parties of said characteristics.
>
> I accept the request for early judgment of the dispute, since it is documentary evidence and all factors were brought to the proceedings.
>
> I change the secrecy of the records to the level of documents as required by the Federal Union."

In this regard, Arts. 436 and 437 of the CPC/15 provide:



*"Art. 436. The party, summoned to talk about the document contained in the case files, may:*

*I - challenge the admissibility of documentary evidence;*

*II - challenge its authenticity;*

*III - raise its falsehood, with or without triggering a falsehood claim;*

*IV - commenting on its content.*

*Sole paragraph. In the hypotheses of items II and III, the challenge should be based on a specific argument, not admitting a generic allegation of falsehood.*

*Art. 437. (...)*

*§ 1 Whenever one of the parties requests the attachment of a document to the case files, the judge will hear from the other party, who will have a period of 15 (fifteen) days to adopt any of the positions indicated in Art. 436. "*

*As verified in the case files, in the decision handed down by the floor judgment on pg. 1188 of this case, there is no mention nor any petition on pgs. 1143/1145, which requested the attachment of the documents on pgs. 1178 et seq., nor the fact that new documents were attached.*

However, the above rules were straightforwardly violated, since the Judge ruled on the case in advance, based on the fact that the nullity of the TINTO-BLESSED TRANSACTION was mistakenly concluded, in new documents to which Blessed was not given access. Such documents (pgs. 1,178 et seq.) were used in the judgment to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts ( .. .) are peremptorily proven" (pg. 1247-v).

The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment.

The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction of defense.

Thus, even though BLESSED was summoned on the aforementioned decision on page 1188 (ID 46187246, p. 53), this subpoena does not meet the need for specific subpoenas of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the CPC transcribed above, and the judgment for this basis must be annulled, so that the other parties are summoned about these new documents attached to the case files for manifestation, especially BLESSED.



In light of the foregoing, I partially grant the appeal of PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES - FIP PINHEIROS, voiding the judgment, and returning the files to the first instance to develop the required technical expert evidence, as well as rejecting the preliminary standing of PGFN argued by the company BLESSED HOLDINGS LLC, and I partially grant its appeal to annul the judgment so that the parties are summoned to comment on the new documents attached to pages 1178 and subsequent pages of the case files, under the above rationale. The examination of the other matters is impaired due to the recognition of the nullity of the appealed judgment.

It is decided.



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**8B. Decisao apelacao - processo Uniao**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_____
Dan McCourt

Sworn to before me this
July 25, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogado do(a) APELANTE: JULIANA ROCCO NUNES - SP378477-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
INTERESSADO: TINTO HOLDING LTDA

ADVOGADO do(a) INTERESSADO: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

---

p{text-align: justify;}



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A, ALEXANDRE DE MENDONCA WALD - SP107872-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
ASSISTENTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
INTERESSADO: TINTO HOLDING LTDA
ADVOGADO do(a) ASSISTENTE: BERNARDO CAVALCANTI FREIRE - SP291471
ADVOGADO do(a) ASSISTENTE: MARIANA TAVARES ANTUNES - SP154639-A
ADVOGADO do(a) ASSISTENTE: ALEXANDRE DE MENDONCA WALD - SP107872-A
ADVOGADO do(a) INTERESSADO: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A



# R E L A T Ó R I O

Trata-se de ação, sob o rito ordinário, com pedido de tutela de urgência, ajuizada pela UNIÃO FEDERAL em face de TINTO HOLDING LTDA., BLESSED HOLDINGS LLC e PINHEIROS FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, objetivando a concessão de provimento jurisdicional que declare a nulidade do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças firmado entre as corrés Tinto Holding Ltda. e Blessed Holdings LLC, em 02.01.2010 e 11.11.2010.

O pedido de tutela de urgência foi parcialmente deferido, bem como decretado o segredo de justiça em relação aos documentos que instruem a ação.

Instadas a se manifestarem quanto às provas, o assistente simples Pinheiros Fundo de Investimentos em Participações postulou a extinção do feito, sem julgamento do mérito, e requereu a produção de prova pericial, tendo as corrés Blessed Holdings LLC e Tinto Holding Ltda. reiterado as matérias preliminares suscitadas em suas contestações e requerido a produção de prova documental, tendo a autora informado a ausência de interesse em produzir provas.

Julgado procedente o pedido, para declarar a nulidade do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças firmado em 02.01.2010 entre a Tinto Holding Ltda. (atual denominação de Bracol Holding Ltda.) e a Blessed Holdings LLC, que objetivou a transferência de 1.174.351,62425 cotas, correspondente a 66% do total de quotas do Bertin FIP, pelo preço de US$ 10.000,00 e do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças, firmado em 11.11.2010 entre a Tinto Holding Ltda. (atual denominação de Bracol Holding Ltda.) e a Blessed Holdings LLC, objetivando a transferência de mais 348.317 cotas, correspondente a 20% do total das cotas do Bertin FIP, pelo valor de R$ 17.000,00, devendo as 1.522.668,62425 cotas, correspondente a 86% das cotas do Bertin Fundo de Investimento em Participações, atual Pinheiros Fundo de Investimentos e Participações, retornar ao patrimônio da cedente Tinto Holding Ltda., respondendo tal patrimônio pelo ônus da Tributação. Condenadas as rés ao pagamento de honorários advocatícios, fixados em 10% sobre o valor atribuído à causa, nos termos do § 2º do art. 85 do CPC, divididos *pro rata*.

Interposto recurso de apelação por PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES – FIP PINHEIROS, aduzindo, preliminarmente, a existência de questão prejudicial externa ao procedimento administrativo que tramita no CARF, notadamente em função da admissão do recurso especial interposto pela Tinto; falta de interesse de agir por parte da União Federal em razão da utilização da presente ação como substituta de uma demanda cautelar fiscal, ausência de interesse processual da União Federal em razão da localização de patrimônio da Tinto no valor equivalente a 7.3 bilhões de reais; existência de litisconsórcio passivo necessário com os corresponsáveis tributários do procedimento administrativo em tramite no CARF, haja vista a coincidência de objeto entre a presente demanda e o referido procedimento; nulidade da sentença por ausência de fundamentação e não apreciação da prova dos autos; cerceamento de defesa em virtude do indeferimento da prova pericial. No mérito, alega a decadência da pretensão da União em ajuizar a presente demanda falta entre outras alegações, cerceamento de defesa, em face do indeferimento da produção de prova pericial técnica, a fim de  solucionar os pontos controvertidos da demanda: se, de fato, houve o alegado ganho de capital tributável, no valor



de aproximadamente R$ 3,1 bilhões, originado da incorporação das ações do Grupo Bertin pelo Grupo JBS; e se houve o suposto esvaziamento patrimonial da Tinto, com a alienação das cotas que detinha no FIP Pinheiros à Blessed.

Também a corré Blessed Holdings LLC interpôs recurso de apelação, aduzindo: prejudicialidade externa em função do recurso especial interposto no processo administrativo que tramita perante o CARF; incongruência da sentença com os limites da causa de pedir (art. 1.013, § 3º, II, do CPC – alteração do escopo da ação; cerceamento de defesa, em face da ausência de intimação da ora apelante para se manifestar sobre documentos que fundamentaram a sentença (art. 437, § 1º do CPC); contrariedade a provas e fatos incontroversos nos autos sem qualquer fundamento (violação aos arts. 373, I, 489, § 1º, IV e 1.013, § 3º, IV, do CPC); efetiva comprovação da falta de interesse processual, em razão da pendência de processo administrativo instaurado exatamente para verificar a existência ou não de crédito tributário definitivo, em que a Tinto arrolou bens (arts. 149, VII, 151, III, 185 do CTN e 330, III, do CPC); ilegitimidade da Procuradoria Geral da Fazenda Nacional (art. 330, II, do CPC e art. 12, V, da Lei Complementar nº 73/93); ilegitimidade passiva, não existindo indicação no processo sobre os pressupostos necessários à configuração da responsabilidade tributária da Blessed (arts. 121, 134 e 142 do CTN); ocorrência da decadência; legalidade da operação Tinto-Blessed, sendo plenamente válido o negócio jurídico, com preenchimento dos requisitos do art. 104 do Código Civil e precificação legítima; ausência de qualquer tipo de fraude, seja à lei, seja aos credores; inexistência de prova; ausência dos requisitos para desconsideração de personalidade jurídica (art. 50 do Código Civil); violação da ordem de penhora estabelecida no art. 11 da LEF; ausência de qualquer prejuízo ao Fisco – efetiva tributação nos termos do art. 2º da Lei nº 11.312/2006. Subsidiariamente, requer o respeito ao parágrafo único do art. 116 do CTN, que veda a decretação da nulidade do negócio, autorizando exclusivamente o afastamento dos efeitos da operação para a cobrança do tributo, sendo vedado o enriquecimento sem causa da Tinto (art. 167 do Código Civil).

Com contrarrazões, subiram os autos a esta Corte.

É o relatório.

p{text-align: justify;}


Assinado eletronicamente por: MARCELO MESQUITA SARAIVA - 17/11/2022 16:56:26
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562596700000264803746
Número do documento: 22111716562596700000264803746



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A, ALEXANDRE DE MENDONCA WALD - SP107872-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
ASSISTENTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
INTERESSADO: TINTO HOLDING LTDA
ADVOGADO do(a) ASSISTENTE: BERNARDO CAVALCANTI FREIRE - SP291471
ADVOGADO do(a) ASSISTENTE: MARIANA TAVARES ANTUNES - SP154639-A
ADVOGADO do(a) ASSISTENTE: ALEXANDRE DE MENDONCA WALD - SP107872-A
ADVOGADO do(a) INTERESSADO: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

**V O T O**


**DA SUPOSTA ILEGITIMIDADE DA PROCURADORIA GERAL DA FAZENDA NACIONAL.**

A União Federal requereu a anulação dos negócios praticados entre TINTO HOLDINGS LTDA. e BLESSED HOLDINGS LLC "com o *retorno dos ativos objeto de negociação ao patrimônio da cedente, TINTO HOLDINGS LTDA respondendo tal patrimônio pelos ônus da tributação"*, garantindo-se o *"resultado útil da cobrança administrativa"*.

A r. sentença julgou procedente a ação, para declarar a nulidade da OPERAÇÃO TINTO-BLESSED, para que, por conseguinte, as quotas do FIP retornassem *"ao patrimônio da cedente Tinto Holding Ltda. respondendo tal patrimônio pelo ônus da tributação",* de modo que a anulação do negócio jurídico possa levar à constrição desse patrimônio em desfavor do apelante FIP-PINHEIROS. Assim, a demanda a qual finalizou tem natureza fazendária, ainda que vise anular dois contratos entre a Tinto e a Blessed.

Tratando-se, pois, de causa de natureza fiscal, resta justificado que a União Federal deva ser representada, em Juízo, pelo seu órgão fazendário: a Procuradoria Geral da Fazenda Nacional, razão pela qual merece ser rejeitada a preliminar em epígrafe.



**DA NECESSIDADE DA PRODUÇÃO DE PROVA PERICIAL TÉCNICA**

Da leitura de tudo quanto exposto no presente feito pelas partes, entendo haver necessidade da produção de prova pericial técnica para esclarecimento se houve ou não o comprometimento do patrimônio da Tinto Holding Ltda a ponto de torná-la insolvente com a alienação das cotas que detinha no FIP Pinheiros à Blessed Holdings LLC, uma vez que não vejo provas suficientes que permitam concluir, de forma inequívoca, pela existência das irregularidades apontadas na inicial.

Trata-se de operações societárias complexas e bem estruturadas, que exigem a análise de forma acurada e detalhada por um perito, para que se apure sua validade e regularidade ou não.

A prova pericial foi requerida nos autos pelo ora apelante FIP Pinheiros. Cumpre ao magistrado decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

No caso dos autos, a prova pericial técnica requerida foi indeferida por decisão proferida em momento anterior à sentença, com o seguinte teor:

> *"Indefiro os requerimentos de prova pericial, pois entendo que os autos trazem elementos suficientes para seu julgamento"*

Conforme se constata, houve uma fundamentação genérica para o indeferimento da prova pericial requerida.

Por sua vez, na sentença ora recorrida, o MM.Juízo *a quo* entendeu que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica.

Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

**DO ALEGADO CERCEAMENTO DE DEFESA**



A  apelante Blessed Holdings LLC, em seu recurso, aduz cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do feito de origem.

Na decisão que apreciou os embargos declaratórios opostos por essa apelante, o MM. Juízo *a quo* assim consignou:

> *"Ocorre que, do exame dos autos, denota-se que a petição de fls. 1143/1145 requereu a juntada dos mencionados documentos, bem como o julgamento antecipado da lide, requerimento este que foi analisado por meio da decisão de fl. 1188, a qual foi devidamente intimada, conforme a certidão de fl. 1188v, e seu ensejo à manifestação da embargante para exercer os ônus processuais previstos nos incisos do artigo 436 do CPC. Entretanto, não obstante a assistente Pinheiros FIP tenha exercido as suas faculdades processuais (fls. 1190/1224), a embargante BLESSED HOLDINGS LLC optou por se quedar inerte, vindo agora, em sede de embargos de declaração, suscitar nulidade do julgado com fundamento em matéria já preclusa, em clara ofensa ao disposto no artigo 278 do CPC:*
>
> *(...)*
>
> *Assim, inexistente o suscitado cerceamento de defesa apontado pela embargante."*

Aduz a apelante que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação.

Acrescenta a apelante BLESSED que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

A esse respeito, cumpre transcrever o teor da decisão de fl. 1188 (ID 46187246, p. 53), mencionada pelo juízo sentenciante quando da apreciação dos embargos declaratórios:

> *"Mantenho a decisão anterior para indeferir a inclusão do polo passivo das partes indicadas às fls. 966/967, acolhendo os argumentos da União Federal de fl. 1010, no sentido de que a causa de pedir da presente ação é a fraude à lei, o objeto não é a garantir do crédito tributário do PA n. 16561720170/2014-01, assim descaracterizando litisconsórcio.*
>
> *Acolho o requerimento de julgamento antecipado da lide, uma vez que se trata de prova documental e que todos os elementos foram trazidos ao processo.*
>
> *Altero o sigilo dos autos para o nível de documentos conforme requerido pela União Federal."*

A esse respeito, assim dispõem os arts. 436 e 437 do CPC/15:



> *"Art. 436. A parte, intimada a falar sobre documento constante dos autos, poderá:*
>
> *I – impugnar a admissibilidade da prova documental;*
>
> *II – impugnar sua autenticidade;*
>
> *III – suscitar sua falsidade, com ou sem deflagração do incidente de arguição de falsidade;*
>
> *IV – manifestar-se sobre seu conteúdo.*
>
> *Parágrafo único. Nas hipóteses dos incisos II e III, a impugnação deverá basear-se em argumentação específica, não se admitindo alegação genérica de falsidade.*
>
> *Art. 437. (...)*
>
> *§ 1º Sempre que uma das partes requerer a juntada de documento aos autos, o juiz ouvirá, a seu respeito, a outra parte, que disporá do prazo de 15 (quinze) dias para adotar qualquer das posturas indicadas no art. 436."*
>
> *Consoante se verifica dos autos, na decisão proferida pelo juízo de piso à fl. 1188 do presente feito, não há qualquer menção nem à petição de fls. 1143/1145, que requereu a juntada dos documentos de fls. 1178 e seguintes, nem ao fato de terem sido juntados documentos novos.*

Ora, as regras acima foram frontalmente violadas, eis que a r. sentença julgou antecipadamente o feito, baseando-se para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r, sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados( .. .) são peremptoriamente comprovados" (fl. 1247-v).

O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença.

A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

Desse modo, muito embora a BLESSEDtenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC acima transcrito, devendo ser anulada a sentença por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.



Ante o exposto, dou parcial provimento ao recurso de apelação de PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES-FIP PINHEIROS, para anular a sentença, devendo retornar os autos à primeira instância, para produção da prova pericial técnica requerida, bem como rejeito a preliminar de ilegitimidade da PGFN arguida pela empresa BLESSED HOLDINGS LLC, e dou parcial provimento ao seu recurso de apelação para anular a r. sentença de maneira que seja determinada a intimação das partes para manifestação acerca dos documentos novos juntados às fls. 1178 e seguintes dos autos, nos termos da fundamentação supra. Resta prejudicado o exame das demais questões em virtude do reconhecimento da nulidade da sentença recorrida.

É o voto.

p{text-align: justify;}

**PROCESSUAL CIVIL. AÇÃO SOB O RITO ORDINÁRIO. ILEGITIMIDADE DA PGFN. PRELIMINAR REJEITADA. INDEFERIMENTO DA PRODUÇÃO DE PROVA PERICIAL TÉCNICA. CERCEAMENTO DE DEFESA . NECESSIDADE DE INTIMAÇÃO DAS DEMAIS PARTES ACERCA DOS DOCUMENTOS NOVOS JUNTADOS PELA UNIÃO FEDERAL. ARTS. 436 E 467 DO CPC. NULIDADE DA SENTENÇA.**

I – Tendo a causa natureza fiscal, em razão da anulação do negócio jurídico entre a TINTO HOLDINGS LTDA. e BLESSED HOLDINGS LLC, retornando os ativos objeto da negociação ao patrimônio da primeira, para que responda ao ônus da tributação, resta justificada a representação da União Federal, em Juízo, por seu órgão fazendário, a Procuradoria Geral da Fazenda Nacional. Preliminar de ilegitimidade da PGFN rejeitada.



II – Ao magistrado cumpre decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

III – No caso dos autos, a prova pericial, requerida pelo ora apelante FIP-PINHEIROS, foi indeferida por decisão proferida em momento anterior à sentença, ao entendimento do MM. Juízo *a quo* de que os autos trazem elementos suficientes para seu julgamento. Na sentença recorrida, por sua vez, entendeu-se que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

IV - Não compartilho do mesmo entendimento quanto aos julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica

V - .Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

VI – Em seu recurso de apelação, Blessed Holdings LLC aduz cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do presente feito, aduzindo que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação. Acrescenta que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

VII - Consoante se verifica dos autos, na decisão proferida pelo juízo de piso à fl. 1188 do presente feito, não há qualquer menção nem à petição de fls. 1143/1145, que requereu a juntada dos documentos de fls. 1178 e seguintes, nem ao fato de terem sido juntados documentos novos.

VIII – A regra constante dos arts. 436, *caput* e incisos, e 437, § 1º, do CPC foi frontalmente violada, eis que a r. sentença julgou antecipadamente o feito, baseando-se, para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r. sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados (...) são peremptoriamente comprovados" (fl. 1247-v).

IX - O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese,



infirmar a conclusão da sentença. A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

X - Desse modo, muito embora a BLESSED tenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC, devendo ser anulada a sentença por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.

XI – Recurso de apelação de BLESSED HOLDINGS LLC parcialmente provido. Recurso de apelação da FIP-Pinheiros parcialmente provido para anular a sentença. Preliminar de ilegitimidade da PGFN rejeitada. Prejudicado o exame das demais questões em razão do reconhecimento da nulidade da sentença recorrida.

---

## ACÓRDÃO

Vistos e relatados estes autos em que são partes as acima indicadas, a Quarta Turma, à unanimidade, decidiu dar parcial provimento ao recurso de apelação de PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES FIP PINHEIROS, para anular a sentença, devendo retornar os autos à primeira instância, para produção da prova pericial técnica requerida, bem como rejeitar a preliminar de ilegitimidade da PGFN arguida pela empresa BLESSED HOLDINGS LLC, e dar parcial provimento ao seu recurso de apelação para anular a r. sentença de maneira que seja determinada a intimação das partes para manifestação acerca dos documentos novos juntados às fls. 1178 e seguintes dos autos, nos termos da fundamentação supra. Resta prejudicado o exame das demais questões em virtude do reconhecimento da nulidade da sentença recorrida, nos termos do voto do Des. Fed. MARCELO SARAIVA (Relator), com quem votaram a Des. Fed. MARLI FERREIRA e a Des. Fed. MÔNICA NOBRE. Ausente, justificadamente, o Des. Fed. ANDRÉ NABARRETE. , nos termos do relatório e voto que ficam fazendo parte integrante do presente julgado.



**PROCESSUAL CIVIL. AÇÃO SOB O RITO ORDINÁRIO. ILEGITIMIDADE DA PGFN. PRELIMINAR REJEITADA. INDEFERIMENTO DA PRODUÇÃO DE PROVA PERICIAL TÉCNICA. CERCEAMENTO DE DEFESA . NECESSIDADE DE INTIMAÇÃO DAS DEMAIS PARTES ACERCA DOS DOCUMENTOS NOVOS JUNTADOS PELA UNIÃO FEDERAL. ARTS. 436 E 467 DO CPC. NULIDADE DA SENTENÇA.**

I – Tendo a causa natureza fiscal, em razão da anulação do negócio jurídico entre a TINTO HOLDINGS LTDA. e BLESSED HOLDINGS LLC, retornando os ativos objeto da negociação ao patrimônio da primeira, para que responda ao ônus da tributação, resta justificada a representação da União Federal, em Juízo, por seu órgão fazendário, a Procuradoria Geral da Fazenda Nacional. Preliminar de ilegitimidade da PGFN rejeitada.

II – Ao magistrado cumpre decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

III – No caso dos autos, a prova pericial, requerida pelo ora apelante FIP-PINHEIROS, foi indeferida por decisão proferida em momento anterior à sentença, ao entendimento do MM. Juízo *a quo* de que os autos trazem elementos suficientes para seu julgamento. Na sentença recorrida, por sua vez, entendeu-se que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

IV - Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica

V - .Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

VI – Em seu recurso de apelação, Blessed Holdings LLC aduz cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do presente feito, aduzindo que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação. Acrescenta que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

VII - Consoante se verifica dos autos, na decisão proferida pelo juízo de piso à fl. 1188 do presente feito, não há qualquer menção nem à petição de fls. 1143/1145, que requereu a juntada dos documentos de fls. 1178 e seguintes, nem ao fato de terem sido juntados documentos novos.

VIII – A regra constante dos arts. 436, *caput* e incisos, e 437, § 1º, do CPC foi frontalmente violada, eis que a r. sentença julgou antecipadamente o feito, baseando-se, para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos


Assinado eletronicamente por: MARCELO MESQUITA SARAIVA - 17/11/2022 16:56:25
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=22111716562513200000257585475
Número do documento: 22111716562513200000257585475

novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r. sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados (...) são peremptoriamente comprovados" (fl. 1247-v).

IX - O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença. A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

X - Desse modo, muito embora a BLESSED tenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC, devendo ser anulada a sentença por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.

XI – Recurso de apelação de BLESSED HOLDINGS LLC parcialmente provido. Recurso de apelação da FIP-Pinheiros parcialmente provido para anular a sentença. Preliminar de ilegitimidade da PGFN rejeitada. Prejudicado o exame das demais questões em razão do reconhecimento da nulidade da sentença recorrida.



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A, ALEXANDRE DE MENDONCA WALD - SP107872-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
ASSISTENTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
INTERESSADO: TINTO HOLDING LTDA
ADVOGADO do(a) ASSISTENTE: BERNARDO CAVALCANTI FREIRE - SP291471
ADVOGADO do(a) ASSISTENTE: MARIANA TAVARES ANTUNES - SP154639-A
ADVOGADO do(a) ASSISTENTE: ALEXANDRE DE MENDONCA WALD - SP107872-A
ADVOGADO do(a) INTERESSADO: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

**R E L A T Ó R I O**

Trata-se de ação, sob o rito ordinário, com pedido de tutela de urgência, ajuizada pela UNIÃO FEDERAL em face de TINTO HOLDING LTDA., BLESSED HOLDINGS LLC e PINHEIROS FUNDO DE INVESTIMENTOS EM PARTICIPAÇÕES, objetivando a concessão de provimento jurisdicional que declare a nulidade do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças firmado entre as corrés Tinto Holding Ltda. e Blessed Holdings LLC, em 02.01.2010 e 11.11.2010.

O pedido de tutela de urgência foi parcialmente deferido, bem como decretado o segredo de justiça em relação aos documentos que instruem a ação.

Instadas a se manifestarem quanto às provas, o assistente simples Pinheiros Fundo de Investimentos em Participações postulou a extinção do feito, sem julgamento do mérito, e requereu a produção de prova pericial, tendo as corrés Blessed Holdings LLC e Tinto Holding Ltda. reiterado as matérias preliminares suscitadas em suas contestações e requerido a produção de prova documental, tendo a autora informado a ausência de interesse em produzir provas.

Julgado procedente o pedido, para declarar a nulidade do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças firmado em 02.01.2010 entre a Tinto Holding Ltda. (atual denominação de Bracol Holding Ltda.) e a Blessed Holdings LLC, que objetivou a transferência de 1.174.351,62425 cotas, correspondente a 66% do total de quotas do Bertin FIP, pelo preço de US$ 10.000,00 e do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças, firmado em 11.11.2010 entre a Tinto Holding



Ltda. (atual denominação de Bracol Holding Ltda.) e a Blessed Holdings LLC, objetivando a transferência de mais 348.317 cotas, correspondente a 20% do total das cotas do Bertin FIP, pelo valor de R$ 17.000,00, devendo as 1.522.668,62425 cotas, correspondente a 86% das cotas do Bertin Fundo de Investimento em Participações, atual Pinheiros Fundo de Investimentos e Participações, retornar ao patrimônio da cedente Tinto Holding Ltda., respondendo tal patrimônio pelo ônus da Tributação. Condenadas as rés ao pagamento de honorários advocatícios, fixados em 10% sobre o valor atribuído à causa, nos termos do § 2º do art. 85 do CPC, divididos *pro rata*.

Interposto recurso de apelação por PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES – FIP PINHEIROS, aduzindo, preliminarmente, a existência de questão prejudicial externa ao procedimento administrativo que tramita no CARF, notadamente em função da admissão do recurso especial interposto pela Tinto; falta de interesse de agir por parte da União Federal em razão da utilização da presente ação como substituta de uma demanda cautelar fiscal, ausência de interesse processual da União Federal em razão da localização de patrimônio da Tinto no valor equivalente a 7.3 bilhões de reais; existência de litisconsórcio passivo necessário com os corresponsáveis tributários do procedimento administrativo em tramite no CARF, haja vista a coincidência de objeto entre a presente demanda e o referido procedimento; nulidade da sentença por ausência de fundamentação e não apreciação da prova dos autos; cerceamento de defesa em virtude do indeferimento da prova pericial. No mérito, alega a decadência da pretensão da União em ajuizar a presente demanda falta entre outras alegações, cerceamento de defesa, em face do indeferimento da produção de prova pericial técnica, a fim de  solucionar os pontos controvertidos da demanda: se, de fato, houve o alegado ganho de capital tributável, no valor de aproximadamente R$ 3,1 bilhões, originado da incorporação das ações do Grupo Bertin pelo Grupo JBS; e se houve o suposto esvaziamento patrimonial da Tinto, com a alienação das cotas que detinha no FIP Pinheiros à Blessed.

Também a corré Blessed Holdings LLC interpôs recurso de apelação, aduzindo: prejudicialidade externa em função do recurso especial interposto no processo administrativo que tramita perante o CARF; incongruência da sentença com os limites da causa de pedir (art. 1.013, § 3º, II, do CPC – alteração do escopo da ação; cerceamento de defesa, em face da ausência de intimação da ora apelante para se manifestar sobre documentos que fundamentaram a sentença (art. 437, § 1º do CPC); contrariedade a provas e fatos incontroversos nos autos sem qualquer fundamento (violação aos arts. 373, I, 489, § 1º, IV e 1.013, § 3º, IV, do CPC); efetiva comprovação da falta de interesse processual, em razão da pendência de processo administrativo instaurado exatamente para verificar a existência ou não de crédito tributário definitivo, em que a Tinto arrolou bens (arts. 149, VII, 151, III, 185 do CTN e 330, III, do CPC); ilegitimidade da Procuradoria Geral da Fazenda Nacional (art. 330, II, do CPC e art. 12, V, da Lei Complementar nº 73/93); ilegitimidade passiva, não existindo indicação no processo administrativo dos pressupostos necessários à configuração da responsabilidade tributária da Blessed (arts. 121, 134 e 142 do CTN); ocorrência da decadência; legalidade da operação Tinto-Blessed, sendo plenamente válido o negócio jurídico, com preenchimento dos requisitos do art. 104 do Código Civil e precificação legítima; ausência de qualquer tipo de fraude, seja à lei, seja aos credores; inexistência de prova; ausência dos requisitos para desconsideração de personalidade jurídica (art. 50 do Código Civil); violação da ordem de penhora estabelecida no art. 11 da LEF; ausência de qualquer prejuízo ao Fisco – efetiva tributação nos termos do art. 2º da Lei nº 11.312/2006.



Subsidiariamente, requer o respeito ao parágrafo único do art. 116 do CTN, que veda a decretação da nulidade do negócio, autorizando exclusivamente o afastamento dos efeitos da operação para a cobrança do tributo, sendo vedado o enriquecimento sem causa da Tinto (art. 167 do Código Civil).

Com contrarrazões, subiram os autos a esta Corte.

É o relatório.





PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A, ALEXANDRE DE MENDONCA WALD - SP107872-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
ASSISTENTE: PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES
INTERESSADO: TINTO HOLDING LTDA
ADVOGADO do(a) ASSISTENTE: BERNARDO CAVALCANTI FREIRE - SP291471
ADVOGADO do(a) ASSISTENTE: MARIANA TAVARES ANTUNES - SP154639-A
ADVOGADO do(a) ASSISTENTE: ALEXANDRE DE MENDONCA WALD - SP107872-A
ADVOGADO do(a) INTERESSADO: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A

**V O T O**

## DA SUPOSTA ILEGITIMIDADE DA PROCURADORIA GERAL DA FAZENDA NACIONAL.

A União Federal requereu a anulação dos negócios praticados entre TINTO HOLDINGS LTDA. e BLESSED HOLDINGS LLC "com o *retorno dos ativos objeto de negociação ao patrimônio da cedente, TINTO HOLDINGS LTDA respondendo tal patrimônio pelos ônus da tributação"*, garantindo-se o *"resultado útil da cobrança administrativa"*.

A r. sentença julgou procedente a ação, para declarar a nulidade da OPERAÇÃO TINTO-BLESSED, para que, por conseguinte, as quotas do FIP retornassem *"ao patrimônio da cedente Tinto Holding Ltda. respondendo tal patrimônio pelo ônus da tributação"*, de modo que a anulação do negócio jurídico possa levar à constrição desse patrimônio em desfavor do apelante FIP-PINHEIROS. Assim, a demanda a qual finalizou tem natureza fazendária, ainda que vise anular dois contratos entre a Tinto e a Blessed.

Tratando-se, pois, de causa de natureza fiscal, resta justificado que a União Federal deva ser representada, em Juízo, pelo seu órgão fazendário: a Procuradoria Geral da Fazenda Nacional, razão pela qual merece ser rejeitada a preliminar em epígrafe.



### DA NECESSIDADE DA PRODUÇÃO DE PROVA PERICIAL TÉCNICA

Da leitura de tudo quanto exposto no presente feito pelas partes, entendo haver necessidade da produção de prova pericial técnica para esclarecimento se houve ou não o comprometimento do patrimônio da Tinto Holding Ltda a ponto de torná-la insolvente com a alienação das cotas que detinha no FIP Pinheiros à Blessed Holdings LLC, uma vez que não vejo provas suficientes que permitam concluir, de forma inequívoca, pela existência das irregularidades apontadas na inicial.

Trata-se de operações societárias complexas e bem estruturadas, que exigem a análise de forma acurada e detalhada por um perito, para que se apure sua validade e regularidade ou não.

A prova pericial foi requerida nos autos pelo ora apelante FIP Pinheiros. Cumpre ao magistrado decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

No caso dos autos, a prova pericial técnica requerida foi indeferida por decisão proferida em momento anterior à sentença, com o seguinte teor:

> *"Indefiro os requerimentos de prova pericial, pois entendo que os autos trazem elementos suficientes para seu julgamento"*

Conforme se constata, houve uma fundamentação genérica para o indeferimento da prova pericial requerida.

Por sua vez, na sentença ora recorrida, o MM.Juízo *a quo* entendeu que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica.

Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

### DO ALEGADO CERCEAMENTO DE DEFESA



A apelante Blessed Holdings LLC, em seu recurso, aduz cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do feito de origem.

Na decisão que apreciou os embargos declaratórios opostos por essa apelante, o MM. Juízo *a quo* assim consignou:

> *"Ocorre que, do exame dos autos, denota-se que a petição de fls. 1143/1145 requereu a juntada dos mencionados documentos, bem como o julgamento antecipado da lide, requerimento este que foi analisado por meio da decisão de fl. 1188, a qual foi devidamente intimada, conforme a certidão de fl. 1188v, e seu ensejo à manifestação da embargante para exercer os ônus processuais previstos nos incisos do artigo 436 do CPC. Entretanto, não obstante a assistente Pinheiros FIP tenha exercido as suas faculdades processuais (fls. 1190/1224), a embargante BLESSED HOLDINGS LLC optou por se quedar inerte, vindo agora, em sede de embargos de declaração, suscitar nulidade do julgado com fundamento em matéria já preclusa, em clara ofensa ao disposto no artigo 278 do CPC:*
>
> *(...)*
>
> *Assim, inexistente o suscitado cerceamento de defesa apontado pela embargante."*

Aduz a apelante que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação.

Acrescenta a apelante BLESSED que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

A esse respeito, cumpre transcrever o teor da decisão de fl. 1188 (ID 46187246, p. 53), mencionada pelo juízo sentenciante quando da apreciação dos embargos declaratórios:

> *"Mantenho a decisão anterior para indeferir a inclusão do polo passivo das partes indicadas às fls. 966/967, acolhendo os argumentos da União Federal de fl. 1010, no sentido de que a causa de pedir da presente ação é a fraude à lei, o objeto não é a garantir do crédito tributário do PA n. 16561720170/2014-01, assim descaracterizando litisconsórcio.*
>
> *Acolho o requerimento de julgamento antecipado da lide, uma vez que se trata de prova documental e que todos os elementos foram trazidos ao processo.*
>
> *Altero o sigilo dos autos para o nível de documentos conforme requerido pela União Federal."*

A esse respeito, assim dispõem os arts. 436 e 437 do CPC/15:



> *"Art. 436. A parte, intimada a falar sobre documento constante dos autos, poderá:*
>
> *I – impugnar a admissibilidade da prova documental;*
>
> *II – impugnar sua autenticidade;*
>
> *III – suscitar sua falsidade, com ou sem deflagração do incidente de arguição de falsidade;*
>
> *IV – manifestar-se sobre seu conteúdo.*
>
> *Parágrafo único. Nas hipóteses dos incisos II e III, a impugnação deverá basear-se em argumentação específica, não se admitindo alegação genérica de falsidade.*
>
> *Art. 437. (...)*
>
> *§ 1º Sempre que uma das partes requerer a juntada de documento aos autos, o juiz ouvirá, a seu respeito, a outra parte, que disporá do prazo de 15 (quinze) dias para adotar qualquer das posturas indicadas no art. 436."*
>
> *Consoante se verifica dos autos, na decisão proferida pelo juízo de piso à fl. 1188 do presente feito, não há qualquer menção nem à petição de fls. 1143/1145, que requereu a juntada dos documentos de fls. 1178 e seguintes, nem ao fato de terem sido juntados documentos novos.*

Ora, as regras acima foram frontalmente violadas, eis que a r. sentença julgou antecipadamente o feito, baseando-se para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r, sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados( .. .) são peremptoriamente comprovados" (fl. 1247-v).

O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença.

A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

Desse modo, muito embora a BLESSEDtenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC acima transcrito, devendo ser anulada a sentença por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.



Ante o exposto, dou parcial provimento ao recurso de apelação de PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES-FIP PINHEIROS, para anular a sentença, devendo retornar os autos à primeira instância, para produção da prova pericial técnica requerida, bem como rejeito a preliminar de ilegitimidade da PGFN arguida pela empresa BLESSED HOLDINGS LLC, e dou parcial provimento ao seu recurso de apelação para anular a r. sentença de maneira que seja determinada a intimação das partes para manifestação acerca dos documentos novos juntados às fls. 1178 e seguintes dos autos, nos termos da fundamentação supra. Resta prejudicado o exame das demais questões em virtude do reconhecimento da nulidade da sentença recorrida.

É o voto.



# Exhibit 15

[hw:] ~~738~~ *739*

**HONORABLE FEDERAL JUDGE OF THE 1ST FEDERAL CIVIL COURT OF THE JUDICIAL SUBSECTION OF THE CAPITAL OF THE JUDICIAL SECTION OF SÃO PAULO**

> JFSP-FORUM CIVEL-SPI
> 3/31/2016 10:49 a.m.
> Prot. 2016.61000060144-1
>
> **0006234-84.2015.403.6100**
> [45] [1st.V CIVIL]
> Joint-JFSP [hw:] *01 04 16*
> RF: [signature] Initials: [signature]

**Case File No. 0006234-84.2015.403.6100**

       **TINTO HOLDING LTDA.**, a private legal entity, already qualified in the case records of the aforementioned proceedings, respectfully comes before you, through its attorney who undersigns, considering the entry into force of the new Code of Civil Procedure and the need to adapt the case to the new procedural guidelines, to state and request the following.

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~739~~ 740

## I - THE FACTS

01.      This is an ordinary legal action under filed by the Union against the Respondent and BLESSED HOLDINGS LLC., with the objective of undoing two legal transactions carried out between the Respondents in the context of the merger between the JBS Group and the BERTIN Group, with the alleged purpose of ensuring the useful result of the administrative collection carried out in the case files of administrative process No. 16561.720170/2014-01.

02.      In order to achieve this objective, the Plaintiff maintains that the business was conducted in order to circumvent the Income Tax rule regarding capital gains due upon the disposal of equity interests, as well as to allow the Petitioner's assets to be emptied.

03.      After the legal procedures had elapsed, this court considered the nullity of the legal transactions without the Defendants' statement to be reckless, but authorized the blocking of the assets of Pinheiros FIP (third party to the dispute) in order to ensure the useful result of this claim.

04.      On 7/13/2015, the Respondent contested this case, demonstrating that this court should have declined jurisdiction to judge this case and pointing out several preliminary arguments that lead to the need to terminate the case without resolution of the merits.

05.      However, in view of the emergence of the new Code of Civil Procedure, which brought several innovations to the Brazilian legal system, it is up to the Defendant to bring to the attention of this court several public order aspects that affect this fact and prevent the establishment of a valid and effective procedural relationship.

06.      This is what will be carefully demonstrated below.

2

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~740~~ 741

## II - PRELIMINARY

### II.1- THE MATTER OF PUBLIC ORDER AND THE SUPERVENING OF THE NEW CODE OF CIVIL PROCEDURE AND THE NEED TO ADAPT THE CASE

07.          As is known, after long discussions in the legal environment, on 3/17/2015, Law No. 13,105/15 was published in the Official Gazette of the Union, which instituted the new Code of Civil Procedure, being certain that the new Codex would only enter into force one year after publication[1], therefore, on 3/18/2016 (Friday), as even decided by the Full Court of the Superior Court of Justice[2].

08.          In this sense, it should be mentioned that the preparation of the new Code of Civil Procedure resulted from the inefficiency of the previous Code, which did not allow for expedited processing and compromised the effectiveness of the process. This is what is inferred from the recitals for the preliminary draft of the new CPC, namely:

> "The new Code of Civil Procedure has the potential to generate a faster, fairer process because it is addresses social needs and is much less complex.
> The simplification of the system, in addition to providing more visible cohesion, **allows the judge to focus his or her attention more directly on the merits of the case**.
> With a clear reduction in the complexity inherent in the process of creating a new Code of Civil Procedure, It could be noted that **the Commission's work was primarily guided by five purposes**: 1) expressly and implicitly establish true fine tuning with the Federal Constitution; **2) create conditions for the judge to make a decision closer to the factual reality underlying the cause;** 3) simplify, solve problems and reduce subsystem complexity, like, for example, the appeal; **4) give as much efficiency as possible to each process considered;** and, 5) finally, the latter goal is perhaps partially achieved by accomplishing those mentioned above, to communicate a higher degree of coherence in the system, giving it, like this, more adherence." (Emphasis added)

---

[1] Law No. 13,105/15: Art. 1,045. This Code becomes effective one (1) year after the date of its official publication.
[2] Administrative Statement No. 1/16: "The Plenary of the STJ, in an administrative session in which Art. 1,045 of the new Code of Civil Procedure was interpreted, unanimously decided that the Code of Civil Procedure approved by Law No. 13,105/2015, will be effective on March 18, 2016."

3

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~741~~ 742

09.        As can be seen, while the new CPC intends to attribute the highest possible efficiency to the process through the use of the acts practiced, its purpose is to create conditions for the magistrate to render a decision that is closer to the factual reality, moving away from speculative arguments.

10.        Indeed, the determination of the new CPC is clear-cut in the sense that the complaint must be accompanied by all the documents that are **<u>indispensable</u>** to the filing of the case[3], as well as that the judge must, **<u>ex officio</u>**, determine the adequacy of the value of the cause to the economic benefit intended by the Plaintiff.

11.        It should be noted that, even if CPC/73 brought a similar device with regard to the indispensable documents, it did so in a manner dissociated from the principles that governed the previous Codification. In other terms, only in CPC/15 was the purpose of the legislator intentionally to allow the magistrate to receive from the Parties all the necessary factors to know the factual situation and to curb actions in order to simply cause embarrassment to the other party.

12.        There is no way to ignore that CPC/15 was planned to ensure the greatest effectiveness of the process through more direct petitions, more precise decisions and the use of procedural acts, avoiding unnecessary movement of the Judiciary System.

13.        In this context, as will be shown below, with the beginning of the term of validity of the new CPC and in order to ensure the maintenance of a valid and regular procedural relationship, it is essential that all the points described below are addressed, as they are issues of public order and, therefore, can be alleged at any time.

14.        In this sense, it is unquestionable that this claim is made up of defects that, both from the perspective of CPC/73 and CPC/15, are incurable and prevent any judgment of merit because there are no minimum requirements for filing the case, namely: (i) nullity of procedural representation and lack of nominative capacity, considering that the object of the claim is outside the jurisdiction attributed by LC No. 73/93 to the Attorney General's Office of the National Treasury, as consolidated by PGFN/CRJ Note No. 1558/14; (ii) impossible order formulation, substantiated in the fact that it is not feasible to undo the two legal transactions

---

[3] CPC/15: Art. 320. The initial petition will be based on the documents indispensable to the filing of the action.

4

[signature]



[hw:] ~~742~~ 743

provided in the initial petition, without considering the impacts on the total JBS and BRTIN corporate restructuring, which leads to the dismissal of the action without any review of merit, pursuant to Art. 485, IV, of CPC/15 and (iii) lack of interest to act, to the extent that the Plaintiff does not require this jurisdictional provision to ensure the effectiveness of the administrative collection, even because assets have already been listed in the form of the governing law, ensuring the result of the administrative collection, which demonstrates the lack of adequacy (i.e. there is no non-observance of the binomial need vs. adequacy).

15.        In the remote event that the incurable defects mentioned above are overcome, on the merits, the expiry of the preemptive period, provided for in the Civil Code, to request the nullity of legal transactions is crystal clear.

16.        This is what is shown.

### III - INCURABLE DEFECTS:

#### III.1 - NULLITY OF ALL ACTS PERFORMED: ILLEGITIMACY OF REPRESENTATION OF THE UNION

17.        As is known, for the Party to be able to bring a dispute to the attention of the Judiciary, in addition to having to have an interest in acting and legitimacy, it is essential to prove nominative capacity of its legal representative.

18.        In this sense, while the former CPC/73[4] only generally provided that legal entities under internal public law would be represented by their attorneys-in-fact, the new Code included a chapter called "Procedural Capacity", in which, by regulating the ability to be in court, it repeats the constitutional mandate to clarify that the Union will be represented by the respective agency linked to the AGU. Please see:

> CF/88: "Art. 131. **The Federal Attorney General's Office is the institution that**, directly or **through an associated body, represents the Union, judicially and extrajudicially**, and it is responsible, under the terms of the **complementary law that provides for its organization and operation**, for the activities of

---

[4] Art. 12. The following will be represented in court, actively and passively: I - the Union, States, Federal District and Territories, by their attorneys-in-fact;

5

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~743~~ 744

consultancy and legal assistance of the Executive Branch."
(Emphasis added)

***

CPC/15: "Art. 75. The following will be represented in court, actively and passively:
I - the Union, by the General Counsel of the Union, directly or **through an associated body**;" (emphasis added)

19.       The alluded alteration to the procedural norm is relevant because, as determined by constitutional text, the Organic Law of the Federal Attorney General was published (i.e. Supplementary Law No. 73/93), providing for the organization and operation of the AGU, in which the functional competence of each agency linked to the AGU is established.

20.       The analysis held by Complementary Law No. 73/93 reveals to us that the representation of the Union may be carried out by four bodies, two of an advisory nature and two intended for contentious demands, but all with well-defined powers. In this sense, confirm the devices that deal with contentious bodies:

"**From the Federal Attorney General's Office**
Art. 9 - The Attorney General's Office of the Union, directly and immediately subordinated to the Attorney General of the Union, is responsible for judicially representing it, under the terms and limits of this Complementary Law.
§ 1 - The Federal Attorney General's Office is responsible for representing it before the higher courts.
§ 2 - The Federal Regional Attorney General's Office is responsible for representing it before the other courts.
§ 3 - The Federal Attorneys' Office organized in each State and in the Federal District, represents it with the first instance of the Federal Justice, ordinary and specialized.
§4 - The Federal Attorney General may act before the judicial bodies referred to in §§ 2 and 3, and the Regional Federal Attorneys General together with those mentioned in § 3 of this article.

***

**From the Attorney General's Office of the National Treasury**
Art. 12 - The Attorney General's Office of the National Treasury, an agency that is administratively subordinate

6
[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~744~~ 745

to the holder of the Ministry of Finance, is especially responsible for:

I - determining the liquidity and certainty of the Union's active debt of a tax nature, inscribing it for collection, amicably or judicially;

II - privately represent the Union, in the execution of its active debt of a tax nature;

III - (REVOKED)

IV - previously examine the legality of contracts, agreements, adjustments and covenants of interest to the Ministry of Finance, including those related to foreign public debt, and promote the respective termination by administrative or judicial means;

**V - represent the Union in causes of a tax nature.**

Sole Paragraph - Causes of a tax nature are considered those relating to:

I - taxes of the jurisdiction of the Union, including violations of tax legislation;

II - compulsory loans;

III - seizure of domestic or foreign goods;

IV - decisions of tax administrative litigation bodies;

V - tax benefits and exemptions;

VI - credits and fiscal stimuli to export;

VII - tax liability of transporters and maritime agents;

VIII - procedural incidents brought in actions of a tax nature."

21.        As can be seen, the Attorney General's Office of the National Treasury is competent to defend the interests of the Union only in cases that cover tax matters **exclusively**, and the Attorney General's Office is the body responsible for all other matters.

22.        The analysis of the nature of the action is fundamental to determine the AGU body responsible for representing the interests of the Union. So much so that the Code of Civil Procedure itself has undergone an express alteration to demonstrate the need to observe the correct representative body.

23.        Thus, in the new civil procedural system, it remains even clearer that the Union can only be represented by the AGU's associative body, within the powers established by the AGU Organic Law (LC 73/93).

24.        It so happens that, as expressly stated in the initial and the preliminary decision report, the Plaintiff seeks jurisdictional provision that declares the nullity of the Private Instruments of Assignment and Transfer of Shares and Other Covenants signed between the

7

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~745~~ 746

Respondents on January 2, 2010, and November 11, 2010, based on Art. 166, VI, of the Civil Code.

25.        To eliminate any doubt, it is necessary to bring up the relevant excerpts from the preamble of the initial petition, in which the Plaintiff clarifies the reason for filing this Ordinary Action, namely:

> "The **purpose of this claim is to undo 2 (two) legal transactions** conducted between the companies BRACOL HOLDING LTDA. - former name of the Defendant TINTO HOLDING LTDA. - and BLESSED HOLDINGS LLC. (...)
> Therefore, **pursuant to Art. 166, VI of the Civil Code**, the National Treasury proposes this claim (...)" (emphasis added)

26.        Indeed, it is unquestionable that a case filed to undo a juristic act under the argument of legal fraud, is solely and exclusively civil in nature, which references the legal jurisdiction of the Attorney General's Office of the National Treasury.

27.        It is surprising that PGFN contradicts its functional competence to try to annul a juristic act that has not even passed the criticism of the competent administrative bodies (i.e. the CARF).

28.        It should be noted that the advisory areas of the Federal Attorney General have issued opinions several times underlining <u>advising the PGFN of their functional lack of jurisdiction to act on causes that are outside the tax sphere</u>. As it is fundamental to demonstrate the illegitimacy of the representation of the Union in this case, it is worth transcribing the relevant excerpts from PGFN/CRJ Note No. 1558/14 **(doc. 01)**:

> "9. This is not what happens, however, regarding the jurisdiction for the judicial representation of the Union, which is, **according to the provisions of Art. 12, paragraph V, of LC No. 73/93, limited to causes of a tax nature**. The criterion, therefore, does not have any connection with the administrative body, but rather with the nature of the matter disclosed in the complaint.
> 10. **The issue is not new and has already been addressed in several PGFN, PGU and the General Consultancy of the Union legal statements**. (...)
> 11. As for the definition of jurisdiction for the judicial

8

[signature]



Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~746~~ 747

representation of the Union, **the body that gave rise to the administrative act should not be taken into account, but rather the nature of the claim brought in court should be.**

(...)

16. In this sense, **only the obligations related to the payment of taxes or compliance with ancillary tax obligations, in addition to the consequent violations applied, may give rise to the jurisdiction of PGFN** for the judicial representation of the Union, since, in such cases, the causes are taxable in nature, a situation that falls within the provisions of Art. 12, V, of LC No. 73/93.

17. In the other cases, the reasoning developed in the aforementioned Opinion No. AGU/SF/04/2008, approved by the then General Counsel and Attorney General of the Union, applies: "Under the terms of Article 9 of the same Organic Law of the AGU, it is, residually, the Federal Attorney General's Office that represents the Union, in all other causes, that are not collection of active debt of the Union of any nature (CF/88, Art. 131, § 3; LC 73/93, Art. 12, caput, item II; Art. 23 of Law No. 11,457/2007) or that are not of a tax nature."

(...)

37. Among all of them, only matters of a tax nature give rise, within the scope of the judicial representation of the Union, to the performance of PGFN, given the tax nature. **On the other hand, in the case of judicial discussions relating to non-tax matters, the judicial representation of the Union is performed by the PGU**, according to the understanding already applied by this PGFN/CRJ and by the General Consultancy of the Union already mentioned above." (Emphasis added)

29.        It should be noted that PGFN's own Court Consultancy Coordination clarifies that this discussion is not new, and has been addressed in several PGFN, PGU and the General Consultancy of the Union legal statements, with the understanding that **_"only obligations related to the payment of taxes or compliance with ancillary tax obligations, in addition to the consequent violations applied, may give rise to the competence of PGFN"._**

30.        As clearly pointed out by the PGFN advisory body, the body that gave rise to the administrative process is irrelevant, since what is analyzed is the request formulated in the court that, as seen, is an annulment of a juristic act, and thus, a civil nature, not associated with tax interest, since for the purpose of the tax assessment, there is no need to return to *status quo ante* or divest the juristic act, the content of the Sole Paragraph of Art. 116 of the National Tax Code, as detailed below.

9

[signature]



[hw:] ~~747~~ 748

31.        Also in case law there are precedents excluding the legitimacy of PGFN to represent the Union indiscriminately, namely:

> "CIVIL PROCEDURE. INTERLOCUTORY APPEAL. COMPETENCY TO JUDICIALLY REPRESENT THE FEDERAL UNION. DEFTNESS OF THE PROVISIONS OF ARTICLE 12 OF SUPPLEMENTARY LAW 73/93. ISSUE OF A NON-TAX NATURE. AGU COMPETENCY. APPEAL GRANTED. - The Appellant is filed against the decision issued by the Hon. Court a quo that, in the case files of an ordinary action filed by Distell South America Ltda, declared the nullity of the summons of the AGU, to determine that the Attorney General's Office of the National Treasury legally represents the Federal Union in the case. - **It was found that the issue brought to trial is not of a tax nature, justifying the judicial representation by the Attorney General's Office. National. - It is recognized that the Federal Union must be represented by AGU, in this judicial claim, once any of the hypotheses provided for in Article 12 of Complementary Law 73/93 are absent**.- The appeal is granted."[5] (Emphasis added)

32.        In light of the foregoing, whether from the perspective of CPC/73 or CPC/15, the only possible conclusion is that the procedural representation of the Union by an associated agency of the AGU must be carried out in strict observance of the jurisdiction established by LC No. 73/93.

33.        Indeed, since this is an incurable defect related to the matter of public order, this action must be summarily dismissed, without judging the merits due to lack of procedural interest, pursuant to Art. 485, VI[6], of CPC/15, considering as null and void all acts carried out, due to the clear lack of nominative capacity of the Attorney General's Office of the National Treasury in causes outside the respective functional jurisdiction.

---

[5] TRF2. Case No. 0001726-41.2005.4.02.0000. Defendant Fed. Dist. PAULO SPIRITO SANTO. DJU on 9/25/2006.
[6] Art. 485. The judge will not decide the merits when: (…)
VI - absence of legitimacy or procedural interest is ascertained;

10

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~748~~ *749*

### III.2 - THE IMPOSSIBLE APPLICATION FORMULATED BY THE PLAINTIFF

34.        In the case that the incurable defect of legal representation, detailed above, which is admitted by virtue of the Eventuality Principle, it is worth noting that, the Plaintiff intends to obtain recognition of the nullity only of the business carried out between TINTO HOLDINGS and BLESSED HOLDINGS, with the consequent return of assets to TINTO HOLDINGS' assets.

35.        It just so happens that it does not take much effort to realize that it is not possible to merely disregard one of the stages of a complex corporate reorganization structure. In this sense, this case is included in the context of the merger between the JBS and BERTIN groups, initiated in 2009 and widely disclosed to the press and investors through the publication of Relevant Facts[7] by JBS, observing the rules of the Securities and Exchange Commission - CVM.

36.        According to the Agreement entered into between the Parties, the condition for the operation to take effect was that the BERTIN control group became a minority shareholder of the holding company of the JBS group: FB Participações, which ended up being realized, even if these stakes were subsequently sold to a foreign investor.

37.        When analyzing the possible restructurings necessary to achieve the final purpose of the agreement between the Parties, in view of the complexity of the operation and transfer of these assets, it was decided to reorganize the company through an Investment Fund (FIP) with the version of shares for the incorporation of this Investment Fund (BERTIN FIP). From then on, the procedure followed was the same as that attributed to any new shareholder who joins a certain company, that is, the simple signing of a Bulletin or Subscription List, with the respective payment of the assets for the incorporation of the Share Capital.

---

[7] According to CVM Instruction No. 358/2002, it is considered relevant "any decision of the controlling shareholder, resolution of the general meeting or the management bodies of the publicly-held company, or any other act or fact of a political-administrative, technical, business or economic-financial nature occurring or related to its business that may influence in a considerable manner: I - in the shares of securities issued by the publicly-held company or in reference to them; II - in the decision of investors to buy, sell or hold those securities; III - in the decision of investors to exercise any rights inherent to the status of holders of securities issued by the company or in reference to them" (Art. 2).

11

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~749~~ 750

38.        From a strictly final perspective, it was possible to reach the desired result - equity interest of the *holding* company - by simple payment of capital subscribed to FB Participações. However, a corporate reorganization encompasses a conglomerate of techniques based on a legitimate economic and operational purpose, which consists of maximizing shareholder return.

39.        The direct contribution to FB Participações was measured in line with the interests of the group of undertakings in the incorporation process. This is because the controllers of BERTIN had to contribute new resources to pay up the capital subscribed to FB Participações through cash disbursement. There would, of course, be a high financial impact in this hypothesis, deviating from the purpose of the Agreement: to use the controllers' own equity interest from one group to merge with the other.

40.        The classic *Mergers and Acquisitions* ("M&A") procedures, under the Companies Act would also imply high operational and financial costs to interested companies. Prior deliberation and approval by the General Assembly of the "Protocol and Justification", which specify all the conditions and reasons for incorporation, merger or spin-off, it would be essential, and must be accompanied by assessment reports of the assets and actions given in payment, among others, pursuant to Articles 224 to 226 of the S.A. Law.

41.        If the factors mentioned above were not enough, the General Meetings convened to deliberate and approve acts of incorporation, merger or spin-off allow dissenting shareholders the right to withdraw from the company (Art. 137 with Art. 136, IV and V, of the Corporations Law), upon immediate reimbursement of their shares (Art. 45, of the Corporations Law), which can generate political conflicts and the disbursement of larger amounts.

42.        Since the intention of the Contracting Parties was to use TINTO's own corporate stake in BERTIN S.A. to promote restructuring, it would mean that, due to the traditional M&A, at least 3 procedures of this nature would be carried out with the preparation and voting of the Protocol and Justification by the general meetings of both interested companies, in addition to the opportunity of dissenting parties to withdraw.

12

[signature]



Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~750~~ 751

43.        As demonstrated, instead of six Meetings, only that which was necessary for the conversion of BERTIN S.A. into a wholly owned subsidiary was held, via incorporation of shares, and the other procedures were carried out in an expedited manner, since the FIP was in the position of shareholder of the companies, not of a company incorporated/merged.

44.        For all the factors described above, after joint deliberation of the controllers of the groups regarding the assessment of the assets and the forms of transfer thereof, it was decided that the restructuring would take place through a Share Fund, in order to obtain greater effectiveness of all the procedures, so that the following steps were carried out:

> **(i)** Constitution of FIP - the BERTIN FIP - through subscription of the fund shares with the shares to which the company TINTO was entitled in the company BERTIN S.A., with closed equity. Thus, the FIP would have a single shareholder, TINTO, with the Fund now holding control of BERTIN S.A.;
>
> **(ii)** In a second instance, JBS S.A. would promote the incorporation of shares of BERTIN S.A., becoming, as a result, a wholly-owned subsidiary of BERTIN S.A.;
>
> **(iii)** By way of the incorporation procedure, the partners of the incorporated company (full subsidiary) start to hold the respective shareholding in the parent company. Thus, there was an increase in the share capital of JBS S.A., with FIP holding a portion of its ordinary shares;
>
> **(iv)** Subsequently, shares were exchanged between FIP and the FB Participações company - *holding* of JBS - where FIP assigned its shareholding in JBS S.A. to FB Part., holding capital of the latter.

45.        As can be seen, BERTIN FIP and the JBS control group began to hold the Share Capital of FB Participações, indirectly controlling JBS S.A.

46.        In the end, after several negotiations and management discussions, there was the disposal of shares of BERTIN FIP, which belonged to Tinto Holding, in favor of Blessed Holdings LCC, a foreign investor group based in Delaware, United States.

13

[signature]



Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~751~~ *752*

47.        The group structure was therefore represented as follows:



48.        A superficial and unrelated analysis of the real effects that the corporate restructuring that took place in the BERTIN and JBS groups, as carried out by the Federal Revenue Service of Brazil and the National Treasury Attorney's Office, would lead us to the **erroneous** conclusion that it was a simple operation and that the transfer of a certain number of shares would be enough to justify the operation. Thus, through the same simplistic thinking, these bodies believed that the return of assets would suffice for the Petitioner to have its assets taxed.

49.        Notwithstanding the Plaintiff's intent to demonstrate that its request is possible, it is a complex corporate operation that involved several approvals of mergers/acquisition related to the mergers, acquisitions and the joining of assets, which were thoroughly analyzed by the Administrative Council of Economic Defense ("CADE").

50.        In other terms, it is not simply about share transfers, but rather what they represent within the company and companies involved, that is, said shares, in fact, represent the production units of both Groups throughout Brazil, in addition to investments and improvements, among other production factors.

14

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~752~~ 753

51.        In this sense, there are some excerpts from the analysis made by CADE about the merger approval No. 08012.008074/2009-11, carried out between the BERTIN and JBS Groups to demonstrate the size and complexity of the transaction, namely:

> "According to information contained in its corporate documents, **the JBS Group** is currently a **world leader** in the processing of animal proteins, operating in the areas of food, leather, pet products, biodiesel, collagen, cans and cleaning products. (...) **In Brazil, the Group currently has industrial units located in the states of São Paulo, Goiás, Mato Grosso, Mato Grosso do Sul, Rondônia, Minas Gerais Acre, Paraná and Pará** .
> (...)
> **Bertin S.A.** was, before its incorporation by JBS, a Brazilian company belonging to the Heber Group, also national. Bertin served as a producer and exporter of animal products, including a broad portfolio of products involving *natural* and processed beef, dairy products, leathers, animal care products, and hygiene and cleaning products. (...) The company **exported to more than 100 countries and became confounded with 38 production units** in Brazil and abroad, **employing around 35,000 employees**.
> (...)
> **This operation involved assets located in the states of São Paulo, Goiás, Mato Grosso, Rondônia, Mato Grosso do Sul. Minas Gerais, Pará, Bahia and Tocantins** .
> (...)
> It has to do with realizing that **the concept of "company" in law does not concern a certain corporate structure, but rather an organization of a set of productive factors** intended to produce certain results that would be impossible to be produced by the factors alone, that is, to an economic body that puts these factors into operation, within a coordinated system, to produce a certain profit, in the famous concept of Cesare Vivante. (...) **The criterion, so that such operations can be considered "mergers and acquisition", is that they focus on the *company as a whole*, and not on its isolated factors**. In other words, they focus on the set of factors that make up the company understood as a fully operating system." (Emphasis added)

52.        As masterfully described by CADE Board Member Marcos Paulo Veríssimo, a merger not only involves the corporate structure, but also all the production units and assets that are part of the companies and that were used in the operation.

15

[signature]



[hw:] ~~753~~ *754*

53.        Thus, there is no sense in disregarding (or trying to disregard) only a part of the corporate operation carried out alone, ignoring all the consequences of this act on the entire operational structure, especially when intending to withdraw the investments received from abroad.

54.        As pointed out by the rapporteur of CADE, the acts of incorporation involved assets from both companies in the States of São Paulo, Goiás, Mato Grosso, Rondônia, Mato Grosso do Sul, Minas Gerais, Pará, Bahia and Tocantins, which were carefully analyzed throughout the various mergers and the corporate operations carried out.

55.        Thus, the undoing of only a part of the negotiation initiated in 2009 has serious implications for all parties involved, that is, it impacts the assets of the Defendant, BERTIN FIP, JBS, former BERTIN S.A. and gives rise to a legal and economic complicated dispute that is impossible to be resolved with the ingenuousness that the Attorney General's Office proposes. Thus, assuming that on this date the business carried out was undone, excluding foreign investors and returning the shares to BERTIN FIP, there would be several issues to be raised by the Judiciary itself:

(i)     How would the retroactive assessment of all assets be done seven years after the start of negotiations, so that it could be returned to the initial situation?

(ii)    How do are the amounts reimbursed for all quota transfers between BERTIN, JBS and BLESSED?

(iii)   How would compensation be given due to investments and improvements made in the production units corresponding to these shares?

(iv)    What about the various production units that have had their activities closed or expanded since then?

(v)     How does one proceed with regard to transactions involving foreign investors, in relation to the variation in the market value of the shares and the difference in the exchange rate?

16

[signature]



Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~754~~ 755

     (vi)   How does one calculate the evolution of the relationship between equity vs. market value vs. number of shares in order to allow proportional return to foreign investors and JBS?

56.        In light of the foregoing, it is evident that the application prepared in the initial petition is manifestly impossible to be fulfilled, and results solely from the superficial, biased and speculative analysis of the Attorney General's Office.

57.        There is no rule in the legal system foreseeing how to proceed in this situation with such complex legal transactions. It should be noted, Your Honor, that this is not an attempt to cancel a purchase of the sale of an automobile, for example, in which case the business could be easily undone; in this specific case, any undoing of the transaction would impact all the Companies, production units, financings incurred, company creditors and rights and obligations involved in the negotiation.

58.        Using the new CPC, it can be verified that, in response to the doctrinal appeals, the legislator chose to order the judge to deem the process extinct, without resolution of the merits, whenever the assumptions of valid and regular development of the process are absent, and care was taken to clarify that, as it is a matter of public order, this hypothesis of extinction can be recognized ex officio at any time and in any degree of jurisdiction. Please see:

> " Art. 485. The judge will not rule on the merits when:
> (...)
> IV - verify the absence of assumptions of constitution and valid and regular development of the process;
> (...)
> § 3 The judge shall be aware of the official letter of the matter contained in items IV, V, VI and IX, at any time and degree of jurisdiction, until the final judgment occurs."

59.        Therefore, in view of the new system brought by the civil procedural rules, the Petitioner requests that the case be dismissed, without resolution of the merit, pursuant to Art. 485, IV c/c §3, due to the manifest legal impossibility of the prepared request.

17

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~755~~ 756

### III.3 - LACK OF INTEREST TO ACT:
### LACK OF NEED FOR THE JUDICIAL PROVISION REQUESTED

60.        In the remote event that the two incurable defects pointed out above are not accepted, which is admitted only by ex officio duty, at least the Plaintiff's lack of interest in acting must be recognized, which leads to the preliminary rejection of the initial petition in the new civil procedural system.

61.        The lack of interest to act becomes evident insofar as the Union clarifies that this action was filed in order to "*ensure the useful result of the administrative collection*." This is because it is evident that the alleged right claimed in this action does not require the filing of an ordinary action; on the contrary, its filing even makes it difficult to materialize its legally impossible request.

62.        As will be demonstrated below, in this action, the existence of the binomial need-adequacy that characterizes the interest to act is not envisaged. In the words of Ada Pellegrini Grinover and Cândido Rangel Dinamarco[8]:

> "*Interest in taking action.* This condition of the action is based on the premise that, although the State has an interest in the exercise of jurisdiction (indispensable function to maintain peace and order in society), **it is not appropriate to activate the judicial apparatus without extracting any useful result from this activity**. It is necessary, therefore, through this point of view, that in each specific case, the jurisdictional provision requested is *necessary* and *appropriate*.
> The ***need* for jurisdictional relief rests on the impossibility of obtaining satisfaction of the alleged right** without the intercession of the State (...).
> ***Appropriateness* is the relationship between the regretted situation of the case files being heard in court and the jurisdictional provision specifically requested**. The provision, of course, must be able to correct the wrong that the plaintiff complains about, under penalty of having no reason to exist."

---

[8] CINTRA, Antônio Carlos de Araújo; GRINOVER, Ada Pellegrini; DINAMARCO, Cândido Rangel. General Theory of the Process. 31st edition. São Paulo: Malheiros, 2015. Pages 296/297.

18

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~756~~ *757*

63.        In the case in question, there is no need for jurisdictional protection, insofar as it would be enough for the Union to formalize the term of listing of TINTOS' assets (**as effectively done already**); and, in order to carry out the assessment of a tax or collection in the manner it deems appropriate, the Union may only disregard the **effects** of the acts carried out, without any need to claim the return of shares so that the alleged capital gain is taxed.

64.        In this sense, Law No. 9,532/97 establishes the possibility for the Tax Authority to proceed with the listing of the taxpayer's assets, whenever the value of the tax credit under discussion exceeds 30% (thirty percent) of the known assets, provided that the taxpayer cannot dispose of the assets without the authorization of the Tax Authority. Confirm the critical explanation of the rule:

> "Art. 64. **The competent tax authority shall encumber the assets and rights of the taxpayer whenever the value of its tax credits is greater than thirty percent of its known assets**.
> (...)
> § 3 As of the date of notification of the encumbrance, upon delivery of a copy of the respective period, the owner of the listed assets and rights, **when transferring, disposing of or encumbering them, must communicate the fact to the unit of the treasury body that has jurisdiction over the taxpayer's tax domicile**.
> § 4 The disposal, encumbrance or transfer, in any capacity, of the assets and rights listed, without complying with the formality provided for in the previous paragraph, **authorizes the request for tax injunctive relief against the taxpayer**. (...)" (emphasis added)

65.        These mechanisms, by themselves, are sufficient enough to ensure the useful result of the administrative collection; so much so that they are often adopted by the Attorney General's Office of the National Treasury in the administrative area, because not even the CARF has jurisdiction to review the tax listing.

66.        This is because, case law of the Federal Administrative Court has already established the understanding that the analysis of the list of tax liability would imply the examination of constitutional material and refer to the terms of the delimitation imposed by Decree No. 70,235/72, namely:

19
[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~757~~ *758*

"(...)LISTING OF ASSETS. APPRAISAL. IMPOSSIBILITY. Under the terms of the delimitation imposed by Decree No. 70,235 of 1972, **the assessment of the validity of the listing of assets and rights formalized by the tax authority is beyond the competence of the administrative bodies of judgment.** Voluntary Appeal Denied.

(...) Voting

**The encumbrance of assets and rights is an administrative measure** related to the satisfactory protection of the interests of the State (...) and is provided for in Articles 64 and 64A of Law 9,532/97, transcribed below and constitutes an obligation of the tax agent.

In this sense, **it is up to this collegiate body to assess the alleged affront to the Constitution by this legal law**, since it rejects (*sic*) its jurisdiction to judge issues involving compliance with current law with the Constitution, pursuant to CARF Summary No. 02 (...)

On the other hand, **the considerations made by the appellant in relation to the encumbrance of assets** cannot be assessed by the administrative judging authority, since they are not limited to those delimited in Decree No.70,235, of 1972, that is, **they do not concern the determination and requirement of tax credits**"[9] (emphasis added)

\* \* \*

"LISTING OF ASSETS. CARF is not competent to review the administrative procedure for listing of assets. (...)"[10]

67.          As can be seen, once the taxpayer's or the defendant's assets were listed, not even the CARF could undo it.

68.          In addition, it is a fact that in the listing the taxpayer itself indicates its tangible assets, facilitating the liquidity of the guarantee if necessary and departing from share return forecasts.

69.          **At this point, it is worth noting that the Petitioner has sufficient assets and rights to guarantee the action (so much so that Term of Listing of Assets and Rights was drawn up by the Tax Authorities, as highlighted on pages 294 of these records), with no need to block third-party assets outside the legal relationship (such as Pinheiros FIP) or to oblige foreign**

---

[9] CARF. Judgment No. 2401-003.535. Defendant Elias Sampaio Freire. Judged on 5/14/2014.
[10] CARF. Judgment No. 2301-004.437. Defendant João Bellini Junior. Judged on 1/26/2016.

20

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~758~~ 759

**investors to return shares received in view of their investment in Brazil.**

70.          As if the lack of need to file this action was not enough due to the procedure shown above, there is also no need to request the removal of a complex corporate restructuring when, for tax purposes, the Tax Authority may simply disregard the transaction carried out, allegedly simulated or

fraudulent, and collect the corresponding tax.

71.          This possibility is expressed in Art. 116, sole paragraph, of the National Tax Code, which is conventionally called in the tax field a general "anti-avoidance" rule, in verbis :

> "Art. 116. Unless otherwise provided by law, the triggering event is considered to have occurred and its effects exist:
> I - in the case of a de facto situation, from the moment the necessary material circumstances to which it produces the effects, which are usually its own are verified;
> II - in the case of a legal situation, from the moment it is definitively constituted, under the terms of applicable law.
> Sole paragraph. **The administrative authority may disregard legal or juristic acts carried out for the purpose of disguising the occurrence of the taxable event or the nature of the factors constituting the tax obligation, observing the procedures to be established in ordinary law**." (Emphasis added)

72.          The mere reading of the legal text indicates to us that, if the Administrative Authority considers that a certain juristic act was carried out fraudulently in order to disguise the triggering fact, it may simply **disregard the acts carried out**.

73.          Note that in the general "anti-avoidance" rule there is no provision for the return of shares, undoing of transactions, return or blocking of assets of the Parties involved, limited itself to allowing the Tax Authority to tax the triggering event it deems due, enabling the taxpayer to subsequently present its administrative defense.

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~759~~ 760

74.          Thus, given that the Plaintiff sought to improperly move the *Judiciary System, ignoring Law No. 9,532/97*, which provides for the tax procedure at the discretion of the Tax Authority and also ignoring the terms of the National Tax Code, which allows for obtaining the result in the fastest and most effective manner possible, the inappropriateness of this cause should be recognized, given its disregard of the procedure for the intended purpose.

75.          And not only that. The Plaintiff expressly assumes from the preamble of its initial petition that there is already an administrative process currently underway before the Administrative Board of Tax Appeals, through which the Plaintiff sustains an alleged irregularity in the corporate transactions carried out, but even so appeals to the Judiciary under the pretext of ensuring the useful result of the administrative process.

76.          From any angle the issue is analyzed, the need for the procedure adopted by the Plaintiff is clear, which, in itself, would imply a lack of procedural interest.

77.          Furthermore, it should be remembered that the drafting of an impossible request, as was already demonstrated above, prevents the process from having a minimally useful result to the Parties, evidencing the lack of adaptation of this action to the intended jurisdictional provision. At this point, it is worth noting that the Plaintiff's claim can be easily reached by means of a listing agreement (**which has already been carried out**!!!) and disregarding the transaction based on Art. 116, sole paragraph, of the CTN.

78.          It happens that, from the perspective of the new procedural order, the lack of procedural interest is the cause of the preliminary rejection of the initial petition, *in verbis*:

> "Art. 330. The initial petition shall be dismissed when: (...)
> III - the plaintiff lacks procedural interest"

79.          Therefore, given that this action was not necessary, nor appropriate, the Petitioner requests that the lack of procedural interest be recognized, with the consequent rejection of the initial petition.

22

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~760~~ *761*

**IV- MERIT:**

**ABSENCE OF LEGAL FRAUD:**

**DEADLINE FOR CANCELLATION OF LEGAL BUSINESS**

80.        As has already been exhaustively demonstrated, this action does not have the slightest condition to succeed. This is because, despite all the irregularities pointed out, the Attorney General's Office's attempt to circumvent the statute of limitations provided for in civil law also catches one's eye, since it has already been demonstrated that this action is based only on speculative news about alleged fraud and an alleged relationship between BLESSED and JBS.

81.        Thus, the filing of this case could not even be admitted without any concrete document that would enable the court to verify the veracity of the allegations. In this context, even if the Attorney General's Office wanted to question some aspect of the corporate reorganization without evidence, at most, a claim for annulment would be admissible due to some alleged defect, which also did not occur in the case.

82.        Said another way, since the Plaintiff did not bring to the case a single document that proved its unfounded allegations, limiting itself to accepting documents from the corporate transaction itself (i.e. public documents) and news published by the press, the accusation of legal fraud, provided for in Art. 166, VI, of the Civil Code, cannot be admitted.

83.        Thus, given that the transaction carried out clearly does not fit any of the absolute nullity hypotheses in Art. 166 of the Civil Code, it is strictly necessary to analyze the statute of limitation rule in Arts. 178 and 179 of the same Codex, which provide as follows:

> "Art. 178. **The statute of limitation term to request the annulment of the juristic act is four years from**:
> I - in the case of coercion, the day on which it ceases;
> II - in the case of error, willful misconduct, fraud against creditors, danger or injury, the day on which the juristic act was conducted;
> III - in the case of acts by disabled people, the day on which the disability ceases."

\* \* \*

23

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~761~~ 762

> "Art. 179. When the law stipulates that a certain act is voidable, **without establishing a statute of limitation for requesting annulment, this will be two years** from the date the act occurred." (Emphasis added)

84.        When any hypothesis of absolute nullity described in Art. 166 of the Civil Code is absent, we must observe whether the hypothesis of intended annulment is listed in the items of Art. 178 of the civil law (i.e., coercion, error, willful misconduct, fraud against creditors, state of danger or injury or act carried out by the disabled), and, if the response is affirmative, **the statute of limitation would be 4 (four) years, ending in November 2014, since the last transaction in question occurred in November 2010**.

85.        However, the situation that gives rise to the request for annulment is not even described in the list of the aforementioned Article 178, so that **the filing of this case should have observed the general rule of civil law (i.e., Art. 179), which defines a statute of limitation of two years** from the date of completion of the act.

86.        Thus, applying the general rule of statute of limitations to annul the juristic act, the passage of the statute of limitation period ends in November 2012.

87.        As can be seen, regardless of the statute of limitation rule used, it is clear that in both cases, the judgment of this case occurred after the statute of limitation period had passed, and this case should be extinguished with resolution of the merits.

88.        There is no other guide that has prevailed in the Superior Courts, which determines that the period provided for by law is strictly observed, namely:

> "CIVIL. SPECIAL APPEAL. DECLARATORY ACTION. VOID DONATION. PROPERTY. VICES OF CONSENT. DEADLINE TIME FRAME. INITIAL TERM. DATE OF BUSINESS TRANSACTION. ARTICLES REVIEWED: ART. 178, II, of the CIVIL CODE.
> **1. Declaratory action of donation nullity** due to vices of consent, filed on 6/29/2009 Special appeal filed with the Office on 10/18/2013.(...)
> 4. The statute of limitation is an extinguishing cause for its non-exercise within the period stipulated by law,

24

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~762~~ 763

**whose initial term must coincide with the knowledge of the fact that generates the right to be claimed**.

5. It is not reasonable to invoke the absence of "unequivocal knowledge of the act", by the owner of the asset itself, given the absence of registration of the contract and assessment by the Notary Public of the regularity of the venture where the donated lot was located.

6. **The statute of limitation for cancellation of the donation in the event, therefore, is four years from the day on which the juristic act was conducted, pursuant to what is expressly provided for in Art. 178, II, of the Civil Code**.

7. Special appeal granted."[11]

***

"CIVIL AND CIVIL PROCEEDINGS. MOTIONS FOR CLARIFICATION IN THE SPECIAL APPEAL. RECEIPT AS A REGULATORY APPEAL. ANNULMENT OF SALE FROM ASCENDING TO DESCENDING. ANNULLABILITY, EVEN WHEN DURING THE VALIDITY OF THE CIVIL CODE OF 1916. SUBJECT TO A DEADLINE. REDUCTION OF THE TERM BY THE CURRENT CIVIL CODE. TRANSITION RULE. APPLICABILITY. FULL LEGAL TERM EXPIRATION. RECOGNIZED DEADLINE. APPEAL NOT GRANTED. DECISION MAINTAINED.

(...)

4. **In the specific case filed after the statute of limitation established by Art. 179 of the current Civil Code, it is necessary to recognize the statute of limitation of the right of the plaintiff to request the annulment of the legal act contrary to the rule of Art. 1,132 of CC/1916, current Art. 496 of CC/2002.**.

5. Motions for clarification received as a regulatory grievance, which is dismissed."[12] (Emphasis added)

89.      At this point, it is worth remembering that **the corporate transactions questioned in these case files occurred in January 2010 and November 2010**, therefore, even if the Plaintiff intended to annul the juristic act, its right would be struck down by the passage of the statute of limitations provided for in Art. 178 and 179 of the Civil Code since this action was only filed in March 2015.

---

[11] STJ. REsp No. 1,148.435/SP. Defendant Judge Nancy Andrighi. DJe on 3/26/2014.
[12] STJ. EDcl No. REsp 1198907/RS. Defendant Judge Antonio Carlos Ferreira. DJe on 9/18/2014.

25

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] *763* 764

90.        It should be emphasized that the new civil procedural system allows the magistrate to dismiss the request outright when verifying the occurrence of the statute of limitation of the right, extinguishing the case with resolution of the merits, namely:

> "Art. 332. In cases that waive the instructive phase, the judge, regardless of the defendant's summons, will dismiss the request that contradicts:
> (...)
> § 1 **The judge may also reject the request outright if he or she verifies, the occurrence of statute of limitation or limitation**."

***

> "Art. 487. Merit will be resolved when the judge:
> (...)
> II - **decides, by letter** or request, **on the occurrence of the statute of limitation** or limitation;" (emphasis added)

91.        In light of all the foregoing, considering that no evidence was brought to the case files to demonstrate the veracity of the alleged facts and that, therefore, it is not possible to talk about nullifying the juristic act, the application of the statute of limitation rules provided for in the Civil Code is a measure that is imposed to preserve legal security and the perfect legal act, which gives rise to the injunction of the case, with the consequent extinction with resolution of merit, pursuant to Art. 487, II[13], of the CPC/15.

**V - REQUESTS**

92.        Therefore, after proving that this claim is based on defects that, both from the perspective of CPC/73 and CPC/15, must be analyzed by this court because they are public matters, the Petitioner requests recognition of:

(i)    The preliminary request for the nullity of the procedural representation and the lack of nominative capacity, considering that the object of the claim is outside the jurisdiction attributed by LC No. 73/93 to the Attorney General's Office of the National Treasury, as consolidated by PGFN/CRJ Note No. 1558/14, with the

---

[13] "Art. 487. Merit will be resolved when the judge: (...)
II - decide, by letter or request, on the occurrence of the statute of limitation or limitation;"

26

[signature]


Digitally signed by: JULIANA ROCCO NUNES - 2/12/2019 7:42:15 P.M.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Document number: 19021219433800000000045905197

[hw:] ~~764~~ 765

consequent rejection of the initial petition, pursuant to Art. 330, II, of the CPC/15 and the termination of the case without judgment of merit, pursuant to Art. 485, VI, of the CPC/15;

(ii)  On a preliminary basis, which an impossible request was made, since it is unfeasible to undo the legal transactions listed in the introduction, without undoing all the corporate restructuring that took place between the BERTIN and JBS Groups, involving assets and production units in nine states, which unequivocally leads to the extinction of the action without any analysis of merit, pursuant to Art. 485, IV, of CPC/15;

(iii)  In a preliminary analysis, the lack of interest to act, to the extent that Plaintiff does not require this jurisdictional provision to ensure the effectiveness of the administrative collection, because there is a regulatory legal procedure to guarantee the result of the administrative collection, which has already been used by the Union, through its competent bodies(i.e. there is no non-compliance with the binomial need x adequacy), which gives rise to the rejection of the initial petition, pursuant to Art. 330, II, of the CPC/15 and the extinction of the case without judgment of merit, pursuant to Art. 485, VI, of CPC/15; and

(iv)  On the merits that the statute of limitation provided for in the Civil Code has passed to claim the nullity of the juristic act, since with the new procedural system the statute of limitation may be notified by official letter by the magistrate.

93.    Finally, the Petitioner reiterates the requests made in its challenge for:

(i)  The jurisdiction of the Federal Court of the Federal District to prosecute and adjudicate this action, to the extent that the Union's causes of action are also the basis for the administrative proceeding in progress at the CARF, given that any action proposed by the Union against the judgment of the administrative body should be processed in the Subsection of the Federal District or, alternatively, in the jurisdiction of the

27

[signature]



[hw:] ~~765~~ 766

Federal Tax Executions of São Paulo, where the debt will be collected in the event of administrative origin of the tax charge;

(ii) Let the process be over without resolution of merit, by accepting the following preliminary petition, because the issues subject to this claim are being discussed in the records of the related administrative proceedings, in which Challenges were regularly filed by the defendants and drawn up, namely: (a) ineptitude of the initial petition and lack of procedural interest for disregarding that an administrative challenge had already been filed and for electing the Petitioner as the sole defendant in this claim; (b) legal impossibility of the request, given the right to previously list assets for seizure; (c) rejection of the complaint, for not complying with the seizure procedure provided for in Law No. 6,830/80; (d) lack of procedural interest, given the existence of administrative discussion of the matter; (e) lack of action, due to the impossibility of continuing this action before the end of the administrative session; (f) impossibility of performing acts to collect the tax credit while its enforceability is suspended, under the terms of Art. 151, III, of the CTN, as there is no final decision; and

(iii) On the merits, the summons of the other necessary passive co-parties should be determined.

Terms in which,

Grant is requested.

São Paulo, March 31, 2016.

[signature]

**LIDELAINE CRISTINA GIARETTA**

**OAB (*Ordem dos Advogados do Brasil* [Bar Association of Brazil])/SP No. 173,036**

28

[signature]





City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**8A. Contestacao Tinto - processo da Uniao**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

_____
Dan McCourt

Sworn to before me this
July 25, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

**EXCELENTÍSSIMO SENHOR DOUTOR JUIZ FEDERAL DA 1ª VARA FEDERAL CÍVEL DA SUBSEÇÃO JUDICIÁRIA DA CAPITAL DA SEÇÃO JUDICIÁRIA DE SÃO PAULO**



**Autos do processo nº 0006234-84.2015.403.6100**

        **TINTO HOLDING LTDA.**, pessoa jurídica de direito privado, já qualificada nos autos do processo em epígrafe, vem, respeitosamente, à presença de V.Exª., por seu advogado que esta subscreve, tendo em vista a entrada em vigor do novo Código de Processo Civil e a necessidade de adequação do feito às novas diretrizes processuais, expor e requerer o que segue.


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197



## I – DOS FATOS

01.         Trata-se de ação sob o rito ordinário ajuizada pela União em face da Requerida e da BLESSED HOLDINGS LLC., com o objetivo de desconstituir dois negócios jurídicos realizados entre as Requeridas no contexto da fusão entre o Grupo JBS e o Grupo BERTIN, com o suposto intuito de assegurar o resultado útil da cobrança administrativa realizada nos autos do processo administrativo nº 16561.720170/2014-01.

02.         Para alcançar este objetivo, sustenta a Autora que os negócios foram realizados com o intuito de contornar a regra de incidência do Imposto de Renda sobre ganhos de capital devidos quando da alienação de participações societárias, bem como para permitir o esvaziamento patrimonial da Peticionária.

03.         Após decorridos os trâmites legais, este juízo considerou temerária a decretação de nulidade dos negócios jurídicos sem a manifestação das Requeridas, mas autorizou o bloqueio dos ativos do Pinheiros FIP (terceiro estranho à lide) objetivando assegurar o resultado útil da presente demanda.

04.         Em 13.07.2015, a Requerida contestou o presente feito, demonstrando que este juízo deveria ter declinado da competência para julgar este caso e apontando diversas preliminares que levam à necessidade de extinção do feito sem resolução do mérito.

05.         Contudo, tendo em vista a superveniência do novo Código de Processo Civil, o qual trouxe diversas inovações ao ordenamento jurídico brasileiro, cumpre à Requerida trazer ao crivo deste juízo diversos fatores de ordem pública que acometem este feito e impedem o estabelecimento de uma relação processual válida e eficaz.

06.         É o que será cuidadosamente demonstrado a seguir.







## II – PRELIMINARMENTE

### II.1- DA MATÉRIA DE ORDEM PÚBLICA E DA SUPERVENIÊNCIA DO NOVO CÓDIGO DE PROCESSO CIVIL E A NECESSIDADE DE ADEQUAÇÃO DO FEITO

07.         Como é de conhecimento, após longos debates no meio jurídico, em 17.03.2015, foi publicada a Lei nº 13.105/15 no Diário Oficial da União, que instituiu o novo Código de Processo Civil, sendo certo que o novo *Codex* só entraria em vigor um ano após a publicação[1], portanto, em 18.03.2016 (sexta-feira), conforme, inclusive, decidido pelo Pleno do C. Superior Tribunal de Justiça[2].

08.         Neste sentido, cumpre mencionar que a elaboração de um novo Código de Processo Civil decorreu da ineficiência do Código anterior, que não permitia a tramitação célere e comprometia a efetividade do processo. É o que se depreende da exposição de motivos do anteprojeto do novo CPC, a saber:

> "O novo Código de Processo Civil tem o potencial de gerar um processo mais célere, mais justo, porque mais rente às necessidades sociais e muito menos complexo.
> A simplificação do sistema, além de proporcionar-lhe coesão mais visível, **permite ao juiz centrar sua atenção, de modo mais intenso, no mérito da causa**.
> Com evidente redução da complexidade inerente ao processo de criação de um novo Código de Processo Civil, poder-se-ia dizer que **os trabalhos da Comissão se orientaram precipuamente por cinco objetivos**: 1) estabelecer expressa e implicitamente verdadeira sintonia fina com a Constituição Federal; **2) criar condições para que o juiz possa proferir decisão de forma mais rente à realidade fática subjacente à causa;** 3) simplificar, resolvendo problemas e reduzindo a complexidade de subsistemas, como, por exemplo, o recursal; **4) dar todo o rendimento possível a cada processo em si mesmo considerado**; e, 5) finalmente, sendo talvez este último objetivo parcialmente alcançado pela realização daqueles mencionados antes, imprimir maior grau de organicidade ao sistema, dando-lhe, assim, mais coesão." (grifou-se)

---

[1] Lei nº 13.105/15: Art. 1.045. Este Código entra em vigor após decorrido 1 (um) ano da data de sua publicação oficial.

[2] Enunciado Administrativo nº 1/16: "O Plenário do STJ, em sessão administrativa em que se interpretou o art. 1.045 do novo Código de Processo Civil, decidiu, por unanimidade, que o Código de Processo Civil aprovado pela Lei n. 13.105/2015, entrará em vigor no dia 18 de março de 2016."



09.        Como se percebe, ao mesmo tempo em que o novo CPC pretende atribuir o maior rendimento possível ao processo, por meio do aproveitamento dos atos praticados, também objetiva que este processo crie condições ao magistrado de proferir decisão de forma mais próxima à realidade fática, afastando-se de argumentos especulativos.

10.        Com efeito, a determinação do novo CPC é cristalina no sentido de que a exordial deverá estar acompanhada de todos os documentos **indispensáveis** à proposição do feito[3], bem como de que o juiz deverá, **de ofício**, determinar a adequação do valor da causa ao benefício econômico pretendido pela parte Autora.

11.        Ressalte-se que, ainda que o CPC/73 trouxesse dispositivo similar quanto aos documentos indispensáveis, este o fazia de maneira dissociada dos princípios que regiam a Codificação anterior. Por outros termos, apenas no CPC/15 o objetivo do legislador foi intencionalmente permitir ao magistrado receber das Partes todos os elementos necessários para o conhecimento da situação fática e coibir ações com o intuito de simplesmente causar constrangimento à parte contrária.

12.        Não há como se ignorar que o CPC/15 foi planejado para garantir a maior efetividade do processo, por meio de petições mais diretas, decisões mais precisas e do aproveitamento dos atos processuais, evitando-se a movimentação desnecessária da Máquina Judiciária.

13.        Neste contexto, conforme será demonstrado a seguir, com o início da vigência do novo CPC e no intuito de garantir a manutenção de uma relação processual válida e regular, é fundamental que sejam enfrentados todos os pontos descritos a seguir, por se tratar de questões de ordem pública e, portanto, que podem ser alegadas a qualquer momento.

14.        Neste sentido, é inquestionável que a presente demanda se reveste de vícios que, tanto sob a ótica do CPC/73 quanto do CPC/15, são insanáveis e impedem qualquer juízo de mérito por não existirem os requisitos mínimos para ajuizamento do feito, a saber: (i) nulidade da representação processual e inexistência de capacidade postulatória, tendo em vista que o objeto da demanda está fora da competência atribuída pela LC nº73/93 à Procuradoria da Fazenda Nacional, conforme consolidado pela Nota PGFN/CRJ nº 1558/14; (ii)

---

[3] CPC/15: Art. 320. A petição inicial será instruída com os documentos indispensáveis à proposição da ação.





Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

formulação de pedido impossível, consubstanciado no fato de que é inviável desfazerem-se os dois negócios jurídicos elencados na petição inicial, sem considerar os impactos no total da reestruturação societária de JBS e BRTIN, o que leva à extinção da ação sem qualquer análise de mérito, nos termos do art. 485, IV, do CPC/15 e (iii) falta de interesse de agir, na medida em que a Autora não necessita deste provimento jurisdicional para garantir a efetividade da cobrança administrativa, até mesmo porque já foram arrolados bens na forma da legislação de regência, garantindo o resultado da cobrança administrativa, o que demonstra a inexistência de adequação (i.e. não há inobservância do binômio necessidade x adequação).

15.        Na remota hipótese de serem superados os vícios insanáveis mencionados acima, no mérito, salta aos olhos o transcurso do prazo decadencial , previsto no Código Civil, para requerer a nulidade dos negócios jurídicos.

16.        É o que se passa a demonstrar.

### III – DOS VÍCIOS INSANÁVEIS:

#### III.1 - DA NULIDADE DE TODOS OS ATOS PRATICADOS:
#### ILEGITIMIDADE DE REPRESENTAÇÃO DA UNIÃO

17.        Como se sabe, para que a Parte possa levar uma lide ao crivo do Poder Judiciário, além de ser necessário possuir interesse de agir e legitimidade, é indispensável que se comprove a capacidade postulatória de seu representante legal.

18.        Neste sentido, enquanto o antigo CPC/73[4] apenas previa genericamente que as pessoas jurídicas de direito público interno seriam representadas por seus procuradores, o novo Código inovou ao incluir um capítulo denominado "Capacidade Processual", no qual, ao regulamentar a capacidade de estar em juízo, repisa o mandamento constitucional para esclarecer que a União será representada pelo respectivo órgão vinculado à AGU. Confira-se:

> CF/88: "Art. 131. **A Advocacia-Geral da União é a instituição que**, diretamente ou **através de órgão vinculado, representa a União, judicial e extrajudicialmente**, cabendo-lhe, nos termos da **lei complementar que dispuser sobre sua organização e**

---

[4] Art. 12. Serão representados em juízo, ativa e passivamente: I - a União, os Estados, o Distrito Federal e os Territórios, por seus procuradores;


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

719

**funcionamento**, as atividades de consultoria e assessoramento jurídico do Poder Executivo." (grifou-se)

\*\*\*

CPC/15: "Art. 75.   Serão representados em juízo, ativa e passivamente:
I - a União, pela Advocacia-Geral da União, diretamente ou **mediante órgão vinculado**;" (grifou-se)

19.        A aludida alteração na norma processual é relevante porque, conforme determinava o texto constitucional, foi publicada a Lei Orgânica da Advocacia-Geral da União (i.e. Lei Complementar nº 73/93), dispondo acerca da organização e funcionamento da AGU, na qual se estabelece a competência funcional de cada órgão vinculado à AGU.

20.        A análise detida da Lei Complementar nº 73/93 nos revela que a representação da União poderá ser realizada por quatro órgãos, sendo dois de natureza consultiva e dois destinados às demandas contenciosas, mas todos com competências bem delimitadas. Neste sentido, confiram-se os dispositivos que tratam dos órgãos contenciosos:

"**Da Procuradoria-Geral da União**
Art. 9º - À Procuradoria-Geral da União, subordinada direta e imediatamente ao Advogado-Geral da União, incumbe representá-la, judicialmente, nos termos e limites desta Lei Complementar.
§ 1º - Ao Procurador-Geral da União compete representá-la junto aos tribunais superiores.
§ 2º - Às Procuradorias-Regionais da União cabe sua representação perante os demais tribunais.
§ 3º - Às Procuradorias da União organizadas em cada Estado e no Distrito Federal, incumbe representá-la junto à primeira instância da Justiça Federal, comum e especializada.
§ 4º - O Procurador-Geral da União pode atuar perante os órgãos judiciários referidos nos §§ 2º e 3º, e os Procuradores Regionais da União junto aos mencionados no § 3º deste artigo.

\*\*\*

**Da Procuradoria-Geral da Fazenda Nacional**
Art. 12 - À Procuradoria-Geral da Fazenda Nacional, órgão administrativamente subordinado ao titular do Ministério da Fazenda, compete especialmente:


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197



I - apurar a liquidez e certeza da dívida ativa da União de natureza tributária, inscrevendo-a para fins de cobrança, amigável ou judicial;

II - representar privativamente a União, na execução de sua dívida ativa de caráter tributário;

III - (VETADO)

IV - examinar previamente a legalidade dos contratos, acordos, ajustes e convênios que interessem ao Ministério da Fazenda, inclusive os referentes à dívida pública externa, e promover a respectiva rescisão por via administrativa ou judicial;

**V - representar a União nas causas de natureza fiscal.**

Parágrafo único - São consideradas causas de natureza fiscal as relativas a:

I - tributos de competência da União, inclusive infrações à legislação tributária;

II - empréstimos compulsórios;

III - apreensão de mercadorias, nacionais ou estrangeiras;

IV - decisões de órgãos do contencioso administrativo fiscal;

V - benefícios e isenções fiscais;

VI - créditos e estímulos fiscais à exportação;

VII - responsabilidade tributária de transportadores e agentes marítimos;

VIII - incidentes processuais suscitados em ações de natureza fiscal."

21.        Como se percebe, a Procuradoria da Fazenda Nacional é competente para defender os interesses da União apenas nas causas que versem **exclusivamente** sobre matéria tributária, sendo a Procuradoria da União o órgão responsável por todas as demais matérias.

22.        A análise da natureza da ação é fundamental para determinar o órgão da AGU responsável pela representação dos interesses da União. Tanto é verdade que o próprio Código de Processo Civil sofreu uma alteração expressa para demonstrar a necessidade de observância do correto órgão de representação.

23.        Desta forma, na nova sistemática processual civil, resta ainda mais claro que a União só poderá ser representada pelo órgão vinculado da AGU, dentro das competências estabelecidas pela Lei Orgânica da AGU (LC 73/93).

24.        Ocorre que, como consta expressamente da inicial e do relatório da decisão liminar, a Autora busca provimento jurisdicional que declare a nulidade dos Instrumentos Particulares de Cessão e Transferência de Quotas e Outras Avenças firmados entre as



Requeridas em 02 de janeiro de 2010 e 11 de novembro de 2010, com fundamento no art. 166, VI, do Código Civil.

25.        Para que não restem dúvidas, cumpre trazer à baila os trechos pertinentes do preâmbulo da petição inicial, no qual a Autora esclarece o motivo do ajuizamento da presente Ação Ordinária, a saber:

> "A presente demanda **tem por objetivo desconstituir 02 (dois) negócios jurídicos** realizados entre as empresas BRÁCOL HOLDING LTDA. - antiga denominação da Ré TINTO HOLDING LTDA. - e BLESSED HOLDINGS LLC. (...)
> Destarte, **forte nos termos do art. 166, VI do Código Civil** é que a Fazenda Nacional propõe a presente demanda (...)" (grifou-se)

26.        Com efeito, é inquestionável que um feito ajuizado para desconstituir um negócio jurídico, sob o argumento de fraude à lei, possui única e exclusivamente natureza cível, que refoge à competência legal da Procuradoria da Fazenda Nacional.

27.        É de causar espanto que a PGFN contrarie sua competência funcional para tentar a anulação de um negócio jurídico que sequer passou pelo crivo dos órgãos administrativos competentes (i.e. do CARF).

28.        Ressalte-se que, os próprios setores consultivos da Advocacia-Geral da União por diversas vezes emitiram pareceres advertindo a PGFN de sua incompetência funcional para atuar em causas estranhas à seara fiscal. Por ser fundamental para demonstrar a ilegitimidade da representação da União nesta causa, cumpre transcrever os trechos pertinentes da Nota PGFN/CRJ nº 1558/14 (doc. 01):

> "9. Não é o que ocorre, entretanto, quanto à competência para a representação judicial da União, que é, **segundo o disposto no art. 12, inc. V, da LC n° 73/93, limitada às causas de natureza fiscal**. O critério, pois, não tem qualquer ligação com o órgão administrativo, mas, sim, com a natureza da matéria veiculada na demanda.
> 10. **A questão não é nova e já foi abordada em diversas manifestações jurídicas da PGFN, PGU e da Consultoria-Geral da União**. (...)
> 11. Quanto à definição da competência para a representação judicial da União, portanto, **não se deve levar em conta o**





órgão que deu origem ao ato administrativo, mas, sim, a natureza da demanda posta em juízo.

(...)

16. Nesse sentido, apenas as obrigações relacionadas ao pagamento de tributos ou cumprimento de obrigações tributárias acessórias, além das consequentes infrações aplicadas, podem dar ensejo à competência da PGFN para a representação judicial da União, uma vez que, em tais hipóteses, as causas possuem natureza fiscal, situação que se amolda ao disposto no art. 12, V, da LC n° 73/93.

17. Nos demais casos, aplica-se o raciocínio desenvolvido no já citado Parecer N° AGU/SF/04/2008, aprovado pelos então Consultor-Geral e Advogado-Geral da União: "Já, nos termos do artigo 9° da mesma Lei Orgânica da AGU, compete, residualmente, à Procuradoria da União representar a União, em todas as demais causas, que não sejam cobrança de dívida ativa da União de qualquer natureza (CF/88, art. 131, § 3°; LC 73/93, art. 12, caput, inciso II; art. 23 da Lei n° 11.457/2007) ou que não sejam de natureza fiscal"

(...)

37.      Dentre todas elas, apenas as relações de natureza tributária ensejam, no âmbito da representação judicial da União, a atuação da PGFN, dada a natureza fiscal. Por outro lado, em se tratando de discussões judiciais relativas a relações não fiscais, a representação judicial da União é desempenhada pela PGU, conforme entendimento já aplicado por esta PGFN/CRJ e pela Consultoria-Geral da União já mencionado anteriormente." (grifou-se)

29.        Note-se que a própria Coordenação de Consultoria Judicial da PGFN esclarece que a discussão não é nova, sendo que já foi abordada em diversas manifestações jurídicas da PGFN, PGU e da Consultoria-Geral da União, restando sedimentado o entendimento de que *"apenas as obrigações relacionadas ao pagamento de tributos ou cumprimento de obrigações tributárias acessórias, além das consequentes infrações aplicadas, podem dar ensejo à competência da PGFN"*.

30.        Como muito bem apontado pelo órgão consultivo da PGFN, é irrelevante o órgão que deu origem ao processo administrativo, já que o que se analisa é o pedido formulado na seara judicial que, como visto, é de anulação de negócio jurídico e, portanto, de natureza cível, desvinculada de interesse tributário, já que para a finalidade de lançamento tributário, não há qualquer necessidade de retorno ao *status quo ante* ou desfazimento do




Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

negócio jurídico, a teor do Parágrafo Único, do art. 116 do Código Tributário Nacional, como será detalhado adiante.

31.        Também na jurisprudência existem precedentes afastando a legitimidade da PGFN para representar a União de forma indiscriminada, a saber:

> "PROCESSUAL CIVIL. AGRAVO DE INSTRUMENTO. COMPETENCIA PARA REPRESENTAR JUDICIALMENTE A UNIÃO FEDERAL. INTELIGÊNCIA DO DISPOSTO NO ARTIGO 12 DA LEI COMPLEMENTAR 73 /93. QUESTÃO DE NATUREZA NÃO FISCAL. COMPETÊNCIA DA AGU. PROVIDO O RECURSO. - Insurge-se a Agravante contra a decisão proferida pelo MM. Juízo a quo que, nos autos de ação ordinária proposta por Distell South América Ltda, declarou a nulidade da citação da AGU, para determinar que a Procuradoria da Fazenda Nacional representasse judicialmente a União Federal na causa. - **Constatado que a questão trazida a julgamento não teria natureza fiscal, a justificar a representação judicial pela Procuradoria da Fazenda Nacional**. - **Reconhecido que a União Federal deve estar representada pela AGU, na presente demanda judicial, uma vez ausentes quaisquer das hipóteses previstas no artigo 12 da Lei Complementar 73 /93**. - Provido o recurso."[5] (grifou-se)

32.        Diante do exposto, seja sob a ótica do CPC/73 ou do CPC/15, a única conclusão possível é a de que a representação processual da União por órgão vinculado da AGU deve ser realizada em estrita observância da competência estabelecida pela LC nº 73/93.

33.        Com efeito, por se tratar de vício insanável relativo à matéria de ordem pública, deve ser sumariamente extinta a presente Ação, sem julgamento do mérito por falta de interesse processual, nos termos do art. 485, VI[6], do CPC/15, considerando-se como nulos todos os atos praticados, em razão da nítida inexistência de capacidade postulatória da Procuradoria da Fazenda Nacional em causas estranhas à respectiva competência funcional.

---

[5] TRF2. Processo nº 0001726-41.2005.4.02.0000. Rel. Des.Fed.PAULO ESPIRITO SANTO. DJU em 25/09/2006.
[6] Art. 485. O juiz não resolverá o mérito quando: (...)
VI - verificar ausência de legitimidade ou de interesse processual;





Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197



### III.2 – DO PEDIDO IMPOSSÍVEL FORMULADO PELA AUTORA

34.        Caso superado o vício insanável de representação legal, acima detalhado, o que se admite por força do Princípio da Eventualidade, vale destacar que, pretende a parte Autora obter o reconhecimento da nulidade apenas dos negócios praticados entre a TINTO HOLDINGS e a BLESSED HOLDINGS, com o consequente retorno dos ativos ao patrimônio da TINTO HOLDINGS.

35.        Ocorre que não é necessário muito esforço para perceber que não é possível a mera desconsideração de uma das etapas de uma complexa estrutura de reorganização societária. Neste sentido, o presente feito se insere no contexto da fusão entre os grupos JBS e BERTIN, iniciada em 2009 e amplamente divulgada à imprensa e aos investidores, por meio da publicação de Fatos Relevantes[7] pela JBS, observando regramento da Comissão de Valores Mobiliários - CVM.

36.        Conforme o Acordo celebrado entre as Partes, a condição para que a operação se efetivasse era que o grupo de controle da BERTIN se tornasse acionista minoritário da *holding* do grupo JBS: a FB Participações, o que chegou a se concretizar, ainda que posteriormente estas participações tenham sido vendidas a investidor estrangeiro.

37.        Ao analisar as possíveis reestruturações necessárias para atingir o objetivo final do acordo entre as Partes, tendo em vista a complexidade da operação e da transferência destes ativos, optou-se pela reorganização societária por meio de Fundo de Investimento (FIP), com a versão de ações para constituição deste Fundo de Investimento (BERTIN FIP). A partir de então, o procedimento seguido foi o mesmo atribuído a qualquer novo acionista que ingressa em determinada sociedade, isto é, ocorre a simples assinatura de Boletim ou Lista de Subscrição, com respectiva integralização dos bens para constituição do Capital Social.

---

[7] Segundo a Instrução CVM nº 358/2002, considera-se relevante "qualquer decisão de acionista controlador, deliberação da assembléia geral ou dos órgãos de administração da companhia aberta, ou qualquer outro ato ou fato de caráter político-administrativo, técnico, negocial ou econômico-financeiro ocorrido ou relacionado aos seus negócios que possa influir de modo ponderável: I - na cotação dos valores mobiliários de emissão da companhia aberta ou a eles referenciados; II - na decisão dos investidores de comprar, vender ou manter aqueles valores mobiliários; III - na decisão dos investidores de exercer quaisquer direitos inerentes à condição de titular de valores mobiliários emitidos pela companhia ou a eles referenciados" (art. 2º).





38.        Sob uma perspectiva estritamente finalística, era possível chegar ao resultado almejado – participação societária da *holding* – por simples integralização de capital subscrito na FB Participações. Contudo, uma reorganização societária engloba um conglomerado de técnicas calcadas em um fim econômico e operacional legítimo, que consiste na maximização do retorno ao acionista.

39.        O aporte direto na FB Participações era medida desalinhada aos interesses dos grupos empresariais em processo de incorporação. Isso porque os controladores da BERTIN deveriam aportar novos recursos para integralizar o capital subscrito na FB Participações, mediante desembolso de caixa. Haveria, naturalmente, um elevado impacto financeiro nessa hipótese, destoando do objetivo do Acordo: utilizar a própria participação societária dos controladores de um grupo para realizar a fusão com o outro.

40.        Os procedimentos clássicos de *Mergers and Acquisitions* ("M&A"), nos termos da Lei das Companhias, também implicariam altos custos operacionais e financeiros às sociedades interessadas. Para a sua efetivação, seria imprescindível prévia deliberação e aprovação pela Assembleia-Geral do "Protocolo e da Justificação", que especificam todas as condições e motivos para a incorporação, fusão ou cisão, devendo ser acompanhados de laudos de avaliação dos bens e ações dados em pagamento, dentre outros, conforme os artigos 224 a 226 da Lei das S/A.

41.        Não bastassem os fatores mencionados acima, as Assembleias Gerais convocadas para deliberar e aprovar atos de incorporação, fusão ou cisão possibilitam aos acionistas dissidentes o direito de retirada da companhia (art. 137 c/c art. 136, IV e V, da Lei das S/A), mediante imediato reembolso de suas ações (art. 45, da Lei das S/A), o que pode gerar conflitos políticos e o desembolso de elevadas quantias.

42.        Como a intenção dos Contratantes era utilizar a própria participação societária da TINTO na BERTIN S/A para promover a reestruturação, significaria dizer que, pelo rito de um M&A tradicional, seriam realizados ao menos 3 procedimentos dessa natureza, com a confecção e votação de Protocolo e Justificação pelas assembleias gerais de ambas as sociedades interessadas, além de se oportunizar a retirada dos dissidentes.







43.         Como restou demonstrado, ao invés de seis Assembleias, foi realizada apenas aquela necessária para a conversão da BERTIN S.A. em subsidiária integral, via incorporação de ações, sendo que os demais procedimentos foram realizados de modo célere, já que o FIP se encontrava na posição de acionista das companhias, não de sociedade incorporada/fundida.

44.         Por todos os fatores descritos acima, após deliberação conjunta dos controladores dos grupos acerca da avaliação dos ativos e das formas de transferência dos mesmos, decidiu-se que a reestruturação ocorreria por meio de Fundo de Participações, com o intuito de obter uma maior eficácia de todos os procedimentos, de modo que foram realizadas as seguintes etapas:

> **(i)** Constituição de FIP – o BERTIN FIP – por meio de subscrição das cotas do fundo com as ações a qúe tinha direito a empresa TINTO na empresa BERTIN S.A., de capital fechado. Dessa forma, o FIP teria cotista único, a TINTO, passando o Fundo a deter o controle da BERTIN.S.A.;

> **(ii)** Em um segundo momento, a JBS S.A. promoveria a incorporação de ações da BERTIN S.A., virando esta, por consequência, subsidiária integral daquela;

> **(iii)** Pelo procedimento de incorporação de ações, os sócios da incorporada (subsidiária integral) passam a deter a respectiva participação societária na empresa controladora. Assim, houve aumento do capital social da JBS S.A., passando o FIP a deter parcela de suas ações ordinárias;

> **(iv)** Ato contínuo, operou-se permuta de ações entre o FIP e a sociedade FB Participações – *holding* da JBS – onde o FIP cedeu sua participação societária na JBS S.A. à FB Part., detendo capital desta última.

45.         Como se percebe, o BERTIN FIP e o grupo de controle da JBS passaram a deter o Capital Social da FB Participações, controlando, indiretamente, a JBS S.A.

46.         Ao final, após diversas tratativas e discussões gerenciais, houve a alienação de cotas do BERTIN FIP, que pertenciam à Tinto Holding, em favor da Blessed Holdings LCC, um grupo estrangeiro investidor com sede em Delaware, Estados Unidos.





47.         A estrutura do grupo ficou, portanto, assim representada:



48.         A análise superficial e desvinculada dos reais efeitos que a reestruturação societária ocorrida nos grupos BERTIN e JBS, como procedido pela Receita Federal do Brasil e pela Procuradoria da Fazenda Nacional, nos levaria à conclusão **errônea** de que se tratou de uma operação simples e que bastaria a transferência de um determinado número de quotas para justificar a operação. Desta forma, por meio do mesmo pensamento simplório, consideraram estes órgãos que bastaria o retorno dos ativos para que a Peticionária tivesse seu patrimônio tributado.

49.         Nada obstante o intuito da Autora de demonstrar que seu pedido é possível, trata-se de operação societária complexa que envolveu diversos atos de concentração relacionados às unificações, aquisições e de junção de ativos, que foram pormenorizadamente analisados pelo Conselho Administrativo de Defesa Econômica ("CADE").

50.         Em outros termos, não se trata simplesmente de transferências de quotas, mas sim daquilo que elas representam dentro da sociedade e das companhias envolvidas, ou seja, referidas quotas, em verdade, representam as unidades produtivas de ambos os Grupos em todo o Brasil, além de investimentos e benfeitorias, entre outros fatores de produção.







51.        Neste sentido, confiram-se alguns trechos da análise feita pelo CADE acerca do ato de concentração nº 08012.008074/2009-11, realizado entre os Grupos BERTIN e JBS para demonstrar a dimensão e complexidade do negócio, a saber:

> "Segundo informações constantes de seus documentos corporativos, **o Grupo JBS é**, atualmente, **líder mundial** no processamento de proteínas de origem animal, atuando nas áreas de alimentos, couro, produtos para animais domésticos, biodiesel, colágeno, latas e produtos de limpeza. (...) **No Brasil, o Grupo possui hoje unidades industriais localizadas nos estados de São Paulo, Goiás, Mato Grosso, Mato Grosso do Sul, Rondônia, Minas Gerais, Acre, Paraná e Pará**.
> (...)
> **A Bertin S/A** era, antes de sua incorporação pela JBS, uma empresa brasileira pertencente ao Grupo Heber, também nacional. A Bertin atuava como produtora e exportadora de produtos de origem animal, incluindo um amplo portfólio de produtos envolvendo carne bovina *in natura* e processada, lácteos, couros, produtos para cuidados com animais e produtos de higiene e limpeza. (...) A empresa **exportava para mais de 100 países e contava com 38 unidades produtivas** no Brasil e no exterior, **empregando algo em torno de 35 mil colaboradores**.
> (...)
> **Essa operação envolveu ativos localizados nos Estados de São Paulo, Goiás, Mato Grosso, Rondônia, Mato Grosso do Sul, Minas Gerais, Pará, Bahia e Tocantins**.
> (...)
> Trata-se de perceber que **o conceito de "empresa" em direito não diz respeito a uma certa estrutura societária, mas sim à organização de um conjunto de fatores produtivos** destinada a produzir certos resultados que seriam impossíveis de serem produzidos pelos fatores isoladamente, ou seja, a um organismo econômico que põe esses fatores em funcionamento, dentro de um sistema coordenado, para produzir um certo resultado de lucro, na famosa conceituação de Cesare Vivante. (...) **O critério, para que tais operações possam ser consideradas "atos de concentração", é que elas incidam sobre a *empresa como um todo*, e não sobre seus elementos isolados**. Em outras palavras, é que incidam sobre o conjunto de elementos que forma a empresa entendidos como um sistema em plena atividade." (grifou-se)

52.        Conforme descrito com maestria pelo Ilmo. Conselheiro do CADE Marcos Paulo Verissimo, um ato de concentração não envolve apenas a estrutura societária, mas sim





759

todas as unidades produtivas e ativos que integram as empresas e que participaram da operação.

53.        Desta forma, não há qualquer sentido em se desconsiderar (ou pretender desfazer) isoladamente apenas uma parte da operação societária realizada, ignorando-se todas as consequências que este ato traria para toda a estrutura da operação, mormente quando se pretende retirar os investimentos recebidos do exterior.

54.        Como bem apontado pelo relator do CADE, os atos de incorporação envolveram ativos de ambas as companhias nos Estados de São Paulo, Goiás, Mato Grosso, Rondônia, Mato Grosso do Sul, Minas Gerais, Pará, Bahia e Tocantins, que foram cuidadosamente analisados ao longo dos diversos atos de concentração e das operações societárias realizadas.

55.        Assim, o desfazimento de apenas uma parte da negociação iniciada em 2009 gera sérias implicações para todas as partes envolvidas, isto é, impacta os ativos da Requerida, do BERTIN FIP, da JBS, da antiga BERTIN S.A. e enseja um imbróglio jurídico e econômico que é impossível de ser solucionado com a ingenuidade que a Procuradoria da Fazenda Nacional propõe. Assim, supondo-se que nesta data fosse desfeito o negócio realizado, excluindo-se os investidores estrangeiros e retornando-se as quotas ao BERTIN FIP, restariam diversas questões a abarrotar o próprio Poder Judiciário:

(i)     Como seria feita a avaliação retroativa de todos os ativos sete anos após o início das tratativas, para que se pudesse retornar à situação inicial?

(ii)    Como se obter a devolução dos valores pagos por todas as transferências de quotas havidas entre BERTIN, JBS e BLESSED?

(iii)   Como se dariam as indenizações em razão dos investimentos e das benfeitorias realizadas nas unidades produtivas correspondentes a estas quotas?

(iv)    E quanto às diversas unidades produtivas que tiveram suas atividades encerradas ou ampliadas desde então?

(v)     Como proceder com relação às operações envolvendo os investidores estrangeiros, no que tange à variação do valor de mercado das ações e à diferença da taxa de câmbio?



(vi)     Como calcular a evolução da relação entre patrimônio X valor de mercado X quantidade de ações de forma a permitir o retorno proporcional aos investidores estrangeiros e à JBS?

56.        Pelo exposto, resta evidente que o pedido formulado na inicial é manifestamente impossível de ser atendido, e decorre unicamente da análise superficial, tendenciosa e especulativa da Procuradoria.

57.        Não existe no ordenamento jurídico qualquer regramento prevendo como proceder nesta situação com operações jurídicas tão complexas. Veja-se, Excelência, que não se trata de tentativa de anular uma compra de venda de um veículo automotor, por exemplo, hipótese em que o negócio seria facilmente desfeito, no caso concreto, qualquer desfazimento do negócio impactaria todas as Companhias, unidades produtivas, financiamentos havidos, credores das companhias e direitos e obrigações envolvidas na negociação.

58.        Socorrendo-se do novo CPC, verifica-se que, atendendo aos apelos doutrinários, o legislador optou por determinar ao juiz que julgue extinto o processo, sem resolução do mérito, sempre que estiverem ausentes os pressupostos de desenvolvimento válido e regular do processo, sendo que se teve o cuidado de esclarecer que, por se tratar de matéria de ordem pública, esta hipótese de extinção pode ser reconhecida de ofício a qualquer tempo e grau de jurisdição. Confira-se:

> " Art. 485. O juiz não resolverá o mérito quando:
> (...)
> IV - verificar a ausência de pressupostos de constituição e de desenvolvimento válido e regular do processo;
> (...)
> § 3º O juiz conhecerá de ofício da matéria constante dos incisos IV, V, VI e IX, em qualquer tempo e grau de jurisdição, enquanto não ocorrer o trânsito em julgado."

59.        Destarte, tendo em vista a nova sistemática trazida pela norma processual civil, a Peticionária requer seja julgado extinto o feito, sem resolução do mérito, nos termos do art. 485, IV c/c §3º, em razão da manifesta impossibilidade jurídica do pedido formulado.







### III.3 – FALTA DE INTERESSE DE AGIR:
### DESNECESSIDADE DO PROVIMENTO JUDICIAL PLEITEADO

60.        Na remota hipótese de não serem acolhidos os dois vícios insanáveis apontados acima, o que se admite apenas por dever de ofício, ao menos deve ser reconhecida a falta de interesse de agir da Autora, que enseja o indeferimento liminar da petição inicial na nova sistemática processual civil.

61.        A falta de interesse de agir se torna evidente na medida em que a União esclarece que a presente ação foi ajuizada com o intuito de "*assegurar o resultado útil da cobrança administrativa*". Isto porque, é evidente que o suposto direito reivindicado nesta ação não necessita do ajuizamento de uma ação ordinária, pelo contrário, seu ajuizamento até dificulta a materialização de seu pedido juridicamente impossível.

62.        Conforme será demonstrado a seguir, na presente ação não se vislumbra a existência do binômio necessidade-adequação que caracteriza o interesse de agir. Nas palavras de Ada Pellegrini Grinover e Cândido Rangel Dinamarco[8]:

> "*Interesse de agir*. Essa condição da ação assenta-se na premissa de que, tendo embora o Estado o interesse no exercício da jurisdição (função indispensável para manter a paz e a ordem na sociedade), **não lhe convém acionar o aparato judiciário sem que dessa atividade se possa extrair algum resultado útil**. É preciso, pois, por esse prisma, que em cada caso concreto a prestação jurisdicional solicitada seja *necessária* e *adequada*.
> Repousa a ***necessidade da tutela jurisdicional na impossibilidade de obter a satisfação do direito alegado*** sem a intercessão do Estado (...).
> ***Adequação*** é a relação existente entre a situação lamentada pelo autos vir a juízo e o provimento jurisdicional **concretamente solicitado**. O provimento, evidentemente, deve ser apto a corrigir o mal de que o autor se queixa, sob pena de não ter razão de ser."

---

[8] CINTRA, Antônio Carlos de Araújo; GRINOVER, Ada Pellegrini; DINAMARCO, Cândido Rangel. Teoria Geral do Processo. 31ª edição. São Paulo: Malheiros, 2015. Págs. 296/297.





63.        No caso em contenda, não há necessidade da tutela jurisdicional, na medida em que bastaria à União formalizar o termo de arrolamento de bens da TINTO (**como efetivamente já feito**), sendo que, para realizar o lançamento de um tributo ou cobrá-lo da forma que entende devido, a União pode apenas desconsiderar os **efeitos** dos atos praticados, sem qualquer necessidade de pleitear a devolução de quotas para que seja tributado o suposto ganho de capital.

64.        Neste sentido, a Lei nº 9.532/97 estabelece a possibilidade de a Autoridade Fiscal proceder ao arrolamento dos bens do contribuinte, sempre que o valor do crédito tributário em discussão superar 30% (trinta por cento) do patrimônio conhecido, sendo certo que o contribuinte não poderá alienar os bens sem a autorização da Autoridade Fiscal. Confira-se a exegese da norma:

> "Art. 64. **A autoridade fiscal competente procederá ao arrolamento de bens e direitos do sujeito passivo sempre que o valor dos créditos tributários de sua responsabilidade for superior a trinta por cento do seu patrimônio conhecido.**
> (...)
> § 3º A partir da data da notificação do ato de arrolamento, mediante entrega de cópia do respectivo termo, o proprietário dos bens e direitos arrolados, **ao transferi-los, aliená-los ou onerá-los, deve comunicar o fato à unidade do órgão fazendário que jurisdiciona o domicílio tributário do sujeito passivo**.
> § 4º A alienação, oneração ou transferência, a qualquer título, dos bens e direitos arrolados, sem o cumprimento da formalidade prevista no parágrafo anterior, **autoriza o requerimento de medida cautelar fiscal contra o sujeito passivo**. (...)" (grifou-se)

65.        Estes mecanismos, por si só, já são suficientes para assegurar o resultado útil da cobrança administrativa, tanto que são frequentemente adotados pela Procuradoria da Fazenda Nacional na seara administrativa, até mesmo porque, nem mesmo o CARF possui competência para rever o termo de arrolamento.

66.        Isto porque, a jurisprudência da Corte Administrativa Federal já firmou o entendimento de que a análise do termo de arrolamento implicaria no exame de matéria constitucional e refoge aos termos da delimitação imposta pelo Decreto nº 70.235/72, a saber:





"(...)ARROLAMENTO DE BENS. APRECIAÇÃO. IMPOSSIBILIDADE. Nos termos da delimitação imposta pelo Decreto nº 70.235, de 1972, **escapa à competência dos órgãos administrativos de julgamento a apreciação acerca da procedência de arrolamento de bens e direitos formalizado pela autoridade fiscal**. Recurso Voluntário Negado.

(...) Voto

**O arrolamento de bens e direitos se constitui em medida de caráter administrativo** relativo à tutela da satisfação dos interesses do Estado (...)e está previsto nos artigos 64 e 64A da Lei 9.532/97, abaixo transcritos e constitui obrigação do agente fiscal.

Nesse sentido, **descabe a esse colegiado apreciar a suposta afronta à Constituição por esse diploma legal**, posto que refoje (*sic*) a sua competência julgar questões que envolvam a conformidade de lei vigente com a Constituição, nos termos da Súmula CARF n. 02 (...)

De outra banda, **as considerações féitas pelo recorrente em relação ao arrolamento de bens** não podem ser objeto de apreciação pela autoridade julgadora administrativa, eis que não se circunscrevem ao delimitado no Decreto nº 70.235, de 1972, isto é, **não dizem respeito à determinação e exigência de créditos tributários**"[9] (grifou-se)

\*\*\*

"ARROLAMENTO DE BENS. O CARF não é competente para analisar o procedimento administrativo de arrolamento de bens. (...)"[10]

67.         Como se percebe, uma vez procedido ao arrolamento dos bens do contribuinte ou do autuado, nem mesmo o CARF poderia desfazê-lo.

68.         Além disso, é fato que no arrolamento o próprio contribuinte indica seus bens tangíveis, facilitando a liquidez da garantia caso necessário e afastando-se de previsões de retorno de quotas.

69.         **Neste ponto, vale destacar que a Petionária possui bens e direitos suficientes à garantia da ação (tanto que lavrado pelo Fisco Termo de Arrolamento de Bens e Direitos, conforme destacado às fls. 294 destes autos), inexistindo a necessidade de se bloquear bens de terceiros estranhos à relação jurídica (como o Pinheiros FIP) ou de se**

---

[9] CARF. Acórdão nº 2401-003.535. Rel. Elias Sampaio Freire. Julgado em 14.05.2014.
[10] CARF. Acórdão nº 2301-004.437. Rel. João Bellini Junior. Julgado em 26.01.2016.





Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197



**obrigar o investidor estrangeiro a devolver quotas recebidas em face de seu investimento no Brasil.**

70.         Como se não bastasse a desnecessidade de ajuizamento desta ação em razão do procedimento demonstrado acima, também não há necessidade em se pleitear o desfazimento de uma complexa reestruturação societária quando, para fins tributários, o Fisco pode simplesmente desconsiderar a operação realizada, supostamente tida por simulada ou fraudulenta, e cobrar o tributo correspondente.

71.         Esta possibilidade está expressa no art. 116, parágrafo único, do Código Tributário Nacional, o qual se convencionou chamar na seara tributária de norma geral "antielisiva", *in verbis*:

> "Art. 116. Salvo disposição de lei em contrário, considera-se ocorrido o fato gerador e existentes os seus efeitos:
> I - tratando-se de situação de fato, desde o momento em que o se verifiquem as circunstâncias materiais necessárias a que produza os efeitos que normalmente lhe são próprios;
> II - tratando-se de situação jurídica, desde o momento em que esteja definitivamente constituída, nos termos de direito aplicável.
> Parágrafo único. **A autoridade administrativa poderá desconsiderar atos ou negócios jurídicos praticados com a finalidade de dissimular a ocorrência do fato gerador do tributo ou a natureza dos elementos constitutivos da obrigação tributária, observados os procedimentos a serem estabelecidos em lei ordinária.**" (grifou-se)

72.         A mera leitura do texto legal já nos indica que, caso a Autoridade Administrativa considere que determinado negócio jurídico foi realizado de forma fraudulenta, com o intuito de dissimular o fato gerador, poderá simplesmente **desconsiderar os atos praticados**.

73.         Note que na norma geral "antielisiva" não há qualquer previsão de devolução de quotas, desfazimento do negócio, devolução ou bloqueio ativos das Partes envolvidas, limitando-se a permitir ao Fisco tributar o fato gerador que entende devido, facultando ao contribuinte apresentar posteriormente sua defesa administrativa.





74.        Desta forma, tendo em vista que a Autora buscou mover indevidamente a Máquina Judiciária, ignorando a Lei nº 9.532/97, que prevê o procedimento de arrolamento a critério do Fisco e ignorando também os termos do Código Tributário Nacional, que permitem obter o resultado da maneira mais rápida e eficaz possível, deve ser reconhecida a inadequação desta causa, face à sua desconsideração do procedimento própria para o objetivo pretendido.

75.        E não é só, a Autora assume expressamente desde o preâmbulo de sua inicial que já existe um processo administrativo atualmente em trâmite perante o Conselho Administrativo de Recursos Fiscais, por meio do qual a Autora sustenta uma suposta irregularidade nas operações societárias realizadas, mas mesmo assim recorre ao Poder Judiciário a pretexto de assegurar o resultado útil do processo administrativo.

76.        Sob qualquer ângulo que se analise a questão, é nítida a desnecessidade do procedimento adotado pela Autora, o que, por si só, já implicaria na falta de interesse processual.

77.        Ademais, cabe relembrar que a formulação de um pedido impossível, conforme já demonstrado anteriormente, impede que o processo tenha um resultado minimamente útil às Partes, evidenciando a falta de adequação desta ação ao provimento jurisdicional pretendido. Neste ponto, cabe repisar que o pleito da Autora pode ser facilmente atingido por meio de um termo de arrolamento (**o qual já foi realizado**!!!) e da desconsideração da operação com base no art. 116, parágrafo único, do CTN.

78.        Ocorre que, sob a ótica da nova ordem processual, a falta de interesse processual é causa de indeferimento liminar da petição inicial, *in verbis*:

> "Art. 330. A petição inicial será indeferida quando: (...)
> III - o autor carecer de interesse processual"

79.        Destarte, tendo em vista que a presente ação não era necessária, nem tampouco adequada, a Peticionária requer seja reconhecida a falta de interesse processual, com o consequente indeferimento da petição inicial.







### IV – DO MÉRITO:

### AUSÊNCIA DE FRAUDE À LEI:

### PRAZO DECADENCIAL PARA ANULAÇÃO DO NEGÓCIO JURÍDICO

80.          Conforme já se demonstrou exaustivamente, a presente ação não possui a mínima condição de prosperar. Isto porque, a despeito de todas as irregularidades apontadas, também salta aos olhos a tentativa da Procuradoria de driblar os prazos previstos na legislação civil, uma vez que já se demonstrou que a presente ação é fundamentada apenas em notícias especulativas acerca de uma suposta fraude e de uma suposta relação entre a BLESSED e a JBS.

81.          Assim, sequer se poderia admitir o ajuizamento deste feito sem qualquer documento concreto que possibilitasse ao juízo verificar a veracidade das alegações. Neste contexto, ainda que a Procuradoria quisesse questionar algum aspecto da reorganização societária sem provas, quando muito, seria admissível uma pretensão de anulação em razão de algum suposto vício de forma, que também não ocorreu no caso.

82.          Dito de outra forma, como a Autora não trouxe aos autos um único documento que comprovasse suas infundadas alegações, limitando-se a acostar documentos da própria operação societária (i.e. documentos públicos) e notícias veiculadas pela imprensa, não se pode admitir a acusação de fraude à lei, prevista no art. 166, VI, do Código Civil.

83.          Desta forma, tendo em vista que a operação realizada claramente não se encaixa em nenhuma das hipóteses de nulidade absoluta insculpidas no art. 166 do Código Civil, é de rigor a análise da regra decadencial insculpida nos arts. 178 e 179 do mesmo *Codex*, que assim dispõem:

> "Art. 178. **É de quatro anos o prazo de decadência para pleitear-se a anulação do negócio jurídico, contado**:
> I - no caso de coação, do dia em que ela cessar;
> II - no de erro, dolo, fraude contra credores, estado de perigo ou lesão, do dia em que se realizou o negócio jurídico;
> III - no de atos de incapazes, do dia em que cessar a incapacidade."

\*\*\*





Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

> "Art. 179. Quando a lei dispuser que determinado ato é anulável, **sem estabelecer prazo para pleitear-se a anulação, será este de dois anos**, a contar da data da conclusão do ato." (grifou-se)

84.  Quando ausente qualquer hipótese de nulidade absoluta descrita no art. 166 do Código Civil, devemos observar se a hipótese de anulação pretendida está enumerada nos incisos do art. 178 do diploma civil (i.e., coação, erro, dolo, fraude contra credores, estado de perigo ou lesão ou ato realizado por incapazes) e, caso a resposta fosse afirmativa, **o prazo decadencial seria de 4 (quatro) anos, encerrando-se, portanto, em novembro/2014, já que a última operação questionada ocorreu em novembro/2010**.

85.  Contudo, a situação que enseja o pedido de anulação sequer está descrita no rol do mencionado artigo 178, de maneira que **o ajuizamento deste feito deveria ter observado a regral geral da legislação civil (i.e., art. 179), que define o prazo decadencial de dois anos**, a contar da data da conclusão do ato.

86.  Assim, aplicando-se a regral geral de decadência para anulação dos negócios jurídicos, o transcurso do prazo decadencial se encerra em novembro/2012.

87.  Como se percebe, independentemente da regra decadencial utilizada, é nítido que em ambas as hipóteses o ajuizamento do presente feito ocorreu após o transcurso do prazo decadencial, devendo o presente feito ser extinto com resolução do mérito.

88.  Não é outra a orientação que tem prevalecido nos Tribunais Superiores, que determinam que seja rigorosamente observado o prazo previsto na lei, a saber:

> "CIVIL. RECURSO ESPECIAL. AÇÃO DECLARATÓRIA. NULIDADE DE DOAÇÃO. IMÓVEL. VÍCIO DE CONSENTIMENTO. PRAZO DECADENCIAL. TERMO INICIAL. DATA DA CELEBRAÇÃO DO NEGÓCIO. ARTIGOS ANALISADOS: ART. 178, II, do CÓDIGO CIVIL.
> 1. **Ação declaratória de nulidade** de doação por vício de consentimento, ajuizada em 29.06.2009. Recurso especial concluso ao Gabinete em 18.10.2013.(...)
> 4. A decadência é causa extintiva de direito pelo seu não exercício no prazo estipulado pela lei, **cujo termo inicial deve**


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197



coincidir com o conhecimento do fato gerador do direito a ser pleiteado.

5. Não é razoável invocar a ausência de "conhecimento inequívoco do ato", pelo próprio donatário do bem, diante da ausência de registro do contrato e aferição pelo Tabelião da regularidade do empreendimento onde se encontrava o lote doado.

6. **O prazo decadencial para anulação da doação na hipótese, portanto, é de quatro anos, contados do dia em que se realizou o negócio jurídico, nos termos do que expressamente dispõe o art. 178, II, do Código Civil**.

7. Recurso especial provido."[11]

\*\*\*

"CIVIL E PROCESSO CIVIL. EMBARGOS DE DECLARAÇÃO NO RECURSO ESPECIAL. RECEBIMENTO COMO AGRAVO REGIMENTAL. AÇÃO ANULATÓRIA DE VENDA DE ASCENDENTE A DESCENDENTE. ANULABILIDADE, AINDA QUE NA VIGÊNCIA DO CÓDIGO CIVIL DE 1916. SUJEIÇÃO A PRAZO DECADENCIAL. REDUÇÃO DO PRAZO PELO CÓDIGO CIVIL VIGENTE. REGRA DE TRANSIÇÃO. APLICABILIDADE. INTEGRAL TRANSCURSO DO PRAZO LEGAL. DECADÊNCIA RECONHECIDA. RECURSO DESPROVIDO. DECISÃO MANTIDA.

(...)

4. **No caso concreto, ajuizada ação após o prazo fixado pelo art. 179 do Código Civil vigente, afigura-se impositivo o reconhecimento da decadência do direito de o autor pleitear a anulação do ato jurídico contrário à norma do art. 1.132 do CC/1916, atual art. 496 do CC/2002**.

5. Embargos de declaração recebidos como agravo regimental, ao qual se nega provimento."[12] (grifou-se)

89.         Neste ponto, cumpre relembrar que **as operações societárias questionadas neste autos ocorreram em janeiro/2010 e novembro/2010**, de maneira que, ainda que a Autora pretendesse obter a anulação do negócio jurídico, seu direito estaria fulminado pelo transcurso dos prazos decadenciais previstos nos art. 178 e 179 do Código Civil, na medida em que a presente ação só foi ajuizada em março/2015.

---

[11] STJ. REsp nº 1.148.435/SP. Rel. Min. Nancy Andrighi. DJe em 26.03.2014.
[12] STJ. EDcl no REsp 1198907/RS. Rel. Min. Antonio Carlos Ferreira. DJe em 18.09.2014.





90.        Cumpre ressaltar que a nova sistemática processual civil permite ao magistrado julgar liminarmente improcedente o pedido quando verificar a ocorrência de decadência do direito, extinguindo o feito com resolução do mérito, a saber:

> "Art. 332. Nas causas que dispensem a fase instrutória, o juiz, independentemente da citação do réu, julgará liminarmente improcedente o pedido que contrariar:
> (...)
> § 1º **O juiz também poderá julgar liminarmente improcedente o pedido se verificar, desde logo, a ocorrência de decadência** ou de prescrição."

*  *  *

> "Art. 487. Haverá resolução de mérito quando o juiz:
> (...)
> II - **decidir, de ofício** ou a requerimento, **sobre a ocorrência de decadência** ou prescrição;" (grifou-se)

91.        Diante de todo o exposto, tendo em vista que não foi trazido qualquer elemento probatório aos autos para demonstrar a veracidade dos fatos alegados e que, portanto, não é possível falar em negócio jurídico nulo, a aplicação das regras de decadência previstas no Código Civil é medida que se impõe para preservar a segurança jurídica e o ato jurídico perfeito, o que enseja a improcedência liminar do feito, com a consequente extinção com resolução do mérito, nos termos do art. 487, II[13], do CPC/15.

**V – PEDIDOS**

92.        Destarte, após a comprovação de que a presente demanda se reveste de vícios que, tanto sob a ótica do CPC/73 quanto do CPC/15, devem ser analisadas por este juízo por se tratarem de questões de ordem pública, a Peticionária requer o reconhecimento:

> (i)        Preliminar da nulidade da representação processual e da inexistência de capacidade postulatória, tendo em vista que o objeto da demanda está fora da competência atribuída pela LC nº73/93 à Procuradoria da Fazenda Nacional, conforme consolidado pela Nota PGFN/CRJ    nº 1558/14,    com    o    consequente



---

[13] "Art. 487. Haverá resolução de mérito quando o juiz: (...)
II - decidir, de ofício ou a requerimento, sobre a ocorrência de decadência ou prescrição;"


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

indeferimento da petição inicial, nos termos do art. 330, II, do CPC/15 e a extinção do feito sem julgamento do mérito, nos termos do art. 485, VI, do CPC/15;

(ii)    Em sede preliminar, de que foi formulado pedido impossível, uma vez que é inviável conceder-se a desconstituição dos negócios jurídicos elencados na exordial, sem desfazer-se toda a reestruturação societária havida entre os Grupos BERTIN e JBS, envolvendo ativos e unidades produtivas em nove Estados, o que inequivocamente leva à extinção da ação sem qualquer análise de mérito, nos termos do art. 485, IV, do CPC/15;

(iii)    Em análise preliminar, da falta de interesse de agir, na medida em que a Autora não necessita deste provimento jurisdicional para garantir a efetividade da cobrança administrativa, porque existe um procedimento legal regulamentando para garantia do resultado da cobrança administrativa, o qual já foi utilizado por parte da União, por meio de seus órgãos competentes(i.e. não há inobservância do binômio necessidade x adequação), o que enseja o indeferimento da petição inicial, nos termos do art. 330, II, do CPC/15 e a extinção do feito sem julgamento do mérito, nos termos do art. 485, VI, do CPC/15; e

(iv)    No mérito, de que houve o transcurso do prazo decadencial previsto no Código Civil para pleitear a nulidade do negócio jurídico, já que com a nova sistemática processual a decadência pode ser conhecida de ofício pelo magistrado.

93.        Por derradeiro, a Peticionária reitera os pedidos formulados em sua contestação para que:

(i)    Seja reconhecida a competência do Juízo Federal do Distrito Federal para processar e julgar esta ação, na medida em que as causas de pedir da União também fundamentam o processo administrativo em trâmite no CARF, sendo certo a eventual ação proposta pela União contra o acórdão do órgão administrativo deveria ser processada na Subseção do Distrito Federal ou, subsidiariamente, seja reconhecida a competência


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

768

do Juízo das Execuções Fiscais Federais de São Paulo, no qual ocorrerá a cobrança do débito na hipótese de procedência administrativa da acusação fiscal;

(ii)   Seja extinto o processo, sem resolução do mérito, pelo acolhimento das seguintes preliminares, por estarem as questões objeto dessa demanda sendo discutidas nos autos do processo administrativo correlato, no qual foram regularmente apresentadas Impugnações pelos autuados e lavrada, a saber: (a) inépcia da petição inicial e falta de interesse processual por desconsiderar que já havia sido apresentada Impugnação administrativa e por eleger a Peticionária como único sujeito no polo passivo desta demanda; (b) impossibilidade jurídica do pedido, ante o direito de nomear previamente bens à penhora; (c) indeferimento da inicial, por não observar o procedimento de arresto previsto da Lei nº 6.830/80; (d) falta de interesse processual, diante da existência de discussão administrativa da matéria; (e) carência da ação, pela impossibilidade de pleitear o prosseguimento desta ação antes do término da seara administrativa; (f) impossibilidade de praticar atos tendentes à cobrança do crédito tributário enquanto estiver suspensa sua exigibilidade, nos termos do art. 151, III, do CTN, pois não há decisão definitiva; e

(iii)   No mérito, seja determinada a citação dos demais litisconsortes passivos necessários.


Termos em que,

Pede deferimento.

São Paulo, 31 de março de 2016.

LIDELAINE CRISTINA GIARETTA
OAB/SP nº 175.036

28


Assinado eletronicamente por: JULIANA ROCCO NUNES - 12/02/2019 19:42:15
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=19021219433800000000045905197
Número do documento: 19021219433800000000045905197

# Exhibit 16

[logo:]  Federal Regional Court of the 3rd Region
PJe (Processo Judicial Eletrônico [Electronic Proceedings]) - Electronic Proceedings

07/27/2023

## Number: **5001944-96.2019.4.03.6100**

Class: **CIVIL APPEAL**
Joint Judgment Body: **4th Panel**
Judgment Body: **Office. 14 - DIS. JUDGE. MARCELO SARAIVA**
Last assignment: **04/24/2019**
Value assigned to the case: **R$ 50,000.00**
Reference process: **5001944-96.2019.4.03.6100**
Matters: **IRPJ/Corporate Income Tax, Compensation of Losses**
Proceedings closed to the public? **YES** Free legal aid? **NO**
Request for injunction or preliminary injunction? **NO**

| Parties | Associated Attorney/Third Party |
|---|---|
| **TINTO HOLDING LTDA (APPELLANT)** | **TIAGO DIAS DE AMORIM (ATTORNEY)**<br>**CEZAR AUGUSTO FERREIRA NOGUEIRA (ATTORNEY)** |
| **PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES (APPELLANT)** | **BERNARDO CAVALCANTI FREIRE (ATTORNEY)**<br>**MARIANA TAVARES ANTUNES (ATTORNEY)**<br>**ALEXANDRE DE MENDONCA WALD (ATTORNEY)** |
| **BLESSED HOLDINGS LLC - HSBC CTVM S.A. (APPELLANT)** | **JULIANA ROCCO NUNES (ATTORNEY)** |
| FEDERAL UNION - NATIONAL TREASURY (APPELLEE) | |
| **LUCIANO DE SOUZA GODOY (INTERESTED THIRD PARTY)** | |
| **RICARDO ZAMARIOLA JUNIOR (INTERESTED THIRD PARTY)** | |
| **TINTO HOLDING LTDA (INTERESTED THIRD PARTY)** | **ANTONIO MANUEL FRANCA AIRES (ATTORNEY)**<br>**DANIELLA PIHA civilly registered as DANIELLA PIHA (ATTORNEY)** |
| **AJ RUIZ CONSULTORIA EMPRESARIAL S.A. (BANKRUPTCY TRUSTEE/COURT-APPOINTED ADMINISTRATOR)** | **JOICE RUIZ BERNIER (ATTORNEY)** |

| Documents | | | |
|---|---|---|---|
| **ID** | **Date of Signature** | **Document** | **Type** |
| 27742 3532 | 07/21/2023 7:32 p.m. | Judgment | Judgment |

[logo:]

## JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Panel**

CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT'S attorney(s): JULIANA ROCCO NUNES - SP378477-A
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A , BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A
APPELLANT's attorney(s): CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY
OTHER PARTICIPANTS:
INTERESTED THIRD PARTY: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA
BANKRUPTCY TRUSTEE/COURT-APPOINTED ADMINISTRATOR: AJ RUIZ CONSULTORIA EMPRESARIAL S.A.

ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475
ATTORNEY of the BANKRUPTCY TRUSTEE/COURT-APPOINTED ADMINISTRATOR: JOICE RUIZ BERNIER - SP126769-A

---

p{text-align: justify;}

[logo:]

## JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Panel**

MOTIONS FOR CLARIFICATION IN CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE – SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
APPELLANT's attorney(s): CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
APPELLANT's attorney(s): BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES -SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY

OTHER PARTICIPANTS:

INTERESTED THIRD PARTY: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CORPORATE TAXPAYER REGISTRY NO. 01.597.168.0001-99

ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475
ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475

## REPORT

This concerns motions for clarification (ID 267532189) submitted by the Federal Union (National Treasury) against the judgment (ID 266737061) that, unanimously partially granted the appeal of Pinheiros Fundo de Investimento em Participações FIP Pinheiros, annulling the judgment, and returning the files to the first instance to develop the required technical expert evidence, as well as rejecting the motion of illegitimacy of PGFN argued by the company BLESSED HOLDINGS LLC, and partially granting its appeal to annul the judgment so that the parties be summoned to comment on the new documents attached to pages 1178 and subsequent pages of the case files.

The judgment was rendered in an ordinary action with a request for urgent relief, filed by the Federal Union against Tinto Holding Ltda., Blessed Holding LLC and Pinheiros Fundo de Investimentos em Participações, for the purpose of granting a court order declaring null the Private Instrument of Assignment and Transfer of Shares and Other Covenants signed between the co-defendants Tinto Holding Ltda. and Blessed Holdings LLC, on 1/2/2010 and 11/11/2010.

For better understanding, the abstract of the appealed judgment is transcribed hereinafter:

*"CIVIL PROCEDURE. ORDINARY ACTION. STANDING OF PGFN. PRELIMINARY REJECTED. REJECTING THE DEVELOPMENT OF TECHNICAL EXPERT EVIDENCE. DEFENSE RESTRICTION. NEED FOR SUMMONS OF THE OTHER PARTIES REGARDING THE NEW DOCUMENTS ATTACHED BY THE FEDERAL UNION. ARTS. 436E467DO CODE OF CIVIL PROCEDURE. NULLITY OF THE JUDGMENT.*

I - Since the case involves tax matters, due to the annulment of the legal transaction between TINTO HOLDINGS LTDA. and BLESSED HOLDINGS LLC, returning the assets under negotiation to the former's assets to be held liable for the tax burden, the representation of the Federal Government, in court, through its treasury body, the Attorney General of the National Treasury, remains justified. Preliminary PGFN standing rejected.

[QR code]    Digitally signed by: MARCELO MESQUITA SARAIVA - 07/21/2023 7:32:23 p.m.    No. 277423532 - Page 2
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=23072119322330400000275212806
Document number: 23072119322330400000275212806

*II - The judge is responsible for deciding on the need or not to carry it out, according to the provisions of Art. 370, introduction and sole paragraph of the 2015 Code of Civil Procedure. He is allowed to judge at his discretion and, to form his conviction, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.*

*III - In the case in question, the expert evidence, required by the now appellant FIP-PINHEIROS, was rejected by a decision handed down at a time prior to the judgment, with the lower court finding that the case files bring sufficient factors to be judged. In turn, in the appealed judgment, it was understood that the case involves an early judgment, pursuant to the terms of item I of Art. 355 of the CPC, since it is a matter of law and the facts have already been demonstrated by the evidence in the case files.*

*IV - I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert may examine, with the expertise specific to the case, all the transactions carried out by the co-defendants and now under discussion in order to clarify that specific issue.*

*V - Thus, I understand that the judgment handed down should be annulled, in order to determine the return of the case to the first instance, so that the required technical expert evidence may be produced, with the remaining allegations made by the appellant FIP Pinheiros being impaired.*

*VI - In its appeal, Blessed Holdings LLC pleads restriction of defense, for not having been summoned to comment on the documents attached to pages 1,178 and following of the present case, alleging that the information contained in these documents contributed to the lower court ruling against it, understanding that there was simulation. It adds that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even send a subpoena to the appellant about any documents.*

*VII - According to the case file, in the decision handed down by the lower court on page 1188 of the present case, there is no mention of the petition on pages 1143/1145, which required the attachment of the documents on pages 1178 and following, nor to the fact that new documents were attached.*

*VIII - The rule contained in Arts. 436, introduction and subsections, and 437, §1, of the Code of Civil Procedure was blatantly violated, since the*

*court ruled on the case in advance, basing its decision, in order to mistakenly conclude that the TINTO-BLESSED TRANSACTION was null, on new documents to which Blessed was not given access. Such documents (pgs. 1,178 and following) were used by the judgment to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts (...) are peremptorily proven" (pg. 1247-v).*

*IX - The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that court, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment. The judgment was based, in a decisive manner, on the documentation submitted by the Federal Union on which BLESSED was not heard, in an evident restriction of defense.*

*X - Thus, although BLESSED was notified of the aforementioned decision of p. 1188 (ID 46187246, p. 53), this notice does not meet the need for specific notice of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the Code of Civil Procedure, whereby the judgment for this basis must be annulled, so that the other parties are informed of these new documents attached to the case files for comment, especially BLESSED.*

*XI - Appeal of BLESSED HOLDINGS LLC partially granted. Appeal of FIP-Pinheiros partially granted to annul the judgment. Preliminary PGFN standing rejected. The examination of the other issues was impaired due to the recognition of the nullity of the appealed judgment."*

The appellant, in its reasons, alleges that the judgment was omissive, because after the occurrence of a remediable defect and the need to produce evidence, the Reporting Judge, or the competent Joint Body, rather than annul the judgment, must convert the judgment into a proceeding for the performance of the missing procedural act and the conclusion of the investigation, which will be carried out in court or in the first instance (via letter of order). Once the proceedings have been completed, the reporting judge will proceed with the judgment of the appeal, pursuant to Art. 938 of the Code of Civil Procedure.

Notified, the appellee responded in the case files (ID 268212261).

There are the facts.

p{text-align: justify;}

[logo:]

JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Panel**

MOTIONS FOR CLARIFICATION IN CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
APPELLANT's attorney(s): CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
APPELLANT's attorney(s): BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES -SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY

OTHER PARTICIPANTS:
INTERESTED THIRD PARTY: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CORPORATE TAXPAYER REGISTRY NO. 01.597.168.0001-99

ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475
ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475

**VOTING**

As is known, motions for clarification, in accordance with the provisions of Art. 1,022 of the Code of Civil Procedure, only apply in cases of obscurity or contradiction (subsection I) or omission (subsection II).

In this case, in light of the evidence, the appealed judgment does not have any of these defects. From the simple reading of the abstract transcribed above, it can be verified that the judgment addressed all the issues discussed by the parties and that were explained in the deciding vote.

In accordance with the provisions of the ruling, from the reading of everything set forth herein by the parties, I believe that there is a need to produce technical expert evidence to clarify whether or not there was an impairment of Tinto Holding Ltda's assets to the point of making it insolvent through the disposal of the shares it held in FIP Pinheiros to Blessed Holdings LLC, since there is insufficient evidence to unequivocally conclude that the irregularities alleged in the complaint exist.

These are complex and well-structured corporate transactions, which require an accurate and detailed analysis by an expert in order to ascertain their validity and regularity or not.

The expert evidence was requested in the case files by the now appellant FIP Pinheiros. It is the judge's responsibility to decide on the need or not to carry it out, in accordance with the provisions of Art. 370, *introduction* and sole paragraph of the 2015 Code of Civil Procedure. He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

In the case files, the required technical expert evidence was rejected by a decision handed down at a time prior to the judgment, with the following content:

> *"I reject the requests for expert evidence, as I find that the case files have sufficient factors to be judged."*

As can be seen, there was a generic rationale for rejecting the requested expert evidence.

In turn, in the judgment now appealed, the *lower* court found that the case entails an early judgment, pursuant to subsection I of Art. 355 of the Code of Civil Procedure, as it is a matter of law and the facts have already been demonstrated by the evidence in the case files.

I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert examines, with the expertise peculiar to the case, all the operations carried out by the defendants and now under discussion in order to clarify that specific issue.

Thus, I believe that the judgment handed down should be annulled to decide on returning the case files to the first instance, in order for the required technical expert evidence to be developed, with the other allegations made by the appellant FIP Pinheiros remaining impaired.

In addition, the appellant Blessed Holdings LLC, in its appeal, pleads restriction of defense, as it was not summoned to comment on the documents attached to p. 1,178 and following of the original case.

The appellant argues that the information contained in these documents contributed to the Court *a quo* ruled on the case against it, understanding that there was simulation.

The appellant BLESSED alleges that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even subpoena the appellant on any documents.

However, the above rules were straightforwardly violated, since the Judge ruled on the case in advance, based on the fact that the nullity of the TINTO-BLESSED TRANSACTION was mistakenly concluded, in new documents to which Blessed was not given access. Such documents (p. 1,178 and following) were used in the judgment to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts ( .. .) are peremptorily proven" (p. 1247-v).

The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment.

The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction of defense.

Thus, even though BLESSED was notified of the aforementioned decision on page 1188 (ID 46187246, p. 53), this notice does not meet the need for specific notice of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the Code of Civil Procedure transcribed above, whereby the judgment for this basis must be annulled as well, so that the other parties are notified of these these new documents attached to the case files for comment, especially BLESSED.

As seen, since this does not involve a remediable defect, the provisions of Art. 938 of the Code of Civil Procedure remain inapplicable to the case.

Moreover, the appellant seeks either to redebate the matter already decided, which denotes the infringing nature of these motions, or, on a pre-questioning basis, that this Court respond, in detail, to the questions formulated herein.

Now, deconstructing the grounds of the appealed judgment would imply, "in casu", an inevitable reexamination of the matter, incompatible with the nature of the motions for clarification.

In this regard, I reference the decision cited by Theotônio Negrão in "Code of Civil Procedure and Procedural Legislation in Force", Editora Saraiva, 35th ed., 2003, p. 593, "in verbis":

> *"Motions for clarification do not constitute a suitable remedy for correcting the grounds of a decision (Boi AASP 1.536/122)."*

In another aspect, the judge is not bound to examine, one by one, all the legal rules or arguments brought by the parties, it being sufficient that he provide sufficient grounds to support his decision (RSTJ 151/229, TRF/3-R, Proc. 93.03.028288-4, 4- T., DJ 04/29/1997, p. 28722 and RJTJESP 115/207).

Nevertheless, it should be emphasized that the appealed judgment addressed all the issues indicated by the now appellant, whereby there is no contradiction, obscurity or omission therein.

In light of the foregoing, I reject the motions for clarification.

It is decided.

p{text-align: justify;}

[logo:]

JUDICIAL BRANCH
**Federal Regional Court of the 3rd Region**
**4th Panel**

MOTIONS FOR CLARIFICATION IN CIVIL APPEAL (198) NO. 5001944-96.2019.4.03.6100
REPORTING PARTY: Office 14 - DIS. JUDGE MARCELO SARAIVA
APPELLANT: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
APPELLANT's attorney(s): ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
APPELLANT's attorney(s): CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM

- SP287715-A
APPELLANT's attorney(s): BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES - SP378477-A
APPELLEE: FEDERAL UNION - NATIONAL TREASURY

OTHER PARTICIPANTS:
INTERESTED THIRD PARTY: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CORPORATE TAXPAYER REGISTRY 01.597.168.0001-99

ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475
ATTORNEY of the INTERESTED THIRD PARTY: ANTONIO MANUEL FRANCA AIRES - SP63191
ATTORNEY of the INTERESTED THIRD PARTY: DANIELLA PIHA - SP269475


## VOTING


As is known, motions for clarification, in accordance with the provisions of Art. 1,022 of the Code of Civil Procedure, only apply in cases of obscurity or contradiction (subsection I) or omission (subsection II).

In this case, in light of the evidence, the appealed judgment does not have any of these defects.  From the simple reading of the abstract transcribed above, it can be verified that the judgment addressed all the issues debated by the parties and that were explained in the deciding vote.

In accordance with the provisions of the ruling, from the reading of everything set forth herein by the parties, I believe that there is a need to produce technical expert evidence to clarify whether or not there was an impairment of Tinto Holding Ltda's assets to the point of making it insolvent through the disposal of the shares it held in FIP Pinheiros to Blessed Holdings LLC, since there is insufficient evidence to unequivocally conclude that the irregularities alleged in the complaint exist.

These are complex and well-structured corporate transactions, which require an accurate and detailed analysis by an expert in order to ascertain their validity and regularity or not.

The expert evidence was requested in the case files by the now appellant FIP Pinheiros. It is the judge's responsibility to decide on the need or not to carry it out, in accordance with the provisions of Art. 370, *introduction* and sole paragraph of the 2015 Code of Civil Procedure.  He is allowed to rule at his discretion and, to make his judgment, the judge will freely assess the evidence produced, justifying, however, the decisions rendered, under penalty of nullity.

In the case files, the required technical expert evidence was rejected by a decision handed down at a time prior to the judgment, with the following content:

*"I reject the requests for expert evidence, as I find that the case files have sufficient factors to be judged."*

As can be seen, there was a generic rationale for rejecting the requested expert evidence.

In turn, in the judgment now appealed, the *lower* court found that the case entails an early judgment, pursuant to subsection I of Art. 355 of the Code of Civil Procedure, as it is a matter of law and the facts have already been demonstrated by the evidence in the case files.

I do not share the same understanding regarding the early judgment of the dispute, since the documentation attached to the case file proves to be insufficient, requiring evidentiary delay so that an expert examines, with the expertise peculiar to the case, all the operations carried out by the defendants and now under discussion in order to clarify that specific issue.

Thus, I believe that the judgment handed down should be annulled to decide on returning the case files to the first instance, in order for the required technical expert evidence to be developed, with the other allegations made by the appellant FIP Pinheiros remaining impaired.

In addition, the appellant Blessed Holdings LLC, in its appeal, pleads restriction of defense, as it was not summoned to comment on the documents attached to p. 1,178 and following of the original case.

The appellant argues that the information contained in these documents contributed to the Court *a quo* ruled on the case against it, understanding that there was simulation.

The appellant BLESSED alleges that the subsequent publication of an absolutely generic decision, which mentions nothing about the new documents, does not have the power to remove the aforementioned nullity, since that decision did not even subpoena the appellant on any documents.

However, the above rules were straightforwardly violated, since the Judge ruled on the case in advance, based on the fact that the nullity of the TINTO-BLESSED TRANSACTION was mistakenly concluded, in new documents to which Blessed was not given access. Such documents (p. 1,178 and following) were used in the judgment to conclude that the allegations of the Appellant herein would be "FULLY INVALIDATED", for which reason "the aforementioned simulated acts ( .. .) are peremptorily proven" (p. 1247-v).

The restriction is related to documents that are decisive for the conclusion reached in the judgment, cited on more than three pages and which, in the understanding of that judgment, would demonstrate that there was simulation. However, BLESSED at no time became aware of this documentation nor was it summoned to comment, which could, in theory, invalidate the conclusion of the judgment.

Digitally signed by: MARCELO MESQUITA SARAIVA - 07/21/2023 7:32:23 p.m.
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=23072119322330400000275212806
Document number: 23072119322330400000275212806

The ruling was based, in a decisive manner, on the documentation gathered by the Federal Union about which BLESSED was not heard, in an evident restriction of defense.

Thus, even though BLESSED was notified of the aforementioned decision on page 1188 (ID 46187246, p. 53), this notice does not meet the need for specific notice of the parties regarding the addition of new documentation brought by the Federal Union, pursuant to Art. 437, § 1 of the Code of Civil Procedure transcribed above, whereby the judgment for this basis must be annulled as well, so that the other parties are notified of these these new documents attached to the case files for comment, especially BLESSED.

As seen, since this does not involve a remediable defect, the provisions of Art. 938 of the Code of Civil Procedure remain inapplicable to the case.

Moreover, the appellant seeks either to redebate the matter already decided, which denotes the infringing nature of these motions, or, on a pre-questioning basis, that this Court respond, in detail, to the questions formulated herein.

Now, deconstructing the grounds of the appealed judgment would imply, "in casu", an inevitable reexamination of the matter, incompatible with the nature of the motions for clarification.

In this regard, I reference the decision cited by Theotônio Negrão in "Code of Civil Procedure and Procedural Legislation in Force", Editora Saraiva, 35th ed., 2003, p. 593, "in verbis":

> *"Motions for clarification do not constitute a suitable remedy to correct the grounds of a decision (Boi AASP 1,536/122)."*

In another aspect, the judge is not bound to examine, one by one, all the legal rules or arguments brought by the parties, it being sufficient that he provide sufficient grounds to support his decision (RSTJ 151/229, TRF/3-R, Proc. 93.03.028288-4, 4- T., DJ 04/29/1997, p. 28722 and RJTJESP 115/207).

Nevertheless, it should be emphasized that the appealed judgment addressed all the issues indicated by the now appellant, whereby there is no contradiction, obscurity or omission therein.

In light of the foregoing, I reject the motions for clarification.

It is decided.

## JUDGMENT

Having seen and reported these case files between the parties indicated above, the Fourth Panel unanimously decided to reject the motions for clarification, pursuant to the terms of the vote of Judge MARCELO SARAIVA (Reporting Judge), along with the vote of  Judge DIANA BRUNSTEIN and Judge ANDRÉ NABARRETE. Justifiably absent, due to vacation, Judge MÔNICA NOBRE (replaced by Judge DIANA BRUNSTEIN), pursuant to the terms of the report and vote that form an integral part of this judgment.



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**Acórdão-1**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.



Dan McCourt

Sworn to before me this
July 28, 2023

Signature, Notary Public

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

Tribunal Regional Federal da 3ª Região
PJe - Processo Judicial Eletrônico

27/07/2023

Número: **5001944-96.2019.4.03.6100**

Classe: **APELAÇÃO CÍVEL**
Órgão julgador colegiado: **4ª Turma**
Órgão julgador: **Gab. 14 - DES. FED. MARCELO SARAIVA**
Última distribuição : **24/04/2019**
Valor da causa: **R$ 50.000,00**
Processo referência: **5001944-96.2019.4.03.6100**
Assuntos: **IRPJ/Imposto de Renda de Pessoa Jurídica, Compensação de Prejuízos**
Segredo de justiça? **SIM**
Justiça gratuita? **NÃO**
Pedido de liminar ou antecipação de tutela? **NÃO**

| Partes | Procurador/Terceiro vinculado |
|---|---|
| **TINTO HOLDING LTDA (APELANTE)** | **TIAGO DIAS DE AMORIM (ADVOGADO)** **CEZAR AUGUSTO FERREIRA NOGUEIRA (ADVOGADO)** |
| **PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES (APELANTE)** | **BERNARDO CAVALCANTI FREIRE (ADVOGADO)** **MARIANA TAVARES ANTUNES (ADVOGADO)** **ALEXANDRE DE MENDONCA WALD (ADVOGADO)** |
| **BLESSED HOLDINGS LLC - HSBC CTVM S.A. (APELANTE)** | **JULIANA ROCCO NUNES (ADVOGADO)** |
| **UNIAO FEDERAL - FAZENDA NACIONAL (APELADO)** | |
| **LUCIANO DE SOUZA GODOY (TERCEIRO INTERESSADO)** | |
| **RICARDO ZAMARIOLA JUNIOR (TERCEIRO INTERESSADO)** | |
| **TINTO HOLDING LTDA (TERCEIRO INTERESSADO)** | **ANTONIO MANUEL FRANCA AIRES (ADVOGADO)** **DANIELLA PIHA registrado(a) civilmente como DANIELLA PIHA (ADVOGADO)** |
| **AJ RUIZ CONSULTORIA EMPRESARIAL S.A. (SÍNDICO DA MASSA FALIDA/ADMINISTRADOR JUDICIAL)** | **JOICE RUIZ BERNIER (ADVOGADO)** |

| Documentos | | | |
|---|---|---|---|
| Id. | Data da Assinatura | Documento | Tipo |
| 27742 3532 | 21/07/2023 19:32 | Acórdão | Acórdão |



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogado do(a) APELANTE: JULIANA ROCCO NUNES - SP378477-A
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, MARIANA TAVARES ANTUNES - SP154639-A
Advogados do(a) APELANTE: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL
OUTROS PARTICIPANTES:
TERCEIRO INTERESSADO: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA
SÍNDICO DA MASSA FALIDA/ADMINISTRADOR JUDICIAL: AJ RUIZ CONSULTORIA EMPRESARIAL S.A.

ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475
ADVOGADO do(a) SÍNDICO DA MASSA FALIDA/ADMINISTRADOR JUDICIAL: JOICE RUIZ BERNIER - SP126769-A

---

p{text-align: justify;}



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

EMBARGOS DE DECLARAÇÃO EM APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
Advogados do(a) APELANTE: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
Advogados do(a) APELANTE: BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL

OUTROS PARTICIPANTES:



TERCEIRO INTERESSADO: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CNPJ 01.597.168.0001-99

ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475
ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475

## R E L A T Ó R I O

Trata-se de embargos de declaração (ID 267532189) opostos pela União Federal (Fazenda Nacional), em face de v. acórdão (ID 266737061) que, por unanimidade, deu parcial provimento ao recurso de apelação de Pinheiros Fundo de Investimento em Participações FIP Pinheiros, para anular a sentença, devendo retornar os autos à primeira instância, para produção da prova pericial técnica requerida, bem como rejeitar a preliminar de ilegitimidade da PGFN arguida pela empresa Blessed Holdings LLC, e der parcial provimento ao seu recurso de apelação para anular a r. sentença de maneira que seja determinada a intimação das partes para manifestação acerca dos documentos novos juntados às fls. 1178 e seguintes dos autos.

O v. acórdão foi proferido em sede de ação, sob o rito ordinário, com pedido de tutela de urgência, ajuizada pela União Federal em face de Tinto Holding Ltda., Blessed Holding LLC e Pinheiros Fundo de Investimentos em Participações, objetivando a concessão de provimento jurisdicional que declare a nulidade do Instrumento Particular de Cessão e Transferência de Quotas e Outras Avenças firmado entre as corrés Tinto Holding Ltda. e Blessed Holdings LLC, em 02.01.2010 e 11.11.2010.

Para melhor compreensão, transcreve-se a ementa do v. acórdão embargado:

*"PROCESSUAL CIVIL. AÇÃO SOB O RITO ORDINÁRIO. ILEGITIMIDADE DA PGFN. PRELIMINAR REJEITADA. INDEFERIMENTO DA PRODUÇÃO DE PROVA PERICIAL TÉCNICA. CERCEAMENTO DE DEFESA. NECESSIDADE DE INTIMAÇÃO DAS DEMAIS PARTES ACERCA DOS DOCUMENTOS NOVOS JUNTADOS PELA UNIÃO FEDERAL. ARTS. 436 E 467 DO CPC. NULIDADE DA SENTENÇA.*

*I – Tendo a causa natureza fiscal, em razão da anulação do negócio jurídico entre a TINTO HOLDINGS LTDA. e BLESSED HOLDINGS LLC, retornando os ativos objeto da negociação ao patrimônio da primeira, para que responda ao ônus da tributação, resta justificada a representação da União Federal, em Juízo, por seu órgão fazendário, a Procuradoria Geral da Fazenda Nacional. Preliminar de ilegitimidade da PGFN rejeitada.*



*II – Ao magistrado cumpre decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, caput e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.*

*III – No caso dos autos, a prova pericial, requerida pelo ora apelante FIP-PINHEIROS, foi indeferida por decisão proferida em momento anterior à sentença, ao entendimento do MM. Juízo a quo de que os autos trazem elementos suficientes para seu julgamento. Na sentença recorrida, por sua vez, entendeu-se que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.*

*IV - Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica*

*V - Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.*

*VI – Em seu recurso de apelação, Blessed Holdings LLC aduz cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do presente feito, aduzindo que as informações constantes desses documentos contribuíram para que o MM. Juízo a quo julgasse o feito em seu desfavor, entendendo que houve simulação. Acrescenta que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.*

*VII - Consoante se verifica dos autos, na decisão proferida pelo juízo de piso à fl. 1188 do presente feito, não há qualquer menção nem à petição de fls. 1143/1145, que requereu a juntada dos documentos de fls. 1178 e seguintes, nem ao fato de terem sido juntados documentos novos.*

*VIII – A regra constante dos arts. 436, caput e incisos, e 437, § 1º, do CPC foi frontalmente violada, eis que a r. sentença julgou antecipadamente o feito, baseando-se, para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r. sentença para concluir que as alegações da ora*



Assinado eletronicamente por: MARCELO MESQUITA SARAIVA - 21/07/2023 19:32:23
https://pje2g.trf3.jus.br:443/pje/Processo/ConsultaDocumento/listView.seam?x=23072119322330400000275212806
Número do documento: 23072119322330400000275212806

*Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados (...) são peremptoriamente comprovados" (fl. 1247-v).*

*IX - O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença. A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.*

*X - Desse modo, muito embora a BLESSED tenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC, devendo ser anulada a sentença por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.*

*XI – Recurso de apelação de BLESSED HOLDINGS LLC parcialmente provido. Recurso de apelação da FIP-Pinheiros parcialmente provido para anular a sentença. Preliminar de ilegitimidade da PGFN rejeitada. Prejudicado o exame das demais questões em razão do reconhecimento da nulidade da sentença recorrida."*

A embargante, em suas razões, alega que o v. acórdão foi omisso, pois constatadas a ocorrência de vício sanável e a necessidade de produção de prova, deve o Relator, ou o Órgão Colegiado competente, ao invés de anular a sentença, converter o julgamento em diligência para a realização do ato processual faltante e a conclusão da instrução, que se realizarão no tribunal ou em primeira instância (via carta de ordem). Finalizadas as diligências, o relator prosseguirá no julgamento do recurso, nos termos do art. 938, do CPC.

Intimada, a parte embargada manifestou-se nos autos (ID 268212261).

É o relatório.



p{text-align: justify;}



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

EMBARGOS DE DECLARAÇÃO EM APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
Advogados do(a) APELANTE: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM - SP287715-A
Advogados do(a) APELANTE: BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL

OUTROS PARTICIPANTES:
TERCEIRO INTERESSADO: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CNPJ 01.597.168.0001-99

ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475
ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475

**V O T O**

Como é cediço, os embargos de declaração, a teor do disposto no art. 1.022 do CPC, somente têm cabimento nos casos de obscuridade ou contradição (inc. I) ou de omissão (inc. II).

No caso, à evidência, o v. acórdão embargado não se ressente de qualquer desses vícios. Da simples leitura da ementa acima transcrita, verifica-se que o julgado abordou todas as questões debatidas pelas partes e que foram explicitadas no voto condutor.

Conforme o disposto no v. acórdão, da leitura de tudo quanto exposto no presente feito pelas partes, entendo haver necessidade da produção de prova pericial técnica para esclarecimento se houve ou não o comprometimento do patrimônio da Tinto Holding Ltda. a ponto de torná-la insolvente com a alienação das cotas que detinha no FIP Pinheiros à Blessed Holdings LLC, uma vez que não



existem provas suficientes que permitam concluir, de forma inequívoca, pela existência das irregularidades apontadas na inicial.

Trata-se de operações societárias complexas e bem estruturadas, que exigem a análise de forma acurada e detalhada por um perito, para que se apure sua validade e regularidade ou não.

A prova pericial foi requerida nos autos pelo ora apelante FIP Pinheiros. Cumpre ao magistrado decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

No caso dos autos, a prova pericial técnica requerida foi indeferida por decisão proferida em momento anterior à sentença, com o seguinte teor:

> *"Indefiro os requerimentos de prova pericial, pois entendo que os autos trazem elementos suficientes para seu julgamento"*

Conforme se constata, houve uma fundamentação genérica para o indeferimento da prova pericial requerida.

Por sua vez, na sentença ora recorrida, o MM. Juízo *a quo* entendeu que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica.

Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

Ademais, a apelante Blessed Holdings LLC, em seu recurso, aduziu cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do feito de origem.

Aduz a apelante que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação.



Acrescenta a apelante BLESSED que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

Ora, as regras acima foram frontalmente violadas, eis que a r. sentença julgou antecipadamente o feito, baseando-se para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r. sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados( .. .) são peremptoriamente comprovados" (fl. 1247-v).

O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença.

A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

Desse modo, muito embora a BLESSED tenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC acima transcrito, devendo ser anulada a sentença também por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.

Como visto não se tratando de vício sanável, resta inaplicável, ao caso, as disposições do art. 938, do CPC.

No mais, pretende a embargante ou rediscutir matéria já decidida, o que denota o caráter infringente dos presentes embargos, ou, a título de prequestionamento, que esta E. Corte responda, articuladamente, a quesitos ora formulados.

Ora, desconstituir os fundamentos do acórdão embargado implicaria, "in casu", em inevitável reexame da matéria, incompatível com a natureza dos embargos declaratórios.

A respeito, trago à colação aresto citado por Theotônio Negrão em "Código de Processo Civil e Legislação Processual em Vigor", Editora Saraiva, 35ª ed., 2003, p. 593, "in verbis":



*"Os embargos de declaração não constituem recurso idôneo para corrigir os fundamentos de uma decisão (Bol AASP 1.536/122)."*

Sob outro aspecto, o julgador não está adstrito a examinar, um a um, todas as normas legais ou argumentos trazidos pelas partes, bastando que decline fundamentos suficientes para lastrear sua decisão (RSTJ 151/229, TRF/3ªR, Proc. 93.03.028288-4, 4ª T., DJ 29.04.1997, p. 28722 e RJTJESP 115/207).

Ainda assim, é preciso ressaltar que o v. acórdão embargado abordou todas as questões apontadas pela ora embargante, inexistindo nele, pois, qualquer contradição, obscuridade ou omissão.

Diante do exposto, rejeito os embargos de declaração.

É o voto.

p{text-align: justify;}



PODER JUDICIÁRIO
**Tribunal Regional Federal da 3ª Região**
**4ª Turma**

EMBARGOS DE DECLARAÇÃO EM APELAÇÃO CÍVEL (198) Nº 5001944-96.2019.4.03.6100
RELATOR: Gab. 14 - DES. FED. MARCELO SARAIVA
APELANTE: TINTO HOLDING LTDA, PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPACOES, BLESSED HOLDINGS LLC - HSBC CTVM S.A.
Advogados do(a) APELANTE: ALEXANDRE DE MENDONCA WALD - SP107872-A, BERNARDO CAVALCANTI FREIRE - SP291471, BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, MARIANA TAVARES ANTUNES - SP154639-A
Advogados do(a) APELANTE: CEZAR AUGUSTO FERREIRA NOGUEIRA - SP170914-A, TIAGO DIAS DE AMORIM



- SP287715-A
Advogados do(a) APELANTE: BERNARDO VIEIRA KLUPPEL CARRARA - SP433987, JULIANA ROCCO NUNES - SP378477-A
APELADO: UNIAO FEDERAL - FAZENDA NACIONAL

OUTROS PARTICIPANTES:
TERCEIRO INTERESSADO: LUCIANO DE SOUZA GODOY, RICARDO ZAMARIOLA JUNIOR, TINTO HOLDING LTDA, MASSA FALIDA DE TINTO HOLDING LTDA - CNPJ 01.597.168.0001-99

ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475
ADVOGADO do(a) TERCEIRO INTERESSADO: ANTONIO MANUEL FRANCA AIRES - SP63191
ADVOGADO do(a) TERCEIRO INTERESSADO: DANIELLA PIHA - SP269475

## V O T O

Como é cediço, os embargos de declaração, a teor do disposto no art. 1.022 do CPC, somente têm cabimento nos casos de obscuridade ou contradição (inc. I) ou de omissão (inc. II).

No caso, à evidência, o v. acórdão embargado não se ressente de qualquer desses vícios. Da simples leitura da ementa acima transcrita, verifica-se que o julgado abordou todas as questões debatidas pelas partes e que foram explicitadas no voto condutor.

Conforme o disposto no v. acórdão, da leitura de tudo quanto exposto no presente feito pelas partes, entendo haver necessidade da produção de prova pericial técnica para esclarecimento se houve ou não o comprometimento do patrimônio da Tinto Holding Ltda. a ponto de torná-la insolvente com a alienação das cotas que detinha no FIP Pinheiros à Blessed Holdings LLC, uma vez que não existem provas suficientes que permitam concluir, de forma inequívoca, pela existência das irregularidades apontadas na inicial.

Trata-se de operações societárias complexas e bem estruturadas, que exigem a análise de forma acurada e detalhada por um perito, para que se apure sua validade e regularidade ou não.

A prova pericial foi requerida nos autos pelo ora apelante FIP Pinheiros. Cumpre ao magistrado decidir sobre a necessidade ou não de sua realização, consoante a dicção do art. 370, *caput* e parágrafo único do CPC/2015. A ele é dado julgar de acordo com seu livre convencimento e, para a formação de sua convicção, o juiz apreciará livremente as provas produzidas, motivando, contudo, as decisões proferidas, sob pena de nulidade.

No caso dos autos, a prova pericial técnica requerida foi indeferida por decisão proferida em momento anterior à sentença, com o seguinte teor:



*"Indefiro os requerimentos de prova pericial, pois entendo que os autos trazem elementos suficientes para seu julgamento"*

Conforme se constata, houve uma fundamentação genérica para o indeferimento da prova pericial requerida.

Por sua vez, na sentença ora recorrida, o MM. Juízo *a quo* entendeu que o feito comporta julgamento antecipado, nos termos do inciso I do art. 355 do CPC, por se tratar de questão de direito e as de fato já estarem demonstradas pelas provas que instruem os autos.

Não compartilho do mesmo entendimento quanto ao julgamento antecipado da lide, porquanto a documentação acostada aos autos revela-se insuficiente, sendo necessário dilação probatória a fim de que um perito examine, com a expertise peculiar ao caso, todas as operações realizadas pelas corrés e ora em discussão de maneira a esclarecer aquela questão específica.

Desse modo, entendo deva ser anulada a sentença proferida, para determinar o retorno dos autos à primeira instância, a fim de que seja produzida a prova pericial técnica requerida, restando prejudicadas as demais alegações feitas pela apelante FIP Pinheiros.

Ademais, a apelante Blessed Holdings LLC, em seu recurso, aduziu cerceamento de defesa, por não ter sido intimada para se manifestar acerca dos documentos juntados às fls. 1.178 e seguintes do feito de origem.

Aduz a apelante que as informações constantes desses documentos contribuíram para que o MM. Juízo *a quo* julgasse o feito em seu desfavor, entendendo que houve simulação.

Acrescenta a apelante BLESSED que a publicação posterior de uma decisão absolutamente genérica, que nada cita sobre os documentos novos, não tem o condão de afastar a aludida nulidade, uma vez que nessa decisão sequer foi determinada a intimação da apelante sobre quaisquer documentos.

Ora, as regras acima foram frontalmente violadas, eis que a r. sentença julgou antecipadamente o feito, baseando-se para concluir equivocadamente pela nulidade da OPERAÇÃO TINTO-BLESSED, em documentos novos aos quais não foi facultado o acesso à Blessed. Tais documentos (fls. 1.178 e seguintes) foram utilizados pela r. sentença para concluir que as alegações da ora Apelante estariam "TOTALMENTE INFIRMADAS", pelo que "os referidos atos simulados( .. .) são peremptoriamente comprovados" (fl. 1247-v).

O cerceamento está relacionado a documentos determinantes para a conclusão a que chegou a r. sentença, citado em mais de três páginas e que, no entendimento daquele MM Juízo, demonstraria que houve simulação. Mas a BLESSED em momento algum tomou conhecimento dessa documentação ou foi intimada para se manifestar, o que poderia, em tese, infirmar a conclusão da sentença.



A r. sentença se baseou, de forma determinante, na documentação juntada pela União Federal sobre a qual não foi ouvida a BLESSED, em evidente cerceamento de defesa.

Desse modo, muito embora a BLESSED tenha sido intimada da mencionada decisão de fl. 1188 (ID 46187246, p. 53), essa intimação não supre a necessidade de intimação específica das partes acerca da juntada da documentação nova trazida pela União Federal, nos termos do art. 437, § 1º do CPC acima transcrito, devendo ser anulada a sentença também por esse fundamento, para que sejam intimadas as demais partes acerca desses documentos novos acostados aos autos para manifestação, especialmente a BLESSED.

Como visto não se tratando de vício sanável, resta inaplicável, ao caso, as disposições do art. 938, do CPC.

No mais, pretende a embargante ou rediscutir matéria já decidida, o que denota o caráter infringente dos presentes embargos, ou, a título de prequestionamento, que esta E. Corte responda, articuladamente, a quesitos ora formulados.

Ora, desconstituir os fundamentos do acórdão embargado implicaria, "in casu", em inevitável reexame da matéria, incompatível com a natureza dos embargos declaratórios.

A respeito, trago à colação aresto citado por Theotônio Negrão em "Código de Processo Civil e Legislação Processual em Vigor", Editora Saraiva, 35ª ed., 2003, p. 593, "in verbis":

> *"Os embargos de declaração não constituem recurso idôneo para corrigir os fundamentos de uma decisão (Bol AASP 1.536/122)."*

Sob outro aspecto, o julgador não está adstrito a examinar, um a um, todas as normas legais ou argumentos trazidos pelas partes, bastando que decline fundamentos suficientes para lastrear sua decisão (RSTJ 151/229, TRF/3ªR, Proc. 93.03.028288-4, 4ª T., DJ 29.04.1997, p. 28722 e RJTJESP 115/207).

Ainda assim, é preciso ressaltar que o v. acórdão embargado abordou todas as questões apontadas pela ora embargante, inexistindo nele, pois, qualquer contradição, obscuridade ou omissão.

Diante do exposto, rejeito os embargos de declaração.

É o voto.



**ACÓRDÃO**

Vistos e relatados estes autos em que são partes as acima indicadas, a Quarta Turma, à unanimidade, decidiu rejeitar os embargos de declaração, nos termos do voto do Des. Fed. MARCELO SARAIVA (Relator), com quem votaram a Juíza Fed. Conv. DIANA BRUNSTEIN e o Des. Fed. ANDRÉ NABARRETE. Ausente, justificadamente, em razão de férias, a Des. Fed. MÔNICA NOBRE (substituída pela Juíza Fed. Conv. DIANA BRUNSTEIN), nos termos do relatório e voto que ficam fazendo parte integrante do presente julgado.

# Exhibit 17

p. 5096

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

| JUDGMENT |
|---|

Trial no.:                **1055320-43.2022.8.26.0100**
Class - Matter:        **Pre-Trial Injunctive Relief - Capital Market**
Claimant:                **BERF PARTICIPAÇÕES S.A.**
Respondent:           **Jose Batista Junior et al.**

Judge: Dr. **GUILHERME DE PAULA NASCENTE NUNES**

Recitals.

**BERF PARTICIPAÇÕES S.A.** files for pre-trial injunctive relief against **SILMAR ROBERTO BERTIN, REINALDO BERTIN, NATALINO BERTIN, FERNANDO ANTONIO BERTIN, WESLEY MENDONCA BATISTA, JOESLEY MENDONCA BATISTA, JOSE BATISTA SOBRINHO, JOSE BATISTA JUNIOR, HEBER PARTICIPAÇÕES S.A., JBS S.A., J&F PARTICIPAÇÕES S.A., J&F INVESTMENTOS S.A., BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES** and **BLESSED HOLDINGS LLC**. It states that it is a minority shareholder of the Bertin Group, composed of 90 companies, specially controlled through Heber, and which include as shareholders the plaintiff Berf, in addition to Reivo Participações S.A., Viamar Participações S.A., Juferb Participações S.A., NTW Participações S.A. and Horlof Participações S.A. The Bertin Group is controlled by the brothers Reinaldo, Natalino, Fernando and Silmar, respondents herein, who allegedly managed the group in a manner that was not approved by the plaintiff, including with the commission of offenses that generated negative consequences for the conglomerate, which led part of the companies of the group to request the approval of court-supervised reorganization. It states that in 2009, the stake of the Bertin Group in Bertin S.A. was sold to JBS S.A. but that, recently, documents have surfaced that indicate that the incorporation of Bertin by JBS had numerous irregularities, currently investigated by the Federal Revenue Office, by the Court of Auditors, by the Judicial Branch and by the CVM [Brazilian Securities Commission]. It states that on 09/16/2009, 10/22/2009 and 12/14/2009, JBS disclosed material events, stating that it had entered into a partnership agreement that called for transactions to enable the unification of its operations with those of Bertin S.A., of which, at the time, Heber was a shareholder, of which Berf holds 1/6 of the share capital. Bracol Holding, controlling shareholder of Bertim, at the time had agreed to transfer to FB Participações S.A. 73.1% of the capital of Bertin, which would become a wholly owned subsidiary of JBS, whose share capital would also be 50.11% held by FB Participações S.A. On 11/26/2009,

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 1**

p. 5097

[emblem] **SP**   **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

Bracol Holding established the investment fund called Bertin FIP, being its sole shareholder, to transfer its stake in Bertin to the fund, supposedly to facilitate the procedures of the notified operation. Through the operation to be entered into between Bertin and JBS, the latter would incorporate all common stock of Bertin, which had an economic value of R$ 13,562,328,000.00, while the shareholders of Bertin would receive 32.45518835 common shares of JBS for each common share of Bertin. On 12/29/2009, the incorporation of Bertin by JBS was approved at the extraordinary general meeting of JBS. It states, however, that it had knowledge, through documents produced by the CVM and placed in the discovery process in the United States, filed by the investment fund shareholder of JBS, of information that the transaction involved hidden and fraudulent operations that caused losses to the shareholders of the Bertin Group, notably the claimant, which never participated in the management of the corporate group. It alleges that the documents demonstrate the subsequent transfer of assets of the Bertin Group to legal persons under the control of the former controlling entities of JBS, at a miniscule price, such that the respondents Wesley, Silmar, Natalino and Joesley were accused of having conducted fraudulent operations in the context of the incorporation of Bertin by JBS. It alleges that the co-respondents Silmar and Natalino presented a proposal to enter into a settlement to end the sanctioning administrative proceeding, through the payment of sums, but that the request was rejected by the Settlement Committee and by the executive board of the CVM. It states that on 12/16/2009, during the process of incorporation of Bertin by JBS, the respondents incorporated Blessed Holdings, in the United States, which was acquired by Blessed Holdings Cayman, with registered office in the Cayman Islands, which was acquired by the Batista family on 10/31/2016. It argues that off-the-books contracts were entered into between the representatives of JBS and Bertin, by which the latter undertook to transfer the entire corporate stake to JBS, whereby in consideration, JBS would pay R$ 750 million to the controlling entities of Bertin, in addition to any balance, in shares issued by JBS, an operation that different from that disclosed to the market, which alerted the controlling structure of JBS. It states that on 12/31/2009, the incorporation of Bertin by JBS took place, whereby Bertin FIP received the shares of JBS in the amount of R$ 8,760,571,216.84 and, subsequently, on 12/24/2009, Bracol Holding assigned 65.8% of the shares of the fund, equivalent to R$ 5,763,580,413.20, to Blessed Holdings, for the miniscule value of US$ 10,000.00, and also subsequently, on 11/11/2010, assigned an additional 19.5% of its stake in the fund to Blessed Holdings, for the sum of R$ 17,000.00, all in secrecy. As a result of the aforementioned operations, the stake of the Batista family in Bertin FIP, through Blessed Holdings, came to be 85.3%, and of Bracol Holding 14.7%, which would represent a substantial increase in the stake of Wesley and Joesley in Bertin FIP, such that the Bertin Group,

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 2**

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

which would be the holder of shares issued by JBS, by FB Participações, in the amount of R$ 8.7 billion, came to hold shares valued at just R$ 1.3 billion. It alleges that the Superior Court of Justice, in analyzing said operation, decided that a deviation of purpose and asset confusion took place, and that Tinto Holding, current name Brascol Holding, offered shares against Blessed Holdings, seeking the declaration of nullity of the assignments of shares of Bertin FIP dated 12/24/2009 and 11/11/2010, under the allegation that it did not acknowledge the validity of the second assignment of shares, which was questioned by the CVM. It states that currently Bertin FIP is called Pinheiros FIP, and that it became a shareholder of J&F Investimentos, which, as with the entire corporate group it composes, is involved in numerous offenses that have generated serious economic effects, which would place the shares of Pinheiro FIP, which should return to the assets of the Bertin Group, at risk of expropriation. It requests approval for the case to be processed in secrecy of justice. It also requests the granting of pre-trial injunctive relief so that the following actions be taken: (i) the immediate freezing of shares equivalent to 23.65% of the share capital of JBS, held by J&F Investimentos, prohibiting their alienation, loan or formalization of encumbrance of any nature; (ii) that the respondents disclose the exercise of any and all actions characteristic of the exercise of political rights inherent to said shares; (iii) that the respondents deposit in court any and all proceeds received from said shares, including but not limited to dividends and interest on equity.

The suit was initially distributed to the 35th Civil Circuit Court of this Central Forum, whereby the lack of jurisdiction of that court was recognized and the proceedings were redistributed to this specialized circuit court (p. 1356).

Based on the specificities of the case, the respondents were given the opportunity to express their views on the request for pre-trial injunctive relief (p. 1362/1363). The petition was also amended.

The plaintiff provided clarifications on the relevance of processing the case in secrecy of justice (p. 1415/1418).

Heber Participações S.A. – in court-supervised reorganization provided a statement (p. 1422/1452). It states that the relationship between the shareholders of Heber eroded following the economic decline of the company, whereby at the start of 2019, the parties entered into a memorandum of understanding by which they agreed that

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

p. 5099

[emblem] **SP**      **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

Berf would be removed from the company after the close of the court-supervised reorganization of the companies comprising the Heber Group, but that, after the document was signed, Berf filed numerous legal actions against Heber and its other shareholders. It alleges that the facts narrated by the plaintiff occurred thirteen years ago, between the end of 2009 and the start of 2010, despite the claimant's allegations that it learned of these circumstances only recently, which would be unlikely. It states that Berf knew the facts disputed herein and that it granted broad discharge with regard to past events in new instruments entered into between the shareholders of Heber, for the purpose of pacifying its relationship. It argues that the corporate position of Berf would not give it the right claimed herein, whereby the decisions of Heber depend on the approval of the shareholders' meeting, at which time the votes of all shareholders are considered, who are holders of the same proportion of share capital. It states that Berf was not a party to the operation and that Tinto Holding, former shareholder of Bertin S.A., which was a legitimate party to file the main suit, already did so, whereby the trial was dissolved based on the occurrence of the agreement. It alleges that the evidence provided in the records is insufficient to demonstrate the likelihood of the right, whereby an evidentiary investigation is necessary to prove the plaintiff's allegations. It states that the operation in question was complex and that it was executed gradually, involving numerous individuals and necessary approvals of shareholders and regulators for a corporate incorporation of this magnitude. It argues the inexistence of a danger of damage or risk to the useful result of the trial, whereby, on the contrary, there would be a danger of reverse damage to the JBS Group, with the freezing of shares valued at R$ 21,500,000,000.00, whereby said group closed its fiscal year 2021 with net revenue of R$ 350 billion, whereby there is no risk of "expropriation" of the shares mentioned in the petition. It requests the rejection of the pre-trial injunctive relief and the sentencing of the plaintiff to the payment of the fine for bad faith litigation.

Jose Batista Junior provided a statement (p. 1529/1530). He states that he was a member of the board of directors of JBS S.A. and of J&F Investimentos S.A. at the time of the narrated facts, but that he completely sold his equity stake in 2013. He requests the recognition of his lack of standing to be sued and the rejection of the pre-trial injunctive relief.

J&F Investimentos S.A., J&F Participações S.A., Joesley Mendonca Batista and Wesley Mendonca Batista argued for the rejection of the pre-trial injunctive relief (p. 1546/1565). They allege the inexistence of danger of damage or risk to the useful result of the trial, taking into account that the facts narrated in the complaint occurred in 2009 and 2010, as well as that the JBS Group had turnover of R$ 350.7 billion and net profit of R$ 20.5 billion in

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 4**

p. 5100

[emblem] **SP**　　**COURT OF JUSTICE OF THE STATE OF SAO PAULO**
　　　　　　　DISTRICT OF SAO PAULO
　　　　　　　CENTRAL CIVIL FORUM
　　　　　　　2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
　　　　　　　PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

2021, whereby there is no alleged financial difficulty. Also, the leniency agreement entered into by J&F Investimentos provides for the payment of R$ 10.3 billion in 25 years, whereby there is no risk of insolvency, whereby any fine that may be imposed on JBS by regulators would not have a value that could justify the granting of the drastic measure requested. They allege the existence of a danger of reverse damage, taking into account the claimant's request to freeze 23.65% of the shares of JBS S.A., an open-end company listed on B3, which would cause losses to its shareholders and an impact on the stock exchange. They state that Berf is "captained" by Mario Henrique Frare Bertin, who since 2007 has held one of the seats on the board of directors of Heber, such that the claimant always had knowledge of the operation narrated in the petition. They state that the plaintiff does not have legal standing, in the capacity of shareholder, to request the invalidity of transactions entered into by companies in which it had an indirect stake, whereby all the companies that participated in the legal transactions whose effects the plaintiff requests to be suspended in judicial relief are not included as defendants. They also allege the existence of res judicata, which would prevent the plaintiff's request to dismantle the transaction entered into between Tinto Holding Ltda and Blessed Holdings LLC, taking into account the judgment of approval of the agreement proffered in the trial mentioned by the claimant, whereby there would also be a lapse and statute of limitations of the claimant's request, which must be returned to the controlling entities and directors of the company of which it is shareholder. They request the rejection of the pre-trial injunctive relief.

　　　Jose Batista Sobrinho provided a statement, alleging his lack of standing to be sued, to the extent that he had no involve in the events that led to the filing of the suit, nor is he a shareholder of the respondent companies that comprise the JBS Group. He requests the rejection of the pre-trial injunctive relief and the recognition of his lack of standing to be sued.

　　　JBS S.A. argued for the rejection of the pre-trial injunctive relief (p. 1685/1745). It states that Berf had knowledge of the operation entered into between Bertin and JBS, considering that the shareholder chairman of Berf still today holds one of the seats on the board of directors of Heber, a family holding company of companies of the Bertin family. It alleges Berf's lack of standing to file suit, as indirect minority shareholder of Tinto Holding, whose bankruptcy was decree in 2018, whereby the party authorized to request the measure would be the bankruptcy estate of Tinto Holding, whereby there would also be res judicata in relation to the request for annulment of the transaction entered into with Blessed Holdings, taking into account the execution of the agreement between those parties, approved in court in 2013. It states that JBS S.A. would not be authorized to appear as a defendant, to the extent that

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 5**

p. 5101

[emblem] **SP**   **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

it is not directly tied to the operation, whereby the allegations of fraud mentioned in the petition are the subject of procedural motion no. 1022339-92.2021.8.26.0100, tied to the court-supervised reorganization of Heber. It argues the statute of limitations of the plaintiff's claim, taking into account the passage of 13 years since the execution of the narrated transactions, as well as that the claimant's conduct represents *venire contra factum proprium*, either because its knowledge of the operation would be undeniable or because it voted for the reelection of the directors of Heber, and approved its 2009 and 2010 annual reports. It states that Blessed Holdings entered into a contract with a party that had powers of representation and that there was no irregularity in said instrument. It alleges the inexistence of danger of damage or risk to the useful result of the trial, considering the inexistence of the risk of insolvency of JBS, and alleges the existence of the danger of reverse damage to the JBS Group and also to its shareholders. They request the rejection of the pre-trial injunctive relief.

Pinheiros Fundo de Investimento em Participações Multiestrategia and Blessed Holdings LLC provided a statement (p. 1746/1770). They allege the lack of standing to file suit by the plaintiff, an indirect minority shareholder, who would not be authorized to dispute contracts entered into by the company in which it had only an indirect stake, whereby its claim should be aimed at Heber or Tinto. They allege the occurrence of lapse and statute of limitations of the claimant's request, as well as the existence of res judicata as a result of the judicial approval of the agreement entered into between Heber and Tinto, whereby the evidence provided in the records would not be sufficient to prove the likelihood of the right alleged by the claimant. It states that the facts narrated in the petition occurred over 10 years ago and are public and well-known, including taking into account that the assignment instruments mentioned in the complaint are or were the subject of verification in various relevant forums, administrative, judicial and arbitral. They allege that the disputed operation was well-received in the market and that the sanctioning administrative procedure of the CVM was not judged by the board of the regulator, whereby even if there was a potential conviction of the JBS Group, there is no danger of insolvency, considering its operating results, while on the other hand, there would be a danger of reverse damage to the companies of the JBS Group and their shareholders. They request the preliminary recognition of the lack of standing to file suit and lack of standing to be sued of the parties, of the statute of limitations and lapse, of the res judicata, or of the "absence of any basis of merit," or, subsidiarily, the rejection of the injunctive relief.

JBS S.A. filed documents (p. 2099/4098).

Injunctive relief rejected on p. 4202/4217.

Amendment to the petition on p. 4254/4268, in which the plaintiff alleges that the operation executed by

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 6**

p. 5102

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

the respondents caused losses to the plaintiff, especially since its assets were "*transacted for a price far lower than their actual value*," whereby there must be the declaration of nullity of the operation due to fraud and the consequent restitution of shares to the Bertin Group. It states that the Bertin Group had part of its business incorporated by the JBS Group, but that the operation was different from that disclosed to the market and the shareholders, since part of the assets received by the Bertin Group in the operation were transferred for values infinitely inferior to their actual value. It requests the nullity of the Special Instruments of Assignment and Transfer of Shares and Other Covenants through which Bracol Holding assigned shares of Bertin FIP to Blessed Holdings, the nullity of "*all legal acts interdependent on the aforementioned contractual Instruments that resulted in the complete emptying of the equity position of the Bertin Group in the JBS Group*," sentencing of the respondents to the obligation to take the "*necessary measures so that, de facto and de jure, the equity position of the Bertin Group reflects that which was disclosed to the regulators, to the market and to the investors, as well as approved by the decision-making bodies of the companies involved*" and the sentencing of the respondents to compensate the losses resulting from the "*lack of distribution of dividends, interest on equity and all other premiums and bonuses proportional to the equity stake assigned through acts that are clearly legally null and void*," to be determined in settlement of judgment.

Jose Batista Junior responds on p. 4284/4288, in which he alleges, firstly, his lack of legal standing to be sued, as he is not part of the legal transactions in question, nor was he the legal representative of the companies involved. He requests the dissolution of the suit due to the lack of standing.

The respondent JBS S/A responds on p. 4289/4355, in which it alleges, firstly, the lack of standing to file suit, since the plaintiff, as indirect minority shareholder of Bracol, is not authorized to claim the annulment of a legal transaction entered into between this company and a third party. Also firstly, it alleges the occurrence of res judicata, since Bracol filed a suit for annulment of the contract entered into with Blessed Holdings and, in the context of this suit, it entered into an agreement by which it waived the request to challenge the validity of the contract, as the agreement was approved by judicial decision rendered in court. It alleges that the respondent JBS lacks the legal standing to be sued, since all legal transactions occurred in the "*corporate layers above the Plaintiff JBS, and involve legal entities that are in these layers, whereby the initial petition contains no allegation or accusation against the Defendant JBS, as such.*" It alleges the occurrence of lis pendens, since the allegations of fraud in the

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 7**

p. 5103

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

transaction in question are already the subject of investigation in procedural motion no. 1022339-92.2021.8.26.0100 of the court-supervised reorganization of Heber Participações. It alleges the ineptitude of the initial petition, as there is no description of the acts committed by the respondent JBS that justify its legal standing to be sued. It alleges the statute of limitations of the plaintiff's claim, since the legal transactions in question were entered into in 2009. It states that the plaintiff cannot claim to annul a legal transaction before annulling the approval of the annual reports of the directors and that, in this sense, the two-year term defined in Art. 286 of the Corporations Law already expired. It states that the claimant had full knowledge of the operation by virtue of the "dissemination of news and lawsuits" and because the shareholder-chairman of the [sic] (Mr. Mario Henrique Bertin) has held, since 2007, one of the seats on the Board of Directors of HEBER Participações S.A. It requests the granting of the preliminary pleas and, on the merits, the inadmissibility of the suit.

The respondents J&F INVESTIMENTOS S.A., J&F PARTICIPAÇÕES S.A., JOESLEY MENDONCA BATISTA and WESLEY MENDONCA BATISTA respond on p. 4356/4381, in which they allege, firstly, the lack of document essential for the filing of the suit, since the plaintiff did not prove that it is an indirect shareholder of the Bertin Group. It alleges lack of legal standing to file suit, since the plaintiff, as indirect shareholder, is not authorized to request the nullity of legal transactions executed by the company. It alleges lack of standing to act, since the plaintiff is not authorized to request the invalidation of the actions taken by the company without requesting the nullity of the meeting decisions that approved those actions. It alleges lapse for annulment of acts, since the term defined in the Corporations Law already expired. It also states that there is res judicata, since Bracol already filed suit against Blessed Holdings LLC to annul the same legal transactions that are the subject of this suit. It alleges the lack of legal standing to be sued, since the respondents are not parties to the legal transactions whose nullity is requested to be decreed. It states that there is an absence of necessary passive joinder, since the plaintiff claims the nullity of legal transactions without the other parties to the transactions appearing as defendants. It alleges the ineptitude of the petition, since the request contained in paragraph "C" of p. 4265 is generic and does not specify which acts should be annulled. On the merits, they state that there are no flaws in the corporate operation. They request the acceptance of the preliminary pleas and, on the merits, the inadmissibility of the suit.

The respondents HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN and SILMAR ROBERTO BERTIN respond on p. 4382/4450, in which they allege, firstly, the ineptitude of the initial petition, since the requests presented are generic and indeterminate. They allege the lack of legal standing to file suit, since the plaintiff seeks to annul a legal transaction to which it was not a party. They state that Heber and the natural persons lack legal standing to be sued, since these respondents are not parties to the legal transactions disputed herein.

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 8**

p. 5104

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

They dispute the value of the case, which it alleges should be set at a value not less than R$ 100,000,000.00. They state that the ten-year statute of limitations to request the annulment of the legal transactions has elapsed. On the merits, they state that the operation was validly executed, without any irregularity. They request the acceptance of the preliminary pleas and, on the merits, the inadmissibility of the suit.

The respondents PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES MULTIESTRATEGIA and BLESSED HOLDINGS LLC respond on p. 4494/4514, in which they allege, firstly, the legal standing to file suit, since the plaintiff is not authorized to dispute contracts entered into by the company. They allege the statute of limitations and lapse, since the events occurred more than 10 years ago. They state that there is res judicata, since the decision that approved the agreement between BRACOL/TINTO and BLESSED in an annulment action was already rendered in court. They dispute the value of the case. On the merits, they state that the operation was executed without any irregularity. They request the acceptance of the preliminary pleas and, on the merits, the inadmissibility of the suit.

Response on p. 4525/4581.

Urged to provide a statement on the evidence that they intend to produce and interest in conciliation (p. 4854), the respondent JBS S/A expressed its lack of interest in conciliation and interest in the production of documentary evidence (p. 4857/4870). The respondents HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN and SILMAR ROBERTO BERTIN and PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES MULTIESTRATEGIA and BLESSED HOLDINGS LLC stated that they have no interest in the production of other evidence and they pushed for the early judgment of the suit (p. 4915/4920 and p. 4972/4987).

The plaintiff pushed for the production of additional expert, oral and documentary evidence (p. 4962/4971 and 4989/4992), having also stated the rejection of the settlement of Wesley, Joesley and Gilberto de Souza Biojone Filho in the CVM (p. 5067/5071). The respondent JBS S/A requested the rejection of the request for adjustment of specification of evidence by the plaintiff (p. 5042/5045).

J&F INVESTIMENTOS S.A., J&F PARTICIPAÇÕES S.A., JOESLEY MENDONCA BATISTA and WESLEY MENDONCA BATISTA provided a statement on p. 4921/4930.

HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN and SILMAR ROBERTO BERTIN provided a statement on p. 5046/5056.

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

**1055320-43.2022.8.26.0100 - page 9**

[emblem] **SP**    **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

JBS S/A provided a statement on p. 5089/5091.

**This is the report. I will justify and decide.**

The plaintiff requests, with this suit, the declaration of nullity of the Special Instruments of Assignment and Transfer of Shares and Other Covenants entered into on 12/24/2009 and 11/11/2010, as well as compensation for damages resulting therefrom. However, this case was distributed on 05/31/2022, that is, approximately 13 (thirteen) years after the signing of these agreements.

In accordance with subsection II of Art. 178 of the Civil Code, the deadline to request the annulment of the legal transaction, in case of error, willful misconduct or fraud against creditors, is 4 (four) years from the day on which the legal transaction was executed.

Considering that the contracts disputed herein were entered into on 12/24/2009 and 11/11/2010, as well as the fact that this suit was filed on 05/31/2022, the recognition of lapse of the right is de rigueur, given that approximately 13 (thirteen) years have elapsed from the signing of the instruments.

To attempt to dispel the allegation of lapse of its right, the plaintiff states that there is no argument to be made for statute of limitations or lapse, since the disputed transactions are null and, therefore, would not recover due to the passage of time, under the terms of Art. 169 of the Civil Code. However, the argument is unfounded.

Despite asserting the alleged nullity of the agreements, the plaintiff does not specify the hypothesis of nullity impacting the case, justifying its allegations in generic terms. In its amendment, there is no precise indication of the nullity attributed to the disputed corporate operation, but only generic mentions of violations of articles of the Civil Code:

"the entire operation carried out by the Defendants caused losses to the Plaintiff, especially because its **assets were transacted for a price far lower than their actual value**, thus being in accordance with the **declaration of nullity of the operation, based on Articles 104, subsection II, 166, 167, 168 and 169 of the Civil Code**" (p. 4255)."

There is no indication of what hypothesis of nullity defined in Art. 166 would impact this case. Therefore, I find that the plaintiff seeks, with this generic allegation, to generically and indiscriminately justify its argument only to refute the recognition of the lapse of its right.

In addition, the central point of this dispute lies in the above allegation that the operation carried out by the respondents occurred because the assets of the company were "*transacted for a price far lower than their actual*

p. 5106

[emblem] **SP**   **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

*value.*"

However, even the allegation of a transaction for a price lower than what was owed is not a basis for nullity of the legal transaction, under the terms of Art. 166 of the Civil Code. Thus, there is no basis for the allegation of nullity presented by the claimant, whereby the recognition of the lapse of its right is de rigueur.

In addition, Art. 286 of the Corporations Law provides that the suit to annul the decisions taken in a general shareholders' meeting violating the law or articles of association, or tainted by error, willful misconduct, fraud or simulation, has a statute of limitations of 2 (two) years from the decision.

Subsection II, "b" of Art. 287 of the same legal statute also establishes that the suit against the shareholders and directors for the latter to provide civil compensation for negligent or fraudulent acts, in case of violation of the law, articles of association or group convention, has a statute of limitations of 3 (three) years from the date of publication of the minutes that approve the balance sheet related to the fiscal year in which the violation occurred.

In the present case, the operation was approved at the extraordinary general meetings of JBS S/A held on 12/29/2009 and 12/21/2009 (p. 4459/4473 and 4474/4480).

Again, considering the filing of this suit in 2022, the recognition of the statute of limitations of the plaintiff's claim disputing the operation approved therein is de rigueur, given that approximately 13 (thirteen) years have elapsed from the holding of said meetings.

In summary, from any angle by which the plaintiff's claim is examined, the only solution is to recognize the lapse of the plaintiff's right or, otherwise, the consummation of the statute of limitations.

Thus, based on Art. 487, subsection II of the Code of Civil Procedure, I recognize the occurrence of the lapse; or, otherwise, of the statute of limitations.

Given the rejection of the suit, I sentence the plaintiff to pay the procedural costs and expenses, in addition to attorneys' fees which, under the terms of Art. 85, section 2 of the Code of Civil Procedure, I set at 15% of the value given to the case; this value shall be divided between all the firms representing the interests of the respondents in the case.

In relation to the procedural costs and expenses, there shall be the application of monetary correction based on the practical table indices of the Honorable Court of Justice, starting from each acceleration, as well as default interest of 1% per month, starting from the final issuance of the judgment in court.

[right margin:] This document is a copy of the original, digitally signed by GUILHERME DE PAULA NASCENTE NUNES, released in the records on 04/05/2023 at 7:02 p.m. To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrir/ConferenciaDocumento.do, enter trial 1055320-43.2022.8.26.0100 and code F3F90D5.

p. 5107

[emblem] **SP**   **COURT OF JUSTICE OF THE STATE OF SAO PAULO**
DISTRICT OF SAO PAULO
CENTRAL CIVIL FORUM
2ND CIRCUIT COURT FOR CORPORATE MATTERS AND ARBITRATION CONFLICTS
PRACA DOUTOR JOAO MENDES, S/N, Sao Paulo - SP - Postal Code 01501-000

    In relation to the attorneys' fees, there shall be the application of monetary correction based on the practical table indices of the Honorable Court of Justice, starting from the filing of the suit, as well as default interest of 1% per month, starting from the final issuance of the judgment in court.

    <u>Having certified the final issuance of the judgment in court, the proceedings are archived and cleared in the system.</u>

    Any request for the start of the settlement phase, in relation to the illiquid part of the sentencing, must be filed through an authenticated petition specified as settlement by arbitration (class 151), when involving registration by the attorney, in order for the regular processing by the SAJPG5-JM system to be observed.

    After the start of the settlement phase of the judgment, at the time of registration of future petitions, the attorneys are expected to use the procedural motion number created for the compliance phase of the judgment or for the settlement of the judgment, avoiding their registration as new motions which would harm the procedural celerity.

    P.R.I.

    Sao Paulo, April 5, 2023.

---

**DOCUMENT DIGITALLY SIGNED UNDER THE TERMS OF LAW 11.419/2006, AS PER THE PRINTING IN THE RIGHT MARGIN**

---



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**Berf lawsuit - judgment SOL**" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English.

Dan McCourt

Sworn to before me this
July 18, 2023

Signature, Notary Public



Stamp, Notary Public

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

---

## SENTENÇA

| | |
|---|---|
| Processo nº: | **1055320-43.2022.8.26.0100** |
| Classe - Assunto | **Tutela Cautelar Antecedente - Mercado de Capitais** |
| Requerente: | **BERF PARTICIPACOES S.A.** |
| Requerido: | **José Batista Júnior e outros** |

Juiz(a) de Direito: Dr(a). **GUILHERME DE PAULA NASCENTE NUNES**

Vistos.

**BERF PARTICIPAÇÕES S.A.** propôs tutela cautelar antecedente contra **SILMAR ROBERTO BERTIN, REINALDO BERTIN, NATALINO BERTIN, FERNANDO ANTONIO BERTIN, WESLEY MENDONÇA BATISTA, JOESLEY MENDONÇA BATISTA, JOSÉ BATISTA SOBRINHO, JOSÉ BATISTA JÚNIOR, HEBER PARTICIPAÇÕES S.A., JBS S.A., J&F PARTICIPAÇÕES S.A., J&F INVESTIMENTOS S.A., BERTIN FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES** e **BLESSED HOLDINGS LLC.** Narra que é sócia minoritária do Grupo Bertin, composto de 90 sociedades empresárias, controladas especialmente por meio da Heber, da qual são sócias a autora Berf, além da Reivo Participações S.A., Viamar Participações S.A., Juferb Participações S.A., NTW Participações S.A. e Horlof Participações S.A. O Grupo Bertin seria controlado pelos irmãos Reinaldo, Natalino, Fernando e Silmar, ora requeridos, que teriam enveredado a administração do grupo para caminhos que não foram assentidos pela autora, incluindo com a prática de ilícitos que geraram consequências negativas para o conglomerado, o que levou a parte das sociedades empresárias do grupo a requererem o deferimento de recuperação judicial. Relata que em 2009 a participação do Grupo Bertin na Bertin S.A. foi alienada para a JBS S.A., mas que, recentemente, teriam vindo a tona documentos que indicam que a incorporação da Bertin pela JBS teve inúmeras irregularidades, sendo atualmente investigadas pela Receita Federal, pelo Tribunal de Contas da União, pelo Poder Judiciário e pela CVM. Afirma que em 16/09/2009, 22/10/2009 e 14/12/2009 a JBS divulgou fatos relevantes informando que havia celebrado acordo de associação que previa transações para viabilizar a unificação de suas operações com as da Bertin S.A., da qual, à época, era sócia a Heber, da qual a Berf é titular de 1/6 do capital social. A Bracol Holding, acionista controladora da Bertin à época teria concordado em transferir para a FB Participações S.A. 73,1% do capital da Bertin, que se tornaria subsidiária integral da JBS, cujo capital social também seria 50,11% de titularidade da FB Participações S.A. Em 26/11/2009, a

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

fls. 5097

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

Bracol Holding teria constituído o fundo de investimentos denominado Bertin FIP, sendo seu único cotista, para transferir ao fundo sua participação na Bertin, supostamente para facilitar os trâmites da operação noticiada. Por meio da operação a ser celebrada entre Bertin e JBS, esta incorporaria todas as ações ordinárias da Bertin, que tinham valor econômico de R$ 13.562.328.000,00, enquanto os acionistas da Bertin receberiam 32,45518835 ações ordinárias da JBS por cada ação ordinária da Bertin. Em 29/12/2009  foi aprovada a incorporação da Bertin pela JBS em assembleia geral extraordinária da JBS. Afirma, no entanto, que teria tomado conhecimento, por meio de documentos produzidos pela CVM e colacionados em processo de "discovery" nos Estados Unidos, proposto por fundo de investimentos acionista da JBS, de informações de que negócio envolveu operações ocultas e fraudulentas que trouxeram prejuízos aos sócios do Grupo Bertin, notadamente a requerente, que jamais participou da gestão do grupo empresarial. Alega que os documentos demonstrariam a transferência posterior de ativos do Grupo Bertin a pessoas jurídicas sob controle dos antigos controladores da JBS, a preço irrisório, de forma que os requeridos Wesley, Silmar, Natalino e Joeslay foram acusados de terem realizado operações fraudulentas no âmbito da incorporação da Bertin pela JBS. Aduz que os correqueridos Silmar e Natalino apresentaram proposta de celebração de termo de compromisso para encerrar o procedimento administrativo sancionador, mediante pagamento de valores, mas que o requerimento foi rejeitado pelo Comitê de Termo de Compromisso e pelo corpo de diretores da CVM. Assevera que em 16/12/2009, no curso do processo de incorporação da Bertin pela JBS, os requeridos teriam constituído a Blessed Holdings, nos Estados Unidos, que teria sido adquirida pela Blessed Holdings Cayman, com sede nas Ilhas Cayman, que foi adquirida pela família Batista em 31/10/2016,   Sustenta que foram celebrados contratos de gaveta entre os representantes da JBS e da Bertin, pelo qual esta se comprometeu a transferir a totalidade da participação societária à JBS, sendo que em contrapartida, a JBS pagaria R$ 750 milhões aos controladores da Bertin, além de eventual saldo, em ações de emissão da JBS, operação diversa daquela informada ao mercado, que alterada a estrutura de controle da JBS.   Afirma que em 31/12/2009 ocorreu a incorporação da Bertin pela JBS, tendo o Bertin FIP recebido as ações da JBS no valor de R$ 8.760.571.216,84, e, na sequência, em 24/12/2009, a Bracol Holding cedeu 65,8% das cotas do fundo, que equivaleria a R$ 5.763.580.413,20, à Blessed Holdings, pelo valor irrisório de US$ 10.000,00, e, ainda, posteriormente, em 11/11/2010, teria cedido mais 19,5% de sua participação no fundo à Blessed Holdings, pelo valor de R$ 17.000,00, tudo em sigilo. Como decorrência das referidas operações, a participação da família Batista no Bertin FIP, por meio da Blessed Holdings passou a ser de 85,3%, e da Bracol Holding de 14,7%, o que representaria elevação substancial da participação de Wesley e Joesley no Bertin FIP, de forma que o Grupo

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 as 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**1055320-43.2022.8.26.0100 - lauda 2**

fls. 5098

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

Bertin, que seria titular de ações de emissão da JBS, pela FB Participações, no valor de R$ 8,7 bilhões, passou a ser titular de ações avaliadas em apenas R$ 1,3 bilhão. Aduz que o Superior Tribunal de Justiça, ao analisar a referida operação, decidiu que teria ocorrido desvio de finalidade e confusão patrimonial, e que a Tinto Holding, atual denominação da Brascol Holding, teria proposto ações contra a Blessed Holdings buscando a declaração de nulidade das cessões de quotas do Bertin FIP datadas de 24/12/2009 e 11/11/2010, sob a alegação de que não reconhecia a validade da segunda cessão de quotas, que teria sido fraudulenta, inclusive em razão do preço ínfimo envolvido na negociação. No entanto, em 18/11/2013, as partes requereram a extinção das ações, mediante homologação de acordo, pelo qual a Tinto Holdings renunciou aos direitos em que se fundavam as ações, sendo que nunca foi apresentado à requerente o teor do acordo celebrado entre as partes, que foi questionado pela CVM. Assevera que atualmente a Bertin FIP é denominada Pinheiros FIP, e que teria se tornado sócia da J&F Investimentos, que assim como todo o grupo empresarial que compõe, estaria envolvida em inúmeros ilícitos que tem gerado sérios efeitos econômicos, o que colocaria as ações da Pinheiro FIP, que devem retornar ao patrimônio do Grupo Bertin, sob risco de expropriação. Requer seja deferida a tramitação do feito em segredo de justiça. Ainda, requer o deferimento de tutela cautelar antecedente para que seja determinado: (i) o bloqueio imediato de ações equivalentes a 23,65% do capital social da JBS, sob titularidade da J&F Investimentos, vedando-se sua alienação, empréstimo ou formalização de gravame de qualquer natureza; (ii) que os requeridos informem o exercício de todo e qualquer ato característico de exercício de direito político inerente às referidas ações; (iii) que os requeridos depositem em juízo todo e qualquer fruto recebido por essas ações, incluindo, mas não se limitando a dividendos e juros sobre o capital próprio.

Inicialmente distribuída a ação à 35ª Vara Cível deste Foro Central, foi reconhecida a incompetência daquele juízo e redistribuídos os autos a esta vara especializada (fl. 1356).

Diante das especificidades do caso, foi deferida oportunidade aos requeridos para que se manifestassem sobre o pedido de tutela cautelar antecedente (fls. 1362/1363). Ainda, determinada a emenda à inicial.

Manifestou-se a autora esclarecendo sobre a pertinência do trâmite da ação em segredo de justiça (fls. 1415/1418).

Manifestou-se a Heber Participações S.A. − em recuperação judicial (fls. 1422/1452). Afirma que a relação entre os acionistas da Heber teria se desgastado após o declínio econômico da sociedade, motivo pelo qual, no início de 2019, as partes celebraram memorando de

**1055320-43.2022.8.26.0100 - lauda 3**

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

entendimentos pelo qual pactuaram que a Berf se retirará da sociedade após o encerramento da recuperação judicial das sociedades que integram o Grupo Heber, mas que, após a celebração do documento, a Berf teria proposto inúmeras ações judiciais contra a Heber e seus outros acionistas. Alega que os fatos narrados pela autora ocorreram há treze anos, entre o fim do ano de 2009 e o começo de 2010, apesar das alegações da requerente de que teria tomado conhecimento de tais circunstâncias apenas recentemente, o que não seria verossímil. Aduz que a Berf conhecia os fatos ora impugnados e que teria outorgado ampla quitação quanto a fatos do passado em novos instrumentos celebrados entre os sócios da Heber, com o intuito de apaziguar sua relação. Sustenta que a posição societária da Berf não lhe daria o direito ora pleiteado, sendo que as decisões da Heber dependem de aprovação em assembleia, ocasião na qual são considerados os votos de todos os acionistas, que são titulares da mesma proporção do capital social. Afirma que a Berf não foi parte na operação e que a Tinto Holding, antiga acionista da Bertin S.A., que era parte legítima para propor a ação principal, já o fez, sendo que o processo foi extinto em razão da superveniência de acordo. Alega que as provas juntadas aos autos são insuficientes para demonstrar a probabilidade do direito, sendo necessária a instrução probatória para comprovação das alegações da parte autora. Aduz que a operação discutida foi complexa e que foi realizada aos poucos, envolvendo inúmeros indivíduos e aprovações necessárias de acionistas e órgãos reguladores para incorporação societária dessa magnitude. Sustenta a inexistência de perigo de dano ou risco ao resultado útil do processo, sendo que, ao contrário, existiria perigo de dano reverso ao Grupo JBS, com o bloqueio de ações avaliadas em R$ 21.500.000.000,00, sendo que o referido grupo teria encerrado seu ano de 2021 com a receita líquida de mais de R$ 350 bilhões, inexistindo risco de "expropriação" das ações mencionadas na inicial. Requer o indeferimento da tutela cautelar antecedente e a condenação da autora ao pagamento de multa por litigância de má-fé.

Manifestou-se José Batista Júnior (fls. 1529/1530). Afirma que era membro do conselho de administração da JBS S.A. e da J&F Investimentos S.A. à época dos fatos narrados, mas que alienou completamente sua participação acionária em 2013. Requer o reconhecimento de sua ilegitimidade passiva e o indeferimento da tutela cautelar antecipada.

Manifestaram-se pelo indeferimento da tutela cautelar antecedente J&F Investimentos S.A., J&F Participações S.A., Joesley Mendonça Batista e Wesley Mendonça Batista (fls. 1546/1565). Afirmam a inexistência de perigo de dano ou risco ao resultado útil do processo, tendo em vista que os fatos narrados na inicial ocorreram entre 2009 e 2010, bem como que o grupo JBS teve faturamento de R$ 350,7 bilhões e lucro líquido de R$ 20,5 bilhões em 2021,

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 as 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

fls. 5100

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

inexistindo a alegada dificuldade financeira. Ainda, o acordo de leniência celebrado pela J&F Investiment prevê o pagamento de R$ 10,3 bilhões em 25 anos, inexistindo qualquer risco de insolvência, sendo que eventual multa que possa ser imposta à JBS por órgãos reguladores não teria valor que pudesse justificar o deferimento da drástica medida pleiteada. Alegam a existência de perigo de dano reverso, tendo em vista a pretensão da requerente de bloquear 23,65% das ações da JBS S.A., companhia de capital aberto listada na B3, o que traria prejuízos a seus acionistas e impacto na bolsa de valores. Aduzem que a Berf é "capitaneada" por Mário Henrique Frare Bertin, que desde 2007 ocupa um dos assentos do conselho de administração da Heber, de forma que a requerente semper teve conhecimento sobre a operação narrada na inicial. Asseveram que a autora não tem legitimidade ativa para, na condição de acionista, requerer a invalidade de negócios celebrados por companhias em que teria participação indireta, sendo que não foram incluídas no polo passivo todas as sociedades empresárias que participaram dos negócios jurídicos cujos efeitos pretende a autora sejam suspensos em tutela cautelar. Ainda, afirmam a existência de coisa julgada que impediria a pretensão da autora de desconstituir o negócio celebrado entre a Tinto Holding Ltda e a Blessed Holdings LLC, tendo em vista a sentença homologatória de acordo proferida no processo mencionado pela parte requerente, sendo que, ainda, teria havido decadência e prescrição da pretensão da parte requerente, que deveria ser voltada aos controladores e administradores da companhia da qual é acionista. Requerem o indeferimento da tutela cautelar antecedente.

José Batista Sobrinho manifestou-se alegando sua ilegitimidade passiva, na medida em que não teria qualquer envolvimento com os fatos que ensejaram a propositura da demanda, nem seria mais acionista das sociedades requeridas que compõem o Grupo JBS. Requer o indeferimento da tutela cautelar antecedente e o reconhecimento de sua ilegitimidade passiva.

A JBS S.A. manifestou-se pelo indeferimento da tutela cautelar antecedente (fls. 1685/1745). Afirma que a Berf tinha conhecimento da operação celebrada entre a Bertin e a JBS, considerando-se que o acionista presidente da Berf ocupa até hoje um dos assentos do conselho de administração da Heber, holding familiar titular das sociedades empresárias da família Bertin. Alega a ilegitimidade ativa da Berf, na qualidade de acionista minoritária indireta da Tinto Holding, cuja falência foi decretada em 2018, sendo que a parte legítima para pleitear a medida seria a Massa Falida da Tinto Holding, sendo que, ainda, existiria coisa julgada em relação ao pleito anulatório do negócio celebrado com a Blessed Holdings, tendo em vista a celebração de acordo entre aquelas partes, homologado judicialmente em 2013. Aduz que a JBS S.A. seria ilegítima para figurar no polo passivo, na medida em que não estaria diretamente ligada à

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

operação, sendo que as alegações de fraude narradas na inicial são objeto de incidente processual n. 1022339-92.2021.8.26.0100, vinculado à recuperação judicial da Heber. Sustenta a prescrição da pretensão da parte autora, tendo em vista o decurso de 13 anos desde a realização dos negócios narrados, bem como que a conduta da requerente representa *venire contra factum proprium,* seja porque seria inegável seu conhecimento sobre a operação, seja porque votou pela recondução dos administradores da Heber, e aprovou suas contas de 2009 e 2010. Afirma que a Blessed Holdings celebrou contrato com quem tinha poderes de representação e que não houve qualquer irregularidade no instrumento celebrado. Alega a inexistência de perigo de dano ou risco ao resultado útil do processo, considerando-se a inexistência de risco de insolvência da JBS, e aduz a existência de perigo de dano reverso ao Grupo JBS e também aos seus acionistas. Requerem o indeferimento da tutela cautelar antecedente.

Manifestaram-se a Pinheiros Fundo de Investimento em Participações Multiestratégia e a Blessed Holdings LLC (fls. 1746/1770). Afirmam a ilegitimidade ativa da autora, acionista minoritária indireta, que não teria legitimidade para questionar contratos celebrados pela companhia em que teria apenas participação indireta, sendo que seu pleito deveria voltar-se à Heber ou à Tinto. Alegam a ocorrência de decadência e prescrição da pretensão da requerente, bem como a existência de coisa julgada em razão da homologação judicial do acordo celebrado entre Heber e Tinto, sendo que as provas juntadas aos autos não seriam suficientes para comprovar a probabilidade do direito alegado pela requerente. Assevera que os fatos narrados na inicial teriam ocorrido há mais de 10 anos e seriam público e notórios, inclusive tendo em vista que os instrumentos de cessão mencionados na exordial são ou foram objeto de apuração em diversos foros competentes, administrativo, judicial e arbitral. Aduzem que a operação impugnada foi bem recebida no mercado e que o procedimento administrativo sancionador da CVM não foi julgado pelo colegiado do órgão regulador, sendo que, ainda que houvesse eventual condenação do Grupo JBS, não há qualquer perigo de insolvência, considerando-se seus resultados operacionais, ao passo que, por outro lado, haveria perigo de dano reverso às sociedades do Grupo JBS e seus acionistas. Requerem o reconhecimento liminar da ilegitimidade ativa e passiva das partes, da prescrição e decadência, a coisa julgada, ou a "ausência de qualquer fundamento de mérito", ou, subsidiariamente, o indeferimento da tutela cautelar.

A JBS S.A. juntou documentos (fls. 2099/4098).

Tutela cautelar indeferida às fls. 4202/4217.

Aditamento à inicial às fls. 4254/4268, no qual a autora alega que a operação realizada

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

pelos requeridos causou prejuízos à autora, especialmente por parte de seu patrimônio ter sido "*transacionado por preço muito inferior ao seu valor real*", motivo pelo qual deve haver a declaração de nulidade da operação por ocorrência de fraude e a consequente restituição das ações ao Grupo Bertin. Narra que o Grupo Bertin teve parte de seus negócios incorporado pelo Grupo JBS, mas que a operação teria sido diversa daquela divulgada ao mercado e aos acionistas, pois parte dos ativos recebidos pelo Grupo Bertin na operação teriam sido transferidos por valores infinitamente inferiores ao seu valor real. Requer a nulidade dos Instrumentos Particulares de Cessão e Transferência de Quotas e Outras Avenças por meio dos quais a Bracol Holding cedeu cotas do Bertin FIP para a Blessed Holdings, a nulidade de "*todos os atos jurídicos interdependentes aos Instrumentos contratuais supra que tenham acarretado no completo esvaziamento da posição acionária do Grupo Bertin no Grupo JBS*", condenação dos requeridos na obrigação de fazer consistente nas "*medidas necessárias para que, de fato de e de direito, a posição acionária do Grupo Bertin reflita àquilo que foi informado aos órgãos reguladores, ao mercado e aos investidores, assim como aprovado pelos órgãos deliberativos das companhias envolvidas*" e a condenação dos requeridos a ressarcirem os prejuízos decorrentes da "*privação da distribuição de dividendos, juros sobre capital próprio e demais prêmios e bonificações proporcionais à participação acionária cedida por atos notoriamente nulos de pleno direito*", a ser apurado em liquidação de sentença.

Contestação do requerido José Batista Júnior às fls. 4284/4288, na qual alega, em preliminar, sua ilegitimidade passiva, pois não é parte nos negócios jurídicos discorridos, nem era ou representante legal das sociedades envolvidas. Requer a extinção da ação por ausência de legitimidade.

Contestação da requerida JBS S/A às fls. 4289/4355, na qual alega, em preliminar, ilegitimidade ativa, pois a autora, na qualidade de acionista minoritária indireta da Bracol, não tem legitimidade para pleitear a anulação de um negócio jurídico celebrado entre essa sociedade e um terceiro. Ainda em preliminar, aduz a ocorrência de coisa julgada, pois a Bracol ajuizou ação anulatória do contrato celebrado com a Blessed Holdings e, no âmbito dessa ação, celebrou acordo por meio do qual renunciou à pretensão de impugnar a validade do contrato, tendo o acordo sido homologado por decisão judicial transitada em julgado. Alega ilegitimidade passiva da requerida JBS, pois todos os negócios jurídicos ocorreram nas "*camadas societárias acima da Autora JBS, e envolvem pessoas jurídicas que estão nessas camadas, não havendo na petição inicial nenhum alegação ou acusação contra a Ré JBS propriamente dita*". Aduz a ocorrência de litispendência, pois as alegações de fraude na operação discorrida já são objeto de investigação no

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

incidente processual nº 1022339-92.2021.8.26.0100 da recuperação judicial da Heber Participações. Alega inépcia da petição inicial, pois não há descrição de atos praticados pela requerida JBS que justifique a sua legitimidade passiva. Narra que há prescrição da pretensão autoral, pois os negócios jurídicos questionados foram celebrados em 2009. Afirma que a autora não pode pretender anular negócio jurídico antes de anular a aprovação de contas dos administradores e que, nesse sentido, já houve decurso do prazo decadencial bienal previsto no art. 286 da Lei das S/A. Narra que a requerente tinha plena ciência da operação em virtude da "profusão de notícias e ações judiciais" e porque o acionista-presidente da a (Sr. Mário Henrique Bertin) ocupa, desde 2007, um dos assentos no Conselho de Administração da HEBER Participações S.A. Requer o acolhimento das preliminares e, no mérito, a improcedência da ação.

Contestação dos requeridos J&F INVESTIMENTOS S.A, J&F PARTICIPAÇÕES S.A., JOESLEY MENDONÇA BATISTA e WESLEY MENDONÇA BATISTA às fls. 4356/4381, na qual alegam, em preliminar, falta de documento indispensável à propositura da ação, pois a autora não comprovou que é acionista indireta do Grupo Bertin. Aduz ilegitimidade ativa, pois a autora, na qualidade de acionista indireta, não tem legitimidade para pleitear a nulidade de negócios jurídicos praticados por pela sociedade. Alega falta de interesse de agir, pois não cabe à autora requerer a invalidação de atos praticados pela companhia sem pedir a nulidade das deliberações assembleares que aprovaram esses atos. Aduz decadência para anulação de atos, pois já transcorrido o prazo previsto na Lei das S.A. afirma, ainda, que há coisa julgada, pois a Bracol já ajuizou ação contra a Blessed Holdings LLC para anular os mesmos negócios jurídicos objeto desta ação. Aduz ilegitimidade passiva, pois os requeridos não são parte nos negócios jurídicos cuja nulidade se pretende ver decretada. Narra que há ausência de litisconsórcio passivo necessário, pois a autora pretende a nulidade de negócios jurídicos sem que figurem no polo passivo as demais partes dos negócios. Alega inépcia da inicial, pois o pedido constante da alínea "C" de fls. 4265 é genérico e não especifica que atos deveriam ser anulados. No mérito, afirmam que não há vícios na operação societária. Requerem o acolhimento das preliminares e, no mérito, a improcedência da ação.

Contestação dos requeridos HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN e SILMAR ROBERTO BERTIN, às fls. 4382/4450, na qual alegam, em preliminar, a inépcia da petição inicial, pois os pedidos apresentados são genéricos e indeterminados. Aduzem a ilegitimidade ativa, pois autora busca anular um negócio jurídico do qual não foi parte. Afirmam que há ilegitimidade passiva da Heber e das pessoas físicas, pois tais requeridos não são partes dos negócios jurídicos ora impugnados.

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

Impugnam o valor da causa, o qual alega que deve ser fixado em valor não inferior a R$ 100.000.000,00. Narram que houve decurso do prazo decadencial para pleitear a anulação dos negócios jurídicos. No mérito, afirmam que a operação foi realizada de forma válida, sem qualquer irregularidade. Requerem o acolhimento das preliminares e, no mérito, a improcedência da ação.

Contestação dos requeridos PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES MULTIESTRATÉGIA e BLESSED HOLDINGS LLC às fls. 4494/4514, na qual alegam, em preliminar, legitimidade ativa, pois a autora não tem legitimidade para questionar contratos pactuados pela companhia. Aduzem prescrição e decadência, pois os fatos ocorreram há mais de 10 anos. Afirmam que há coisa julgada, pois decisão que homologou o acordo entre a BRACOL/TINTO e a BLESSED em ação anulatória já transitou em julgado. Impugnam o valor da causa. No mérito, afirmam que a operação foi realizada sem qualquer irregularidade. Requerem o acolhimento das preliminares e, no mérito, a improcedência da ação.

Réplica às fls. 4525/4581.

Instadas a se manifestarem sobre as provas que pretendem produzir e interesse na conciliação (fls. 4854), a requerida JBS S/A manifestou seu desinteresse na conciliação e interesse na produção de prova documental (fls. 4857/4870). Os requeridos HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN e SILMAR ROBERTO BERTIN e PINHEIROS FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES MULTIESTRATÉGIA e BLESSED HOLDINGS LLC informaram que não possuem interesse na produção de outras provas e pugnaram pelo julgamento antecipado da demanda (fls. 4915/4920 e fls. 4972/4987).

A parte autora pugnou pela produção de prova pericial, oral e documental suplementar (fls. 4962/4971 e 4989/4992), tendo também informando a rejeição do termo de compromisso de Wesley, Joeslesy e Gilberto de Souza Biojone Filho na CVM (fls. 5067/5071). A parte requerida JBS S/A requereu o indeferimento do pleito de adequação da especificação de provas da parte autora (fls. 5042/5045).

Manifestação de J&F INVESTIMENTOS S.A, J&F PARTICIPAÇÕES S.A., JOESLEY MENDONÇA BATISTA e WESLEY MENDONÇA BATISTA às fls. 4921/4930.

Manifestação de HEBER PARTICIPAÇÕES S.A., FERNANDO ANTONIO BERTIN, REINALDO BERTIN, NATALINO BERTIN e SILMAR ROBERTO BERTIN às fls. 5046/5056.

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**1055320-43.2022.8.26.0100 - lauda 9**



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

Manifestação da JBS S/A às fls. 5089/5091.

**É o relatório. Fundamento e decido.**

A parte autora pretende, com esta ação, a declaração de nulidade dos Instrumentos Particulares de Cessão e Transferência de Quotas e Outras Avenças celebrados em 24.12.2009 e 11.11.2010, bem como indenização pelos danos daí decorrentes. Todavia, este feito foi distribuído em 31.05.2022, ou seja, aproximadamente 13 (treze) anos após celebração de tais acordos.

De acordo com o inciso II do art. 178 do Código Civil, é de 4 (quatro) anos o prazo de decadência para pleitear-se a anulação do negócio jurídico contato, em caso de erro, dolo ou fraude contra credores, do dia em que se realizou o negócio jurídico.

Considerando que os contratos ora questionados foram celebrados em 24.12.2009 e 11.11.2010, bem como o fato de que esta ação foi ajuizada em 31.05.2022, de rigor o reconhecimento da decadência do direito, visto que decorridos aproximadamente 13 (treze) anos da assinatura dos instrumentos.

Para tentar afastar a alegação de decadência do seu direito, a autora aduz que não há que se falar em prescrição ou decadência, pois os negócios questionados são nulos e, por isso, não convalesceriam pelo decurso do tempo, nos termos do art. 169 do Código Civil. Todavia, o argumento não prospera.

A despeito de afirmar a suposta nulidade dos contratos, a parte autora não especifica a hipótese de nulidade incidente no caso, fundamentando suas alegações em termos genéricos. Não há, em seu aditamento, a indicação precisa da nulidade atribuída à operação societária questionada, mas apenas menções genéricas a violações de artigos do Código Civil:

"toda a operação engendrada pelos Réus causou prejuízos à Autora, especialmente por parte de seu **patrimônio ter sido transacionado por preço muito inferior ao seu valor real**, sendo, pois, de rigor a **declaração de nulidade da operação, com base nos artigos 104, inc. II, 166, 167, 168 e 169 do Código Civil**" (fls. 4255)".

Não há a indicação de qual hipótese de nulidade prevista no art. 166 incidiria no presente caso. Portanto, entendo que a autora busca, com tal alegação genérica, basear-se de forma genérica e indiscriminada em qualquer hipótese apenas para afastar o reconhecimento da decadência de seu direito.

Ademais, o ponto central desta lide reside na alegação acima de que a operação realizada pelos requeridos teria feito com o que o patrimônio da companhia fosse "*transacionado*

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

*por preço muito inferior ao seu valor real*".

No entanto, mesmo a alegação de transação por preço inferior ao devido não é fundamento de nulidade de negócio jurídico, nos termos do art. 166 do Código Civil. Desse modo, não há fundamento para a alegação de nulidade veiculada pela requerente, sendo de rigor o reconhecimento da decadência de seu direito..

Além disso, dispõe o art. 286. da Lei das S.A. que a ação para anular as deliberações tomadas em assembléia geral violadoras da lei ou do estatuto, ou eivadas de erro, dolo, fraude ou simulação, prescreve em 2 (dois) anos contados da deliberação.

Ainda, estabelece o inciso II, "b", do art. 287 do mesmo diploma legal que prescreve em 3 (três) anos a ação contra os acionistas e administradores para deles haver reparação civil por atos culposos ou dolosos, no caso de violação da lei, do estatuto ou da convenção de grupo, contado o prazo da data da publicação da ata que aprovar o balanço referente ao exercício em que a violação tenha ocorrido.

No presente caso, a operação foi aprovada nas assembleias gerais extraordinárias da JBS S/A realizadas em 29.12.2009 e 21.12.2009 (fls. 4459/4473 e 4474/4480).

Novamente, considerando o ajuizamento desta demanda no ano de 2022, de rigor o reconhecimento da prescrição da pretensão autoral para questionamento da operação ali aprovada, visto que decorridos aproximadamente 13 (treze) anos da realizações das assembleias referidas.

Em resumo, por qualquer ângulo que se examine a pretensão da parte autora, outra solução não há que não reconhecer a decadência do direito da parte autor; ou, quando não, a consumação da prescrição.

Isto posto, com fundamento, no art. 487, inciso II, do CPC, reconheço a ocorrência da decadência; ou, quando não, da prescrição.

Diante da sucumbência, condeno a parte autora ao pagamento das custas e despesas processuais, além de honorários advocatícios que, nos termos do art. 85, § 2º, do CPC, fixo em 15% do valor dado à causa; valor que será rateado por todas as bancas que patrocinaram os interesses dos requeridos no feito.

Em relação às custas e às despesas processuais, haverá a incidência de correção monetária pelos índices da tabela prática do Egrégio Tribunal de Justiça, a partir de cada adiantamento, bem como de juros de mora de 1% ao mês, a partir do trânsito em julgado.

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

fls. 5107

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM
PRACA DOUTOR JOAO MENDES, S/N, São Paulo - SP - CEP 01501-000

Em relação aos honorários advocatícios, haverá a incidência de correção monetária pelos índices da tabela prática do Egrégio Tribunal de Justiça, a partir da data da propositura da ação, bem como de juros de mora de 1% ao mês, a partir do trânsito em julgado.

Certificado o trânsito em julgado, arquivem-se os autos, dando-se baixa no sistema.

Eventual requerimento de início da fase de liquidação, em relação à parte ilíquida da condenação, deverá ser formulado mediante protocolo de petição especificada como liquidação por arbitramento (classe 151), quando do cadastramento pelo patrono, a fim de que seja observado o regular processamento pelo sistema SAJPG5-JM.

Após o início da fase de liquidação de sentença, no momento do cadastro de futuras petições, atentem-se os advogados ao uso do número do incidente processual criado para a fase de cumprimento de sentença ou para a liquidação de sentença, evitando-se sejam cadastradas como novos incidentes, a prejudicar o célere andamento processual.

P.R.I.

São Paulo, 05 de abril de 2023.

---

**DOCUMENTO ASSINADO DIGITALMENTE NOS TERMOS DA LEI 11.419/2006, CONFORME IMPRESSÃO À MARGEM DIREITA**

---

Este documento é cópia do original, assinado digitalmente por GUILHERME DE PAULA NASCENTE NUNES, liberado nos autos em 05/04/2023 às 19:02. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1055320-43.2022.8.26.0100 e código F3F90D5.

**1055320-43.2022.8.26.0100 - lauda 12**

# Exhibit 18

11/30/2022
Publication
Extracted from page 1,413 of the São Paulo State Court Gazette – Judicial – 1st Instance – State Capital
Central Courts

João Mendes Júnior Courthouse

2nd Bankruptcy and Judicial Reorganization Court

JUDGE OF THE 2nd BANKRUPTCY AND JUDICIAL REORGANIZATION COURT

JUDGE PAULO FURTADO DE OLIVEIRA FILHO

COURT CLERK HELENA MARIA HERMESDORFF

NOTICE OF SERVICE OF ATTORNEYS

REPORT No. 1298/2022

Case 1095595-34.2022.8.26.0100 – Proof of Debt Application – Credit classification - M.F.T.H. –
Case files examined. This is an application filed by the Judicial Administrator for authorization to
engage the law firms Kellogg, Hansen, Todd, Figel & Frederick PLLC; SEQUOR LAW and
GOWLING WLG (UK) LLP in the United States and United Kingdom, based on information raised
on the location of potential hidden assets of the Bankruptcy Estate, indicated in the report on pg.
314/324 presented by Duarte Forssell Sociedade de Advogados (DFA), where countless contact
points of the insolvent company and its controllers were located in overseas jurisdictions, relating to
the transfer of assets from the insolvent company. The Federal Prosecution Office did not object to
the application, given the clarifications provided by the Judicial Administrator. These are the facts.
My decision follows. In light of the evidence of misappropriation of substantial amounts for the
maintenance of the activities of Tinto Holding Ltda, without proof of consideration, the engagement
of law firms specialized in the subject matter as shown by DFA in the report on pg. 314/324 proves
appropriate to allow for the recovery of funds payable to creditors. DFA investigations indicated that
all Bertin S.A. shares were transferred to Bertin FIP, whose shares were in turn sold to JBS through a
Delaware-based offshore company, Blessed Holding LLC, seemingly without the relevant
consideration. DFA investigations also indicated that the controllers of the insolvent company,
immediately after performing the above-mentioned transactions, indirectly set up companies abroad,
namely: (i) ROSSLAND INVESTMENTS LLP (United Kingdom), HOPEDALE EQUIRTY INC.
(British Virgin Isles) and STRATFORD INTERNATIONAL ASSETS CORP. (British Virgin Isles)
incorporated by Silmar Bertin; and (ii) METROPOLITAN ASSETS LLP, GALLATAS LLP and
SOLARIS EQUITY LP (United Kingdom) incorporated by Natalino Bertin. Thus, I hereby authorize

08/02/2023                            undefined – Case No. undefined

the engagement of the law firms Kellogg, Hansen, Todd, Figel & Frederick PLLC; SEQUOR LAW and GOWLING WLG (UK) LLP , and the Judicial Administrator shall, on behalf of the Bankruptcy Estate, arrange for the formalization of the agreements (pgs. 338/342; 342/344 and 352/358) and attach them to these ancillary proceedings. I further authorize: (i) the appointment of Luis Vasco Elias as Judicial Administrator representing the Bankruptcy Estate abroad, through DFA, the US- and UK-based law firms listed above and any other law firm that may be appointed by the Judicial Administrator; (ii) the request for ancillary bankruptcy proceedings in the United States of American under Chapter 15 (Ancillary and Other Cross-Border Cases), Title 11 (Bankruptcy) of the United States Code; (iii) the Bankruptcy Estate's entry into the Drawback Agreement which authorizes it to transfer the amount of USD 1,500.00 (fifteen hundred dollars) as credit in the customer's account with SEQUOR LAW, as per local legal requirements. I hereby order the court office to urgently notify Banco do Brasil, so the latter makes the transfer to the following account, which has the following code number, for currency exchange purposes: Code Number 47128-00-N-05-90 (Legal Services) Data of account where the amount should be debited: Case No. 0151873-29.2009.8.26.0100 – Court-supervised Account: 3300104659568 - Banco do Brasil S/A Code/Number 001 – Payee Branch: 6815 Clovis Bevilacqua (iv) the request for Brazilian bankruptcy in England, to make an application for restoration before the local companies house of the companies METROPOLITAN ASSETS LLP, CONCORD GLOBAL LLP and GALLATAS LLP; (v) Lastly, I hereby authorize issuing a certificate for this ancillary bankruptcy proceedings as follows: BANKRUPTCY ESTATE OF TINTO HOLDING LTDA., through its Judicial Administrator DELOITTE TOUCHE TOHMATSU CONSULTORES LTDA, represented by its managing partner, Mr. Luis Vasco Elias, is authorized to file for ancillary bankruptcy proceedings in the United States of America and in England under the conditions and limits of the Law in the corresponding jurisdictions. For the court office to implement urgently. Give notice to the parties. – ATTORNEY: ANTONIO MANUEL FRANCA AIRES (OAB [*Ordem dos Advogados do Brasil* (Brazilian Bar Association)] 63191/SP [São Paulo])



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document
"**Brazilian.Court.Authorisation.SecondDecision**" is, to the best of my knowledge and belief, a
true and accurate translation from Portuguese into English.

_____
Dan McCourt

Sworn to before me this
August 7, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public